1

SEYFARTH SHAW LLP
M. Ryan Pinkston (SBN 310971)

2

rpinkston@seyfarth.com
Brandon K. Franklin (SBN 303373)

3

bfranklin@seyfarth.com
560 Mission Street, 31st Floor

4

San Francisco, California 94105
Telephone:    (415) 397-2823

5

Facsimile:    (415) 397-8549

6

Attorneys for Plaintiffs
THE PRUDENTIAL INSURANCE COMPANY OF

7

AMERICA; and PGIM REAL ESTATE FINANCE, LLC

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

THE PRUDENTIAL INSURANCE COMPANY

12

OF AMERICA; and PGIM REAL ESTATE
FINANCE, LLC,

13

Plaintiffs,

14

v.

15

ACDF, LLC; ASSEMI AND SONS, INC.;

16

AVILA RANCH EA, LLC; BEAR FLAG
FARMS, LLC; C & A FARMS, LLC; CANTUA

17

ORCHARDS, LLC; DA REAL ESTATE
HOLDINGS, LLC; FAVIER RANCH, LLC; FG2

18

HOLDINGS LLC; GRADON FARMS, LLC;
GRANVILLE FARMS, LLC; GRANTLAND

19

HOLDINGS NO. 1, LLC; GRANTLAND
HOLDINGS NO. 2, LLC; GRANTOR REAL

20

ESTATE INVESTMENTS, LLC; GVM
INVESTMENTS, LLC; GV AG, LLC; LINCOLN

21

GRANTOR FARMS, LLC; MARICOPA
ORCHARDS, LLC; PANOCHE PISTACHIOS,

22

LLC; SAGEBERRY FARMS, LLC; DEREK
BELL; and RACHEL MARIE WHITE,

23

Defendants.

24

Case No.

**COMPLAINT FOR:**

1)  **BREACH OF CONTRACT,
    APPOINTMENT OF RECEIVER,
    ACCOUNTING AND SPECIFIC
    PERFORMANCE OF RENTS-AND-
    PROFITS CLAUSE; AND**

2)  **INJUNCTIVE RELIEF**

25

COMES NOW PLAINTIFFS THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a

26

New Jersey corporation ("**Prudential**")  and PGIM REAL ESTATE FINANCE, LLC, a Delaware limited

27

liability company ("**PGIM REF**" and together with Prudential, "**Plaintiff**") each in its own capacity as a

28

lender and PGIM REF also in its capacity as special servicer for and on behalf of PAR U HARTFORD

LIFE & ANNUITY COMFORT TRUST, a New York trust ("**Hartford Trust**" and together with Plaintiff, "**Lender**"), for its causes of action against Defendants ACDF, LLC, a California limited liability company ("**ACDF**"), ASSEMI AND SONS, INC., a California corporation ("**Assemi**"), AVILA RANCH EA, LLC, a California limited liability company ("**Avila**"), BEAR FLAG FARMS, LLC, a California limited liability company ("**Bear Flag**"), C & A FARMS, LLC, a California limited liability company ("**C & A**"), CANTUA ORCHARDS, LLC, a California limited liability company ("**Cantua**"), DA REAL ESTATE HOLDINGS, LLC, a California limited liability company ("**DA Real Estate**"), FAVIER RANCH, LLC, a California limited liability company ("**Favier**"), FG2 HOLDINGS LLC, a California limited liability company ("**FG2**"), GRADON FARMS, LLC, a California limited liability company ("**Gradon**"), GRANVILLE FARMS, LLC, a California limited liability company ("**Granville**"), GRANTLAND HOLDINGS NO. 1, LLC, a California limited liability company ("**Grantland 1**"), GRANTLAND HOLDINGS NO. 2, LLC, a California limited liability company ("**Grantland 2**"), GRANTOR REAL ESTATE INVESTMENTS, LLC, a California limited liability company ("**Grantor Investments**"), GVM INVESTMENTS, LLC, a California limited liability company ("**GVM**"), GV AG, LLC, a California limited liability company ("**GV AG**"), LINCOLN GRANTOR FARMS, LLC, a California limited liability company ("**Lincoln**"), MARICOPA ORCHARDS, LLC, a California limited liability company ("**Maricopa**"), PANOCHE PISTACHIOS, LLC ("**Panoche**"), a California limited liability company, SAGEBERRY FARMS, LLC, a California limited liability company ("**Sageberry**" and, collectively, "**Borrower**"), and DEREK BELL and RACHEL MARIE WHITE, each an individual (together with Borrower, "**Defendant**"), which hereby complains and alleges as follows:

## **INTRODUCTION**

1.      Borrower breached its various Loan Documents (defined below) with Plaintiff. As a result, Plaintiff seeks the appointment of a receiver, an accounting, and specific performance of the right to possession and rents and profits clauses in the Instruments (defined below), in addition to injunctive relief in connection with the enforcement of over $700 million in certain Loans (defined below) provided by Lender to Borrower. One of the Loans has been in default since February 2024, and the other Loans have been in default since June 2024. These defaults stem from, among other things, Borrower's failure to pay one of the Notes (defined below) in full upon its maturity, failing to pay the semi-annual payments due on

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

July 1, 2024 for all but one Note, and defaults on loans with third-parties, causing approximately $150,000,000 to be accelerated under those third-party loans.

2.     Unless a receiver is appointed to, among other things, protect and manage the Property (defined below), there is a real danger that the Property will suffer waste and/or other harm, resulting in irreparable injury to Plaintiff's rights thereto.

3.     Specifically, the Property consists of, among other things, over 50,000 acres of farmland and a significant number of pistachio and almond trees. The trees represent a significant portion of the value of the Property and, as a result, a significant portion of Lender's collateral. This farmland requires regular care, without which the trees thereon may be damaged or may die. Borrower has informed Lender that, due to operational cash flow issues, it may cease all such care immediately and terminate, in whole or in part, its numerous employees onsite.

4.     Plaintiff is entitled to the relief requested. The Loans are in default and, due to the acceleration of the Loans, the total outstanding principal and interest due on the Loans (exclusive of fees, costs, and other amounts due and owing thereunder) is no less than $705,144,545.49, which is due, owing, and unpaid as of July 1, 2024.

## THE PARTIES

5.     Prudential is, and at all times mentioned herein was, a New Jersey corporation organized and existing under and by virtue of the laws of the State of New Jersey and authorized to do business in the state of California, with its principal place of business located in Newark, New Jersey.

6.     PGIM REF is, and at all times mentioned herein was, a Delaware limited liability company organized and existing under and by virtue of the laws of the State of Delaware and authorized to do business in the state of California. PGIM REF is wholly owned by PGIM Real Estate Finance Holding Company, a New Jersey corporation organized and existing under and by virtue of the laws of the State of New Jersey, with its principal place of business located in Newark, New Jersey.

7.     Each Lender has had, and continues to have, a valid lien on the Property at all times mentioned herein.

8.     Plaintiff is informed and believes that Defendant ACDF is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

1   with its principal place of business in the State of California. Plaintiff is informed and believes that ACDF

2   is owned by: (i) the FARID ASSEMI REVOCABLE TRUST DATED JANUARY 24, 2007, now known

3   as the FIFTH AMENDED AND RESTATED FARID ASSEMI REVOCABLE TRUST DATED APRIL

4   28, 2021 (the "**Farid Assemi Revocable Trust**"), the Trustee of which is FARID ASSEMI, a citizen of

5   California; (ii) the DARIUS ASSEMI REVOCABLE TRUST DATED JANUARY 30, 2007, now known

6   as the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST DATED MARCH 2,

7   2010, AS AMENDED (the "**Darius Assemi Revocable Trust**"), the Trustee of which is DARIUS

8   ASSEMI, a citizen of California; and (iii) the FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI

9   REVOCABLE TRUST DATED JANUARY 31, 2007, now known as the AMENDED AND RESTATED

10   FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI REVOCABLE TRUST DATED MARCH 2,

11   2010, AS AMENDED (the "**Farshid and Sonia Assemi Revocable Trust**"), the Co-Trustees of which

12   are FARSHID ASSEMI and SONIA ROSEMARY ASSEMI, citizens of California. As the Trustees of

13   each trust that owns ACDF are California citizens, ACDF is a citizen of California for purposes of

14   diversity jurisdiction.

15        9.      Plaintiff is informed and believes that Defendant Assemi is, and at all times mentioned

16   herein was, a California corporation licensed to do business in the State of California and with its principal

17   place of business in the State of California. Plaintiff is informed and believes that Assemi is wholly owned

18   by West Fern Investments, Inc., a California corporation with its principal place of business in

19   Fresno, California.

20        10.     Plaintiff is informed and believes that Defendant Avila is, and at all times mentioned herein

21   was, a California limited liability company licensed to do business in the State of California and with its

22   principal place of business in the State of California. Plaintiff is informed and believes that Avila is owned

23   by: (i) the Farshid and Sonia Assemi Revocable Trust; and (ii) the FARID ASSEMI 2010 GRANTOR

24   TRUST DATED DECEMBER 30, 2010 (the "**Farid Assemi Grantor Trust**"), the Trustee of which is

25   NEEMA ASSEMI, a citizen of California. As the Trustees of each trust that owns Avila are California

26   citizens, Avila is a citizen of California for purposes of diversity jurisdiction.

27        11.     Plaintiff is informed and believes that Defendant Bear Flag is, and at all times mentioned

28   herein was, a California limited liability company licensed to do business in the State of California and

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

with its principal place of business in the State of California. Plaintiff is informed and believes that Bear Flag is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farshid and Sonia Assemi Revocable Trust; and (iii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Bear Flag are California citizens, Bear Flag is a citizen of California for purposes of diversity jurisdiction.

12.     Plaintiff is informed and believes that Defendant C & A is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that C & A is owned by: (i) the Darius Assemi Revocable Trust; (ii) the FARID ASSEMI 1997 RANCH TRUST DATED JUNE 30, 1997 (the "**Farid Assemi 1997 Ranch Trust**"), the Co-Trustees of which are FARSHID ASSEMI and NEEMA ELIOT ASSEMI, citizens of California; (iii) the Farid Assemi Revocable Trust; (iv) the FARSHID ASSEMI 1997 RANCH TRUST DATED JUNE 30, 1997 (the "**Farshid Assemi 1997 Ranch Trust**"), the Trustee of which is FARID ASSEMI, a California citizen; and (v) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of each trust that owns C & A are California citizens, C & A is a citizen of California for purposes of diversity jurisdiction.

13.     Plaintiff is informed and believes that Defendant Cantua is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Cantua is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farid Assemi Revocable Trust; (iii) the Farshid Assemi 1997 Ranch Trust; (iv) the Farid Assemi 1997 Ranch Trust; and (v) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of each trust that owns Cantua are California citizens, Cantua is a citizen of California for purposes of diversity jurisdiction.

14.     Plaintiff is informed and believes that Defendant DA Real Estate is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that DA Real Estate is owned by the Darius Assemi Revocable Trust. As the Trustee of the trust that owns DA Real Estate is a California citizen, DA Real Estate is a citizen of California for purposes of diversity jurisdiction.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

15.     Plaintiff is informed and believes that Defendant Favier is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Favier is owned by: (i) the Darius Assemi Revocable Trust; (ii) the FARSHID AND SONIA ASSEMI 2010 GRANTOR TRUST DATED DECEMBER 30, 2010 (the "**Farshid and Sonia Assemi Grantor Trust**"), the Trustee of which is MELISSA LAYNE, a California citizen; and (iii) the Farid Assemi 2010 Grantor Trust. As the Trustees of each trust that owns Favier are California citizens, Favier is a citizen of California for purposes of diversity jurisdiction.

16.     Plaintiff is informed and believes that Defendant FG2 is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that FG2 is owned by: (i) the Farshid and Sonia Assemi Grantor Trust; and (ii) the Farid Assemi 2010 Grantor Trust. As the Trustees of each trust that owns FG2 are California citizens, FG2 is a citizen of California for purposes of diversity jurisdiction.

17.     Plaintiff is informed and believes that Defendant Gradon is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Gradon is owned by: (i) the DARIUS ASSEMI REVOCABLE TRUST DATED JANUARY 30, 2007, now known as the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST DATED MARCH 2, 2010, AS AMENDED (the "**Darius Assemi Revocable Trust**"), the Trustee of which is DARIUS ASSEMI; (ii) the Farshid and Sonia Assemi Grantor Trust; and (iii) the Farid Assemi 2010 Grantor Trust. As the Trustees of each trust that owns Gradon are California citizens, Gradon is a citizen of California for purposes of diversity jurisdiction.

18.     Plaintiff is informed and believes that Defendant Granville is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Granville is owned by: (i) the Farid Assemi Revocable Trust; (ii) the Farshid Assemi 1997 Ranch Trust; (iii) the Farid Assemi 1997 Ranch Trust; and (iv) the Farshid and Sonia Assemi Revocable Trust. As the

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

Trustees of each trust that owns Granville are California citizens, Granville is a citizen of California for purposes of diversity jurisdiction.

19.     Plaintiff is informed and believes that Defendant Grantland 1 is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Grantland 1 is owned by the Farid Assemi 1997 Ranch Trust. As the Trustee of the trust that owns Grantland 1 is a California citizen, Grantland 1 is a citizen of California for purposes of diversity jurisdiction.

20.     Plaintiff is informed and believes that Defendant Grantland 2 is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Grantland 2 is owned by the Farshid Assemi 1997 Ranch Trust. As the Trustee of the trust that owns Grantland 2 is a California citizen, Grantland 2 is a citizen of California for purposes of diversity jurisdiction.

21.     Plaintiff is informed and believes that Defendant Grantor Investments is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Grantor Investments is owned by: (i) the Farshid and Sonia Assemi Grantor Trust; and (ii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Grantor Investments are California citizens, Grantor Investments is a citizen of California for purposes of diversity jurisdiction.

22.     Plaintiff is informed and believes that Defendant GVM is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that GVM is owned by: (i) the Darius Assemi Revocable Trust; and (ii) Grass Valley Bluffs, Inc., a California corporation with its principal place of business in Fresno, California ("**Grass Valley**"). As the corporation and the Trustee of the trust that owns GVM is a California citizen, GVM is a citizen of California for purposes of diversity jurisdiction.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

23.     Plaintiff is informed and believes that Defendant GV AG is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that GV AG is owned by: (i) the Darius Assemi Revocable Trust; and (ii) Grass Valley. As the corporation and the Trustee of the trust that owns GV AG is a California citizen, GV AG is a citizen of California for purposes of diversity jurisdiction.

24.     Plaintiff is informed and believes that Defendant Lincoln is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Lincoln is owned by: (i) the Farshid and Sonia Assemi Grantor Trust; and (ii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Lincoln are California citizens, Lincoln is a citizen of California for purposes of diversity jurisdiction.

25.     Plaintiff is informed and believes that Defendant Maricopa is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Maricopa is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farid Assemi Revocable Trust; (iii) the Farshid Assemi 1997 Ranch Trust; (iv) the Farid Assemi 1997 Ranch Trust; and (v) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of each trust that owns Maricopa are California citizens, Maricopa is a citizen of California for purposes of diversity jurisdiction.

26.     Plaintiff is informed and believes that Defendant Panoche is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Panoche is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farshid and Sonia Assemi Grantor Trust; and (iii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Panoche are California citizens, Panoche is a citizen of California for purposes of diversity jurisdiction.

27.     Plaintiff is informed and believes that Defendant Sageberry is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that

312724440v.7

Sageberry is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farid Assemi Revocable Trust; (iii) the Farshid Assemi 1997 Ranch Trust; (iv) the Farshid and Sonia Assemi Grantor Trust; (v) the Farid Assemi 1997 Ranch Trust; (vi) the Farshid and Sonia Assemi Revocable Trust; and (vii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Sageberry are California citizens, Sageberry is a citizen of California for purposes of diversity jurisdiction.

28.     Plaintiff is informed and believes that Defendant Derek Bell is, and at all times mentioned herein was, a resident and citizen of the State of California, residing in Fresno, California.

29.     Plaintiff is informed and believes that Defendant Rachel Marie White is, and at all times mentioned herein was, a resident and citizen of the State of California, residing in Fresno, California.

## VENUE AND JURISDICTION

30.     The United States District Court for the Eastern District of California (the "**Court**") has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is civil in nature, diversity of citizenship exists, and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

31.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the property that is subject of the action is situated in this district.

## FACTUAL BACKGROUND

32.     This action arises out of Borrower's numerous defaults under Loans that Lender has made to Borrower and Borrower's indication, supported by financial models, that it will be unable to maintain the Property as a result of cash flow issues.

**I.      The Loans, the Loan Documents, and the Property Collateral Provided by Borrower to Lender.**

33.     Lender has made multiple loans to Borrower, as summarized below. Each Loan is in default by its terms, and Lender has accelerated each Loan.

**A.     The Westlands/Fresno Loan**.

34.     Prudential previously made those certain loans to Borrower Maricopa, ACDF, Assemi, C & A, Cantua, Gradon, Granville, Lincoln, Panoche, Sageberry, and GV AG (collectively, "**Westlands/Fresno Borrower**") in the aggregate original principal amount of Five-Hundred Fifty

Million Dollars ($550,000,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Westlands/Fresno Loan**") pursuant to that certain Loan Agreement dated as of March 11, 2022 (the "**Westlands/Fresno Closing Date**") by and among Westlands/Fresno Borrower and Prudential (as the same has been or may be modified from time to time, including by that certain Loan Modification Agreement, dated April 25, 2022, that certain Second Loan Modification Agreement, dated March 28, 2023, that certain Third Loan Modification Agreement, dated March 29, 2023, and that certain Fourth Loan Modification Agreement, dated May 4, 2023, the "**Westlands/Fresno Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the Westlands/Fresno Loan, including without limitation, any and all documents amending and modifying the terms of the Westlands/Fresno Loan, collectively, the "**Westlands/Fresno Loan Documents**"). A true and correct copy of the Westlands/Fresno Loan Agreement is attached hereto as <u>Exhibit 1</u>.

35.     The Westlands/Fresno Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of the Westlands/Fresno Closing Date, made by Westlands/Fresno Borrower and payable to Prudential, in the principal amount of $500,000,000.00 (Loan No. 717612168) ("**Westlands/Fresno Note 1**"); and (ii) that certain Promissory Note, dated as of May 4, 2023, made by Westlands/Fresno Borrower and payable to Prudential, in the principal amount of $50,000,000.00 (Loan No. 717612340) ("**Westlands/Fresno Note 3**", and collectively with Westlands/Fresno Note 1, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**Westlands/Fresno Notes**"). As of July 1, 2024, the outstanding principal balance of the Westlands/Fresno Loan is $550,000,000.00, the outstanding interest accrued on Westlands/Fresno Note 1 is $9,883,333.33 and the outstanding interest accrued on Westlands/Fresno Note 3 is $0.00. True and correct copies of the Westlands/Fresno Notes are attached hereto as <u>Exhibit 2</u>.

36.     The Westlands/Fresno Loan and the Westlands/Fresno Notes are secured by, among other things: (i) that certain Fresno Deed of Trust recorded March 21, 2022, as Fresno County Recorder's No. 2022-0036711, as amended by that certain Modification to Deed of Trust (Fresno County) recorded March 30, 2023, as Fresno County Recorder's No. 2023-0030804, by that certain Second Modification to Deed of Trust (Fresno County) recorded May 9, 2023 as Fresno County Recorder's No. 2023-0043221, and by that certain Third Modification to Deed of Trust (Fresno County) executed by ACDF, C & A, Cantua,

Gradon, Granville, Maricopa, Panoche, and Sageberry to Prudential, recorded June 29, 2023 as Fresno County Recorder's No. 2023-0060288; (ii) that certain Kern Deed of Trust, recorded March 21, 2022, as Kern County Recorder's No. 222043952, as amended by that certain Modification to Deed of Trust (Kern County) recorded March 30, 2023 as Kern County Recorder's No. 223036184, by that certain Second Modification to Deed of Trust (Kern County) recorded May 9, 2023 as Kern County Recorder's No. 223054287, and by that certain Third Modification to Deed of Trust (Kern County) executed by ACDF, C & A, Maricopa, and GV AG to Prudential, recorded June 29, 2023 as Kern County Recorder's No. 223075826; (iii) that certain Kings Deed of Trust, recorded March 21, 2022, as Kings County Recorder's No. 2205342, as amended by that certain Modification to Deed of Trust (Kings County) recorded on March 30, 2023 as Kings County Recorder's No. 2304689, by that certain Second Modification to Deed of Trust (Kings County) recorded May 9, 2023, as Kings County Recorder's No. 2306898, and by that certain Third Modification to Deed of Trust (Kings County) executed by Lincoln and Cantua to Prudential recorded June 29, 2023, as Kings County Recorder's No. 2309463; (iv) that certain Madera Deed of Trust, recorded March 21, 2022, as Madera County Recorder's No. 2022008052, as amended by that certain Modification to Deed of Trust (Madera County) recorded on March 30, 2023 as Madera County Recorder's No. 2023006134, by that certain Second Modification to Deed of Trust (Madera County) recorded May 9, 2023 as Madera County Recorder's No. 2023008790, and by that certain Third Modification to Deed of Trust (Madera County) executed by ACDF and Assemi to Prudential recorded June 29, 2023 as Madera County Recorder's No. 2023012199; and (v) that certain 2023 Deed of Trust, recorded March 30, 2023 as Fresno County Recorder's No. 2023-0030812, as amended by that certain Modification to Deed of Trust (2023 Deed of Trust) recorded May 9, 2023 as Fresno County Recorder's No. 2023-0043220 and by that certain Second Modification to Deed of Trust (2023 Deed of Trust) executed by Granville, Panoche, Gradon, and Sageberry to Prudential, recorded June 29, 2023 as Fresno County Recorder's No. 2023-0060287 (collectively, the "**Westlands/Fresno Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Westlands/Fresno Instrument (collectively, the "**Westlands/Fresno Property**"), certain assignment(s) of leases and rents, and certain other security instruments. True and correct copies of the Westlands/Fresno Instrument are attached hereto as Exhibit 3.

312724440v.7

**B.     The Kern/Tulare Loan**.

37.     Prudential previously made those certain three loans to Borrower ACDF, Bear Flag, and Maricopa (collectively, "**Kern/Tulare Borrower**") in the aggregate original principal amount of Ninety-One Million One-Hundred Twenty-Four Thousand Dollars ($91,124,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Kern/Tulare Loan**") pursuant to that certain Loan Agreement dated as of January 23, 2020 (the " **Kern/Tulare Closing Date**") by and among Kern/Tulare Borrower and Prudential (as the same has been or may be modified from time to time, including by that certain Loan Modification Agreement dated February 14, 2020, that certain Second Loan Modification Agreement dated December 24, 2020, that certain Third Loan Modification Agreement dated September 9, 2021, that certain Fourth Loan Modification Agreement dated March 1, 2023, and that certain Fifth Loan Modification Agreement dated October 25, 2023, the "**Kern/Tulare Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the Kern/Tulare Loan, including without limitation, any and all documents amending and modifying the terms of the Kern/Tulare Loan, collectively, the "**Kern/Tulare Loan Documents**"). A true and correct copy of the Kern/Tulare Loan Agreement is attached hereto as <u>Exhibit 4</u>.

38.     The Kern/Tulare Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of the Kern/Tulare Closing Date in the original principal amount of $70,000,000.00 (Loan No. 717611848) ("**Kern/Tulare Note 1**"); (ii) that certain Promissory Note, dated February 14, 2020 in the original principal amount of $14,700,000.00 (Loan No. 717611852) ("**Kern/Tulare Note 2**"); and (iii) that certain Promissory Note, dated March 1, 2023 in the original principal amount of $6,424,000.00 (Loan No. 717612317) ("**Kern/Tulare Note 5**", and collectively with Kern/Tulare Note 1 and Kern/Tulare Note 2, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**Kern/Tulare Notes**"). As of July 1, 2024, the outstanding principal balance of the Kern/Tulare Loan is $72,910,160.00, the outstanding interest accrued on Kern/Tulare Note 1 is $1,143,800.00, the outstanding interest accrued on Kern/Tulare Note 2 is $124,319.28, and the outstanding interest accrued on Kern/Tulare Note 5 is $201,970.56. True and correct copies of the Kern/Tulare Notes are attached hereto as <u>Exhibit 5</u>.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

39.     The Kern/Tulare Loan and the Kern/Tulare Notes are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Kern/Tulare Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated as of the Kern/Tulare Closing Date and recorded as of the Kern/Tulare Closing Date, as Kern County Recorder's No. 220009640 and as Tulare County Recorder's No. 2020-0004578, as amended by that certain Modification of Deed of Trust dated February 14, 2020, and recorded on February 20, 2020, as Kern County Recorder's No. 220022789 and as Tulare County Recorder's No. 2020-0010542, by that certain Second Modification of Deed of Trust dated December 24, 2020, and recorded on December 31, 2020, as Kern County Recorder's No. 220204171 and as Tulare County Recorder's No. 2020-0085322, by that certain Third Modification of Deed of Trust dated September 9, 2021, and recorded on September 15, 2021, as Kern County Recorder's No. 221174792 and as Tulare County Recorder's No. 2021-0067792, and by that certain Fourth Modification of Deed of Trust dated March 1, 2023, and recorded on March 8, 2023, as Kern County Recorder's No. 223026702 and as Tulare County Recorder's No. 2023-0010907 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Kern/Tulare Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Kern/Tulare Instrument (collectively, the "**Kern/Tulare Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Kern/Tulare Instrument is attached hereto as <u>Exhibit 6</u>.

**C.     The Devine Loan**.

40.     Prudential previously made that certain loan to Borrower C & A ("**Devine Borrower**") in the aggregate original principal amount of Six Million One-Hundred Seventy-Six Thousand Dollars ($6,176,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Devine Loan**") pursuant to that certain Loan Agreement dated as of May 19, 2021 (the "**Devine Closing Date**") by and among Devine Borrower and Prudential (as the same has been or may be modified from time to time, the "**Devine Loan Agreement**"; and the Devine Loan Agreement together with all other documents evidencing, relating to, and/or securing the Devine Loan, including without limitation, any and all documents amending and modifying the terms of the Devine Loan, collectively, the "**Devine**

13

312724440v.7

**Loan Documents**"). A true and correct copy of the Devine Loan Agreement is attached hereto as Exhibit 7.

41.     The Devine Loan is evidenced by, among other things, that certain Promissory Note, dated as of the Devine Closing Date in the original principal amount of $6,176,000.00 (Loan No. 717612116) (the "**Devine Note**"). As of July 1, 2024, the outstanding principal balance of the Devine Loan is $5,558,400.00 and the outstanding interest accrued on Devine Note is $101,440.80. A true and correct copy of the Devine Note is attached hereto as Exhibit 8.

42.     The Devine Loan and the Devine Note are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Devine Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated May 19, 2021 and recorded May 27, 2021, as Fresno County Recorder's No. 2021-0087704 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Devine Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Devine Instrument (collectively, the "**Devine Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Devine Instrument is attached hereto as Exhibit 9.

**D.     The Saviez Loan.**

43.     Prudential previously made that certain loan to Borrower C & A and Maricopa (collectively, "**Saviez Borrower**"), in the aggregate original principal amount of Three Million Six-Hundred Forty-Two Thousand Dollars ($3,642,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Saviez Loan**") pursuant to that certain Loan Agreement dated as of November 8, 2021 (the "**Saviez Closing Date**") by and among Borrower and Prudential (as the same has been or may be modified from time to time, the "**Saviez Loan Agreement**", and together with the Westlands/Fresno Loan Agreement, the Kern/Tulare Loan Agreement, and the Devine Loan Agreement, collectively the "**Westlands Et Al. Loan Agreements**"; and together with all other documents evidencing, relating to, and/or securing the Saviez Loan, including without limitation, any and all documents amending and modifying the terms of the Saviez Loan, collectively, the "**Saviez**

14

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

**Loan Documents**"; and the Saviez Loan Documents together with the Westlands/Fresno Loan Documents, the Kern/Tulare Loan Documents, and the Devine Loan Documents, collectively the "**Westlands Et Al. Loan Documents**"). A true and correct copy of the Saviez Loan Agreement is attached hereto as <u>Exhibit 10</u>.

44. The Saviez Loan is evidenced by, among other things, that certain Promissory Note, dated as of the Saviez Closing Date in the original principal amount of $3,642,000.00 (Loan No. 717612122) (the "**Saviez Note**", and together with the Westlands/Fresno Notes, the Kern/Tulare Notes, and the Devine Note, the "**Westlands Et Al. Notes**" and each a "**Westlands Et Al. Note**"). As of July 1, 2024, the outstanding principal balance of the Saviez Loan is $3,277,800.00 and the outstanding interest accrued on Saviez Note is $51,133.68. A true and correct copy of the Saviez Note is attached hereto as <u>Exhibit 11</u>.

45. The Saviez Loan and the Saviez Note are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Saviez Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated November 8, 2021 and recorded November 10, 2021, as Fresno County Recorder's No. 2021-0187129 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Saviez Instrument**", and together with the Westlands/Fresno Instrument, the Kern/Tulare Instrument, and the Devine Instrument, collectively the "**Westlands Et Al. Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Saviez Instrument (the "**Saviez Property**", and together with the Westlands/Fresno Property, the Kern/Tulare Property, and the Devine Property, the "**Westlands Et Al. Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Saviez Instrument is attached hereto as <u>Exhibit 12</u>.

46. On or about May 16, 2024, Prudential executed that certain Assignment of Deed of Trust, Security Agreement, Cop Filing and Fixture Filing with Assignment of Rents And Proceeds, Leases and Agreement, recorded on May 21, 2024, as Fresno County Recorder's No. 2024-0044852, thereby assigning the Saviez Instrument, along with, among other things, all notes, obligations, and liens described therein, to Hartford Trust (the "**Saviez Assignment**"). A true and correct copy of the Saviez Assignment

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

is attached hereto as <u>Exhibit 13</u>. Thereafter, PGIM REF was appointed to act as special servicer for and on behalf of Hartford Trust, including filing actions for and on behalf of Hartford Trust.

       **E.**    **The PGIM REF Loan**.

       47.    PGIM REF previously made those certain loans to Borrower ACDF, Avila, Bear Flag, C & A, DA Real Estate, Favier, FG2, Gradon, Grantland 1, Grantland 2, Grantor Investments, GVM, Lincoln, Maricopa, and Sageberry (collectively, "**PGIM REF Borrower**") in the aggregate original principal amount of Eighty-Four Million Two-Hundred Fifty-Five Thousand Dollars ($84,255,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**PGIM REF Loan**" and together with the Westlands/Fresno Loan, the Kern/Tulare Loan, the Devine Loan, and the Saviez Loan, the "**Loans**") pursuant to that certain Amended and Restated Loan Agreement dated as of August 26, 2020 (the "**PGIM REF Closing Date**") by and among PGIM REF Borrower and PGIM REF (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time including by that certain Loan Modification Agreement dated April 15, 2021, by that certain Second Loan Modification Agreement dated April 16, 2021, by that certain Third Loan Modification Agreement dated July 22, 2021, by that certain Fourth Loan Modification Agreement dated April 11, 2022 (the "**Fourth Modification**"), and by that certain Fifth Loan Modification Agreement dated October 25, 2023, the "**PGIM REF Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the PGIM REF Loan, including without limitation, any and all documents amending and modifying the terms of the Loan, collectively, the "**PGIM REF Loan Documents**" and together with the Westlands Et Al. Loan Documents, the "**Loan Documents**"). A true and correct copy of the PGIM REF Loan Agreement is attached hereto as <u>Exhibit 14</u>.

       48.    As set forth in more detail in the PGIM REF Loan Agreement, Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement.

       49.    As set forth in more detail in the Fourth Modification, initial borrowers 104 PARTNERS, LLC, a California limited liability company ("**104 Partners**") and BISHOP FARMS 22, LLC, a California limited liability company ("**Bishop Farms**") were merged into ACDF.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF
312724440v.7

50.     The PGIM REF Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of August 1, 2017, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $13,000,000.00 (Loan No. 717611236) (as amended by that certain Modification Agreement – Benchmark Index Transition, dated July 1, 2023, "**PGIM REF Note 2**"); (ii) that certain Promissory Note, dated as of October 12, 2018, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $16,000,000.00 (Loan No. 717611624) ("**PGIM REF Note 3**"); (iii) that certain Promissory Note, dated as of October 8, 2019, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $11,150,000.00 (Loan No. 717611763) ("**PGIM REF Note 4**"); (iv) that certain Promissory Note, dated as of November 7, 2019, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $32,050,000.00 (Loan No. 717611810) ("**PGIM REF Note 5**"); (v) that certain Promissory Note, dated as of April 15, 2021, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $5,600,000.00 (Loan No. 717612029) ("**PGIM REF Note 6**"); and (vi) that certain Promissory Note, dated as of April 16, 2021, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $6,455,000.00 (Loan No. 717612063) ("**PGIM REF Note 7**", and collectively with PGIM REF Note 2, PGIM REF Note 3, PGIM REF Note 4, PGIM REF Note 5, and PGIM REF Note 6, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**PGIM REF Notes**" and each a "**PGIM REF Note**" and together with the Westlands Et Al. Notes, the "**Notes**" and each a "**Note**"). As of July 1, 2024, the outstanding principal balance of the PGIM REF Loan is $60,728,900.00, the outstanding interest accrued on PGIM REF Note 2 is $4,232.44, the outstanding interest accrued on PGIM REF Note 3 is $293,280.00, the outstanding interest accrued on PGIM REF Note 4 is $183,417.50, the outstanding interest accrued on PGIM REF Note 5 is $496,710.90, the outstanding interest accrued on PGIM REF Note 6 is $86,240.00, and the outstanding interest accrued on PGIM REF Note 7 is $99,407.00. True and correct copies of the PGIM REF Notes are attached hereto as Exhibit 15.

51.     The PGIM REF Loan and the PGIM REF Notes are secured by, among other things:

a.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Favier to OLD

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated August 1, 2017 and recorded on August 21, 2017, as Merced County No. 2017026836, as amended by that certain Modification of Deed of Trust dated October 12, 2018, and recorded on October 22, 2018, as Merced County No. 2018032706, by that certain Second Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Merced County No. 2020029955, by that certain Third Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 202, as Merced County No. 2020036569, by that certain Fourth Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Merced County No. 2021017710, and by that certain Fifth Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2017 Deed of Trust**"). A true and correct copy of the 2017 Deed of Trust is attached hereto as Exhibit 16;

b.       That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by 104 Partners, Bishop, DA Real Estate, Grantland 1, Grantland 2, Grantor Investments, Lincoln, and Maricopa to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 12, 2018 and recorded October 22, 2018, as Fresno County No. 2018-0129050 and as Kern County Recorder's No. 218139395, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded August 28, 2020, as Fresno County No. 2020-0112978 and as Kern County Recorder's No. 220119047, by that certain Second Modification of Deed of Trust, dated September 24, 2020 and recorded October 8, 2020, as Fresno County No. 2020-0140536 and as Kern County Recorder's No. 220146496, by that certain Third Modification of Deed of Trust, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064511 and as Kern County Recorder's No. 221073050, and by that certain Fourth Modification of Deed of Trust, dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2018 Deed of Trust**"). A true and correct copy of the 2018 Deed of Trust is attached hereto as Exhibit 17;

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF
312724440v.7

c.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by C & A to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 8, 2019 and recorded on October 17, 2019, as Fresno County No. 2019-0124295, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Fresno County No. 2020-0112977, by that certain Second Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 2020, as Fresno County No. 2020-0140538, by that certain Third Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Fresno County No. 2021-0064513, and by that certain Fourth Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2019A Deed of Trust**"). A true and correct copy of the 2019A Deed of Trust is attached hereto as <u>Exhibit 18</u>;

d.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Maricopa, 104 Partners, Grantor Investments, DEREK BELL, a married man as his sole and separate property, and RACHEL MARIE WHITE, an unmarried woman to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated November 7, 2019 and recorded November 13, 2019, as Fresno County No. 2019-0136752 and as Kern County Recorder's No. 219151263, as amended by that certain Modification of Deed of Trust dated August 25, 2020 and recorded August 28, 2020, as Fresno County No. 2020-0112979 and as Kern County Recorder's No. 220119048, by that certain Second Modification of Deed of Trust, dated September 24, 2020 and recorded October 8, 2020, as Fresno County No. 2020-0140539 and as Kern County Recorder's No. 220146497, by that certain Third Modification of Deed of Trust, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064514 and as Kern County Recorder's No. 221073051, and by that certain Fourth Modification of Deed of Trust, dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2019B Deed of Trust**"). A true and correct copy of the 2019B Deed of Trust is attached hereto as <u>Exhibit 19</u>;

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

e.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Bear Flag and Gradon to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064510, as amended by that certain Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2021A Deed of Trust**"). A true and correct copy of the 2021A Deed of Trust is attached hereto as Exhibit 20;

f.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Avila, FG2, and GVM to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated April 16, 2021 and recorded April 28, 2021, as Fresno County No. 2021-0070226 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2021B Deed of Trust**"). A true and correct copy of the 2021B Deed of Trust is attached hereto as Exhibit 21; and

g.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Sageberry to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 12, 2018 and recorded on October 23, 2018, as Fresno County No. 2018-0129051, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Fresno County No. 2020-0112980, by that certain Second Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 2020, as Fresno County No. 2020-0140537, by that certain Third Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Fresno County No. 2021-0064512, that certain Fourth Modification of Deed of Trust dated April 16, 2021, and by that certain Fifth Modification of Deed of Trust, dated July 22, 2021 and recorded on July 29, 2021, as Fresno County No. 2021-0123121 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Miossi Deed of Trust**", and together with the 2017 Deed of Trust, the 2018 Deed of Trust,

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

the 2019A Deed of Trust, the 2019B Deed of Trust, the 2021A Deed of Trust, and the 2021B Deed of Trust, collectively the "**PGIM REF Instrument**" and together with the Westlands Et Al. Instrument, the "**Instruments**" and each an "**Instrument**") , granting to PGIM REF, among other things, a lien on and/or security interest in the real property and personal property described in said PGIM REF Instrument (collectively, the "**PGIM REF Property**" and together with the Westlands Et Al. Property, the "**Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Miossi Deed of Trust is attached hereto as Exhibit 22.

II.   **Relevant Terms of Lender's Loan Documents**.

52.   With respect to the Westland/Fresno Loan Documents, Borrower has the following payment obligations:

a.   Westlands/Fresno Note 1 requires Westlands/Fresno Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 4.82%. Westlands/Fresno Note 1, §§ 2 and 3.1.

b.   Westlands/Fresno Note 1 requires Westlands/Fresno Borrower to make payments of principal on every January 1 and July 1, in the amount of $10,000,000.00, beginning on July 1, 2024. Westlands/Fresno Note 1, § 3.2.

c.   Westlands/Fresno Note 3 requires Westlands/Fresno Borrower to make payments of interest on every January 1, April 1, July 1, and October 1, at a floating rate. Westlands/Fresno Note 3, § 4.1.

53.   With respect to the Kern/Tulare Loan Documents, Borrower has the following payment obligations:

a.   Kern/Tulare Note 1 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.80%. Kern/Tulare Note 1, §§ 2 and 3.1.

b.   Kern/Tulare Note 1 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $1,400,000.00, beginning on January 1, 2021. Kern/Tulare Note 1, § 3.2.

312724440v.7

c.      Kern/Tulare Note 2 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.80%. Kern/Tulare Note 2, §§ 2 and 3.1.

d.      Kern/Tulare Note 2 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $294,000.00, beginning on January 1, 2021. Kern/Tulare Note 2, § 3.2.

e.      Kern/Tulare Note 5 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 6.55%. Kern/Tulare Note 5, §§ 2 and 3.1.

f.      Kern/Tulare Note 5 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $128,480.00, beginning on January 1, 2023. Kern/Tulare Note 5, § 3.2.

54.     With respect to the Devine Loan Documents and Saviez Loan Documents, Borrower has the following payment obligations:

a.      The Devine Note requires Devine Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.65%. Devine Note, §§ 2 and 3.1.

b.      The Devine Note requires Devine Borrower to make payments of principal on every January 1 and July 1, in the amount of $123,520.00, beginning on January 1, 2022. Devine Note, § 3.2.

c.      The Saviez Note requires Saviez Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.12%. Saviez Note, §§ 2 and 3.1.

d.      The Saviez Note requires Saviez Borrower to make payments of principal on every January 1 and July 1, in the amount of $72,840.00, beginning on January 1, 2022. Saviez Note, § 3.2.

55.     With respect to the PGIM REF Loan Documents, Borrower has the following payment obligations:

a.      PGIM REF Note 2 requires PGIM REF Borrower to make payments of interest on every January 1, April 1, July 1, and October 1, at a floating rate. PGIM REF Note 2, § 3.1.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

b.      PGIM REF Note 2 requires PGIM REF Borrower to make payments of principal on every January 1, April 1, July 1, and October 1, in the amount of $162,500.00, beginning on April 1, 2018. PGIM REF Note 2, § 3.2.

c.      PGIM REF Note 3 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 4.70%. PGIM REF Note 3, §§ 2 and 3.1.

d.      PGIM REF Note 3 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $320,000.00, beginning on January 1, 2019. PGIM REF Note 3, § 3.2.

e.      PGIM REF Note 4 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF Note 4, §§ 2 and 3.1.

f.      PGIM REF Note 4 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $223,000.00, beginning on January 1, 2023. PGIM REF Note 4, § 3.2.

g.      PGIM REF Note 5 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.69%. PGIM REF Note 5, §§ 2 and 3.1.

h.      PGIM REF Note 5 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $641,000.00, beginning on January 1, 2020. PGIM REF Note 5, § 3.2.

i.      PGIM REF Note 6 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF Note 6, §§ 2 and 3.1.

j.      PGIM REF Note 6 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $112,000.00, beginning on July 1, 2021. PGIM REF Note 6, § 3.2.

k.      PGIM REF Note 7 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF Note 7, §§ 2 and 3.1.

l.      PGIM REF Note 7 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $129,100.00, beginning on July 1, 2021. PGIM REF Note 7, § 3.2.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

56.     In addition to the real property described above and with respect to each of the Loans, Borrower has granted Lender a first lien and security interest in all Crops (which are generally included in the definition of Property under each Instrument) located on or resulting from the Property as set forth in each Instrument. Instruments, p. 1.

57.     Under the Loan Documents, "Crops" are defined to include "all annual and/or permanent crops and farm products, including without limitation, all pistachios, almonds and other vine or tree crops, all whether mature or immature and whether now or hereafter growing or to be grown on the Land, whether now or hereafter harvested and/or severed from the Land, and whether or not stored on the Land." *Id*. (definition of "Crops").

58.     Further to the security interest granted by Borrower in all Crops, each Instrument also provides that "[t]he security agreement set forth in this Deed of Trust covers all Crops now or hereafter growing on the Land, including, all Crops now or hereafter harvested and/or severed from the Land, whether or not then stored on the Land, and all the products and proceeds thereof." *Id*., § 5.3.

59.     In addition to a pledge of Crops, Borrower has also pledged to Lender a first lien and security interest in the proceeds of Crops, with include "[a]ll accounts and general intangibles (as such terms are defined in Article 9 of the Uniform Commercial Code) arising out of or incident to the ownership, development or operation of the Land and Improvements, all accounts and general intangibles arising out of Crops, and all other tangible and intangible property and rights relating to the Land and Improvements or the operation thereof, or to be used in connection with the Land and Improvements." *Id*. (definition of "Property"); *see also Id*. (definition of "Rents and Proceeds").

60.     Further, under Article 4 of each Instrument, each applicable Borrower made an absolute and unconditional assignment of the Rents and other profits to Lender. The Loan Documents further state that Plaintiff shall be authorized to, among other things, collect the Rents and any profits upon an Event of Default under the Loan Documents. *See*, *e.g. Id*. § 6.1.

61.     As to the Loan Documents, the following terms govern events of default that may arise thereunder:

      a.     An immediate Event of Default occurs if a Borrower does not pay any indebtedness within ten (10) days of its due date. Loan Agreements, § 6.01(a).

24

b.      An immediate Event of Default occurs upon the happening of any material adverse change to any applicable Borrower's or Guarantor's (as defined in the Loan Agreements) financial condition, which affects their ability to perform obligations or pay the indebtedness owed under such Loan Agreement. *Id*., § 6.01(g).

c.      An immediate Event of Default occurs if any Borrower or Guarantor thereunder fails to pay its debts as they become due, with an unpaid balance in excess of $500,000. *Id*., § 6.01(i).

d.      Each Loan Agreement authorizes the applicable Borrower to obtain "Crop Loans" from "Crop Lenders". Saviez Loan Agreement, § 5.06(b); Kern/Tulare Loan Agreement, § 5.06(b); Devine Loan Agreement, § 5.06(b); PGIM REF Loan Agreement, § 5.06(b); Westlands/Fresno Loan Agreement, § 5.07(b).

e.      "Crop Lenders" refer to nationally or regionally recognized financial institution that engages in agricultural lending and whose loan to the applicable Borrower is secured by crops. Saviez Loan Agreement, § 5.06(a); Kern/Tulare Loan Agreement, § 5.06(a); Devine Loan Agreement, § 5.06(a); PGIM REF Loan Agreement, § 5.06(a); Westlands/Fresno Loan Agreement, § 5.07(a).

f.      "Crop Loans" refer to loans or lines of credit secured by crops. Saviez Loan Agreement, § 5.06(a); Kern/Tulare Loan Agreement, § 5.06(a); Devine Loan Agreement, § 5.06(a); PGIM REF Loan Agreement, § 5.06(a); Westlands/Fresno Loan Agreement, § 5.07(a).

g.      Any default under a Crop Loan, beyond the applicable grace periods, is, at Lender's discretion, an automatic Event of Default. Saviez Loan Agreement, § 5.06(c); Kern/Tulare Loan Agreement, § 5.06(c); Devine Loan Agreement, § 5.06(c); PGIM REF Loan Agreement, § 5.06(c); Westlands/Fresno Loan Agreement, § 5.07(c).

h.      The Loan Documents require the applicable Borrower to maintain and irrigate the relevant Property, and otherwise operate and maintain the trees and the relevant Property consistent with prevailing good agricultural and business practices. Loan Agreements, § 4.04(a) and (b); Instruments, § 3.2(a).

62.     Under the Loan Documents, upon the occurrence of an Event of Default Plaintiff is entitled to the appointment of a receiver (with respect to each Loan) as follows:

a.     Each Instrument provides that upon the occurrence of an Event of Default, as defined in the applicable Loan Agreement, each applicable Borrower agrees that the applicable Lender may seek the *ex parte* appointment of a receiver over the relevant Property, without bond, without notice, and without regarding to the value, adequacy, or condition of such Property or the danger of loss, removal, or material injury to such Property. Instruments, § 6.2.

b.     Each Borrower-owner disclaimed any right to notice of an application to appoint a receiver, provided that a subsequent hearing to confirm the appointment of such receiver is held. *Id*.

c.     Each Borrower-owner agreed that it shall not contest the appointment of a receiver and each consented such appointment. *Id*.

63.     One or more Borrower also agreed to the appointment of a receiver in conjunction with the documentation and execution of a Forbearance Agreement (defined below).

64.     Upon the occurrence of an Event of Default, Plaintiff is entitled to the payment of default interest, late charges, and fees and costs (with respect to each Loan), including as follows:

a.     Upon the occurrence of an Event of Default under any Loan, at such Lender's discretion, interest thereon will accrue at the "Default Rate," which is the greater of 18% and four percentage points above the non-default rate, but in no event greater than the maximum rate permitted by applicable law. Loan Agreements, § 2.04.

b.     If any Borrower fails to pay any amounts due under a Note or any other Loan Document within ten (10) days of its due date, then a late charge equal to 5% of the amount of such late payment shall be immediately due and payable. *Id*., § 2.03.

c.     Each Borrower has agreed to pay all costs, fees, and expenses of the applicable Lender incurred in making, administering, or collecting on each Loan, including but not limited to all such amounts incurred in exercising its rights and remedies under the applicable Loan Documents, and such amounts shall incur interest at the Default Rate and be secured by the applicable Instrument. Westlands/Fresno Loan Agreement, § 8.09(f); Devine Loan Agreement,

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

§ 8.09(f); Saviez Loan Agreement, § 8.09(f); PGIM REF Loan Agreement, § 9.10(f); Kern/Tulare Loan Agreement, § 10.09(f).

### III.     The U.S. Bank Loans and the Defaults Thereunder.

65.     Maricopa, C & A, and one or more other Borrower (collectively, "**Third-Party Loan Borrowers**"), are party to that certain Second Amended and Restated Loan and Security Agreement, dated as of March 25, 2019 (the "**U.S. Bank Credit Agreement**"), to which certain lenders and U.S. Bank National Association ("**U.S. Bank**") (as successor-in-interest to MUFG Union Bank, N.A.), in its capacity as administrative agent for the lenders party thereto, are also parties thereto.

66.     Upon information and belief, the proceeds of the U.S. Bank Credit Agreement were used for Third-Party Loan Borrowers' operations, including the growing of crops through 2023, and the U.S. Bank Credit Agreement is secured by crops.

67.     Upon information and belief, the proceeds of the U.S. Bank Credit Agreement were not used for the growing or harvesting of crops by Third-Party Loan Borrowers for the crop year ending in 2024.

68.     Upon information and belief, U.S. Bank is a nationally recognized financial institution that regularly engages in agricultural lending.

69.     As such, the loan evidenced by the U.S. Bank Credit Agreement is a "Crop Loan", and U.S. Bank is a "Crop Lender".

70.     U.S. Bank, Prudential, and PGIM REF are parties to that certain Intercreditor Agreement, dated July 9, 2020 (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**ICA**").

71.     Pursuant to the ICA:

a.      U.S. Bank agreed that Prudential and PGIM REF had a first priority interest in their real property collateral and certain related assets, and that U.S. Bank did not have an interest in such collateral. ICA, §§ 8 and 9;

b.      Prudential and PGIM REF agreed to subordinate their interests in crop collateral, which includes, among other things, certain crops and equipment, to U.S. Bank's interest in such assets, in certain circumstances. *Id*., § 3;

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

c.      Prudential and PGIM REF's subordination shall not apply to any crops for which U.S. Bank does not provide financing to grow and complete the harvesting of crops. *Id*., § 4(a);

d.      In the event that Prudential or PGIM REF acquire or possess any of their real estate collateral, U.S. Bank shall have the opportunity to exercise a temporary license, allowing it to grow and harvest certain crop collateral thereon. *Id*., § 5; and

e.      Any default under the U.S. Bank Credit Agreement constitutes, at Prudential's or PGIM REF's election, an immediate event of default under the Loan Agreements and the Instruments. *Id*., § 6.

72.     The ICA does not provide any cure rights or similar rights to U.S. Bank in the event of any defaults or enforcement actions under or in connection with the Loan Agreements.

**IV.     Initial Events of Default and Forbearance Agreement as to the Westlands/Fresno Loan.**

73.     The stated maturity date of Westlands/Fresno Note 3 was May 1, 2024. Westlands/Fresno Note 3, p. 3.

74.     Upon maturity, Westlands/Fresno Borrower was required to pay all unpaid amounts under Westlands/Fresno Note 3. *Id*., § 4.4. Westlands/Fresno Borrower failed to do so and, as of the date hereof, still has not tendered such payment.

75.     As a result of Westlands/Fresno Borrower's failure to pay all amounts owed under the Westlands/Fresno Note 3 upon its maturity – or any time thereafter – an Event of Default occurred under the Westlands/Fresno Loan Agreement (the "**Maturity Default**").

76.     Upon information and belief, U.S. Bank sent Third-Party Loan Borrowers notices of default on August 8, 2023, November 9, 2023, January 25, 2024, and February 6, 2024 (the "**Initial U.S. Bank Defaults**" and together with the Maturity Default, the "**Initial Defaults**").

77.     Thereafter, Westlands/Fresno Borrower requested that Prudential forbear from exercising its rights and remedies in connection with the Initial Defaults.

78.     As a result, on or about May 29, 2024, Westlands/Fresno Borrower and Prudential entered into that certain Loan Modification and Forbearance Agreement, effective May 1, 2024 (the "**Forbearance Agreement**").

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF
312724440v.7

79.   The Forbearance Agreement included customary terms between the parties, including an obligation by Prudential to forbear until the earlier of October 1, 2024 or the occurrence of a new default under the Westlands/Fresno Loan Documents or the Forbearance Agreement. Forbearance Agreement, Recital F. A true and correct copy of the Forbearance Agreement is attached hereto as <u>Exhibit 23</u>.

80.   Pursuant to the Forbearance Agreement, among other thing:

a.   Westlands/Fresno Borrower agreed that the Initial Defaults occurred and were continuing. *Id*., Recital E and § 1;

b.   Certain of the Westlands/Fresno Loan Documents were amended, including increasing the non-default interest rate on Westlands/Fresno Loan Note 1 from 3.52% to 4.82%. *See*, *e.g.*, *Id*. § 3;

c.   Westlands/Fresno Borrower covenanted and agreed that, among other things, no material adverse changes would occur with respect to its ability to pay the Westlands/Fresno Loan or otherwise affect its business, prospects, or financial condition. *Id*., § 7(y);

d.   Westlands/Fresno Borrower covenanted and agreed that, among other things, no default in payment or acceleration of the maturity of any indebtedness it owes to any third party would occur. *Id*., § 7(dd);

e.   Westlands/Fresno Borrower agreed that their failure to discharge their obligations under the Forbearance Agreement, including failure to uphold or discharge any covenants, constitutes an immediate default under the Forbearance Agreement. *Id*., § 8(a);

f.   Westlands/Fresno Borrower agreed that any Event of Default under the Westlands/Fresno Loan Documents would constitute an immediate default under the Forbearance Agreement. *Id*., § 8(b);

g.   Westlands/Fresno Borrower: (i) agreed that Prudential had the right to the appointment of a receiver; (ii) consented to (and agreed not to contest) the appointment of a receiver; and (iii) agreed to cooperate with such receiver in the event of a new default under the Westlands/Fresno Loan Documents or the Forbearance Agreement. *Id*., § 9.

312724440v.7

**V.    The Subsequent Events of Default After Execution of the Forbearance Agreement.**

81.    Upon information and belief, U.S. Bank sent Third-Party Loan Borrowers a notice of default on June 3, 2024, asserting that certain defaults or events of default under the U.S. Bank Credit Agreement occurred (the "**Subsequent U.S. Bank Default**").

82.    Thereafter, on June 20, 2024, U.S. Bank sent Third-Party Loan Borrowers a notice of acceleration and demand for payment, accelerating the U.S. Bank Credit Agreement and demanding payment for all amounts outstanding under the U.S. Bank Credit Agreement, which amount purportedly equaled at least $149,000,000, plus fees, costs, and other charges. A copy of the notice is attached hereto as Exhibit 24.

83.    That same day, U.S. Bank sent a demand for payment to the guarantors under the U.S. Bank Credit Agreement, which include many of the guarantors of the Loans, demanding payment for all amounts outstanding under the U.S. Bank Credit Agreement, which amount purportedly equaled at least $149,000,000, plus fees, costs, and other charges. A copy of the demand is attached hereto as Exhibit 25.

84.    As set forth above, Maricopa and C & A, among others, are borrowers under the U.S. Bank Credit Agreement. One or both of Maricopa and C & A, among others, are also borrowers under each Loan.

85.    The Initial U.S. Bank Defaults and the Subsequent U.S. Bank Defaults constitute defaults under a "Crop Loan", thereby constituting immediate Events of Default under each Loan Agreement (collectively, the "**Crop Loan Defaults**").

86.    As set forth above, as a result of the U.S. Bank Defaults, U.S. Bank accelerated all amounts owed under the U.S. Bank Credit Agreement, causing at least $149,000,000.00 to be immediately due and owing to U.S. Bank by one or more Borrower and Guarantor.

87.    This acceleration, and the associated defaults under the U.S. Bank Credit Agreement, affect the ability of Borrower and Guarantor to perform the obligations or pay the indebtedness owed under each Loan Agreement, thereby causing an immediate Event of Default under each Loan Agreement (the "**Material Adverse Change Defaults**").

88.    In addition, the Third-Party Loan Borrowers, including one or more Borrower, such as Maricopa and C & A, have failed to pay the accelerated amounts under the U.S. Bank Credit Agreement,

312724440v.7

which amounts exceed $500,000.00, thereby causing an immediate Event of Default under each Loan Agreement (the "**Third-Party Indebtedness Defaults**").

89.     The applicable Borrower failed to pay principal and interest on July 1 on each of Westlands/Fresno Note 1, the Kern/Tulare Notes, the Devine Note, the Saviez Note, and the PGIM REF Notes. Such amounts remain outstanding. As such, an Event of Default occurred under each Loan Agreement (the "**Payment Defaults**").

90.     As set forth above, Westlands/Fresno Borrower covenanted and agreed in the Forbearance Agreement that no material adverse change would occur in their ability to pay the Westlands/Fresno Loan or in their business or financial condition, and that no default in payment or acceleration of the maturity of any indebtedness owed to any other party would occur.

91.     A breach of any covenants under the Forbearance Agreement constitutes an immediate default thereunder.

92.     As a result of the Subsequent U.S. Bank Default, over $149,000,000 became immediately due and owing, and has not been paid. This constitutes a failure of Westlands/Fresno Borrower to uphold their covenants that no material adverse change would occur in their business or financial condition and that they would not allow any payment default or acceleration under any third-party loan.

93.     Such failures constituted immediate defaults under the Forbearance Agreement (the "**Forbearance Covenant Defaults**").

94.     In addition, each of the Crop Loan Defaults, Material Adverse Change Defaults, Third-Party Indebtedness Defaults, and Payment Defaults under the Westlands/Fresno Loan Documents constitute immediate defaults under the Forbearance Agreement (the "**Cross-Defaults**" and together with the Initial Defaults, Subsequent U.S. Bank Default, Crop Loan Defaults, Material Adverse Change Defaults, Third-Party Indebtedness Defaults, Payment Defaults, and Forbearance Covenant Defaults, the "**Existing Defaults**").

95.     As a result of the Existing Defaults, on July 3, 2024, each applicable Lender sent each applicable Borrower a notice of default, termination of forbearance, and acceleration with respect to the Westlands/Fresno Loan (the "**Westlands/Fresno Notice**") and a notice of default and acceleration with respect to each of the Kern/Tulare Loan, the Devine Loan, the Saviez Loan, and the PGIM REF Loan

(collectively with the Westlands/Fresno Notice, the "**Default Notices**"). True and correct copies of the Default Notices are attached hereto as <u>Exhibit 26</u>.

96.     The Westlands/Fresno Notice notified Westlands/Fresno Borrower that certain of the Existing Defaults had occurred, that the forbearance under the Forbearance Agreement had terminated, that interest had been accruing on the Westlands/Fresno Loan at the default rate since February 14, 2024, and that the Westlands/Fresno Loan had been accelerated.

97.     The other Default Notices notified the applicable Borrower that certain of the Existing Defaults had occurred, that interest had been accruing on the Westlands/Fresno Loan at the default rate since June 3, 2024, and that the applicable Loan had been accelerated.

## VI.   <u>Without the Appointment of a Receiver to Manage the Property and Allow Lender to Provide Additional Funding, There Is Imminent Danger to The Property</u>.

98.     On information and belief, Borrower has provided certain crops to Touchstone Pistachio Company LLC, a processor and producer of pistachio products ("**Touchstone**"). On information and belief, Touchstone has common ownership and management with Borrower.

99.     On information and belief, Touchstone has not paid Borrower for pistachios delivered by Borrower to Touchstone for at least the last several months.

100.    Under the Loan Documents, the pistachios delivered by Borrower to Touchstone constitute "Crops" subject to the first lien security interests of Lender. Moreover, the amounts owed by Touchstone to Borrower for such Crops constitute the proceeds of Lender's collateral and are also subject the first lien security interests of Lender.

101.    Subsequent to the Default Notices and during ongoing discussions with Borrower, Borrower has indicated that:

a.     Trees on the Property need to be sprayed every six days until harvest, which will be occurring over the next several weeks. If one spray is missed then the trees may be unaffected, but missing two sprays will cause damage to the trees that will take several years to recover;

b.     Without regular watering, the pistachio trees may survive (but be damaged) but the almond trees on the Property will die. These pistachio and almond trees are subject to the first lien security interests of Lender; and

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

c.      Borrower has significant cash flow and liquidity issues that are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Property and care for the trees and plants located on the Property and pay the other expenses associated with such case.

102.    Further exacerbating the need to maintain the Property, including the trees and the Crops, on information and belief, pistachio harvest "takes place anywhere from late–August to early–October when the fruit is mature and the shell has split."[1] As a result, Borrower will need to harvest the pistachio Crops within the next several weeks, which will require Borrower to expend significant resources.

103.    On information and belief, Borrower does not have the resources to harvest the pistachio Crops.

104.    As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Property, which, along with the revenue generated by its operations, is the primary source for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower.

105.    Under California law and as provided in the Loan Documents, Plaintiff has the right to the appointment of a receiver. Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Property, its revenue and all of the other collateral that Borrower pledged as security for the Loans.

106.    Plaintiff intends to provide additional funding to the appointed receiver to allow it to maintain and manage the Property, including the trees and plants located thereon, and to complete the harvest of its Crop collateral.

**FIRST CAUSE OF ACTION**
(Breach of Contract, Appointment of Receiver, Accounting, and
Specific Performance of Right to Possession Clause
Under California Code of Civil Procedure Sections
564(a), 564(b)(2), 564(b)(9), and 564(b)(11)
Against All Defendants)

107.    Plaintiff realleges paragraphs 1 through 106, inclusive, and by this reference incorporates the same as though fully set forth herein.

---

[1]     *See* https://americanpistachios.org/growing-and-harvesting.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

108.   Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the various Instruments, and the lawful owner of all of the other Loan Documents.

109.   Plaintiff has performed all of the terms and conditions required on their part to be performed pursuant to each of the Loan Documents and, in particular, pursuant to the Notes, the Loan Agreements, the Instruments, and the other Loan Documents.

110.   As set forth above, the Loan Documents, among other things: (i) require Borrower to pay each Note upon maturity; (ii) prohibit Borrower from defaulting under any Crop Loans; (iii) prohibit any material adverse changes to Borrower's financial condition, which affect their ability to perform obligations or pay the indebtedness; (iv) prohibit Borrower from failing to pay its debts as they become due; and (v) require Borrower to pay certain periodic amounts under the Notes.

111.   Any defaults under any other Loan Documents constitute immediate defaults under the Forbearance Agreement.

112.   Borrower breached the Loan Documents by committing the Maturity Default, the Initial U.S. Bank Defaults, the Subsequent U.S. Bank Default, the Crop Loan Defaults, the Material Adverse Change Defaults, the Third-Party Indebtedness Defaults, the Payment Defaults, the Forbearance Covenant Defaults and the Cross-Defaults.

113.   Each of the foregoing caused a default under and breach of the Forbearance Agreement.

114.   Lender notified each applicable Borrower of the Existing Defaults, each applicable Borrower has failed to cure the Existing Defaults, and all applicable cure periods, if any, have expired.

115.   As a direct and proximate result of Borrower's numerous breaches, Lender has suffered damages in an amount to be determined.

116.   Under Article 4 of each Instrument, the Defendant-owners made an absolute and unconditional assignment of the Rents and other profits to Plaintiff. The Loan Documents further state that Plaintiff shall be authorized to, among other things, collect the Rents and any profits upon an Event of Default under the Loan Documents.

117.   Further, in Section 6.2 of each Instrument, Defendant-owners expressly consented to, and agreed not to contest, the appointment of a receiver for the Property upon an Event of Default under the Loan Documents.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

118.    As detailed above, Borrower committed numerous defaults under the Loan Documents including by, among other things, failing to make its required monthly payments as and when due under the Loan Documents.

119.    Also, as detailed above, pursuant to the Default Notices, Plaintiff delivered written notice to Borrower of the various Existing Defaults and accelerated and demanded payment of all amounts due under the Loan Documents.

120.    Borrower failed to pay the amounts due, and cure the numerous other Existing Defaults, following receipt of the Default Notices.

121.    Section 6.2 of each Instrument provides that, upon an Event of Default under the Loan, Plaintiff "may apply *ex parte* to any court having jurisdiction to appoint a Receiver without bond to enter upon and take possession of the Property to enter upon and take possession of the Property" and collect the Rents and any profits, as a matter of strict right and without regard to the adequacy of the security for the repayment of the Loans.

122.    Due to Borrower's defaults, there is a real danger that the Property will suffer waste resulting in irreparable harm to Plaintiff if a receiver is not appointed to manage and protect the Property.

123.    It is impractical and impossible for Plaintiff to enjoy the rights granted to them or enforce the obligations of Borrower under the Loan Documents without the appointment of a receiver who has the power and authority to take possession of, manage, and operate the Property, and collect the Rents and any profits derived therefrom.

124.    Plaintiff has no plain, speedy, or adequate remedy at law to enforce the provisions of the Instruments as set forth herein, and will suffer irreparable harm unless equitable relief is granted and a receiver is appointed to manage, operate, and control the Property.

125.    By appointing a receiver, funds that might otherwise be lost will be preserved to maintain and operate the Property.

126.    A receiver should be appointed and granted the general powers and duties of a court-appointed receiver, including the power to bring and defend actions in his own name as receiver, to take and keep possession of the Property, to receive rents and any profits, collect debts, to make transfers, and

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

generally to do such acts respecting the Property as the Court may authorize pending forthcoming foreclosure under the Instruments.

127.    Plaintiff is entitled to have Borrower specifically perform the express and agreed upon terms, conditions, and provisions of the Loan Documents which would enable Plaintiff to enjoy the rights granted to them under the Loan Documents, and hereby seek an order requiring Borrower, and their agents, employees, officers, directors, affiliates, and representatives, to turn over to the receiver those items set forth in the prayer of this Complaint.

128.    Under the terms of the Loan Documents, Borrower agreed to pay the costs and expenses incurred by Plaintiff in connection with the exercise or enforcement of Plaintiff's rights and remedies under the Loan Documents.

### SECOND CAUSE OF ACTION
(For Injunctive Relief Against All Defendants)

129.    Plaintiff realleges paragraphs 1 through 128, inclusive, and by this reference incorporates the same as though fully set forth herein.

130.    To enable the receiver to properly and effectively carry out his or her specific and general duties and powers, and to prevent Plaintiff from suffering irreparable injury, Plaintiff seeks a preliminary injunction and permanent injunction enjoining Defendant and their agents, partners, property managers, employees, officers, directors, affiliates, assigned successors, representatives, and all persons acting under, in concert with or for them, from performing the actions specified in the prayer of this Complaint.

### PRAYER

ON THE FIRST CAUSE OF ACTION:

(a)    For damages as proven at trial and interest, including prejudgment and post-judgment interest;

(b)    That the Court enforce the provisions of California Code of Civil Procedure Sections 564(a), 564(b)(2), 564(b)(9), and 564(b)(11) by specifically enforcing the rents-and-profits clauses and the express consent to the appointment of a receiver clauses in the Loan Documents, and appoint a receiver to bring and defend actions in his or her own name as receiver, to take and keep possession of the Property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

to do such acts respecting the Property as the Court may authorize pending the forthcoming foreclosure under the Instruments;

(c)   For an order decreeing that Borrower and their officers, directors, agents, property managers, architects, contractors, subcontractors, and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, except Plaintiff:

1.   Shall relinquish and turn over possession of the Property to the receiver upon his or her appointment becoming effective;

2.   Shall turn over to the receiver and direct all property managers and other third parties in possession thereof to turn over all keys, leases, books, records, books of account, ledgers, operating statements, budgets, real estate tax bills, and all other business records relating to the Property, wherever located, and in whatever mode maintained, including information contained on computers and any and all software relating thereto as well as all banking records, statements, and canceled checks;

3.   Shall turn over to the receiver all documents which pertain to all licenses, permits, or government approvals relating to the Property and shall immediately advise the receiver of their Federal Taxpayer Identification Numbers used in connection with the operation of the Property;

4.   Shall immediately advise the receiver as to the nature and extent of insurance coverage on the Property. Borrower shall immediately name the receiver as an additional insured on the insurance policy(ies) for the period that the receiver shall be in possession of the Property. Borrower shall be prohibited from canceling, reducing, or modifying any and all insurance coverage currently in existence with respect to the Property; and

5.   Shall immediately turn over to the receiver any monies (including, but not limited to, security deposits, prepaid rent, or funds in property management bank accounts for the Property) which represent net rental or lease payments with respect to the Property or any amounts due and owing to Borrower with respect to Crops or the Rents and Proceeds thereof. Any tenants occupying, using, or leasing the Property, or any portion thereof, and any parties owing funds to Borrower resulting from Crops or the Rents and Proceeds thereof shall therefore make payments to the receiver.

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

(d)     For an accounting by Borrower of the Rents, any amounts owed with respect to Crops or the Rents and Proceeds thereof to Borrower, and any profits;

(e)     For costs of suit incurred herein to be added to the indebtedness owing by Borrower to Plaintiff;

(f)     For attorneys' fees incurred herein to be added to the indebtedness owing by Borrower to Plaintiff; and

(g)     For such other and further relief as the Court may deem just and proper.

ON THE SECOND CAUSE OF ACTION:

(a)     That the Court enter a preliminary injunction and permanent injunction enjoining Borrower and their agents, partners, property managers, employees, officers, directors, affiliates, assignees, successors, and representatives and all persons acting under, in concert with, or for them, from:

1.     Committing or permitting any waste on the Property or any part thereof, or suffering or committing or permitting any act on the Property or any part thereof in violation of law, or removing or otherwise disposing of any of the Property or the fixtures presently on the Property or any part thereof;

2.     Demanding, collecting, receiving, discounting, or in any other way diverting or using any of the Rents and any profits from the Property;

3.     Directly or indirectly interfering in any manner with the discharge of the receiver's duties or the receiver's possession of and operation or management of the Property; and

4.     Doing any act which will, or which will tend to impair, defeat, divert, prevent, or prejudice the preservation of the Property, including the Rents, or any amounts due and owing to Borrower with respect to Crops or Crop Collateral, and any profits, or the preservation of Plaintiff's interest in the Property, the Crops and/or Crop Collateral, and the Rents and any profits.

(b)     For cost of suit incurred herein to be added to the indebtedness owing by Borrower to Plaintiffs;

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7

(c)     For attorneys' fees incurred herein to be added to the indebtedness owing by Borrower to Plaintiff; and

(d)     For such other and further relief as the Court may deem just and proper.


DATED: September 16, 2024                     Respectfully submitted,

                                              SEYFARTH SHAW LLP


                                              By: /s/ M. Ryan Pinkston
                                                  M. Ryan Pinkston

                                                  Attorneys for Plaintiffs
                                                  THE PRUDENTIAL INSURANCE
                                                  COMPANY OF AMERICA; and PGIM
                                                  REAL ESTATE FINANCE, LLC

COMPLAINT FOR RECEIVER, INJUNCTIVE RELIEF, AND RELATED RELIEF

312724440v.7