1  SEYFARTH SHAW LLP
   M. Ryan Pinkston (SBN 310971)
2  rpinkston@seyfarth.com
   Brandon K. Franklin (SBN 303373)
3  bfranklin@seyfarth.com
   560 Mission Street, 31st Floor
4  San Francisco, California 94105
   Telephone: (415) 397-2823
5  Facsimile: (415) 397-8549

6  Attorneys for Plaintiffs
   THE PRUDENTIAL INSURANCE COMPANY
7  OF AMERICA; AND PGIM
   REAL ESTATE FINANCE, LLC

8
                    **IN THE UNITED STATES DISTRICT COURT**
9
                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and PGIM REAL ESTATE FINANCE, LLC, | Case No. 1:24-cv-01102-KES-SAB |
| Plaintiff, | |
| v. | **PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION** |
| ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE, | Complaint Filed: September 16, 2024 |
| Defendant. | |

PLAINTIFFS' *EX PARTE* MOTION FOR ORDER
APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

### *EX PARTE* MOTION FOR APPOINTMENT OF
### RECEIVER AND FOR PRELIMINARY INJUNCTION

Now come Plaintiff THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PGIM REAL ESTATE FINANCE, LLC (collectively, "**Plaintiff**") each in its own capacity as a lender and PGIM REF also in its capacity as special servicer for and on behalf of PAR U HARTFORD LIFE & ANNUITY COMFORT TRUST, a New York trust ("**Hartford Trust**" and together with Plaintiff, "**Lender**"), by and through their counsel, and for their *Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction* (the "**Motion**"), state as follows:

### INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 66, Plaintiff requests the appointment of a receiver in order to protect and preserve the real and personal property (the "**Property**"), as more fully described in Plaintiff's Complaint for (1) *Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents-and-Profits Clause; and (2) Injunctive Relief* filed contemporaneously herewith (the "**Complaint**"), that is owned by Defendant (as defined in the Complaint). Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint. Plaintiff also requests that the order appointing the receiver allow the Receiver to sell the Property pursuant to further court order.

On September 16, 2024, Plaintiff filed the Complaint against Defendant for breach of contract, appointment of receiver, accounting, specific performance of rents and profits clause, and injunctive relief. Although Plaintiff's investigation is far from complete, it is beyond doubt that Defendant is in default under the operative Loan Documents, it appears that Borrower cannot become current under the Loan Documents. It is also readily apparent that Borrower may stop operating and maintaining both the Property, including the Crops being grown thereon, due to insufficient funds beyond Monday of next week. However, upon information and belief,

1   Borrower will not have sufficient funds to operate after Friday of this week. *See* Borrower

2   Weekly Cash Flows, attached hereto as Exhibit A.[1]

3         This action will ensure that Plaintiff and all other creditors of Borrower shall have the
4   Property protected and preserved and rents and proceeds of Crops collected and applied to the
5   costs and expenses of the Property. Accordingly, Plaintiff requests that this Court issue an order
6   appointing a receiver over the Property and enjoining any and all Defendants from interfering
7   with Plaintiff's rights to collect the rents, issues, and profits derived from the Property, and from
8   interfering with the receiver's maintenance and operation of the Property during the pendency of
9   these proceedings. Plaintiff also request that the order appointing the receiver allow the receiver
10  to sell the Property pursuant to further court order.

## **STATEMENT OF FACTS**

12        This action arises out of the Borrower' numerous defaults under the Loans that Lender
13  has made to Borrower over the years, along with Borrower's inability to fund the management
14  and upkeep of the Property, including the Crops, thereby harming Lender's collateral and the
15  interests of all of the Borrower's creditors. A full and complete recitation of the background facts
16  in this matter, including detailed descriptions of the various Loans and Loan Documents, are
17  contained in over 33 pages of the Complaint and for efficiency's sake will not be repeated herein
18  but will be incorporated by reference thereto. Plaintiff also submits the Declaration of William
19  Sciacqua in support of its factual allegations, attached hereto as **Exhibit B**.

20        However, of specific import for this Motion, Borrower is in default under the operative
21  Loan Documents. Further, Plaintiff has learned that Borrower is also in default under loan
22  documents from other lenders that are not currently a plaintiff to this matter. Nonetheless, these
23  defaults also constitute events of default under the operative Loan Documents in this matter.
24  Plaintiff does not know how many additional defaults to how many additional lenders or
25  creditors currently exist, but these defaults (and the acceleration of related, underlying loans)

---

[1] The Borrower Weekly Cash Flows were prepared by Borrower and their financial advisors, and Borrower's financial advisors provided the forecast to Lender on or about September 13, 2024.

1 create a precarious financial situation for Borrower and its related entities. This financial strain
2 and lack of operating cash flow places the Property in serious peril.

3 In an attempt to remedy these issues, Lenders have been working with Borrower over the
4 last two months to negotiate and execute forbearance agreements. These forbearance agreements
5 are part of a broader refinancing of certain of Borrower's third-party loans, which would result in
6 additional operating capital flowing to Borrower to fund its operations, including the
7 maintenance of the Property and the harvesting of the Crops. Without this additional financing,
8 Borrower would have insufficient funds to do so. Despite these good faith efforts from all sides,
9 those negotiations have come to a stand-still with no acceptable resolution to the existing
10 defaults or the broader refinancing transaction. Borrower continues to suffer from substantial
11 operating shortfalls, negatively impacting its operations and ability to both service its debt and
12 maintain the Property.

13 On information and belief, Borrower has provided certain crops to Touchstone Pistachio
14 Company, a processor and producer of pistachio products ("**Touchstone**"). On information and
15 belief, Touchstone has common ownership and management with Borrower. On information and
16 belief, Touchstone has not paid Borrower for pistachios delivered by Borrower to Touchstone for
17 at least the last several months.

18 Under the Loan Documents, the pistachios delivered by Borrower to Touchstone
19 constitute "Crops" subject to the first lien security interests of Lender. Moreover, the amounts
20 owed by Touchstone to Borrower for such Crops constitute the proceeds of Lender's collateral
21 and are also subject to the first lien security interests of Lender. Generally, Lender would have a
22 first position, priority security interest in all of the 2024 Crops so long as the growing and
23 harvesting of the same are not financed by a third-party lender.

24 Borrower has indicated to Plaintiff that:
25     a. Trees on the Property need to be sprayed every six days until harvest,
26 which began early last week. If one spray is missed then the trees may be unaffected, but
27 missing two sprays will cause damage to the trees that will take several years to recover;
28

3

      b.    Without regular watering, the pistachio trees may survive but the almond trees on the Property will die. These pistachio and almond trees are subject to the first lien security interests of Lender; and

      c.    Borrower has significant cash flow and liquidity issues, and estimate that they will have insufficient funds to operate beyond Monday of next week. These issues are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Property and care for the trees and plants located on the Property.

Further exacerbating the need to maintain the Property, including the trees, on information and belief, pistachio harvest "takes place anywhere from late-August to early-October when the fruit is mature and the shell has split."[2] As a result, Borrower has just begun harvesting the pistachio Crop, requiring Borrower to expend significant resources. On information and belief, Borrower does not have the resources to complete the harvest of the pistachio Crop and will in fact have insufficient funds to operate beyond this Friday or, at the latest, next Monday.

As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Property, which, along with the revenue generated by its operations, are the primary sources for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower.

Under federal and California law and as provided in the Loan Documents, Plaintiff has the right to the appointment of a receiver. Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Property, its revenue, and all of the other collateral that Borrower pledged as security for the Loans. Plaintiff also has the right to a preliminary injunction because it faces irreparable harm should Defendant, its officers and directors, affiliates, creditors or other

---

[2] *See* https://americanpistachios.org//growing-and-harvesting.

4

interested parties not be prohibited from interfering with the Receiver in the performance of is duties herein.

Plaintiff intends to provide additional funding to Receiver to allow it to maintain and manage the Property, including the trees and plants located thereon, and to complete the harvest of the Crops.

On account of the foregoing and also on account of facts and information presently only within Defendant' possession, custody, or control, Plaintiff brings the Complaint and this request for the appointment of a receiver, for an accounting, for specific performance, and for injunctive relief.

## ARGUMENT AND LEGAL AUTHORITY

### 1. THE COURT SHOULD APPOINT A RECEIVER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 66

Federal Rule of Civil Procedure 66 provides, in relevant part,

"The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules."

Federal law governs the appointment of a receiver in a diversity case. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291-1292 (11th Cir. 1998); *New York Life Ins. Co. v. Watt West Investment Corp.*, 755 F. Supp. 287 (E.D. Cal. 1991). "The primacy of the federal rules in diversity actions is well-settled." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). "Indeed, as the Eleventh Circuit reasoned in *National Partnership*, 'to the extent Rule 66 dictates what principals should be applied to federal receiverships, courts must comply with the Rule even in the face of differing state law'." *Id*.

According to federal law, the appointment of a "receiver is an extraordinary equitable remedy" and must be used with caution. *Id*. at 844 (quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)). "However, there is 'no precise formula for

5

determining when a receiver may be appointed'." *Id*. Instead, federal courts consider a variety of factors when determining whether to appoint a receiver, including:

1. Whether the party seeking the appointment has a valid claim;
2. Whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant;
3. Whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered;
4. Whether legal remedies are inadequate;
5. Whether the harm to the plaintiff by denial of the appointment would outweigh the injury to the party opposing appointment;
6. The plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and
7. Whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id.*; 12 Wright Miller & Marcus Federal Practice & Procedure: Civil, § 2983 (2d ed. 2011); *see also New York Life Ins. Co.*, 755 F. Supp. 287 (E.D. Cal. 1991) (appointing a receiver for real property in circumstances similar to this case).

As to the first element, Plaintiff has alleged in the Complaint that Borrower has committed numerous defaults under the Loan Documents, including failing to pay their obligations under the Loan Documents when and as due. While the Complaint in the above-captioned action has just been filed, these are allegations that Borrower cannot deny and, in fact, Borrower has already acknowledged and admitted to certain of these defaults in the Forbearance Agreement. In addition, the size of the obligations due and owing from Borrower are such that Borrower has no real ability to cure the existing defaults. Thus, Plaintiff has a substantial, ongoing, valid claim in excess of $700 million against Borrower and the first element weighs in favor of the appointment of a receiver.

As to the second element, while there is no evidence of fraudulent conduct on the part of Borrower as of yet, Plaintiff continues its investigation into Borrower and this matter, so this element neither weighs in favor or against the appointment of a receiver.

As to the third element, Borrower is experiencing extreme financial difficulties and has explicitly stated to Plaintiff it will not be able to continue operating without additional funds, including being unable to maintain the Crops and the trees, and in fact will not have sufficient

6

funds to operate after this Friday or, at the latest, next Monday. As Borrower has indicated, if the trees and Crops on the Property are not cared for, substantial and long-lasting damage is likely to occur in the next several weeks and beyond. This element alone should warrant the appointment of a receiver, but at the very least certainly weighs heavily in favor of the immediate appointment of a receiver.

As to the fourth element, legal remedies are inadequate. The Property, including the Crops thereon, are under an immediate threat of damage, thereby threatening the value of Plaintiff's collateral and its ability to recover. Moreover, given the precarious financial condition of Borrower, a money judgment would likely be meaningless. Thus, this factor weighs in favor of a receiver as well.

As to the fifth element, there would be no real injury to Borrower (or the non-Borrower Defendant) caused by the immediate appointment of a receiver. The receiver would simply take possession and preserve and protect the property. On the other hand, the potentially catastrophic damage to Plaintiff from denial of the appointment of a receiver weighs in favor of such an appointment.

As to the sixth element, as already discussed, Borrower has committed several substantial, continuing defaults under the Loan Documents. Borrower has no real defense to these various defaults, including unpaid amounts under each Note, and in fact has already acknowledged and admitted to several of these defaults in the Forbearance Agreement. The amounts due and owing to the Plaintiff as a result of those defaults continue to increase on a daily basis. Combined with the physical damage to the Property, including the trees and the Crops, which is likely to result without the appointment of a receiver, this factor also weighs in favor of the appointment of a receiver.

Finally, as to the seventh element, Plaintiff interests in the Property would be well served by the appointment of a receiver as the receiver could preserve and protect the Property while the rest of the above-captioned action as well as the forthcoming foreclosure under the Instruments is concluded. Without the appointment of a receiver, the Property – and thus Plaintiff's collateral –

would be placed in substantial risk as Borrower will run out of sufficient funds to operate and maintain the Property after this Friday or, at the latest, next Monday. This factor also weighs in favor of the appointment of a receiver.

In addition to the foregoing, Borrower has already consented to, and agreed not to contest, the appointment of a receiver. Each Instrument, as well as the Forbearance Agreement, contains an explicit agreement by each Borrower that is a party thereto that they agree to, and will not contest, the appointment of a receiver upon the occurrence of an event of default under the applicable Loan Documents. These explicit agreements further weigh in favor of the appointment of a receiver.

### 2. THE COURT SHOULD GRANT PLAINTIFF A PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 55 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

Plaintiff has laid out above the validity of its claim. The amounts due and owing under the Loan Documents, the defaults thereunder, and the impossibility to cure any such defaults given the size of the obligations also establish Plaintiff's likeliness to succeed on the merits of its claim. Additionally, Plaintiff has also shown above that it is likely to suffer irreparable harm in the absence of relief, and that the balance of the equities tips in its favor. Finally, once the Court appoints a receiver herein, an injunction benefits the public interest because the receiver needs to be able fulfill his duties and obligations without potentially disruptive interference.

### 3. THE COURT SHOULD APPOINT LANCE MILLER OF PIVOT MANAGEMENT GROUP, LLC AS RECEIVER

The Plaintiff requests that Lance Miller of Pivot Management Group, LLC ("**Mr. Miller**") be appointed as receiver herein. Mr. Miller's declaration in support for his proposed receivership is attached hereto as **Exhibit C**, which, among other things, provides for an overview of Pivot Management Group, LLC generally and a proposed fee schedule, and attaches the proposed receiver's *curriculum vitae* and bios on certain other expected team members

8

assisting the proposed receiver. These documents demonstrate that the proposed receiver is experienced in the maintenance, management, and daily operation of properties similar to the Property and, along with his proposed team, has a wealth of experience as a receiver.

## **CONCLUSION**

Based upon all of the foregoing factors, pursuant to Federal Rule of Civil Procedure 66, Plaintiff respectfully submits that a receiver must be appointed in the above-captioned action to preserve and protect the Property pending a resolution of the above-captioned action. Plaintiff also respectfully request the entry of a preliminary injunction to prevent parties from interfering with the Receiver or the Receivership Property during the pendency of this receivership.

WHEREFORE, in view of the foregoing, the Plaintiff hereby request that the Court enter an Order:

(i) appointing <u>Lance Miller</u> of <u>Pivot Management Group, LLC</u> as receiver to operate, preserve, and protect the Property, to collect the rents from and pay the expenses of the Property (including the fees and expenses of the receiver), to turn over the net rents (if any) to the Plaintiff on a monthly basis, and to take such other and further actions with regard to the Property as are permitted by the Order and applicable law;

(ii) enjoining the Defendant, its officers and directors, vendors, and any and all third parties from interfering with the Receiver or the Receivership Property during the pendency of the receivership; and

(iii) providing the Plaintiff such other and further relief as the Court deems just and appropriate.

DATED: September 18, 2024    SEYFARTH SHAW LLP

By   /s/ M. Ryan Pinkston
      M. Ryan Pinkston
      Attorneys for Plaintiffs

9

PLAINTIFFS' *EX PARTE* MOTION FOR ORDER
APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION