# EXHIBIT B

SEYFARTH SHAW LLP
M. Ryan Pinkston (SBN 310971)
rpinkston@seyfarth.com
Brandon K. Franklin (SBN 303373)
bfranklin@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Plaintiffs
The Prudential Insurance Company
Of America and PGIM
Real Estate Finance, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PGIM REAL ESTATE FINANCE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE.<br><br>Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br><br><br><br><br><br><br><br><br>**DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION** |

I, William Sciacqua, declare as follows:

1.      I am an Executive Director of PGIM Real Estate Finance, LLC, a Delaware limited

liability company ("**PGIM REF**"). The Prudential Insurance Company of America, a New Jersey

corporation ("**Prudential**" and together with PGIM REF, "**Plaintiff**"), and PGIM REF, each in its own capacity as a lender and PGIM REF also in its capacity as special servicer for and on behalf of PAR U HARTFORD LIFE & ANNUITY COMFORT TRUST, a New York trust ("**Hartford Trust**" and together with Plaintiff, "**Lender**"), are the plaintiffs in the above-captioned case.

2.      I have personal knowledge of the matters set forth in this declaration, either through firsthand experience or from my personal review of Lender's records over which I am a custodian. Those records were kept and made in the ordinary course of Lender's business at or near the time of the act or occurrence described therein by someone with knowledge thereof including, without limitation, those documents accompanying Plaintiff's Complaint for (1) Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents-and-Profits Clause; and (2) Injunctive Relief (the "**Complaint**") as Exhibits 1-26. I make this declaration based on such personal knowledge. If called upon as a witness in this case, I could and would testify competently to the truth thereof.

3.      I have personal knowledge of, among other things, the Plaintiff, the Borrower, the Loans, the Loan Documents, and the Property (as those terms are defined in the Complaint), as well as the facts and circumstances surrounding the same, including but not limited to the facts and circumstances which give rise to the Complaint herein.

4.      Borrower owns and operates a pistachio and almond farming operation spanning multiple counties in and around Central California. Lender is one of a handful of financial institutions that have provided funding to the Borrower and taken security interests in and to Borrower's assets, including but not limited to those assets described herein which form the basis of Lender's collateral.

## I.      THE LOAN AND THE LOAN DOCUMENTS.

5.      Lender has made multiple loans to Borrower, as summarized below. Each Loan is in default by its terms, and Lender has accelerated each Loan.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

**A.      The Westlands/Fresno Loan.**

6.      Prudential previously made those certain loans to Borrower Maricopa, ACDF, Assemi, C & A, Cantua, Gradon, Granville, Lincoln, Panoche, Sageberry, and GV AG (collectively, "**Westlands/Fresno Borrower**") in the aggregate original principal amount of Five-Hundred Fifty Million Dollars ($550,000,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Westlands/Fresno Loan**") pursuant to that certain Loan Agreement dated as of March 11, 2022 (the "**Westlands/Fresno Closing Date**") by and among Westlands/Fresno Borrower and Prudential (as the same has been or may be modified from time to time, including by that certain Loan Modification Agreement, dated April 25, 2022, that certain Second Loan Modification Agreement, dated March 28, 2023, that certain Third Loan Modification Agreement, dated March 29, 2023, and that certain Fourth Loan Modification Agreement, dated May 4, 2023, the "**Westlands/Fresno Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the Westlands/Fresno Loan, including without limitation, any and all documents amending and modifying the terms of the Westlands/Fresno Loan, collectively, the "**Westlands/Fresno Loan Documents**"). A true and correct copy of the Westlands/Fresno Loan Agreement is attached to the Complaint as Exhibit 1.

7.      The Westlands/Fresno Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of the Westlands/Fresno Closing Date, made by Westlands/Fresno Borrower and payable to Prudential, in the principal amount of $500,000,000.00 (Loan No. 717612168) ("**Westlands/Fresno Note 1**"); and (ii) that certain Promissory Note, dated as of May 4, 2023, made by Westlands/Fresno Borrower and payable to Prudential, in the principal amount of $50,000,000.00 (Loan No. 717612340) ("**Westlands/Fresno Note 3**", and collectively with Westlands/Fresno Note 1, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**Westlands/Fresno Notes**"). As of July 1, 2024, the outstanding principal balance of the Westlands/Fresno Loan is $550,000,000.00, the outstanding interest accrued on Westlands/Fresno Note 1 is $9,883,333.33 and the outstanding interest accrued

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

on Westlands/Fresno Note 3 is $0.00. True and correct copies of the Westlands/Fresno Notes are attached to the Complaint as <u>Exhibit 2</u>.

8.     The Westlands/Fresno Loan and the Westlands/Fresno Notes are secured by, among other things: (i) that certain Fresno Deed of Trust recorded March 21, 2022, as Fresno County Recorder's No. 2022-0036711, as amended by that certain Modification to Deed of Trust (Fresno County) recorded March 30, 2023, as Fresno County Recorder's No. 2023-0030804, by that certain Second Modification to Deed of Trust (Fresno County) recorded May 9, 2023 as Fresno County Recorder's No. 2023-0043221, and by that certain Third Modification to Deed of Trust (Fresno County) executed by ACDF, C & A, Cantua, Gradon, Granville, Maricopa, Panoche, and Sageberry to Prudential, recorded June 29, 2023 as Fresno County Recorder's No. 2023-0060288; (ii) that certain Kern Deed of Trust, recorded March 21, 2022, as Kern County Recorder's No. 222043952, as amended by that certain Modification to Deed of Trust (Kern County) recorded March 30, 2023 as Kern County Recorder's No. 223036184, by that certain Second Modification to Deed of Trust (Kern County) recorded May 9, 2023 as Kern County Recorder's No. 223054287, and by that certain Third Modification to Deed of Trust (Kern County) executed by ACDF, C & A, Maricopa, and GV AG to Prudential, recorded June 29, 2023 as Kern County Recorder's No. 223075826; (iii) that certain Kings Deed of Trust, recorded March 21, 2022, as Kings County Recorder's No. 2205342, as amended by that certain Modification to Deed of Trust (Kings County) recorded on March 30, 2023 as Kings County Recorder's No. 2304689, by that certain Second Modification to Deed of Trust (Kings County) recorded May 9, 2023, as Kings County Recorder's No. 2306898, and by that certain Third Modification to Deed of Trust (Kings County) executed by Lincoln and Cantua to Prudential recorded June 29, 2023, as Kings County Recorder's No. 2309463; (iv) that certain Madera Deed of Trust, recorded March 21, 2022, as Madera County Recorder's No. 2022008052, as amended by that certain Modification to Deed of Trust (Madera County) recorded on March 30, 2023 as Madera County Recorder's No. 2023006134, by that certain Second Modification to Deed of Trust (Madera County) recorded May 9, 2023 as Madera County Recorder's No. 2023008790, and by that certain Third Modification to Deed of Trust

4

(Madera County) executed by ACDF and Assemi to Prudential recorded June 29, 2023 as Madera County Recorder's No. 2023012199; and (v) that certain 2023 Deed of Trust, recorded March 30, 2023 as Fresno County Recorder's No. 2023-0030812, as amended by that certain Modification to Deed of Trust (2023 Deed of Trust) recorded May 9, 2023 as Fresno County Recorder's No. 2023-0043220 and by that certain Second Modification to Deed of Trust (2023 Deed of Trust) executed by Granville, Panoche, Gradon, and Sageberry to Prudential, recorded June 29, 2023 as Fresno County Recorder's No. 2023-0060287 (collectively, the "**Westlands/Fresno Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Westlands/Fresno Instrument (collectively, the "**Westlands/Fresno Property**"), certain assignment(s) of leases and rents, and certain other security instruments. True and correct copies of the Westlands/Fresno Instrument are attached to the Complaint as Exhibit 3.

**B.      The Kern/Tulare Loan.**

9.      Prudential previously made those certain three loans to Borrower ACDF, Bear Flag, and Maricopa (collectively, "**Kern/Tulare Borrower**") in the aggregate original principal amount of Ninety-One Million One-Hundred Twenty-Four Thousand Dollars ($91,124,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Kern/Tulare Loan**") pursuant to that certain Loan Agreement dated as of January 23, 2020 (the "**Kern/Tulare Closing Date**") by and among Kern/Tulare Borrower and Prudential (as the same has been or may be modified from time to time, including by that certain Loan Modification Agreement dated February 14, 2020, that certain Second Loan Modification Agreement dated December 24, 2020, that certain Third Loan Modification Agreement dated September 9, 2021, that certain Fourth Loan Modification Agreement dated March 1, 2023, and that certain Fifth Loan Modification Agreement dated October 25, 2023, the "**Kern/Tulare Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the Kern/Tulare Loan, including without limitation, any and all documents amending and modifying the terms of the Kern/Tulare Loan,

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

collectively, the "**Kern/Tulare Loan Documents**"). A true and correct copy of the Kern/Tulare Loan Agreement is attached to the Complaint as <u>Exhibit 4</u>.

10.     The Kern/Tulare Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of the Kern/Tulare Closing Date in the original principal amount of $70,000,000.00 (Loan No. 717611848) ("**Kern/Tulare Note 1**"); (ii) that certain Promissory Note, dated February 14, 2020 in the original principal amount of $14,700,000.00 (Loan No. 717611852) ("**Kern/Tulare Note 2**"); and (iii) that certain Promissory Note, dated March 1, 2023 in the original principal amount of $6,424,000.00 (Loan No. 717612317) ("**Kern/Tulare Note 5**", and collectively with Kern/Tulare Note 1 and Kern/Tulare Note 2, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**Kern/Tulare Notes**"). As of July 1, 2024, the outstanding principal balance of the Kern/Tulare Loan is $72,910,160.00, the outstanding interest accrued on Kern/Tulare Note 1 is $1,143,800.00, the outstanding interest accrued on Kern/Tulare Note 2 is $124,319.28, and the outstanding interest accrued on Kern/Tulare Note 5 is $201,970.56. True and correct copies of the Kern/Tulare Notes are attached to the Complaint as <u>Exhibit 5</u>.

11.     The Kern/Tulare Loan and the Kern/Tulare Notes are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Kern/Tulare Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated as of the Kern/Tulare Closing Date and recorded as of the Kern/Tulare Closing Date, as Kern County Recorder's No. 220009640 and as Tulare County Recorder's No. 2020-0004578, as amended by that certain Modification of Deed of Trust dated February 14, 2020, and recorded on February 20, 2020, as Kern County Recorder's No. 220022789 and as Tulare County Recorder's No. 2020-0010542, by that certain Second Modification of Deed of Trust dated December 24, 2020, and recorded on December 31, 2020, as Kern County Recorder's No. 220204171 and as Tulare County Recorder's No. 2020-0085322, by that certain Third Modification of Deed of Trust dated September 9, 2021, and recorded on September 15, 2021, as Kern County Recorder's No.

6

221174792 and as Tulare County Recorder's No. 2021-0067792, and by that certain Fourth Modification of Deed of Trust dated March 1, 2023, and recorded on March 8, 2023, as Kern County Recorder's No. 223026702 and as Tulare County Recorder's No. 2023-0010907 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Kern/Tulare Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Kern/Tulare Instrument (collectively, the "**Kern/Tulare Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Kern/Tulare Instrument is attached to the Complaint as <u>Exhibit 6</u>.

    **C.**    **The Devine Loan**.

    12.    Prudential previously made that certain loan to Borrower C & A ("**Devine Borrower**") in the aggregate original principal amount of Six Million One-Hundred Seventy-Six Thousand Dollars ($6,176,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Devine Loan**") pursuant to that certain Loan Agreement dated as of May 19, 2021 (the "**Devine Closing Date**") by and among Devine Borrower and Prudential (as the same has been or may be modified from time to time, the "**Devine Loan Agreement**"; and the Devine Loan Agreement together with all other documents evidencing, relating to, and/or securing the Devine Loan, including without limitation, any and all documents amending and modifying the terms of the Devine Loan, collectively, the "**Devine Loan Documents**"). A true and correct copy of the Devine Loan Agreement is attached to the Complaint as <u>Exhibit 7</u>.

    13.    The Devine Loan is evidenced by, among other things, that certain Promissory Note, dated as of the Devine Closing Date in the original principal amount of $6,176,000.00 (Loan No. 717612116) (the "**Devine Note**"). As of July 1, 2024, the outstanding principal balance of the Devine Loan is $5,558,400.00 and the outstanding interest accrued on Devine Note is $101,440.80. A true and correct copy of the Devine Note is attached to the Complaint as <u>Exhibit 8</u>.

    14.    The Devine Loan and the Devine Note are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of

7

Rents and Proceeds, Leases and Agreements, executed by Devine Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated May 19, 2021 and recorded May 27, 2021, as Fresno County Recorder's No. 2021-0087704 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Devine Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Devine Instrument (collectively, the "**Devine Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Devine Instrument is attached to the Complaint as <u>Exhibit 9</u>.

       **D.**    **The Saviez Loan.**

       15.     Prudential previously made that certain loan to Borrower C & A and Maricopa (collectively, "**Saviez Borrower**"), in the aggregate original principal amount of Three Million Six-Hundred Forty-Two Thousand Dollars ($3,642,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Saviez Loan**") pursuant to that certain Loan Agreement dated as of November 8, 2021 (the "**Saviez Closing Date**") by and among Borrower and Prudential (as the same has been or may be modified from time to time, the "**Saviez Loan Agreement**", and together with the Westlands/Fresno Loan Agreement, the Kern/Tulare Loan Agreement, and the Devine Loan Agreement, collectively the "**Westlands Et Al. Loan Agreements**"; and together with all other documents evidencing, relating to, and/or securing the Saviez Loan, including without limitation, any and all documents amending and modifying the terms of the Saviez Loan, collectively, the "**Saviez Loan Documents**"; and the Saviez Loan Documents together with the Westlands/Fresno Loan Documents, the Kern/Tulare Loan Documents, and the Devine Loan Documents, collectively the "**Westlands Et Al. Loan Documents**"). A true and correct copy of the Saviez Loan Agreement is attached to the Complaint as <u>Exhibit 10</u>.

       16.     The Saviez Loan is evidenced by, among other things, that certain Promissory Note, dated as of the Saviez Closing Date in the original principal amount of $3,642,000.00 (Loan No. 717612122) (the "**Saviez Note**", and together with the Westlands/Fresno Notes, the Kern/Tulare

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

Notes, and the Devine Note, the "**Westlands Et Al. Notes**" and each a "**Westlands Et Al. Note**"). As of July 1, 2024, the outstanding principal balance of the Saviez Loan is $3,277,800.00 and the outstanding interest accrued on Saviez Note is $51,133.68. A true and correct copy of the Saviez Note is attached to the Complaint as <u>Exhibit 11</u>.

17.     The Saviez Loan and the Saviez Note are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Saviez Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated November 8, 2021 and recorded November 10, 2021, as Fresno County Recorder's No. 2021-0187129 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Saviez Instrument**", and together with the Westlands/Fresno Instrument, the Kern/Tulare Instrument, and the Devine Instrument, collectively the "**Westlands Et Al. Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Saviez Instrument (the "**Saviez Property**", and together with the Westlands/Fresno Property, the Kern/Tulare Property, and the Devine Property, the "**Westlands Et Al. Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Saviez Instrument is attached to the Complaint as <u>Exhibit 12</u>.

18.     On or about May 16, 2024, Prudential executed that certain Assignment of Deed of Trust, Security Agreement, Cop Filing and Fixture Filing with Assignment of Rents And Proceeds, Leases and Agreement, recorded on May 21, 2024, as Fresno County Recorder's No. 2024-0044852, thereby assigning the Saviez Instrument, along with, among other things, all notes, obligations, and liens described therein, to Hartford Trust (the "**Saviez Assignment**"). A true and correct copy of the Saviez Assignment is attached to the Complaint as <u>Exhibit 13</u>. Thereafter, PGIM REF was appointed to act as special servicer for and on behalf of Hartford Trust, including filing actions for and on behalf of Hartford Trust.

9

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

**E.**     **The PGIM REF Loan**.

19.     PGIM REF previously made those certain loans to Borrower ACDF, Avila, Bear Flag, C & A, DA Real Estate, Favier, FG2, Gradon, Grantland 1, Grantland 2, Grantor Investments, GVM, Lincoln, Maricopa, and Sageberry (collectively, "**PGIM REF Borrower**") in the aggregate original principal amount of Eighty-Four Million Two-Hundred Fifty-Five Thousand Dollars ($84,255,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**PGIM REF Loan**" and together with the Westlands/Fresno Loan, the Kern/Tulare Loan, the Devine Loan, and the Saviez Loan, the "**Loans**") pursuant to that certain Amended and Restated Loan Agreement dated as of August 26, 2020 (the "**PGIM REF Closing Date**") by and among PGIM REF Borrower and PGIM REF (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time including by that certain Loan Modification Agreement dated April 15, 2021, by that certain Second Loan Modification Agreement dated April 16, 2021, by that certain Third Loan Modification Agreement dated July 22, 2021, by that certain Fourth Loan Modification Agreement dated April 11, 2022 (the "**Fourth Modification**"), and by that certain Fifth Loan Modification Agreement dated October 25, 2023, the "**PGIM REF Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the PGIM REF Loan, including without limitation, any and all documents amending and modifying the terms of the Loan, collectively, the "**PGIM REF Loan Documents**" and together with the Westlands Et Al. Loan Documents, the "**Loan Documents**"). A true and correct copy of the PGIM REF Loan Agreement is attached to the Complaint as <u>Exhibit 14</u>.

20.     As set forth in more detail in the PGIM REF Loan Agreement, Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement.

21.     As set forth in more detail in the Fourth Modification, initial borrowers 104 PARTNERS, LLC, a California limited liability company ("**104 Partners**") and BISHOP FARMS 22, LLC, a California limited liability company ("**Bishop Farms**") were merged into ACDF.

22.     The PGIM REF Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of August 1, 2017, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $13,000,000.00 (Loan No. 717611236) (as amended by that certain Modification Agreement – Benchmark Index Transition, dated July 1, 2023, "**PGIM REF Note 2**"); (ii) that certain Promissory Note, dated as of October 12, 2018, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $16,000,000.00 (Loan No. 717611624) ("**PGIM REF Note 3**"); (iii) that certain Promissory Note, dated as of October 8, 2019, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $11,150,000.00 (Loan No. 717611763) ("**PGIM REF Note 4**"); (iv) that certain Promissory Note, dated as of November 7, 2019, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $32,050,000.00 (Loan No. 717611810) ("**PGIM REF Note 5**"); (v) that certain Promissory Note, dated as of April 15, 2021, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $5,600,000.00 (Loan No. 717612029) ("**PGIM REF Note 6**"); and (vi) that certain Promissory Note, dated as of April 16, 2021, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $6,455,000.00 (Loan No. 717612063) ("**PGIM REF Note 7**", and collectively with PGIM REF Note 2, PGIM REF Note 3, PGIM REF Note 4, PGIM REF Note 5, and PGIM REF Note 6, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**PGIM REF Notes**" and each a "**PGIM REF Note**" and together with the Westlands Et Al. Notes, the "**Notes**" and each a "**Note**"). As of July 1, 2024, the outstanding principal balance of the PGIM REF Loan is $60,728,900.00, the outstanding interest accrued on PGIM REF Note 2 is $4,232.44, the outstanding interest accrued on PGIM REF Note 3 is $293,280.00, the outstanding interest accrued on PGIM REF Note 4 is $183,417.50, the outstanding interest accrued on PGIM REF Note 5 is $496,710.90, the outstanding interest accrued on PGIM REF Note 6 is $86,240.00, and the outstanding interest accrued on PGIM REF Note 7 is $99,407.00. True and correct copies of the PGIM REF Notes are attached to the Complaint as Exhibit 15.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

23.     The PGIM REF Loan and the PGIM REF Notes are secured by, among other things:

a.     That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Favier to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated August 1, 2017 and recorded on August 21, 2017, as Merced County No. 2017026836, as amended by that certain Modification of Deed of Trust dated October 12, 2018, and recorded on October 22, 2018, as Merced County No. 2018032706, by that certain Second Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Merced County No. 2020029955, by that certain Third Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 202, as Merced County No. 2020036569, by that certain Fourth Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Merced County No. 2021017710, and by that certain Fifth Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2017 Deed of Trust**"). A true and correct copy of the 2017 Deed of Trust is attached to the Complaint as Exhibit 16;

b.     That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by 104 Partners, Bishop, DA Real Estate, Grantland 1, Grantland 2, Grantor Investments, Lincoln, and Maricopa to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 12, 2018 and recorded October 22, 2018, as Fresno County No. 2018-0129050 and as Kern County Recorder's No. 218139395, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded August 28, 2020, as Fresno County No. 2020-0112978 and as Kern County Recorder's No. 220119047, by that certain Second Modification of Deed of Trust, dated September 24, 2020 and recorded October 8, 2020, as Fresno County No. 2020-0140536 and as Kern County Recorder's No. 220146496, by that certain Third Modification of Deed of Trust, dated April 15, 2021 and

12

recorded April 20, 2021, as Fresno County No. 2021-0064511 and as Kern County Recorder's No. 221073050, and by that certain Fourth Modification of Deed of Trust, dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2018 Deed of Trust**"). A true and correct copy of the 2018 Deed of Trust is attached to the Complaint as Exhibit 17;

        c.     That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by C & A to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 8, 2019 and recorded on October 17, 2019, as Fresno County No. 2019-0124295, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Fresno County No. 2020-0112977, by that certain Second Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 2020, as Fresno County No. 2020-0140538, by that certain Third Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Fresno County No. 2021-0064513, and by that certain Fourth Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2019A Deed of Trust**"). A true and correct copy of the 2019A Deed of Trust is attached to the Complaint as Exhibit 18;

        d.     That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Maricopa, 104 Partners, Grantor Investments, DEREK BELL, a married man as his sole and separate property, and RACHEL MARIE WHITE, an unmarried woman to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated November 7, 2019 and recorded November 13, 2019, as Fresno County No. 2019-0136752 and as Kern County Recorder's No. 219151263, as amended by that certain Modification of Deed of Trust dated August 25, 2020 and recorded August 28, 2020, as Fresno County No. 2020-0112979 and as Kern County Recorder's No. 220119048, by that certain Second

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

Modification of Deed of Trust, dated September 24, 2020 and recorded October 8, 2020, as Fresno County No. 2020-0140539 and as Kern County Recorder's No. 220146497, by that certain Third Modification of Deed of Trust, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064514 and as Kern County Recorder's No. 221073051, and by that certain Fourth Modification of Deed of Trust, dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2019B Deed of Trust**"). A true and correct copy of the 2019B Deed of Trust is attached to the Complaint as Exhibit 19;

e.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Bear Flag and Gradon to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064510, as amended by that certain Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2021A Deed of Trust**"). A true and correct copy of the 2021A Deed of Trust is attached to the Complaint as Exhibit 20;

f.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Avila, FG2, and GVM to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated April 16, 2021 and recorded April 28, 2021, as Fresno County No. 2021-0070226 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2021B Deed of Trust**"). A true and correct copy of the 2021B Deed of Trust is attached to the Complaint as Exhibit 21; and

g.      That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Sageberry to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 12, 2018 and recorded on October 23, 2018, as Fresno County No. 2018-

14

0129051, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Fresno County No. 2020-0112980, by that certain Second Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 2020, as Fresno County No. 2020-0140537, by that certain Third Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Fresno County No. 2021-0064512, that certain Fourth Modification of Deed of Trust dated April 16, 2021, and by that certain Fifth Modification of Deed of Trust, dated July 22, 2021 and recorded on July 29, 2021, as Fresno County No. 2021-0123121 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Miossi Deed of Trust**", and together with the 2017 Deed of Trust, the 2018 Deed of Trust, the 2019A Deed of Trust, the 2019B Deed of Trust, the 2021A Deed of Trust, and the 2021B Deed of Trust, collectively the "**PGIM REF Instrument**" and together with the Westlands Et Al. Instrument, the "**Instruments**" and each an "**Instrument**"), granting to PGIM REF, among other things, a lien on and/or security interest in the real property and personal property described in said PGIM REF Instrument (collectively, the "**PGIM REF Property**" and together with the Westlands Et Al. Property, the "**Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Miossi Deed of Trust is attached to the Complaint as Exhibit 22.

## II.   RELEVANT TERMS OF LENDER'S LOAN DOCUMENTS.

24.     With respect to the Westland/Fresno Loan Documents, Borrower has the following payment obligations:

a.     Westlands/Fresno Note 1 requires Westlands/Fresno Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 4.82%. Westlands/Fresno Note 1, §§ 2 and 3.1.

b.     Westlands/Fresno Note 1 requires Westlands/Fresno Borrower to make payments of principal on every January 1 and July 1, in the amount of $10,000,000.00, beginning on July 1, 2024. Westlands/Fresno Note 1, § 3.2.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

c.      Westlands/Fresno Note 3 requires Westlands/Fresno Borrower to make payments of interest on every January 1, April 1, July 1, and October 1, at a floating rate. Westlands/Fresno Note 3, § 4.1.

25.      With respect to the Kern/Tulare Loan Documents, Borrower has the following payment obligations:

a.      Kern/Tulare Note 1 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.80%. Kern/Tulare Note 1, §§ 2 and 3.1.

b.      Kern/Tulare Note 1 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $1,400,000.00, beginning on January 1, 2021. Kern/Tulare Note 1, § 3.2.

c.      Kern/Tulare Note 2 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.80%. Kern/Tulare Note 2, §§ 2 and 3.1.

d.      Kern/Tulare Note 2 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $294,000.00, beginning on January 1, 2021. Kern/Tulare Note 2, § 3.2.

e.      Kern/Tulare Note 5 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 6.55%. Kern/Tulare Note 5, §§ 2 and 3.1.

f.      Kern/Tulare Note 5 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $128,480.00, beginning on January 1, 2023. Kern/Tulare Note 5, § 3.2.

26.      With respect to the Devine Loan Documents and Saviez Loan Documents, Borrower has the following payment obligations:

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

a. The Devine Note requires Devine Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.65%. Devine Note, §§ 2 and 3.1.

b. The Devine Note requires Devine Borrower to make payments of principal on every January 1 and July 1, in the amount of $123,520.00, beginning on January 1, 2022. Devine Note, § 3.2.

c. The Saviez Note requires Saviez Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.12%. Saviez Note, §§ 2 and 3.1.

d. The Saviez Note requires Saviez Borrower to make payments of principal on every January 1 and July 1, in the amount of $72,840.00, beginning on January 1, 2022. Saviez Note, § 3.2.

27. With respect to the PGIM REF Loan Documents, Borrower has the following payment obligations:

a. PGIM REF Note 2 requires PGIM REF Borrower to make payments of interest on every January 1, April 1, July 1, and October 1, at a floating rate. PGIM REF Note 2, § 3.1.

b. PGIM REF Note 2 requires PGIM REF Borrower to make payments of principal on every January 1, April 1, July 1, and October 1, in the amount of $162,500.00, beginning on April 1, 2018. PGIM REF Note 2, § 3.2.

c. PGIM REF Note 3 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 4.70%. PGIM REF Note 3, §§ 2 and 3.1.

d. PGIM REF Note 3 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $320,000.00, beginning on January 1, 2019. PGIM REF Note 3, § 3.2.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

1          e.      PGIM REF Note 4 requires PGIM REF Borrower to make payments of

2  interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF

3  Note 4, §§ 2 and 3.1.

4          f.      PGIM REF Note 4 requires PGIM REF Borrower to make payments of

5  principal on every January 1 and July 1, in the amount of $223,000.00, beginning on

6  January 1, 2023. PGIM REF Note 4, § 3.2.

7          g.      PGIM REF Note 5 requires PGIM REF Borrower to make payments of

8  interest on every January 1 and July 1, at a non-default interest rate of 3.69%. PGIM REF

9  Note 5, §§ 2 and 3.1.

10          h.      PGIM REF Note 5 requires PGIM REF Borrower to make payments of

11  principal on every January 1 and July 1, in the amount of $641,000.00, beginning on

12  January 1, 2020. PGIM REF Note 5, § 3.2.

13          i.      PGIM REF Note 6 requires PGIM REF Borrower to make payments of

14  interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF

15  Note 6, §§ 2 and 3.1.

16          j.      PGIM REF Note 6 requires PGIM REF Borrower to make payments of

17  principal on every January 1 and July 1, in the amount of $112,000.00, beginning on July

18  1, 2021. PGIM REF Note 6, § 3.2.

19          k.      PGIM REF Note 7 requires PGIM REF Borrower to make payments of

20  interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF

21  Note 7, §§ 2 and 3.1.

22          l.      PGIM REF Note 7 requires PGIM REF Borrower to make payments of

23  principal on every January 1 and July 1, in the amount of $129,100.00, beginning on July

24  1, 2021. PGIM REF Note 7, § 3.2.

25      28.      In addition to the real property described above and with respect to each of the

26  Loans, Borrower has granted Lender a first lien and security interest in all Crops (which are

27

28

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

generally included in the definition of Property under each Instrument) located on or resulting from the Property as set forth in each Instrument. Instruments, p. 1.

29.     Under the Loan Documents, "Crops" are defined to include "all annual and/or permanent crops and farm products, including without limitation, all pistachios, almonds and other vine or tree crops, all whether mature or immature and whether now or hereafter growing or to be grown on the Land, whether now or hereafter harvested and/or severed from the Land, and whether or not stored on the Land." *Id.* (definition of "Crops").

30.     Further to the security interest granted by Borrower in all Crops, each Instrument also provides that "[t]he security agreement set forth in this Deed of Trust covers all Crops now or hereafter growing on the Land, including, all Crops now or hereafter harvested and/or severed from the Land, whether or not then stored on the Land, and all the products and proceeds thereof." *Id.*, § 5.3.

31.     In addition to a pledge of Crops, Borrower has also pledged to Lender a first lien and security interest in the proceeds of Crops, with include "[a]ll accounts and general intangibles (as such terms are defined in Article 9 of the Uniform Commercial Code) arising out of or incident to the ownership, development or operation of the Land and Improvements, all accounts and general intangibles arising out of Crops, and all other tangible and intangible property and rights relating to the Land and Improvements or the operation thereof, or to be used in connection with the Land and Improvements." *Id.* (definition of "Property"); *see also Id.* (definition of "Rents and Proceeds").

32.     Further, under Article 4 of each Instrument, each applicable Borrower made an absolute and unconditional assignment of the Rents and other profits to Lender. The Loan Documents further state that Plaintiff shall be authorized to, among other things, collect the Rents and any profits upon an Event of Default under the Loan Documents. *See*, *e.g. Id.* § 6.1.

33.     As to the Loan Documents, the following terms govern events of default that may arise thereunder:

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

a.      An immediate Event of Default occurs if a Borrower does not pay any indebtedness within ten (10) days of its due date. Loan Agreements, § 6.01(a).

b.      An immediate Event of Default occurs upon the happening of any material adverse change to any applicable Borrower's or Guarantor's (as defined in the Loan Agreements) financial condition, which affects their ability to perform obligations or pay the indebtedness owed under such Loan Agreement. *Id.*, § 6.01(g).

c.      An immediate Event of Default occurs if any Borrower or Guarantor thereunder fails to pay its debts as they become due, with an unpaid balance in excess of $500,000. *Id.*, § 6.01(i).

d.      Each Loan Agreement authorizes the applicable Borrower to obtain "Crop Loans" from "Crop Lenders". Saviez Loan Agreement, § 5.06(b); Kern/Tulare Loan Agreement, § 5.06(b); Devine Loan Agreement, § 5.06(b); PGIM REF Loan Agreement, § 5.06(b); Westlands/Fresno Loan Agreement, § 5.07(b).

e.      "Crop Lenders" refer to nationally or regionally recognized financial institution that engages in agricultural lending and whose loan to the applicable Borrower is secured by crops. Saviez Loan Agreement, § 5.06(a); Kern/Tulare Loan Agreement, § 5.06(a); Devine Loan Agreement, § 5.06(a); PGIM REF Loan Agreement, § 5.06(a); Westlands/Fresno Loan Agreement, § 5.07(a).

f.      "Crop Loans" refer to loans or lines of credit secured by crops. Saviez Loan Agreement, § 5.06(a); Kern/Tulare Loan Agreement, § 5.06(a); Devine Loan Agreement, § 5.06(a); PGIM REF Loan Agreement, § 5.06(a); Westlands/Fresno Loan Agreement, § 5.07(a).

g.      Any default under a Crop Loan, beyond the applicable grace periods, is, at Lender's discretion, an automatic Event of Default. Saviez Loan Agreement, § 5.06(c); Kern/Tulare Loan Agreement, § 5.06(c); Devine Loan Agreement, § 5.06(c); PGIM REF Loan Agreement, § 5.06(c); Westlands/Fresno Loan Agreement, § 5.07(c).

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

h.     The Loan Documents require the applicable Borrower to maintain and irrigate the relevant Property, and otherwise operate and maintain the trees and the relevant Property consistent with prevailing good agricultural and business practices. Loan Agreements, § 4.04(a) and (b); Instruments, § 3.2(a).

34.     Under the Loan Documents, upon the occurrence of an Event of Default Plaintiff is entitled to the appointment of a receiver (with respect to each Loan) as follows:

a.     Each Instrument provides that upon the occurrence of an Event of Default, as defined in the applicable Loan Agreement, each applicable Borrower agrees that the applicable Lender may seek the *ex parte* appointment of a receiver over the relevant Property, without bond, without notice, and without regarding to the value, adequacy, or condition of such Property or the danger of loss, removal, or material injury to such Property. Instruments, § 6.2.

b.     Each Borrower-owner disclaimed any right to notice of an application to appoint a receiver, provided that a subsequent hearing to confirm the appointment of such receiver is held. *Id*.

c.     Each Borrower-owner agreed that it shall not contest the appointment of a receiver and each consented such appointment. *Id*.

35.     One or more Borrower also agreed to the appointment of a receiver in conjunction with the documentation and execution of a Forbearance Agreement (defined below).

36.     Upon the occurrence of an Event of Default, Plaintiff is entitled to the payment of default interest, late charges, and fees and costs (with respect to each Loan), including as follows:

a.     Upon the occurrence of an Event of Default under any Loan, at such Lender's discretion, interest thereon will accrue at the "Default Rate," which is the greater of 18% and four percentage points above the non-default rate, but in no event greater than the maximum rate permitted by applicable law. Loan Agreements, § 2.04.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

b.    If any Borrower fails to pay any amounts due under a Note or any other Loan Document within ten (10) days of its due date, then a late charge equal to 5% of the amount of such late payment shall be immediately due and payable. *Id.*, § 2.03.

c.    Each Borrower has agreed to pay all costs, fees, and expenses of the applicable Lender incurred in making, administering, or collecting on each Loan, including but not limited to all such amounts incurred in exercising its rights and remedies under the applicable Loan Documents, and such amounts shall incur interest at the Default Rate and be secured by the applicable Instrument. Westlands/Fresno Loan Agreement, § 8.09(f); Devine Loan Agreement, § 8.09(f); Saviez Loan Agreement, § 8.09(f); PGIM REF Loan Agreement, § 9.10(f); Kern/Tulare Loan Agreement, § 10.09(f).

**III.**    **THE U.S. BANK LOANS AND THE DEFAULTS THEREUNDER.**

37.    Maricopa, C & A, and one or more other Borrower (collectively, "**Third-Party Loan Borrowers**"), are party to that certain Second Amended and Restated Loan and Security Agreement, dated as of March 25, 2019 (the "**U.S. Bank Credit Agreement**"), to which certain lenders and U.S. Bank National Association ("**U.S. Bank**") (as successor-in-interest to MUFG Union Bank, N.A.), in its capacity as administrative agent for the lenders party thereto, are also parties thereto.

38.    Upon information and belief, the proceeds of the U.S. Bank Credit Agreement were used for Third-Party Loan Borrowers' operations, including the growing of crops through 2023, and the U.S. Bank Credit Agreement is secured by crops.

39.    Upon information and belief, the proceeds of the U.S. Bank Credit Agreement were not used for the growing or harvesting of crops by Third-Party Loan Borrowers for the crop year ending in 2024.

40.    Upon information and belief, U.S. Bank is a nationally recognized financial institution that regularly engages in agricultural lending.

41.    As such, the loan evidenced by the U.S. Bank Credit Agreement is a "Crop Loan", and U.S. Bank is a "Crop Lender".

42.     U.S. Bank, Prudential, and PGIM REF are parties to that certain Intercreditor Agreement, dated July 9, 2020 (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**ICA**").

43.     Pursuant to the ICA:

a.      U.S. Bank agreed that Prudential and PGIM REF had a first priority interest in their real property collateral and certain related assets, and that U.S. Bank did not have an interest in such collateral. ICA, §§ 8 and 9;

b.      Prudential and PGIM REF agreed to subordinate their interests in crop collateral, which includes, among other things, certain crops and equipment, to U.S. Bank's interest in such assets, in certain circumstances. *Id.*, § 3;

c.      Prudential and PGIM REF's subordination shall not apply to any crops for which U.S. Bank does not provide financing to grow and complete the harvesting of crops. *Id.*, § 4(a);

d.      In the event that Prudential or PGIM REF acquire or possess any of their real estate collateral, U.S. Bank shall have the opportunity to exercise a temporary license, allowing it to grow and harvest certain crop collateral thereon. *Id.*, § 5; and

e.      Any default under the U.S. Bank Credit Agreement constitutes, at Prudential's or PGIM REF's election, an immediate event of default under the Loan Agreements and the Instruments. *Id.*, § 6.

44.     The ICA does not provide any cure rights or similar rights to U.S. Bank in the event of any defaults or enforcement actions under or in connection with the Loan Agreements.

**IV.    INITIAL EVENTS OF DEFAULT AND FORBEARANCE AGREEMENT AS TO THE WESTLANDS/FRESNO LOAN.**

45.     The stated maturity date of Westlands/Fresno Note 3 was May 1, 2024. Westlands/Fresno Note 3, p. 3.

46.     Upon maturity, Westlands/Fresno Borrower was required to pay all unpaid amounts under Westlands/Fresno Note 3. *Id.*, § 4.4. Westlands/Fresno Borrower failed to do so and, as of the date hereof, still has not tendered such payment.

23

47.    As a result of Westlands/Fresno Borrower's failure to pay all amounts owed under the Westlands/Fresno Note 3 upon its maturity – or any time thereafter – an Event of Default occurred under the Westlands/Fresno Loan Agreement (the "**Maturity Default**").

48.    Upon information and belief, U.S. Bank sent Third-Party Loan Borrowers notices of default on August 8, 2023, November 9, 2023, January 25, 2024, and February 6, 2024 (the "**Initial U.S. Bank Defaults**" and together with the Maturity Default, the "**Initial Defaults**").

49.    Thereafter, Westlands/Fresno Borrower requested that Prudential forbear from exercising its rights and remedies in connection with the Initial Defaults.

50.    As a result, on or about May 29, 2024, Westlands/Fresno Borrower and Prudential entered into that certain Loan Modification and Forbearance Agreement, effective May 1, 2024 (the "**Forbearance Agreement**").

51.    The Forbearance Agreement included customary terms between the parties, including an obligation by Prudential to forbear until the earlier of October 1, 2024 or the occurrence of a new default under the Westlands/Fresno Loan Documents or the Forbearance Agreement. Forbearance Agreement, Recital F. A true and correct copy of the Forbearance Agreement is attached to the Complaint as Exhibit 23.

52.    Pursuant to the Forbearance Agreement, among other thing:

a.    Westlands/Fresno Borrower agreed that the Initial Defaults occurred and were continuing. *Id.*, Recital E and § 1;

b.    Certain of the Westlands/Fresno Loan Documents were amended, including increasing the non-default interest rate on Westlands/Fresno Loan Note 1 from 3.52% to 4.82%. *See*, *e.g.*, *Id.* § 3;

c.    Westlands/Fresno Borrower covenanted and agreed that, among other things, no material adverse changes would occur with respect to its ability to pay the Westlands/Fresno Loan or otherwise affect its business, prospects, or financial condition. *Id.*, § 7(y);

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

d. Westlands/Fresno Borrower covenanted and agreed that, among other things, no default in payment or acceleration of the maturity of any indebtedness it owes to any third party would occur. *Id*., § 7(dd);

e. Westlands/Fresno Borrower agreed that their failure to discharge their obligations under the Forbearance Agreement, including failure to uphold or discharge any covenants, constitutes an immediate default under the Forbearance Agreement. *Id*., § 8(a);

f. Westlands/Fresno Borrower agreed that any Event of Default under the Westlands/Fresno Loan Documents would constitute an immediate default under the Forbearance Agreement. *Id*., § 8(b);

g. Westlands/Fresno Borrower: (i) agreed that Prudential had the right to the appointment of a receiver; (ii) consented to (and agreed not to contest) the appointment of a receiver; and (iii) agreed to cooperate with such receiver in the event of a new default under the Westlands/Fresno Loan Documents or the Forbearance Agreement. *Id*., § 9.

**V. THE SUBSEQUENT EVENTS OF DEFAULT AFTER EXECUTION OF THE FORBEARANCE AGREEMENT.**

53. Upon information and belief, U.S. Bank sent Third-Party Loan Borrowers a notice of default on June 3, 2024, asserting that certain defaults or events of default under the U.S. Bank Credit Agreement occurred (the "**Subsequent U.S. Bank Default**").

54. Thereafter, on June 20, 2024, U.S. Bank sent Third-Party Loan Borrowers a notice of acceleration and demand for payment, accelerating the U.S. Bank Credit Agreement and demanding payment for all amounts outstanding under the U.S. Bank Credit Agreement, which amount purportedly equaled at least $149,000,000, plus fees, costs, and other charges. A copy of the notice is attached to the Complaint as Exhibit 24.

55. That same day, U.S. Bank sent a demand for payment to the guarantors under the U.S. Bank Credit Agreement, which include many of the guarantors of the Loans, demanding payment for all amounts outstanding under the U.S. Bank Credit Agreement, which amount purportedly equaled at least $149,000,000, plus fees, costs, and other charges. A copy of the demand is attached to the Complaint as Exhibit 25.

56.     As set forth above, Maricopa and C & A, among others, are borrowers under the U.S. Bank Credit Agreement. One or both of Maricopa and C & A, among others, are also borrowers under each Loan.

57.     The Initial U.S. Bank Defaults and the Subsequent U.S. Bank Defaults constitute defaults under a "Crop Loan", thereby constituting immediate Events of Default under each Loan Agreement (collectively, the "**Crop Loan Defaults**").

58.     As set forth above, as a result of the U.S. Bank Defaults, U.S. Bank accelerated all amounts owed under the U.S. Bank Credit Agreement, causing at least $149,000,000.00 to be immediately due and owing to U.S. Bank by one or more Borrower and Guarantor.

59.     This acceleration, and the associated defaults under the U.S. Bank Credit Agreement, affect the ability of Borrower and Guarantor to perform the obligations or pay the indebtedness owed under each Loan Agreement, thereby causing an immediate Event of Default under each Loan Agreement (the "**Material Adverse Change Defaults**").

60.     In addition, the Third-Party Loan Borrowers, including one or more Borrower, such as Maricopa and C & A, have failed to pay the accelerated amounts under the U.S. Bank Credit Agreement, which amounts exceed $500,000.00, thereby causing an immediate Event of Default under each Loan Agreement (the "**Third-Party Indebtedness Defaults**").

61.     The applicable Borrower failed to pay principal and interest on July 1 on each of Westlands/Fresno Note 1, the Kern/Tulare Notes, the Devine Note, the Saviez Note, and the PGIM REF Notes. Such amounts remain outstanding. As such, an Event of Default occurred under each Loan Agreement (the "**Payment Defaults**").

62.     As set forth above, Westlands/Fresno Borrower covenanted and agreed in the Forbearance Agreement that no material adverse change would occur in their ability to pay the Westlands/Fresno Loan or in their business or financial condition, and that no default in payment or acceleration of the maturity of any indebtedness owed to any other party would occur.

63.     A breach of any covenants under the Forbearance Agreement constitutes an immediate default thereunder.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

64.     As a result of the Subsequent U.S. Bank Default, over $149,000,000 became immediately due and owing, and has not been paid. This constitutes a failure of Westlands/Fresno Borrower to uphold their covenants that no material adverse change would occur in their business or financial condition and that they would not allow any payment default or acceleration under any third-party loan.

65.     Such failures constituted immediate defaults under the Forbearance Agreement (the "**Forbearance Covenant Defaults**").

66.     In addition, each of the Crop Loan Defaults, Material Adverse Change Defaults, Third-Party Indebtedness Defaults, and Payment Defaults under the Westlands/Fresno Loan Documents constitute immediate defaults under the Forbearance Agreement (the "**Cross-Defaults**" and together with the Initial Defaults, Subsequent U.S. Bank Default, Crop Loan Defaults, Material Adverse Change Defaults, Third-Party Indebtedness Defaults, Payment Defaults, and Forbearance Covenant Defaults, the "**Existing Defaults**").

67.     As a result of the Existing Defaults, on July 3, 2024, each applicable Lender sent each applicable Borrower a notice of default, termination of forbearance, and acceleration with respect to the Westlands/Fresno Loan (the "**Westlands/Fresno Notice**") and a notice of default and acceleration with respect to each of the Kern/Tulare Loan, the Devine Loan, the Saviez Loan, and the PGIM REF Loan (collectively with the Westlands/Fresno Notice, the "**Default Notices**"). True and correct copies of the Default Notices are attached to the Complaint as Exhibit 26.

68.     The Westlands/Fresno Notice notified Westlands/Fresno Borrower that certain of the Existing Defaults had occurred, that the forbearance under the Forbearance Agreement had terminated, that interest had been accruing on the Westlands/Fresno Loan at the default rate since February 14, 2024, and that the Westlands/Fresno Loan had been accelerated.

69.     The other Default Notices notified the applicable Borrower that certain of the Existing Defaults had occurred, that interest had been accruing on the Westlands/Fresno Loan at the default rate since June 3, 2024, and that the applicable Loan had been accelerated.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

**VI.    WITHOUT THE APPOINTMENT OF A RECEIVER TO MANAGE THE PROPERTY AND ALLOW LENDER TO PROVIDE ADDITIONAL FUNDING, THERE IS IMMINENT DANGER TO THE PROPERTY.**

70.    On information and belief, Borrower has provided certain crops to Touchstone Pistachio Company LLC, a processor and producer of pistachio products ("**Touchstone**"). On information and belief, Touchstone has common ownership and management with Borrower.

71.    On information and belief, Touchstone has not paid Borrower for pistachios delivered by Borrower to Touchstone for at least the last several months.

72.    Under the Loan Documents, the pistachios delivered by Borrower to Touchstone constitute "Crops" subject to the first lien security interests of Lender. Moreover, the amounts owed by Touchstone to Borrower for such Crops constitute the proceeds of Lender's collateral and are also subject the first lien security interests of Lender.

73.    Subsequent to the Default Notices and during ongoing discussions with Borrower, Borrower has indicated that:

a.    Trees on the Property need to be sprayed every six days until harvest, which began early last week. If one spray is missed then the trees may be unaffected, but missing two sprays will cause damage to the trees that will take several years to recover;

b.    Without regular watering, the pistachio trees may survive (but be damaged) but the almond trees on the Property will die. These pistachio and almond trees are subject to the first lien security interests of Lender; and

c.    Borrower has significant cash flow and liquidity issues, and estimate that they will have insufficient funds to operate beyond Monday of next week. These issues are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Property and care for the trees and plants located on the Property and pay the other expenses associated with such case.

74.    Further exacerbating the need to maintain the Property, including the trees and the Crops, on information and belief, pistachio harvest "takes place anywhere from late-August to

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

early-October when the fruit is mature and the shell has split."[1] As a result, Borrower has just begun harvesting the pistachio Crops, requiring Borrower to expend significant resources.

75.    On information and belief, Borrower does not have the resources to complete the harvest of the pistachio Crops and will in fact have insufficient funds to operate after next Monday.

76.    As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Property, which, along with the revenue generated by its operations, is the primary source for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower.

77.    Under California law and as provided in the Loan Documents, Plaintiff has the right to the appointment of a receiver. Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Property, its revenue and all of the other collateral that Borrower pledged as security for the Loans.

78.    Plaintiff intends to provide additional funding to the appointed receiver to allow it to maintain and manage the Property, including the trees and plants located thereon, and to complete the harvest of its Crop collateral.

79.    Given the above, the immediate appointment of a receiver over the Property securing the Loans is necessary to protect, preserve, and safeguard such property. As such, Plaintiff requests that Lance Miller, the designated representative of Pivot Management Group, LLC (the "**Proposed Receiver**"), be appointed as the receiver. Proposed Receiver is qualified and willing to serve as a receiver to protect, preserve, and safeguard the Property pursuant to an order providing appropriate authority, duties, and responsibilities.

**VII.    <u>OUTSTANDING LOAN BALANCE AND RESERVATION OF RIGHTS</u>.**

80.    As of July 1, 2024, the amounts that remain due and owing by Defendant to Plaintiff under the Loan Documents, including outstanding unpaid principal and interest, are no less than

---

[1]    *See* https://americanpistachios.org/growing-and-harvesting.

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

$705,144,545.49 (excluding fees, costs, and other amounts due and owing under the Loan Documents).

81.   Plaintiff is also entitled to recover all attorneys' fees and other expenses incurred in connection with enforcing its rights under the Loan Documents.

82.   Plaintiff reserves all of its rights and remedies available under the Loan Documents.

83.   Given these facts, Plaintiff seeks the immediate appointment of a receiver to protect, preserve, and safeguard its interests in the Property, to avoid further diminution of value resulting from mismanagement by existing management, and to allow a capable, qualified receiver to manage and liquidate the Property before further deterioration occurs.

*[signature page follows]*

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

1       I declare under penalty of perjury under the laws of the State of California that the

2 foregoing is true and correct and that this Declaration was executed this 16th day of September,

3 2024, at 7108 N Fresno Street, Suite 380, Fresno, CA 93720.

By: _____
William Sciacqua

31

DECLARATION OF WILLIAM SCIACQUA IN SUPPORT OF *EX PARTE* MOTION
FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION

313675302v.1