MARY H. HAAS (State Bar No. 149770)
  maryhaas@dwt.com
JOHN D. FREED (State Bar No. 261518)
  jakefreed@dwt.com
MATTHEW E. LADEW (State Bar No. 318215)
  mattladew@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

JOSEPH M. VANLEUVEN (*pro hac vice pending*)
  joevanleuven@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon 97205
Telephone: (503) 778-5325
Fax: (503) 701-0023

Attorneys for Proposed Intervenor
U.S. BANK NATIONAL ASSOCIATION

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and PGIM REAL ESTATE FINANCE, LLC,<br><br>          Plaintiffs,<br>     vs.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE,<br><br>          Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br>**U.S. BANK'S JOINDER AND OPPOSITION TO *EX PARTE* APPOINTMENT OF A RECEIVER** |

U.S. Bank National Association ("U.S. Bank") joins the Defendants in opposing Plaintiffs' *Ex-Parte* Motion For Order Appointing Receiver and For Preliminary Injunction (Doc. 11) and related Ex-Parte Application (Doc. 12). This is the key point: Plaintiff's motion rests on the false premise that unless a receiver is appointed, Defendants' farming operation will run out of money imminently. The opposite is true: <u>U.S. Bank *will* finance the 2024 harvest, *unless* a receiver is appointed</u>. It is Plaintiff's requested relief that risks imminent irreparable harm.

To be clear, U.S. Bank does not take a position on the appointment of a receiver *after* the 2024 pistachio and almond harvests are completed (which should happen by the end of October). U.S. Bank's opposition is to the appointment of a receiver now, in the middle of the harvest, on an *ex parte* basis. This Joinder and Opposition is supported by the Declaration of Karen Boyer filed herewith.

1. U.S. Bank has been Defendants' crop lender for years. Defendants' farming operations are run as an integrated "whole" and we will refer to them hereafter collectively as "Maricopa." Maricopa is currently indebted to U.S. Bank on its 2023 revolving crop line (the "Crop Loan") in an amount exceeding $145 million. The Crop Loan is secured by, among other things, a security interest in all of Maricopa's crops and the proceeds thereof, including accounts receivable and collections resulting from sale of those crops (the "A/R").

2. We are all here today because of the last-minute failure of a global refinancing that was expected to be provided by one of Maricopa's existing real estate lenders (which we will refer to as "Conterra"). Negotiations with Conterra went on for months. U.S. Bank ultimately reached agreement to sell its Maricopa Crop Loan to Conterra as part of a global financing transaction involving Maricopa, its sister company Touchstone Pistachio Company, LLC ("Touchstone") Conterra, Plaintiffs (hereafter, collectively, "Prudential") and multiple other Maricopa lenders.

3. The Conterra refinance would have provided a new operating loan for Touchstone and new crop financing for Maricopa. It was originally set to close in mid-July, 2024. Had it closed, Maricopa would have had funding for its farming operations and the 2024 harvest. Maricopa would have sold its 2024 pistachio crop to Touchstone. Touchstone would have had the means to continue operating and process that crop. Prudential would have restructured its loans.

4. Unfortunately, Conterra's negotiations for accommodations from Maricopa's major real-estate secured lenders, including Prudential (which were a condition to its refinancing), continued to drag on through the summer and into September of 2024. Both U.S. Bank and Prudential urged Maricopa's owners to make a contingency plan (such as a pre-negotiated Ch. 11 bankruptcy) in case the Conterra refinancing failed – but they would not do so.

5. That said, the parties moved forward towards a Conterra closing in early September. Multiple documents were negotiated and drafted, and signatures were delivered into escrow. As late as September 11, 2024, Conterra advised the Bank that the refinance would close the next day. Unfortunately, in a shocking reversal, on September 12, the Bank was told by both Conterra and Prudential that the Conterra refinancing was not going to go forward. Maricopa and U.S. Bank were left standing at the altar with no contingency plan.

6. U.S. Bank has worked diligently since then in an effort to reach a negotiated solution with Maricopa and Prudential, but those efforts have failed. Prudential has filed this litigation solely with respect to its own collateral, which is *only part of the Maricopa farming empire*. In order to preserve the value of *all* of the 2024 crops, U.S. Bank is now prepared to provide financing to Maricopa to allow it to complete the entire 2024 harvest.

7. U.S. Bank requested that Prudential not seek *ex parte* relief and instead allow its motion for receiver to be heard in the regular course, which would have given Maricopa time to complete the harvest, with U.S. Bank's financing. Prudential refused. Thus, Prudential has manufactured the "emergency" that is the basis for the *ex parte* relief it seeks, precisely *by filing its ex parte motion* in order to block U.S. Bank from funding the harvest. There is no crisis unless Prudential's motion is granted. On the contrary, U.S. Bank *will* finance the 2024 harvest, *unless a receiver is appointed*.

8. Prudential's motivation is transparent. Prudential is one of several lenders who made real estate loans to Maricopa, each secured by trust deeds on specific parcels of farm land and crops on that land. In connection with its Crop Loan, U.S. Bank entered into intercreditor agreements with the real estate lenders, including Prudential, pursuant to which those lenders expressly subordinated their security interests in Maricopa's crops and A/R to U.S. Bank's

security interest, subject to the exception that the subordination as to "Crops"[1] applies only to "Crops for which Bank provides financing." A true and complete copy of one of the intercreditor agreements is attached as an Exhibit to the Declaration of Karen Boyer. The other agreements are identical in relevant part. In short, the real estate lenders agreed that U.S. Bank would have a senior security interest in Maricopa's crops because U.S. Bank was financing the crops, not the real estate lenders. To U.S. Bank's knowledge, *Prudential has not advanced a penny for the 2024 crop*.

9.  U.S. Bank did provide financing for Maricopa's 2024 crops. Because Maricopa failed to repay its 2023 Crop Loan, U.S. Bank did not extend Maricopa a new revolving line of credit under which U.S. Bank would receive A/R collections and make advances under a borrowing base formula. Instead, the Bank allowed Maricopa use A/R collections directly, to operate in 2024. This was financing by means of cash collateral, a typical form of financing in bankruptcy and other financially distressed situations.[2] The order of magnitude of the cash collateral financing U.S. Bank has provided to date for the 2024 crop is almost $50 million: from November of 2023 through today, Maricopa collected roughly $57 million in A/R and it now has only $9 million in the bank.[3]

10. In addition to the cash collateral financing it has already provided, U.S. Bank is prepared to lend up to $20 million in new money, to enable Maricopa to complete this year's harvest, which started in earnest last week. The terms are set forth in the term sheet attached as an Exhibit to the Boyer Declaration.[4]

11. This is not the time or place to litigate a priority dispute between U.S. Bank and

---

[1] A defined term that means "annual and perennial crops and crops grown on trees or vines…" but does not include A/R.
[2] Under Section 363(c)(2) of the Bankruptcy Code, the debtor is absolutely prohibited from spending cash collateral without the consent of all parties that have an interest in the collateral, or a court order.
[3] The inequity of Prudential's attempt to strip U.S. Bank of its senior interest in the 2024 crop is underscored by the fact that Maricopa paid Prudential roughly $27 million in debt service in January 2024, while paying nothing to U.S. Bank.
[4] As of the late afternoon of September 19, U.S. Bank thought it had a deal with Prudential to consent to the Bank's financing of the harvest and modify its request for a receiver. In a call at 10:00 a.m. on September 20, Prudential announced it had reconsidered, leaving us without time to prepare a formal loan commitment. A formal loan commitment will be furnished promptly by supplemental declaration prior to the hearing.

3

Prudential under their intercreditor agreement.  However, it is important to understand Prudential's real motivation in filing its *ex parte* motion.  Maricopa's 2024 pistachio crop is projected to be worth well over $100 million.  Prudential claims that the orchards subject to its trust deeds, which would be placed into receivership, produce roughly 70% of that crop.  Over the past few days, U.S. Bank and Prudential have had extensive discussions as to whether and how to finance completion of the 2024 harvest (which will be finished by the end of October).  U.S. Bank first offered Prudential the opportunity to participate in such financing.  Prudential stated unequivocally that it would not fund except through a receivership (meaning it would only fund the harvest of its own orchards).  On September 19, Prudential's financial advisor and attorney negotiated a resolution in principle with U.S. Bank that would have provided a path for U.S. Bank to fund the harvest.  This resolution was subject to client approval and on the morning of September 20, Prudential advised that it was not willing to agree to the resolution negotiated the day before.  It is apparent that Prudential wants to obtain the proceeds of the 2024 crop on its secured orchards for itself, in order to shore-up its collateral position.  (If the Prudential orchards are put into receivership, Prudential, and not U.S. Bank, will fund the harvest of the Prudential orchards.  Prudential will then argue that U.S. Bank has lost priority in those crops because it did not finance the harvest.)

12. U.S. Bank does not take a position on whether Prudential is ultimately entitled to the appointment of a receiver, but Prudential should not be granted *ex parte* relief.  In addition to the lack of an emergency justifying such relief (given U.S. Bank's willingness to fund, Maricopa's opposition explains in detail how appointing a receiver prior to the completion of the harvest will damage not only Maricopa and U.S. Bank, but the other real estate lenders.)  Again, Maricopa's orchards are operated (and harvested) as an integrated whole.  It would be exceedingly difficult and inefficient to carve-out the Prudential orchards from the ongoing harvest and leave Maricopa (even if it had funding, which it does not) to harvest the remaining orchards.

13. For its part, U.S. Bank is not willing at this time to fund that kind of bifurcated harvest.  The Bank would need to evaluate a new financial model for such an inefficient process to determine if it made economic sense to fund.  Maricopa has no time to build such a financial

model.  Nor does Maricopa have the time to re-arrange the logistics of its existing harvest plan. That means it is quite possible that if a receiver is appointed over the Prudential orchards before the harvest is completed, the other real estate lenders' orchards will not be harvested.  At best, those lenders (who, like U.S. Bank, were *not* served with the *ex parte* motion) would be left to cobble together some kind of funding arrangement for harvest of their own individual collateral properties while the pistachios linger on the trees without care.

For the foregoing reasons, U.S. Bank urges the Court to deny the motion for appointment of a receiver *ex parte* and set a show-cause hearing for a date after November 1, 2024.

DATED September 20, 2024

DAVIS WRIGHT TREMAINE LLP
Mary H. Haas
Joseph VanLeuven
John D. Freed
Matthew E. Ladew


By: */s/ John D. Freed*
    John D. Freed

Attorneys for
U.S. BANK, National Association