MCDERMOTT WILL & EMERY LLP
ROBERT BARTON (SBN 269455)
rbarton@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, California  90067
(310) 277-4110

MICHAEL S. NADEL (admitted *pro hac vice*)
mnadel@mwe.com
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, and Sageberry Farms, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, et al.,<br><br>Defendants. | No. 1:24-cv-01102-KES-SAB<br><br>**OPPOSITION TO *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER AND PRELIMINARY INJUNCTION**<br><br><u>Hearing</u>:<br>Date:  September 24, 2024<br>Time:  9:30 a.m. PDT<br>Location:  Courtroom 6 and by Zoom |

Plaintiffs contend that placing the properties pledged to them as collateral into receivership would protect the value of the collateral.  But the opposite is true.  If a receiver were appointed now, on an emergency basis, it would *destroy* the value of the collateral.  The Assemi family's farm is an integrated whole.  It cannot practically be divided piecemeal, with a receiver taking control of certain properties but not others, in the middle of a harvest in which each day is crucial.  The collateral properties will not receive water.

And they will go unfarmed, because there would be no one to farm them. A receiver would step in on Day One with no employees, no vendors, and no means of getting them in time to rescue the harvest, in which every day counts. The harvest would be lost. Mature trees will be at risk. The value of the properties will be greatly diminished. And to be clear, this is not a risk. *It is what would be likely to happen.*

Plaintiffs' proposed relief is poorly conceived. It is in no one's interest. It diverges from the best interests of the land, the market, the Maricopa Defendants, the other defendants, the other creditors (including U.S. Bank, plaintiff in the related case), and Plaintiffs themselves.

Moreover, the fundamental premise of Plaintiffs' motion is wrong. The opposition brief of proposed intervener U.S. Bank explains why:

> This is the key point: Plaintiff's motion rests on the false premise that unless a receiver is appointed, Defendants' farming operation will run out of money imminently. <u>The opposite is true: U.S. Bank will finance the 2024 harvest, *unless* a receiver is appointed</u>. It is Plaintiff's requested relief that risks imminent irreparable harm.

ECF No. 22 at 1. U.S. Bank further states: "In addition to the cash collateral financing it has already provided, U.S. Bank is prepared to lend up to $20 million in new money, to enable Maricopa to complete this year's harvest, which started in earnest last week." *Id.* at 3. There is no emergency. There is no cause of *ex parte* relief.

Therefore, Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Grandon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche

Pistachios, LLC, and Sageberry Farms, LLC (collectively, the "Maricopa Defendants") respectfully oppose Plaintiffs' *ex parte* motion.

Under federal law, appointing a "receiver is an extraordinary equitable remedy" that should be applied with caution. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009). Plaintiffs do not begin to establish their entitlement to receivership.

## I. Sufficient funds <u>will</u> be available to complete the harvest.

The Maricopa Defendants have been working for several months to ensure that they will be able to continue their farming operations while they resolve their discussions with their lenders. A preferred option was for Plaintiffs to fund a Chapter 11 bankruptcy, which would have allowed the Maricopa Defendants to complete the fall harvest while they worked out matters with their lenders. Plaintiffs declined. Fortunately, U.S. Bank has agreed to provide $20 million to allow the harvest to be completed. ECF No. 22 ¶ 10. Plaintiffs' assertion that the there is a "manifest danger of loss, deterioration, and diminution of the Property," ECF No. 4, is wrong.

## II. Receivership would destroy the value of the collateral.

The Court must consider whether "plaintiff's interests sought to be protected will in fact be well-served by receivership." *Avalanche Funding, LLC v. Arif*, 2018 WL 1470597, at *1 (E.D. Cal. Mar. 26, 2018). Here, Plaintiffs' ill-defined proposal would spell disaster for the collateral Plaintiffs seek to protect. A receiver cannot simply show up at the Maricopa Defendants' farming properties and "operate" them in the midst of the harvest.

As explained in more detail by the accompanying Declaration of Jason Hollrah, the top executive at the Assemi's organization, the Maricopa Defendants operate their properties as an integrated business. They do not distinguish among their various parcels on the basis of the lender for which the parcel serves as collateral. And the parcels that are collateral for a particular lender—for Plaintiffs, for example—are not contiguous. To

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

illustrate: The map below depicts "Calaveras Ranch," a collection of parcels that include *but are not limited to* parcels that are collateral for Plaintiffs:



The green parcels are Plaintiffs' collateral. The orange parcels as collateral for another lender. The other parcels are not pledged as collateral. If a receiver were appointed, the receiver would be empowered to farm only the green properties. That is impossible without access to the other properties, which the receiver would not have.

Access is not the only problem, however. Each parcel owned by the Maricopa Defendants is in a water district. The Maricopa Defendants' property is in up to 13 distinct water districts, with the majority in three water districts. Each water district features different water rights. The Maricopa Defendants operate the properties as an integrated farm; collectively, they have a single account for each of the water districts. That account dictates how water is used across the farm. There is no distinction based on which lender identifies the parcel as collateral. Pipelines cut across fields. A parcel pledged as collateral to Plaintiffs may or may not have a well; each parcel gets water as part of the integrated business. Similarly, some areas receive water from a canal. The canal has turnouts on particular parcels; parcels without turnouts rely on water from the integrated business. If Plaintiffs get their requested relief—a receiver in charge of the properties pledged to them

as collateral—those properties would be cut off from the integrated whole and would not get water. The trees on the properties would be damaged, at a minimum. The properties would be materially devalued.

Even leaving those issues aside, appointment of a receiver would spell the immediate end of this year's harvest with respect to those properties subject to the receivership. The newly appointed receiver would come in on Day One with no employees and no vendors. Harvest is going on right now. Every day, the Maricopa Defendants are harvesting between 75 and 100 loads of pistachios, with about 40,000 pounds of nuts in each. The harvesting is occurring about 20 hours a day. The appointment of a receiver would bring it to a halt, because there would be no one to do the harvesting. And the operation of the farm involves more than just the harvesters—of which the receiver would have *none* and be able to hire *none*. The Maricopa Defendants have four people just handling compliance, for example. The receiver would have none. It would take months for a receiver to get a farming operation up and running. He wouldn't have months, however. Pistachio nuts need to be taken into processing within 24 hours of ripeness. Otherwise, the nuts become stained, reducing the crop value substantially. Before the receiver can resume harvest, the crop will be impaired and then essentially ruined. The neglect of the trees on the properties will result in damage and long-term diminution of crop productivity. Longer term neglect will result in more significant damage and potential loss of the trees. Approximately 70% of the value of the land is attributable to the mature trees that produce the crop. It follows then, without exaggeration, that Plaintiffs' requested receivership would result in swift devaluation of Plaintiffs' own collateral.

It would be fair to say that Plaintiffs have brought to the Court a plan for disaster— except Plaintiffs have no plan.

### III. The *Canada Life* factors weigh against a receivership.

In considering whether to appoint a receiver, courts look to: (1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership. *Canada Life*, 563 F.3d at 844.

1. For purposes of opposing this motion, the Maricopa Defendants are not contesting the validity of Plaintiffs' underlying claim. But the *other* Defendants are not present to state their position and apparently Plaintiffs did not provide notice of their motion.

2. Plaintiffs concede they are unaware of fraudulent conduct by any Defendant.

3. Because of U.S. Bank's agreement to fund the Maricopa Defendants' farming operations, there is no imminent danger to Plaintiffs' collateral.

4. Plaintiffs argue that legal remedies are inadequate because the properties pledged as their collateral "are under immediate threat of damages." ECF No. 11 at 7. But the only threat of damages is *from them* because the appointment of their requested receiver would cause U.S. Bank to withdraw its agreement to fund the harvest and leave the properties unfarmed, with the harvest lost.

5. Denial of the requested receiver would *not* harm Plaintiffs. To the contrary, it would preserve the value of Plaintiffs' collateral.

6. The possibility of irreparable injury stems *from* Plaintiffs' requested relief. If Plaintiffs stand down, or if the Court denies their application, there will be no irreparable injury. The alternative is quintessential irreparable injury: at best a multi-year loss of productive capacity and increased costs for rehabilitation; at worst the death of trees

7. A receivership would not well-serve Plaintiffs' interests. It would harm them. Plaintiffs would recognize this if they would only *listen* to those who know farming. As things now stand, they are left claiming that the Maricopa Defendants will be forced to stop farming on Monday. They want to have their receiver in place by Tuesday. But they have absolutely no plan for what he would do on Tuesday, and there is little he could do on Tuesday or Wednesday or any time after that. Plaintiffs would inadvertently leave their collateral in ruin.

Taken together the factors weigh against the proposed receivership.

### IV. Plaintiffs do not support their request for a preliminary injunction.

Plaintiffs ask the Court to enjoin "the Defendant, its officers and directors, vendors, and any and all third parties from interfering with the Receiver or the Receivership Property during the pendency of the receivership." ECF No. 11 at 9. Presumably this means *all* Defendants, though it is difficult to tell. Many Defendants are absent from this proceeding. In any event, Plaintiffs make no effort to support their injunction request.

A plaintiff seeking a preliminary injunction must establish that (i) he is likely to succeed on the merits, (ii) that he is likely to suffer irreparable harm in the absence of preliminary relief, (iii) that the balance of equities tips in his favor, and (iv) that an injunction is in the public interest. *Winter v. NRDC*, 55 U.S. 7, 20 (2008). "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed.1995)).

As to the second and third factors, this is all Plaintiff offers: "Plaintiff has also shown above that it is likely to suffer irreparable harm in the absence of relief, and that the balance of the equities tips in its favor."  ECF No. 8.  To the contrary, Plaintiffs have not even attempted to make such showing.  Plaintiffs have offered no evidence—nor any basis to believe—that if a receiver *were* appointed, any Defendants would interfere with the receiver or the property placed into receivership.  The only allegation against the Defendants is that some have fallen into debt and defaulted on loans.  Nothing suggests that, absent an injunction, any Defendant would interfere with a receiver.  Nor have Plaintiffs identified any irreparable harm that would result from such interference.  Nor have Plaintiffs cited any authority for the injunction they seek.

The balance of equities here tips away from Plaintiffs, for all the reasons stated above.  Most importantly, they are seeking a remedy that is both unnecessarily and affirmatively destructive.  The Court should deny their request.

\*          \*          \*

For the reasons stated above, the Maricopa Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

By: /s/ *Michael S. Nadel*
    Michael S. Nadel
    Attorneys for the Maricopa Defendants

CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing, including the following counsel for Plaintiff The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC :

M. Ryan Pinkerton, Esq.
Brandon J. Franklin, Esq.
Seyfarth Shaw LLP
560 Mission Street, 31st Floor
San Francisco, California 90017

By: /s/ *Michael S. Nadel*
Michael S. Nadel