1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   PRUDENTIAL INSURANCE COMPANY          No.  1:24-cv-01102-KES-SAB
     OF AMERICA; and PGIM REAL
12   ESTATE FINANCE, LLC,

13                  Plaintiffs,

14         v.

15   ACDF, LLC; ASSEMI AND SONS, Inc.;     ORDER GRANTING U.S. BANK NATIONAL
     AVILA RANCH EA, LLC; BEAR FLAG        ASSOCIATION'S MOTION TO INTERVENE
16   FARMS, LLC; C & A FARMS, LLC;
     CANTUA ORCHARDS, LLC; DA REAL         (Doc. 21)
17   ESTATE HOLDINGS, LLC; FAVIER
     RANCH, LLC; FG2 HOLDINGS, LLC;
18   GRADON FARMS, LLC; GRANVILLE
     FARMS, LLC; GRANTLAND
19   HOLDINGS No. 1, LLC; GRANTLAND
     HOLDINGS No. 2, LLC; GRANTOR
20   REAL ESTATE INVESTMENTS, LLC;
     GVM INVESTMENTS, LLC; GV AG,
21   LLC; LINCOLN GRANTOR FARMS,
     LLC; MARICOPA ORCHARDS, LLC;
22   PANOCHE PISTACHIOS, LLC;
     SAGEBERRY FARMS, LLC; DEREK
23   BELL; and RACHEL MARIE WHITE,

24                  Defendants.

25

26        On September 16, 2024, plaintiffs Prudential Insurance Company of America

27   ("Prudential") and PGIM Real Estate Finance ("PGIM") filed a complaint against twenty-two

28   defendants: ACDF, LLC, Assemi and Sons, LLC, Bear Flag Farms, LLC, C & A Farms, LLC,

                                            1

Cantua Orchards, LLC, Favier Ranch, LLC, Grandon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC (collectively, the "Maricopa Defendants"), Avila Ranch, LLC, DA Real Estate Holdings, LLC, FG2 Holdings, LLC, Grantland Holdings No. 1, LLC, Grantland Holdings No. 2, LLC, Grantor Real Estate Investments, LLC, GVM Investments, LLC, GV AG, LLC, Derek Bell, and Rachel Marie White (collectively, the "Other Borrower Defendants").[1]  Doc. 1 ("Compl."). Plaintiffs bring claims for breach of contract, appointment of a receiver, accounting, and specific performance of right to possession clause under California Code of Civil Procedure § 564, as well as a claim for injunctive relief.  *Id.* ¶¶ 107–30.  Plaintiffs allege that each defendant breached one or more of five loans: the Westlands/Fresno Loan, the Kern/Tulare Loan, the Devine Loan, the Saviez Loan, and/or the PGIM REF Loan.  *Id.* ¶¶ 34, 37, 40, 43, 47, 48.  Plaintiffs also allege that the breach of each loan entitles plaintiffs to the appointment of a receiver.  *Id.* ¶¶ 62–63. Accordingly, plaintiffs filed a motion to appoint receiver and for preliminary injunction.  Doc. 11 ("Receiver Mot.").

On September 20, 2024, U.S. Bank National Association ("U.S. Bank") filed a motion to intervene.  Doc. 21 ("Mot. to Intervene").  For the reasons explained below, the court grants U.S. Bank's motion.  The court has subject matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332.

## I.   BACKGROUND

Plaintiffs' factual allegations generally proceed as follows: Prudential made a loan of $550 million to several defendants ("W/F Borrowers") on March 11, 2022, in order to fund their pistachio and almond farming operation.  *See* Compl. ¶¶ 3, 34.  This loan, the Westlands/Fresno Loan, is secured by various parcels of farmland and the crops that grow on that land.  *Id.*  The loan contains a clause that entitles Prudential to the appointment of a receiver if the W/F Borrowers default on the loan.  *Id.* ¶¶ 62–63; Doc. 1-1, Ex. 1 ("W/F Loan Agreement") at 21;

---

[1]  The Other Borrower Defendants have not made an appearance in this action as of the time of this filing, and it is unclear what their relationship is to the Maricopa Defendants, other than that they were party to some of the same loans.  *See* Compl. ¶¶ 34, 37, 40, 43, 47, 48.

Doc. 1-25, Ex. 23 ("W/F Forbearance Agmt.") at 14.  The other four loans to the various defendants contained similar terms but were made for different sums and were secured by different parcels of land.  *See id.* ¶¶ 37–51.

Prudential alleges that the W/F Borrowers first defaulted on the loan when they failed to pay the entire remaining sum of $550 million on the May 1, 2024, maturity date.  *Id.* ¶¶ 73–76.  They then entered into a forbearance agreement where Prudential agreed not to pursue legal action at least until October 1, 2024, so long as the W/F Borrowers did not default again.  *Id.* ¶¶ 77–79.

Prudential alleges that the W/F Borrowers nevertheless did default under the terms of the forbearance agreement because they defaulted on a separate loan with a different lender, U.S. Bank.  *Id.* ¶¶ 71, 76, 81–86.  The U.S. Bank Credit Agreement, entered on March 25, 2019, was a loan for over $145 million to several of the W/F Borrowers, and it was secured by crops.  *Id.* ¶¶ 65–66, 92.  Some of the W/F Borrowers defaulted on the loan, and U.S. Bank sent notices of default beginning on August 8, 2023, and continued to send notices of default, including during the period of the forbearance agreement.  *See id.* ¶¶ 76, 81–82.  This constituted a default under the terms of the forbearance agreement, according to Prudential, because the W/F Borrowers covenanted that "no material adverse change" would occur in their ability to pay the Westlands/Fresno Loan.  *See id.* ¶¶ 90, 92; W/F Forbearance Agmt. at 13–14.  Plaintiffs then decided to pursue legal action.  *See generally* Compl.

Plaintiffs now request that this court immediately appoint a receiver to take control and manage 50,000 acres of farmland and pistachio and almond trees because, they assert, defendants will be out of money on September 23, 2024.  *See id.* ¶¶ 101, 103; Receiver Mot. at 5; Doc. 11-1, Ex. A ("Forecast of Weekly Cash Flows") at 2–3; Doc. 11-2, Ex. B ("Decl. William Sciacqua") ¶¶ 73, 75.  Plaintiffs contend that a statement of weekly cash flows for some unspecified company and "ongoing discussions with" defendants indicate that defendants will be unable to complete the harvest of their pistachio crop because they will have no funds to operate or pay their workforce.  *See id.*  Therefore, plaintiffs argue, this court should immediately appoint a receiver to take control of the property.  Receiver Mot. at 5.  The court set the matter for a hearing on September 23, 2024, Doc. 14, but reset the hearing to September 24, 2024, at the request of the

parties, Doc. 19.

U.S. Bank moved to intervene on September 20, 2024, for the sole purpose of opposing plaintiffs' motion.  Doc. 21 ("Mot. to Intervene") at 3.  U.S. Bank points out, first and foremost, that

> Plaintiff's motion rests on the false premise that unless a receiver is appointed, Defendants' farming operation will run out of money imminently. The opposite is true: **U.S. Bank *will* finance the 2024 harvest, *unless* a receiver is appointed**. It is Plaintiff's requested relief that risks imminent irreparable harm.

Doc. 22 ("Opp'n") at 2 (emphasis in original).

U.S. Bank asserts – and plaintiffs' complaint also states, *see* Compl. ¶¶ 65–66, 92 – that defendants are indebted to U.S. Bank for over $145 million due to the U.S. Bank Credit Agreement.  Opp'n ¶ 1.  That loan is secured by all of defendants' crops and the proceeds made from their sale.  *Id.*  U.S. Bank therefore argues that the appointment of a receiver would greatly interfere with its ability to recover the amount it loaned to defendants.  Mot. to Intervene at 4.

The court therefore turns to consider whether U.S. Bank is entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a).

## II.   ANALYSIS/DISCUSSION

Rule 24(a)(2) provides that

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  In *Wilderness Society v. U.S. Forest Service*, the Ninth Circuit articulated the following test for determining if an applicant has a right to intervene: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action."  630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted).  "In evaluating whether Rule 24(a)(2)'s requirements are met, [courts should] follow 'practical and equitable

considerations' and construe the Rule 'broadly in favor of proposed intervenors.'" *Id.* at 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).  U.S. Bank's motion to intervene and opposition make clear that it satisfies each factor.

First, the motion to intervene is timely.  Timeliness is based on: "(1) the stage of the proceedings at which intervention is sought; (2) the prejudice that would be suffered by other parties if intervention were granted; and (3) the reason for and length of the delay in seeking intervention." *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997).  Plaintiffs filed their complaint on September 16, 2024, and U.S. Bank was not notified until September 18, 2024.  U.S. Bank then filed their motion the very next day.  There was clearly no delay.  Additionally, other parties will not be prejudiced by U.S. Bank's participation because, considering the condensed timeline of these proceedings, U.S. Bank sought to intervene well before the court's hearing on September 24, 2024.  *Cf. id.* at 1320 (noting that moving to intervene on the very last day a party was able to do so did not prejudice the other parties to the action).

As to the second and third factors, U.S. Bank has a significant protectable interest in the property at issue in plaintiffs' motion, and a favorable result for plaintiffs could greatly interfere with U.S. Bank's ability to protect that interest.  U.S. Bank has a security interest in all defendants' crops, and that interest is valued at over $145 million.  Allowing plaintiffs to take immediate control of some of the same farmland and crops secured by the U.S. Bank Credit Agreement could greatly impact U.S. Bank's ability to recover the amount it loaned to defendants.

As to the fourth factor, U.S. Bank must only demonstrate that the existing parties' representation of its interests "'*may be*' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added).  "The burden of making this showing should be treated as minimal." *Id.*  U.S. Bank's interests cannot be adequately represented by the existing parties.  Plaintiffs and U.S. Bank have directly conflicting interests with respect to the disposition of defendants' assets: Plaintiffs would like to take control of those assets, while U.S. Bank wishes to continue funding defendants' use of them.  In addition,

defendants cannot represent U.S. Bank's interests because defendants are in debt to U.S. Bank, and U.S. Bank has already initiated a separate action against many of the same companies who are defendants in this case, *U.S. Bank Nat'l Ass'n v. Touchstone Pistachio Co. LLC*, 1:24-cv-01105-JLT-SKO.  Doc. 18 ("Notice of Related Cases").  Given that context, defendants cannot adequately represent U.S. Bank's interest here, either.

In conclusion, U.S. Bank is entitled to intervene as of right for the limited purpose of opposing plaintiffs' motion.

**III.     CONCLUSION**

Based upon the foregoing, proposed intervenor's motion to intervene, Doc. 21, is **GRANTED**.

IT IS SO ORDERED.

Dated:   September 22, 2024

_____
UNITED STATES DISTRICT JUDGE

6