# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PGIM REAL ESTATE FINANCE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE.<br><br>Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br><br><br>AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY |

Upon due consideration of the Plaintiffs' Ex Parte *Motion for Order Appointing Receiver and for Preliminary Injunction* (the "**Motion**"), the Complaint (as defined below), the Declaration of William Sciacqua (the "**Plaintiff Declaration**"), and the Declaration of proposed receiver Lance Miller (the "**Receiver Declaration**"), the Oppositions filed to the Motion and the oral argument of counsel and good cause appearing therefor, and the Court being advised that the relief granted herein has been agreed to by both the Plaintiffs and the Farming Defendants (as defined below), and overruling any objections raised by any other parties appearing at the hearing hereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

B.      On September 16, 2024, Plaintiffs filed a Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents And Profits Clause; and Injunctive Relief (the "**Complaint**") against the above-captioned defendants (the "**Defendants**").[1]

C.      The Complaint alleges that: (a) Plaintiffs made certain loans to various entities, including ACDF, LLC; Assemi and Sons, Inc.; Avila Ranch EA, LLC; Bear Flag Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; DA Real Estate Holdings, LLC; Favier Ranch, LLC; Fg2 Holdings LLC; Gradon Farms, LLC; Granville Farms, LLC; Grantland Holdings No. 1, LLC; Grantland Holdings No. 2, LLC; Grantor Real Estate Investments, LLC; GVM Investments, LLC; GV Ag, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC; Panoche Pistachios, LLC; and Sageberry Farms, LLC (collectively, the "**Borrowers**") pursuant to the Loan Documents (as defined in the Complaint); (b) as security for the Borrowers' obligations under the Loan Documents, the Plaintiffs were granted, among other rights, a

---

[1] The term "Defendants" shall mean all named defendants in this action, while the term "Borrowers" shall mean all Defendants with the exceptions of Derek Bell and Rachel Marie White. **Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement** (each as defined in the Complaint).

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

continuing and first priority security interest in all real and personal property granted by Borrowers to Lender as security for the Loans, defined or otherwise described as "Property" in the Instruments (collectively, the "**Property**"); and (c) Plaintiffs perfected their security interest in the Property by, among other things, filing UCC-1 Financing Statements and the Instruments (as defined in the Complaint) with the relevant government offices. Plaintiffs further allege Defendants breached their obligations under the Loan Agreement by committing multiple Events of Default (as defined in the Loan Documents and described in more detail in the Complaint).

D.     On September 18, 2024, counsel for ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC and Sageberry Farms, LLC (the "**Farming Defendants**") entered their appearance.

E.     On September 18, 2024, Plaintiffs filed a *Ex Parte* Motion for Order Appointing Receiver and for Preliminary Injunction (the "**Receiver Motion**") seeking to appoint Lance Miller of Pivot Management Group, LLC as receiver in the above-captioned action.

F.     On September 21, 2024, the Farming Defendants filed their Opposition to the Receiver Motion.

G.     The appointment of a receiver is not intended to be, nor shall it be, an election of remedies by Plaintiffs, and the appointment of the receiver is without prejudice or waiver to any claim, defense or argument that Plaintiffs or the Defendants may have with respect to the Complaint.

H.     There is good cause for the appointment of a receiver over the Property.  Based on the facts and circumstances of this case, federal law, the Loan Documents, and the agreement of the Plaintiffs and the Farming Defendants, the appointment of a receiver is warranted.

I.     Further, Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops. Such actions

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die.

J.      Plaintiffs have established that: (i) as a result of the amounts due and owing under the Loan Documents, the defaults thereunder, and the difficulty in curing any such defaults, Plaintiffs are likely to succeed on the merits of their claim; (ii) Plaintiffs are likely to suffer irreparable harm in the absence of an injunction; (iii) the balance of the equities is in Plaintiffs' favor; and (iv) when coupled with the appointment of a receiver, an injunction benefits the public interest because the receiver needs to be able fulfill his duties and obligations without potentially disruptive interference.

K.      Following counsel meeting and conferring, Plaintiffs and the Farming Defendants have agreed to the entry of this Agreed Order and the relief provided for herein, namely, that a Receiver be appointed solely for the purpose of inspecting, monitoring, observing and auditing the Farming Defendants' use of Receivership Property (defined below), the proceeds of the Crop Financing (defined below), cash and cash collateral, and proceeds of all of the foregoing, through the completion of the 2024 harvest season (estimated to conclude November 1, 2024).

L.      Plaintiffs and the Farming Defendants have further advised the Court that the Plaintiffs have agreed to finance such amounts as are reasonably necessary to complete the 2024 crop harvest (estimated to conclude by November 1, 2024) to be funded pursuant to and through the Loan Documents and in accordance with the Budget and the Term Sheet attached hereto as Exhibit A (the "**Crop Financing**").  As part of the Crop Financing, the Plaintiffs will advance $32.404 million, or such higher amount as the Plaintiffs may agree in their sole discretion, for purposes of completion of pistachio and almond harvest for all properties of the Borrowers, whether or not such properties are subject to deeds of trust in favor of Plaintiffs.  Such advances shall be made pursuant to the Budget attached hereto as **Exhibit A**.  The Plaintiffs shall advance such funds directly to the Receiver, and the Receiver shall advance the

funds pursuant to the Budget to the Borrowers for operations.  The Borrowers shall continue to operate in the ordinary course of business subject to Receiver's monitoring and as otherwise provided herein.

M.      Accordingly, pursuant to the agreement of the Plaintiffs and the Farming Defendants, the provisions of this Agreed Order provide for an initial, limited "oversight and reporting" role for the Receiver through October 31, 2024, subject to extension as agreed to in writing among the Plaintiffs and Farming Defendants and filed with the Court.

N.      On November 1, 2024, or such other date as agreed to in writing among the Plaintiffs and Farming Defendants and filed with the Court, all additional and expanded power and authority requested in the Motion shall vest with the Receiver pursuant to the terms of a supplemental Order to be issued by this Court after notice and hearing.[2]

O.      Lance Miller of Pivot Management Group, LLC (the "**Receiver**") is not interested in this action and is competent and qualified to act as receiver.

**IT IS ORDERED**:

1.      Lance Miller of Pivot Management Group, LLC (the "**Receiver**"), is appointed as Receiver.[3]

2.      The Receiver shall have the power and authority set forth in this Order or any supplemental Order signed by the Court.

3.      The term "**Receivership Property**" shall be defined as follows:

    a.   The Property;

    b.   The Farming Defendants' respective business operations in connection with Property; and

---

[2] Prior to November 1, 2024, or such other date as agreed to in writing among the Plaintiffs and Defendants and filed with the Court, Plaintiffs shall file with the Court a proposed supplemental receivership order that sets forth the Receiver's additional power and authority, as requested in the Motion. The Farming Defendants have consented to this Court considering the terms of the supplemental order on an emergency basis.

[3] The Receiver shall charge the amounts set forth in the Receiver Declaration for his services and expenses incurred, each of which is subject to annual adjustment upon notice to the parties.

c.   The Farming Defendants' claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, wherever located, solely related to or arising out of the Property (clauses (a), (b), and (c) above, collectively, the "**Receivership Property**").

4.   Plaintiff and/or the Receiver shall be authorized to make motion or application to this Court to expand or narrow the scope of Receivership Property or the parties subject to this Order, which shall be heard upon notice and hearing, which may be held on an expedited or emergency basis;

5.   From the date of entry of this Order until November 1, 2024, or such other date as agreed to in writing among the Plaintiffs and Defendants and filed with the Court, the Receiver shall monitor the harvest and business operations of the Farming Defendants and make Crop Financing advances as determined by the Receiver in his reasonable discretion, and as provided for herein.

6.   In the event the Receiver determines, in his sole discretion, that the Borrowers are not adequately preserving the value of the Property, or otherwise if the Receiver observes a material diminution in the value of the Property, the Receiver may seek further, emergency relief from this Court in order to manage the operations of the Farming Defendants and such other Defendants as the Receiver deems necessary or appropriate, with all rights of any party in interest to oppose same expressly reserved.

7.   The receiver is hereby authorized to commence a marketing and sale process for the Property, however, any sale of the Property may only occur upon further Order of this Court.

8.   The Receiver shall be granted full access to and observation rights over the Farming Defendants' respective business operations and financial affairs related in any way to the Receivership Property.

6

9.      The Farming Defendants shall make their respective directors, officers, management, and employees available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties.

10.      The Receiver shall be, and hereby is, entitled to all rights, privileges, and protections afforded to each of the Farming Defendant's directors, officers or other fiduciaries including, but not limited to, insurance coverage under any currently existing insurance policies.

11.      Prior to appointment, the Receiver shall take the oath and file a bond in the sum of $5,000.00 to secure his faithful performance of his duties as the Receiver.

12.      Plaintiffs shall post a bond in connection with the Preliminary Injunction in the amount of $5,000.00.

13.      The Receiver shall be compensated in the amount of $50,000.00 per month, plus $875 / hour for each hour during a particular month that the Receiver expends more than 60 hours in the performance of his duties hereunder.

14.      The Receiver shall be entitled, to the fullest extent of the law, to indemnification from the Farming Defendants, and such Farming Defendants shall hold the Receiver harmless from any liability, loss, or damage the Receiver may suffer as a result of claims, demands, costs or judgments against him arising out of the activities to be carried out pursuant to the authority and obligations of his appointment pursuant to this Order or any supplemental Order.  The carveout and charging lien provided for Paragraph 39 below shall also apply to any indemnification obligations owed pursuant to this Paragraph 14.

15.      All income tax reporting and payments, whether for periods prior to or during the terms of this receivership, shall remain the obligation of Defendants.  The Receiver shall not be required to report any income generated by the Receivership Property (including interest earned), or to pay any income taxes due thereon, nor shall Receiver bear liability for the failure of Defendants to report said income to taxing authorities or pay the taxes associated with such income.

16.     The Receiver is acting solely in his capacity as Receiver and shall have no personal liability for claims against the Farming Defendants, individually or collectively. With respect to any insurance coverage, the Receiver, and other parties with insurable interests, shall be named as additional insureds on the policies for the period that the Receiver shall be appointed.

17.     The Receiver, as an officer of the Court, shall be entitled to the assistance of law enforcement officials at any other time during the term of the receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership Property and assets, without further order from the Court.

18.     The Receiver shall prepare periodic interim statements reflecting the fees and expenses of the Receiver, his financial advisors, and retained counsel incurred for said period in the observation of the Defendants and the Receivership Property (each, an "**Interim Statement**"). Upon completion of an Interim Statement, and the mailing of said statement to the parties' respective attorneys of record or any other designated personal agent, the Borrowers shall pay the amount set forth in such Interim Statement. Despite the preparation of Interim Statements, such fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a noticed interim request for fees or a Receiver's final account and report. The Receiver is authorized to provide this Court or the Plaintiffs with any additional reports or information he deems appropriate.

19.     The Receiver shall owe no duty, fiduciary or otherwise, to any party in interest.

20.     The Plaintiffs are hereby authorized to provide Crop Financing to the Borrowers pursuant to the Loan Documents, and in accordance with the Budget and Term Sheet attached hereto as Exhibit A;

21.     The Farming Defendants and those acting on Farming Defendants' behalf or at the Defendants' direction or behest are hereby enjoined from: (a) interfering in any manner with the Receiver's duties exercised in accordance with this Order or (b) interfering in any manner with the exclusive jurisdiction of the Court over the Receivership Property;

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

22.     Upon entry of this Order, Plaintiff shall take all reasonable efforts to serve this Order promptly on all Defendants, including Defendants other than the Farming Defendants; and

23.     From and after November 1, 2024, or such other date as agreed to in writing among the Plaintiffs and Defendants and filed with the Court, exclusive possession and control of the Receivership Property shall be awarded to the Receiver and the power, authority, duties, and responsibilities of the Receiver shall be modified by a further Order of this Court to be entered after notice and an opportunity for hearing. Plaintiffs and Borrowers have each consented to such hearing being held on an emergency basis.

**IT IS FURTHER ORDERED** that in addition to the rights and benefits granted in the prior decretal paragraphs of this Order, the Receiver is hereby also vested with the following rights and benefits:

24.     To inspect, monitor, audit, and observe the Farming Defendants' possession of, custody of, and use of the Receivership Property;

25.     To inspect, monitor, audit, and observe the Farming Defendants use of the Crop Financing provided by the Plaintiffs;

26.     To enter into any property where the Receivership Property may be located in order to inspect, monitor, audit, and observe the Farming Defendants' use, possession of, and custody of the Receivership Property;

27.     To inspect, monitor, audit, and observe the Farming Defendants' operations related to the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract, employment arrangement and all other aspects of any business operation in connection with or otherwise related to the Receivership Property;

28.     To inspect, monitor, audit, and observe the Borrowers' cash usage associated with managing, controlling, operating, and maintaining the Receivership Property;

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

29.     To obtain such Order(s) from the Court he deems prudent or necessary in the Receiver's sole discretion, for any reason;

30.     To make a motion or application to the Court regarding instruction or clarification in connection with the powers and scope of the receivership and this Order;

31.     To gain access to all Receivership Property;

32.     To inspect, monitor, audit, and observe the Farming Defendants' respective cash management systems, to the extent that such systems are used in connection with or otherwise relate to or include Receivership Property, including all bank accounts of Farming Defendants that are used as bank accounts for the business of operating the Receivership Property, and chattel paper that pertains to the Receivership Property, wherever located;

33.     To establish bank accounts in the name of any of the Farming Defendants, under any of their respective Employer Identification Numbers, at any bank the Receiver deems appropriate for the deposit of monies and funds advanced by the Plaintiffs, provided that all funds on deposit are insured by an agency of the United States government.  The Farming Defendants shall provide the Receiver within 24 hours of the Receiver's request all information, documentation, and signatures required by any bank or other financial institution to open or maintain any accounts as provided under this Order.

34.     To investigate and identify any and all claims or causes of action that are Receivership Property;

35.     To employ a law firm as Receiver's legal counsel ("**Receiver's Counsel**") in this matter, as reasonably necessary to accomplish the purposes of this Order, and pay the reasonable fees and expense of such Receiver's Counsel for services rendered in preparation of and during the receivership. Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the Receivership estate and in preparing for the Receiver's appointment. The attorneys' fees and cost incurred

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 39 of this Order;

36.     To employ Pivot Management Group, LLC ("**Pivot Group**"), as Receiver's financial advisor in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to Pivot Group shall be based on the hourly rates and expenses as set forth in the Receiver Declaration, subject to annual adjustment upon notice to the parties. Pivot Group shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the receivership estate. The fees and costs incurred by Pivot Group may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 39 of this Order;

37.     To employ such other professionals the Receiver deems reasonably necessary to accomplish the purposes of this Order.

38.     To inspect, monitor, audit, and observe the books, records, and files of Farming Defendants and any related third party, including bank account and accounting records to determine the sources and uses of cash, accounts, and proceeds of the Receivership Property and to report the results of same to the Court and Plaintiffs; and

39.     To use proceeds of the Crop Financing to pay: (a) fees and expenses owing to the Receiver, Receiver's Counsel, Pivot Group, and other professionals, (b) amounts owed to non-insider third parties arising in the ordinary course of business of Receiver's operation and control over the Receivership Property, and (c) any indemnification owing to the Receiver in connection herewith (collectively, the "**Administrative Claimants**"), in each case prior to payment to Plaintiffs.  The Plaintiffs have agreed and there hereby is a carveout from the Plaintiffs' interests in the Receivership Property sufficient to secure payment in full of all amounts owed or owing to the Administrative Claimants. The Receiver is acting solely in his capacity as Receiver and in no event shall have any personal liability for any debts or obligations incurred by or on behalf of Farming Defendants.

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

**IT IS SO ORDERED.**

DATED:_____     _____
                                     Hon. Kirk E. Sherriff
                                     United States District Judge

AGREED [PROPOSED] ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

# EXHIBIT A

**Maricopa** *($ thousands)*

| Forecasted Weekly Cash Flows | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | 09/27-/11/1 |
|---|---|---|---|---|---|---|---|---|
| *Week Ending* | | 9/27/24 | 10/4/24 | 10/11/24 | 10/18/24 | 10/25/24 | 11/1/24 | Total |
| *Week Count* | | 1 | 2 | 3 | 4 | 5 | 6 | 6 Wk Total |
| **Operating Related Disbursements** | | | | | | | | |
| Labor | $ | - | $ (255) | $ - | $ (255) | $ - | $ (255) | $ (765) |
| CapEx | | - | - | - | - | (151) | - | $ (151) |
| Land Base Charges | | (1,600) | - | - | - | - | - | $ (1,600) |
| Cultural | | (366) | (442) | (442) | (442) | (442) | (442) | $ (2,574) |
| Water & Irrigation | | (1,680) | (108) | (108) | (108) | (1,217) | (108) | $ (3,330) |
| Harvest | | (3,141) | (3,000) | (2,705) | (2,200) | (1,500) | (800) | $ (13,347) |
| Harvest Contingency | | (157) | (150) | (122) | (75) | (75) | (40) | $ (619) |
| Overhead | | (2,911) | (311) | (311) | (311) | (311) | (311) | $ (4,464) |
| Accounts Payable | | (1,100) | (2,719) | (1,869) | (1,219) | (1,000) | (500) | $ (8,407) |
| Op. Related Disbursements | $ | (10,955) | $ (6,984) | $ (5,557) | $ (4,609) | $ (4,695) | $ (2,455) | $ (35,256) |
| **Restructuring Costs** | | | | | | | | |
| Receiver Fees | $ | (208) | $ (171) | $ (115) | $ (115) | $ (89) | $ (89) | $ (787) |
| Lender Professional Fees | | (145) | (145) | (210) | (275) | (230) | (230) | $ (1,235) |
| Restructuring Costs | $ | (353) | $ (316) | $ (325) | $ (390) | $ (319) | $ (319) | $ (2,022) |
| **Net Cash Flow** | $ | (11,308) | $ (7,300) | $ (5,882) | $ (4,999) | $ (5,014) | $ (2,774) | $ (37,278) |
| **Beginning Cash** | | 7,021 | (4,287) | (11,587) | (17,469) | (22,468) | (27,482) | 7,021 |
| **Ending Cash** | $ | (4,287) | $ (11,587) | $ (17,469) | $ (22,468) | $ (27,482) | $ (30,257) | $ (30,257) |
| Less: Payroll Reserve | | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) |
| **Ending Cash After Payroll Reserve** | $ | (6,434) | $ (13,734) | $ (19,616) | $ (24,615) | $ (29,629) | $ (32,404) | $ (32,404) |

**MARICOPA ORCHARDS, LLC, ET AL.**
**TERMS FOR HARVEST ADVANCES**

The terms and conditions set forth in this "Term Sheet" address the proposed terms of one or more Loan Modification and Forbearance Agreements (the "Harvest Advances Amendment"), which may be in the form of an amendment and restatement, with respect to the Subject Loans referred to below made by Prudential Insurance Company of America, Par U Hartford Life & Annuity Comfort and PGIM Real Estate Finance, LLC (collectively, "Prudential") and Maricopa Orchards, LLC, a California limited liability company and all of its co-borrowers (collectively, the "MOC Borrowers").

This is a non-binding term sheet and does not create any legally binding obligation on any party. Any obligations of the parties will only arise upon the execution of definitive documentation that is acceptable to all parties in their sole and absolute discretion.

| Summary of Proposed Terms for Harvest Advances | |
|---|---|
| **Subject Loans** | ▪ Prudential Insurance Company of America: Loan Nos. 717612168, 717612339, 717612340, 717611848, 717611852, 717612317 and 717612116 <br> ▪ Par U Hartford Life & Annuity Comfort Trust Loan No. 717612122 <br> ▪ PGIM Real Estate Finance, LLC: Loan Nos. 717611236, 717611624, 717611763, 717611810, 717612029 & 717612063 (the "Subject Loans") |
| **Harvest Advances** | ▪ Prudential will advance $32.404 million, or such higher amount as Prudential may agree in its sole discretion (the "Harvest Advances"), for purposes of completion of pistachio and almond harvest for all properties of the MOC Borrowers, whether or not such properties are subject to deeds of trust in favor of Prudential.   Such advances shall be made pursuant to the Harvest Budget attached hereto as **Exhibit A**.  Prudential shall advance such funds directly to Receiver (as defined below), and Receiver shall advance the funds pursuant to the Harvest Budget to MOC Borrowers for operations.  MOC Borrowers shall continue to operate in the ordinary course of business subject to Receiver's monitoring as described below. |
| **Receiver** | ▪ MOC Borrowers would consent to appointment of Lancer Miller as the receiver (the "Receiver") solely for purpose of monitoring Prudential's existing Collateral, reviewing the Harvest Budget and related reporting, receiving and administering Harvest Advances and matters incidental to the above.  Receiver shall be subject to an agreed order between MOC Borrowers and Prudential (as Prudential may agree in its sole discretion). |
| **Forbearance Period / Maturity of Harvest Advances** | ▪ Notwithstanding that the Subject Loans have been accelerated and are fully due and owing, Prudential would forbear from exercising remedies relative to the MOC Borrowers and Guarantors until the earlier of (x)  November 1, 2024 or (y) the occurrence of a Forbearance Trigger Event or other default under the Forbearance Agreement (subject to any grace or cure periods, if any) (the "Forbearance Period"). <br> ▪ The entire amount of the Subject Loans, including the amount of the Harvest Advances, is fully due and payable on the earlier of (x) November 1, 2024, or (y) early termination of the Forbearance Period. <br> ▪ In addition to the existing deeds of trust, if requested by Prudential, MOC Borrowers will execute crop assignments with respect to pistachios and almonds grown on properties subject to deeds of trust in favor of Prudential directing the receiving processors to make payment of amounts due for the |

Non-Binding Term Sheet

| | |
|---|---|
| | 2024 crop directly to Prudential, which payments will be applied to reduce the outstanding balance of Harvest Advances and otherwise applied as provided in the existing loan documents with respect to the Subject Loan (including principal and unpaid interest).<br><br>▪ MOC Borrowers will use all commercially reasonable best efforts to enter into intercreditor and related arrangements, reasonably satisfactory to Prudential, with all other existing agricultural real estate lenders in order to grant Prudential an interest in 2024 pistachio and almond crops grown on properties subject to deeds of trust in favor of such other real estate lenders and related proceeds to provide for a priority reimbursement to Prudential of amounts of Harvest Advances allocated to the properties encumbered by the security interests of such lenders.<br><br>▪ MOC Borrowers shall execute security agreement and other documents (as determined by Prudential in its sole discretion) as necessary to obtain and perfect a security interest solely in the 2024 crops grown on such properties not currently subject to deeds of trust in favor of Prudential; provided that the grant of such security interest will be limited to the extent (and only to the extent) such grant would violate the terms of any agreement (including, without limitation, any loan agreement or deed of trust applicable to such other properties and the existing crop line with U.S. Bank) that is legally binding on the applicable MOC Borrowers unless and until required consents under such agreements are obtained. |
| **Interest** | ▪ Interest on all amounts advanced as part of the Harvest Advances will accrue at 9% per annum. |
| **Use of Proceeds** | ▪ Proceeds of the Harvest Advances shall be used solely for the purpose of paying the operating expenses relative to the 2024 harvest, accrued interest on the Harvest Advances, professional fees as set forth in an agreed budget attached to the Harvest Advances Amendment (the "Harvest Budget"), and as otherwise provided in the existing Loan Documents. |
| **Draw Period** | ▪ Tuesday, September 24, 2024 through the earlier of (x) October 31, 2024, or (y) the occurrence of any Forbearance Trigger Event set forth below, with all draws subject to the satisfaction of all conditions precedent to funding set forth below. |
| **Non-Revolving** | ▪ Amounts of Harvest Advances repaid may not be reborrowed. |
| **Funding Mechanics** | ▪ Funding would occur weekly pursuant to the Harvest Budget, on Tuesday of each week during the Forbearance Period, commencing on September 24, 2024. |
| **Reporting and Oversight** | ▪ MOC Borrowers to provide to Receiver and PGIM a weekly budget to actual report to be received on Monday of week against the Harvest Budget through the immediately preceding Friday.<br><br>▪ MOC Borrowers to provide to Receiver and PGIM a weekly report every Monday during the Forbearance Period setting forth the identity and terms of all agreements with all processors of the MOC Borrowers' 2024 pistachio and almond crop, along with copies of all such agreements.<br><br>▪ The Receiver will be provided with daily disbursement reviews.<br><br>▪ The Receiver will be provided with reasonable access to MOC Borrowers' books and records and senior finance and other executive employees as part of its oversight. |

Non-Binding Term Sheet

| | |
|---|---|
| **Conditions Precedent to Funding** | ▪ The execution and delivery by all MOC Borrowers of one or more Loan Modification and Forbearance Agreements in form and substance consistent with this term sheet and reasonably acceptable to Prudential and the MOC Borrowers (collectively, the "Forbearance Agreement").<br>▪ The MOC Borrowers shall have executed and delivered the following amendment closing deliveries, all in form and substance reasonably acceptable to Prudential: good standing certificates, incumbency certificates, and organizational documents.<br>▪ No Forbearance Trigger Event shall have occurred and be continuing.<br>▪ MOC Borrowers provide evidence satisfactory to the Receiver that MOC Borrowers have entered into processing agreements to process the crop for that week.<br>▪ No additional collateral shall be required. |
| **RPA** | ▪ Chip Cummins and RPA continue to serve as FA of the MOC Borrowers for the duration of the Forbearance Period. MOC Borrowers and RPA to provide full, commercially reasonable cooperation with the Receiver in the Receiver's onsite monitoring of compliance with Harvest Budget and this Agreement. |
| **Forbearance Termination Triggers** | The Forbearance Period would immediately terminate, without notice, upon the occurrence of any of the following (each a "Forbearance Trigger Event"):<br>▪ Failure to deliver the required reporting set forth in this term sheet.<br>▪ Failure to adhere to the cash flow projections set forth in the Harvest Budget, subject to a permitted variance of 10%.<br>▪ Failure to abide by any term of this term sheet within 3 business days after written notice by Prudential. |

Non-Binding Term Sheet