MARY H. HAAS (State Bar No. 149770)
  maryhaas@dwt.com
JOHN D. FREED (State Bar No. 261518)
  jakefreed@dwt.com
MATTHEW E. LADEW (State Bar No. 318215)
  mattladew@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

JOSEPH M. VANLEUVEN (*pro hac vice pending*)
  joevanleuven@dwt.com
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Avenue, Suite 700
Portland, Oregon  97205
Telephone:  (503) 778-5325
Fax:  (503) 701-0023

Attorneys for Proposed Intervenor
U.S. BANK NATIONAL ASSOCIATION

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; and PGIM REAL ESTATE FINANCE, LLC,<br><br>                    Plaintiffs,<br>     vs.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE,<br>                    Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br>**U.S. BANK'S SUPPLEMENTAL OPPOSITION TO *EX PARTE* APPOINTMENT OF A RECEIVER; OBJECTION TO AGREED [PROPOSED] ORDER (DOC. 33)** |

U.S. Bank National Association ("U.S. Bank") hereby supplements its Opposition (Doc. 22; hereafter, the "**Opposition**") to Plaintiffs' *Ex-Parte* Motion For Order Appointing Receiver and For Preliminary Injunction (Doc. 11) and related Ex-Parte Application (Doc. 12).  Further, for the reasons set forth here and in its Opposition, and pursuant to the Court's Minute Order (Doc. 36), U.S. Bank also hereby objects to the newly filed Agreed [Proposed] Order (Doc. 33, hereafter "**Agreed Order**") purporting to resolve the Motion. U.S. Bank appreciates the Court's indulgence in allowing it to file this Supplement.  It is vitally important for the Court to consider events that have transpired over this past weekend underscoring Prudential's improper use of this Court's resources to attempt to subordinate U.S. Bank's lien position in Maricopa's 2024 crops and proceeds thereof, as well as to discuss the deficiencies in the Agreed Order itself.

**I.  BACKGROUND FACTS**

Everyone agrees that Maricopa is in desperate need of funding to complete its 2024 harvest, following the recent collapse of its expected refinancing from Conterra.  U.S. Bank, Maricopa, and Prudential have had extensive discussions regarding the provision of financing to enable Maricopa to complete the 2024 harvest (the "**Harvest Financing**").  On Thursday, September 19, U.S. Bank's and Prudential's lawyers negotiated a handshake deal under which the parties would stipulate to a receivership as described in the Agreed Order, except that U.S. Bank, rather than Prudential, would provide the Harvest Financing.  Unfortunately, the very next morning, Prudential attempted to re-trade the economic terms of the handshake deal negotiated the night before.  Maricopa asked U.S. Bank to provide the Harvest Financing and to join it in attempting to defeat Prudential's request for a receiver.  U.S. Bank supplied Maricopa with a term-sheet for the Harvest Financing, and spent the rest of September 20 working closely with lawyers for Maricopa to coordinate the bank's Opposition with Maricopa's own opposition to the *Ex-Parte* Motion, even incorporating language suggested by Maricopa's lawyers. The Harvest Financing term sheet was attached to its Opposition.

At the same time U.S. Bank's lawyers were working on the Opposition and the Harvest Financing with Maricopa's lawyers (and despite Prudential's re-trade),  U.S. Bank's financial advisor Evan Blum continued negotiating with Prudential's financial advisor Peter Richter in an

attempt to reach settlement on terms for a consensual receivership, with Harvest Financing to be provided by U.S. Bank for the entire Maricopa harvest outside the receivership.

The preparation of the bank's Opposition and the settlement negotiations proceeded simultaneously.  By late afternoon on Friday, September 20,  the Opposition was ready to be filed.  Meanwhile, U.S. Bank and Prudential were very close to agreement on modified terms to revive their September 19 deal.  Prudential had accepted the bank's proposal for an "expanding power receiver," as now embodied in the Agreed Order.  U.S. Bank would provide the Harvest Financing.  The final material "deal point" was agreed to on a phone call between U.S. Bank's and Prudential's lawyers late Friday afternoon.  Unfortunately, U.S. Bank's litigation lawyers had filed the Opposition just minutes earlier.

Prudential was unhappy that the Opposition had been filed, but its lawyer confirmed in an email to U.S. Bank's on Saturday morning (presumably after discussions with his client) that "*We still have a deal*."  Accordingly, lawyers from U.S. Bank and Maricopa worked all day and into the night on Saturday, September 21 to document both the deal between U.S. Bank and Prudential, and the $20 million in Harvest Financing to be provided by U.S. Bank.  U.S. Bank's lawyers took the lead in drafting the settlement agreement with Prudential.  U.S. Bank's lawyers worked closely with Maricopa's lawyers to document the new $20 million Harvest Financing.  Concurrently, Prudential's lawyers were supposed to be drafting a stipulated order for the expanding powers receiver.  However, as U.S. Bank would shortly learn, instead of doing that, Prudential was secretly negotiating a different deal with Maricopa, under which Prudential, not U.S. Bank, would supply the Harvest Funding.  Neither Prudential nor Maricopa informed U.S. Bank about what they were doing, and indeed, Maricopa's finance lawyers kept up the façade by working on documenting U.S. Bank's Harvest Financing all day Saturday.

It was not until 3:30 p.m. on Sunday afternoon that one of Maricopa's lawyers finally revealed that Maricopa and Prudential, behind U.S. Bank's back, had reached agreement for a stipulated receivership under which <u>Prudential</u> would provide the Harvest Financing, cutting U.S. Bank out.  Despite U.S. Bank's requests, few details were provided.  U.S. Bank did not learn the terms of the agreement until the Agreed Order was filed on Monday afternoon.

U.S. Bank has been Defendants' crop lender for years. Maricopa's refusal of the Bank's Harvest Financing (financing it had begged the Bank to provide and was relying on to help defeat the *Ex-Parte* Motion) in favor of financing from Prudential is a blatant violation of several provisions of the Second Amended and Restated Loan and Security Agreement between U.S. Bank and Maricopa—a breach of contract apparently induced by Prudential in order to provide ammunition for an argument that it has senior priority on the 2024 crops under the U.S. Bank/Prudential Intercreditor Agreement. It is now clear that Prudential is seeking to improperly use this Court's valuable resources in a vain attempt to circumvent its agreed-upon contractual limitations with U.S. Bank—Prudential is seeking to capture the 2024 crop receivables all for itself rather than allow them to be retained by U.S. Bank, which has already provided significant funding for the 2024 crop and stands ready to finance completion of the harvest.[1]

**II. ARGUMENT**

U.S. Bank has several concerns about the Agreed Order (Doc. 33).

**A. There is No Emergency and Thus no Basis for *Ex-Parte* Relief.**

Proposed findings H. and I. are inaccurate for the reasons set forth in U.S. Bank's Opposition and Maricopa's own Opposition. Most importantly, the only "emergency" here is one manufactured by Prudential by repudiating the agreement under which U.S. Bank was going to provide the financing Prudential now proposes to provide. Prudential took the Bank's concept for an expanding-power receiver and substituted itself as the lender; indeed, the budget and financing term sheet attached as Exhibit A to the Agreed Order is a copy and paste of the form of budget and term sheet prepared by U.S. Bank for the Harvest Financing it had agreed to provide to Maricopa.

The arguments made by Maricopa and U.S. Bank in their respective Oppositions to the *Ex-Parte* Motion remain accurate, and compelling. U.S. Bank remains willing to provide the Harvest Financing, as is its contractual right under its loan agreement with Maricopa. Prudential should not be rewarded for its recent maneuvers. In point of fact, the only purpose of a receiver at this juncture, beyond a monitoring function that could as easily be provided by Prudential's financial

---

[1] Prudential's liability for tortious interference with contract or breach of the implied covenant of good faith and fair dealing in its Intercreditor Agreement with U.S. Bank will be decided in future litigation.

advisor, is to act as a conduit for financing by Prudential under the imprimatur of a Court order, in a vain attempt to gain advantage in a dispute with U.S. Bank over who has senior priority in Maricopa's crops.

### B. The Financing Provisions of the Agreed Order Must be Clarified.

<u>If</u> the Court is going to appoint a receiver in this case notwithstanding the absence of a real emergency, and if the Court authorizes financing of the magnitude contemplated, it is critical that the Receivership Order clearly describe <u>the terms of the financing, how it will be secured, how it will be repaid, and when it will be repaid.</u>  The Agreed Order fails to do so.  Recital I describes "Crop Financing" that Prudential proposes to "advance" to a receiver, which the receiver will then "advance" to Maricopa to cover the cost of harvesting crops on both the Receivership Property and on Maricopa's other property, which is not involved in this case.[2]  The Agreed Order is vague as to how either tier of advances will be secured.  The Agreed Order is internally inconsistent regarding whether Prudential will advance funds to the receiver, as opposed to Maricopa itself, or to both.  For example, in Paragraph 5, the receiver is directed to make "Crop Financing" advances to Maricopa in his discretion, whereas Paragraph 20 of the Agreed Order states that Prudential is authorized to provide crop financing to <u>Maricopa</u> (not the receiver) "pursuant to the Loan Documents."[3]  Adding to the confusion, paragraph 39 of the Agreed Order includes what it characterizes as a "carve-out" allowing the receiver to use the Crop Financing to pay administrative costs, "prior to payment to Plaintiffs."[4]  This suggests the financing is being provided to the receiver, not Maricopa.  Significantly, this reference to "payment to Plaintiffs" is the only time the Agreed Order even addresses repayment of the Crop Financing.  The Agreed Order is hopelessly confusing as to whether the financing is being provided to the receiver or to Maricopa itself, and it utterly fails to specify how any financing provided to the receiver will be secured or paid.

---

[2] As the Court is aware, Prudential's trust deeds (and any receivership in this case) cover only about 70% of Maricopa's farm land.

[3] Prudential does not need a court order to provide such financing directly to Maricopa, nor is it proper for the Court to "authorize" such financing, thereby providing some kind of imprimatur of legitimacy to breaches of contract.

[4] Notably, the Agreed Order fails to specify when and how the Prudential financing will be repaid.

The provision in the Agreed Order that Prudential is providing financing "pursuant to the Loan Documents" offers little clarity on these points. To U.S. Bank's knowledge, unlike U.S. Bank, Prudential has never provided a crop line of credit to Maricopa and the "Loan Documents" attached as exhibits to its Complaint are real estate mortgage loan documents.[5] By attempting to secure a Court order authorizing the receiver to obtain financing "pursuant to the Loan Documents," Prudential may be making a stealth attempt to secure its existing mortgage debt with a senior interest in the entire 2024 crop—not only crops from its own orchards but from the 30% of orchards not subject to its trust deeds. This was not sought in the *Ex-Parte* Motion and none of the other real estate lenders—who have trust deeds on the 30%—have even been served with the *Ex-Parte* Motion or the Agreed Order.

Part of the problem here is the fact that any receivership in this case would be limited to the 70% of farm land subject to Prudential's trust deeds. There is no basis for the Court in this case to appoint a receiver over the other 30%. The lenders who do have trust deeds on the other property are not parties here. There is no basis for this Court to authorize a receiver to borrow funds secured by crops on the other 30%, or to make "advances" to Maricopa in respect to the other 30%. U.S. Bank is the only lender that can properly finance harvest of the entire crop secured by the entire crop, because U.S. Bank has intercreditor agreements with all of the real estate lenders authorizing it to do just that.

In sum, even if the Court is convinced there is an emergency justifying *ex-parte* relief, it should not appoint a receiver under the Agreed Order. If the Court does appoint a receiver *ex-parte*, any financing provided either to the receiver or by the receiver (downstream to Maricopa) should be limited to amounts needed to pay for harvesting Prudential's orchards. The operative Order should clearly specify the terms of the proposed financing, how it will be secured, how it will be repaid, and when it will be repaid. It should make clear that any receiver's certificates or other liens for such financing are limited solely to securing the new funds advanced. It should

---

[5] The "Loan Documents" are attached as exhibits to Prudential's complaint in a 966 page .pdf, and creditors should not be forced to parse this voluminous document in order to try to figure out what it means to provide a crop loan "pursuant to" what appear to be term notes secured by deeds of trust.

require that all proceeds of <u>any</u> of Maricopa's crops (not just the 2024 crops) that are collected by the receiver, <u>be held for disposition upon further Order of this Court</u> in accordance with either (1) a determination, in separate litigation between U.S. Bank and Prudential, as to which of them has senior priority in those proceeds, or (b) an agreement between Prudential and U.S. Bank; <u>provided</u>, that the receiver may repay whichever lender finances the 2024 harvest of Prudential's orchards using the proceeds of sales of the 2024 crops from those orchards and only those proceeds. That means, in particular, that <u>no crop proceeds should be used by the receiver to pay expenses for the 2025 crop</u>.

**C. A Receiver Should Not be Required or Even Authorized to Borrow From Prudential.**

Any receiver appointed in this case should <u>not</u> be required to obtain Harvest Financing from Prudential, nor should the receiver even be <u>authorized</u> to obtain such financing unless U.S. Bank refuses to provide it. U.S. Bank stands ready, willing and able to provide the Harvest Financing.[6] As noted, Maricopa's refusal to allow that would be a breach of its crop loan agreement with U.S. Bank. This Court should not require or authorize a receiver to breach Maricopa's crop loan agreement in this manner to no end other than to arm Prudential with an ill-conceived argument that it would use to try to strip U.S. Bank of its senior security interest in the 2024 crops under those parties' Intercreditor Agreement. At the very least, the Order should specify clearly that the Order itself, and any financing provided under the Order, is without prejudice to the parties' positions in, and has no effect on, the dispute between U.S. Bank and Prudential over who has the senior priority security interest in Maricopa's crops.

**D. Other Provisions of The Agreed Order Must be Clarified.**

The definition of "Receivership Property" in the Agreed Order is vague and overbroad. For example, Maricopa has millions of dollars in outstanding receivables due for prior sales of

---

[6] The Court may notice that the budget for Harvest Financing attached to the Opposition was for about $20 million in <u>net</u> financing, while the budget attached to the Agreed Order is for approximately $32 million. U.S. Bank's budget was negotiated by the Bank's and Maricopa's financial advisors based on numbers provided by Maricopa. The primary reason Prudential's budget looks larger is that Prudential's budget does not include <u>inflows</u> from receivable collections during the budget period, which reduce the need for borrowing.

2023 and 2024 crops, some of which sales likely included crops grown on Prudential's orchards. Are those receivables "Receivership Property?" U.S. Bank has already sent notices to the account debtors on those receivables, requiring them to pay U.S. Bank directly pursuant to the UCC. The account debtors should not be enjoined from paying those receivables to U.S. Bank and U.S. Bank should not be enjoined from collecting them.

Finally, paragraph 7 of the Agreed Order provides that any sale of "Property" may only occur upon further order of the Court. The term "Property" is used as defined in Prudential's loan documents, and apparently refers to virtually all of Maricopa's assets, including crops (see Recital C), or at least all of such assets related to the real and personal property subject to Prudential's liens. Accordingly, as written, the Agreed Order would prevent Maricopa from honoring the contracts it has already entered to sell its 2024 harvest to third-party processors on market terms (or at least honoring those contracts to the extent they involve crops from Prudential's Orchards), absent a prior Court order. That is clearly impractical.

Respectfully submitted on September 24, 2024.

DAVIS WRIGHT TREMAINE LLP
Mary H. Haas
Joseph VanLeuven
John D. Freed
Matthew E. Ladew


By:  */s/ John D. Freed*
　　　John D. Freed

Attorneys for
U.S. BANK, National Association