# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PGIM REAL ESTATE FINANCE, LLC<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE.<br><br>Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br>AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY |

AGREED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY

Upon due consideration of the Plaintiffs' Ex Parte *Motion for Order Appointing Receiver and for Preliminary Injunction* (the "**Motion**"), the Complaint (as defined below), the Declaration of William Sciacqua (the "**Plaintiff Declaration**"), and the Declaration of proposed receiver Lance Miller (the "**Receiver Declaration**"), the Oppositions filed to the Motion and the oral argument of counsel and good cause appearing therefor, and the Court being advised that the relief granted herein has been agreed to by both the Plaintiffs and the Farming Defendants (as defined below), and overruling any objections raised by any other parties appearing at the hearing hereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

B. On September 16, 2024, Plaintiffs filed a Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents And Profits Clause; and Injunctive Relief (the "**Complaint**") against the above-captioned defendants (the "**Defendants**").[1]

C. The Complaint alleges that: (a) Plaintiffs made certain loans to various entities, including ACDF, LLC; Assemi and Sons, Inc.; Avila Ranch EA, LLC; Bear Flag Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; DA Real Estate Holdings, LLC; Favier Ranch, LLC; Fg2 Holdings LLC; Gradon Farms, LLC; Granville Farms, LLC; Grantland Holdings No. 1, LLC; Grantland Holdings No. 2, LLC; Grantor Real Estate Investments, LLC; GVM Investments, LLC; GV Ag, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC; Panoche Pistachios, LLC; and Sageberry Farms, LLC (collectively, the "**Borrowers**") pursuant to the Loan Documents (as defined in the Complaint); (b) as security for the Borrowers' obligations under the Loan Documents, the Plaintiffs were granted, among other rights, a

---

[1] The term "Defendants" shall mean all named defendants in this action, while the term "Borrowers" shall mean all Defendants with the exceptions of Derek Bell and Rachel Marie White. **Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement** (each as defined in the Complaint).

continuing and first priority security interest in all real and personal property granted by Borrowers to Lender as security for the Loans, defined or otherwise described as "Property" in the Instruments (collectively, the "**Property**"); and (c) Plaintiffs perfected their security interest in the Property by, among other things, filing UCC-1 Financing Statements and the Instruments (as defined in the Complaint) with the relevant government offices. Plaintiffs further allege Defendants breached their obligations under the Loan Agreement by committing multiple Events of Default (as defined in the Loan Documents and described in more detail in the Complaint).

D. On September 18, 2024, counsel for ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC and Sageberry Farms, LLC (the "**Farming Defendants**" and together with the Plaintiff, the "**Parties**") entered their appearance.

E. On September 18, 2024, Plaintiffs filed a *Ex Parte* Motion for Order Appointing Receiver and for Preliminary Injunction (the "**Receiver Motion**") seeking to appoint Lance Miller of Pivot Management Group, LLC as receiver in the above-captioned action.

F. On September 21, 2024, the Farming Defendants filed their Opposition to the Receiver Motion.

G. The appointment of a receiver is not intended to be, nor shall it be, an election of remedies by Plaintiffs, and the appointment of the receiver is without prejudice or waiver to any claim, defense or argument that Plaintiffs or the Defendants may have with respect to the Complaint.

H. There is good cause for the appointment of a receiver over the Property. Based on the facts and circumstances of this case, federal law, the Loan Documents, and the agreement of the Plaintiffs and the Farming Defendants, the appointment of a receiver is warranted.

I. Further, Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops. Such actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die.

J. [Intentionally Omitted].

K. Following counsel meeting and conferring, Plaintiffs and the Farming Defendants have agreed to the entry of this Agreed Order and the relief provided for herein, namely, that a Receiver be appointed solely for the purpose of inspecting, monitoring, observing and auditing the Farming Defendants' use of Receivership Property (defined below), the proceeds of the Crop Financing (defined below), cash and cash collateral, and proceeds of all of the foregoing, through the completion of the 2024 harvest season (estimated to conclude November 1, 2024).

L. Plaintiffs and the Farming Defendants have further advised the Court that the Plaintiffs have agreed to finance such amounts as are reasonably necessary to complete the 2024 crop harvest (estimated to conclude by November 1, 2024) and in accordance with the Budget and the Term Sheet attached hereto as Exhibit A (the "**Crop Financing**"). The Crop Financing shall be loan funds advanced to Borrowers that shall be administered by the Receiver. Advances on the loan shall be made by Plaintiffs to the Receiver for disbursement in accordance with this Order. As part of the Crop Financing, the Plaintiffs will advance $32.404 million, or such higher amount as the Plaintiffs may agree in their sole discretion, for purposes of completion of pistachio and almond harvest for all properties of the Borrowers, whether or not such properties are subject to deeds of trust in favor of Plaintiffs. Such advances shall be made pursuant to the Budget attached hereto as **Exhibit A**. The Plaintiffs shall advance such funds directly to the Receiver, and the Receiver shall disburse the funds pursuant to the Budget to the Borrowers for operations. The Borrowers shall continue to operate in the ordinary course of business subject to Receiver's monitoring and as otherwise provided herein.

M.	Accordingly, pursuant to the agreement of the Plaintiffs and the Farming Defendants, the provisions of this Agreed Order provide for an initial, limited "oversight and reporting" role for the temporary Receiver through October 31, 2024.

N.	[Intentionally Omitted].

O.	Lance Miller of Pivot Management Group, LLC (the "**Receiver**") is not interested in this action and is competent and qualified to act as receiver.

**IT IS ORDERED**:

1.	Lance Miller of Pivot Management Group, LLC (the "**Receiver**"), is appointed as Receiver.[2]

2.	The Receiver shall have the power and authority set forth in this Order or any supplemental Order signed by the Court.

3.	The term "**Receivership Property**" shall be defined as follows:

a. The Property;

b. The Farming Defendants' respective business operations in connection with Property; and

c. The Farming Defendants' claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, wherever located, solely related to or arising out of the Property (clauses (a), (b), and (c) above, collectively, the "**Receivership Property**").

---

[2] The Receiver shall charge the amounts set forth in the Receiver Declaration for his services and expenses incurred, each of which is subject to annual adjustment upon notice to the parties.

4. The Parties and/or the Receiver shall be authorized to make motion or application to this Court to expand or narrow the scope of Receivership Property or the parties subject to this Order, which shall be heard upon notice and hearing.

5. From the date of entry of this Order until November 1, 2024, or such other date as agreed to in writing among the Plaintiffs and Defendants and filed with the Court, the Receiver shall monitor the harvest and business operations of the Farming Defendants and make Crop Financing advances as determined by the Receiver in his reasonable discretion, and as provided for herein.

6. In the event the Receiver determines, in his sole discretion, that the Borrowers are not adequately preserving the value of the Property, or otherwise if the Receiver observes a material diminution in the value of the Property, the Receiver may seek further relief from this Court in order to manage the operations of the Farming Defendants and such other Defendants as the Receiver deems necessary or appropriate, with all rights of any party in interest to oppose same expressly reserved.

7. [Intentionally Omitted].

8. The Receiver shall be granted full access to and observation rights over the Farming Defendants' respective business operations and financial affairs related in any way to the Receivership Property.

9. The Farming Defendants shall make their respective directors, officers, management, and employees available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties.

10. The Receiver shall be, and hereby is, entitled to all rights, privileges, and protections afforded to each of the Farming Defendant's directors, officers or other fiduciaries including, but not limited to, insurance coverage under any currently existing insurance policies.

11. Prior to appointment, the Receiver shall take the oath and file a bond in the sum of $5,000.00 to secure his faithful performance of his duties as the Receiver.

12. [Intentionally Omitted].

13. The Receiver shall be compensated in the amount of $50,000.00 per month, plus $875 / hour for each hour during a particular month that the Receiver expends more than 60 hours in the performance of his duties hereunder.

14. The Receiver shall be entitled, to the fullest extent of the law, to indemnification from the Farming Defendants, and such Farming Defendants shall hold the Receiver harmless from any liability, loss, or damage the Receiver may suffer as a result of claims, demands, costs or judgments against him arising out of the activities to be carried out pursuant to the authority and obligations of his appointment pursuant to this Order or any supplemental Order; provided however, the Receiver shall not be entitled to indemnification for willful misconduct, gross negligence, or fraud as determined by a final order of the Court.  The carveout and charging lien provided for Paragraph 39 below shall also apply to any indemnification obligations owed pursuant to this Paragraph.

15. All income tax reporting and payments, whether for periods prior to or during the terms of this receivership, shall remain the obligation of Defendants.  The Receiver shall not be required to report any income generated by the Receivership Property (including interest earned), or to pay any income taxes due thereon, nor shall Receiver bear liability for the failure of Defendants to report said income to taxing authorities or pay the taxes associated with such income.

16. The Receiver is acting solely in his capacity as Receiver and shall have no personal liability for claims against the Farming Defendants, individually or collectively. With respect to any insurance coverage, the Receiver, and other parties with insurable interests, shall be named as additional insureds on the policies for the period that the Receiver shall be appointed.

17. [Intentionally Omitted].

18. The Receiver shall prepare periodic interim statements reflecting the fees and expenses of the Receiver, his financial advisors, and retained counsel incurred for said period in the observation of the

Defendants and the Receivership Property (each, an "**Interim Statement**"). Upon completion of an Interim Statement, and the mailing of said statement to the parties' respective attorneys of record or any other designated personal agent, the Borrowers shall pay the amount set forth in such Interim Statement. Despite the preparation of Interim Statements, such fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a noticed interim request for fees or a Receiver's final account and report. The Receiver is authorized to provide this Court or the Plaintiffs with any additional reports or information he deems appropriate.

19. [Intentionally Omitted].

20. [Intentionally Omitted];

21. [Intentionally Omitted];

22. Upon entry of this Order, Plaintiff shall take all reasonable efforts to serve this Order promptly on all Defendants, including Defendants other than the Farming Defendants, the parties intervening in this case ("**Intervenors**"), and all lenders of any Defendants whose loans are made primarily for agricultural purposes and are secured primarily by real property (the "**Real Estate Lenders**").

23. A hearing on whether the receivership should be continued shall be set for October 22, 2024 at 1:30 P.M. (PT), with parties able to appear via Zoom. On or before October 11, 2024, Parties shall file pleadings as to whether the receivership should be continued with opposition pleadings due by October 18, 2024.  On October 18, 2024, the Receiver shall file a report summarizing the temporary receivership.

**IT IS FURTHER ORDERED** that in addition to the rights and benefits granted in the prior decretal paragraphs of this Order, the Receiver is hereby also vested with the following rights and benefits:

24. To inspect, monitor, audit, and observe the Farming Defendants' possession of, custody of, and use of the Receivership Property;

25. To inspect, monitor, audit, and observe the Farming Defendants use of the Crop Financing provided by the Plaintiffs;

26. To enter into any property where the Receivership Property may be located in order to inspect, monitor, audit, and observe the Farming Defendants' use, possession of, and custody of the Receivership Property;

27. To inspect, monitor, audit, and observe the Farming Defendants' operations related to the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract, employment arrangement and all other aspects of any business operation in connection with or otherwise related to the Receivership Property;

28. To inspect, monitor, audit, and observe the Borrowers' cash usage associated with managing, controlling, operating, and maintaining the Receivership Property;

29. To obtain such Order(s) from the Court he deems prudent or necessary in the Receiver's sole discretion, for any reason;

30. To make a motion or application to the Court regarding instruction or clarification in connection with the powers and scope of the receivership and this Order;

31. To gain access to all Receivership Property;

32. To inspect, monitor, audit, and observe the Farming Defendants' respective cash management systems, to the extent that such systems are used in connection with or otherwise relate to or include Receivership Property, including all bank accounts of Farming Defendants that are used as bank accounts for the business of operating the Receivership Property, and chattel paper that pertains to the Receivership Property, wherever located;

33. To establish bank accounts in the name of any of the Farming Defendants, under any of their respective Employer Identification Numbers, at any bank the Receiver deems appropriate for the deposit of monies and funds advanced by the Plaintiffs, provided that all funds on deposit are insured by an agency of the United States government. The Farming Defendants shall provide the Receiver within

24 hours of the Receiver's request all information, documentation, and signatures required by any bank or other financial institution to open or maintain any accounts as provided under this Order;

34. To investigate and identify any and all claims or causes of action that are Receivership Property;

35. To employ a law firm as Receiver's legal counsel ("**Receiver's Counsel**") in this matter, as reasonably necessary to accomplish the purposes of this Order, and pay the reasonable fees and expense of such Receiver's Counsel for services rendered in preparation of and during the receivership. Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the Receivership estate and in preparing for the Receiver's appointment. The attorneys' fees and cost incurred by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 39 of this Order;

36. To employ Pivot Management Group, LLC ("**Pivot Group**"), as Receiver's financial advisor in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to Pivot Group shall be based on the hourly rates and expenses as set forth in the Receiver Declaration, subject to annual adjustment upon notice to the parties. Pivot Group shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the receivership estate. The fees and costs incurred by Pivot Group may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 39 of this Order;

37. To employ such other professionals the Receiver deems reasonably necessary to accomplish the purposes of this Order;

38. To inspect, monitor, audit, and observe the books, records, and files of Farming Defendants and any related third party, including bank account and accounting records to determine the sources and uses of cash, accounts, and proceeds of the Receivership Property and to report the results of same to the Court and Plaintiffs.  Receiver shall reasonably cooperate and communicate with the Intervenors and other

parties in interest with respect to his monitoring pursuant to the terms of this Order and shall provide any reports set forth in the preceding sentence of this Paragraph and any reports required of the Farming Defendants to the Intervenors and, upon request, other parties in interest;

39. To pay: (a) fees and expenses owing to the Receiver, Receiver's Counsel, Pivot Group, and other professionals, and (b) any indemnification owing to the Receiver in connection herewith (collectively, the "**Administrative Claimants**"), in each case prior to payment to Plaintiffs. The Plaintiffs have agreed and there hereby is a carveout from the Plaintiffs' interests in the Receivership Property sufficient to secure payment in full of all amounts owed or owing to the Administrative Claimants. The Receiver is acting solely in his capacity as Receiver and in no event shall have any personal liability for any debts or obligations incurred by or on behalf of Farming Defendants; and

40. This Order, and any financing provided under this Order, is without prejudice to, and has no effect on, any parties', including but not limited to the Parties, Intervenors, and the Real Estate Lenders, interests, priority, or positions in or with respect to the crops of Farming Defendants nor is this Order intended to modify any lien rights. This Order shall not be deemed to prejudice any such parties' rights to seek enforcement remedies or take other such actions, including but not limited to the seeking of the appointment of a receiver as to their respective interests.

IT IS SO ORDERED.

Dated:   September 25, 2024              _____
                                          UNITED STATES DISTRICT JUDGE