1    SEYFARTH SHAW LLP
     M. Ryan Pinkston (SBN 310971)
2    rpinkston@seyfarth.com
     Brandon K. Franklin (SBN 303373)
3    bfranklin@seyfarth.com
     560 Mission Street, 31st Floor
4    San Francisco, California 94105
     Telephone: (415) 397-2823
5    Facsimile: (415) 397-8549

6    Attorneys for Plaintiff
     The Prudential Insurance Company
7    Of America; and PGIM
     Real Estate Finance, LLC

8

                    **IN THE UNITED STATES DISTRICT COURT**

9

                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

12   THE PRUDENTIAL INSURANCE          )   Case No. 1:24-cv-01102-KES-SAB
     COMPANY OF AMERICA; and PGIM REAL  )
     ESTATE FINANCE, LLC                )
13                                      )
                                        )
14              Plaintiff,              )
                                        )
     v.                                 )
15                                      )   **PLAINTIFF'S MOTION IN SUPPORT**
     ACDF, LLC; ASSEMI AND SONS, INC.;  )   **OF CONTINUATION OF**
16   AVILA RANCH EA, LLC; BEAR FLAG     )   **RECEIVERSHIP**
     FARMS, LLC; C & A FARMS, LLC;      )
17   CANTUA ORCHARDS, LLC; DA REAL      )
     ESTATE HOLDINGS, LLC; FAVIER       )
18   RANCH, LLC; FG2 HOLDINGS LLC;      )
     GRADON FARMS, LLC; GRANVILLE       )
19   FARMS, LLC; GRANTLAND HOLDINGS     )   Date:   October 22, 2024
     NO. 1, LLC; GRANTLAND HOLDINGS NO. )   Time:   1:30 p.m. PT
20   2, LLC; GRANTOR REAL ESTATE        )   Place:  Courtroom 6, 7th floor
     INVESTMENTS, LLC; GVM              )
21   INVESTMENTS, LLC; GV AG, LLC;      )   Complaint Filed: September 16, 2024
     LINCOLN GRANTOR FARMS, LLC;        )
22   MARICOPA ORCHARDS, LLC; PANOCHE    )
     PISTACHIOS, LLC; SAGEBERRY FARMS,  )
23   LLC; DEREK BELL; and RACHEL MARIE  )
     WHITE,                             )
24                                      )
                Defendant.              )
25   _____)

26

27

28

1

## MOTION IN SUPPORT OF CONTINUATION OF RECEIVERSHIP

Plaintiff The Prudential Insurance Company Of America ("**Prudential**") and PGIM Real Estate Finance, LLC ("**PGIM REF**" and together with Prudential, collectively, "**Plaintiff**"), each in its own capacity as a lender and PGIM REF also in its capacity as special servicer for and on behalf of Par U Hartford Life & Annuity Comfort Trust (together with Plaintiff, "**Lender**"), by and through their counsel, hereby moves the Court for a continuation of the receivership that is currently in effect pursuant to the Agreed Order Appointing Receiver with Limited Authority ("**Receivership Order**") [ECF No. 51 at 8, ¶ 23] through this *Motion in Support of Continuation and Expansion of Receivership* (the "**Motion**").

## ADDITIONAL FACTS

On September 16, 2024, Plaintiff filed its *Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction* [ECF No. 11] (the "**Receiver Motion**"). On September 25, 2024, the Court ordered the appointment of a receiver for the purpose of inspecting, monitoring, observing and auditing the Farming Defendants'[1] use of Property,[2] the proceeds of the Crop Financing, cash and cash collateral, and proceeds of all of the foregoing, through the completion of the 2024 harvest season. The Court should continue this receivership beyond November 1, 2024 and expand the scope of the receivership in a manner consistent with the proposed Order Expanding Receivership, attached hereto (the "**Proposed Receiver Order**"). As set forth in more detail below, Plaintiff intends on discussing and negotiating the Proposed Receiver Order, and proposed expansion of the receivership, with Borrowers and certain of the other parties in interest.

The receivership should continue for three reasons. First, the Receivership has helped to stabilize and improve the Borrowers' business operations during the ongoing pistachio harvest, and the real and personal property related thereto still remains subject to harm.

---

[1]     ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC and Sageberry Farms, LLC (collectively "**Farming Defendants**").

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Receivership Order.

Second, the receiver has uncovered additional facts about the financial condition of the Borrowers and acquiring additional information will be critical to facilitating Borrowers' ongoing operations and the continued protection and preservation of the Property. For example, the receiver has discovered an approximately $500,000 water invoice and has uncovered significant additional accounts payable that Farming Defendants' vendors had not invoiced. These efforts have created a clearer, more accurate picture of the resources required to maintain the operations and preservation of the Property.

Third, Farming Defendant's opposition to the receivership was based on its theory that a receivership would be unworkable and would destroy the value of the collateral. *See* Defs.' Opp'n [ECF Mo. 26 at 2-4]. However, the parties' agreed limited receivership structure has proved effective at supporting the preservation of assets and providing a clearer picture of the Borrowers' current financial situation, which will benefit all parties and the Court as the parties continue to negotiate a potential resolution.

As noted in the Receiver Motion, the Borrowers have indicated to Plaintiff that:

a.      Trees on the Property need to be sprayed every six days until harvest, which began late last month. If one spray is missed then the trees may be unaffected, but missing two sprays will cause damage to the trees that will take several years to recover;

b.      Without regular watering, the pistachio trees may survive but the almond trees on the Property will die. These pistachio and almond trees are subject to the first lien security interests of Lender; and

c.      Borrowers have significant cash flow and liquidity issues, and estimate that they will have insufficient funds to operate in the coming days and weeks. These issues are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Property and care for the trees and plants located on the Property.

While the trees may not need spraying after the harvest, the trees still face a threat if they do not continue to receive regular watering and maintenance. Accordingly, there remains a

3

PLAINTIFF'S MOTION IN SUPPORT OF CONTINUATION OF RECEIVERSHIP

314181657v.3

1    manifest danger of loss, deterioration, and diminution of the Property, which, along with the

2    revenue generated by its operations, are the primary sources for repayment of the Loans.

3    Therefore, Plaintiff, as an interested and secured party, is threatened with material losses and

4    injuries for which it has no adequate remedy at law against Borrower

5         For these reasons, the continuation of the receivership is in the best interests of Plaintiff,

6    other lenders, lien holders, and the Defendant because it: (i) supports the continuation of the

7    Farming Defendants' business, preserving value for lenders and lien holders, and (ii) provides a

8    more accurate and complete picture of the Borrowers' financial condition with limited, if any,

9    interference with the day-to-day operations.

10        In addition, and as set forth in more detail below, the scope of the receivership should be

11   expanded consistent with the terms of the Proposed Receiver Order, or such other order as the

12   parties may negotiate and agree upon. This expansion would provide the Receiver with, among

13   other things, the full control over the Receivership Property.

14        Further, Plaintiff understands that there are priority disputes with respect to the proceeds

15   of certain of the Farming Defendants' property that is not part of the Receivership Property

16   (the "**Non-Receivership Property**"), including the proceeds of crops. Any given payment of

17   proceeds of crops will include amounts generated from the sale of crops that are part of the

18   Receivership Property and the Non-Receivership Property. As a result, a single payment may

19   include the collateral of Plaintiff and several other lenders. In order to avoid lenders taking

20   competing enforcement actions, including the sending of competing direction letters to

21   individual account debtors of Farming Defendants, Plaintiff also seeks to empower the Receiver

22   to collect all proceeds of the Farming Defendants, determine which proceeds relate to the

23   collateral of each of each lender of Farming Defendants, including Prudential, and disburse such

24   proceeds in accordance with such determination. The Receiver would file notices of proposed

25   disbursements, giving all parties in interest the opportunity to object to any such disbursements.

26        Thus, Plaintiff requests that the Court: (1) maintain the receivership; (2) expand the

27   receivership in a manner consistent with the Proposed Receiver Order, or such other order as the

28

PLAINTIFF'S MOTION IN SUPPORT OF CONTINUATION OF RECEIVERSHIP

314181657v.3

parties may negotiate and agree upon; and (3) retain the limited scope of the receivership until the proposed expansion of the receivership can be adequately briefed.

### ARGUMENT

"The decision on whether to terminate a receivership turns on the facts and circumstances of each case, including any relevant equitable considerations, particularly absent any statutory limitations on the court's power to terminate a receivership." *WB Music Corp. v. Royce Int'l Broad. Corp.*, 47 F.4th 944, 953 (9th Cir. 2022) (quoting 65 Am. Jur. 2d Receivers § 94 (2022)). In this regard, "a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).

There is no basis to terminate this limited receivership now because: (1) there is no doubt that the Borrowers' operations needs further credit from Plaintiff to survive in the near term, and (2) Plaintiff will need addition information about Borrowers' operations to effectively navigate Borrowers' distressed financial condition and protect its collateral.

The Court should maintain the limited receivership and, subject to further briefing, expand the receivership pursuant to the Proposed Receiver Order, or such other order as the parties may negotiate and agree upon because Plaintiff has satisfied, and continues to satisfy, the applicable standard for appointment of a receiver under federal law.

Federal law governs the appointment of a receiver in a diversity case. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291-1292 (11th Cir. 1998); *New York Life Ins. Co. v. Watt West Investment Corp.*, 755 F.Supp. 287 (E.D.Cal. 1991). Federal Rule of Civil Procedure 66 provides in relevant part,

> "The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules."

"Indeed, as the Eleventh Circuit reasoned in *National Partnership*, 'to the extent Rule 66 dictates what principals should be applied to federal receiverships, courts must comply with the Rule even in the face of differing state law'." *Id*. at 843.

According to federal law, the appointment of a "receiver is an extraordinary equitable remedy" and must be used with caution. *Id*. at 844 quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). "However, there is 'no precise formula for determining when a receiver may be appointed'." *Id*. Instead, federal courts consider a variety of factors when determining whether to appoint a receiver, including:

1. Whether the party seeking the appointment has a valid claim,

2. Whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant,

3. The property is in imminent danger of being lost, concealed, injured, diminished in value or squandered,

4. Whether legal remedies are inadequate,

5. Whether the harm to the plaintiff by denial of the appointment would outweigh the injury to the party opposing appointment,

6. The plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property, and

7. Whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id.*; 12 Wright Miller & Marcus Federal Practice & Procedure: Civil, § 2983 (2d ed. 2011); *see also New York Life Ins. Co.*, 755 F. Supp. 287 (E.D. Cal. 1991) (appointing a receiver for real property in circumstances similar to this case).

As to the first element, Plaintiff has alleged in the Complaint that Borrower has failed to pay their obligations under the Loan Documents when and as due. While the Complaint in the above-captioned action was only recently filed, these are allegations that Borrower cannot deny. In addition, the size of the obligations due and owing from Borrower are such that Borrower has no real ability to cure the existing defaults. Thus, Plaintiff has a substantial, ongoing, valid claim

6

314181657v.3

in excess of $700 million against Borrower and the first element weighs in favor of the continuation and expansion of the receivership.

As to the second element, while there is no evidence of fraudulent conduct on the part of Borrower as of yet, Plaintiff continues its investigation into Borrower and this matter.  Therefore, at this time, this element neither weighs in favor or against the and expansion of the receivership, but if anything this element supports the continuation of the receivership.

As to the third element, as alleged above, Borrowers are experiencing extreme financial difficulties and have explicitly stated to Plaintiff it will cease operations, terminate employees, and lacks the cash flow to maintain the Property and the Crops thereon. As Borrowers concede, if the trees and Crops on the Property are not cared for, substantial and long lasting damage is likely to occur in the next several weeks – although the harvest will soon be completed, the trees remain at risk of long term damage. This element weighs heavily in favor of maintaining and expanding the receivership.

As to the fourth element, legal remedies are inadequate given these circumstances. The Property and the Crops thereon are under an immediate threat of damage. Moreover, given the precarious financial condition of Borrowers, a money judgment would likely be meaningless. Thus, this factor weighs in favor of maintaining and expanding the receivership as well.

As to the fifth element, there is no risk of real injury to Borrowers (or other Defendants) by maintaining the receivership. The limited receiver is essentially only monitoring Borrowers' activities and a receiver with expanded authority would simply take possession and preserve and protect the property. On the other hand, the potentially catastrophic damage to Plaintiff from terminating the receivership weighs in favor of maintaining and expanding the receivership.

As to the sixth element, as already discussed, there are substantial existing defaults from Borrowers. Borrowers have no real defense to these unpaid amounts and the amounts due and owing to the Plaintiff as a result of those defaults continue to increase on a daily basis. Combined with the physical damage to the Property and the Crops which is likely to result without a continuation of the receivership, this factor also weighs in favor of the receivership.

PLAINTIFF'S MOTION IN SUPPORT OF CONTINUATION OF RECEIVERSHIP

314181657v.3

1    Finally, as to the seventh element, Plaintiff's interests in the Property would be well

2  served by the continuation of the receivership as the receiver will continue to collect information

3  about the Property and the Borrowers' operation while the rest of the above-captioned action as

4  well as the forthcoming foreclosure under the Instruments is concluded. Without the receiver, the

5  Property – and thus Plaintiff's collateral – Plaintiff's interests in the Property would be at

6  significant risk.

7    The primary opposition to the fulsome receivership that Plaintiff originally sought in the

8  Receiver Motion, before agreeing to the limited receivership, was that there was no emergency

9  because other funding sources were available to fund the harvest and the preservation of the

10  Property during the harvest period. At this point, no parties have indicated that they intend to

11  fund any portion of the Borrowers' property on a post-harvest basis. While the Borrowers remain

12  in need of financing in order to preserve and maintain the Property, no such financing exists,

13  creating a true emergency.

14                        **<u>CONCLUSION</u>**

15    Based upon all of the foregoing factors, pursuant to Fed.R.Civ.P 66, Plaintiff respectfully

16  request that the Court (1) continue receivership, (2) expand the receivership in a manner

17  consistent with the Proposed Receiver Order, or such other order as the parties may negotiate and

18  agree upon; and (3) retain the limited scope of the receivership until the proposed expansion of

19  the receivership can be adequately briefed.

20

21  DATED: October 11, 2024                 SEYFARTH SHAW LLP

22

23                                 By_____/s/ M. Ryan Pinkston_____
                                       M. Ryan Pinkston
24                                     Attorneys for Plaintiff

25

26

27

28

PLAINTIFF'S MOTION IN SUPPORT OF CONTINUATION OF RECEIVERSHIP

314181657v.3