FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Attorney for Interested Third Party
 And Prospective Intervenor Kevin Assemi

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; AND PGIM REAL ESTATE FINANCE, LLC<br><br>Plaintiff(s).<br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & a FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS, LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERY FARMS, LLC; DEREB BELL; AND RACHEL MARIE WHITE,<br><br>Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE PURSUANT TO FED. R. CIV. PROC. 24 FOR THE LIMITED PURPOSE OF OBJECTION TO THE PROPOSED ORDER APPOINTING RECEIVER WITH LIMITED AUTHORITY BY INTERESTED THIRD PARTY AND POTENTIAL INTERVENOR KEVIN ASSEMI**<br><br>[DKT NO. 33]<br><br>Action filed: September 16, 2024 |

Memorandum of Points and Authorities in Support of *Ex Parte* Application to Intervene - 1

# MEMORANDUM OF POINTS AND AUTHOIRITIES IN SUPPORT OF *EX PARTE* APPLICATION TO INTERVENE AND FILE LIMITED OBJECTION

## A. INTRODUCTION AND FACTUAL BACKGROUND

Elevated Ag, LLC is a duly organized and existing California limited liability company which owns certain agricultural real property in Kern County the planted acres bear Kern County Assessor's Parcel Numbers 220-211-24 and 220-050-71 ("EA Property"). The EA Property consists of approximately 400 acres planted with valuable citrus fruit trees.

Defendant Maricopa Orchards, LLC, is a member of Elevated Ag, LLC. Keven Assemi, the proposed intervening party ("Proposed Intervenor"), is also a member of Elevated Ag, LLC, and believes he is the managing member thereof.[1] Maricopa Orchards, LLC, has been responsible to manage the fruit trees on the EA property and is responsible to its co-members for the planting, care, and harvesting of the fruit trees.

Defendant Maricopa Orchards, LLC, in seeking funding from Plaintiffs, directed Proposed Intervenor, on behalf of Elevated Ag, LLC, to pledge the EA Property as security for loans from the Plaintiff. On March 11, 2022, Proposed Intervenor complied, giving Prudential Insurance Company of America a security interest in the EA Property in order to secure the loan for Defendant Maricopa Orchards, LLC.[2] Historically, agreement by Maricopa Orchards, LLC

---

[1] Both the precise amount of Kevin Assemi's membership interest and whether he is manager is the subject of a separate litigation matter. (See Assemi v. Assemi, et al., Case No. 1:23-CV-01741 in this Court.)

[2] Though not naming Elevated Ag, LLC, Plaintiffs Complaint makes reference to Elevated's role. S*ee e.g.* Exhibit 3, document 1-3 filed September 16, 2024, at p. 25 of 95 Deed of Trust, Security Agreement, Crop Filing and Fixture Filing With Assignment of Rents and Proceeds, Leases and Agreements. P. 3 of 28 of that Exhibit references the "Kern Deed of Trust" as that which was executed by, *inter alia,* Elevated Ag, LLC in favor of Plaintiff Prudential Insurance Company of America. *See also* Document 1-4 filed September 16, 2024, at p. 46 of 83 Deed of Trust, Security Agreement, Crop Filing, and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements executed by Proposed Intervenor Kevin Assemi for Elevated Ag, LLC, which is identified at p. 4 of 21 of that document as the "Non-Borrower Trustor." This deed of trust has since been released.

was that loan proceeds would benefit Elevated Ag, LLC because Maricopa Orchards, LLC would use its share of funds to fulfill its duties and obligations to provide funding for completing plantings, culture costs to farm, install needed weather protecting infrastructure, and ensure adherence to its specialized farming methodology and harvest methodology through Elevated Ag on the EA Property. Specifically Prudential, through its agent Bill Sciacqua, committed that in return for providing its properties to allow for contemplated March 2022 loan that Prudential would separate out and provide a siloed loan for Elevated Ag to directly fund the before mentioned actions. But despite obtaining appraisal at the direction of Prudential, and obtaining approval for the loan, it was not funded.

On March 28, 2022, Plaintiff Prudential Insurance Company of America recorded UCC Financing Statement No. U22017898842 listing, among many others, Defendant Maricopa Orchards, LLC as a debtor and securing to itself interests in substantial amounts of real property in both Fresno and Kern Counties, California. Amongst the properties secured by the Plaintiff's financing statement. [3]

Furthermore, the Plaintiff agreed too—and very nearly provided—loans to Elevated Ag, LLC to assist it in its farming operations. Thereafter, when certain conduct of some of the defendants hereto came to light, Plaintiffs canceled the pending loan to Elevated Ag, LLC claiming that the owners of Maricopa Orchards, LLC had refused to sign release of Elevated Ag's properties for approved loan)Additionally, in the intervening period Defendant Maricopa Orchards, LLC, has utterly failed and refused to maintain and care for the citrus fruit trees on the EA Property. This has resulted in catastrophic crop failure in 2023 (2023-2024) alone.

---

[3] The Plaintiff's financing statement has four separate documents claiming to be Exhibit "A." The first Exhibit 'A' lists over 200 parcels in Fresno County, while the second Exhibit "A" lists approximately 50 parcels in Kern County. It is this second Exhibit A, at p. 24 of 25 which identifies the EA Property as Parcel no. 48.

Memorandum of Points and Authorities in Support of *Ex Parte* Application to Intervene - 3

Compounding the problem is that Plaintiff's vestigial UCC-1 lien against the EA Property has never been released, despite the fact that it released the EA Property from its previously granted deed of trust executed by Elevated Ag as a non-debtor Trurstor. But owing to the cancellation of the loan to Elevated Ag, and due to the remaining UCC-1 financing statement encumbering the EA property, Proposed Intervenor has been completely unable to obtain financing necessary to try to save what remains of the crops. This is critical because Defendant Maricopa Orchard, LLC has refused to apply loan proceeds received from Plaintiff (via the EA Property among others) to care for the crops, and has refused to provide essential information, requested from financers and necessary to Proposed Intervenor's assumption of the care and management of the EA property.

Pursuant to the Operating Agreement of Elevated Ag, LLC, in the event a member encounters certain circumstances, including appointment of a receiver, any other member has a right to purchase the membership interests of that member. This lawsuit and the motion for the appointment of a receiver for Defendant Maricopa Orchards, LLC, triggers the rights of Proposed Intervenor to buy those membership interests, which is utterly critical at this point in order to assume management of Elevated Ag, LLC, and thus the rescue of the dying citrus crop on the EA Property. Proposed Intervenor and Elevated Ag, LLC, are pursuing state law claims outside of this litigation, but germane to this application is that Defendant Maricopa Orchards, LLC has failed to properly manage and care for the citrus trees on the EA Property to the degree that the trees have suffered severe sunburn, catastrophic damage to approximately 50% of the fruit crop. Without immediate corrective action this will result in the loss of nearly all the crop and, as all other parties have noted in their September motions and at the September hearing, would result in irreparable harm to the trees themselves. This would affect not only Prudential's

collateral, but also to collateral securing other lenders and properties that are not collateral nor have been provided notice.

Proposed Intervenor therefore seeks to intervene in this action to ensure that any receiver sought by Plaintiff appointed to manage the agricultural operations of Defendant Maricopa Orchards, LLC, be required to include in their duties the care and a management of the EA Property, including the crops thereon. This is only right and just, as Plaintiff has maintained a security interests on the EA Property, while not providing needed financing promised to Elevated Ag, LLC, which security interest has prevented Proposed Intervenor from securing alternate sources of funding to save the dying citrus crop.

Finally, the Receiver should be required to include in their receivership reports beneficiaries of the various family trusts and entities as interested parties, of whom Proposed Intervenor is one. It is critical that Proposed Intervenor and others with interests in the outcome of this litigation know what is happening with their family's assets and have access to information regarding litigation and negotiations that may result the loss of all of the corpus of their family trusts. For example, Proposed Intervenor has not once been provided notice of the default on loans of more than $700M subject of this litigation, and the resulting potential of selling off collateral. Nor has notice been provided by those seeking guarantees to attack all assets of the family trusts in which Proposed Intervenor's takes an interest. Proposed Intervenor stands particularly harmed by the lack of transparency that must be remedied by the Receiver providing information in its possession relative to compliance information needed for the California Fair Political Act, which is legally necessary for Proposed Intervenor as an elected official. The same holds true for information required by Proposed Intervenor which will be in the Receiver's care and assist Proposed Intervenor in complying with US Treasury laws and regulations, which has thus far been refused by the defendants. Given that these issues of access

to information for beneficiaries of the family trusts controlling the defendant entities and the Proposed Intervenor's stake in needing information to comply with laws has already been raised in this forum, the order outlining the Receiver's duties should be clarified to require the Receiver to include Proposed Intervenor with information to which he is statutorily entitled and lawfully in need of.

**B. Governing Law**

Fed. R. Civ. Proc. 24 provides for mandatory and permissive interventions. Subsection (a) governs mandatory intervention, also known as intervention of right, and provides in relevant part: "On timely motion, the court must permit anyone to intervene who … (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

In determining whether to permit intervention, a court is "guided primarily by practical considerations, not technical distinctions," and "the requirements are broadly interpreted in favor of intervention." See Citizens for Balanced Use v. Montana Wilderness Ass'n., 647 F.3d, 893, 897 (9th Cir. 2011). The Ninth Circuit has held that FRCP 24(a) should be construed "liberally in favor of potential intervenors." State ex.rel. Lockyer v. Chao, 450 F.3d 436, 440 (9th Cir. 2006).

The Ninth Circuit has adopted a four-part test to determine if intervention is appropriate: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented

by the parties to the action." Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173, 1177 (9th Cir. 2011) (citation omitted).  Proposed Intervenor easily meets all four prongs.

### C. ANALYSIS

The first prong is whether the motion is timely. This action was originally filed by Plaintiffs on September 14, 2024. In its Order Granting Joint Administrative Motion to Continue Receivership Hearing and Associated Briefing Schedule (Dkt. No. 61) the Court extended until October 25, 2024, the deadline to file any pleadings opposing the continuation of the receivership. Proposing Intervenor is presenting its Ex Parte Application to Intervene for the limited purpose of objection to the receiver's appointment *only* insofar as the Receiver fails to include in its duties the management, care, and protection of the EA Property. This motion is therefore timely.

The second prong is that Proposing Intervenor must claim a significantly protectable interest relating to the property or transaction which is the subject of the action. Proposed Intervenor is an interest holder in Elevated Ag, LLC, by virtue of his ownership of a substantial portion of the membership interests therein. The primary asset of Elevated Ag, LLC, is the 499 acres of valuable agricultural land that is the EA Property. The main value of the EA Property is the citrus trees and the crops those trees produce. Although appointment of a Receiver for Maricopa Orchards, LLC, along affords Proposed Intervenor the right to buy out its interests in Elevated Ag, LLC (a significantly protectable interest by itself), he is also, in his present position as a member of Elevated Ag, LLC, interested in the catastrophically neglected and dying citrus crop. This too presents a significantly protectable interest in the property subject of the action. Finally, Proposed Intervenor is among the types of non-defendant persons or entities who are entitled to certain reporting information from the defendants in order to comply with various

laws, including tax and election laws. Failure to comply with these laws presents serious risks of criminal and civil liability, so it is critical that the named defendants, and any Receiver appointed to manage the operations thereof, be directed to comply with the reporting or provision of interested non-defendant parties and entities.

The third prong requires that the Proposed Intervenor be so situated that disposition of the action may, as a practical matter, impair or impede his ability to protect that interest. The raised objection here is very limited—that any order continuing the Receiver's duties extend to and include the requirement that the Receiver care for and maintain the EA Property to prevent further catastrophic and irreparable harm to the crops. Furthermore, the Receiver should be ordered to comply with any and all laws governing the sharing or provisions of information necessary for non-defendant entities and persons to comply with laws, including tax and election laws. If the duties of the Receiver are not clearly defined to include these features, Proposed Intervenor will be unable to protect his interests, either in Elevated Ag, LLC, or as a law-abiding citizen.

The fourth and final prong requires that the Proposed Intervenor be inadequately protected by those who are already parties to the action. Proposed Intervenor's connection with this case comes through Defendant Maricopa Orchards, LLC, another membership holder in Elevated Ag, LLC. That entity, whose responsibilities included the care and management of the primary asset of Elevated Ag, LLC, the EA Property, has wholly failed in its duties. In fact, it has operated against Elevated Ag, LLC's interest by requiring Proposed Intervenor to pledge a security interest in the EA Property without ensuring that the EA Property was served by those funds. It has further neglected the citrus crop, which has directly resulted in the loss of approximately 50% of the current citrus crop, and may result in permanent and irreparable damages to the citrus trees. Finally, it has failed to provide information and reports necessary to

Proposed Intervenor to fulfill his legal obligations, including certain reporting requirements associated with tax and election laws.

Proposed Intervenor has attempted to secure assurances from the Receiver that the EA Property will be cared for and managed pursuant to the Order, but thus far has received no response, leading Proposed Intervenor to this step.

### D. CONCLUSION

For the reasons set forth hereinabove, Proposed Intervenor Kevin Assemi has a significant property interest in Elevated Ag, LLC, whose primary asset is the EA Property. Defendant Maricopa Orchards, LLC, has wholly failed to perform its duties to protect the EA Property, and particularly the fruit trees and fruit harvest thereon, and if those assets are not included within the Receiver's remit, there is a substantial risk the entire crop will be destroyed and the fruit trees irretrievably damaged. Proposed Intervenor also seeks to ensure any Order pertaining to the Receiver's duties provide for the provision of information and reporting necessary to non-defendant entities and persons to comply with all applicable laws, regulations, statutes, and ordinances, including tax and election laws.

Dated:   October 25, 2024

                                                /s/ Peter A. Sauer
                                      Peter A. Sauer, attorney or Kevin Assemi,
                                      Interested Party and Proposed Intervenor