MCDERMOTT WILL & EMERY LLP
ROBERT BARTON (SBN 269455)
rbarton@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, California  90067
(310) 277-4110

MICHAEL S. NADEL (admitted *pro hac vice*)
mnadel@mwe.com
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, and Sageberry Farms, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., <br><br> Plaintiff, <br><br> v. <br><br> ACDF, LLC, et al., <br><br> Defendants. | No. 1:24-cv-01102-KES-SAB <br><br> **THE FARMING DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION TO EXPAND RECEIVERSHIP** <br><br> Hearing: <br> Date:  October 29, 2024 <br> Time:  1:30 p.m. PDT <br> Location:  Courtroom 6 and by Zoom |

Last night, Prudential filed a *new* proposed receivership order as an attachment to an unauthorized reply brief.  Prudential provided no comprehensive explanation of what is in the new proposed order—or how it differs from the expanded powers in the prior submission, which Prudential *also* never explained to the Court.  Prudential is asking the Court to grant unchecked, ill-defined powers to a receiver without *any* orderly process, let alone the full process required by the Rules.  And all of this was done without any

substantive consultation with the Farming Defendants.  Indeed, until yesterday, Plaintiff represented that it would seek to continue today's hearing—it just needed the agreement with other lenders.  Apparently Prudential was stringing along the Farming Defendants in bad faith.  Yesterday, Prudential reversed its position and insisted on advancing today a different order that had not been previewed with the Farming Defendants.  And all without valid justification.

Prudential's new proposed order states, in Paragraph T, that "Plaintiffs and U.S. Bank have further advised the Court that Plaintiffs and U.S. Bank have agreed to finance such amounts as are reasonably necessary to complete and pay for Farming Defendants' 2024 crop harvest (estimated to conclude by November 1, 2024) and in accordance with the budget (the "Budget") attached hereto as Exhibit A (the "Crop Financing")."  Likewise, Paragraph 24 provides that

> [t]he Receiver shall make Crop Financing advances to the Farming Defendants pursuant to the Budget as determined by the Receiver in his reasonable discretion, and as provided for herein; provided, however, that the Receiver shall not disburse funds to Farming Defendants to the extent that Farming Defendants have other collected funds that they can use to pay such budgeted expenses. In the event that the Receiver determines that additional funding is needed for the purposes set forth in the Budget, then Receiver may request that Plaintiffs and U.S. Bank provide additional Crop Financing, and Plaintiffs and U.S. Bank shall negotiate in good faith regarding such additional funding; provided, however, that neither Plaintiffs nor U.S. Bank shall have any obligations to fund such additional amounts.

Prudential and USB are hiding the ball.  As best we can ascertain there *is* no budget attached.  Moreover, the harvest is complete.  Prudential has already funded the Harvest.  If Prudential and U.S. Bark are agreeing to provide financing for *after* the harvest, the order should so state.  It should *not* state that funding is being provided for a harvest that is over.  And if Prudential and U.S. Bank are not agreeing to provide post-harvest financing, none of this funding language is necessary.

This underscores the fundamental problem: Prudential's order is a mess. Approximately $700 million is at stake here, and the livelihood of real people. Prudential must take this matter as seriously as the Court will. Exigency does not excuse this sloppiness, not least because: *There is no emergency.* The Farming Defendants have two months' payroll in the bank. The Court should order the parties to mediation in front of a magistrate judge to work through this order and the complex implications of trying to break up an integrated farming operation with many lenders.

Like the Court, the Farming Defendants have only just begun to analyze the new proposed order, but here are *some* of the problems that must be addressed before an order can be responsibly entered:

1. **"Receivership Property" is undefined.** Prudential would have this Court grant a receiver unfettered power over "Receivership Property," but a reader of the order cannot determine what the Receivership Property *is*. "Property" currently is defined, in Paragraph C, as "all real and personal property granted by Borrowers to Lender as security for the Loans, defined or otherwise described as "Property" in the Instruments." A reader—whether the Court, the parties, or the public—should not have to refer back to the "Instruments" which may or may not even be available after diligent investigation. The "Instruments" include at least:

- 12 separate outstanding loans evidenced by 12 separate promissory notes
- Four loan agreements amended at least 17 times
- 14 deeds of trust, modified by at least 35 deed of trust modifications in total
- Deeds of trust filed in five counties (Kings, Kern, Fresno, Tulare, Merced)
- Around 457 APNs

Prudential's failure to define the "Receivership Property" was not a *critical* deficiency in the existing receivership order, because the receiver's authority was basically limited to

monitoring. But Prudential cannot seriously contend the Court should place property into unlimited receivership—such that it can be sold—without specifying what the property is. Before an order can be entered, Prudential must do the work of identifying what property it covers.

2. **The proposed order is misleading as to U.S. Bank's intentions.** Paragraph 5.m provides that "[s]ubject to Recital T and Paragraph 24 below, [receiver is authorized] to immediately borrow from Plaintiffs and U.S. Bank such funds as Receiver, Plaintiffs, and U.S. Bank deem necessary for the current operation of the receivership estate, to continue to borrow money from Plaintiffs and U.S. Bank for the operation of the receivership estate as needed, from time-to-time, and to issue to Plaintiffs and U.S. Bank from time-to-time Receiver's Certificates or such other documents or instruments to evidence such borrowings, subject to Plaintiffs' and U.S. Bank's sole right to decide whether or not to advance any or all funds requested by the Receiver …." This is misleading. U.S. Bank has no intention of funding the go-forward receivership estate at all. U.S. Bank is planning to provide *retroactive* funding for harvest *to Prudential*, which has already funded the now-completed harvest, and then walking away. It is important that the Court enter a receivership order with a full understanding of what is really going on here, because the proposed order will lead to inter-lender fighting that will end up before the Court for resolution.

3. **The order fails to address the separateness of receivership property and legal entities.** The legal entities named as defendants own both Prudential collateral, and the collateral of other lenders, as well as unencumbered property. Those entities conduct operations with respect to the Prudential collateral *and* the collateral of other lenders. The proposed order fails to take this into account.

For example, Paragraph 5.j purports to give the receiver authority "[t]o take possession of and control over the Farming Defendants' respective cash management systems, to the extent that such systems are used in connection with or otherwise include Receivership Property, including all bank accounts of Farming Defendants that are used as bank accounts for the business of operating the Receivership Property." The Farming Defendants' cash management systems are used in connection with both Receivership Property and non-receivership property, so the receiver cannot be given control of these systems. A bank account held by Maricopa Orchards, LLC contains a portion of funds that is Prudential cash collateral and funds that are *not* Prudential cash collateral. It is not appropriate for the order to grant the receiver control over such accounts.

Likewise, the Court should not accept Paragraph 5.aa, which provides that the receiver will have authority to "analyze the books, records, servers, and files of Borrowers and any related third party, including bank accounts, accounting records, and software related thereto, to determine the sources and uses of cash, accounts, and proceeds of the Receivership Property and to copy and/or map such books, records, servers, and files as Receiver deems appropriate." It would be appropriate to require the Borrowers to turn over information relating to the Receivership Property, but not to go further. "Related third parties" are, for the most part, not before the Court; the receiver should not be given carte blanche access to books and records which will contain confidential information related to non-Receivership Property and operations. For the same reasons, it is not appropriate for Prudential to gain access to *all* of Maricopa Orchards, LLC books and records without appropriate safeguards in place—safeguards that Prudential has had weeks to negotiate. Similarly, the Receiver cannot be granted authority over the "businesses of the Farming Defendants" because those entities conduct an integrated farming operation which involves the "Property" but also the collateral of other lenders and unencumbered property.

Paragraph 10 of the proposed preliminary injunction is even more egregious:

> Plaintiffs and their officers, employees, and agents and the Receiver shall have immediate access to all business premises of Defendants *and their related entities* that are related to the Receivership Property and the books and records of the foregoing to enable Plaintiffs and the Receiver to review and inspect the goods, farm products, inventory, and other Receivership Property for the purposes of accounting and appraisal.

The "related entities" are not before the Court and therefore no such relief can be granted. But even as to the Defendants, the relief is grossly overbroad because the Defendants conduct regular business that has nothing to do with Receivership Property. For the same reason, the Court should reject Paragraph 25, which goes even further, providing that "[t]he scope of the Receiver's duties to Plaintiffs are solely as follows: (a) to preserve the Receivership Property and protect it from dissipation and diminution in value; (b) to conduct the business and affairs of the Borrowers related to the Receivership Property; …" It is appropriate for the receiver to conduct business affairs *relating to the Receivership Property*, but the order should not include any suggestion that the receiver will be conducting the business affairs of the Farming Defendants or the other Borrowers.

Similarly, it would be inappropriate for the receiver "to receive, collect, and review all mail, overnight or express or personal delivery, addressed to any of the Farming Defendants and any post office boxes held in the name of any of the Farming Defendants and, at the Receiver's discretion, the Receiver is authorized to instruct the U.S. Postmaster to re-route, hold, and/or release said mail to the Receiver" as requested in paragraph 5.i.

It would also be inappropriate (as requested in paragraph 5.n) for the receiver "to execute and prepare all documents and to perform all acts, including entering into contracts and operating licenses, and signing checks or initiating and processing electronic funds transfers either in the name of each of the Farming Defendants, as it is applicable, or in the Receiver's own name." If the receiver wants to enter into contracts, that is fine, but the

Farming Defendants are separate operating entities and he has no legal authority to cause them to do anything.

In paragraph O, Prudential states that it seeks to expand the receivership to, among other things, "assess whether a sale of the Farming Defendants or their assets would maximize value, and, following that assessment, implement an organized sale process of the Property." Again, Prudential is conflating the Property subject to receivership with the legal entities. The order should be clear that the Receiver will control the property, but will have no authority over the legal entities themselves—and certainly cannot sell the legal entities.

Paragraph 4 again conflates the legal entities with the Receivership Property:

> The Farming Defendants and their affiliates shall make their respective files, books, records, servers, and personnel, including directors, officers, management, and employees, available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties.

To begin with, the Farming Defendants' affiliates are not before the Court and therefore any relief against them is inappropriate. The Farming Defendants may be required to provide access to their files and books and records that relate to the Receivership Property—but that should be it. The Farming Defendants do not operate their own servers or electronic systems, and their electronic systems contain information relating to the Receivership Property and the Farming Defendants' other operations—so the receiver cannot be given unfettered access to electronic systems. And to the extent that the receiver wants access to the Farming Defendants' personnel, the receiver should hire those people, as the Farming Defendants will no longer have the means to compensate them (aside from the payroll reserve).

Paragraph 2 further highlights—and exacerbates—the issue. Paragraph 2 provides:

> The Receiver shall have sole and exclusive power and authority to manage and direct the business and financial affairs of each of

> the Farming Defendants in connection with or otherwise related to the Receivership Property including, without limitation, the powers set forth below, and holding authority to petition on behalf of each of the Farming Defendants for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Code") and, if so filed, be and be deemed authorized to operate each of the Farming Defendants as a debtor-in-possession in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

The receiver should have absolutely no power to direct the business and financial affairs of the Farming Defendants. The receiver has control over the "Property"—and not of the Farming Defendants. The receiver should be empowered to manage and operate the Property only.

4. **Prudential and U.S. Bank are cutting out other lenders, thereby creating further disputes for the Court to resolve.** In Section II of the order, beginning at Paragraph 14, the order provides that the receiver will collect the proceeds of harvest from both the Receivership Property *and non-receivership property*, and will distribute those funds under Paragraphs 20-22. But the lenders for the non-receivership property are not before the Court, and their property rights are being directly affected. Prudential and US. Bank are asking the Court to bless an agreement between the two of them regarding the sharing of harvest proceeds between the two of them through the receivership order, but that is not within the scope of the rules governing receivership. The receivership order should deal with Receivership Property only.

5. **Prudential would grant its receiver the power to file for federal bankruptcy.** Incredibly, Paragraph 2 (and well as paragraph 5.d) provides that the receiver could file the Farming Defendants for bankruptcy and then operate the Farming Defendants in bankruptcy. Only the boards of managers/directors of the Farming Defendants can file them for bankruptcy, and once in bankruptcy the entities would continue in possession of their property and operations. Through the proposed order, the

receiver is seeking to supplant the Farming Defendants' boards as if he were a chapter 7 trustee. This concept does not belong in a receivership order.

Paragraph 3 continues the theme:

> The Receiver shall be, and hereby is, entitled to all rights, privileges, and protections afforded to each of the Farming Defendants' directors, officers or other fiduciaries including, but not limited to, insurance coverage under any currently existing insurance policies.

The receiver is not a director or officer of the Farming Defendants and is not equivalent thereto. The receiver's job is to administer the Receivership Property—and that is all. If the receiver wants to buy insurance, he should be authorized to do so, but he cannot, for example file for bankruptcy.

Paragraph 5.r provides that the receiver has authority "[t]o take any and all actions or steps that, in the absence of this receivership, could be exercised or authorized by the Borrowers' respective Board of Directors and/or Chief Executive Officer, each as determined by the Receiver in the exercise of his reasonable business judgment to be reasonably necessary for the preservation or maximization of Receivership Property." Again, the receiver has control over the Receivership Property—and not over the legal entities themselves. The receiver is not a chapter 7 or chapter 11 trustee.

6. **Prudential would award its receiver power over the Farming Defendants' employment relationships.** Paragraph 5.c. provides that the receiver is empowered "[t]o manage, control, operate and maintain the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract, *employment arrangement* and all other aspects of any business operation in connection with or otherwise related to the Receivership Property …."

The Farming Defendants' employees are employed by the legal entities, and the order should not suggest that the receiver has any control over those employee

relationships. If the receiver wants to try to hire the employees, he can try to do that—indeed, Paragraph 5.s suggests that he will—but he must not be permitted to interfere with the employer-employee relationships between the Farming Defendants and its employees.

7. **The order does not comply with California law.** Paragraph 5.e provides that the receiver may sell Receivership Property without further order of the Court. The more appropriate practice, however, would be for the receiver to bring about sales in compliance with California law. The receiver will be disposing of approximately $700 million in assets and should be required to do so with Court supervision, especially because those sales directly impact the Farming Defendants and the parties that have guaranteed their debts. *See* Cal. Code Civ. P § 568.5 (requiring receiver to obtain court approval for any sale).

8. **Prudential has not justified its proposed injunction.** In paragraph S, Prudential seeks to justify a preliminary injunction by suggesting that the Farming Defendants may transfer crops to their affiliate Touchstone Pistachio Company. This is just an attempt to sneak something by the Court. Prudential has submitted no evidence to justify such allegations. Prudential wants the Court to enter an order stating that because Prudential "fears" something will occur absent an injunction, an injunction is warranted. The Court knows that is not how it works.

*          *          *

Through bad-faith delay and failure to negotiate and confer, Prudential has plunged this proceeding into disarray. The outcome must not be the chaos that would be created by Prudential's poorly conceived order.

A thoughtful, legally appropriate order can—and must—be entered, but Prudential, now in league with U.S. Bank, has shown that it will not happen if the Parties are left to their own devices. A process mediated by a Magistrate Judge is required.

|   |   |
|---|---|
| 1 | |
| 2 | Respectfully submitted, |
| 3 | MCDERMOTT WILL & EMERY LLP |
| 4 | By:  /s/ *Michael S. Nadel*<br>Michael S. Nadel<br>Attorneys for the Farming Defendants |

CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

By: /s/ *Michael S. Nadel*
Michael S. Nadel