# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA and PGIM REAL ESTATE
FINANCE, LLC,

              Plaintiffs,

v.

ACDF, LLC; ASSEMI AND SONS, INC.;
AVILA RANCH EA, LLC; BEAR FLAG
FARMS, LLC; C & A FARMS, LLC; CANTUA
ORCHARDS, LLC; DA REAL ESTATE
HOLDINGS, LLC; FAVIER RANCH, LLC; FG2
HOLDINGS LLC; GRADON FARMS, LLC;
GRANVILLE FARMS, LLC; GRANTLAND
HOLDINGS NO. 1, LLC; GRANTLAND
HOLDINGS NO. 2, LLC; GRANTOR REAL
ESTATE INVESTMENTS, LLC; GVM
INVESTMENTS, LLC; GV AG, LLC; LINCOLN
GRANTOR FARMS, LLC; MARICOPA
ORCHARDS, LLC; PANOCHE PISTACHIOS,
LLC; SAGEBERRY FARMS, LLC; DEREK
BELL; and RACHEL MARIE WHITE,

              Defendants.

**CASE NO. 1:24-CV-01102-KES-SAB**

**ORDER EXPANDING
RECEIVERSHIP AND FOR
PRELIMINARY INJUNCTION**

Upon due consideration of the Plaintiffs' Ex Parte *Motion for Order Appointing Receiver and for Preliminary Injunction* (the "**Receiver Motion**"), Plaintiffs' *Motion in Support of Continuation of Receivership* (the "**Continuance Motion**"), the Complaint (defined below), the Declaration of William Sciacqua (the "**Plaintiff Declaration**"), the Declaration of receiver Lance Miller (the "**Receiver Declaration**"), the Oppositions filed to the Motion, the Court being advised that the relief granted herein has been agreed to by both Plaintiffs and intervenor U.S. Bank, National Association ("**U.S. Bank**"), and the oral argument of counsel and good cause appearing therefor, the Court hereby finds that:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

B.      On September 16, 2024, Plaintiffs filed a Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents And Profits Clause; and Injunctive Relief (the "**Complaint**") against the above-captioned defendants (the "**Defendants**").[1]

C.      The Complaint alleges that: (a) Plaintiffs made certain loans to various entities, including ACDF, LLC; Assemi and Sons, Inc.; Avila Ranch EA, LLC; Bear Flag Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; DA Real Estate Holdings, LLC; Favier Ranch, LLC; Fg2 Holdings LLC; Gradon Farms, LLC; Granville Farms, LLC; Grantland Holdings No. 1, LLC; Grantland Holdings No. 2, LLC; Grantor Real Estate Investments, LLC; GVM Investments, LLC; GV Ag, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC ("**MOC**"); Panoche Pistachios, LLC; and Sageberry Farms, LLC (collectively, the "**Borrowers**") pursuant to the Loan Documents (as defined in the Complaint), (b) as security for the Borrowers' obligations under the Loan Documents, the Plaintiffs were granted, among other rights, a continuing and first priority security interest in all real and personal property granted by Borrowers to Lender as security for the Loans, defined or otherwise described as "Property" in the Instruments, including but not limited to (i) the real property described in that certain Schedule of Prudential Real Property filed on November 7, 2024 as Docket Number 118-1[2] and (ii) the Improvements, Leases, Property Agreements, Rents and Proceeds, Water Rights, Crops related to such real property, as applicable (as such terms are defined in the applicable Instruments) (collectively, the "**Property**"), and (c) Plaintiffs perfected their security interest in the Property by, among other things, filing UCC-1 Financing Statements and the Instruments (as defined in the Complaint) with the relevant government offices. Plaintiffs further allege Defendants breached their obligations under the Loan Agreement by committing

---

[1] The term "Defendants" shall mean all named defendants in this action, while the term "Borrowers" shall mean all Defendants with the exceptions of Derek Bell and Rachel Marie White. **Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement** (each as defined in the Complaint).

[2] For the avoidance of doubt, the legal descriptions for real property that has been released/reconveyed have been omitted via redaction (to indicate such release/reconveyance) but the parcel name and APN have remained for reference purposes, where applicable.

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

multiple Events of Default (as defined in the Loan Documents and described in more detail in the Complaint). For the avoidance of doubt, the "Property" does not include any of the Farming Defendants' equipment that is not a fixture affixed to the real property, that does not constitute an improvement on such real property, or was not acquired for purposes of being affixed to, incorporated into, or installed in or about such improvements or real property. For the avoidance of doubt, the "Property" also does not include any interest in that certain property subsequently reconveyed by Plaintiffs pursuant to the Substitution of Trustee and Partial Reconveyance recorded in the official records of the Kern County Recorder on November 18, 2022, as Document No. 222172571.

D.      On September 18, 2024, counsel for ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, MOC, Panoche Pistachios, LLC and Sageberry Farms, LLC (the "**Farming Defendants**" and together with Plaintiffs, the "**Parties**") entered their appearance.

E.      On September 18, 2024, Plaintiffs filed the Receiver Motion, seeking to appoint Lance Miller of Pivot Management Group, LLC as receiver in the above-captioned action.

F.      On September 20, 2024, U.S. Bank filed its Ex Parte Application for Leave to Intervene Pursuant to FRCP 24 for the Limited Purpose of Filing an Opposition to Plaintiffs' Ex Parte Motion and its Joinder and Opposition to Ex Parte Appointment of a Receiver, opposing the Receiver Motion.

G.      On September 21, 2024, the Farming Defendants filed their Opposition to the Receiver Motion.

H.      U.S. Bank has been the Farming Defendants' crop lender for years. Farming Defendants are indebted to U.S. Bank on a crop loan, in the principal amount of approximately $150 million. That loan is secured by, among other things, a security interest in all of the Farming Defendants' crops (whether or not grown on the Receivership Property) and the proceeds thereof, including accounts receivable and collections resulting from the sale of those crops.

I.      In addition to Plaintiffs, various other lenders (the "**Other Real Estate Lenders**") made term loans to certain of the Farming Defendants and certain of their affiliates, secured by trust deeds or mortgages on such borrowers' farming property that is not "Property" subject to Plaintiffs' senior deeds of trust (the "**Other Property**"). In most cases, the Other Real Estate Lenders also secured their loans

with, among other things, crops grown on the Other Property and the proceeds thereof. Most of the Other Real Estate Lenders entered into intercreditor agreements with U.S. Bank for certain portions of the Other Property defining their respective priorities in "Crop Collateral" (as defined below). The term "**Crop Collateral**" as used in this Order refers to crops and the products and proceeds thereof. U.S. Bank contends that its security interest in the Farming Defendants' Crop Collateral is senior in priority to the interest of any other lender or person. The Other Real Estate Lenders do not, at this time, concede U.S. Bank's priority position in their Crop Collateral or that U.S. Bank has a security interest in their Crop Collateral.

J.     Certain of Borrowers' farm properties are not subject to any lender's mortgage or deed of trust (the "**Free and Clear Properties**"). U.S. Bank has a senior security interest in the crops grown on the Free and Clear Properties and related Crop Collateral.

K.     The Farming Defendants have sold, or are in the process of selling, all of the crops they grew in 2024, thereby generating accounts receivable. The accounts receivable from sales of crops grown on the real property portion of the Property subject to Plaintiffs' senior deeds of trust are referred to as the "**Prudential Accounts Receivable**." The accounts receivable from sales of crops grown on the Other Property are referred to as the "**Other Accounts Receivable**."

L.     On September 25, 2024, the Court entered an Agreed Order Appointing Receiver with Limited Authority ("**Receivership Order**") [ECF No. 51 at 8, ¶ 23], pursuant to which the Court appointed the Receiver for the purpose of inspecting, monitoring, observing and auditing the Farming Defendants' use of Property, the proceeds of the crop financing funded by Plaintiffs to the Receiver (as more fully described therein) (the "**Crop Financing**"), cash and cash collateral, and proceeds of all of the foregoing, through the completion of the 2024 harvest, which was completed on or about October 19, 2024.

M.     The Receivership Order also set a hearing on whether the receivership should be continued for October 22, 2024, a deadline for the filing of pleadings as to whether the receivership should be continued for October 11, 2024, and a deadline for the filing of opposition pleadings for October 18, 2024.

N.     On October 11, 2024, Plaintiffs filed the Continuance Motion. Pursuant to the Continuance Motion, Plaintiffs set forth that the receivership should be continued and should be expanded.

O.     In accordance with the Loan Documents, Plaintiffs seek to expand the receivership, with the Receiver having authority to, among other things: (a) preserve the Property and protect it from

dissipation and diminution in value; (b) conduct business operations in connection with the Property; and (c) assess whether a sale of the Property would maximize value, and, following that assessment, implement an organized sale process of the Property.

P.    Good cause has been shown for the appointment of a receiver over the Property and the business operations related to the Property, including that: (a) Plaintiffs have valid claims for the non-payment of the significant debt owed to them and the multiple Events of Default under the Loan Documents; (b) there is an imminent danger the Property will diminish in value; (c) the principal legal remedy available to Plaintiffs – foreclosure – is inadequate; (d) no less drastic remedy exists; and (e) the appointment of a receiver will do more good than harm.

Q.    The appointment of a receiver is not intended to be, nor shall it be, an election of remedies by Plaintiffs, and Plaintiffs expressly reserve their rights and remedies against Defendants, the Property, and any and all persons or entities that have any obligations to Plaintiffs under applicable law and the Loan Documents with respect to the debt owed to Plaintiffs under the Loan Documents.

R.    The appointment of a receiver over the Property and the business operations related to the Property for the purposes set forth herein is necessary for the protection and preservation of the Property. Based on the facts and circumstances of this case, federal law, and the Loan Documents, the appointment of a receiver is warranted.

S.    Further, as stated in the Plaintiff Declaration, the Borrowers have indicated that they face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops. Such actions would obviously cause tremendous damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die.

T.    Plaintiffs and U.S. Bank have further advised the Court that Plaintiffs and U.S. Bank have agreed to finance such amounts as are reasonably necessary to complete and pay for Farming Defendants' 2024 crop harvest (which concluded on or about October 19, 2024) and ongoing operations on, and maintenance of, Receivership Property in accordance with the budget, as may be amended by agreement between Plaintiffs, U.S. Bank, and Farming Defendants (the "**Budget**") attached hereto as Exhibit A (the

"**Crop Financing**"). The Crop Financing constitutes loans to Farming Defendants that shall be administered by the Receiver.

U.     Certain costs may be incurred by either the Receiver (as defined below), any receiver (the "**Joint Intervenors' Receiver**") appointed by or on behalf of Joint Intervenors Metropolitan Life Insurance Company ("**MLIC**"), Brighthouse Life Insurance Company ("**Brighthouse**"), or MetLife Real Estate Lending LLC ("**MREL**" and, together with MLIC and Brighthouse, "**Joint Intervenors**"), or any other receiver sought by Other Real Estate Lenders and appointed by the Court, in the administration of their respective receivership estates, that are properly allocable in whole or in part to another estate. Each such receiver shall consult in an effort to reach joint agreement on allocation, and to pay any such agreed allocated cost amount. Absent agreement, any dispute over which costs (or partial costs) may be paid by a receiver's receivership estate shall be determined by the Court, after notice and a hearing.

V.     For all other costs borne by the Receiver that are properly allocable to Other Property, all rights are reserved to the Receiver to seek payment from or surcharge against such entities or properties, with all defenses and rights by such entities (or their property) expressly reserved.

W.     Plaintiffs have established that: (i) as a result of the amounts due and owing under the Loan Documents, the defaults thereunder, and the difficulty in curing any such defaults, Plaintiffs are likely to succeed on the merits of its claim; (ii) Plaintiffs are likely to suffer irreparable harm in the absence of an injunction; (iii) the balance of the equities is in Plaintiffs' favor; and (iv) when coupled with the appointment of a receiver, an injunction benefits the public interest because the receiver needs to be able fulfill his duties and obligations without potentially disruptive interference.

**IT IS ORDERED**:

**I.     GENERAL PROVISIONS**

1.     Lance Miller of Pivot Management Group, LLC (the "**Receiver**" and together with the Joint Intervenors' Receiver, the "**Receivers**"), who the Court finds is qualified and independent and who the Court appointed as Receiver pursuant to the Receivership Order, shall be vested with complete jurisdiction and sole control over all of the: (a) Property and the business operations related to the Property; and (b) any claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or

unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, wherever located (collectively, the "**Causes of Action**"), to the extent that such Causes of Action constitute Property (clauses (a) and (b) above, collectively, the "**Receivership Property**"); *provided, however*, that the Receivership Property shall exclude those certain 78 acres of real property, APN: 038-141-59S, on which both Plaintiffs and Intervenor Metropolitan Life Insurance Company hold a security interest; *provided, further* that, for the avoidance of doubt, this Order shall not authorize or obligate Receiver to take control of, oversee, operate, fund, or maintain any Other Property or Free and Clear Property, except as explicitly set forth in Section II below. For the avoidance of doubt, the term "Receivership Property" shall not include any Other Property, or the related Crop Collateral, or Free and Clear Property, or any Farming Defendants' or related entities' business operations solely in connection therewith.

2.     The Farming Defendants and their affiliates performing services for or on behalf of Farming Defendants shall: (a) make their respective files, books, records, pertinent electronic files, and personnel, including directors, officers, management, and employees, available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties; and (b) promptly provide Receiver with copies of all mail, regular, overnight or express or personal delivery, addressed to any of the Farming Defendants related to the Receivership Property.

3.     In addition to the rights, powers, benefits, and authorities granted in the preceding paragraphs, the Receiver is hereby vested with complete and sole authority and jurisdiction over the Receivership Property to the maximum extent permitted by 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and this Court's inherent powers, and is hereby empowered and permitted to take any and all actions necessary and proper carry out the express provisions of this Order, including but not limited to following rights, powers, benefits, and responsibilities:

a.     To take immediate possession of, custody of, and control over all the Receivership Property;

b.     To enter into any property where the Receivership Property may be located in order to take immediate possession of, custody of, and control over Receivership Property;

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

c.      To manage, control, operate and maintain the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract related to the Receivership Property; *provided, however*, that nothing in this Order authorizes the Receiver to terminate any well agreements, water supply agreements, access agreements, or similar agreements, or other contracts that, in each case, also explicitly benefit Other Property or Free and Clear Property;

d.      Subject to further order of the Court, to abandon or sell Receivership Property as the Receiver may deem prudent outside of the ordinary course of the Farming Defendants' businesses.

i.      All sales or transfers made by the Receiver shall be free of liens, claims, and encumbrances, with any such liens, claims and encumbrances attaching to the proceeds therefrom subject to further order of the Court; and

ii.      The Receiver may abandon or sell Receivership Property outside of the ordinary course of the Farming Defendants' businesses by motion, and shall obtain such order(s) from the Court and shall provide no less than fourteen (14) days' notice of such motion(s) to the Court and all parties in interest in this receivership, and the lack of any written objection by such parties in interest within the fourteen-day period shall be deemed consent to such use, abandonment, or sale;

e.      To make a motion or application to the Court regarding instruction or clarification in connection with the powers and scope of the receivership, Receivership Property, and this Order, including but not limited to obtaining orders further instructing the Receiver or orders clarifying the scope of the receivership or the Receivership Property;

f.      To demand, collect, sue for, and receive all receipts, rents, profits, monies, security deposits, advance deposits, funds, earnings, issues, income, and/or other revenues or payments arising from the Receivership Property, as a whole or as to any and all improvements thereon;

g.      To take and receive possession of any money on deposit in any bank accounts and chattel paper of Defendants, in either case that is Receivership Property. The Receiver shall have co-administrator status on Defendants' respective cash management systems and bank accounts

8

and may continue to use and make payments through Defendants' respective cash management systems and bank accounts for a period of up to sixty days (60) days after the entry of this Order.

h.      To establish bank accounts at any bank the Receiver deems appropriate for the deposit of monies and funds collected and received in connection with his administration of the receivership estate, including but not limited to any funds advanced by Plaintiffs, provided that all funds on deposit are insured by an agency of the United States government;

i.      To take possession of all Proceeds and of crops, farming land, and all other farm products that constitute the Receivership Property deemed appropriate by the Receiver, including, but not limited to, taking possession of any such Receivership Property in the possession or control of any other party after consulting with Plaintiffs; *provided, however*, that nothing in this Order shall permit the Receiver to:

        i.   take possession of Intervenor Proceeds (as defined below) in a manner inconsistent with Section II below;

        ii.  interfere with, terminate, or refuse to honor the existing well, water supply, access, and other agreements relating to water that benefit the collateral of any of Joint Intervenors or the Other Real Estate Lenders; or

        iii. interfere with any of Joint Intervenors' or Other Real Estate Lenders' Permitted Actions (as defined below), absent further Order of the Court;

j.      Subject to Recital T and Paragraph 22 below, to immediately borrow from Plaintiffs and U.S. Bank such funds as Receiver, Plaintiffs, and U.S. Bank deem necessary for the current operation of the receivership estate, to continue to borrow money from Plaintiffs and U.S. Bank for the operation of the receivership estate as needed, from time-to-time, and to issue to Plaintiffs and U.S. Bank from time-to-time Receiver's Certificates or such other documents or instruments to evidence such borrowings, subject to Plaintiffs' and U.S. Bank's sole right to decide whether or not to advance any or all funds requested by the Receiver, and to issue further Receiver's Certificates as such funds may be reasonably necessary for the Receiver to fulfill his duties and as agreed upon in writing by Plaintiffs, with such Receiver's Certificates or such other documents or instruments to have liens against the Receivership Property that are junior in priority to the existing

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

liens of Plaintiffs, U.S. Bank, and Joint Intervenors (with respect to Crop Collateral) and, with the exceptions of fees and expenses owing to the Receiver, Receiver's Counsel, and the other professionals employed by the Receiver, have seniority over all other claims against the receivership estate on a priority repayment basis. Any liability for such borrowings shall solely be the responsibility of the Borrowers, and not the Receiver. After any Receiver's Certificate, or such other documents or instruments, is issued, a copy of such shall be included in the Receiver's monthly report. The original instrument shall be delivered to Plaintiffs or U.S. Bank to be filed and/or recorded in Plaintiffs' or U.S. Bank's discretion, as applicable. Notwithstanding anything to the contrary, the Receiver's Certificates shall not create any lien on or otherwise encumber any property that is not Receivership Property or any property against which Plaintiff did not hold a perfected, first priority lien;

k.      To execute and prepare all documents and to perform all acts, including entering into contracts and operating licenses, and signing checks or initiating and processing electronic funds transfers in the Receiver's own name (solely in his capacity as receiver), which the Receiver reasonably believes are necessary to preserving, protecting, managing, controlling and/or liquidating the Receivership Property, including, but not limited to any Receivership Property now in the possession or control of any third party;

l.      To compromise debts of Borrowers in connection with or related to the Receivership Property and to do all things and to incur the risks and obligations of similar businesses operating in accordance with reasonable agricultural and/or viticultural standards and practices, and no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate;

m.      To investigate, identify, pursue, and resolve, any and all claims or causes of action that constitute Receivership Property;

n.      To take all reasonable actions to collect, including contacting account debtors and bringing and prosecuting actions, all accounts receivable of the Farming Defendants relating to the Receivership Property, whether now existing or hereafter created, and to direct such account debtors to cease sending further accounts receivable payments to the Farming Defendants or any

other third party and to instruct such account debtors and/or any other third party to send any and all payments directly to the Receiver;

      o.     Hire and terminate agents, employees, appraisers, guards, clerks, accountants, liquidators, auctioneers, attorneys, management companies, and consultants without cause, to administer the receivership estate, and to protect the Receivership Property as the Receiver deems reasonably necessary; to purchase insurance, materials, supplies and services and to pay therefore at the usual rate and prices out of funds that shall come into his possession; to pay the reasonable value of said services out of the proceeds of the estate or funds that come into his possession; and that no risk or obligation incurred by the Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate;

      p.     Employ a law firm as Receiver's legal counsel ("**Receiver's Counsel**") in this matter, as reasonably necessary to accomplish the purposes of this Order, and pay the reasonable fees and expenses of such Receiver's Counsel for services rendered in preparation of and during the receivership, as approved by the Court. Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the Receivership estate and in preparing for the Receiver's appointment. The attorneys' fees and costs incurred by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 11 of this Order;

      q.     To institute ancillary proceedings in this Court, the State of California, or other states and countries, prosecute and tender all suits or insurance claims, and pursue all remedies available by law as is necessary to preserve and protect the Receivership Property and ensure compliance with the Receiver's authority, and the Receiver may engage the services of legal counsel in furtherance of such actions. The Receiver may pay for such services from the funds of the receivership estate;

      r.     To exclude Defendants or anyone claiming under or through the Defendants who does not have a lease or rental agreement entitling them to possession of the Receivership Property, or any portion thereof;

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

s.      To bring and prosecute all proper action for collection of payments, rent, and lease payments due, if any, on the Receivership Property, as well as necessary actions and proceedings for the removal of tenants or lessees in default for any rental or lease agreement, or any other persons, from the Receivership Property, to bring and prosecute all proper actions for the protection of the Receivership Property or recovery thereof;

t.      To assume, extend, or modify any pre-receivership contracts or agreements, including unexpired leases, relating solely to the Receivership Property and/or reject such contracts in the Receiver's sole judgment and discretion;

u.      Employ Pivot Management Group, LLC ("**Pivot Group**"), as Receiver's financial advisor in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to Pivot Group shall be based on the hourly rates and expenses as set forth in the Receiver Declaration, subject to annual adjustment upon notice to the parties. Pivot Group shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the receivership estate. The fees and costs incurred by Pivot Group may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 11 of this Order;

v.      To analyze the books, records, pertinent electronic files, and files of Borrowers and any of their affiliates performing services for or on behalf of Farming Defendants, including bank accounts, accounting records, and software related thereto, to determine the sources and uses of cash, accounts, and proceeds of the Receivership Property and to copy and/or map such books, records, pertinent electronic files, and files as Receiver deems appropriate; and

w.      To post a sufficient bond or undertaking with the Court in the amount of $1,000,000.00, as required by L.R. 232(i).

4.      If there is insufficient insurance coverage on the Receivership Property, it is hereby ordered that the Receiver shall have thirty (30) business days to procure said insurance on the Receivership Property, provided the Receiver has funds available to do so. The Receiver is acting solely in his capacity as Receiver and shall have no personal liability for claims against the Defendants, individually or collectively, or for failure to obtain insurance. With respect to any insurance coverage, the Receiver, and

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

other parties with insurable interests, shall be named as additional insureds on the policies for the period that the Receiver shall be in possession of the Receivership Property. With respect to any property coverage in existence or obtained on or with respect to the Receivership Property, Plaintiffs shall be named as the mortgagee and loss payee.

5.      Upon presentation of a conformed copy of this Order to any third party, banks, or depositories owing performance of any obligation or duty to Defendants with respect to the Receivership Property, such third parties shall render any performance or duties with respect to the Receivership Property directly to the Receiver, and such copy may be presented to any recalcitrant third parties to advise the same of the Receiver's appointment and obtain cooperation.

6.      Receiver, as an officer of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership Property and assets, without further order from the Court.

7.      Any securities or deposits that constitute Receivership Property and which tenants or other persons have paid to Borrowers or their agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of Borrowers, and may not be refunded to the tenants by the Receiver.

8.      The Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes arising before the date of this Order. The Receiver shall otherwise comply with all applicable laws and regulations relating to tax-reporting requirements. The Receiver shall furnish Defendants with such access to books and records within the Receiver's custody or control as reasonably may be necessary for Defendants to complete and file tax returns on their own behalf.

9.      The Receiver shall not be entitled to utilize the tax identification numbers of any of the Borrowers in connection with any powers exercised pursuant to this Order and shall obtain new tax identification numbers.

10.     Any utility company providing services to real property subject to this Order, including gas, electricity, water, sewer, trash collection, telephone, cable, communications Wi-Fi, Internet, or similar services, shall be prohibited from discontinuing services to Receivership Property and prohibited from

failing to comply with any request by the Receiver to, and are prohibited from refusing to, reinstitute service to the subject property based any non-payment by Defendants prior to the Receiver's appointment by the Court based upon unpaid bills incurred by Defendants. Further, such utilities shall transfer any deposits held by the utility company solely on account of Receivership Property to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. The Receiver shall make commercially reasonable efforts to open new accounts under the name of the Receiver within 30 days of entry of this Order, and until such time as such new accounts are open the Receiver may continue to operate under Defendants' accounts.

11.     Except as set forth in Section II below, all Proceeds arising from the Receivership Property shall be used to pay: (a) amounts owed to non-insider third parties arising in the ordinary course of business for operations conducted on or related to Receivership Property, as well as all amounts the Receiver determines, in his reasonable business judgment, are necessary to maintain, preserve, and care for Receivership Property; (b) the fees and costs owing to Receiver, Receiver's Counsel, and Receiver's other professionals, subject to and except as otherwise set forth below, and (c) any indemnification owing to the Receiver pursuant to Paragraph 24 below in connection herewith (collectively, the "**Administrative Claimants**"), in each case prior to payment to Plaintiffs. Plaintiffs have agreed and there hereby is a carveout from Plaintiffs' interests in the Receivership Property sufficient to secure payment in full of all amounts owed or owing to the Administrative Claimants. The Receiver is acting solely in his capacity as Receiver and in no event shall have any personal liability for any debts or obligations incurred by or on behalf of Defendants.

## II.     COLLECTION AND DISBURSEMENT OF PROCEEDS OF CROP COLLATERAL

12.     This Section II governs the collection and disbursement of proceeds arising from crops grown in 2023 and 2024 on the Receivership Property, as well as the 2023 and 2024 Crop Collateral arising from the Other Property. To the extent of any inconsistency between the provisions of this Section II and the balance of this Order, this Section II shall prevail.

13.     Due to the existence of priority disputes in connection with the Crop Collateral arising from crops grown in 2023 and 2024 on the Receivership Property, as well as the 2023 and 2024 Crop

Collateral arising from the Other Property, with the consent of U.S. Bank, and subject to further order of the Court providing otherwise, the Receiver is authorized and directed to collect the proceeds from all 2024 Crop Collateral (collectively, the "**Proceeds**"), notwithstanding whether the Proceeds constitute Receivership Property, and to disburse such Proceeds as permitted under this Order. For the avoidance of doubt, "Proceeds" do not include either: (a) amounts previously collected by Farming Defendants and expended in their operations or in payment of their obligations to creditors; (b) proceeds of crops grown on real property encumbered senior deeds of trust for the benefit of Joint Intervenors (the "**Intervenor Proceeds**"); or (c) amounts previously collected by creditors. The Farming Defendants are hereby ordered to promptly pay-over to the Receiver any and all such Proceeds paid to or otherwise received by them. In the event that the Farming Defendants collect any Proceeds, from whatever source, they shall pay such Proceeds to the Receiver, who shall thereafter hold and disburse them in accordance with this Order.

14. The Receiver shall coordinate his collection of Proceeds with the Joint Intervenors' Receiver's collection of Intervenor Proceeds, including as follows:

   a. The Receiver and the Joint Intervenors' Receiver shall send joint payment direction letters or similar letters (each, a "**Demand**") directing any processors or other third parties owing Proceeds or Intervenor Proceeds that are due and payable (the "**Processors**" and each a "**Processor**"), to cease sending Proceeds and/or Intervenor Proceeds to the Farming Defendants or any other third party and instructing such Processors to send any and all Proceeds directly to Receiver and any Intervenor Proceeds directly to the Joint Intervenors' Receiver. The Processors are directed to comply with the Demands and shall have no liability to the Farming Defendants, Plaintiffs, Joint Intervenors, U.S. Bank, or other third parties for the payment of Proceeds or Intervenor Proceeds to Receiver or the Joint Intervenors' Receiver in accordance with such Demand and during the term of this Order.

   b. The amounts of Intervenor Proceeds included in each Demand will be based on the spreadsheet attached as <u>Exhibit C</u>, as the same may be amended by mutual agreement between the Receivers based on updated information from the Processors and/or the Farming Defendants (including information on Joint Intervenors' share of applicable final "bonus payments" related to the Intervenor Proceeds from the Processors). All other amounts due from the Processors under a

given Demand shall be paid to the Receiver. The amounts set forth on Exhibit C are a guide for making Demands on the Processors. Each Processor payment collected by the Receivers shall be subject to true-up upon a reconciliation, to be made within thirty (30) days following receipt of such payment, based on the Receivers' comparison of the amount of such payment to the actual amount of Proceeds and/or Intervenor Proceeds they calculate should have been paid by such Processor. If the Receivers cannot agree on such reconciliation amount, the Court will resolve the dispute upon joint motion. Any true-up payment due as a result of such reconciliation shall be made by the receiver from whom it is due to the other receiver promptly upon agreement or Court determination. For the avoidance of doubt, if the aggregate amount of payments made by a Processor on a given date is less than the contractual amount due, then each of the Receivers may pursue the Processor for their share of the shortfall.

c.      In the event a Processor refuses to allocate Proceeds and Intervenor Proceeds, and disburse such amounts to the Receiver and the Joint Intervenors' Receiver, respectively, as directed in a Demand, then all such Proceeds and Intervenor Proceeds due from such Processor shall be paid directly to the Receiver who shall pay such Intervenor Proceeds to Joint Intervenors' Receiver following reconciliation in accordance with the preceding Paragraph.

d.      Nothing herein is intended to require, direct, or compel any Processor to comply with a Demand or otherwise pay over Proceeds or Intervenor Proceeds to the Receiver or Joint Intervenors' Receiver, as applicable, if such Processor is not otherwise obligated to make such payment.

15.     The Receiver shall collect and hold the Proceeds of the Prudential Accounts Receivable in a segregated account, to be disbursed by the Receiver in accordance with the Budget and this Order. Prior to disbursement, the existing security interests of U.S. Bank and Plaintiffs shall attach to such Proceeds with the same validity, extent, and priority as they had on the Prudential Accounts Receivable.

16.     The Receiver shall collect and hold the Proceeds from the Other Accounts Receivable in a segregated account, subject to such orders as the Court may hereinafter issue as to their disposition. Prior to disbursement, the existing security interests of U.S. Bank and the Other Real Estate Lenders shall attach to such Proceeds with the same validity, extent, and priority as they had on the Crop Collateral and the

Other Accounts Receivable. This Order is otherwise without prejudice to, and has no effect on, U.S. Bank's and the Other Real Estate Lenders' interests, priority, or positions in or with respect to the Crop Collateral and Other Accounts Receivable, and the Proceeds thereof. Except as specifically set forth herein, this Order shall not prejudice any such parties' rights to seek any and all enforcement remedies or take other such actions, including but not limited to foreclosure or the seeking of the appointment of a receiver as to their respective interests in Other Property, excluding the Proceeds of the Prudential Accounts Receivable and other Receivership Property (collectively, the "**Permitted Actions**"), and nothing in this Order shall be deemed to preclude the Permitted Actions or the ability of such other receiver to collect, hold, and disburse Proceeds of the Other Accounts Receivable attributable to the Other Property over which such receiver is appointed, in accordance with any order appointing such a receiver.

17.    The Receiver shall keep and maintain records allowing him to determine the amounts and sources of all Proceeds and any Intervenor Proceeds he collects or otherwise receives. The Receiver shall request from the Farming Defendants any such records as needed, and, upon request, the Farming Defendants shall provide to the Receiver any such records in their possession, custody, or control. The Receiver shall provide a monthly written report, with such backup as is reasonably requested, to each of Prudential, U.S. Bank, MOC, any of the Other Real Estate Lenders or other Defendants requesting such report, detailing, to the extent such information is within the Receiver's possession, custody, or control:

    a.    the total Proceeds and any amount of Intervenor Proceeds received or collected during the reporting period;

    b.    the amount of Proceeds from the Prudential Accounts Receivable, listed by the year in which the subject crops were harvested; and

    c.    the amounts of Proceeds and any amount of Intervenor Proceeds received from the Other Accounts Receivable, listed on a field-by-field basis, by Other Real Estate Lender, and by the year in which the subject crops were harvested; and any proposed disbursements of such Proceeds.

18.    Subject to Paragraph 20 below, the Receiver shall disburse Proceeds as follows:

    a.    all Proceeds of Prudential Accounts Receivable, net of Receivership Costs allocated pursuant to Paragraph 19 below, arising from crops harvested in 2024 shall be

17

disbursed first to Plaintiffs until their portion of the Crop Financing has been paid in full and second to Plaintiffs and U.S. Bank on a 75% - 25% basis, respectively;

b.   all Proceeds of Prudential Accounts Receivable, net of Receivership Costs allocated pursuant to Paragraph 19 below, arising from crops harvested in 2023 shall be disbursed to U.S. Bank;

c.   all Proceeds of crops grown on Free and Clear Properties, net of Receivership Costs allocated pursuant to Paragraph 19 below, shall be disbursed to U.S. Bank;

d.   any Intervenor Proceeds shall be disbursed to the Joint Intervenors' Receiver;

e.   all Proceeds of Other Accounts Receivable, other than Intervenor Proceeds, net of Receivership Costs allocated pursuant to Paragraph 19 below, shall be held as provided in Paragraph 16 above; and

f.   all Proceeds arising from any other Receivership Property (except equipment and related personal property in which U.S. Bank has a senior security interest), net of Receivership Costs allocated pursuant to Paragraph 19 below, shall be disbursed to the Plaintiffs.

19.   The Receiver's compensation, costs, and expenses, including those of Receiver's Counsel, Pivot Group, and Receiver's other professionals, that (a) are incurred during the period from his appointment through October 31, 2024; and (b) the Receiver determines arise thereafter as a result of the Receiver's discharge of his duties arising under this Section II or any remaining completion of harvest of Farming Defendants' 2024 crops (which determination shall be made by Receiver in his reasonable discretion), are referred to as the "**Receivership Costs**." 36% of the Receivership Costs shall be paid from the amounts otherwise distributable to U.S. Bank and the Other Real Estate Lenders (other than Joint Intervenors) (in such proportional amounts as those parties agree or as ordered by the Court) under Paragraph 18 above and 64% of the Receivership Costs shall be paid the amounts otherwise distributable to Plaintiffs under Paragraph 18 above.

20.   Prior to making any of disbursements set forth in Paragraph 18 above, the Receiver shall submit a notice to the Court identifying the amounts of Proceeds proposed to be disbursed and to whom such Proceeds will be disbursed, and providing at least ten (10) days for parties in interest to object. If a

1  timely objection is filed with the Court, the Receiver shall not make the disputed disbursement until

2  resolved by the Court. If no objection is timely filed, the Receiver shall promptly make the proposed

3  disbursement or disbursements.

4  **III.      RECEIVER'S FURTHER DUTIES**

5  21.     The Receiver shall have the following reporting requirements:

6          a.     Prepare periodic interim statements reflecting the fees and expenses of the Receiver,

7  his financial advisors, and retained counsel incurred for said period in the operation and

8  administration of the receivership estate (each, a "**Periodic Statement**"). Upon filing of a Periodic

9  Statement with the Court's CM/ECF system, which effects electronic service on to the parties'

10  respective attorneys of record, the Receiver shall pay from the estate funds, if any, the amount set

11  forth in such Periodic Statement. Despite the preparation of Periodic Statements, such fees and

12  expenses shall be submitted to the Court for its final approval and confirmation, in the form of

13  either a noticed quarterly request for fees or a Receiver's final account and report. The Receiver is

14  authorized to provide this Court or the Plaintiffs with any additional reports or information he

15  deems appropriate;

16          b.     Pursuant to 28 U.S.C. § 754, the Receiver shall, to the extent practicable, within ten

17  (10) days following entry of this Order, file copies of the Complaint and of this Order with the

18  Clerk of the District Court for every federal judicial district in which the Receiver has reason to

19  believe Receivership Property may be found (the "**Receivership Filings**"). Notwithstanding the

20  ten-day time limitation set forth in 28 U.S.C. § 754, the Receiver may apply to the Court for an

21  extension of time within which to complete the Receivership Filings. Subject to the Court's

22  discretion, such applications shall be freely granted to enable the provisions of this Order to be

23  carried out; and

24          c.     The Receiver shall, when practicable, file in this action an inventory of all property

25  of which he has taken possession pursuant to this Order and shall conduct periodic accountings

26  thereafter;

27  22.     The Receiver shall make Crop Financing advances to the Farming Defendants pursuant to

28  the Budget as determined by the Receiver in his reasonable discretion, and as provided for herein. For the

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

avoidance of doubt, notwithstanding whether the Receiver determines that additional funding is needed for the purposes set forth in the Budget, neither Plaintiffs nor U.S. Bank shall have any obligations to fund any additional amounts.

23.     The scope of the Receiver's duties to Plaintiffs are solely as follows: (a) to preserve the Receivership Property and protect it from dissipation and diminution in value; (b) to conduct business and operations in connection with the Receivership Property, including the collection and disbursement of Proceeds; and (c) to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale process of the Receivership Property, whether in whole or part, with any sale of Receivership Property outside of the ordinary court of business subject to the Court's approval.

24.     The Receiver shall be entitled, to the fullest extent of the law, to indemnification from the Farming Defendants, and such Farming Defendants shall hold the Receiver harmless from any liability, loss, or damage the Receiver may suffer as a result of claims, demands, costs or judgments against him arising out of the activities to be carried out pursuant to the authority and obligations of his appointment pursuant to this Order or any supplemental Order, which indemnification and obligation to hold harmless shall be paid solely from the Receivership Property; *provided however*, the Receiver shall not be entitled to indemnification for willful misconduct, gross negligence, or fraud as determined by a final order of the Court. The carveout and charging lien provided for Paragraph 11 above shall also apply to any indemnification obligations owed pursuant to this Paragraph.

25.     Receiver shall reasonably cooperate and communicate with U.S. Bank, the Other Real Estate Lenders, MOC, and other parties in interest with respect to his reporting obligations pursuant to the terms of this Order and shall provide any reports set forth in Paragraph 21 above to U.S. Bank, the Joint Intervenors, and MOC at the same time that it provides such to Plaintiffs and this Court and, upon request, other parties in interest. U.S. Bank shall be authorized to meet with, confer with, and request information from Receiver and his staff on the same basis as Plaintiffs.

26.     For the avoidance of doubt, no provision of this Order shall be interpreted to prohibit or interfere with Borrowers' right to seek protection under the United States Bankruptcy Code.

27.     To the extent that there are any conflicts between this Order and the Receivership Order, this Order shall control.

## PRELIMINARY INJUNCTION IN AID OF THE RECEIVER

**IT IS FURTHER ORDERED** that, except by leave of the Court, Receiver's express prior written consent, or as otherwise set forth herein, including Paragraph 16 above, during the pendency of the receivership ordered herein, Defendants and all of their customers, principals, investors, collectors, stockholders, members, managers, lessors, other creditors, judgment holders, and/or other persons seeking to establish or enforce any claim, debt, right, lien, and/or interest against Defendants, or any of their subsidiaries or affiliates, and/or all others acting for or on behalf of such persons, attorneys, trustees, agents, sheriffs, constables, marshals, and/or any other officers and their deputies, and their respective attorneys, servants, agents, and/or employees, be and are hereby stayed from:

1.     Interfering, hindering or molesting in any way the Receiver in the performance of the Receiver's duties and other performance of any duties incidental thereto;

2.     Transferring, directly or indirectly, any interest by sale, gift, pledge, grant of security interest, assignment or encumbrance in any manner the Receivership Property or proceeds thereof;

3.     Diverting any water from any of the Property to or for the benefit of any non-Defendant entity, except to the extent that such diversion is made consistent with a valid water supply agreement or similar agreement between such party and Borrower;

4.     Moving the physical location of Receivership Property from any location where Defendants are conducting business or storing the Receivership Property, or any proceeds and products thereof, from the business premises except at the direction of the Receiver;

5.     Transferring, concealing, destroying, defacing, or altering any of Defendants' books and records for the Receivership Property;

6.     Demanding, collecting, receiving, or in any other way diverting or using any of the receipts, rents, issues, profits, and or proceeds emanating from the Receivership Property;

7.     Causing any mail, express or overnight or personal delivery of Defendants in their capacity as the owner, manager or operator of the Receivership Property to be forwarded to any addresses other than the business address of each of the Borrowers, or otherwise interfering with or intercepting any mail,

express or overnight or personal delivery intended for Defendants in their capacity as the owner, manager or operator of the Receivership Property;

8.     Failing to cooperate with or reasonably assist Receiver, as required by this Order, including promptly advising of the nature and extent of insurance coverage and contracts, or refusing to promptly turn over to the Receiver all contracts, monies, checks, or proceeds that constitute Receivership Property and/or failing to make available to the Receiver all files, pertinent electronic files, books, and records of Defendants and their affiliates performing services for or on behalf of Farming Defendants relating to the Receivership Property;

9.     Terminating, modifying, or otherwise amending any contract or agreement with a third party that in any way relates to Receivership Property, including but not limited to Defendants' vendors; and

10.    Plaintiffs and their officers, employees, and agents and the Receiver shall have prompt access to all business premises of Defendants that are related to the Receivership Property and the books and records of the foregoing to enable Plaintiffs and the Receiver to review and inspect the goods, farm products, inventory, and other Receivership Property for the purposes of accounting and appraisal.

For the avoidance of doubt, except as specifically set for the herein, the foregoing Paragraphs 1-10 shall not prejudice U.S. Bank's or any Other Real Estate Lenders' rights to seek or take any and all Permitted Actions, and nothing in the foregoing Paragraphs 1-10 shall be deemed to preclude the Permitted Actions.

**IT IS FURTHER ORDERED** that except by leave of the Court, Receiver's express prior written consent, or as otherwise set forth herein, including Paragraph 16 above, during the pendency of the receivership ordered herein, Defendants and all of their investors, shareholders, members, managers, collectors, lessors, customers, tenants, junior lien holders of the Receivership Property, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies, and their respective attorneys, agents, servants, and employees be and are hereby stayed from the following without further order of the Court:

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

1.      Commencing, prosecuting, continuing or enforcing any suit or proceeding against Defendants, except as such actions may be filed to toll any applicable statutes of limitations, with respect to the Receivership Property;

2.      Commencing, prosecuting, continuing or entering into any suit or proceeding in the name or on behalf of Defendants with respect to the Receivership Property;

3.      Accelerating the due date of any obligation or claimed obligation in connection with, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, any Receivership Property or attempting to foreclose, forfeit, alter, or terminate any of Defendants' interest in any Receivership Property, including, without limitation, the establishment, granting or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise with respect to the Receivership Property;

4.      Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any Receivership Property, wheresoever located; and

5.      Doing any act or thing whatsoever to interfere with the Receiver taking control, possession, or management of the Receivership Property or any other property subject to this Order, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver, or to interfere in any manner with the exclusive jurisdiction of the Court over the property and assets of Defendants.  For the avoidance of doubt, except as specifically set for the herein, this foregoing Paragraphs 1-5 shall not prejudice U.S. Bank's or any Other Real Estate Lenders' rights to seek or take any and all Permitted Actions, and nothing in the foregoing Paragraphs 1-5 shall be deemed to preclude the Permitted Actions.

///
///
///
///
///
///

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that upon entry of this Order, Plaintiff shall take all reasonable efforts to serve this Order promptly on all Defendants, including Defendants other than the Farming Defendants, U.S. Bank, and the Other Real Estate Lenders; *provided, however*, that any such parties that have appeared in this case and are receiving notices via the Court's CM/ECF system shall be deemed to have been served a copy of this Order upon its entry by the Court.

IT IS SO ORDERED.

Dated:   November 7, 2024

_____
UNITED STATES DISTRICT JUDGE

ORDER EXPANDING RECEIVERSHIP AND FOR PRELIMINARY INJUNCTION

**EXHIBIT A**

**BUDGET**

[*begins on following page*]

**Exhibit 1 - Harvest Budget**

| ($'s in thousands)          Week Ending: | Forecast | | | | | | Harvest Budget |
|---|---|---|---|---|---|---|---|
| | 9/27 | 10/4 | 10/11 | 10/18 | 10/25 | 11/1 | Total |
| **Total Cash Receipts** | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | |
| **Operating Disbursements** | | | | | | | |
| Labor | $ - | $ (255) | $ - | $ (255) | $ - | $ (255) | $ (765) |
| CapEx | - | - | - | - | (151) | - | (151) |
| Property Tax & Land Base Charges | (1,600) | - | - | - | - | - | (1,600) |
| Cultural | (366) | (442) | (442) | (442) | (442) | (442) | (2,574) |
| Water & Irrigation | (1,680) | (108) | (108) | (108) | (1,217) | (108) | (3,330) |
| Harvest | (3,141) | (3,000) | (2,705) | (2,200) | (1,500) | (800) | (13,347) |
| Overhead | (2,911) | (311) | (311) | (311) | (311) | (311) | (4,464) |
| Harvest Contingency | (157) | (150) | (122) | (75) | (75) | (40) | (619) |
| Past Due A/P | (1,100) | (2,719) | (1,869) | (1,219) | (1,000) | (500) | (8,407) |
| **Cash Disbursements from Operations** | $ (10,955) | $ (6,984) | $ (5,557) | $ (4,609) | $ (4,695) | $ (2,455) | $ (35,256) |
| | | | | | | | |
| **Net Operating Cash Flow** | $ (10,955) | $ (6,984) | $ (5,557) | $ (4,609) | $ (4,695) | $ (2,455) | $ (35,256) |
| | | | | | | | |
| **Restructuring Cash Flow** | | | | | | | |
| Receiver Professional Fees | $ (208) | $ (171) | $ (115) | $ (115) | $ (89) | $ (89) | $ (787) |
| **Total Restructuring Cash Flow** | $ (208) | $ (171) | $ (115) | $ (115) | $ (89) | $ (89) | $ (787) |
| | | | | | | | |
| **Total Net Cash Flow** | $ (11,163) | $ (7,155) | $ (5,672) | $ (4,724) | $ (4,784) | $ (2,544) | $ (36,043) |
| | | | | | | | |
| **Beginning Cash Balance** | $ 7,021 | $ (4,142) | $ (11,297) | $ (16,969) | $ (21,693) | $ (26,477) | $ 7,021 |
| Plus: Change in Cash | (11,163) | (7,155) | (5,672) | (4,724) | (4,784) | (2,544) | (36,043) |
| **Ending Cash Balance** | $ (4,142) | $ (11,297) | $ (16,969) | $ (21,693) | $ (26,477) | $ (29,022) | $ (29,022) |
| Less: Payroll Reserve | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) | (2,147) |
| **Total Liquidity** | $ (6,289) | $ (13,444) | $ (19,116) | $ (23,840) | $ (28,624) | $ (31,169) | $ (31,169) |

**EXHIBIT C**

**DEMAND SPREADSHEET**

[*begins on following page*]

**Metlife Collection Forecast - 2024 Crop**

| Crop | Crop Year | Lender | Handler | Receivable 9/30/24 | Collection Forecast | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | October-24 | November-24 | December-24 | January-25 | April-25 | June-25 | July-25 | September-25 | October-25 | December-25 |
| Almonds | 2024 | Met Life | Blue Diamond | 287,960 | | (15,296) | (15,296) | (45,888) | (76,480) | (59,954) | | (75,047) | | |
| Almonds | 2024 | Met Life | Campos | 1,164,960 | | | (524,232) | | (232,992) | (139,795) | | (267,941) | | |
| Almonds | 2024 | Met Life | Holland | 301,148 | | (30,115) | | (45,172) | (75,287) | | (75,287) | | (75,287) | |
| Pistachios | 2024 | Met Life | Setton | 2,802,678 | (454,394) | | (454,394) | | (585,611) | | (520,003) | | | (788,676) |
| Pistachios | 2024 | Metlife/Prudential | Setton | 786,351 | (127,490) | | (127,490) | | (164,306) | | (145,898) | | | (221,168) |
| | | | | 5,343,098 | (581,884) | (45,411) | (1,121,412) | (91,060) | (1,134,675) | (199,749) | (741,188) | (342,988) | (75,287) | (1,009,844) |

| | Receivable 9/30/24 | Field |
|---|---|---|
| **Metlife Pistachios** | | |
| Manning Avenue Pistachios, LLC | 729,856 | 90205 |
| Kamm South, LLC | 559,704 | 20201 |
| Kamm South, LLC | 801,157 | 20301 |
| Kamm South, LLC | 402,452 | 21401 |
| Panoche Pistachios, LLC | 309,510 | 20401 |
| | 2,802,678 | |
| **Metlife/Prudential Pistachios** | | |
| ACDF, LLC | 786,351 | 15101 |
| | 786,351 | |