**EXHIBIT 1**

*Draft* ~~*2/18/25*~~*2/28/25*

# EXHIBIT A

## FORM BRIGHTHOUSE/MET LIFE RECEIVER AGREEMENT

_____ \_\_, 2025

Capstone Capital Markets LLC ("Capstone")
176 Federal St., 3rd Floor
Boston, MA 02110
Attention: Skye Root

Mr. Lance Miller (the "Prudential/FMAC Receiver")
Pivot Group
1230 Rosecrans Ave Suite 530
Manhattan Beach, CA 90266

Re: Prospective sale of assets in connection with Receivership Orders entered by the United States District Court, Eastern District of California, Fresno Division, 1:24-cv-1102-KES-SAB and 1:24-cv-01455-KES-SAB (the "Court")

Dear Lance:

I am the Receiver appointed by the Court at the request of Metropolitan Life Insurance Company, ("MetLife"), MetLife Real Estate Lending, LLC (~~together, "MetLife~~"MREL") and Brighthouse Life Insurance Company ("Brighthouse" and, collectively with MetLife and MREL, "MetLife/Brighthouse") under the *Order Granting Motion for Order Appointing Receiver and for Preliminary Injunction* entered by the Court in the following cases (collectively, the "MetLife/Brighthouse Receiverships"):

- Metropolitan Life Insurance Company v. FNF Farms, LLC, et al., Case No. 1:24-cv-01226- KES-SAB;

- Metropolitan Life Insurance Company v. C & A Farms, LLC, et al., Case No. 1:24-cv-01230-KES-SAB;

- Metropolitan Life Insurance Company v. Maricopa Orchards, LLC, et al., Case No. 1:24-cv-01231-KES-SAB;

- Brighthouse Life Insurance Company v. Kamm South, LLC, et al., Case No. 1:24-cv-01232- KES-SAB;

- Brighthouse Life Insurance Company v. Manning Avenue Pistachios, LLC, et al., Case No. 1:24-cv-01233-KES-SAB;

- Brighthouse Life Insurance Company v. C & A Farms, LLC, et al., Case No. 1:24-cv-01235- KES-SAB;

- MetLife Real Estate Lending, LLC v. Panoche Pistachios, LLC, et al., Case No. 1:24-cv-01241- KES-SAB; and

- Metropolitan Life Insurance Company., v. ACDF, LLC, et al., Case No. 1:24-cv-01261- KES-SAB.

In my capacity as the MetLife/Brighthouse Receiver, I have authority and control over certain assets of Maricopa Orchards, LLC and its various subsidiaries, affiliates, and related interests (the "Company") granted as collateral to MetLife or Brighthouse for loans extended to the Company by MetLife or Brighthouse, as applicable.

You, Lance Miller, are the Receiver appointed by the Court at the request of The Prudential Insurance Company of America, PGIM Real Estate Finance, LLC (together, "Prudential") and Federal Agricultural Mortgage Corporation for sale of assets and related interests of the Company granted as collateral for loans extended to the Company by Prudential.

I am aware that you, as the Prudential/FMAC Receiver, have entered into an agreement for the engagement of Capstone Capital Markets LLC (the "Capstone Agreement") in the form attached hereto as **Annex A** for sale of parcels listed in Appendix B to the Capstone Agreement, as it may be amended from time to time (the "Sale Property").

Capitalized terms not otherwise defined in this letter agreement have the meanings given in the Capstone Agreement.

Subject to Court approval and the terms and conditions of this letter agreement, I hereby confirm as the MetLife/Brighthouse Receiver that I have authorized inclusion as Sale Property under the Capstone Agreement those MetLife and Brighthouse collateral parcels and other interests identified below (the "Subject MetLife/Brighthouse Collateral"):

- APN 038-130-71S;
- APN 038-130-62S;
- APN 038-130-35S;
- APN 038-200-09S;
- APN 038-200-04S;
- APN 038-141-59S;
- APN 038-210-25S; and
- Membership interests in Poso Creek Water Company, LLC and all associated water and other rights, only to the extent directly associated with the above-mentioned parcels. Each such membership interest may only be sold along with the associated real property parcel and may not be sold unless the sale of the interest is part of the same transaction as the sale of the parcel.

I further confirm as the MetLife/Brighthouse Receiver that each of MetLife and Brighthouse have consented to the Subject MetLife/Brighthouse Collateral's inclusion in the Capstone Agreement as Sale Property, subject to the terms of this letter agreement.

For this purpose, I hereby join in the Capstone Agreement to the extent, and only to the extent, described in this letter agreement.

TERMS AND CONDITIONS

1. Joinder to Capstone Agreement. For purpose of the potential sale of the MetLife/Brighthouse Collateral as part of a Transaction(s), the MetLife/Brighthouse Receiver joins in the engagement of Capstone as described in Section 1 of the Capstone Agreement, which Section is incorporated herein by reference but subject to the terms of this letter agreement.

2. Capstone Services. For purposes of the potential sale of the Subject MetLife/Brighthouse Collateral as part of a Transaction(s), Capstone will provide the Transaction Services to the MetLife/Brighthouse Receiver. The MetLife/Brighthouse Receiver agrees to the provisions of Section 2 of the Capstone Agreement, which Section is incorporated herein by reference, with all references to "Receiver" deemed to mean the MetLife/Brighthouse Receiver" and "Receivership Orders" meaning the order issued in connection with the MetLife/Brighthouse Receiverships.".

3. Cooperation. In furtherance of the potential sale of the Subject MetLife/Brighthouse Collateral as part of a Transaction(s), the MetLife/Brighthouse Receiver agrees (a) to cooperate with Capstone and the Prudential/FMAC Receiver, (b) that the Prudential/FMAC Receiver will be the pointand the MetLife/Brighthouse Receiver will jointly be the points of contact with Capstone, and with respect to the Subject MetLife/Brighthouse Collateral, (c) that Capstone will take direction in the performance of

the Transaction Services ~~solely~~jointly from the Prudential/FMAC Receiver and the MetLife/Brighthouse Receiver.

4. MetLife/Brighthouse Foreclosure.  Nothing herein shall prevent MetLife/Brighthouse from foreclosing on the Subject MetLife/Brighthouse Collateral, and in such event the successful bidder at any such foreclosure sale shall have the right to terminate, immediately and by written notice, this side letter with respect to the portion of the Subject MetLife/Brighthouse Collateral so foreclosed and no Transaction Fee shall be earned or payable in connection with the consummation by MetLife/Brighthouse of a foreclosure of any of the Subject MetLife/Brighthouse Collateral.

5. MetLife/Brighthouse Credit Bid.  MetLife/Brighthouse may credit bid the full amount of the MetLife/Brighthouse Payoff with respect to the Subject MetLife/Brighthouse Collateral and no Transaction Fees shall be incurred as the result thereof

6. ~~4.~~ Fees.

    a. ~~The~~Neither the MetLife/Brighthouse Receiver ~~agrees~~nor MetLife/Brighthouse shall have any obligation to pay or liability for any Transaction Fee(s) associated with a Transaction(s) involving Subject MetLife/Brighthouse Collateral, calculated in accordance with the terms of the Capstone Agreement~~.~~, except as set forth in this letter agreement.  Upon the closing of a Transaction involving the sale of MetLife/Brighthouse Collateral, Capstone shall receive a cash fee from the proceeds of the Transaction equal to two percent (2%) of the MetLife/Brighthouse Payoff received by MetLife/Brighthouse.

    b. In no event shall the inclusion of the Subject MetLife/Brighthouse Collateral in a Transaction, nor the extension of the Transaction Services to such collateral, increase the amount of the Engagement Fee, Monthly Retainer Fee, or Abandonment Fee that otherwise may come due, and no such amount shall be apportioned to the MetLife/Brighthouse Collateral.

    c. In no event shall the MetLife/Brighthouse Receiver or MetLife/Brighthouse have any obligation to pay or liability for any Abandonment Fee or Engagement Fee or Monthly Retainer Fees or any other fees and costs arising under the Capstone Agreement other than the Transaction Fee described above.

    d. For the avoidance of doubt, the only fee to be paid by the MetLife/Brighthouse Receiver is a 2% commission from proceeds of the sales of MetLife/Brighthouse Collateral, calculated based on the amount of the MetLife/Brighthouse Payoff received by MetLife/Brighthouse.

7. ~~5.~~ Term and Termination. If the Capstone Agreement is terminated, this letter agreement will automatically terminate at the same time.  The MetLife/Brighthouse Receiver shall have no right or ability to terminate the Capstone Agreement absent written consent from the Prudential/FMAC Receiver or order of the Court.  Notwithstanding the foregoing, this letter agreement shall automatically terminate effective September 1, 2025, unless the Parties hereto mutually agree in writing to an extension. Further, the MetLife/Brighthouse Receiver may terminate this letter agreement on the same terms and bases as applicable to the Prudential/FMAC Receiver, as set forth in Section 5 of the Capstone Agreement.

~~6. Representations. With respect to the MetLife/Brighthouse Collateral, the MetLife/Brighthouse Receiver joins in and makes the representations and agreements set forth in Section 7 of the Capstone Agreement.~~

~~7. Indemnification. The MetLife/Brighthouse Receiver joins in the indemnification of Capstone as set forth in Section 8 of the Capstone Agreement, which Section is incorporated herein by reference, solely with respect to any and all losses, claims, damages, or liabilities to which any Capstone Indemnified Person~~

~~may become subject arising in any manner out of or in connection with the rendering of services by Capstone to the MetLife/Brighthouse Receiver.~~

8. Distribution of Proceeds; Prudential True-Up.

    a. The net proceeds of any Transaction that includes MetLife/Brighthouse Collateral will be received by and distributed to the MetLife/Brighthouse Receiver at or promptly after closing of such Transaction according to the percentage derived by *dividing* the total value of the MetLife/Brighthouse Collateral included in the Transaction *by* the Transaction Value attributable to the Transaction, minus applicable costs and expenses (the "MetLife/Brighthouse Proceeds"). In no event will MetLife or Brighthouse be entitled to more than the MetLife/Brighthouse Payoff (defined below) ~~on a by-parcel basis~~ and in no event shall the MetLife/Brighthouse Receiver or MetLife/Brighthouse be obligated to accept less than the MetLife/Brighthouse Payoff.

    b. In the event the MetLife/Brighthouse Proceeds associated with a Transaction are insufficient to pay in full the debt owing to MetLife or Brighthouse that is secured by the MetLife/Brighthouse Collateral being sold in such Transaction, the MetLife Brighthouse Receiver shall be entitled to refuse to consummate the applicable Transaction; provided, however that Prudential shall have the right, in its sole discretion, to direct the Prudential/FMAC Receiver to reallocate net sale proceeds from Prudential to MetLife or Brighthouse, as appropriate, in such amount as is necessary to repay the debt secured by the Subject MetLife/Brighthouse Collateral included in the Transaction so that MetLife or Brighthouse, as appropriate, receive the following amounts at closing of the Transaction, subject to adjustment:

        i. APN 038-130-71S ~~- $~~, APN 038-130-62S and APN 130-35S, collectively - $_____ [to be provided]
        ii. APN ~~038-130-62S~~ 038-200-09S and APN 038-200-04S, collectively - $[to be provided]
        ~~iii. APN 038-130-35S - $~~
        ~~iv. APN 038-200-09S - $~~
        ~~v. APN 038-200-04S - $~~
        iii. ~~vi.~~ APN 038-210-25S - $_____ (this amount is the total indebtedness secured by this parcel and other collateral – no attempt has been made to allocate the debt to this parcel)
        iv. ~~vii.~~ APN 038-141-59S - $_____ (this amount is the total indebtedness secured by this parcel and other collateral – no attempt has been made to allocate the debt to this parcel)

        NTD – MetLife/Brighthouse are not in a position to allocate their loan indebtedness by parcel

    The immediately preceding amounts were calculated as of the date of this letter agreement and shall be brought forward solely to reflect interest and costs payable under the relevant loan documents(s) that accrue and become due and payable between the date of this letter agreement and closing of the applicable Transaction, including without limitation farming costs, legal fees and other out of pocket expenses (the "MetLife/Brighthouse Payoff"), as supported by documentation and calculations provided by MetLife/Brighthouse ~~and reasonably acceptable to Prudential~~. The amount necessary to cause the MetLife/Brighthouse Proceeds to equal the MetLife/Brighthouse Payoff, by parcel, is referred to as the "Prudential True-Up Amount"). For the avoidance of doubt, the Prudential True-Up Amount paid, if any, will be limited to parcels included in a Transaction for which the MetLife/Brighthouse Payoff exceeds the MetLife/Brighthouse Proceeds.

9. <u>Agreement to Close</u>. In the event Prudential elects to pay the Prudential True-Up Amount(s) pursuant to Paragraph 8(b) of this letter agreement, MetLife or Brighthouse (as applicable) shall be obligated to close on the Transaction(s) and to direct the release of the Release Documents described in Paragraph 10 of this letter agreement and subject to the terms thereof.

10. <u>Agreement to Release Liens</u>. Within thirty (30) days of ~~the execution of this letter agreement, or such other date as agreed to in writing by the parties~~ notice of opening of an Escrow to close a binding Transaction including Subject MetLife/Brighthouse Collateral, MetLife and/or Brighthouse (as applicable) shall each place into the escrow established for the closing of the transaction with a national title insurance company (the "Escrow") all lien releases and other documents necessary to transfer the MetLife/Brighthouse Collateral free and clear of all liens, claims, encumbrances, and other interest held by MetLife, Brighthouse, or their affiliates in the Metlife/Brighthouse Collateral (the "Release Documents"), with such documents to be released from ~~escrow~~ Escrow concurrently with MetLife's or Brighthouse's receipt of the MetLife/Brighthouse Payoff, as applicable. None of the Release Documents shall be released from Escrow absent confirmation from the holder of the Escrow that it is in possession of and in a position to release to MetLife/Brighthouse the MetLife/Brighthouse Payoff substantially concurrently with the release of the Release Documents. For the avoidance of doubt, the Release Documents shall include any and all documents, in forms reasonably acceptable to the Prudential/FMAC Receiver, necessary to release MetLife's, Brighthouse's, or their respective affiliate's liens, claims, security interest, encumbrances, and similar interests on or in:

    a. The Subject MetLife/Brighthouse Collateral included in the Transaction;

    b. ~~The membership interests in Poso Creek Water Company, LLC and~~ all associated water and other rights appurtenant to or included as Subject MetLife/Brighthouse Collateral; and

    c. The following Water Supply agreements:

        i. In connection with a release of APN 038-200-04S and 038-200-09S, Water Supply Agreement dated July 29, 2015 made by and between **FNF FARM**S, LLC, a California limited liability company (as Water User therein), and 104 PISTACHIOS, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 11, 2024 as Document No. 2024-0082400, (ii) the Official Records of Kern County, California on September 10, 2024 as Document No. 224109980, (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412595, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019288.

        ii. In connection with a release of APN 038-130-35S, 038-130-71s and 038-130-62s, Water Supply Agreement dated July 29, 2015 made by and between **KAMM SOUTH, LLC**, a California limited liability company (as Water User therein), and 104 Pistachios, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 11, 2024 as Document No. 2024-0082763, (ii) the Official Records of Kern County, California on September 10, 2024 as Document No. 224109979; (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412594, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019295.

        iii. ~~Water Supply Agreement dated September 28, 2025 made by and between **MARICOPA ORCHARDS, LLC**, a California limited liability company, et al, (as Water User therein), and 104 Pistachios, LLC a California limited liability company, et al (as Water Providers therein), recorded in (i) the Official Records of Fresno County, California on September 10, 2024 as Document No. 2024-0082325, (ii) the~~

~~Official Records of Kern County, California on September 13, 2024 as Document No. 224111300, (iii) the Official Records of Kings County, California on September 10, 2024 as Document No. 2412596, and (iv) the Official Records of Madera County, California on September 11, 2024 as Document No. 2024019287For purposes of this Paragraph 10, "escrow" may include delivering such documents, fully executed, to counsel for the Prudential/FMAC Receiver.~~

11. <u>Adoption of Remaining Sections of Capstone Agreement</u>. Subject to the above modifications, the MetLife/Brighthouse Receiver agrees to the remaining sections of the Capstone Agreement (other than Section 4, Section 6, Section 7, and Section 8), which are incorporated herein by reference; provided that~~,~~:

~~11.~~ (i) notifications to the MetLife/Brighthouse Receiver are to be given to:

Phillip Christensen, MetLife/Brighthouse Receiver
AgriGlobe
2787 W. Bullard Avenue, Suite 106
Fresno, California 93711

(ii)  no Party shall be entitled to assign its rights under the Capstone Agreement or this side letter absent the MetLife/Brighthouse Receiver's consent

(iii)  no disclosures shall be made under Section 9 of the Capstone Agreement regarding MetLife, MREL or Brighthouse absent their respective express written approval and authorization, and Capstone shall not be permitted to refer to MetLife, MREL or Brighthouse in any advertising, marketing, or other materials it distributes absent MetLife's, MREL's or Brighthouse's  (as applicable) consent regardless of whether any related information is denominated by MetLife, MREL or Brighthouse as "confidential" under Section 17 of the Capstone Agreement;

(vi)  MetLife/Brighthouse disclaims and does not make any representations or warranties regarding any aspect of the Subject MetLife/Brighthouse Collateral to Capstone, any Capstone Indemnified Person, Prudential or any other Lender;

(iv)  neither the MetLife/Brighthouse Receiver or MetLife/Brighthouse shall have any liability under the Capstone Agreement for any actions or omissions by the Receiver, Prudential or FMAC and any liability of the MetLife/Brighthouse Receiver or MetLife/Brighthouse shall be several and NOT joint and shall not extend to any matters relating to the Sale Property or Transactions involving other Lenders;

(v)  the sales process and procedures for the sale of Subject MetLife/Brighthouse Collateral approved by order of the Court shall be subject to the approval of the MetLife/Brighthouse Receiver and the form of any sale agreement proposed for a Transaction involving Subject MetLife/Brighthouse Collateral shall be subject to the MetLife/Brighthouse Receiver and MetLife/Brighthouse approval and shall not include any representations or warranties with respect to the Subject MetLife/Brighthouse Collateral;

(vi) MetLife/Brighthouse shall have no liability under this side letter or the Capstone Agreement other than the obligations set forth in Section 11 above.

12. <u>Governance</u>. This Agreement incorporates the entire understanding between the parties hereto and supersedes all previous agreements relating to the subject matter hereof.  This Agreement may not be amended or modified except in a writing signed by the parties.  This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.  If any term or provision of this Agreement shall to any extent be deemed illegal, invalid, or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Please indicate your agreement to the foregoing by signing at the places for your signatures below.

Sincerely,

_____
Phillip Christensen
Solely in his capacity as
Court-appointed Receiver

ACKNOWLEDGED AND AGREED:

_____
Lance Miller
Solely in his capacity as
Court-appointed Receiver

CAPSTONE CAPITAL MARKETS LLC

_____
Paul Janson
Head of Investment Banking

ACKNOWLEDGED BY:

[ADD METLIFE/BRIGHTHOUSE SIGNATURE BLOCKS]

| | |
|---|---|
| **Summary report:** <br> **Litera Compare for Word 11.5.0.74 Document comparison done on 2/28/2025 12:58:32 PM** | |
| **Style name:** Track with Vertical Lines | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Met_Capstone Side Letter as of 2 18 25 (002) KattenDraft(128073269.1).docx | |
| **Modified filename:** Met_Capstone Side Letter as of 2 28 25_MetReceiverComments(128073245.1) V2.docx | |
| **Changes:** | |
| Add | 72 |
| Delete | 36 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 108 |