**KELLER BENVENUTTI KIM LLP**
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:    (415) 496-6723

Attorneys for Defendants Touchstone Pistachio Company, LLC, ACAP Farms, LLC, ACDF, LLC, Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC, Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC, Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, et al.,<br><br>Defendants.<br><br>Affects All Cases. | Case No. 1:24-cv-01102-KES-SAB<br><br>**MARICOPA DEFENDANTS' REPLY IN SUPPORT OF MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESSES**<br><br><u>Hearing:</u><br>Judge:  Hon. Kirk E. Sherriff<br>Date:   March 31, 2025<br>Time:   1:30 p.m.<br>Crtrm:  Robert E. Coyle U.S. Courthouse<br>              2500 Tulare Street<br>              Courtroom 6, 7th Floor<br>              Fresno, CA 93721 |

Defendants Touchstone Pistachio Company, LLC, ACAP Farms, LLC, ACDF, LLC,

Adams Grantor Land, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C&A Farms, LLC,

Cantua Orchards, LLC, Cooper Avenue Investments, LLC, Favier Ranch, LLC, FFGT Farms, LLC,

Gradon Farms, LLC, Grantland Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC,

Manning Avenue Pistachios, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, Sageberry Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments, LLC, and Winston Farms, LLC (collectively, the "Maricopa Defendants") hereby reply to: (1) *Plaintiffs' Joint Opposition to Maricopa Defendants' Motion to Implement Procedures Coordinating Receivership Sale Processes* (the "Metropolitan Plaintiffs' Opposition") filed in the Metropolitan Cases [Dkt. No. 125] by plaintiffs Brighthouse Life Insurance Company, Metropolitan Life Insurance Company, and MetLife Real estate Lending, LLC (the "Metropolitan Plaintiffs"), (2) *Receiver's Opposition to Maricopa Defendants' Motion to Implement Procedures Coordinating Receivership Sale Processes* (the "Metropolitan Receiver's Opposition" and together with the Metropolitan Plaintiffs' Opposition, collectively, the "Metropolitan Oppositions") filed in the Metropolitan Cases [Dkt. No. 126] by receiver Phillip Christensen (the "Metropolitan Receiver" and together with the Metropolitan Plaintiffs, collectively, the "Metropolitan Parties"), (3) *Plaintiff's Limited Objection to Motion to Implement Procedures Coordinating Receivership Sale Processes* filed in the Prudential Case [Dkt. No. 185] by plaintiffs The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC (the "Prudential Plaintiffs"), and (4) *Receiver Lance Miller's Limited Objection to Defendants' Motion to Implement Procedures Coordinating Receivership Sale Process* filed in the Prudential Case [Dkt. No. 183] by receiver Lance Miller (the "Prudential Receiver" and together with the Prudential Plaintiffs, the "Prudential Parties", and the Prudential Parties together with the Metropolitan Parties, collectively, the "Objecting Parties"), in support of the Maricopa Defendants' *Motion to Implement Procedures Coordinating Receivership Sale Processes* [Dkt. No. 173] (the "Motion"),[1] as follows:

## I.   Preliminary Statement

The Maricopa Defendants do not seek to delay the Receivers' sale processes. Nor do they propose the Proposed Sale Coordination Procedures solely in the hopes of obtaining an enterprise

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

sale – even if the Maricopa Defendants do believe that such a sale could maximize value. Moreover, particularly given the Objecting Parties' repeated refrain that the Receivers are already speaking with each other on a weekly or even daily basis, it is not credible that instituting a regular weekly meeting or the other limited safeguards in the Proposed Sale Coordination Procedures would impose the type of delay or burden that the Metropolitan Parties would have this Court believe will result.

Indeed, the Proposed Sale Coordination Procedures are designed to save time and foster efficiency. If the Receivers are regularly coordinating with each other – as they claim, and as the Maricopa Defendants believe – then adding structure to that coordination, including opportunities for parties to raise concerns in advance, well before a sale agreement has been reached and is before the Court, will only ensure that the Receivers can avoid unintended consequences of piecemeal sales while avoiding unnecessary delay at the end of the marketing processes.

Not only will the Proposed Sale Coordination Procedures help the parties raise and address concerns regarding the interrelatedness of one property for sale on the value of other properties in other receivership estates, but also the implementation of the procedures will send a clear message to the market that bids for properties across receivership estates are welcome, notwithstanding the fact that there are multiple Receivers selling the properties at issue. This includes coordinated noticing that informs potential purchasers that properties are being marketed in other receiverships that may be bid on as well.

## II.    The Proposed Procedures Are Within the Court's Authority

In the Metropolitan Receiver's Opposition, the Metropolitan Receiver argues that this Court does not have authority to implement the proposed procedures of the Motion, and that the Motion conflicts with the Metropolitan Receiver's fiduciary duties. *See* Metropolitan Receiver's Opposition, at 6-9. The Metropolitan Receiver acknowledges the Court's broad discretion in supervising receiverships but argues that the Court's power does not reach claims that are independent of the receivership. *See id.*, at 6-7. However, here, we have a unique situation in

which there are multiple, separate receiverships administered in front of the same Court, each dealing with real property that is connected to a single enterprise, and in many instances, adjacent to one another or otherwise connected through shared water rights or subject to multiple and, in some instances, competing secured claims. Although the Metropolitan Cases involve a separate receivership estate from that in the Prudential Case, each is in front of this Court, and the purpose of each "is to promote orderly and efficient administration of the estate by the [Court] for the benefit of creditors." *See S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).

Further, the real property was developed as a single enterprise with various rights, including water, vital to farming operations, shared among the parcels without consideration of any single parcel's ability to operate independently. *See* Metropolitan Cases, Declaration of Jason Hollrah, Dkt. No. 118, at ¶¶ 9-11. Therefore, the sale of one individual parcel could lead to another, separate parcel losing its access to water or other essential utilities. No one disputes this. Indeed, the Metropolitan Parties acknowledge as much in the Metropolitan Oppositions, noting that seven parcels with impaired rights are being marketed along with property from the Prudential Case. *See id.*, at 10; Metropolitan Plaintiffs' Opposition, at 3-4. Without coordination, considering the background of the various estates and the interrelationships among the parcels of real property, there is a risk that sales by one receiver will jeopardize the other's orderly and efficient administration of the estate. The proposed coordination will enable potential buyers to have greater access to information and purchase opportunities that otherwise would not exist in the current vacuum of the separate sales processes.

The procedures proposed by the Maricopa Defendants in the Motion do not call for the respective Receivers to abandon their fiduciary duties to their respective estates. To the contrary, the procedures are intended to protect the respective estates against unintended negative consequences that a sale by one Receiver may have on the value of another receivership estate's assets caused by the interconnectivity of the real property. Each Receiver is still expected to zealously advocate for maximizing the value of their respective estates, and the proposed

- 4 - REPLY IN SUPPORT OF MOTION TO IMPLEMENT PROCEDURES COORDINATING RECEIVERSHIP SALE PROCESSES

coordinated efforts are designed to facilitate this goal. The procedures merely call for coordination to maximize returns and the opportunity to raise and address concerns. To the extent that a dispute arises as to whose interests should prevail, it will be for the Court to determine the most efficient and equitable path forward.

### III. The Proposed Procedures Will Benefit the Sale Processes Even If There Ultimately Is No Interest in a Global Sale

The Metropolitan Parties raise the strawman that the Maricopa Defendants are fixated on a "unicorn" global sale of the enterprise. Not true. Although the Maricopa Defendants do see potential in maximizing value to the respective estates through a potential global sale of the enterprise, the proposed procedures are mainly intended to address piecemeal sales that negatively impact the value of other real property. The proposed procedures seek to ensure communication among the Receivers and the Maricopa Defendants, to explore whether the sale of real property can be maximized through coordination, including through the combination of complementary parcels of land from the respective estates in a sale. The Metropolitan Parties repeatedly state that they are already in regular communication with the parties in the Prudential Case; the proposed procedures would serve as a safety mechanism, by formalizing those communications and ensuring that the impact of sales on real property in other receivership estates can be addressed early.

As the Hollrah Declaration states, and appears to be undisputed, certain properties share water, electric meters, and other infrastructure with properties in other receivership estates. *See* Metropolitan Cases, Declaration of Jason Hollrah, Dkt. No. 118, at ¶ 8. Coordinating on the sale processes of those properties will ensure that parties can address any interrelationship between properties across receivership estates. And in tacit acknowledgement that some coordinated sale efforts are beneficial, as noted above, the Metropolitan Receiver is coordinating marketing efforts with the Prudential Receiver with respect to at least seven properties, as well as certain water rights.

It thus stands to reason that all of the properties would benefit from the same coordination to which the Receivers have already agreed with respect to these seven properties.

Finally, in addition to allowing the parties a clear path to raise issues with respect to the interrelatedness of properties in the sale processes, the Proposed Sale Coordination Procedures will benefit those sale processes and maximize value by clearly communicating to the market that they can bid on properties across multiple receivership estates, and that procedures are in place to consider such bids. Absent that explicit message, the market will only see that different Receivers are engaging in distinct and separate sale processes.

### IV. Delays Related to the Proposed Procedures Would Be Minimal and Ensure That Issues Are Raised and Addressed in Advance

Each of the Metropolitan Oppositions argues that the proposed procedures in the Motion will cause delays and burden the receivership. *See* Metropolitan Plaintiffs' Opposition, at 7-8; Metropolitan Receiver's Opposition, at 10-11. But there is little burden imposed by the proposed procedures, given that both of the Metropolitan Oppositions tout the Metropolitan Receiver's ongoing communications with the other Receivers. *See* Metropolitan Plaintiffs' Opposition, at 3; Metropolitan Receiver's Opposition, at 2. Adding structure (in the form of weekly status updates and information sharing) and including the Maricopa Defendants should not add substantial burden, and none is identified.

Nor should the Proposed Sale Coordination Procedures cause material delay. It is difficult to see how weekly status meetings would cause delay when the Objecting Parties repeatedly state that they are all communicating with each other on a weekly or even daily basis. The Metropolitan Receiver argues that the proposed procedures would delay each sale by about 20 business days (or 30 days) based on the notice requirements. *See* Metropolitan Receiver's Opposition, at 10-11; Motion, at 12-13. This math is fantastical. The Metropolitan Receiver seems to reach this conclusion by multiplying the number of "Notice Actions" (4) by the sum of the number of days in the "Objection Period" (2) and the "Discussion Period" (3). *See* Motion, at 12-13. However, the

extra three-day Discussion Period is only applicable in the event of an objection by a party. *See id.* Further, the four types of Notice Actions that are subject to the Objection Period and the Discussion Period – (i) the listing of any real property for sale, (ii) the relisting of any real property at a reduced price, (iii) the selection of any bid, including stalking horse bid, and entry into contract, or (iv) the consummation of any sale transaction – would take place over the course of the whole sale process — from the time of listing to the consummation of a sale — if they happen at all. *See id.*

In reality, to the extent there is an issue with a proposed sale of any property, such an issue would only need to be raised once, at one of the milestones that serve as Notice Actions. In other words, the Proposed Sale Coordination Procedures would only extend out the sale of any property by several business days at most. Moreover, the opportunity for parties to discuss during the Objection Period and Discussion Period could very well obviate the need to litigate disputes before this Court at the end of the sale process, when the sales are before the Court for approval, and any concomitant delay. It is essentially a pre-emptive meet and confer that may result in the elimination of a motion or objection to a proposed sale, which ultimately the Court will be called upon to approve. The Maricopa Defendants note that they gave the Objecting Parties an opportunity to meet and confer and comment on the Proposed Sale Coordination Procedures. *See* Metropolitan Cases, Declaration of Jane Kim, Dkt. No. 118, at ¶¶ 7-8. To the extent that the concern was around the length or frequency of the periods to confer after a Notice Action, the Maricopa Defendants would have considered any such comments.

The Maricopa Defendants submit that the procedures proposed in the Motion will facilitate the free flow of information among all of the relevant parties and enable the respective Receivers to move more efficiently and effectively through the sale process and potentially maximize value, by airing out concerns in real time and avoiding unnecessary disputes at the end of a sale process.

## **CONCLUSION**

For the reasons stated above, the Maricopa Defendants respectfully ask that the Court grant the Motion.

Respectfully submitted,

KELLER BENVENUTTI KIM LLP

By: /s/ *Jane Kim*
Jane Kim
Attorneys for the Maricopa Defendants

CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing, including the following:

- **American Equity Investment Life Insurance Company**
  adeleest@marshackhays.com;
- **Mark Anishchenko**
  markanishchenko@dwt.com, rosalindcook@dwt.com;
- **Yelena E. Archiyan, PHV**
  yelena.archiyan@katten.com;
- **Terence G. Banich**
  terence.banich@katten.com, courtalertlax@katten.com;
- **Robert Cullen Barton**
  rbarton@mwe.com, acorona@mwe.com, mnadel@mwe.com;
- **Daryl Stuart Bartow**
  DSBartow@duanemorris.com, CMWinter@duanemorris.com, SLei@duanemorris.com, Ajhanna@duanemorris.com, PARyan@duanemorris.com;
- **Michael Barrett Brown**
  michael.brown@stoel.com, docketclerk@stoel.com, rebecca.lerma@stoel.com, jill.keehnen@stoel.com, ha.nguyen@stoel.com;
- **Michaela C. Crocker, PHV**
  michaela.crocker@katten.com;
- **Aaron E. De Leest**
  adeleest@marshackhays.com, alinares@ecf.courtdrive.com, adeleest@ecf.courtdrive.com;
- **Jason J DeJonker, PHV**
  jdejonker@seyfarth.com, lcreasap@seyfarth.com, CHIDocketMail@seyfarth.com, 6505178420@filings.docketbird.com;
- **Brandon K. Franklin**
  brandon.franklin@clydeco.us, 6663841420@filings.docketbird.com, krodrigues@seyfarth.com;
- **John D. Freed**
  jakefreed@dwt.com, kimberlysimmonsgreene@dwt.com;
- **Mary H. Haas**
  maryhaas@dwt.com, Lit-Docket@dwt.com;
- **Gabriel P. Herrera**
  gherrera@kmtg.com, tcorbett@kmtg.com, bxiong@kmtg.com;
- **Michael Robert Johnson, PHV**
  mjohnson@rqn.com, asanchez@rqn.com, docket@rqn.com;
- **Jane Kim**
  jkim@kbkllp.com;
- **Matthew Ladew**
  mattladew@dwt.com, mercedesmendoza@dwt.com;
- **Nicholas R. Marcus, PHV**
  nmarcus@seyfarth.com, lcreasap@seyfarth.com, ChiDocketMail@seyfarth.com;
- **John E. Mitchell, PHV**
  john.mitchell@katten.com;
- **Michael S. Nadel, PHV**
  mnadel@mwe.com;

- 1 -   CERTIFICATE OF SERVICE

- **Michael Ryan Pinkston**
  rpinkston@seyfarth.com, jmcdermott@seyfarth.com, 5314522420@filings.docketbird.com, sfocalendar@seyfarth.com;
- **Michelle Rosales**
  michelle.rosales@stoel.com;
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com, borozco@wtjlaw.com;
- **Joseph M. VanLeuven, PHV**
  joevanleuven@dwt.com;
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com, sgomez@wtjlaw.com, abroome@wtjlaw.com;
- **Thomas Andrew Woods**
  thomas.woods@stoel.com, docketclerk@stoel.com, dalila.tobin@stoel.com, 1261239420@filings.docketbird.com, rebecca.lerma@stoel.com;

By: /s/ *Jane Kim*
Jane Kim