DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
grimshaw@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Phone: (949) 333-7777 / Fax: (949) 333-7778

IRA D. KHARASCH (CA Bar No. 109084)
RICHARD M. PACHULSKI (CA Bar No. 90073)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Phone: (310) 277-6910 Fax: (310) 201-0760
E-Mail: rpachulski@pszjlaw.com
       ikharasch@pszjlaw.com

Attorneys for Interested Party
AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA (FRESNO)

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PGIM REAL ESTATE FINANCE, LLC,<br><br>                   Plaintiff,<br><br>          v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE,<br><br>                   Defendant. | Case No. 1:24-cv-01102-KES-SAB<br><br>**RESPONSE TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR RECEIVERSHIP PROPERTIES; AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date:      May 5, 2025<br>Time:      1:30 p.m.<br>Crtrm.:    6<br>           2500 Tulare Street<br>           Fresno, CA 93721 |

4922-0253-0358.1 10875.00002

RESPONSE TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND
AUCTION PROCEDURES FOR RECEIVERSHIP PROPERTIES

1    American Equity Investment Life Insurance Company ("American Equity") files this

2 response in connection with the *Receiver's Motion for an Order Establishing Marketing, Bid, and*

3 *Auction Procedures for Receivership Properties* [DK. No. 190] ("Motion").

4    American Equity holds recorded interests on title that include liens on property owned

5 and/or operated by defendants C & A Farms, LLC, Cantua Orchards, LLC, Gradon Farms, LLC,

6 Grantor Real Estate Investments, LLC, Lincoln Grantor Farms, LLC, and Maricopa Orchards,

7 LLC (the "American Equity Defendant Borrowers"). The American Equity Defendant Borrowers

8 are included within the Maricopa Defendants.

9    American Equity's collateral is not part of the Prudential Case and is only at issue in the

10 case entitled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC, et al.*, Case

11 No. 1:24-cv-01455-KES-SAB (the "FAMC Case"). However, as set forth in American Equity's

12 Renewed Opposition to Receiver's Motion for an Order Establishing, Marketing, Bid, and Auction

13 Procedures for Broker-Marketed Properties filed in the FAMC Case [DK. No. 74], which is

14 attached as Exhibit "1" to the request for judicial notice appended hereto and incorporated herein

15 by this reference, there are important relationships between the borrower properties among all the

16 receiverships that significantly impact sale issues, and should be considered by the Court.

17

18 Dated:  April 14, 2025                    MARSHACK HAYS WOOD LLP

19

20                                          By    */s/ Aaron E. de Leest*

21                                                 MATTHEW W. GRIMSHAW
                                                   DAVID A. WOOD
22                                                 AARON E. DE LEEST
                                                   Attorneys for AMERICAN EQUITY
23                                                 INVESTMENT LIFE INSURANCE COMPANY

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

American Equity Investment Life Insurance Company ("American Equity"), hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the following:

1. *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC, et al*., Case No. 1:24-cv-01455-KES-SAB (the "FAMC Case"). American Equity's Renewed Opposition to Receiver's Motion for an Order Establishing, Marketing, Bid, and Auction Procedures for Broker-Marketed Properties filed in the *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC, et al*., Case No. 1:24-cv-01455-KES-SAB on April 14, 2025 [DK. No. 74], a true and correct copy of which is attached as Exhibit "1" hereto and incorporated herein by this reference.

Dated: April 14, 2025                   MARSHACK HAYS WOOD LLP


By    /s/ Aaron E. de Leest
      MATTHEW W. GRIMSHAW
      DAVID A. WOOD
      AARON E. DE LEEST
      Attorneys for AMERICAN EQUITY
      INVESTMENT LIFE INSURANCE COMPANY

RESPONSE TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR RECEIVERSHIP PROPERTIES

**EXHIBIT 1**

1   MICHAEL R. FARRELL (BAR NO. 173831)
    MATTHEW D. PHAM (BAR NO. 287704)
2   ALLEN MATKINS LECK GAMBLE
        MALLORY & NATSIS LLP
3   865 South Figueroa Street, Suite 2800
    Los Angeles, California 90017-2543
4   Phone: (213) 622-5555
    Fax: (213) 620-8816
5   E-Mail: mfarrell@allenmatkins.com
            mpham@allenmatkins.com
6
    RICHARD M. PACHULSKI (BAR NO. 90073)
7   IRA D. KHARASCH (BAR NO. 109084)
    PACHULSKI STANG ZIEHL & JONES LLP
8   10100 Santa Monica Boulevard, 13th Floor
    Los Angeles, California 90067-4003
9   Phone: (310) 277-6910
    Fax: (310) 201-0760
10  E-Mail: rpachulski@pszjlaw.com
            ikharasch@pszjlaw.com
11
    Attorneys for Interested Party
12  AMERICAN EQUITY INVESTMENT LIFE INSURANCE
    COMPANY
13

14                UNITED STATES DISTRICT COURT

15              EASTERN DISTRICT OF CALIFORNIA

16                    FRESNO DIVISION

17  FEDERAL AGRICULTURAL MORTGAGE        Case No. 1:24-cv-01455-KES-SAB
    CORPORATION,
18                                       **AMERICAN EQUITY INVESTMENT LIFE
                Plaintiff,               INSURANCE COMPANY'S RENEWED
19                                       OPPOSITION TO RECEIVER'S MOTION
            vs.                          FOR AN ORDER ESTABLISHING
20                                       MARKETING, BID, AND AUCTION
    ASSEMI BROTHERS, LLC, et al.,        PROCEDURES FOR BROKER-
21                                       MARKETED PROPERTIES**
                Defendants.
22                                       Date:  April 21, 2025
                                         Time:  1:30 p.m.
23                                       Place: 2500 Tulare Street
                                                7th Floor, Courtroom 6
24                                                Fresno, CA 93721
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................................ 1

II.   ARGUMENT ....................................................................................................................... 3

    A.    The Receiver did not attempt to meet and confer with American Equity ...................................................................................................................... 3

    B.    The proposed sale procedures cannot be approved in their current form .......................................................................................................................... 4

    C.    The Receiver cannot sell any properties free and clear of American Equity's liens if those liens are not paid in full ......................................................... 9

    D.    The sale process is inherently flawed given the limited control of the receivers to sell in packages properties that overlap multiple receiverships and to do so on a timetable that avoids flooding the market to pay off senior lienholders ..................................................................... 10

III.  CONCLUSION .................................................................................................................. 11

EXHIBIT 1, PAGE 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canada Life Assurance Co. v. LaPeter*,
 563 F.3d 837 (9th Cir. 2009) ............................................................................................. 3

*Pennant Mgmt., Inc. v. First Farmers Fin., LLC*,
 Case No. 14-cv-7581, 2015 U.S. Dist. LEXIS 96652, 2015 WL 4511337
 (N.D. Ill. July 24, 2015) ...................................................................................................... 5

**Other Authorities**

2 Ralph Ewing Clark, Treatise on the Law and Practice of Receivers § 500(b)
 (3d ed. 1959) ........................................................................................................................ 5

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4907-7309-1116.7

(ii)

EXHIBIT 1, PAGE 6

1       Interested party American Equity Investment Life Insurance Company ("American

2 Equity") hereby submits this renewed opposition (the "Renewed Opposition" or "Opposition") to

3 the *Notice of Motion and Unopposed Motion of Receiver Lance Miller for an Order Establishing*

4 *Marketing, Bid, and Auction Procedures for Broker-Marketed Properties* (the "Sale Procedures

5 Motion"), ECF No. 50, filed by the receiver Lance Miller (the "Receiver"). In support of the

6 Opposition, American Equity represents as follows:

7 **I.**      **PRELIMINARY STATEMENT**

8       Previously, the Receiver concurrently filed the Sale Procedures Motion, the motion to

9 employ Capstone Capital Markets LLC ("Capstone") as his proposed investment banker, and the

10 motion to employ Pearson Realty ("Pearson") as his proposed real estate broker (collectively, the

11 "Motions"), filing each on an ex parte basis, without giving notice to American Equity or other

12 junior lienholders.

13       American Equity submitted its March 3, 2025, omnibus opposition to the Motions (the

14 "Original Opposition"), ECF No. 56, because it was concerned that the Receiver was

15 (1) attempting to strip American Equity's junior liens in a wholly impermissible, novel way on an

16 emergency basis without notice and (2) seeking approval of deeply flawed sale procedures

17 proposed in the Sale Procedures Motion (the "Sale Procedures"), again on an expedited basis

18 without notice. The Court then issued a minute order (the "Minute Order"), ECF No. 57,

19 continuing the hearing on the Motions, and requiring the Receiver to, among other things, meet

20 and confer with American Equity concerning its objections.

21       Contrary to the Court's Minute Order, the Receiver failed to contact American Equity to

22 initiate meet-and-confer discussions. The Receiver's only actions in response to the Minute Order

23 were to file two declarations of counsel, ECF Nos. 62, 64, focused on their efforts to serve the

24 Motions on all interested parties, and adding that the Motions were not requesting authority to sell

25 assets free and clear of liens. The Receiver did not, in any way, address American Equity's

26 objections to the Sale Procedures, nor did he submit revised motion papers to propose more clear

27 and coherent procedures—despite having even more time to do so after the Receiver requested,

28

1  and American Equity agreed, to further push out the hearing on the Sale Procedures Motion by

2  stipulation approved by the Court.

3      The Receiver's disregard of the Court's order that he meet and confer with American

4  Equity is particularly troubling in that it is consistent with his overall approach to the Sale

5  Procedures, which is to cater solely to the interests of plaintiff Federal Agricultural Mortgage

6  Corporation ("Farmer Mac") to the detriment of junior lienholders like American Equity. As

7  discussed below, the Receiver proposes, among other things, to give Farmer Mac exclusive

8  consultation rights throughout the sale process, and to strip junior lienholders of their interests on

9  an abbreviated briefing schedule. As the Court well knows (but perhaps the Receiver requires

10  reminding), the Receiver's mandate is to protect the interests of all creditors of the receivership

11  estate in its assets, not just the interest of the creditor that nominated the Receiver for appointment.

12  The Receiver's conduct suggests a belief that the Court will rubber stamp the Receiver's/Farmer

13  Mac's proposals without consideration of other interests. The Receiver should be disabused of any

14  such belief.

15      As set forth below and in the accompanying declaration of Thaddeus Tracy (the "Tracy

16  Declaration"), the objections of American Equity set forth herein are magnified given the

17  inherently flawed sale process of four different receiverships with three different receivers having

18  fiduciary duties to different entities, and who each control only the collateral of the specific

19  plaintiff and its junior lienholders. In contrast, properties controlled by different receivers should

20  be packaged together for sale given the interrelationships between the properties, which would

21  maximize value for all stakeholders and avoid each receiver flooding the market in order to

22  maximize the return for only the plaintiff that put the receiver in place. To make matters more

23  complicated, some lenders, including American Equity and Modern Woodsmen of America

24  ("MWA"), have collateral in borrower properties that are not part of any receivership. That is why

25  chapter 11 cases by the borrower entities would more likely maximize property sale proceeds

26  when the assets are controlled by a single chief restructuring officer (a "CRO").

27      Clearly, this situation does not promote the policy of federal equity receiverships when

28  multiple receivers are given extensive power to sell assets where there is no imminent danger of

1   the properties being lost, there has been no fraudulent conduct alleged, and the structure of the

2   multiple receiverships is, by its nature, designed to produce inadequate sale prices to the junior

3   lienholders. *See Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009).

4       Regardless of the apparent favoritism, the Receiver's failure to comply with the Minute

5   Order by at least attempting to meet and confer with American Equity, much less proposing

6   reasonable modifications to the Sale Procedures to address American Equity's objections, warrants

7   denial of the Sale Procedures Motion without a hearing.[1]

8       If the Court does not reject the Sale Procedures Motion outright based on the Receiver's

9   failure to comply with the Minute Order, American Equity hereby renews and supplements its

10  objections as to those unmodified Sale Procedures, as set forth herein.

11  **II.   ARGUMENT**

12      **A.     The Receiver did not attempt to meet and confer with American Equity.**

13      This Court's Minute Order provides, "Prior to the opposition deadline, receiver shall meet

14  and confer with Rooster Capital IV, LLC, and American Equity Investment Life Insurance

15  Company, and with any other entity that informs the Receiver of its intended opposition to the

16  motions, to attempt to reach a potential resolution to any objections by such entities." In other

17  words, the Court plainly directed the Receiver to initiate a meet-and-confer with American Equity

18  prior to the former March 24 opposition deadline.

19      Yet, to date, the Receiver has made no efforts to meet and confer with American Equity.

20  Indeed, following the entry of the Minute Order on March 6, 2025, the only substantive

21  communication received by American Equity's counsel from the Receiver's counsel has been an

22  email sent by the latter on March 21, 2025, regarding the Capstone sale process. The email made

23  no mention of the sale and marketing process proposed to be run by Pearson or the proposed Sale

24

---

25  [1]   In light of the Receiver's troubling conduct in this loan enforcement receivership, where the
26  Court's jurisdiction is based on diversity as opposed to a more typical federal equity
    receivership sought by a federal agency to protect the interests of defrauded consumers,
27  investors, or other victims, American Equity reserves the right to seek discharge of the
    Receiver or modification of the appointment order (ECF No. 29).

28

1   Procedures relating to the receivership property referred to as the "Broker Properties." In light of

2   the laundry list of objections to the Sale Procedures raised in the Original Opposition, American

3   Equity expected the Receiver to say or do something in response thereto, whether as part of a

4   meet-and-confer process or a supplemental filing, but the Receiver's inaction is simply confusing.

5          **B.      The proposed sale procedures cannot be approved in their current form.**

6          Given the Receiver's inaction, American Equity herein reasserts, and further supplements

7   where appropriate, the objections raised in the Original Opposition relating to the Sale Procedures.

8          The Receiver's proposed Sale Procedures are unclear, confusing, and, at times, internally

9   inconsistent. The Sale Procedures appear to be haphazardly cobbled together, calling into question

10  whether the Receiver has thoroughly thought through the potential sale process and its attendant

11  issues or whether he is merely attempting to jam through a process that benefits Farmer Mac and

12  no other stakeholders, such as junior lienholders. As the Sale Procedures clearly do not provide for

13  a fair and reasonable sale process, they should not be approved in their current form. Nevertheless,

14  to move this process forward, American Equity is proposing revisions to the Sale Procedures,

15  reflected in the redlined proposed order attached hereto as **Exhibit 1** (the "Redlined Order").

16         American Equity now highlights the following issues with various aspects of the

17  Receiver's proposed procedures.

18         Time for Marketing. The Receiver's Sale Procedures suggest that a Broker Property could

19  potentially only be marketed for four weeks before an "Auction" or "Sale Hearing" to consider a

20  proposed sale of that Broker Property takes place. *See* Proposed Order Granting Sale Procs. Mot.

21  ¶¶ 1(b), 2, ECF No. 50-2 ("The Broker will list the sale in the Fresno Bee or other local newspaper

22  for four weeks from the date of entry of this Order (the 'Publication Period') ….") ("[A]n auction

23  will be held by the Receiver or his designee in open Court at the hearing date to be determined by

24  the Receiver and noticed, which shall not be before the conclusion of the Publication Period ….").

25  The Receiver, however, has presented no evidence to suggest that a one-time marketing period of

26  a mere four weeks is reasonable or adequate in obtaining the highest and best price for any Broker

27  Property sought to be sold. Unless he can offer some compelling reason why the marketing period

28  has to be so limited, the Receiver should be required to market the Broker Properties for a longer

period, which will potentially allow for higher and better offers to come in. Simply put, a four-week marketing process is woefully insufficient. *See* Tracy Decl. ¶ 10.

This issue is particularly important to junior lienholders like American Equity, whose interests are in having a marketing process that maximizes the likelihood of obtaining the highest possible price so that all lienholders are paid in full. The interests of senior lienholders like Farmer Mac, who will receive the "first dollars" of net sale proceeds, are limited to obtaining a price sufficient to satisfy their lien. Court-appointed receivers are obligated to protect the interests of all creditors and interested parties, not just senior lienholders, in the context of property sales. *See Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, Case No. 14-cv-7581, 2015 U.S. Dist. LEXIS 96652, at *14, 2015 WL 4511337, at *5 (N.D. Ill. July 24, 2015) ("The property should not be sold free and clear of liens unless it is made to appear that there is a reasonable prospect that a surplus will be left for general creditors or, in other words, that a substantial equity is to be preserved." (quoting 2 Ralph Ewing Clark, Treatise on the Law and Practice of Receivers § 500(b) (3d ed. 1959))).

American Equity proposes in the Redlined Order that a marketing period (which includes more than the four-week "Publication Period") be required for each proposed sale, not just at the outset of the process. For each proposed sale, the Receiver should be required to submit evidence concerning the appropriate length of each marketing period, along with a proposed schedule for the issuance of the "Sale Notice," the setting of the deadline for submitting "Qualified Bids," and the proposed date of an Auction/Sale Hearing, and modify the proposed order accordingly. Once the Receiver has proposed such a period and schedule, American Equity should have the right to object thereto if it appears that the Receiver's proposal is unreasonable, with the Court holding a later hearing to decide this issue if no resolution is reached by the parties.

Timing of Service of Sale Notice. It is unclear when in the process a Sale Notice is given. One part of the Sale Procedures provides that the Sale Notice will set forth when interested buyers must submit their Qualified Bids, suggesting that the Sale Notice is given *before* the deadline to submit Qualified Bids (and presumably after the Receiver has secured a stalking horse bid). *See* Proposed Order Granting Sale Procs. Mot. ¶¶ 1(c), 3 (noting that "deadline to submit bids for

1   Auction" is "set forth in the Sale Notice") ("To submit a qualified bid, a prospective purchaser

2   must submit its bid in writing by a date noticed by the Receiver in the applicable Sale

3   Notice ...."). Yet, in a different part, the Sale Procedures require the Receiver to serve the Sale

4   Notice on, among others, those "parties who have submitted a Qualified Bid," suggesting that the

5   Sale Notice is given *after* the deadline to submit Qualified Bids. *See id.* ¶ 6. This internal

6   inconsistency raises additional questions as to what the Sale Notice is intended to give notice of

7   and for whom the Sale Notice is intended. In any case, the proposed contents of and procedures

8   surrounding the Sale Notice will need to be modified, the extent of which will depend on how the

9   Receiver resolves this inconsistency.

10      In the Redlined Order, American Equity removes the conflicting reference to the Sale

11  Notice being served on those who submitted a Qualified Bid and provides clarity on the timing

12  and required recipients of such notice.

13      <u>Time to Submit Qualified Bids</u>. The Sale Procedures do not provide any direction for when

14  interested buyers must submit Qualified Bids to the Receiver, giving him significant latitude in

15  setting that deadline. However, at a minimum, the deadline to submit Qualified Bids should not

16  occur until a date after the Receiver's fourth weekly notice has been published under 28 U.S.C.

17  § 2002—otherwise, any notice published after the deadline would effectively serve no purpose.

18  Qualified Bids should not be required until the expiration of the applicable publication notice in

19  order to get the full benefit of such notice. *See* Tracy Decl. ¶ 10.

20      Accordingly, in the Redlined Order, American Equity adds a provision requiring that the

21  submission deadline be set for a date after expiration of the applicable Publication Period.

22      <u>Parties Entitled to Receive Notice of and Object to Sale</u>. The Sale Procedures limit those

23  entitled to receive the Sale Notice to "the parties entitled to notice in this case and to parties who

24  have submitted a Qualified Bid." Proposed Order Granting Sale Procs. Mot. ¶ 6. But there is no

25  mention of giving notice to affected lienholders and others who hold an interest in the property

26  sought to be sold, which is improper, particularly if the Receiver is attempting to sell property free

27  and clear of all liens, claims, encumbrances, and other interests. Furthermore, despite giving

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1  "creditors" the right to "file objections to a proposed sale not less than 7 days before the Sale

2  Hearing," the Receiver does not propose to serve the Sale Notice on those creditors. *Id.*

3      On a similar note, the Sale Procedures should not limit those entitled to object to a

4  proposed sale to only "creditors," but any party with an interest in the property to be sold should

5  also be allowed to object to and be heard on the proposed sale.

6      In the Redlined Order, American Equity clarifies and expands the list of parties entitled to

7  receive a Sale Notice to ensure all creditors and interested parties have an opportunity to

8  participate in the process.

9      Time to Object to Sale. The Receiver's Sale Procedures propose to give parties only seven

10  days' notice of the deadline to object to a proposed sale. *See* Proposed Order Granting Sale Procs.

11  Mot. ¶ 6 (providing that Sale Notice would be served no less than fourteen days prior to the Sale

12  Hearing and requiring objections to be filed no less than seven days prior to the Sale Hearing).

13  Given the Receiver's already insufficient efforts to give appropriate notice of the Sale Procedures

14  Motion to interested parties, American Equity believes that the Sale Notice should be sent out on

15  regular notice as provided under the Local Rules with the requisite opportunity to object under

16  such rules.

17      In the Redlined Order, American Equity applies the notice and briefing timelines of

18  noticed motions under the Eastern District of California's Local Rule 230(b).

19      Amount of Overbids. Under the Sale Procedures, the Sale Notice will provide the amount

20  of the required initial overbid, as well as the increments for any subsequent overbids. *See*

21  Proposed Order Granting Sale Procs. Mot. ¶ 6. Yet, rather than providing a specific calculation for

22  the initial overbid, the Sale Procedures state, "The initial overbid amount must be enough to pay

23  the breakup fee, if any, plus a meaningful increase in value, taking account of any applicable

24  commissions, in the Receiver's discretion in consultation with Plaintiff." *Id.* As there is no

25  definition provided for the phrase "meaningful increase in value," the Sale Procedures give the

26  Receiver the right to arbitrarily set the initial overbid at any amount, including one that would

27  favor the stalking horse bidder and chill bidding. *See* Tracy Decl. ¶ 12.

28

1    In the Redlined Order, American Equity removes the concept of a "meaningful" increase

2    and simply requires that the initial overbid exceed the breakup fee and additional commission

3    amount.

4    <u>Consultation Rights</u>. The Sale Procedures give Farmer Mac certain "consultation" rights

5    with respect to various aspects of the sale process, including the form and content of a purchase

6    and sale agreement and the terms of any incentives to offer potential stalking horse bidders. *See,*

7    *e.g.*, Proposed Order Granting Sale Procs. Mot. ¶¶ 3(g), 4. Other affected lienholders, including

8    American Equity, should also be given the same consultation rights. The sale process will be

9    benefited by the Receiver not only consulting with Farmer Mac, but also with the junior

10   lienholders who have their own knowledge about the properties encumbered by their liens and

11   their own network of potential buyers, and who are also more vested in obtaining the best price

12   possible to pay off all lienholders, not just the senior liens. Tracy Decl. ¶ 11. There is no legitimate

13   reason for limiting such rights to only Farmer Mac as a receivership is not intended to only protect

14   the rights of the party who sought the receivership.

15   In the Redlined Order, American Equity adds language to ensure all other affected

16   lienholders are provided consultation rights.

17   <u>Free and Clear Relief</u>. As previously provided in the Original Opposition, any property

18   should be sold free and clear only to the extent that all junior lienholders are paid in full or provide

19   their consent to the sale. To the extent that the Receiver seeks free and clear relief that would

20   allow assets to be sold without paying junior lienholders in full without their consent, the Receiver

21   should be required to seek such relief through an additional, separate motion filed on regular

22   notice, with a hearing set at the same time as the Auction/Sale Hearing. Accordingly, the Sale

23   Procedures should omit any reference to selling property free and clear of liens.

24   In the Redlined Order, American Equity removes all such references.

25   <u>Discretion to Modify Sale Procedures</u>. Lastly, the Sale Procedures improperly give the

26   Receiver unfettered discretion to change the terms thereof. *See* Proposed Order Granting Sale

27   Procs. Mot. ¶¶ 5, 8 ("The Receiver may schedule, reschedule, continue, adjourn, extend or modify

28   any dates and deadlines or other terms relating to any provisions of these Sale Procedures in the

EXHIBIT 1, PAGE 14

1  Receiver's discretion, in consultation with Plaintiff, including the Auction or Sale Hearing.")

2  ("The Receiver may amend, modify, supplement, or change these Sale Procedures in the

3  Receiver's discretion, in consultation with Plaintiff, as necessary or appropriate to run this sale

4  process, with all terms ultimately being subject to Court approval at the conclusion of the Sale

5  Hearing."). While he should be afforded some flexibility in the sale process, the Receiver should

6  not be permitted to modify the Sale Procedures in a manner that allows him to disregard the

7  minimum requirements ultimately set by the Court or that is otherwise inconsistent with the goal

8  of maximizing value for the benefit of applicable stakeholders. Indeed, the Receiver's request to

9  have unfettered discretion to modify any of the Sale Procedures could chill the bidding, as

10  potential buyers like certainty of process before they invest their time and money in the diligence

11  process. Tracy Decl. ¶ 12.

12          In the Redlined Order, American Equity has consolidated the two paragraphs addressing

13  this issue and added language requiring appropriate consultation and notice.

14          **C.      The Receiver cannot sell any properties free and clear of American Equity's**

15                  **liens if those liens are not paid in full.**

16          Despite the Receiver dedicating a portion of the Sale Procedures Motion to setting forth his

17  legal argument for obtaining free and clear relief, *see* Mem. Supp. Sale Procs. Mot. 8:26–9:23, the

18  Receiver now suggests that he is not attempting to request free and clear relief as part of the Sale

19  Procedures Motion. More specifically, his counsel's subsequently filed declaration states, "The

20  Motions do not request authority to sell any assets free and clear or otherwise affect lien or

21  ownership status. The motions are the first step in the sale process – employing Capstone and

22  Pearson to market various properties and establishing the general guidelines for the marketing and

23  sale of Pearson-marketed properties." Crocker Decl. re Status of Service 2:19–22, ECF No. 62. If

24  that is the Receiver's current position, then any mention of "free and clear" should be removed

25  from any order entered on the Sale Procedures Motion.

26          As evidenced by the Original Opposition, the free and clear issue is a significant issue that

27  will likely be the subject of contentious motions practice (unless the Receiver is able to propose a

28  sale sufficient to pay all lienholders in full or he otherwise obtains their consent). Accordingly, as

argued above, any request by the Receiver for free and clear relief should be sought through an

additional motion heard on regular notice. Given that the Receiver substantially briefed the sale

free and clear issue in the Sale Procedures Motion, it is clear that the Receiver is already

contemplating a sale process that is not going to pay off in full the junior lienholders without their

consent. In light of this, American Equity believes this Court should be aware of the lack of legal

authority that a receiver has to bring on such a motion, and refers the Court to Section II.B of the

Original Opposition that extensively addresses this issue.

**D.     The sale process is inherently flawed given the limited control of the receivers to sell in packages properties that overlap multiple receiverships and to do so on a timetable that avoids flooding the market to pay off senior lienholders.**

As set forth in detail in paragraphs 13 to 18 of the Declaration of Thaddeus Tracy, the

property consultant for American Equity, in addition to the legal impediments to a free and clear

sale order, there are also factual impediments to such an order, in that the sale process is inherently

flawed given the limited control of each receiver to how the assets within the four receiverships

relate to each other in terms of how a sale package should be marketed and the timing for selling

such assets. The problem is magnified by the different fiduciary obligations each receiver has to

different creditors, which incentivizes each receiver to try to sell his property as soon as possible,

resulting in the flooding of an already slow market, which is what the parties are witnessing now

in the four different receiverships. As an example, the Copus Ranch, which consists of 1,033 acres

of open ground in the Wheeler Ridge Irrigation District, includes some parcels that are collateral

for MetLife and Prudential loans and some parcels that are collateral for Farmer Mac loans. Tracy

Decl. ¶ 15. In fact, within this ranch, the Farmer Mac collateral is adjacent to both the MetLife and

Prudential collateral. *Id.* Accordingly, prior to consenting to a proposed sale of the Farmer Mac

collateral, American Equity, as junior lienholder, will need to understand the extent to which that

adjacency impacts the utilization and value of the property, including whether there is any shared

infrastructure or services. *Id.* This analysis extends to whether there are solar options currently in

place or potentially available and that would be impacted by the sale of parcels to different buyers.

*Id.* If there were one single entity, such as a CRO of the chapter 11 debtors in possession that

EXHIBIT 1, PAGE 16

1  controlled all of the assets that are now the subject of multiple receiverships with multiple

2  receivers having different agendas, such CRO would be able to consider a sale of the Farmer Mac

3  collateral at the Copus Ranch and package that with adjacent parcels that are controlled today by

4  receivers nominated by Prudential and MetLife, and could also consider the best way to time all

5  the sales so as to avoid flooding the market and depressing the sale prices. *See id.* Instead, a CRO

6  would have fiduciary duties to all the creditors of all of the borrower entities. Failing to organize

7  the sale process in this way denies value for junior lienholders and the borrowers. The diversity of

8  interests that control the sale process today undermines the maximum property values that can be

9  achieved. The problem is magnified by the fact that some lenders, including American Equity and

10  MWA, have collateral against other borrower properties that are not part of any of the multiple

11  receiverships, thus further complicating the sale process. Again, a single CRO would control all of

12  the borrower entities, not just those that are presently under a receivership.

13        As previously noted, the purpose of a federal equity receivership is not furthered in the

14  situation we are facing today given the conflicting situation between the receiverships, the lack of

15  any fraud allegations against the borrowers, and the lack of distress of particular properties.

16  Though not an issue for this upcoming hearing, American Equity may be bringing a motion to

17  limit the power of the Receiver to only do that which is necessary to maintain the value of the

18  properties, but not to sell such properties, based on the reasons discussed above.

19  **III.    CONCLUSION**

20        The Receiver proposes to engage in a sale process that implicates the property rights of

21  nonparties in this action, such as American Equity. Yet, even if free and clear relief is no longer

22  being sought at this stage, the Receiver's Sale Procedures Motion is still plagued with a multitude

23  of deficiencies, ambiguities, and other issues relating to the Sale Procedures, which require the

24  Receiver to take a step back and reconsider his approach to selling receivership property.

25  American Equity believes that, in light of the above, the Sale Procedures Motion should be

26  dismissed without a hearing with the ability to file a new motion unless the Receiver is willing to

27  adopt American Equity's revised form of order. In no event should the Receiver have the ability to

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4907-7309-1116.7                                                    -11-

1  provide a different order in its reply papers, where American Equity will not have the ability to

2  respond.

3

4  Dated:  April 14, 2025                    ALLEN MATKINS LECK GAMBLE
                                                MALLORY & NATSIS LLP
5                                             MICHAEL R. FARRELL
                                              MATTHEW D. PHAM
6
                                              PACHULSKI STANG ZIEHL & JONES LLP
7                                             RICHARD M. PACHULSKI
                                              IRA D. KHARASCH
8

9                                             By:  _____/s/ Matthew D. Pham_____

10                                                 MATTHEW D. PHAM
                                                   Attorneys for Interested Party
11                                                 AMERICAN EQUITY INVESTMENT
                                                   LIFE INSURANCE COMPANY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1  MICHAEL R. FARRELL (BAR NO. 173831)
   MATTHEW D. PHAM (BAR NO. 287704)
2  ALLEN MATKINS LECK GAMBLE
       MALLORY & NATSIS LLP
3  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: mfarrell@allenmatkins.com
            mpham@allenmatkins.com
6
   RICHARD M. PACHULSKI (BAR NO. 90073)
7  IRA D. KHARASCH (BAR NO. 109084)
   PACHULSKI STANG ZIEHL & JONES LLP
8  10100 Santa Monica Boulevard, 13th Floor
   Los Angeles, California 90067-4003
9  Phone: (310) 277-6910
   Fax: (310) 201-0760
10 E-Mail: rpachulski@pszjlaw.com
            ikharasch@pszjlaw.com
11
   Attorneys for Interested Party
12 AMERICAN EQUITY INVESTMENT LIFE INSURANCE
   COMPANY
13

14                UNITED STATES DISTRICT COURT

15              EASTERN DISTRICT OF CALIFORNIA

16                     FRESNO DIVISION

17 FEDERAL AGRICULTURAL MORTGAGE         Case No. 1:24-cv-01455-KES-SAB
   CORPORATION,
18                                        **[PROPOSED] ORDER GRANTING**
                  Plaintiff,              **UNOPPOSED MOTION OF RECEIVER**
19                                        **LANCE MILLER FOR AN ORDER**
          vs.                             **ESTABLISHING MARKETING, BID, AND**
20                                        **AUCTION PROCEDURES FOR BROKER-**
   ASSEMI BROTHERS, LLC, et al.,          **MARKETED PROPERTIES**
21
                  Defendants.
22

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

4921-4647-3518.2

EXHIBIT 1 TO RENEWED OPP'N
Page 13

EXHIBIT 1, PAGE 20

1  The Court having held a hearing on the *Unopposed Motion of Receiver Lance Miller for an*

2  *Order Establishing Marketing, Bid, and Auction Procedures for Broker-Marketed Properties;*

3  *Memorandum of Points and Authorities* [Dkt. No. __] (the "**Motion**"), filed by Lance Miller, solely

4  in his capacity as Court-appointed receiver (the "**Receiver**") in the above-captioned case; having

5  read and considered the Motion and the evidence submitted therewith, and oppositions thereto and

6  replies in support thereof; having heard oral argument of the parties at the hearing; and good cause

7  appearing therefor; the Court finds that notice of the Motion was adequate under the circumstances

8  and that the below Sale Procedures meet all statutory requirements for sales of real property by

9  receivers within this district or, to the extent not met, all such requirements are hereby waived.

10  Accordingly, it is hereby

11  **ORDERED THAT:**

12  The Motion is granted and the Court hereby approves the below sale procedures (the "**Sale**

13  **Procedures**") with respect to the Broker Properties being marketed by Pearson Realty ("**Broker**"):

14  <u>**Sale Procedures**</u>

15  1.  <u>**Marketing:**</u>

16  a.  <u>**Listing Services**</u>. The Broker will publish the listing of the Broker

17  Properties on commercially reasonable sites and databases and take commercially reasonable

18  actions to show the Broker Properties.

19  b.  <u>**Publication**</u>/<u>**Timing of Sale**</u>. For each Auction or Sale Hearing (each

20  as defined below), Tthe Broker will list the sale in the Fresno Bee or other local newspaper for

21  no less than four weeks from the date of entry of this Order prior to the date of the Auction or Sale

22  Hearing (the "**Publication Period**") in compliance with 28 U.S.C. § 2002. Any Auction of or

23  Sale Hearing (each as defined below) regarding a Broker Property shall not occur before the

24  conclusion of the applicable Publication Period.  The publication of the sale shall include a

25  short description of the Broker Property(ies) and contact information for the Broker (phone

26  number and/or website link) and state that the sale is subject to Court approval. For each

27  proposed sale of an individual Broker Property or a package of multiple Broker Properties, the

28  Receiver shall meet and confer with those parties holding a lien against such Broker Property(ies)

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

EXHIBIT 1 TO RENEWED OPP'N
Page 14

4921-4647-3518.2                                    -2-

EXHIBIT 1, PAGE 21

1  concerning the appropriate length of the marketing period associated with the proposed sale, and a

2  proposed schedule for the issuance of the Sale Notice, the setting of the deadline for submitting

3  Qualified Bids, and the proposed date of the Auction or Sale Hearing (each as defined below). The

4  Court shall hold a hearing to determine the appropriate marketing period and schedule with respect

5  to a proposed sale if the parties are unable to reach a resolution thereon. ~~The date of the Auction or~~

6  ~~Sale Hearing may be undetermined at the time of publication.~~

7          c.    **Overbidding.** If the Broker receives a bid, the Broker will continue to

8  market the subject property for higher and better bids until the deadline to submit bids for

9  Auction, as set forth in the Sale Notice (defined below), has passed.

10         **2.    Auction and Sale Hearing.** If more than one bidder becomes qualified to bid for

11  the purchase of a Broker Property, an auction will be held by the Receiver or his designee in open

12  Court at the hearing date as set forth in the applicable Sale Notice (as defined

13  below)~~to be determined by the Receiver and noticed~~, which shall not be before the conclusion

14  of the applicable Publication Period (the "**Auction**" and "**Sale Hearing**").  At the conclusion of the

15  Auction, the Receiver will seek confirmation of the sale to the successful bidder and entry of an

16  order authorizing the sale free and clear of certain~~all~~ liens, claims, encumbrances and other

17  interests (each, an "Interest" and collectively, the "**Interests**"), unless otherwise set forth in the

18  applicable Purchase and Sale Agreement.  If only one bidder timely submits a qualified bid, then

19  the Receiver will request entry of an order at the Sale Hearing without holding an Auction.

20         **3.    Qualification to Bid.**  To submit a qualified bid, a prospective purchaser must

21  submit its bid in writing by a date noticed by the Receiver in the applicable Sale Notice and such

22  bid must clearly include the following terms or information (a "**Qualified Bid**" and a "**Qualified**

23  **Bidder**"):

24         a.    **Deposit.** A deposit of 10% of the purchase price which must be delivered

25  to the Receiver with the Qualified Bid (the "**Deposit**").  The Receiver will hold the Deposit in trust

26  or escrow pending approval of the Court.  The Deposit shall be nonrefundable unless:

27         i.    Another bidder is the successful bidder at Auction and the

28  Qualified Bidder does not wish to be deemed a backup bidder; or

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

EXHIBIT 1 TO RENEWED OPP'N
Page 15

4921-4647-3518.2

-3-

EXHIBIT 1, PAGE 22

1      ii.      The Court does not approve the sale through no fault of the

2  Qualified Bidder.

3          b.      **Contingencies.** As of the date of the Auction or Sale Hearing, there will be

4  no outstanding contingencies other than Court approval.

5          c.      **Subject to Overbid at Auction and Court Approval.** The sale is subject

6  to overbidding at Auction, if applicable, and Court approval.

7          d.      **No Liability of Receiver.** The Receiver shall have no liability under any

8  circumstances, and the Qualified Bidder's only recourse in the event of alleged breach by Receiver

9  is return of its Deposit.

10          e.      **Good Faith.** The Qualified Bidder must submit with its Qualified Bid

11  a declaration signed under penalty of perjury disclosing any connections such bidder has to

12  the Receiver, the Broker, any owner, borrower, or insider thereof, any creditor, or other interested

13  party, and that it has not, and will not, collude with any other potential purchasers or anyone

14  else with respect to the sale.

15          f.      **Ability to Close.** A Qualified Bid must be accompanied by evidence of

16  the bidder's financial ability to close unconditionally in form and substance satisfactory to the

17  Receiver in his discretion in consultation with Plaintiff.

18          g.      **Purchase and Sale Agreement.** The Qualified Bid shall include a signed

19  Purchase and Sale Agreement in form and content satisfactory to the Receiver in his discretion, in

20  consultation with Plaintiff, indicating a readiness to immediately enter escrow.  The Broker will

21  provide a form of Purchase and Sale Agreement, and the Qualified Bidder must provide a redline

22  with the Qualified Bid reflecting any revisions to such form.

23          h.      **Deadline to Submit Qualified Bid**. The deadline in each Sale Notice to

24  submit a Qualified Bid shall be set for a date after the expiration of the applicable Publication

25  Period.

26      4.      **Stalking Horse Terms.** The Receiver may, in in his discretion and in

27  consultation with Plaintiff, offer incentives to initial bidders who submit Qualified Bids as defined

28  above to serve as a "**Stalking Horse Bidder**," meaning that such bidder will submit an initial

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4921-4647-3518.2

-4-

**EXHIBIT 1 TO RENEWED OPP'N**
**Page 16**

EXHIBIT 1, PAGE 23

1   offer subject to overbid at Auction.  Such Stalking Horse bids may include the following term in

2   addition to other terms determined by the Receiver in the Receiver's discretion, in consultation

3   with Plaintiff:

4           a.      **Breakup Fee**. The Receiver may offer a breakup fee of up to 2% of the

5   initial bid amount to a Stalking Horse Bidder that will be paid if, and only if, an overbidder other

6   than the Stalking Horse Bidder is the successful purchaser of the Broker Property after

7   Auction, Court approval, and closing of such sale.

8       5.      **Dates and Deadlines**. The Receiver may, after notice is provided to the Noticed

9   Parties (as defined below) and such parties are given an opportunity to be heard by the Court,

10  schedule, reschedule, continue, adjourn, extend or modify any dates and deadlines or other

11  terms relating to any provisions of these Sale Procedures in the Receiver's discretion, in

12  consultation with Plaintiff, including the Auction or Sale Hearing, with all terms ultimately being

13  subject to Court approval.

14      6.      **Notice of Sale Hearing and Auction**. Any~~The~~ Auction or Sale Hearing will be

15  held after the conclusion of the Publication Period.  The Receiver will give not less than ~~14~~35

16  days' written notice of any Auction or Sale Hearing (the "**Sale Notice**") to the parties entitled to

17  notice in this case, any Stalking Horse Bidder, all known potential bidders, and all known

18  holders of an Interest in the applicable Broker Property(ies) (collectively, the

19  "**Noticed Parties**")~~to parties who have submitted a Qualified Bid~~.  The Sale Notice shall be

20  filed with Court at the time it is provided to the Noticed Parties, and will include the

21  initial overbid amount and initial minimum bidding increments and any other details the Receiver

22  deems appropriate including the Plaintiff's estimated secured loan payoff amount and the payoff

23  amount of any junior lienholders.  The initial overbid amount must be enough to pay the breakup

24  fee, if any, plus a~~n meaningful~~ increase in value, taking account of any applicable commissions~~, in~~

25  ~~the Receiver's discretion in consultation with Plaintiff~~.  Noticed Parties~~Creditors~~ may file

26  objections to a proposed sale not less than 21~~7~~ days before the Sale Hearing. The Receiver may file

27  any reply 2~~1~~4 days before the Sale Hearing.

28

**EXHIBIT 1 TO RENEWED OPP'N**
**Page 17**

EXHIBIT 1, PAGE 24

7.    **Sale Free and Clear of Plaintiff's Lien**. The Receiver intends, through each Sale Notice and Auction or Sale Hearing, to seek ing Court approval to sell the applicable Broker Property(ies) free and clear of all Interests, with such Interests to attach to the sale proceeds to the same extent and with the same priority as existed immediately prior to the sale. Each The Sale Notice filed with the Court in advance of the hearing will set forth estimated sale proceeds, and the proposed distribution of net proceeds to occur upon closing of the proposed sale, and the proposed treatment of each Interest that would not be paid in full from such net proceeds.

8.    **Amendments or Modifications**. The Receiver may amend, modify, supplement, or change these Sale Procedures in the Receiver's discretion, in consultation with Plaintiff, as necessary or appropriate to run this sales process, with all terms ultimately being subject to Court approval at the conclusion of the Sale Hearing.

9.8.    **Credit Bidding.**  Plaintiff has the option to credit bid the full amount of its secured claims without any premium to be paid therefor. Junior lienholders may credit bid the full amount of their secured claims; however, such credit bid will only be considered a Qualified Bid if accompanied by amounts sufficient to satisfy all senior liens in full at sale closing.

10.9.    **Sale Order.**  Promptly upon the conclusion of the Sale Hearing contemplated herein, the Receiver will submit a proposed sale order confirming the sale to the successful bidder free and clear of all Interests, designating any backup bidders, making such other appropriate findings and rulings as may be requested by the Receiver at or before the hearing, including findings regarding the good faith of any Qualified Bidder, and providing that the sale shall close by such date determined by the Receiver (the "**Sale Order**"). If the Receiver complies with these Sale Procedures, which are consistent with 28 U.S.C. § 2001, no further motion must be filed before entry of the Sale Order.

11.10.    **Compliance with Receivership Order.** Nothing in this Order is intended to, nor shall, override any notice, veto, consultation or consent rights held by Plaintiff pursuant to the Receivership Order.

**IT IS SO ORDERED.**

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4921-4647-3518.2                    -6-

EXHIBIT 1 TO RENEWED OPP'N
Page 18

EXHIBIT 1, PAGE 25



1  MICHAEL R. FARRELL (BAR NO. 173831)
   MATTHEW D. PHAM (BAR NO. 287704)
2  ALLEN MATKINS LECK GAMBLE
       MALLORY & NATSIS LLP
3  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: mfarrell@allenmatkins.com
           mpham@allenmatkins.com
6
   RICHARD M. PACHULSKI (BAR NO. 90073)
7  IRA D. KHARASCH (BAR NO. 109084)
   PACHULSKI STANG ZIEHL & JONES LLP
8  10100 Santa Monica Boulevard, 13th Floor
   Los Angeles, California 90067-4003
9  Phone: (310) 277-6910
   Fax: (310) 201-0760
10 E-Mail: rpachulski@pszjlaw.com
           ikharasch@pszjlaw.com
11
   Attorneys for Interested Party
12 AMERICAN EQUITY INVESTMENT LIFE INSURANCE
   COMPANY
13

14                  UNITED STATES DISTRICT COURT

15                  EASTERN DISTRICT OF CALIFORNIA

16                       FRESNO DIVISION

17 FEDERAL AGRICULTURAL MORTGAGE        Case No. 1:24-cv-01455-KES-SAB
   CORPORATION,
18                                      **DECLARATION OF THADDEUS TRACY**
              Plaintiff,                **IN SUPPORT OF AMERICAN EQUITY**
19                                      **INVESTMENT LIFE INSURANCE**
           vs.                          **COMPANY'S RENEWED OPPOSITION TO**
20                                      **RECEIVER'S MOTION FOR AN ORDER**
   ASSEMI BROTHERS, LLC, et al.,        **ESTABLISHING MARKETING, BID, AND**
21                                      **AUCTION PROCEDURES FOR BROKER-**
              Defendants.               **MARKETED PROPERTIES**
22
                                        Date:  April 21, 2025
23                                      Time:  1:30 p.m.
                                        Place: 2500 Tulare Street
24                                             7th Floor, Courtroom 6
                                               Fresno, CA 93721
25

26 / / /

27 / / /

28 / / /

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4919-2190-5206.1

EXHIBIT 1, PAGE 26

I, Thaddeus Tracy, declare as follows:

1.     I am a co-founder and principal of Farmers Gate LLC ("Farmers Gate"), which has been retained by American Equity Investment Life Insurance Company ("American Equity").

2.     I submit this declaration in support of American Equity's *Renewed Opposition to Receiver's Motion for an Order Establishing Marketing, Bid, and Auction Procedures for Broker-Marketed Properties* (the "Opposition"). Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true and correct. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from my review of documents and information that I obtained during my own investigation or from American Equity. If called to testify, I could and would, without waiver of any applicable privilege, testify that the facts stated in this declaration are true and correct to the best of my knowledge, information, and belief.

3.     In 2018, I co-founded Farmers Gate, an agriculture management firm that is also an investment platform focused on agricultural assets and operations.

4.     Farmers Gate was engaged by American Equity in August 2024 in order to primarily provide consulting services focused on evaluating American Equity's collateral that is part of a larger farmer enterprise operated by the Assemi family and entities that they own or control.

5.     I have direct experience with several of the parcels included in the collateral of Federal Agricultural Mortgage Corporation ("Farmer Mac") (which is also the collateral of American Equity) in the receivership arising out of the above-captioned action, as well as some of the other lender collateral in the related receiverships (i.e., those initiated by The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC (together, "Prudential") and by Metropolitan Life Insurance Company, Brighthouse Life Insurance Company, or MetLife Real Estate Lending, LLC (collectively, "MetLife")), as such parcels were previously owned by a portfolio company of my prior business and for which I was directly involved with the original purchase in 2012. In addition, several of the assets owned in the current Farmers Gate portfolio are in close proximity to the assets in these related receiverships.

EXHIBIT 1, PAGE 27

6.     As an investment professional focused on the agricultural industry, I have participated in numerous sales of agricultural real estate over the last fourteen years.

7.     From 2010 to 2018, I was a member of the senior executive team for a large permanent capital vehicle focused on capitalizing best-in-class agricultural businesses.

8.     Prior to 2010, I was a full-time practicing real estate lawyer and a partner at Kirkland & Ellis LLP.

9.     American Equity is a junior lender/lienholder behind Farmer Mac and Rooster Capital IV, LLC ("Rooster Capital") across seven ranches consisting of 3,900 acres of real property, of which 811 acres are planted to pistachios and 496 acres are planted to almonds. These ranches span multiple counties and irrigation districts in the Central Valley of California, from Fresno to south of Bakersfield.

10.    In a seller's market, sale timelines can be compressed and bidders can be forced to move quickly for fear of missing out on scarce buying opportunities. However, the Central Valley today is definitely not a seller's market. Listings for farmland remain open for months as potential buyers wait for asking prices to come down, resulting in reduced valuations for farmland assets, regardless of crop. The financial distress affecting agricultural owners and operators in today's marketplace is well-documented and is expected to increase in intensity. A four-week marketing process is woefully insufficient to sell the assets subject to this receivership in order to obtain the highest price on the assets. Also, qualified bids should not be required until the expiration of the applicable publication notice in order to get the full benefit of such notice.

11.    In order to properly market these assets, the marketing should go well beyond the broker's listing of the sale in the Fresno Bee or other local newspaper. Most institutional investors find out about investment opportunities through word of mouth or by direct contact with the listing broker, not from a listing in a local newspaper. The pool of potential bidders should be expanded beyond the Central Valley to include direct investors and asset managers located across the United States, many of whom, like Farmers Gate, will not be consulting the Fresno Bee. Similarly, the sale process will be benefited by the receiver not only consulting with Farmer Mac, but also with the junior lienholders who have their own knowledge about the properties encumbered by their

1    liens and their own network of potential buyers, and who are also more vested in obtaining the

2    best price possible to pay off all lienholders, not just the senior liens.

3         12.    The receiver's failure to define a "meaningful increase in value" that a potential

4    bidder must bid over a stalking horse offer plus a 2% break-up fee may well chill the bidding as

5    potential bidders will not be inclined to invest time and money in their critical due diligence in

6    submitting an offer without knowing whether a submitted bid will even clear the initial threshold.

7    This lack of clarity clearly favors the stalking horse offer in discouraging offers that may well be

8    greater than the stalking horse offer, which stalking horse offer is hopefully already near fair

9    market value. Similarly, the receiver's request to have unfettered discretion to modify any of the

10   sale procedures can also chill the bidding, as potential buyers like certainty of process before they

11   invest their time and money in the diligence process.

12        13.    In determining the proper time periods for the marketing of the assets, and for

13   parties to object to such sales, the complexity of these assets must be considered. Each parcel

14   being listed for sale has its own attributes that impact valuation. For planted acres, those attributes

15   include, among other considerations, year of planting, yield history, the presence and condition of

16   infrastructure, potential for solar development, opportunities for water recharge projects, and

17   specific agronomic considerations such as microclimate, soil quality, water quality and availability

18   (including, in certain circumstances, pairing with open acres to increase water rights), plant health,

19   and nutrient load. Any proposed sale price needs to be considered in light of these details, and

20   completing that task, depending on the number of parcels included in a sale, will take considerable

21   time. I also expect competing bids to cover some, but not all, of the same parcels, which further

22   complicates a comparative analysis. Such review should not be rushed in order to achieve the best

23   outcome.

24        14.    In addition, the proximity to other parcels owned and operated by the borrowers (in

25   certain cases, the parcels are adjacent), but not included as collateral for Farmer Mac's loans,

26   makes the process of evaluating offers more complicated as separating those assets into separate

27   collateral pools could have a materially negative impact on the aggregate value of the acreage.

28

15.     For example, the Copus Ranch, which consists of 1,033 acres of open ground in the Wheeler Ridge Irrigation District, includes some parcels that are collateral for MetLife and Prudential loans and some parcels that are collateral for Farmer Mac loans. In fact, within this ranch, the Farmer Mac collateral is adjacent to both the MetLife and Prudential collateral. Accordingly, prior to consenting to a proposed sale of the Farmer Mac collateral, American Equity, as junior lienholder, will need to understand the extent to which that adjacency impacts the utilization and value of the property, including whether there is any shared infrastructure or services. This analysis extends to whether there are solar options currently in place or potentially available and that would be impacted by the sale of parcels to different buyers. If there were one single entity, such as a chief restructuring officer ("CRO") of the chapter 11 debtors in possession that controlled all of the assets that are now the subject of four active receiverships having three different receivers, such CRO would be able to consider a sale of the Farmer Mac collateral at the Copus Ranch and package that with adjacent parcels that are controlled today by receivers nominated by Prudential and MetLife. Failing to organize the sale process in this way denies value for junior lienholders and the borrowers. The diversity of interests that control the sale process today undermines the value that can be achieved.

16.     Moreover, the decision by each receiver separately to rush properties to market risks flooding the market and pushing prices down, or worse, incentivizes a race among the sellers to transact first. A hurried sale process in this environment is a weak sale process and will generate a poor return.

17.     Another example is Farmer Mac's senior liens on a parcel included in the Kamm Avenue Ranch that totals 11,000 acres, including approximately 7,700 acres planted primarily to pistachios. Within this ranch, the Farmer Mac collateral is 76 acres of open ground "land locked" by the Prudential collateral, with the MetLife collateral also close by. It is unclear how Farmer Mac, and American Equity as a junior lienholder, recovers any value for property that has only one logical buyer—the immediate neighbors.

18.     Another example is the 5,218-acre Calaveras Ranch, of which 864 acres are planted to pistachios and almonds. Farmer Mac has 160 acres (80 acres planted to pistachios) of the ranch

1  as collateral for one of its loans. Other lenders with collateral at the Calaveras Ranch are

2  Prudential, Modern Woodsmen of America ("MWA"), and American Equity. Ideally, the

3  Calaveras Ranch would be marketed as a single property to capitalize on the shared irrigation

4  infrastructure and services. But, as currently contemplated, individual parcels that constitute the

5  Calaveras Ranch will be sold separately by MWA (3,011 acres), Prudential (1,727 acres),

6  American Equity (320 acres), and Farmer Mac (160 acres). To further complicate the sales of all

7  of these parcels, not only are some parcels the subject of either the Farmer Mac receivership or the

8  Prudential receivership (each of which has its own sale process), but other parcels within the ranch

9  (i.e., MWA's collateral and some of American Equity's collateral) are not the subject of any

10  receivership (and will thus involve a different process for properties to be sold). In the end,

11  American Equity stands to lose the most in this scenario as it is the senior lienholder on 320 acres

12  and a junior lienholder behind MWA and Farmer Mac (and Rooster Capital) on 3,171 acres.

13         I declare under penalty of perjury that the foregoing is true and correct. Executed on

14  April 14, 2025, at New York, New York.

15

16                                         */s/ Thaddeus Tracy*
                                           *(original signature retained by*
17                                         *attorney Matthew D. Pham)*
                                           Thaddeus Tracy
18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that: I am over the age of eighteen (18) and not a party to the within action. I am employed in the law firm of Allen Matkins Leck Gamble Mallory & Natsis LLP, 865 South Figueroa Street, Suite 2800, Los Angeles, California 90017-2543.

On April 14, 2025, I used the Eastern District of California's Electronic Case Filing System, with the ECF registered to Matthew D. Pham to file the following document(s):

**AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY'S RENEWED OPPOSITION TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKERMARKETED PROPERTIES; AND**

**DECLARATION OF THADDEUS TRACY IN SUPPORT OF AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY'S RENEWED OPPOSITION TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKERMARKETED PROPERTIES**

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service. The parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 14, 2025, at Los Angeles, California.

_____
                        */s/ Anabel Pineda*
                        Anabel Pineda

EXHIBIT 1, PAGE 32

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this District Court proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **<u>RESPONSE TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR RECEIVERSHIP PROPERTIES; AND REQUEST FOR JUDICIAL NOTICE</u>** will be served or was served **(a)** on the judge in chambers in the form and manner required by L.R 133(f); and **(b)** in the manner stated below:

**1**. **<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and L.R 135, the foregoing document will be served by the court via NEF and hyperlink to the document. On **<u>April 14, 2025</u>**, I checked the CM/ECF docket for this case and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.** **<u>SERVED BY UNITED STATES MAIL</u>**: On _____, I served the following persons and/or entities at the last known addresses in this case by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.** **<u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>**: Pursuant to F.R.Civ.P. 5 (d)(3) and/or controlling L.R. 133, on **<u>April 14, 2025</u>**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**<u>Presiding Judge's Courtesy Copy</u> – Via Overnight Mail**
HONORABLE KIRK E. SHERRIFF
ROBERT E. COYLE UNITED STATES COURTHOUSE
2500 TULARE STREET, 1ST FLOOR
FRESNO, CA  93721

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 14, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>: CONTINUED:

- **American Equity Investment Life Insurance Company**
  adeleest@marshackhays.com
- **Mark Anishchenko**
  markanishchenko@dwt.com,rosalindcook@dwt.com
- **Yelena E. Archiyan , PHV**
  yelena.archiyan@katten.com
- **Terence G. Banich**
  terence.banich@katten.com,courtalertlax@katten.com
- **Robert Cullen Barton**
  rbarton@mwe.com,acorona@mwe.com
- **Daryl Stuart Bartow**
  DSBartow@duanemorris.com,CMWinter@duanemorris.com,SLei@duanemorris.com,Ajhanna@duane
  morris.com,PARyan@duanemorris.com
- **Michael Barrett Brown**
  michael.brown@stoel.com,docketclerk@stoel.com,rebecca.lerma@stoel.com,jill.keehnen@stoel.com,ha
  .nguyen@stoel.com
- **Michaela C. Crocker , PHV**
  michaela.crocker@katten.com
- **Aaron E. De Leest**
  adeleest@marshackhays.com,alinares@ecf.courtdrive.com,adeleest@ecf.courtdrive.com
- **Jason J DeJonker , PHV**
  jdejonker@seyfarth.com,lcreasap@seyfarth.com,CHIDocketMail@seyfarth.com,6505178420@filings.d
  ocketbird.com
- **Brandon K. Franklin**
  brandon.franklin@clydeco.us,6663841420@filings.docketbird.com,krodrigues@seyfarth.com
- **John D. Freed**
  jakefreed@dwt.com,Lit-docket@dwt.com,kimberlysimmonsgreene@dwt.com
- **Mary H. Haas**
  maryhaas@dwt.com,Lit-Docket@dwt.com
- **Gabriel P. Herrera**
  gherrera@kmtg.com,tcorbett@kmtg.com,bxiong@kmtg.com
- **Michael Robert Johnson , PHV**
  mjohnson@rqn.com,asanchez@rqn.com,docket@rqn.com
- **Jane Kim**
  jkim@kbkllp.com
- **Matthew Ladew**
  mattladew@dwt.com,mercedesmendoza@dwt.com
- **Nicholas R. Marcus , PHV**
  nmarcus@seyfarth.com,lcreasap@seyfarth.com,ChiDocketMail@seyfarth.com
- **John E. Mitchell , PHV**
  john.mitchell@katten.com
- **Michael S. Nadel , PHV**
  mnadel@mwe.com
- **Michael Ryan Pinkston**
  rpinkston@seyfarth.com,shobrien@seyfarth.com,jmcdermott@seyfarth.com,5314522420@filings.dock
  etbird.com,sfocalendar@seyfarth.com
- **Michelle Rosales**
  michelle.rosales@stoel.com

- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com,borozco@wtjlaw.com
- **Joseph M. VanLeuven , PHV**
  joevanleuven@dwt.com
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com,sgomez@wtjlaw.com,abroome@wtjlaw.com
- **Thomas Andrew Woods**
  thomas.woods@stoel.com,docketclerk@stoel.com,dalila.tobin@stoel.com,7052139420@filings.docketbird.com,1261239420@filings.docketbird.com,rebecca.lerma@stoel.com