# EXHIBIT D

Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:   (312) 902-5200
Facsimile:    (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:   (214) 765-3600
Facsimile:    (214) 765-3602

*Attorneys for the Receiver*
Lance Miller

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., | No. 1:24-cv-01102-KES-SAB |
| Plaintiffs, | **DECLARATION OF SKYE ROOT** |
| v. | Judge: Hon. Kirk E. Sherriff |
| ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE, | Action Filed: September 16, 2024 |
| Defendants. | |

I, Skye Root, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am over the age of eighteen years, am under no disability, and am competent to testify to the matters set forth herein. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or opinion, information learned from my review of relevant documents, and information I have received from Lance Miller, in his capacity as the Court-appointed receiver (the "**Receiver**") in the above-captioned case, the Receiver's agents or advisors, or from other members of the team at Capstone Capital Markets LLC ("**Capstone**"). If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration in support of the motion filed by the Receiver seeking to establish bidding procedures and related guidelines in the above-captioned case (the "**Bidding Procedures Motion**").[2]

3. I am a Managing Director at Capstone Partners, Inc. and have held that position since December 2023. As a Managing Director at Capstone Partners, Inc., I am authorized to submit this declaration on behalf of Capstone and in support of the Motion.

4. Capstone is a full-service investment bank with broad reach to investors throughout domestic and international markets. For a transaction of this size and nature, Capstone has access to top national and multinational strategic and financial buyers of agricultural businesses and assets.

5. Throughout my career, I have specialized in agricultural transaction advisory and sales, agricultural management, and consulting in the western United States. In this regard, I have an extensive network of local and regional brokers and farmland buyers across the western United States. I have completed sales of agricultural properties in seven states, including California, aggregating over $2.1 billion since 2011. Additionally, I regularly provided in-depth agricultural management consulting. I also have extensive experience with a wide variety of agricultural operations, including those similar to the defendants' farming operations conducted at the Property.

---

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

[2] All capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the Bidding Procedures Motion.

I, personally, and Capstone, broadly, have run numerous sale processes that invovled auctions with stalking horse bidders that were provided with bid protections, including break-up fees.

6. The Receiver, with the assistance of Capstone, began marketing the Property in April 2025, immediately following Capstone's formal engagement on April 1, 2025. Working with the Receiver, Capstone reached out to its extensive network of potential acquirors of the Property, including brokers, landowners, operators, and potential investors throughout the United States and internationally. In this process, the Receiver through Capstone has now contacted over 115 potential buyers and executed 31 non-disclosure agreements (each, an "**NDA**") with interested parties.

7. Following execution of an NDA, each interested party was provided a voluminous Confidential Information Memorandum (the "**CIM**") and access to a comprehensive virtual data room (the "**VDR**"). The VDR contains, among other things, detailed ranch-by-ranch and parcel-by-parcel descriptions of the Property, key agreements related to the Property, a financial model, and ranch and soil maps. In addition, interested parties were hosted for guided or self-guided tours of the Property.

8. Each interested party also received a copy of Capstone's process letter, which provided guidance for two rounds of non-binding Letters of Intent (each, an "**LOI**"). Following receipt of the first round LOIs, Capstone and the Receiver selected the most likely parties to move forward to the second round. In the second round, the parties were directed to submit their highest and best offers to become the Stalking Horse Bidder for the Property.

9. Based on my experience, I believe that the Bidding Procedures appropriately balance the interests of consummating the sale on an expedited timeline while preserving the opportunity to attract the highest or otherwise best offer for the Property. Further, I believe that the Bidding Procedures encourage prospective bidders to put their highest and best bid forward and create a path toward entry of an order approving a sale that represents the highest or otherwise best available to the Receiver.

10. Based on the marketing process and arm's-length negotiations with Potential Bidders, I believe that the inclusion of the Bid Protections is necessary and appropriate to obtain the Stalking Horse Bidder's commitment to serve as the stalking horse – a commitment I believe will yield net

benefits to the receivership estate. In my view, by definitively establishing acceptable baseline terms for the sale, a Stalking Horse PSA will encourage potential buyers to bid for the Property and attract only qualified bidders who are willing to submit higher and better bids for the Property, thereby maximizing the realizable value the receivership estate. Additionally, I believe that setting a floor for the value of the Property and locking in the Stalking Horse Bidder's commitment provides significant downside protection for the receivership estate and its creditors. Furthermore, because a bid must exceed the Stalking Horse purchase price by an amount more than the applicable Bid Protections to constitute a Qualified Bid, in the event the Receiver consummates an alternative transaction – a prerequisite for the Stalking Horse Bidder's entitlement to Bid Protections – payment of such protections from the proceeds will not unduly diminish the receivership estate. Moreover, based on my and my firm's experience, I do not believe that the Bid Protections will chill bidding on the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 22, 2025

In Boise, Idaho

By: */s/ Skye Root*
     Skye Root