Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:    (312) 902-5200
Facsimile:    (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:    (214) 765-3600
Facsimile:    (214) 765-3602

*Attorneys for the Receiver* Lance Miller

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., <br><br> Plaintiffs, <br> v. <br><br> ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE, <br><br> Defendants. | No. 1:24-cv-01102-KES-SAB <br><br> **NOTICE OF MOTION AND MOTION OF RECEIVER LANCE MILLER FOR** <br><br> **(I) AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF REAL PROPERTY, INCLUDING THE DESIGNATION OF A STALKING HORSE BIDDER AND THE AWARD OF BID PROTECTIONS AND (B) SCHEDULING THE AUCTION AND SALE HEARING; AND** <br><br> **AFTER FURTHER NOTICE, AN (II) ORDER APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES; AND** <br><br> **(III) GRANTING RELATED RELIEF;** <br><br> **AND MEMORANDUM OF POINTS AND AUTHORITIES (WESTLANDS)** |

---

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

-1-

304108453

)    Objection Deadline:  November 11, 2025
)
)    Hearing Date:        December 1, 2025
)    Hearing Time:        1:30 p.m. PT
)    Location:            Courtroom 6, 7th Floor
)                         2500 Tulare Street
)                         Fresno, CA 93721
)    Judge:               Hon. Kirk E. Sherriff
)
)    Action Filed:         September 16, 2024
)

-2-

304108453

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **December 1, 2025, at 1:30 p.m. PT**, or as soon thereafter as the matter can be heard, in Courtroom 6, located at the Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Lance Miller, solely in his capacity as Court-appointed receiver (the "**Receiver**"), will, and hereby does, by and through his undersigned counsel, move the Court for entry of an order substantially in the proposed form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"):

- approving the proposed Bidding Procedures attached hereto as **Exhibit B**:[2]
- approving a procedure providing the Receiver the discretion to designate a Stalking Horse Bidder and award Bid Protections in favor of the Stalking Horse Bidder;
- scheduling an Auction and the date and time of the Sale Hearing, along with related deadlines; and
- granting related relief.

And, after further notice, opportunity to object, and hearing, entry of an Order in a form to be filed with the Court:

- authorizing the Receiver to sell the Property on an "as is, where is, and with all faults" basis, free and clear of all Interests, with such Interests attaching to Sale Proceeds with the same force and in the same priority as existed immediately prior to the sale;
- authorizing the Receiver to pay, without further order of the Court, all sale related costs and expenses, including any amounts owing to Capstone Capital Markets, LLC (but excluding the Receiver's attorneys' fees and costs), with the net proceeds of the sale paid to Plaintiffs; and
- granting related relief.

In support of the requested relief, the Receiver relies upon the motion (the "**Motion**"), the declaration of Lance Miller (the "**Miller Declaration**") attached hereto as **Exhibit C**, the

---

[2] Capitalized terms used but not defined in the Notice shall have the meanings ascribed in the attached Motion.

-3-

304108453

declaration of Skye Root (the "**Root Declaration**") attached hereto as **Exhibit D**, the other files and records in this action, and any other evidence or argument the Court may consider.

**PLEASE TAKE FURTHER NOTICE THAT** this Motion is made following the conference of counsel that took place October 22, 2025, pursuant to the local rules of this Court with:

- Jason DeJonker and Nicholas Marcus of Seyfarth Shaw LLP on behalf of Plaintiffs; and

- Riley Walter and Ian Quinn of Wagner Jones Helsey PC on behalf of the Farming Defendants (as defined in the Receivership Order), including the Defendants that are the record owners of the Property subject to the Motion.

**Neither Plaintiffs nor Farming Defendants oppose this Motion but reserve all rights with respect to entry of an order approving the proposed sale of the Property.**

Dated: October 27, 2025

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:     */s/ Terence G. Banich*
        Terrence G. Banich

*Attorneys for the Receiver,*
Lance Miller

-4-

304108453

## MEMORANDUM OF POINTS AND AUTHORITIES

Lance Miller, solely in his capacity as Court-appointed receiver (the "**Receiver**"), files this motion (the "**Motion**") pursuant to paragraphs 3(c), 3(d), 3(t), and 23 of the Receivership Order for entry of an order substantially in the proposed form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"):

- approving the proposed Bidding Procedures attached hereto as **Exhibit B**:
- approving a procedure providing the Receiver the discretion to designate a Stalking Horse Bidder and award Bid Protections in favor of the Stalking Horse Bidder;
- scheduling an Auction and the date and time of the Sale Hearing, along with related deadlines; and
- granting related relief.

And, after further notice, opportunity to object, and hearing, entry of an Order in a form to be filed with the Court:

- authorizing the Receiver to sell the Property on an "as is, where is, and with all faults" basis, free and clear of all Interests, with such Interests attaching to Sale Proceeds with the same force and in the same priority as existed immediately prior to the sale;
- authorizing the Receiver to pay, without further order of the Court, all sale related costs and expenses, including any amounts owing to Capstone Capital Markets, LLC (but excluding the Receiver's attorneys' fees and costs), with the net proceeds of the sale paid to Plaintiffs; and
- granting related relief.

In support thereof, the Receiver states as follows:

### I.    Factual and Procedural History

#### A.    The Prudential Receivership

On September 16, 2024, The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC (together, the "**Prudential Lenders**") filed a *Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents and Profits Clause; and Injunctive Relief* [Dkt. No. 1] initiating the above-captioned case, and on September

-5-

304108453

18, 2024, an *Ex Parte Application Regarding Motion for Order Appointing Receiver and for Preliminary Injunction* [Dkt. No. 12].

On September 25, 2024, after notice and hearing, the Court entered the *Agreed Order Appointing Receiver with Limited Authority* [Dkt. No. 51, as amended by Dkt. No. 107] and on November 7, 2024, entered the *Order Expanding Receivership and for Preliminary Injunction* [Dkt. No. 120, as further amended] (the "**Receivership Order**") appointing the Receiver as receiver over the Receivership Property (as defined in the Receivership Order).

### B. The Real Property Marketed by Capstone

The scope of the Receiver's duties under the Receivership Order includes "to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale process of the Receivership Property, whether in whole or part, with any sale of Receivership Property outside of the ordinary court of business subject to the Court's approval." Receivership Order ¶ 23.

In furtherance of these duties, the Receivership Order authorizes the Receiver (i) subject to further Court Order, "to abandon or sell Receivership Property as the Receiver may deem prudent outside of the ordinary course of the Farming Defendants' businesses[]" with all such sales being "free of liens, claims, and encumbrances, with any such liens, claims and encumbrances attaching to the proceeds therefrom subject to further order of the Court" and (ii) to "assume, extend, or modify any pre-receivership contracts or agreements, including unexpired leases, relating solely to the Receivership Property and/or reject such contracts in the Receiver's sole judgment and discretion[.]" *Id.* ¶ 3(c), 3(d)(i), 3(t).

Following his assessment of the Receivership Property, the Receiver has determined in the exercise of his reasonable business judgment that an organized sale process, via public auction, will maximize value. Miller Decl. ¶ 7. In this regard, the Receiver has placed the Receivership Property into three categories: (i) parcels of real estate that should be sold together to maximize value and that is the subject of this Motion, (ii) parcels of real estate that are the subject of the bidding procedures order found at Docket No. 308 (the "**Semitropic Property**"), and (iii) parcels of real property whose value is not linked to operation of the Property or the Semitropic Property, which

-6-

are the subject of a motion to employ a real estate broker approved by the court [Dkt. No. 205] and that are not the subject of this Motion. *Id.*

The property that is the subject of the proposed Bidding Procedures (the "**Property**") is comprised of the land and associated rights as more fully set forth in the form Purchase and Sale Agreement attached to the proposed Bidding Procedures as <u>Exhibit 2</u> (the "**PSA**").[3] A list of APNs that comprise the land is attached to the proposed Bidding Procedures as <u>Exhibit 1</u>.

In addition to establishing the Bidding Procedures for the Property, the Receiver is concurrently seeking to establish substantially identical bidding procedures for certain property that is related to farming operations on the Property and being administered by the Receiver in the related case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC, et al.,* Case No. 24-cv-1445-KES-SAB (the "**Related Property**").  With the exception of credit bids, a Bid for the Property must also include a Bid for the Related Property.

### Capstone's Marketing Efforts To Date

The Receiver, with the assistance of Capstone, began marketing the Property in April 2025, immediately following Capstone's formal engagement on April 1, 2025. Working with the Receiver, Capstone reached out to its extensive network of potential acquirors of the Property, including brokers, landowners, operators, and potential investors throughout the United States and internationally. Root Decl. ¶ 6. In this process, the Receiver through Capstone has now contacted over 115 potential buyers and executed 31 non-disclosure agreements (each, an "**NDA**") with interested parties. *Id.*

Following execution of an NDA, each interested party was provided a voluminous Confidential Information Memorandum and access to a comprehensive virtual data room (the "**VDR**"). *Id.* ¶ 7. The VDR contains, among other things, detailed ranch-by-ranch and parcel-by-parcel descriptions of the Property, key agreements related to the Property, a financial model, and ranch and soil maps. In addition, interested parties were hosted for guided or self-guided tours of the Property. *Id.*

---

[3] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the PSA.

-7-

Each interested party also received a copy of Capstone's process letter, which provided guidance for two rounds of non-binding Letters of Intent (each, an "**LOI**"). *Id.* ¶ 8. Following receipt of the first round LOIs, Capstone and the Receiver selected the most likely parties to move forward to the second round. In the second round, the parties were directed to submit their highest and best offers to become the "**Stalking Horse Bidder**" for the Property. *Id.*  In addition to Capstone's efforts, the Receiver published notice of the potential sale of the Property in the Hartford Sentinel (Kings County), Fresno Business Journals (Fresno County), and Bakersfield Californian (Kern Count) one time per week for four weeks. Miller Decl. ¶ 14.

At the conclusion of the above process, the Receiver identified Bravante Farm Capital, LLC or its assignee ("**Bravante**") as the likely Stalking Horse Bidder for the Property. Miller Decl. ¶ 8. Bravante is in the final stages of due diligence, and the Receiver expects to finalize a purchase and sale agreement with Bravante (the "**Bravante PSA**") in early/mid December 2025. *Id.* Upon execution of the Bravante PSA and conclusion of the diligence period, the Receiver will file a Notice of Stalking Horse Bidder designating Bravante as the Stalking Horse Bidder.[4] *Id.* If the Receiver is unable to timely finalize the Bravante PSA, Plaintiffs have agreed to submit a purchase and sale agreement for the Property that contains a credit bid to encourage an Auction of the Property (the "**Credit Bid PSA**"). *Id.* In that event, the Receiver will file a Notice of No Stalking Horse with the Court, which will include a copy of the Credit Bid PSA that will be used as the form for competing Bids to be submitted for the Property. *Id.* The Credit Bid PSA will not contain any Bid Protections (defined below) in favor of Plaintiffs.

Based on the above, the Receiver is confident that the parties most interested and capable of closing the proposed transaction have been contacted, signed NDAs, and have performed diligence in relation to the sale. Miller Decl. ¶ 15. Accordingly, in the exercise of his business judgment, the Receiver has determined that further marketing, outside that set forth in the Bidding Procedures and this Motion, is unnecessary and unlikely to result in the identification of additional bidders. *Id.*

---

[4] The Notice of Stalking Horse Bidder will include a copy of the Bravante PSA.

-8-

304108453

## II.    The Proposed Bidding Procedures

The Receiver seeks approval to sell the Property to the Qualified Bidder that makes the highest or otherwise best offer for the Property. The Receiver requests that competing bids for the Property be governed by the Bidding Procedures attached hereto as **Exhibit B** which, among other things, establish:

a)    the requirements that a Potential Bidder must satisfy to be entitled to participate in the bidding process and become a Qualified Bidder [Bidding Procedures § 8];

b)    the requirements for Qualified Bidders to submit bids and the method and criteria by which such bids become Qualified Bids [*id.* §§ 3-6, 8];

c)    the deadline by which bids must be submitted [*id.* § 1];

d)    the Receiver's ability to designate a Stalking Horse Bidder by filing a notice with the Court and providing Bid Protections to the Stalking Horse Bidder not to exceed 2% in the aggregate of the initial cash purchase price set forth in the Stalking Horse purchase and sale agreement; *id.* § 9];

e)    the procedures for conducting the Auction [*id.* § 10]; and

f)    various other matters relating to the sale process generally, the Sale Hearing, due diligence, and designation of a Backup Bidder [*id.* §§ 1, 2, 7, 11-13].

For the sake of brevity, the Bidding Procedures are not repeated verbatim herein but are incorporated by reference for all purposes.

Although the Receiver believes that the Bidding Procedures comply with all statutory requirements, to the extent not fully satisfied by the Bidding Procedures, the Receiver requests the Court excuse compliance with 28 U.S.C. §§ 2001 and 2002.  The Receiver believes that the waivers of 28 U.S.C. 2001 and 2002, to the extent such statutes are not already satisfied, are necessary and appropriate to achieve the highest sale price for the Property, pursuant to an auction process that provides the maximum exposure to bidders in the United States and internationally. Miller Decl. ¶ 12.

304108453

**III.    Selection of the Stalking Horse Bidder and the Award of Bid Protections**

On or before December 16, 2025, the Receiver shall file a notice with the Court either (i) designating the Stalking Horse Bidder entitled to the Bid Protections (the "**Stalking Horse Bidder Notice**") or (ii) informing the Court that the Receiver has determined not to designate a stalking horse (the "**Notice of No Stalking Horse Bidder**") and will instead move towards Auction with a credit bid by Plaintiffs.

**IV.    Scheduling and Notice; Entry of Sale Order**

Given the nearly seven-month marketing and diligence period that has already taken place, the proposed timeline set forth in the Bidding Procedures is sufficient to complete a fair and open sale process that will maximize the value received for the Property. Miller Decl. ¶ 13. The proposed timeline, summarized below, will provide interested parties with sufficient time to perform remaining due diligence (if any), given that the process is well understood at this juncture and the diligence material is already compiled and readily available. *Id.*

| Event | Deadlines[5] | Estimated Date[6] |
|---|---|---|
| Deadline to Serve Court-Approved Bidding Procedures[7] | Within one (1) business day of entry of the Bidding Procedures Order | Tuesday, December 2, 2025 |
| Deadline to File Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder | | Tuesday December 16, 2025 |
| Deadline to Submit Qualified Bids (the "**Bid Deadline**") | Twenty-one (21) days after Filing of Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder | Tuesday January 6, 2026 |

---

[5] All dates/deadlines are subject to extension or adjournment as provided for in the Bidding Procedures Order.

[6] The Estimated Date is given to help place the Deadlines into context. Actual dates will be calculated based on the column titled "Deadlines."

[7] A copy of the Court-approved Bidding Procedures will be served via (i) first class mail on: (a) the potential holders of Interests, (b) the Consultation Parties, (c) all parties who have expressed a bona fide interest in purchasing the Property, and (d) the service list established in this case; and (ii) via the Court's ECF filing system. **Parties wishing to receive expedited service of sale-related pleadings or other documents should contact Janice Brooks-Patton at <u>janice.brooks-patton@katten.com</u> and request to receive e-mail service.**

304108453

| Event | Deadlines[5] | Estimated Date[6] |
|---|---|---|
| Deadline to Either (1) Notify Qualified Bidders of Auction or (2) Cancel Auction | Two (2) days after Bid Deadline | Thursday January 8, 2026 |
| Auction, if held | Five (5) days after notifying Qualified Bidders of Auction | Tuesday January 13, 2026 |
| Deadline to File Notice of Successful Bidder, if Auction Held | Two (2) days after conclusion of Auction | Thursday January 15, 2026 |
| Deadline to Object to Sale | Five (5) days after filing of Notice of Successful Bidder or twelve (12) days after filing Notice of Cancellation of Auction | Tuesday January 20, 2026 |
| Reply Deadline | Six (6) days after Objection Deadline | Monday January 26, 2026 |
| Sale Hearing | | February 2, 2026, at 1:30 p.m. PT |

### A.     Notice of Proposed Bidding Procedures

On the date the notice of this Motion is filed, or within one (1) business day thereof, the Receiver will cause this Motion and all exhibits hereto to be served via: (i) first class mail on: (a) the Consultation Parties, (b) all parties who have expressed a bona fide interest in purchasing the Property, (c) the service list established in this case, and (d) the potential holders of Interests; and (ii) via the Court's ECF filing system (collectively, the "**Sale Notice Parties**"). The Bidding Procedures also give parties the option to request e-mail service of sale-related pleadings.

### B.     Notice of Court-Approved Bidding Procedures

Within one (1) business day of the entry of the Bidding Procedures Order, or as soon thereafter as practicable, the Receiver shall cause the Bidding Procedures to be served, by first-class mail, postage prepaid on the Sale Notice Parties.  The notice will provide parties with the opportunity to request expedited service via email of future sale-related pleadings.

### C.     Post-Auction Supplement

Within two (2) business days following the conclusion of the Auction, if held, the Receiver will promptly file with the Court a notice (the "**Notice of Successful Bidder**") that will inform the

304108453

Court of the results of the Auction. The Notice of Successful Bidder will identify, among other things, (i) the Successful Bidder as the proposed purchaser of the Property, (ii) the amount and form of consideration to be paid by the Successful Bidder for the Property, (iii) the liabilities to be assumed by the Successful Bidder, and (iv) the Contracts to be assigned to the Successful Bidder in connection with the sale, if any. The Notice of Successful Bidder will also include similar information relating to the Backup Bidder and the Backup Bid. In addition, the Receiver will attach to the Notice of Successful Bidder (i) the proposed Sale Order approving the Sale to the Successful Bidder, (ii) a copy of the Successful Bidder PSA, and (iii) any additional information or documentation relevant to the Successful Bid.  The Notice of Successful Bidder will be served via (i) first class mail on the Notice Parties and (ii) the Court's ECF filing system.

**D.      Sale Hearing; Entry of Sale Order**

The Receiver requests that this Court set the Sale Hearing for a date that is not later **February 2, 2026.** At the Sale Hearing, the Receiver intends to seek entry of the Sale Order (a) approving the sale on an "as is, where is, and with all faults" basis free and clear of all Interests to the fullest extent permitted by law, with such Interests to attach to the proceeds of the sale to the same extent and with the same priority as exist at the time of sale. In addition, the Sale Order will have findings that the sale is not a fraudulent conveyance, the parties to the transaction acted in good faith and at arms-length, and the Receiver provided adequate notice for these and the other terms and conditions of the bidding, Auction, and sale process.

The Receiver requests to distribute the net proceeds of the sale, after payment of all customary closing costs, expenses, and senior liens, to the Plaintiffs in partial satisfaction of their liens on the Property.

The Receiver further requests that the Court retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of the Bidding Procedures, Bidding Procedures Order, and Sale Order, and that the Receiver shall not be required to seek authorization from any other jurisdiction with respect to the relief granted in such orders.

Finally, the Receiver requests authority to execute any documents on behalf of the Farming Defendants to the extent necessary to complete the sale of Property that is Receivership Property.

-12-

304108453

**LEGAL AUTHORITY**

A district court's power to supervise a receivership and determine the appropriate action to be taken in the administration of the receivership estate is extremely broad and reasonable administrative procedures, crafted to deal with the complex circumstances of each case, will be upheld. *S.E.C. v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986). In particular, as set forth in more detail below, district courts have broad discretionary authority to approve terms and procedures for the sale of receivership property. *Gockstetter v. Williams*, 9 F.2d 354, 357 (9th Cir. 1925) ("In authorizing the sale of property by receivers, courts of equity are vested with a broad discretion as to price and terms."). The Ninth Circuit "affords broad deference to the court's supervisory role, and will generally uphold reasonable procedures instituted by the district court that serve th[e] purpose of orderly and efficient administration of the receivership for the benefit of creditors." *CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999), as amended (Mar. 23, 2000) (internal quotations and citations omitted).

Moreover, federal courts are deferential to the business judgment of receivers, bankruptcy trustees, and similar estate custodians in the context of sales of estate property. *See, e.g., S.E.C. v. Nguyen*, No. SA19-cv-1174-AG(KESX) WL 12470145, at *3 (C.D. Cal. Nov. 4, 2019) (approving sale procedures, citing to receiver's declaration that, in receiver's business judgment, proposed marketing and sale procedures were in the best interest of the estate and would maximize value); *S.E.C. v. Equitybuild, Inc., et at.*, No. 18-cv-5587, 2019 WL 1953117, at *4 (N.D. Ill. May 2, 2019) (noting that the court "declines to restrict the Receiver from exercising his sound business judgment" in overruling creditor's objection to receiver's proposed minimum price for judicial public sale of real property); *see also Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983) (affirming bankruptcy court's approval of trustee's sale of assets because the "decision concerning the form of sale therefore rested within the business judgment of the trustee"). This deference to an appointed fiduciary's business judgment also permits federal courts to authorize a receiver to adjust approved sale terms or procedures without further order of the court. *See, e.g., United States v. Spencer*, No. 4:20-CV-00556(GKF)(CDL), 2021 WL 5114315, at *1 (N.D. Okla. Sept. 23, 2021) (permitting adjustment of minimum bid in public sale of real property under 28

-13-

U.S.C. § 2001, if necessary, without further permission of the court). Such flexibility is typical in bidding and sale procedures approved by bankruptcy courts in connection with asset sales conducted to pursuant 11 U.S.C. § 363 ("363 sales"), and district courts recognize that 363 sales provide instructive guidance in evaluating judicial sales of receivership property. *See, e.g.*, *S.E.C. v. Capital Cove Bancorp LLC*, No. SA 15-cv-980-JLS (JCx), 2015 U.S. Dist. LEXIS 174856, at *14 (C.D. Cal. Oct. 13, 2015) (looking to the Bankruptcy Code for guidance in connection with sale of receivership property).

Finally, an auction process need not permit unrestricted public participation to qualify as a "public sale" under Section 2001(a) – the "terms and conditions" directed by the court can limit auction participation to bidders that meet certain requirements. *See, e.g., S.E.C. v. Champion-Cain*, No. 3:19-CV-1628-(LAB)(AHG), 2020 WL 2309270, at *3 (S.D. Cal. May 8, 2020) (approving auction with minimum bid, good faith deposit, and proof of fund requirements and pre-auction bid deadline as "public sale" under 28 U.S.C. § 2001(a)).

As explained below, the Bidding Procedures meet all such relevant requirements.

**Approval of Proposed Bidding Procedures**

The Receivership Order empowers the Receiver, subject to further Court order, to sell Receivership Property as he deems prudent outside the ordinary course of business free and clear of all Interests, with such Interests attaching to the applicable sale proceeds. Receivership Order ¶ 3(d). Pursuant to 28 U.S.C. §§ 2001 and 2002, such sales outside the ordinary course of business may be by private sale or public auction. The Receiver, in the exercise of his business judgment, has determined that the sale of the Property through a competitive public auction in accordance with the Bidding Procedures will enable him to obtain the highest and best offer for the Property and is in the best interests of stakeholders. *Id.* ¶ 7.

The Bidding Procedures, including the procedures regarding the proposed Auction, satisfy the "public sale" requirements set forth in § 2001(a). All prospective buyers that sign an NDA will have an opportunity to conduct due diligence and submit a Qualified Bid by the Bid Deadline, and the requirements for Auction participation are consistent with those approved by other courts in the context of public judicial sales (e.g., proof of funds, a good faith deposit, and proof of due

-14-

304108453

authorization). Additionally, Fresno, California (i.e., the proposed location of the Auction) is in the Eastern District of California (the district wherein the Receiver was first appointed), as required by § 2001(a).

The Receiver has also publicized the sale via local periodicals in compliance with 28 U.S.C. § 2002 as publications of general circulation in all relevant counties. Miller Decl. ¶ 14. This publication is in addition to Capstone's extensive, six-month marketing process, described above. Through this process, the Receiver is confident that the parties most interested and capable of closing the proposed transaction have been contacted, signed NDAs, and have already performed diligence in relation to the sale. *Id.* ¶ 15 Accordingly, in the exercise of his business judgment, the Receiver has determined that further marketing, outside that set forth in this Motion and the Bidding Procedures, is unnecessary and unlikely to result in the identification of additional bidders. *Id.*

If Capstone's marketing efforts and publication notice of the sale, including the four weekly public notices published in accordance with 28 U.S.C. § 2002, do not attract any Qualified Bidders other than the Stalking Horse Bidder by the Bid Deadline, the Receiver need not proceed with the scheduled Auction for the sale to the Stalking Horse Bidder to constitute a "public sale." *See, e.g., Champion-Cain*, 2020 WL 2309270, at *4 (approving sale to sole qualified bid following cancellation of auction as a "public sale" under 28 U.S.C. § 2001(a)).

In sum, the Receiver believes that the Bidding Procedures will encourage bidding for the Property and are consistent with the relevant standards governing auction proceedings and bidding incentives in receivership proceedings. Miller Decl. ¶ 16. Accordingly, the proposed Bidding Procedures are reasonable, appropriate, and within the Receiver's sound business judgment.

### Sales Free and Clear of Interests

District courts have "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *See S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (*quoting SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)). This broad authority "includes the equitable power to approve the sale of property free and clear of all liens, claims, interests, and encumbrances." *Bank of New York Mellon Tr. Co. v. Canton II, Inc.*, No. SA-21-cv-01296-JKP, 2022 WL 17077010, at *2 (W.D. Tex. Nov. 18, 2022). *See also S.E.C. v. Capital Cove*

-15-

304108453

*Bancorp LLC*, No. SA 15-cv-980-JLS (JCx), 2015 WL 9701154, at *4 (C.D. Cal. Oct. 13, 2015) (citations omitted) ("it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'"); *Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 357 (1889) ("[T]he removal of alleged liens or incumbrances [sic] upon property, the closing up of affairs of insolvent corporations, and the administration and distribution of trust funds are subjects over which courts of equity have general jurisdiction."). "Federal courts overseeing receiverships have repeatedly reaffirmed" the ability of courts to authorize sales free and clear. *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, No. 18-667, 2019 WL 5102206, at *10 (E.D. Pa. Oct. 11, 2019).

The Supreme Court, in *Mellen v. Moline Malleable Iron Works*, confirmed the district court's power to approve a sale free and clear of all encumbrances. 131 U.S. 352, 367 (1889); *accord Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933) ("A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all incumbrances"). Additionally, courts have the found that when the Receiver's proposed solution is the lien attaching to the proceeds of the sale, rather than extinguishing the lien, that proposed solution is "fair, reasonable, consistent with the goals of equity, and properly within the Court's authority in the equitable receivership context." *SEC v. Champion-Cain*, No. 3:19-cv-1628-LAB-AHG, 2020 WL 4673397, at *5–6; *see Mellen*, 131 U.S. at 370 (transferring the creditor's rights from the property to the proceeds of the sale); *Capital Cove*, 2015 WL 9701154, at *8 (attaching the creditors' interests to the proceeds of the sale); *Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, No. 14-cv-7581, 2015 WL 5180678, at *6 (N.D. Ill. Sept. 4, 2015) ("[A] a sale of the Hospitality Property free and clear of all Interests, with such Interests attaching to the Sale Proceeds with the same force and in the same priority as currently exists, will maximize the potential recoveries of the alleged defrauded investors while still protecting the rights of claimants with Interests in the Hospitality Properties.").

The Court can approve sales free and clear of liens, claims, and encumbrances even if the sale proceeds will not repay lienholders in full. *SEC v. Kapoor*, No. 23-cv-24903-CIV-JB, 2004 WL 5264414, at *3 (S.D. Fla. Nov. 7, 2024) (approving sale of real property free and clear of liens with

304108453

liens to attach to sale proceeds, even though all interests on the property would not be paid in full). "There is no outright ban" on such sales, and the decision of "whether to authorize free-and-clear sales that will not generate a surplus is a matter of the district court's equitable discretion." *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, No. 18-667, 2019 WL 5102206, at *10 (E.D. Pa. Oct. 11, 2019).

The Receiver has determined that the best method of maximizing recovery is through the sale of the Property and that the value he will receive via auction will likely exceed any value he would obtain if the assets were sold piecemeal via private sale. As assurance of value, bids will be tested through the Auction consistent with the requirements of 28 U.S.C. § 2001. Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate market exposure and an open and fair auction process—the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

The Receiver and his professionals are making every effort for success under these circumstances. During the over six-month marketing process, Capstone has contacted numerous interested parties and has assembled a data room that approximately 31 Potential Bidders have accessed to conduct diligence. The Receiver and his advisors are responding to indications of interest and have been in active discussions with several potential purchasers.

The proposed Bidding Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the highest or otherwise best offer reasonably available for the Property. Further, the Bidding Procedures provide the Receiver with the opportunity to consider all Qualified Bids and to select, in his reasonable business judgment, and after consultation with the Consultation Parties, the highest or otherwise best offer for the Property. Moreover, the Bidding Procedures provide the Receiver with the flexibility to modify the Bidding Procedures, if necessary, to maximize value.

The sale being approved free and clear of Interests, even though not all secured creditors may be paid in full, is critical to the Receiver's ability to maximize sale proceeds for the receivership estate. Interests attaching to the property sold—as opposed to the sale proceeds—would have the effect of chilling the bidding process, particularly when secured creditors are unlikely to achieve a

-17-

304108453

higher and better sale price for the Property if foreclosed on or sold on a piecemeal basis. Preliminary title work indicates that there are no lienholders on the Property junior to Plaintiffs and that the net sale proceeds should be sufficient to pay all closing costs and senior interests in full (except for Plaintiffs).

**Approval of Bid Protections**

Under 28 U.S.C. § 2001(a), realty in the possession of an appointed receiver is subject to a public sale process "upon such terms and conditions as the court directs." 28 U.S.C. § 2001. In other words, the Court has broad discretion to approve the precise terms, conditions, and timeline of a federal receiver's proposed sale of receivership property. *See United States v. Little*, No. CV-F-02-5141LJODLB, 2008 WL 2676808, at *2 (E.D. Cal. June 30, 2008) ("[T]his Court has broad discretion in setting the terms and conditions of a sale under 28 U.S.C. § 2001."); *see also United States v. Branch Coal Corp.*, 390 F.2d 7, 10 (3d Cir. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales. . . . It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof."); *United States v. Heasley*, 283 F.2d 422, 426 (8th Cir. 1960) ("In general, the rule in federal courts is well settled that the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court and this discretion will not be disturbed on appeal except in cases of its abuse.").

Here, after an extensive, six-month marketing process, the Receiver designated the likely Stalking Horse Bidder and seeks to provide it with Bid Protections not to exceed 2% in the aggregate of the purchase price set forth in the applicable purchase and sale agreement. The Bid Protections are incentive to the Stalking Horse to submit a binding bid, thus establishing a minimum recovery to the estate while Capstone continues with the marketing process. The Receiver believes, in his business judgment, that designating the Stalking Horse Bidder and awarding the Bid Protection will help maximize the value received for the Property. Miller Decl. ¶ 11.

304108453

## V.  NOTICE OF THIS MOTION

Notice of this motion will been served via: (i) first class mail on: (a) the Consultation Parties, (b) all parties who have expressed a bona fide interest in purchasing the Property, and (c) the service list established in this case; (ii) via expedited delivery to the potential holders of Interests; and (iii) via the Court's ECF filing system.  The Receiver submits that no further notice is required.

## VI.  CONCLUSION

For all the reasons set forth above, the Receiver respectfully submits that good cause exists for the Court to enter an order in the form attached as **Exhibit A** approving the Bidding Procedures and granting the Receiver such other and further relief to which he may be justly entitled.

Dated: October 27, 2025

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By:  */s/ Terence G. Banich*
Terrence G. Banich

*Attorneys for the Receiver,*
Lance Miller

-19-

304108453

**PROOF OF SERVICE**

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On  October 27, 2025, I served the following document(s) described as:

**NOTICE OF MOTION AND MOTION OF RECEIVER LANCE MILLER FOR (I) AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF REAL PROPERTY, INCLUDING THE DESIGNATION OF A STALKING HORSE BIDDER AND THE AWARD OF BID PROTECTIONS AND (B) SCHEDULING THE AUCTION AND SALE HEARING; AND AFTER FURTHER NOTICE, AN (II) ORDER APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF; AND MEMORANDUM OF POINTS AND AUTHORITIES (WESTLANDS)**

as follows:

**[ ]     BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses on **Exhibit 1** attached hereto and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[X]     BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused the document(s) to be sent from e-mail address janice.brooks-patton@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

> ali.mojdehi@mgr-legal.com
> Jsmcnutt@kerncounty.com
> jon@cavalrei.com
> degan@wilkefleury.com
> storigiani@youngwooldridge.com
> HGrossman@cozen.com
> pswain@cozen.com
> RStewart@pearsonrealty.com
> kstewart@pearsonrealty.com
> aferdinandi@pearsonrealty.com
> DKevorkian@pearsonrealty.com
> sgrosz@pearsonrealty.com
> jreisz@kleinlaw.com
> ckay@caagproperties.com
> mindynili@gmail.com

**[ ]     BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed on **Exhibit 1**. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

-20-

304108453

**[ ]    BY PERSONAL SERVICE:**  I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]    E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on October 27, 2025, at Winnetka, Illinois.

*/s/Terence G. Banich*
Terence G. Banich

-21-

304108453