# EXHIBIT C

Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:    (312) 902-5200
Facsimile:    (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:    (214) 765-3600
Facsimile:    (214) 765-3602

*Attorneys for the Receiver*
Lance Miller

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE,<br><br>Defendants. | No. 1:24-cv-01102-KES-SAB<br><br>**DECLARATION OF LANCE MILLER**<br><br>Judge: Hon. Kirk E. Sherriff<br><br>Action Filed: September 16, 2024 |

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

304115904

I, Lance E. Miller, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1.      I am over the age of eighteen years, am under no disability, and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this Case (defined below), I could and would testify competently to the facts set forth in this declaration.

2.      I submit this declaration in support of the motion filed in the above-captioned case to establish sale and auction procedures related to the "Westlands" Property (the "**Bidding Procedures Motion**").[2]

3.      I am the Founder and a Managing Director of Pivot Management Group, LLC ("**Pivot Group**"), a financial advisory and turnaround management firm with an office located at 1230 Rosecrans Avenue, Suite 530, Manhattan Beach, California 90266. I have more than 19 years of experience in complex receiverships, workouts, restructurings, corporate and shareholder disputes, and distressed M&A processes. As an attorney and later as a partner in distressed advisory firms (including Pivot Group), I have provided services over a multitude of industries and markets to companies, creditors, equity holders, asset purchasers, receiverships, and creditors' trusts.

4.      On September 16, 2024, The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC (together, the "**Prudential Lenders**") filed a *Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents and Profits Clause; and Injunctive Relief* [Dkt. No. 1] initiating the above-captioned case, and on September 18, 2024, an *Ex Parte Application Regarding Motion for Order Appointing Receiver and for Preliminary Injunction* [Dkt. No. 12].

5.      On September 25, 2024, after notice and hearing, the Court entered the *Agreed Order Appointing Receiver with Limited Authority* [Dkt. No. 51, as amended by Dkt. No. 107] and on November 7, 2024, entered the *Order Expanding Receivership and for Preliminary Injunction* [Dkt. No. 120 as amended] (the "**Receivership Order**"), appointing me as receiver over the Receivership

---

[2] All capitalized terms used in this Declaration but not defined shall have the meanings ascribed to them in the Bidding Procedures.

304115904

Property (as defined in the Receivership Order).

6.    I, with the assistance of Pivot Group and my other Court-approved professionals, have spent considerable time analyzing the Receivership Property and related operations and have concluded, in the exercise of my business judgment, that a sale of the Property (defined below) is appropriate.

7.    In consultation with Capstone Capital Markets LLC ("**Capstone**"), my other professional advisors, and Plaintiffs, I evaluated the Receivership Property and various potential marketing strategies, including marketing all Receivership Property together, attempting to market Receivership Property with non-receivership property, or splitting the property into separate groups. Ultimately, in order to maximize value, I decided to place the Receivership Property into three categories in relation to the marketing and sale process: (i) parcels of real estate that should be sold together to maximize value and that is the subject of the Motion, (ii) parcels of real estate that are the subject of the bidding procedures order found at Docket No. 308 (the "**Semitropic Property**"), and (iii) parcels of real property whose value is not linked to operation of the Property or the Semitropic Property, which are the subject of a motion to employ a real estate broker approved by the court [Dkt. No. 205] and that are not the subject of this Motion. In the exercise of my business judgment, I thereafter determined that conducting an organized sale process, via a competitive public auction, would enable me to obtain the highest and best offer for the Property and would be in the best interest of stakeholders.

As reflected in the *Declaration of Skye Root* filed concurrently herewith, Capstone has undertaken an extensive marketing process for the Property that began in April 2025. As a result of Capstone's efforts, I have identified Bravante Farm Capital, LLC or its assignee ("**Bravante**") as the likely Stalking Horse Bidder for the Property. Bravante is in the final stages of due diligence, and I expect to finalize a purchase and sale agreement with Bravante (the "**Bravante PSA**") in early/mid December 2025. Upon execution of the Bravante PSA, I will direct my counsel to file a Notice of Stalking Horse Bidder designating Bravante as the Stalking Horse Bidder. If I am unable to timely finalize the Bravante PSA, Plaintiffs have agreed to submit a purchase and sale agreement for the Property that contains a credit bid to encourage an Auction of the Property (the "**Credit Bid**

3

304115904

PSA"). In that event, I will direct my counsel to file a Notice of No Stalking Horse with the Court, which will include a copy of the Credit Bid PSA that will be used as the form for competing Bids to be submitted for the Property. The Credit Bid PSA will not contain any Bid Protections in favor of Plaintiffs.

8. I believe that the proposed Bidding Procedures provide prospective buyers with sufficient time and information to submit competitive bids that represent the highest or otherwise best value for the Property, while minimizing any unnecessary cost or delay. I also believe the Bidding Procedures strike an appropriate balance between giving potential buyers sufficient notice of the terms and procedures of the sale and Auction and retaining sufficient flexibility for me to efficiently adjust to any changes in circumstances.

9. I believe the Bidding Procedures also appropriately impose bid requirements to help ensure that only qualified, serious bidders who are capable of closing a sale of this magnitude are allowed to participate in the Auction. These provisions of the Bidding Procedures – including the deposit and proof of funds requirements – were formulated in consultation with my Court-approved professionals. Considering the status of Capstone's marketing and diligence process, which began in April 2025, I believe that the timeline in the Bidding Procedures will provide parties with sufficient time to complete diligence and formulate competing bids.

10. Based on the marketing process and arm's-length negotiations with the Potential Bidders, I, in consultation with Plaintiffs and my Court-approved professionals, determined that the inclusion of the Bid Protections is necessary and appropriate to obtain a Potential Bidder's commitment to serve as the Stalking Horse Bidder – a commitment I believe will yield net benefits to the receivership estate. In my view, by definitively establishing acceptable baseline terms for the sale, a Stalking Horse PSA will encourage potential buyers to bid for the Property and attract only qualified bidders who are willing to submit higher and better bids for the Property, thereby maximizing the realizable value of the Property. Additionally, I believe that setting a floor for the value of the Property and locking in a Stalking Horse Bidder's commitment provides significant downside protection. Furthermore, because a Bid must exceed the Stalking Horse Purchase Price by an amount more than the Bid Protections to constitute a Qualified Bid, in the event I consummate

4

304115904

an alternative transaction – a prerequisite for the Stalking Horse Bidder's entitlement to Bid Protections– payment of such protections from the proceeds will not unduly diminish the receivership estate.

11.    Based on discussions with my Court-approved counsel, I believe that the Bidding Procedure comply with the requirements of 28 U.S.C. §§ 2001 and 2002; however, to the extent not fully satisfied, I request a waiver of compliance with those statues. I believe that such waiver is necessary and appropriate to achieve the highest sale price for the Property, pursuant to an auction process that provides the maximum exposure to bidders in the United States and internationally. I further believe that listing and selling the Property through Capstone and as described herein is the best method to obtain the highest price for the Property.

12.    Given the nearly seven-month marketing and diligence period that has already occurred, I believe that the proposed timeline set forth in the Bidding Procedures is sufficient to complete a fair and open sale process that will maximize the value received for the Property. I further believe that the proposed timeline set forth in the Bidding Procedures will provide interested parties with sufficient time to perform any remaining due diligence given that the process is well understood at this juncture and the material they need is readily available.

13.    Moreover, I have published notice of the potential sale of the Property in the Hartford Sentinel (Kings County), Fresno Business Journals (Fresno County), and Bakersfield Californian (Kern Count) one time per week for four weeks.

14.    Based on the above, I am confident that the parties most interested and capable of closing the proposed transaction have been contacted, signed non-disclosure agreements, and have performed diligence in relation to the sale. Accordingly, in the exercise of my business judgment, I have determined that further marketing, outside that set forth in the Bidding Procedures, is unnecessary and unlikely to result in the identification of additional bidders.

15.    In sum, I believe in my professional and business judgement that the Bidding Procedures will encourage bidding for the Property, are consistent with the relevant standards governing auction proceedings and bidding incentives in receivership proceedings and are in the best interests of the receivership estate.

5

304115904

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27, 2025

In Manhattan Beach, California

By:  /s/ Lance E. Miller
Lance E. Miller

6

304115904