# Exhibit A

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT
AND
JOINT ESCROW INSTRUCTIONS**

This Amended and Restated Purchase and Sale Agreement and Joint Escrow Instructions (the "**Agreement**") dated June 17, 2026, to be effective on the date when all parties have executed it, which date shall be noted on the signature page hereto (the "**Effective Date**"), is made and entered into by and between (i) LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") pursuant to the *Order Expanding Receivership and for Preliminary Injunction* (as supplemented or amended, the "**Receivership Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB (the "**Proceeding**") pending in the U.S. District Court for the Eastern District of California (the "**Court**") and (ii) BRIGHTFIELD INVESTMENTS, LLC, a Delaware limited liability company  ("**Buyer**"). For convenience, Buyer and Seller are sometimes referred to herein collectively as the "**Parties**" and individually as a "**Party**."   This Agreement is made with respect to the following facts and circumstances which the Parties affirm as true and accurate:

A.    Seller, solely in his capacity as Court-appointed receiver, has the exclusive possession and control of, and authority to sell (subject to entry of the Sale Order), that certain real property consisting of approximately 31,556.73 assessed acres of land, as more particularly described on **Exhibit A** attached hereto (collectively, the "**Land**").

B.    Buyer desires to purchase and Seller desires to sell the Land and other components of the Property (defined below) on the terms and subject to the conditions herein set forth.

C.    The transactions contemplated by this Agreement are subject to the approval of the Court and will be consummated only pursuant to (i) the marketing procedures order of the Court to be entered in the Proceeding substantially in the form attached hereto as **Exhibit B** (the "**Marketing Procedures Order**") and (ii) if Buyer is the Successful Bidder (as defined in the Marketing Procedures Order), an order of the Court entered in the Proceeding authorizing the transactions contemplated herein in substantially in the form attached hereto as **Exhibit C** ("**Sale Order**").

D.    The transactions contemplated by this Agreement are intended by Buyer to be made concurrently with the proposed purchase by Buyer of other real property related to or associated with the farming and other operations of the Property (the "**Concurrent Sale**" of the "**Concurrent Sale Property**")  pursuant to one or more separate *Purchase and Sale Agreements and Joint Escrow Instructions* between Buyer and the third-party owner(s) of such property (the "**Third-Party Owner(s)**"); provided, however, that closing of a Concurrent Sale shall not be a condition precedent to the binding nature or effectiveness of this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing, the parties hereto hereby covenant and agree as follows:

1.    **Purchase and Sale**.

-1-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

1.1    <u>Purchase and Sale of Property</u>.  Subject to the terms and upon satisfaction or proper waiver of the conditions set forth herein, Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase and acquire from Seller, the Property, which shall consist of the following and, when used herein, the term "**Property**" shall mean and include collectively all of the following solely to the extent it is Receivership Property (as defined in the Receivership Order):

(a)    The Land;

(b)    All structures, permanent plantings, trees, whether *fructus naturales* or *fructus industriales*, whether mature or immature, together with all trellises, wires, endposts, and stakes relating thereto, and other improvements located on the Land (collectively, the "**Improvements**"), together with all fixtures located on or attached to the Land or attached to the Improvements which are deemed real property under the law of the State of California (the "**Fixtures**"), including without limitation all roads, paved areas, implement covers, fences, gates, cattle guards, and all improvements and infrastructure; and all water tanks, wells, casings, pumps, gearheads, motors, engines, control panels, fuel storage, all Seller-owned utility poles and transmission lines (if any), water and irrigation system equipment and facilities, pivots, sprinklers, drip irrigation systems, hand lines, drainage system equipment and facilities, irrigation motors, pipelines, pressure systems, lift pumps, siphons, filtration equipment, water treatment equipment and apparatus, ditches, culverts, canals, ponds, all drainage pipelines, settlement and/or detention/retention ponds, lagoons, leech systems, borrow pits and equipment, all mainlines and drip lines, emitters, all spare and replacement parts, components and supplies located on the Land or that provides drainage, irrigation and/or water to the Land;

(c)    All rights and interests, if any, in and to all rights, rights of way, reversions, remainders, strips or gores, if any, between the Land and abutting properties, and any land lying in or under the bed of any street, alley, road or right-of-way, abutting or adjacent to the Land, all covenants, conditions and restrictions, privileges, easements, servitudes, hereditaments, and appurtenances appurtenant to the Land, or otherwise used or useful to or of benefit to the use and enjoyment of the Land and/or providing any benefit with respect to access, ingress, egress, irrigation water, domestic water, electricity, gas, telephone, sewer or other utility service to the Land, whether or not of record (collectively, the "**Appurtenant Rights**");

(d)    All crops and farm products, whether *fructus naturales* or *fructus industriales* (emblements), for the 2026 crop year and thereafter generated by the Land (the "**Crops**") subject to the provisions of <u>Section 1.6</u> below;

(e)    All rights of Seller in and to all oil, gas, minerals, and other hydrocarbon substances, on or hereafter on or under the Land before or after extraction, if any (collectively, the "**Oil, Gas and Mineral Rights**");

(f)    All surface water rights, groundwater rights and other water rights or water credits appurtenant to the Land, including riparian, littoral, appropriative, prescriptive, permitted, overlying, adjudicated and other rights, any and all shares of water stock or mutual water company stock appurtenant to the Land, all public agency water entitlements, credits, allocations, pumping rights or similar rights associated with or derived from the Property relative to groundwater as the result of any adjudications or other court or regulatory proceedings, or under any groundwater sustainability plan or similar plan associated with the Land, and all rights in any contracts for the sale

-2-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

of water generated from irrigation wells located on the Land, together with the Poso Creek Water, as defined below (collectively, "**Water Rights**"), subject to the provisions of <u>Section 1.8</u> below;

(g)    Any licenses or other agreements material to the Property and operations thereon as listed on <u>Schedule 1.1(g)</u> (collectively, "**Contracts**") that Buyer would like to have assigned to it at Closing, subject to the provisions of <u>Section 1.6</u> below; provided that (i) such licenses or agreements are Receivership Property assignable by Seller to Buyer without any liability or consideration and (ii) in the event that there are any licenses or agreements that are material but not Receivership Property, Seller will use commercially reasonable efforts to provide partial assignments where possible (and without any liability or consideration) and enter into other agreements or arrangements that are reasonably satisfactory to Buyer and approved by the Court, as necessary;

(h)    All of Seller's right title and interest in and to, as a member of, POSO CREEK WATER COMPANY, LLC, a California limited liability company ("**Poso Creek**"), as such interests are identified on <u>Schedule 1.1(h)</u>, attached hereto, and all right title and interest of Seller in and to its share of stored water inventory as set forth on <u>Schedule 1.1(h)</u> (the "**Poso Creek Water**"), and water storage rights held by Poso Creek for the benefit of Seller; and

(i)    The net proceeds (net of the 2025 Cultural Costs (as defined in <u>Section 1.7</u> below), and all hauling, huller/sheller, packing, shipping and processing costs deducted by the processor/packer/shipper) from the sale or disposition of all crops and farm products generated by the Land for the 2025 crop year, received by Buyer or Seller on or after April 1, 2026 (the "**2025 Crop Proceeds**"), subject to the provisions of <u>Section 1.7</u> below.

1.2    <u>As-Is Condition of Property; Disclaimer of Warranties; Certain Disclosures</u>.

(a)    Buyer acknowledges that Seller is acting solely in his capacity as Court-appointed receiver and, consequently, has limited knowledge of the condition of the Property. **ACCORDINGLY, BUYER ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE PROPERTY "AS-IS", "WHERE-IS", AND "WITH ALL FAULTS AND DEFECTS" AS OF THE EFFECTIVE DATE AND CLOSING DATE, AND BUYER FURTHER ACKNOWLEDGES AND AGREES THAT SELLER HEREBY EXPRESSLY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES CONCERNING THE CONDITION, VALUE AND QUALITY OF THE PROPERTY AND ANY PORTIONS THEREOF, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. BUYER ACKNOWLEDGES THAT NO WARRANTY HAS ARISEN THROUGH TRADE, CUSTOM OR COURSE OF DEALING WITH SELLER. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT IT HAS HAD THE OPPORTUNITY TO INSPECT THE PROPERTY AND BUYER WILL RELY SOLELY ON ITS INVESTIGATION OF THE PROPERTY IN ITS ACQUISITION THEREOF. SELLER HAS NO OBLIGATION TO ALTER, REPAIR OR IMPROVE THE PROPERTY. BUYER REPRESENTS TO SELLER THAT BUYER WILL CONDUCT PRIOR TO CLOSING SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY,** PROVIDED, HOWEVER, THAT NOTHING IN THIS <u>SECTION</u>

-3-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

1.2(a) SHALL RELIEVE SELLER FROM OBLIGATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT OR ANY CLOSING DOCUMENTS DELIVERED PURSUANT TO SECTION 10.2 OF THIS AGREEMENT.

(b)    Buyer acknowledges and agrees that Buyer will not rely upon any (i) representations or warranties (oral or written) made by or purportedly on behalf of Seller unless expressly set forth in this Agreement, the documents delivered at Closing pursuant to Section 10.2 of this Agreement, or any representations or warranties (oral or written) of any Lenders (as defined below) or (ii) documents or other information (oral or written) supplied by, or purportedly on behalf of, Seller, including Lenders. **BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY DOCUMENTS OR INFORMATION PROVIDED TO BUYER BY SELLER OR ON SELLER'S BEHALF HAVE BEEN OBTAINED FROM A VARIETY OF SOURCES, HAVE NOT BEEN INDEPENDENTLY INVESTIGATED OR VERIFIED BY SELLER, AND ARE NOT TO BE RELIED UPON BY BUYER IN ENTERING INTO THIS AGREEMENT OR PURCHASING THE PROPERTY. EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT OR IN THE DOCUMENTS DELIVERED AT CLOSING PURSUANT TO SECTION 10.2 OF THIS AGREEMENT, SELLER MAKES NO EXPRESS REPRESENTATIONS OR WARRANTIES AND DISCLAIMS ANY AND ALL IMPLIED WARRANTIES CONCERNING THE TRUTH, ACCURACY, AND COMPLETENESS OF ANY DOCUMENTS OR INFORMATION SUPPLIED TO BUYER BY SELLER OR ANYONE ACTING OR PURPORTING TO ACT ON SELLER'S BEHALF.**

(c)    **EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT OR IN THE DOCUMENTS DELIVERED AT CLOSING PURSUANT TO SECTION 10.2 OF THIS AGREEMENT, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, CONCERNING ANY MATTERS INVOLVING THE PROPERTY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER HEREBY AFFIRMATIVELY DISCLAIMS ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES CONCERNING THE FOLLOWING MATTERS: (i) EXCEPT AS EXPRESSLY SET FORTH IN THE DEED, ANY MATTERS AFFECTING TITLE TO THE REAL PROPERTY INCLUDING THE EXISTENCE OR SUFFICIENCY OF LEGAL AND PHYSICAL ACCESS; (ii) THE COMPLIANCE OF THE PROPERTY OR ANY PORTION THEREOF, INCLUDING BUT NOT LIMITED TO IMPROVEMENTS, SOIL, GROUNDWATER AND SUBSURFACE GEOLOGY, WITH ANY AND ALL APPLICABLE FEDERAL, STATE, AND LOCAL LAWS, ORDINANCES, PERMITS, RULES, REGULATIONS, OR REQUIREMENTS, INCLUDING, BUT NOT LIMITED TO, ANY OF THE FOREGOING PERTAINING TO ENVIRONMENTAL PROTECTION, POLLUTION AND LAND USE; (iii) THE SUITABILITY OR APPROPRIATENESS OF THE PROPERTY OR ANY PORTION THEREOF FOR AGRICULTURAL USES OR FOR THE CONDUCT OF ANY USES OR ACTIVITIES THAT BUYER MAY CONTEMPLATE OR ELECT TO CONDUCT THEREON, OR THE AVAILABILITY OF WATER OR WATER RIGHTS ON OR BENEFITTING THE PROPERTY; (iv) THE PRESENCE OF ANY LATENT OR PATENT DEFECTS AFFECTING THE PROPERTY INCLUDING BUT NOT LIMITED TO**

-4-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**IMPROVEMENTS, SOIL, GROUNDWATER AND SUBSURFACE GEOLOGY; AND (v) THE QUALITY OF CONSTRUCTION AND MATERIALS INCORPORATED INTO ANY IMPROVEMENTS LOCATED ON THE PROPERTY AND THE EXISTENCE, QUALITY, NATURE, ADEQUACY, OR CONDITION OF ANY UTILITIES SERVING THE PROPERTY.**

(d)    **BUYER, FOR ITSELF AND ITS HEIRS, SUCCESSORS AND ASSIGNS, AND ANYONE CLAIMING BY, THROUGH, OR UNDER BUYER, HEREBY EXPRESSLY (i) WAIVES ANY CLAIM AND CAUSE OF ACTION WHICH RELATE, REFER, PERTAIN TO, OR ARISE OUT OF ANY OF THE MATTERS DESCRIBED IN THIS SECTION 1.2, AND ANY FAILURE BY SELLER TO DISCLOSE INFORMATION TO BUYER CONCERNING THE PROPERTY (COLLECTIVELY, "SUCH CLAIMS") (REGARDLESS OF WHETHER SUCH CLAIMS ARE KNOWN OR DISCOVERABLE AS OF THE EFFECTIVE DATE OR THE CLOSING DATE) AND (ii) RELEASES SELLER FROM ANY AND ALL LIABILITY FROM ANY SUCH CLAIMS; PROVIDED, IN EACH CASE THE FOREGOING WAIVER AND RELEASE DOES NOT EXTEND TO (AND SHALL EXPRESSLY EXCLUDE) (A) CLAIMS ARISING FROM SELLER'S FRAUD OR WILLFUL BREACH OF THIS AGREEMENT, AND (B) CLAIMS ARISING FROM SELLER'S FAILURE TO PERFORM OBLIGATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT OR IN THE CLOSING DOCUMENTS TO BE DELIVERED PURSUANT TO SECTION 10.2 OF THE AGREEMENT.**

With respect to the waivers and releases set forth herein and elsewhere in this Agreement, in each case relating to claims unknown to or unsuspected by Buyer, Buyer hereby acknowledges that such waivers and releases are being made after obtaining the advice of counsel and with full knowledge and understanding of the consequences and effects of such waivers and releases, and that such waivers and releases are made with the full knowledge, understanding and agreement that California Civil Code Section 1542 provides as follows, and that the protections afforded by said code section are hereby waived by Buyer solely to the extent such claims do not involve (i) Seller's fraud or willful breach of this Agreement and (ii) Seller's obligations expressly set forth in the Agreement:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**



**Buyer's Initials**

1.3    <u>Release</u>.   At the Closing, as a condition of Seller's obligation to convey the Property to Buyer, Buyer shall deliver to Seller and The Prudential Insurance Company of America ("**Prudential**"), PAR U Hartford Life & Annuity Comfort Trust ("**PAR U**"), and PGIM Real Estate

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Finance, LLC (together with Prudential and PAR U, collectively, the "**Lenders**") a release (the "**Release**") in the form and content set forth on **Exhibit D.**

1.4　　Not a Residential Purchase.　Notwithstanding the existence of any residence upon the Land, any such residence is incidental to the Property and the parties acknowledge, understand, and agree that this Agreement is a commercial transaction and Buyer is not a homebuyer purchasing a dwelling or residence.　As a material inducement to Seller to sell the Property, Buyer represents and warrants: (i) that it is purchasing the Property as a commercial transaction; (ii) that the existence of any residence is not a material consideration of its desire to purchase the Property; (iii) that nothing of value is being attributed to any such residence; and (iv) that Buyer does not intend to occupy any such residence as Buyer's residence.　To the fullest extent permitted by applicable law, Buyer waives any and all disclosures and requirements specific to the sale of any dwelling, home, or residence.

1.5　　Bid Deposit.　The Parties acknowledge that, pursuant to the Original Agreement (as defined below), Buyer previously deposited with Escrow Holder an amount equal to $8,196,655.88 (the "**Initial Bid Deposit**").　Within three (3) business days of Buyer's execution of this Agreement, Buyer shall deposit into a non-interest-bearing account with Escrow Holder an additional amount equal to $100,000.00 (the "**Additional Bid Deposit**" and, together with the Initial Bid Deposit, the "**Bid Deposit**"), in immediately available, good funds of the United States of America.　If Buyer is the Successful Bidder, the Bid Deposit plus any interest thereon shall be credited and applied toward payment of the cash consideration due at the Closing.　Within three (3) business days following the parties' execution of this Agreement, Escrow Holder shall release and remit the Bid Deposit to Seller to be held by Seller subject to the terms hereof.　If Buyer is the Successful Bidder, the Bid Deposit plus any interest thereon shall be credited and applied toward payment of the cash consideration due at the Closing.　Seller shall remit the Bid Deposit to Buyer if Buyer provides written notice of termination of this Agreement if Buyer is entitled to the Bid Deposit per the terms hereof within five (5) business days following receipt of such notice.

1.6　　Pistachio Crop Contracts.　Buyer acknowledges that Seller has entered into that certain contract for the sale or marketing of 100% of the pistachio crops purchased from the Land for the 2026 and 2027 crop years, a copy of which is attached hereto under Schedule 1.6 (the "**Pistachio Contract**"), and further that Seller has authorized the recording of a memorandum of the Pistachio Contract as a covenant burdening those parcels of the Land which are currently planted to pistachios (the "**Pistachio Memoranda**"), a copy of which is attached hereto under Schedule 1.6, which memoranda is and shall be a Permitted Exception with respect to the condition of title at the Closing.　Buyer agrees to expressly assume the obligations of grower under the Pistachio Contract at the Closing, in the form set forth on **Exhibit H**, attached hereto (the "**Pistachio Contract Assumption**").　Seller shall not amend, modify or terminate the Pistachio Contract without Buyer's prior written approval.

1.7　　2025 Crop Proceeds and Cultural Costs.　Subject to the 2025 Crop Adjustment (defined below), Seller shall be entitled to receive and retain all revenue from the sale or disposition of all crops and farm products generated from the Land for the 2025 crop year (the revenue from the sale of crops and farm products generated from the Land for the 2025 crop year is the "**2025 Crop Year Revenue**") paid prior to Closing, provided that any 2025 Crop Year Revenue received by Seller

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

on or after April 1, 2026 shall be paid to Buyer within five (5) business days after the Closing (provided that the Closing occurs), and outside of Escrow (the "**2025 Crop Revenue Payment**"). For clarity and avoidance of doubt, provided that Closing occurs, and subject to the 2025 Crop Adjustment, Buyer shall be entitled to receive and retain all 2025 Crop Year Revenue which is paid on or after the Closing. Seller and Buyer acknowledge that a portion of the Purchase Price equal to $30,994,701.00 is for the payment to Seller of 60% of the estimated 2025 Cultural Costs (defined below) (the "**Estimated 2025 Crop Year Buyer CC Payment**"), which percentage is the parties' good faith estimate of the percentage of 2025 Crop Year Revenue that Buyer will receive on and after April 1, 2026 (whether in direct payments or as part of the 2025 Crop Revenue Payment), it being agreed that Buyer will be responsible only for the percentage of 2025 Cultural Costs as is equivalent to 2025 Crop Year Revenue that Buyer actually receives (whether in direct payments or as part of the 2025 Crop Revenue Payment).

Within fifteen (15) days following such date as all 2025 Crop Year Revenue has been paid to and received by Buyer pursuant to this Agreement (and not later than March 31, 2027), (i) Seller shall provide Buyer with an accounting of the total actual, documented 2025 Cultural Costs, and an accounting of the total amount of 2025 Crop Year Revenue received by Seller (a) prior to April 1, 2026 and (b) on or after April 1, 2026 through the Closing, (ii) Buyer shall provide Seller with an accounting of the total amount of 2025 Crop Year Revenue received by Buyer on or after the Closing, (iii) Seller and Buyer shall determine the percentage of the 2025 Crop Year Revenue actually received by Buyer (whether in direct payments or as part of the 2025 Crop Revenue Payment) (such percentage, the "**2025 Crop Year Buyer Percentage**"), and (iv) Seller and Buyer shall recalculate and true up the portion of the 2025 Cultural Costs payable by Buyer by multiplying the total amount of the 2025 Cultural Costs by the 2025 Crop Year Buyer Percentage (such product is the "**Actual 2025 Crop Year Buyer CC Obligatio**n"). Accordingly, (a) if the Actual 2025 Crop Year Buyer CC Obligation is less than the Estimated 2025 Crop Year Buyer CC Payment, then Seller shall promptly (not later than 10 business days) reimburse Buyer for the difference, and (b) if the Actual 2025 Crop Year Buyer CC Obligation is more than the Estimated 2025 Crop Year Buyer CC Payment, then Buyer shall promptly (not later than 10 business days) reimburse Seller for the difference (in either case, whether positive or negative, the "**2025 Crop Adjustment**").

As used herein, "**2025 Cultural Costs**" means all out of pocket cultural costs paid by Seller for the 2025 crop year, and shall include, without limitation, all third party management fees, inputs, services, farm labor, water charges, and irrigation pumping and distribution costs (including electrical and/or fuel costs), and harvesting and hauling charges, necessary or desirable for the production, harvest and transportation of the 2025 crops generated by the Land.

At the Closing, Seller shall deliver an Assignment of Crop Proceeds with respect to the 2025 Crop Proceeds in the form set forth as Exhibit K (the "**Assignment of Crop Proceeds**"), however, the provisions of this Section 1.7 shall not merge into any document of conveyance and shall survive the Closing.

1.8     Surface Water/Water Credits.  Except for the maximum amount of surface water that can be carried over pursuant to Westland's Water District rules or direction of Westland's Water District, in either case in effect at the earlier of the Closing or the end of the 2025 Water Year (the "**2025 Carryover Allowance**"), which Seller shall cause to be carried over to the next water year,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Seller shall have the unrestricted right to sell any unused 2025 water year surface water allocations for the Property ("**2025 SWA**") which are not required to irrigate the Property during the period in which they can be used, and shall retain all proceeds thereof.  In the event that Seller cannot reasonably use or sell the 2025 SWA in excess of the 2025 Carryover Allowance, Seller shall have the right to convert such unused 2025 SWA to groundwater credits through recharge, and the costs of such recharge fees shall be reimbursed by Buyer to Seller at the closing as part of the Cultural Cost Reimbursement. Seller shall not sell any groundwater credits of record as of November 1, 2025, or accruing thereafter through recharge of 2025 SWA for which Seller is reimbursed at the Closing, and such shall be conveyed to Buyer at the Closing.

1.9    Solar Options; Post-Closing Obligations. The Parties agree that Seller, or its assignee, shall retain the rights to receive fifty percent (50%) of the following (collectively, the "**Solar Payments**"): (i) all Solar Option Payments, (ii) all Solar Purchase Consideration, and (iii) all Solar Lease Consideration, in each of (i) – (iii) above payable with respect to any extension, exercise of an option to extend a lease or option period, or on the lease or purchase of land or an easement thereon, pursuant to any of the agreements set forth on Schedule 1.1(j) (collectively, the "**Solar Contracts**"). As used herein:

(1)    "**Solar Option Payments**" means the total consideration, whether paid in lump sum or installments, for the right to purchase or lease land or an easement thereon, at a future time, under the Solar Contracts.

(2)    "**Solar Purchase Consideration**" means the total consideration due and payable under a Solar Contract for the purchase of land or an easement thereon, whether paid at the closing thereof in lump sum or paid in installments.  For clarity, the exercise of any option to purchase that is only available after the establishment of a Solar Lease shall be a Capitalization Event for the purpose of determining Solar Lease Consideration, and shall not trigger payment of Solar Purchase Consideration.

(3)    "**Solar Lease Consideration**" means (i) until the occurrence of a Capitalization Event with respect a lease made pursuant to a Solar Contract (a "**Solar Lease**"), the actual lease (rent) consideration for the leased land, and (ii) upon a Capitalization Event, the amount received or to be received by Buyer determined as follows:

(a)    In the event of a Capitalization Event under Section 1.9(4)(i), the net consideration received by Buyer for such sale, after deducting Buyer's reasonable, documented, out-of-pocket transaction costs (including legal fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event;

(b)    In the event of a Capitalization Event under Section 1.9(4)(ii), the net loan proceeds received by Buyer and attributed to the Solar Lease, after deducting Buyer's reasonable, documented, out-of-pocket transaction costs (including legal fees, lender fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event; and

-8-

(c)    In the event of a Capitalization Event under Section 1.9(4)(iii), the amount by which the per-acre consideration received by Buyer for such land exceeds Six Thousand Dollars ($6,000.00) per acre, multiplied by the number of acres so transferred;

in each case provided that, in the event that a Capitalization Event occurs in connection with a transaction involving property other than Specified Solar Parcels (as defined below) pursuant to which the consideration received in respect of the Solar Lease or land subject thereto cannot be reasonably determined, the consideration shall be the amount mutually agreed by the Parties, or if they cannot so agree, as determined by an independent appraisal, the cost to be shared equally by the Parties. Upon the occurrence of a Capitalization Event with respect to any Solar Lease (or portion thereof, if not fully involved in said Capitalization Event), and subject to Seller's receipt of indefeasible payment of all Solar Consideration due in respect of said Solar Lease (or potion thereof), then Seller shall no longer be entitled to any further Solar Consideration with respect to such Solar Lease (or the portion thereof subject to the Capitalization Event).

(4)    "**Capitalization Event**" means, with respect to each Solar Lease the first to occur of one of the following (i) a sale of such Solar Lease, separate and apart from the Land, (ii) receipt of loan proceeds which are secured primarily by the Solar Lease, (iii) the sale or transfer of the land on which the Solar Lease is located to a Solar Counterparty.

(5)    "**Solar Counterparty**" means the counterparty under any Solar Contract or Solar Lease, as the context shall require, their affiliates, and their respective successors and assigns in and to a Solar Contract or Solar Lease.

Seller, or its assignee, shall be paid directly (pursuant to the Solar Contract Payment Assignments (as defined below), or through an escrow closing thereof), fifty percent (50%) of all Solar Payments received after the Closing (such 50% portion, the "**Solar Consideration**"), and if Buyer actually receives the Solar Consideration (rather than being paid directly to Seller), the Solar Consideration shall be held in trust by Buyer for the benefit of Seller and Buyer shall, within ten (10) business days of the receipt thereof, deliver the Solar Consideration to Seller (or its assignee). To the extent that Seller receives any Solar Payments after November 1, 2025, and prior to the Closing, and provided the Closing shall occur, Seller shall hold 50% of the Solar Payment in trust for the benefit of Buyer and shall pay the amount of fifty percent (50%) of such Solar Payments to Buyer at the Closing and through Escrow. Seller shall be authorized to communicate with each Solar Counterparty following the Closing to determine Buyer's compliance herewith. At the Closing, Buyer shall grant a first priority security interest in the Solar Payments for the purpose of securing Buyer's obligation to pay the Solar Consideration to Seller following Closing. The grant of Seller's security interest shall be set forth in a security agreement in the form set forth in **Exhibit J-1** (the "**Solar Consideration Security Agreement**"), attached hereto. To perfect the security interest granted herein, Seller shall file a UCC-1 (Financing Statement) with the California and or Delaware (or other state of Buyer's jurisdiction) Secretary of State in the form of **Exhibit J-2**, attached hereto. In addition, Buyer shall make commercially reasonable efforts, at Buyer's sole cost and expense, to obtain an *Assignment of Solar*

-9-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

*Contract Payments,* substantially in the form set forth on **Exhibit L**, attached hereto, for each Solar Contract, or otherwise approved by Seller (collectively, the "**Solar Contract Payment Assignments**"), signed by Buyer, and to the extent obtained, the counterparty(ies) to the respective Solar Contracts. Notwithstanding any other provision of this Agreement, if Buyer is unable to obtain any Solar Contract Payment Assignment despite having used commercially reasonable efforts to do so, such failure shall not be deemed a breach by Buyer.  Following the Closing, Buyer will (i) promptly pay and perform or otherwise comply with each covenant, agreement, term or condition as required of Buyer under the Solar Contracts and all other agreements to which Buyer is a party with respect to the Solar Contracts, and (ii) not cancel, surrender, modify, amend, or permit the cancellation, surrender, modification, or amendment of any of the Solar Contracts or any of the covenants, agreements, terms, or conditions contained in any of them without the prior written consent, in each case, of Seller or its assignee.

Buyer agrees, for itself and any successors in and to those specific parcels of the Land affected by any Solar Contract, as listed on Schedule 1.9, attached hereto (collectively, the "**Specified Solar Parcels**"), that (A) Buyer shall not, for a period of five (5) years following the expiration or termination of any Solar Contract or option contained therein (the "**Restricted Period**"), enter into a new option or agreement with the same counterparty, or an affiliate thereof, for substantially the same purpose with respect to the same Specified Solar Parcel affected as of the Closing by the expiring or terminating Solar Contract, (B) Buyer shall not take any action, whether independently or in conjunction with a Solar Counterparty, which is intended to, or which results in, the avoidance of Buyer's obligations under this Section 1.9, (C) Buyer shall use best efforts to cause a Capitalization Event to occur with respect to each Solar Lease not later than sixth (6) months following the commencement date of such Solar Lease (the "**Capitalization Deadline**"), provided that (I) Seller shall grant one six (6) month extension to the Capitalization Deadline if an agreement to provide for a Capitalization Event within such extended period has been executed by a party reasonably capable of performing thereunder, and (II) in the event that Buyer fails to cause a Capitalization Event to occur prior to the Capitalization Deadline, as may be extended as provided above, then Seller shall have the right to cause a Capitalization Event to occur and pay to Buyer 50% of the net proceeds thereof, after deducting Seller's reasonable, documented, out-of-pocket transaction costs (including legal fees, lender fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event, and Buyer shall reasonably cooperate with such actions; and (D) in the event Buyer should transfer any Specified Solar Parcel affected by a Solar Contract, Buyer shall assign the affected Solar Contract to such transferee of such Specified Solar Parcel subject to Seller's rights to the Solar Consideration and subject to the Solar Consideration Security Agreement and Solar Contract Payment Assignments (collectively, the "**Post-Closing Covenants**").  The Parties shall record one or more memoranda (collectively, the "**Memorandum**") evidencing the existence of the Post-Closing Covenants in the form set forth on **Exhibit M**.  The provisions of this Section 1.9, shall not merge into the documents of conveyance and shall survive the Closing.  The restrictions in the foregoing clauses (A) through (C) shall not restrict Buyer from entering into any new contractual relationship with respect to parcels not affected by a Solar Contract as of the Closing, or on a Specified Solar Parcel following the expiration of the Restricted Period thereon. Following the indefeasible payment in full of (i) all Solar Purchase Consideration, or (ii) all Solar Lease Consideration due after a Capitalization Event, with respect to a specific Solar Contract and/or Specified Solar Parcel (or portion thereof), Seller will promptly on request from Buyer (i) file a UCC-3 amendment releasing its interest in such specific Solar Contract

-10-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

and/or Specified Solar Parcel (or portion thereof), and (ii) execute and record a release of the Specified Solar Parcel (or portion thereof) from the Post-Closing Covenants evidenced by the Memorandum.

Seller shall provide an updated Schedule 1.1(j), together with a detailed accounting for any Solar Payments received between November 1, 2025, and Closing, identifying the payor, the applicable Solar Contract, the date of receipt, the amount, and any available remittance advice, to be delivered into escrow at least ten (10) business days prior to the Closing Date. Such accounting shall include a calculation of the fifty percent (50%) of such Solar Payments owed to Buyer pursuant to Section 1.9.

1.10    **Poso Note Adjustment**.  At the Closing, Buyer shall reimburse Seller for any portion of the obligations of that certain loan made to Poso Creek from Semitropic Improvement District of Semitropic Water Storage District in the original principal amount of $18,000,000.00 (the "**Water Loan**"), evidenced by an Agreement dated April 23, 2007 between Poso Creek and the Semitropic Water Storage District and Semitropic Improvement District, Buttonwillow Improvement District and Pond-Poso Improvement District of the Semitropic Water Storage District (the "**Water Loan Agreement**"), actually paid by Seller prior to the Closing in respect of the Poso Interests which are due and payable in 2026 (but which shall not include the December Water Loan Payment, as defined in Section 6.3(c) below)(such amounts paid by Seller, if any, the "**Poso Note Adjustment**").

1.11    **Concurrent/Ancillary Sales.**

(a)    Concurrent Sale.  Buyer agrees that it will purchase (from the party legally entitled to sell said property) the property described on Schedule 1.11(a), for a price of $13,153,257.00 and on other commercially reasonable terms, pursuant to a transaction to be closed, at Seller's sole option and as a condition to Closing for the benefit of Seller, concurrently with the Closing hereof (the "**Concurrent Sale**").

(b)    Ancillary Sales.  Buyer agrees that it will purchase (from the parties legally entitled to sell said property) the property described on Schedule 1.11(b), for the price set forth for such property on Schedule 1.11(b), and on other commercially reasonable terms negotiated in good faith, subject to the agreement of the counterparties for each such property to enter into a purchase agreement therefor (each an "**Ancillary Sale**" and collectively, the "**Ancillary Sales**").  In the event that the required counterparties for a specific tract will not agree to transact at the listed price, or on commercially reasonable terms negotiated in good faith, Buyer shall have no further obligation to purchase such tract.  For clarity, the closing of the Ancillary Sales, or any of them, shall not be a condition to either Buyer's or Seller's obligations hereunder, and Seller makes no representation, and expressly disclaims any representation, that Buyer will be able to negotiate a purchase of the property described and for the price listed on Schedule 1.11(b).

2.    **Escrow**.  Within three (3) business days following the Effective Date, Seller will deliver a fully executed counterpart of this Agreement to Chicago Title Company, 7330 N. Palm Avenue, Suite 101, Fresno, CA  93711 (Attention:  Sue Meyer) who shall act as "**Escrow Holder**," in connection with an escrow to be established to complete the transaction contemplated by this Agreement (the "**Escrow**").  The parties agree to execute any additional standard instructions reasonably required by Escrow Holder except for instructions that would excuse, release, or relieve Escrow Holder from theft of funds or any other criminal act, gross negligence, willful misconduct,

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

violation of the standard of care with respect to its conduct, or breach of this Agreement on the part of Escrow Holder.

**3.    Close of Escrow**.  Provided all of the conditions to close of escrow set forth herein shall have been acknowledged as waived or satisfied by the Party benefitted by the subject condition, the close of escrow for the purchase and sale transaction provided for herein (the "**Closing**" or "**Close of Escrow**") shall occur on or before **5:00 p.m., Pacific Time, on a date (i) no later than October 12, 2026, but only in the event that such date is at least one (1) business day following the date the Sale Order becomes final and non-appealable, otherwise (ii) no later than ten (10) business days following the date the Sale Order becomes final and non-appealable** (the "**Closing Date**") or such other date as agreed to by the Parties; provided that the Closing Date shall in no event occur later than the Outside Date (as set forth in <u>Section 6.4</u>).

3.1    <u>Purchase Price.</u>  The Purchase Price of the Property ("**Purchase Price**") is the sum of **Four Hundred Nine Million, Eight Hundred Thirty-Two Thousand Seven Hundred Ninety Four and 00/100ths Dollars ($409,832,794.00) United States currency (the "Base Purchase Price"), <u>plus (if owed to Seller)</u> or <u>minus (if owed to Buyer)</u> the 2025 Crop Adjustment, plus the Solar Consideration**.  The Purchase Price shall be payable as follows:

(a)    Notwithstanding any term or provision of this Agreement, Buyer hereby delivers to Seller an amount equal to **One Hundred and 00/100ths Dollars ($100.00)** from the Bid Deposit (the "**Independent Consideration**") as independent consideration to Seller for having entered into this Agreement at any time subsequent to execution hereof.  The Independent Consideration shall be nonrefundable if Close of Escrow does not occur for any reason related to a Buyer default or termination under this Agreement, or due to a failure of a Buyer condition under <u>Section 6.3</u>, and to the extent that this Agreement requires any funds to be refunded to Buyer, any amount so refunded shall not include the Independent Consideration; provided, however, that the Independent Consideration shall be refunded to Buyer from Seller, as part of Buyer's damages, in the event of a Seller default under this Agreement.

(b)    At the Closing, the Escrow Holder shall apply the Bid Deposit plus any interest thereon toward the Purchase Price.

(c)    At the Closing, Buyer shall deliver a promissory note to Seller in the form set forth on Exhibit I, in the amount of $10,000,000.00 (the "**Note**");

(d)    The balance of the Purchase Price, less the Solar Consideration (the **"Closing Balance"**) shall be deposited by Buyer into Escrow no later than one (1) business day prior to the Closing and paid to Seller in cash, by cashier's check or wire transfer of immediately available good funds, at the Close of Escrow;  and

(e)    Following the Closing, within ten (10) business days following the receipt by Buyer of each Solar Payment, if any, which is not paid directly to Seller by the payor, Buyer shall pay the Solar Consideration arising from such Solar Payment to Seller by cashier's check or wire transfer of immediately available good funds.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**4.    LIQUIDATED DAMAGES.  NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT TO THE CONTRARY, IN THE EVENT THAT THE ESCROW FAILS TO CLOSE DUE TO A BREACH OF OR DEFAULT BY BUYER, AND BUYER FAILS TO CURE SUCH DEFAULT WITHIN FIFTEEN (15) BUSINESS DAYS OF RECEIVING WRITTEN NOTICE FROM SELLER OF THE SAME, OR, IF THE BREACH IS OF A NATURE THAT IT CANNOT BE REASONABLY CURED WITHIN FIFTEEN (15) BUSINESS DAYS, AND BUYER HAS DILIGENTLY COMMENCED SUCH CURE WITHIN SAID FIFTEEN (15) BUSINESS DAY PERIOD, BUYER SHALL HAVE SUCH ADDITIONAL TIME AS IS NECESSARY TO CURE THE BREACH BUT IN NO EVENT MORE THAN A TOTAL OF FORTY FIVE (45) DAYS, THEN SELLER SHALL BE ENTITLED TO THE BID DEPOSIT SET FORTH IN SECTION 1.5 AS LIQUIDATED DAMAGES, AND NOT AS A PENALTY, AND AS SELLER'S SOLE AND EXCLUSIVE REMEDY AGAINST BUYER AT LAW OR OTHERWISE FOR BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY.  THE PARTIES HERETO EXPRESSLY ACKNOWLEDGE AND AGREE THAT THE AMOUNT OF SELLER'S ACTUAL DAMAGES IN THE EVENT OF BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY OR OTHER EVENT OF DEFAULT BY BUYER UNDER THIS AGREEMENT WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO ASCERTAIN, AND THE AMOUNT SET FORTH ABOVE AS LIQUIDATED DAMAGES HAS BEEN AGREED UPON BY SELLER AND BUYER AFTER SPECIFIC NEGOTIATION. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY. THE PARTIES AGREE THAT THE BID DEPOSIT AMOUNT SET FORTH IN SECTION 1.5 REPRESENTS A REASONABLE ESTIMATE OF THE ACTUAL DAMAGES WHICH SELLER WOULD INCUR IN THE CASE OF BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY.  BY INITIALING THE SPACES WHICH FOLLOW, SELLER AND BUYER SPECIFICALLY AND EXPRESSLY AGREE TO ABIDE BY THE TERMS AND PROVISIONS OF THIS SECTION CONCERNING LIQUIDATED DAMAGES IN THE EVENT OF BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY.  FOR THE AVOIDANCE OF DOUBT, THE FOREGOING LIQUIDATED DAMAGES COVENANT SHALL NOT APPLY TO ANY BUYER INDEMNITY OF SELLER, OR ANY OTHER DEFAULT BY BUYER UNDER THIS AGREEMENT, OTHER THAN THE FAILURE OF BUYER TO CLOSE THE PURCHASE OF THE PROPERTY.**

ACKNOWLEDGMENT AS TO ACCEPTANCE OF THE IMMEDIATELY PRECEDING LIQUIDATED DAMAGES PROVISION



Seller                                                    Buyer
Lance Miller, solely in his capacity
as Court-appointed Receiver

**5.    Seller's Deliveries; Condition of Title.**

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

5.1    Seller's Deliveries.

Seller will deliver to Buyer as soon as practical following the Effective Date, a Natural Hazards Disclosure Statement (the "**Natural Hazards Disclosure**") with respect to the Land.  Prior to the Close of Escrow, Buyer shall deliver to Seller through Escrow, documents evidencing and acknowledging receipt and acceptance of the Natural Hazards Disclosure and all other disclosures that are required in connection with the conveyance of the property, if any, in California. The written report prepared by the natural hazards disclosure company retained by Seller (the "**Natural Hazard Expert**") regarding the results of its full examination will fully and completely discharge Seller from its disclosure obligations referred to herein, if and to the extent any such obligations exist, and, for the purpose of this Agreement, the provisions of Civil Code Section 1102.4 regarding non-liability of Seller for errors or omissions not within its personal knowledge shall be deemed to apply and the Natural Hazard Expert shall be deemed to be an expert, dealing with matters within the scope of its expertise with respect to the examination and written report regarding the natural hazards referred to above. As used in this Agreement, "Disclosure Statutes" means, without limitation, collectively, California Government Code Sections 8589.3, 8589.4 and 51183.5, California Public Resources Code Sections 2621.9, 2694 and 4136, and any other California statutes that require Seller to make disclosures concerning the Property.  Buyer hereby agrees as follows with respect to the Disclosure Statutes and the Natural Hazards Disclosure, provided that the following will not apply if Seller delivers any inaccurate or untrue information to the Natural Hazard Expert:

(a)    Seller shall not be liable for any error or inaccuracy in, or omission from, the information in the Natural Hazards Disclosure.

(b)    The Natural Hazards Disclosure is being provided by Seller for purposes of complying with the Disclosure Statutes and shall not be deemed to constitute a representation or warranty by Seller as to the presence or absence in, at or around of the Property of the conditions that are the subject of the Disclosure Statutes.

5.2    Condition of Title.  Seller agrees to convey fee simple title in and to the Property to Buyer.  Title shall be conveyed by Seller to Buyer by receiver's deed, using the form attached hereto as **Exhibit E** (the "**Deed**"), subject to the items enumerated in this Section.  Buyer shall accept title to the Property subject to the following exceptions, provided, however, that nothing herein shall limit or restrict Buyer's right to (i) negotiate with the Title Company to remove or modify any such exceptions, or (ii) obtain title endorsements at Buyer's expense to insure over any such exceptions:

(a)    any lien for current real property taxes, special taxes, special assessments, and water and other utility district taxes and assessments, if any, not yet due;

(b)    any lien for supplemental taxes and assessments resulting from the change in ownership created by the sale of the Property to Buyer;

(c)    all covenants, conditions, restrictions, easements, agreements, defects, encumbrances, other than financial liens not created by Buyer, and other matters of record, including without limitation, the Permitted Exceptions, except to the extent Seller has agreed in writing to terminate or remove;

20039.001/Westlands A&R PSA - Prudential (EX)

(d)     physical matters and conditions, if any, that exist at the Property on the Effective Date and that would be disclosed by a current survey or inspection of the Property;

(e)     laws, regulations, or ordinances relating to zoning, environmental protection, subdivision, occupancy, use, construction, or development of the Property;

(f)     any matters or interests created or otherwise caused by Buyer or its agents, consultants, and representatives;

(g)     the printed standard exceptions listed in the Preliminary Report issued by Chicago Title Company with a Title Number of 45006152-MW, Amendment C, dated effective December 11, 2025 (the "**Preliminary Report**"); and

(h)     such other matters as Buyer either waives, assumes, or consents to in writing, which shall include the leaseholds and other rights listed in Schedule 5.2(h).

5.3     No Liens.  The Property shall be sold free and clear of any and all financial liens, liabilities, obligations, encumbrances, or claims (except for any such liens, encumbrances, claims or interests set forth and described in Section 5.2 above) effective upon the Closing.

5.4     Buyer Contingencies; Contingency Period.  Buyer's obligation to purchase the Property was contingent upon Buyer's review and satisfaction as to the condition of the Property (the "**Diligence Contingency**"), which was required under the Original Agreement to be satisfied or waived no later than May 1, 2026 (the "**Diligence Contingency Expiration Date**").  The Parties acknowledge and agree that the Diligence Contingency Expiration Date has passed and Buyer has waived the Diligence Contingency.

5.5     Buyer's Indemnification of Seller.  Any damage caused to the Property in connection with Buyer's Inspection shall be promptly and fully repaired by Buyer and the Property returned to its prior condition, all at Buyer's sole cost and expense, which obligation shall survive any termination of this Agreement; provided, however, that Buyer shall not be responsible for pre-existing conditions or defaults, including hazardous or toxic materials, not caused or exacerbated by Buyer or Buyer's Agents.  Buyer shall keep the Property free and clear of any mechanic's liens and materialmen's liens and all other liens and encumbrances arising out of any of Buyer's or Buyer's Agent's activities, which obligation shall survive any termination of this Agreement.  Further, except for the discovery and remediation or repair of existing conditions on the Property (including, without limitation, the existence of hazardous or toxic materials not placed on the Property by Buyer or its agents or representatives) or to the extent arising from Seller's gross negligence or willful misconduct, Buyer hereby agrees to indemnify, defend and hold Seller, Lenders, and Seller's and Lenders' respective beneficiaries, partners, affiliates, subsidiaries, principals, members, shareholders, agents, employees, professionals, successors, and assigns (together with Seller, collectively, the "**Seller Parties**"), harmless from and against any and all claims, actions, losses, costs, liabilities, obligations and expenses arising out of the acts or omissions of Buyer or Buyer's Agents in connection with any such entry, inspection, test, study or other activity, including without limitation all legal expenses reasonably incurred by Seller Parties in connection therewith.  The indemnity provided herein shall not extend to indirect, consequential, punitive or speculative damages and shall survive the Close of Escrow and any termination of this Agreement.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

5.6 <u>SGMA Disclosure.</u> The Sustainable Groundwater Management Act ("**SGMA**") is a law enacted in the year 2014. SGMA may limit the amount of well water that may be pumped from underground aquifers. Applicable rules and regulations are in place implementing SGMA. Seller and its agents and representatives make no representation on water rights or the effect of SGMA on the Property now or in the future, except that Seller shall disclose to Buyer any notices, violations, or regulatory actions of which Seller has actual knowledge, and shall further disclose to Buyer, and deliver true and complete copies of, any contracts, agreements, or understandings (whether written or oral) with third parties relating to the pumping, diversion, sharing or transfer of groundwater, banked water, surface water, water rights or pumping allocations affecting the Property, whether or not of record, of which Seller has actual knowledge (provided that any such document which is included in the Preliminary Report is deemed delivered). Buyer has been advised to consult an expert on water rights and SGMA to determine the effect of SGMA on the Property now and in the future. In making the decision to purchase the Property, Buyer is not relying upon any statement, representation, or warranty of Seller (or any other Seller Party), but rather, Buyer is relying upon Buyer's own independent investigation and analysis of water rights and SGMA in regards to the Property. Upon Closing, Buyer assumes the risk of implementation of SGMA on the Property. Buyer releases Seller and all other Seller Parties, from any liability, known or unknown, arising from the implementation of SGMA in regards to the Property, provided this release shall not apply to any liability arising from Seller's or any Seller Parties' fraud or intentional misrepresentations in connection with SGMA or water rights information provided to Buyer.

## 6. **Conditions Precedent; Termination**.

6.1 <u>Conditions to Obligations of all Parties</u>. The obligation of each Party to consummate the transactions contemplated by this Agreement at Closing is subject to the fulfillment on or prior to the Closing of the following conditions:

(a) the Court shall have entered the Sale Order and such order shall be in full force and effect and shall not have been stayed or vacated, and any applicable appeal period thereafter having lawfully expired, with no appeal having been filed with respect thereto. The Sale Order shall be deemed obtained prior to the lapse of the appeals period if the Court approves this Agreement, the sale of the Property pursuant to the terms of this Agreement, and Closing by Seller upon a motion joined in, or their approval stipulated to the Court as agreed to, by Owner, Lenders, and all parties of interest in the Action, and Title Company agrees to insure title to the Property without taking exception to the appeals period or any potential appeal that could be filed during such period. Buyer acknowledges and confirms that neither Seller nor any of Lenders has made any representations or warranties, express or implied, that the Sale Order will be obtained. Promptly upon obtaining the Sale Order, Seller shall deliver a copy of the Sale Order to Buyer and Escrow Holder. If: (i) the Court denies approval of this Agreement, or (ii) the Sale Order is overturned in an appeal, this Agreement shall be terminated, the Bid Deposit plus any interest thereon shall be delivered to Buyer and neither party shall have any further rights or obligations hereunder except with respect to the provisions hereof which specifically survive termination; and

(b) no injunction by any court or other tribunal of competent jurisdiction shall have been entered and shall continue to be in effect, and no legal proceeding, bankruptcy , insolvency or automatic stay is pending, and no law shall have been adopted that, in the case of any

-16-

20039.001/Westlands A&R PSA - Prudential (EX)

of the foregoing, remains in effect or be effective, that prevents, enjoins, prohibits, or makes illegal the consummation of the transactions contemplated by this Agreement.

6.2     Seller's Conditions Precedent. Seller's obligation to perform as set forth in this Agreement is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

(a)     Buyer shall have performed each of the acts to be performed by it pursuant to this Agreement and the Marketing Procedures Order, including without limitation, depositing the Bid Deposit, the Cultural Cost Reimbursement (as defined in Section 9 below), and the Buyer's share of the Closing Costs (as defined in Section 12 below) and Prorations (as defined in Section 13 below) into the Escrow by the Closing Date.

(b)     Each of Buyer's representations and warranties set forth in Section 8 hereof shall be true and correct at the Close of Escrow as if affirmatively made at that time.

(c)     The Closing shall occur simultaneously with the closing of the Concurrent Sale.

(d)     On or before the Bid Deadline (as defined in in the Marketing Procedures Order), Buyer has provided evidence of its ability to close the transactions contemplated under this Agreement in form and substance reasonably acceptable to Seller.

(e)     On or before the Bid Deadline (a) Buyer has disclosed to Seller, in writing, the identity of each person and/or entity: (i) participating in its bid to Purchase the Property by having made a specific capital commitment in writing designated to fund, in whole or in part, the acquisition of the Property pursuant to this Agreement (each, a "**Participant**") and (ii) that has or will have a direct ownership interest in Buyer or the Property (each, a "**Buyer Party**"); and (b) each Buyer Party has agreed in writing to be bound by the terms of Section 27 of this Agreement, substantially in the form set forth as Exhibit N, attached hereto. In the event additional Buyer Parties and/or Participants arise after the Bid Deadline and prior to or through the Closing, prior to or concurrently with Buyer accepting such Buyer Party or Participant or commitment of such Buyer Party or Participant, Buyer shall comply with the provisions of clause (a) of this Section 6.2(e), and shall cause such new Buyer Party to comply, with the provisions of clause (b) of this Section 6.2(e). Buyer shall provide such additional disclosures regarding Buyer Parties and/or Participants that Seller may reasonably request and, at Seller's reasonable request, shall cause additional Buyer Parties and/or Participants identified by Seller to sign and agree in writing to be bound by the terms of Section 27 of this Agreement.

The foregoing conditions are solely for the benefit of Seller, any or all of which may be waived by Seller in his sole discretion.

6.3     Buyer's Conditions Precedent. Buyer's obligation to perform as set forth in this Agreement is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

(a)    Seller shall have performed every act to be performed by it pursuant to this Agreement and the Marketing Procedures Order, including without limitation, depositing into the Escrow the Deed.

(b)    Except as listed in Schedule 5.2(h), Seller shall have terminated any and all existing leases on the Property and provided Buyer with satisfactory written evidence of the same, in each case solely to the extent such leases are Receivership Property and terminable under applicable law without damages.

(c)    At the Close of Escrow, that certain loan made to Poso Creek from Semitropic Improvement District of Semitropic Water Storage District in the original principal amount of $18,000,000.00 (the "**Water Loan**"), evidenced by an Agreement dated April 23, 2007 between Poso Creek and the Semitropic Water Storage District and Semitropic Improvement District, Buttonwillow Improvement District and Pond-Poso Improvement District of the Semitropic Water Storage District (the "**Water Loan Agreement**"), shall be in good standing, free from default, and Seller shall have caused Poso Creek to make the payment on the Water Loan due on (i) December 1, 2025 in the amount of $728,522.78 (the "**December Water Loan Payment**") and (ii) June 1, 2026 in the amount of $728,522.78 (the "**June Water Loan Payment**"). For the avoidance of doubt, the December Water Loan Payment is not a cultural cost subject to reimbursement by Buyer, however the Seller's allocated portion of the June Water Loan Payment is subject to the provisions of Section 1.10.

(d)    At the Close of Escrow, Seller shall enter into a customary intercreditor agreement with (1) a third party lender ("**Crop Lender**") who is providing Buyer with financing for the 2026 crops (the "**Crop Loan**") with respect to the Note, which intercreditor agreement shall include, without limitation, provisions whereby Crop Lender agrees that Buyer is permitted to make payments to Seller in accordance with the Note (collectively, the "**Seller Payments**") so long as the Crop Loan is in good standing and Seller agrees that Crop Lender may prohibit Buyer from making Seller Payments for the period that the Crop Loan is in payment default, unless Seller elects to cure any such default, and (2) a third party lender (which may be the same as the Crop Lender) ("**Mortgage Lender**") who is providing Buyer with a mortgage financing ("**Mortgage Loan**"), with respect to the Note and the Solar Payments (collectively, the "**Intercreditor Agreement**"), provided that Seller has been provided the proforma loan documents for the Crop Loan and Mortgage Loan, together with the draft Intercreditor Agreement as soon as practicable, and no later than 30 days prior to the scheduled Closing date. Seller's failure to reach an agreement with the either the Crop Lender or Mortgage Lender by the scheduled Closing Date as to the terms of the Intercreditor Agreement after negotiation in good faith shall not be a breach of Seller, and if Buyer elects to waive this condition and proceed to Closing, Seller shall be obligated to continue to negotiate in good faith following the Closing with the Crop Lender and/or Mortgage Lender, as applicable, for a period of at least thirty (30) days.

(e)    Each of the representations and warranties of Seller contained in Section 7 or elsewhere in this Agreement shall be true and correct at the Close of Escrow as if affirmatively made at that time.

(f)    All monetary liens, deeds of trust, mortgages, security interests, tax liens, mechanics' liens, crop liens, and other financial encumbrances securing the payment of money

-18-

20039.001/Westlands A&R PSA - Prudential (EX)

against the Property which Seller is obligated to remove or cause the removal pursuant to this Agreement shall have been fully paid, released, and reconveyed (or other arrangements reasonably satisfactory to Buyer shall have been made for their release concurrently with Closing), so that title to the Property is conveyed to Buyer free and clear of all such monetary liens, subject only to the Permitted Exceptions (as defined below).

(g)     All exhibits, schedules, attachments, and ancillary documents to this Agreement shall have been fully executed and delivered to Escrow, in form and substance satisfactory to Buyer in its sole discretion.

The foregoing conditions are solely for the benefit of Buyer, any or all of which may be waived by Buyer in Buyer's sole discretion.

6.4     Termination.  This Agreement may be terminated in accordance with this Section 6.4 at any time prior to the Closing:

(a)     By written notice of either Buyer or Seller if the Closing shall not have occurred on or before thirty (30) days after the Sale Order becomes final and non-appealable, unless otherwise agreed to by Buyer and Seller in writing (such date, the "**Outside Date**") and the Party seeking to terminate this Agreement has not breached this Agreement in a manner that has been the principal cause of the Closing not occurring on or prior to the Outside Date; provided, however, that the Outside Date may be extended by Seller and Buyer upon mutual agreement;

(b)     By written notice of either Buyer or Seller if an order by a governmental authority of competent jurisdiction shall have been issued permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby and such order shall have become final and nonappealable; provided that the right to terminate this Agreement pursuant to this Section 6.4(b) shall not be available to a Party if such order resulted from, or could have been avoided but for, the breach by such Party of any covenant or other agreement of such Party set forth in this Agreement;

(c)     By written notice of either Buyer or Seller if Seller closes or consummates an alternative transaction pursuant to order of the Court or the Court enters an order approving such alternative transaction; provided that, if Buyer is not the Successful Bidder at the Auction, but is the Back-Up Bidder, then notwithstanding anything to the contrary contained in this Agreement, Buyer shall not be permitted to terminate this Agreement pursuant to this Section 6.4(c) until the earlier of (i) the date the alternative transaction closes or (ii) sixty (60) days following the date the Sale Order becomes final and non-appealable;

(d)     By Buyer by giving written notice to Seller at any time prior to Closing (i) in the event there has been a material breach of or material inaccuracy in any representation or warranty made by Seller in this Agreement or if Seller has breached any covenant contained in this Agreement in any respect, which breach, inaccuracy or failure to perform (1) gives rise to a failure of the conditions set forth in Section 6.3 to be satisfied, and (2) (A) is not capable of being cured by the Outside Date or (B) if capable of being cured by the Outside Date, is not cured by the earlier of the Outside Date and thirty (30) days after delivery by Buyer of written notice to Seller of such breach, or (ii) in the event that any condition set forth in Section 6.3 shall not be satisfied by the Outside Date;

-19-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

provided that, Buyer's right to terminate this Agreement pursuant to this Section 6.4(d) will not be available to Buyer at any time that Buyer is in material breach of any covenant, representation or warranty hereunder; or;

(e)    by Seller by giving written notice to Buyer at any time prior to Closing (i) in the event there has been a material breach of or material inaccuracy in any representation or warranty made by Buyer in this Agreement or if Buyer has materially breached any covenant contained in this Agreement in any respect, which breach, inaccuracy or failure to perform (1) gives rise to a failure of the conditions set forth in Section 6.2 to be satisfied and (2) (A) is not capable of being cured by the Outside Date or (B) if capable of being cured by the Outside Date, is not cured by the earlier of the Outside Date and forty-five (45) days after delivery by Seller of written notice to Buyer of such breach, or (ii) in the event that any condition set forth in Section 6.2 shall become incapable of being satisfied by the Outside Date; provided that, Seller's right to terminate this Agreement pursuant to this Section 6.4(e) will not be available to Seller at any time that Seller is in material breach of any covenant, representation or warranty hereunder; and

(f)    by the mutual written consent of Seller and Buyer;

(g)    By Seller, by giving written notice to Buyer if the Sale Order is subject to an appeal;

(h)    By Buyer by giving written notice to Seller if the Sale Order is: (i) modified or otherwise altered in a manner materially adverse to Buyer not otherwise agreed to by Buyer, in writing, or (ii) vacated by the Court or a court of competent jurisdiction.

(i)    By Seller, by giving written notice to Buyer that it has failed to comply with the provisions of Section 6.2(d) or Section 6.2(e), if Buyer has failed to comply with either of such provision.

6.5    Effect of Termination

(a)    In the event of the termination of this Agreement as provided in Section 6.4, this Agreement shall forthwith become void and there shall be no liability on the part of either Party (except with respect to confidentiality, liquidated damages, obligations relating to indemnity, the return or disbursement of the Bid Deposit, the Breakup Fee and any rights or obligations that expressly survive the termination of this Agreement, each of which shall survive any termination); provided, however, that in the event this Agreement is terminated (x) pursuant to Section 6.4(e) or Section 6.4(i) and Seller is not then in material breach of Seller's obligations hereunder, then Seller shall be entitled to retain the Bid Deposit plus any interest thereon and (y) for any reason other than pursuant to Section 6.4(e)or Section 6.4(i), Buyer shall be entitled to a return of the Bid Deposit plus any interest thereon as set forth in this Agreement. Notwithstanding the foregoing, nothing in this Article 6 will be deemed to release any Party from liability for any willful breach of this Agreement prior to its termination pursuant to Section 6.4, willful misconduct, fraudulent, or criminal acts, the remedies for which shall not be limited by the provisions of this Agreement; provided this sentence shall not include breach of Buyer due to failure to close, for which liability is governed by Section 4 hereof.

-20-

(b)     In consideration for Buyer having expended considerable time and expense in connection with this Agreement and the negotiation thereof, if this Agreement is terminated pursuant to Sections 6.4(c), and an alternative transaction is consummated, Seller (subject to entry of the Marketing Procedures Order) shall pay to Buyer a break-up fee in an amount equal to $8,296,655.88 (the "**Breakup Fee**"); provided that the Breakup Fee shall be payable concurrently with the consummation of, and only out of the cash proceeds of, an alternative transaction, to an account designated by Buyer in writing to Seller; and provided further that this provision shall only be effective upon (i) the entry of the Marketing Procedures Order by the Court and (ii) the designation of Buyer by Seller as the "stalking horse" bidder pursuant to the Marketing Procedures Order.

(c)     In the event of any breach by Seller of this Agreement, whether or not a willful breach, or any failure of the transaction contemplated by this Agreement to be consummated for whatever reason whatsoever, the sole and exclusive remedy of Buyer shall be to terminate this Agreement in accordance with Section 6.4 and, if applicable, to receive the Breakup Fee in accordance with Section 6.5, if payable thereunder; provided that in the case of any fraud or willful misconduct by Seller, Buyer shall have the right to pursue specific performance, if applicable.

(d)     Each of the Parties acknowledges and agrees that the agreements contained in this Section 6.5 are an integral part of this Agreement and that the Breakup Fee is not a penalty, but rather represent liquidated damages in a reasonable amount that will reasonably compensate Buyer in the circumstances in which such Breakup Fee is payable for the efforts and resources expended and opportunities foregone by Buyer while negotiating and pursuing this Agreement and in reasonable reliance on this Agreement and on the reasonable expectation of the consummation of the transactions contemplated herein, which amount would otherwise be impossible to calculate with precision.

## 7.     Seller's Representations and Warranties; Covenants.

7.1     Seller's Representations and Warranties.  Except as set forth on Schedule 7.1, attached hereto, Seller hereby warrants, represents, covenants, and certifies to Buyer that:

(a)     Court-Appointed Receiver.  Seller is the Court-appointed receiver over the Receivership Property, duly appointed and acting within the scope of authority granted by the Court, and has not received any written notice of challenge or appeal to such appointment that remains unresolved.

(b)     Authority.  Subject to entry of the Marketing Procedures Order and the Sale Order, this Agreement has been duly authorized, executed and delivered by Seller, is the legal, valid and binding obligation of Seller, and neither this Agreement nor compliance with or fulfillment of the terms and conditions hereof will conflict with, or result in a breach of, the terms, conditions or provisions of, or constitute a default under, any agreement to which Seller is a party or by which Seller is otherwise bound, or any judicial order to which Seller is a party or to which Seller is subject.  All documents to be executed by Seller which are to be delivered at Closing, will, at the time of Closing, (i) be duly authorized, executed and delivered by Seller, (ii) be legal, valid and binding obligations of Seller, and (iii) not violate, to Seller's Knowledge, any provision of any agreement or judicial order to which Seller is a party or to which Seller is subject.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

(c)    OFAC Compliance. Seller (which, for the purposes of this Section 7.1(c), shall include its partners, members, beneficial owners and affiliates) (i) has not been designated as a "specifically designated national and blocked person" on the most current list published by the Office of Foreign Asset Control of the U.S. Department of the Treasury ("**OFAC**") at its official website (http://www.treas.gov/ofac/t11sdn.pdf) or at any replacement website or other replacement official publication of such list (collectively, the "**List**"); (ii) is currently in compliance with and will at all times during the term of this Agreement (including any extension thereof) remain in compliance with the regulations of OFAC and any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action relating thereto; and (iii) will not transfer or permit the transfer of any controlling interest in Seller to any person or entity who is, or any of whose beneficial owners are, listed on the List.

(d)    Foreign Person and Withholding. Seller is not a "foreign person" within the meaning of Sections 1445(f)(3) and 7701(a)(3) of the Internal Revenue Code of 1986, as amended (the "**Code**"), and is not subject to any federal, state, or local withholding obligation of Buyer under the tax laws applicable to Seller or the Property. Seller will provide Buyer an Affidavit of Exemption pursuant to Section 1445(b)(c) of the Code, or provide Escrow Holder an Affidavit of non-foreign status under the Housing and Economic Recovery Act of 2008. A Seller may be subject to withholding tax under California Revenue and Taxation Section 18662, and if so will submit California Form 593 as may be applicable to Buyer through Escrow Holder.

(e)    Organic Trees or Vines. The Property may include one or more varieties of trees or vines that are organic and/or are the subject of plant royalties. Seller makes no representations or warranties in this regard.

(f)    Contracts. Except as disclosed to Buyer in writing or set forth on Schedule 7.1, Schedule 5.2(h), or which are Permitted Exceptions or otherwise set forth in the Preliminary Report, Seller has not entered into, and to Seller's Knowledge (as defined below) there are no, contracts, agreements, leases, licenses, management agreements, service contracts, maintenance agreements, construction contracts, or other similar arrangements, including, without limitation, agreements with third parties related to the pumping, diversion, sharing or transfer of groundwater, banked water, surface water, water rights or pumping allocations affecting the Property that will be binding on Buyer after the Close of Escrow. To Seller's Knowledge, (i) Seller has delivered complete copies of such documents comprising the Contracts listed in Schedule 1.1(g) attached hereto which are in Seller's possession, (ii) Seller has not delivered any notice of default to any counterparty under any Contract, and (iii) Seller has not received any notice of default from any counterparty under any Contract.

(g)    Options. To Seller's Knowledge, other than the Contracts, the Permitted Exceptions, or other items set forth in the Preliminary Report (whether a Permitted Exception or otherwise), there are no purchase options, rights of first offer, rights of first refusal or any similar options applicable to the transaction contemplated by this Agreement or that would be binding on the Property or Buyer following Closing.

(h)    Poso Creek. To Seller's Knowledge, the parties set forth on Schedule 1.1(h) are the named owners and holders of 50.796% of the issued and outstanding interests (legal, beneficial voting and economic) in Poso Creek, as set forth on Schedule 1.1(h), which interests are Receivership

-22-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Property and may be conveyed by Seller to Buyer at the Closing, subject to the Sale Order.  In the event such percentage is changed as a result of the withdrawal of other members from Poso Creek, the Seller will notify Buyer of the change and at the request of Buyer shall execute an amendment to this Agreement updating Schedule 1.1(h) accordingly.

(i)    Taxes and Assessments. To Seller's Knowledge, all general real property taxes and regular assessments currently due and payable with respect to the Property have been paid or will be prorated at Closing. To Seller's Knowledge, there are no pending or threatened special assessments, impact fees, or similar charges affecting the Property other than those disclosed to Buyer in writing or that are matters of public record.

(j)    Litigation. To Seller's Knowledge, there are no actions, suits, or proceedings pending or threatened against Seller relating solely to the Property, other than those disclosed to Buyer in writing or matters of public record.

(k)    Insurance. To Seller's Knowledge, Seller has, or will as such policies are acquired for the 2026 crop year, provided Buyer with true, correct and complete copies of all insurance policies with respect to the Property, including without limitation the multi-peril crop insurance in place with respect to the Land.

(l)    Violation of Law. To Seller's Knowledge, Seller has not received any written notice from any governmental authority alleging that the Property is in violation of any applicable law (including, without limitation, laws related to the environment or public health or safety) which violation remains uncured.

(m)    Employees. To Seller's Knowledge, there are no employees of the Receiver or Pivot Management Group for which Buyer shall have responsibility for after Closing.

(n)    Water Loan. To Seller's knowledge, the December Water Loan Payment has been paid and there are two remaining payments as follows: (i) a payment in the amount of $728,522.78 due on June 1, 2026, and (ii) the final payment in the amount of $728,522.78 due on December 1, 2026.

(o)    Knowledge Definition. As used in this Agreement, the term "Seller's Knowledge" means the current actual (and not constructive or imputed) knowledge of LANCE MILLER, solely in his capacity as court-appointed receiver, without any duty of inquiry or investigation, and expressly excluding the knowledge of any other person, including Seller's agents, employees, consultants, or representatives. Any disclosure required hereunder shall be deemed made if such matter is listed in the Preliminary Report.

(p)    Lender Approval. Each of the Lenders has provided its written approval of this Agreement to Seller.  For the avoidance of doubt, the approval of the Lenders is not a condition precedent to the effectiveness or binding nature of this Agreement.

7.2    Survival.  The express representations and warranties made in this Article by Buyer or Seller will not merge into any instrument of conveyance delivered at the Closing; provided, however, that any action, suit or proceeding with respect to the truth, accuracy or completeness of

-23-

20039.001/Westlands A&R PSA - Prudential (EX)

any such representations and warranties shall be commenced, if at all, on or before the date which is three (3) months after the date of the Closing and, if not commenced on or before such date, thereafter will be void and of no force or effect.

7.3    Seller Covenants. Seller hereby covenants and agrees with Buyer as to the following matters.

(a)    Seller shall maintain and farm the Property in a commercially reasonable manner until the Closing; provided that, if Seller takes any action requested by Buyer, or refrains from taking an action at the request of Buyer, pursuant to the provisions of Section 9 allowing Buyer to direct cultural activities, or otherwise, such action or inaction shall not be a breach of this covenant.

(b)    Seller shall maintain in effect all insurance policies in each case that are in effect on the Effective Date, including that Seller shall maintain the same level of multi-policy crop insurance for the 2025-2026 crop year coverage as was in place for the 2024-2025 crop year, provided that such are available on commercially reasonable terms.

(c)    Seller shall not enter into any new lease or contract affecting the Property or any part thereof, or modify, extend or terminate any Contract without the prior written consent of Buyer, except that Seller shall have the right, without Buyer's consent but with prior notice to and consultation with Buyer, to enter into such new leases or contracts, or modify, extend or terminate any Contracts which:

(i)    in connection with entry into or extension of Contracts, are entered or extended pursuant to valid written options pursuant to Contracts listed on Schedule 1.1(g) in favor of the counterparty thereof (or an eligible assignee), or

(ii)    will terminate prior to the Closing, or

(iii)    will extend beyond the Closing, but only if such are on commercially reasonable terms and are required to provide for ongoing operations and maintenance on the Property, in Seller's reasonable discretion, and shall not extend beyond the Closing more than is required on a commercially reasonable basis to address the need therefor; provided, however, for the avoidance of doubt, Buyer shall have the right to not assume any such lease or contract and the same shall not encumber the Land or be binding on Buyer beyond the Closing and shall solely be the responsibility of Seller.

Seller shall provide Buyer with true, correct and complete copies of any agreements entered into after the Effective Date.

(d)    In the event that either Seller or Buyer becomes aware prior to the Closing that any Solar Contract listed on Schedule 1.1(j) has expired, been terminated, or is otherwise no longer in effect, such Party shall promptly notify the other, and the Parties shall cooperate in good faith to update Schedule 1.1(j) accordingly; any Solar Contract so removed shall no longer be subject to the provisions of Section 1.9 or any related exhibit or agreement.  Prior to the Closing, Seller shall use commercially reasonable efforts to deliver to Buyer copies of all Solar Contracts listed on Schedule

-24-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

1.1(j), including any amendments, extensions, and modifications thereto, to the extent in Seller's possession or control.  To the extent any Solar Contract documentation is not in Seller's possession or control despite commercially reasonable efforts to obtain the same, Seller shall so notify Buyer in writing, and the Parties shall cooperate in good faith to determine the appropriate treatment of such Solar Contract on Schedule 1.1(j).

(e)     Without Buyer's prior written consent or as otherwise provided herein, Seller shall not remove, sell or otherwise transfer the Property  (including, without limitation, the equity interests in Poso Creek) or any portion thereof or any interest therein, except to the Successful Bidder, or grant any new option, pledge, offer, right, right of first refusal or right of first offer with respect to the Property or any part thereof or any direct or indirect interest therein.

(f)     Seller shall promptly advise Buyer of and provide complete copies of (i) any written notices that Seller receives from any governmental authority, including notices of violations or regarding condemnation, and (ii) any notices of default given or received by Seller under any Contracts. Seller will promptly advise Buyer of any litigation, arbitration proceeding or administrative hearing which is instituted against Seller after the Effective Date and which concerns or affects Seller.  Seller shall promptly advise Buyer of any material casualty that affects the Property which it has Knowledge thereof.

(g)     Seller shall use diligent and good faith efforts to negotiate and enter into an Intercreditor Agreement with Crop Lender and Mortgage Lender, provided, however, failure of the Seller to actually reach a mutually acceptable agreement with Crop Lender or Mortgage Lender shall not be a breach of this covenant.

(h)     In connection with the Closing, Seller shall cause Lance Miller, in his capacity as an elected Manager of Poso Creek, to tender his immediate resignation as Manager to the members of Poso Creek.

## 8.     **Buyer's Representations and Warranties; Covenants**.

8.1     Buyer's Representations and Warranties.  Buyer hereby warrants, represents, covenants and certifies to Seller and agrees that as of the Close of Escrow:

(a)     Good Standing.  Buyer is a limited liability company, that is properly and duly formed, validly existing and in good standing under the laws of the State of Delaware, registered to transact business in the State of California, and is in good standing under the laws of the State of California.

(b)     Authority.  Buyer, and its Authorized Assignee(s) (defined below), acting through any of their respective duly empowered and authorized managers, members, partners or officers, as applicable, has all necessary entity power and authority to transact the business in which it is engaged, and has full power and authority to enter into this Agreement, to execute and deliver the documents and instruments required of Buyer herein, and to perform its obligations hereunder.  This Agreement has been duly authorized, executed and delivered by Buyer, is the legal, valid and binding obligation of Buyer, and, neither this Agreement nor compliance with or fulfillment of the terms and conditions hereof will conflict with, or result in a breach of, the terms, conditions or provisions of, or

-25-

constitute a default under, any agreement to which Buyer is a party or by which Buyer is otherwise bound, or any judicial order to which Buyer is a party or to which Buyer is subject. All documents to be executed by Buyer which are to be delivered at Closing, will, at the time of Closing, (i) be duly authorized, executed and delivered by Buyer, (ii) be legal, valid and binding obligations of Buyer, and (iii) not violate, to the best of Buyer's knowledge, any provision of any agreement or judicial order to which Buyer is a party or to which Buyer is subject.

(c)    OFAC Compliance. Buyer or its Authorized Assignee (which, for the purposes of this Section 8(c), shall include its members, officers, beneficial owners and affiliates) (i) has not been designated as a "specifically designated national and blocked person" on the most current list published by the OFAC at its official website (http://www.treas.gov/ofac/t11sdn.pdf) or at any replacement website or other replacement official publication of such List; (ii) is currently in compliance with and will at all times during the term of this Agreement (including any extension thereof) remain in compliance with the regulations of OFAC and any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action relating thereto; and (iii) will not transfer or permit the transfer of any controlling interest in Buyer to any person or entity who is, or any of whose beneficial owners are, listed on the List.

(d)    Bankruptcy. Buyer has not (i) filed or been the subject of any filing of a petition under the U.S. bankruptcy code (11 U.S.C. § 101, et seq.) or any insolvency laws, or any laws for composition of indebtedness or for the reorganization of debtors; (ii) made a general assignment for the benefit of creditors, (iii) suffered the appointment of a receiver to take possession of all or substantially all of Buyer's assets, or (iv) suffered the attachment or other judicial seizure of all or substantially all of Buyer's assets.

(e)    Debts, Liens, and Encumbrance. Buyer shall pay, when due, any claims, liabilities, debts, injuries, liens or other encumbrances, and any consultant or other expense contracted for or incurred by Buyer incurred or arising before the Close of Escrow or the earlier termination of this Agreement that relate in any manner to any of Buyer's activities relating to the Property prior to the Closing (collectively, "**Claims**") and shall indemnify, defend and hold Seller, the Seller Parties, and the Property harmless from any Claims relating thereto.

(f)    No Collusion; Negotiations with Third-Party Owners. Buyer represents and warrants that (i) it has not engaged in any collusion with respect to its bid on the Property and the transaction contemplated hereunder and (ii) absent Seller's express written consent, which consent may be withheld in Seller's sole discretion, any and all discussions and negotiations by Buyer regarding a Concurrent Sale or the purchase of a Concurrent Sale Property shall be conducted through Seller and that Buyer shall have no direct or indirect communications with a Third-Party Owner regarding a Concurrent Sale or a Concurrent Sale Property.

8.2    Buyer Covenants. Buyer hereby covenants and agrees with Seller as to the following matters:

(a)    Solar Contract Payment Assignments. In the event that any Solar Counterparty acknowledgement to a Solar Contract Payment Assignment is not obtained by Seller prior to the Closing, Buyer shall reasonably cooperate with Seller's efforts to obtain such Solar

-26-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Contract Payment Assignment following the Closing, and, pending receipt thereof, Buyer's obligation to remit the Solar Consideration to Seller with respect to such Solar Contract pursuant to Section 1.9 shall remain in full force and effect.

(b)     New Contracts. Buyer shall not enter into, or permit any of its affiliates to enter into, any obligation to encumber the Property, or any portion thereof, with any new contracts, including contracts for solar operations, easements, leases, or options, which (i) becomes effective any time before Buyer is the fee owner of the Real Property, or (ii) which is recorded, or any memorandum thereof is recorded, in the real property records of Fresno or Kings County, California, prior to the Closing.

## 9.     Cultural Cost Reimbursements; Property Operations.

9.1     Cultural Cost Reimbursements.   At the Closing, through the Escrow, and expressly conditioned on the Crops being vested in Seller and fully transferable to Buyer free and clear of any and all liens, interests, liabilities, obligations, encumbrances, or claims, Buyer shall reimburse Seller for all 2026 Cultural Costs and 2027 Cultural Costs (defined below) incurred by Seller after November 1, 2025, and for which Seller retains responsibility to pay following Closing, in connection with the Property (the "**Cultural Costs Reimbursement**"), provided that the reimbursement for 2026 Cultural Costs only (and not 2027 Cultural Costs) shall not be greater than 110% of the amounts set forth on the budget attached hereto as Schedule 9 (the "**Budget**"), or as otherwise approved by Buyer,  which budget excludes receivership costs, management fees (other than the per acre management fee payable to Receiver's contracted farm manager), and other oversight costs.  Upon written request from Buyer, Seller shall provide Buyer with statements reflecting the amount 2026 Cultural Costs and 2027 Cultural Costs incurred by Seller for the Property for the 2026  and 2027 crop years through the anticipated Closing and for which Seller retains responsibility to pay following Closing, based on the Seller's estimates and historical data (to the extent available) to the extent actual invoices for such costs are not reasonably available.  At least five (5) business days prior to the Closing Date, Seller shall provide Buyer and Escrow Holder with a written statement showing the final amount of the Cultural Costs Reimbursement (including an estimate of all 2026 Cultural Costs and 2027 Cultural Costs to be incurred between the date of such statement and the Closing Date, if any), together with a detailed listing of all of such costs (the "**Statement**") and any backup reasonably requested by Buyer.  Buyer shall deposit the Cultural Costs Reimbursement (including an estimate of all 2026 Cultural Costs and 2027 Cultural Costs, to the extent estimable, to be incurred between the date of the Statement and the Closing Date, if any, and for which Seller retains responsibility to pay following Closing) with Escrow Holder, by wire transfer, or by other cash substitute of immediately available funds acceptable to Escrow Holder, at least one (1) business day prior to the Closing Date. The Cultural Costs Reimbursement shall also include any crop insurance premiums paid by Seller for the 2026 and 2027 crop year, and Buyer's assumption at Close of Escrow, if any, of crop insurance payments due for the 2026 crop year and 2027 crop year.  Following the date on which the Sale Order is entered, if Buyer is the Successful Bidder, Buyer shall also have the exclusive right to direct, in writing, reasonable farming operations for the 2026 and 2027 crop on the Property, and Seller shall comply with such reasonable directions so long as they are consistent with standard agricultural practices, and included in the Budget or approved as an addition thereto by Buyer, provided that Seller shall have no liability under Section 7.3(a) for the results of complying with any direction of Buyer and Buyer shall have no recourse against Seller therefor.

-27-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

No later than 45 days after Closing, Seller shall provide Buyer with its actual, documented, 2026 Cultural Costs and 2027 Cultural Costs incurred prior to Closing and paid by Seller following the Statement date (the "**True-Up Cultural Costs**"). If Buyer accepts the True-Up Cultural Costs, or if Buyer fails to give notice to Seller of any objection within 15 days after receipt of the True-Up Cultural Costs, the True-Up Cultural Costs shall be the final and binding calculation of the 2026 Cultural Costs and 2027 Cultural Costs for purpose of the Cultural Costs Reimbursement.  If Buyer gives notice to the Seller of an objection to the True-Up Cultural Costs within 15 days after receipt of the True-Up Cultural Costs, the Seller and Buyer shall attempt in good faith to resolve their differences in writing.  If the Seller and Buyer are able to resolve their differences in writing, the True-Up Cultural Costs, as modified to reflect the resolution of the difference between the Seller and Buyer, shall be the final and binding calculation of the Cultural Costs Reimbursement, and the Seller shall refund any overage or Buyer shall pay any shortfall (as compared to the amounts paid at the Closing) within five (5) business days.  If, however, the Seller and Buyer are unable to resolve their differences within 15 days of the Buyer's objection, then (i) Seller shall refund any overage or Buyer shall pay any shortfall on the undisputed amounts (as compared to the amounts paid at the Closing) within five (5) business days, and (ii) such disputed amounts shall be submitted to the Court for resolution, or if the Court declines jurisdiction, the Parties shall attempt to resolve the differences pursuant to mediation with a mediator reasonably acceptable to both Parties, the cost of which shall be borne equally by each Party.

As used herein, (i) "**2026 Cultural Costs**" means all out of pocket cultural costs paid by Seller for the 2026 crop year, and shall include, without limitation, all third party management fees, inputs, services, farm labor, water charges, and irrigation pumping and distribution costs (including electrical and/or fuel costs), and harvesting and hauling charges, necessary or desirable for the production, harvest and transportation of the 2026 crops generated by the Land, and (ii) "**2027 Cultural Costs**" means all out of pocket cultural costs paid by Seller for the 2027 crop year, and shall include, without limitation, all third party management fees, inputs, services, farm labor, water charges, and irrigation pumping and distribution costs (including electrical and/or fuel costs), and harvesting and hauling charges, necessary or desirable for the production, harvest and transportation of the 2027 crops generated by the Land.

The provisions of this Section 9.1 shall survive the Closing.

9.2    Post-Harvest Closing.    To the extent the Closing occurs after the commencement of the 2026 harvest, at the Closing, Seller shall deliver an Assignment of Crop Proceeds with respect to all 2026 Crop Proceeds to be received following the Closing in the form set forth as Exhibit K (the "**Assignment of 2026 Crop Proceeds**").  As used herein, "**2026 Crop Proceeds**" means the net proceeds (net of all hauling, huller/sheller, packing, shipping and processing costs deducted by the processor/packer/shipper) from the sale or disposition of all crops and farm products generated by the Land for the 2026 crop year.

9.3    Trans-Harvest Closing.  In the event that the 2026 harvest is ongoing at the time of Closing, Buyer acknowledges that Seller shall terminate its farm management contract as of the Closing and Buyer shall be solely responsible to arrange for continuing harvest management and activities to commence as of Closing.  Notwithstanding the foregoing, and further notwithstanding the obligation of Buyer to reimburse Seller for all 2026 Cultural Costs incurred by Seller, the Parties shall cooperate to insure that any costs associated with the 2026 harvest invoiced by shared contractors

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

or vendors shall be appropriately allocated and/or prorated as necessary, outside of Escrow, for accurate cost accounting by the Parties.

9.4     Trans-Appeal Lease.  In the event that an appeal of the Sale Order is filed with the Court, at Seller's sole option, the Parties shall meet and confer to determine if it would be mutually beneficial to the Parties to enter into a lease of the Property, to be negotiated in good faith, for a period to run concurrently with the pendency of the appeal, or some portion thereof, and for such rent and on such terms as may be agreed by the Parties.  Nothing in this provision shall prohibit Seller from exercising its rights under Section 6.4(g) at any time prior to the execution of such a Lease by both Parties, and thereafter except as may be prohibited by subsequent agreement signed by the Parties, and neither Party shall be in breach if the Parties are unable to reach an agreement as to a mutually acceptable lease.

**10.     Closing**.

10.1     Closing Date.  Closing shall evidence Buyer's and Seller's satisfaction of their respective Closing obligations, as set forth herein.  Closing shall occur on or before the Closing Date. Closing shall be conditioned upon:

(a)     Full Performance.  Seller and Buyer shall have performed all of their respective obligations under this Agreement unless waived in writing by the other Party.

(b)     Conditions.  The conditions precedent set forth in Section 6.1, 6.2, and 6.3 have been satisfied or waived by the Party for whose benefit the condition exists.

(c)     Title Policies.  Title Company shall be ready, willing, and able to issue upon the Closing and following recordation of the Deed to Buyer, a current Owner's CLTA Standard Coverage Policy of title insurance (or ALTA Extended Coverage Policy, if Buyer shall elect to obtain an ALTA Survey), at no more than the insurer's standard rates ("**Buyer's Title Policy**").  Buyer's Title Policy shall show title to the Land, Improvements and appurtenant easements vested in Buyer, subject only to the lien of real property taxes for the current fiscal year not yet due and payable, those Schedule B exceptions listed in the title commitment for the Buyer's Title Policy (except to the extent Seller and/or Escrow Holder has agreed in writing to remove), and those exceptions listed on Schedule 10.1(c), attached hereto and incorporated by reference (the "**Permitted Exceptions**").  The premium for such title policy shall be paid as required under Section 12.

(d)     Delivery.  Possession of the Property shall be delivered to Buyer at the time of the Closing free of all leases, contracts, occupancy agreements, tenancies, licenses, use agreements or otherwise, except as may be included within the Permitted Exceptions, if applicable, or to the extent such items are not Receivership Property.

10.2     Seller's Closing Obligations.  On or before the Closing Date, Seller shall deposit or cause the following to be deposited into Escrow (duly executed, as appropriate), for recordation or delivery to Buyer as appropriate:

(a)     The Deed, executed by Seller.

-29-

(b)     A bill of sale for the Crops, and the Improvements, Oil Gas and Mineral Rights, and Water Rights (in so far as any of the foregoing are personal property) in substantially the form attached hereto as **Exhibit F** (the "**Bill of Sale**").

(c)     The Pistachio Contract Assumption, executed by Seller.

(d)     Duplicate counterparts of an assignment and assumption agreement (the "**Assignment Agreement**"), in substantially the form attached hereto as **Exhibit G,** with respect to any contracts, licenses or other agreements material to the Property and operations thereon that are Receivership Property and that Buyer informs the Seller in writing that Buyer would like to have assigned to it at Closing (to the extent that Seller can transfer or assign such licenses or agreements to Buyer without breach or liability).

(e)     An assignment of multi-peril crop insurance related to the Land, if any (the "**Assignment of Crop Insurance**") to the extent assignable.

(f)     An assignment of the Seller's membership interests in Poso Creek, executed by Seller and conveying such equity interest in Poso Creek to Buyer (the "**Poso Assignment**").

(g)     Duplicate counterparts of the Assignment of 2025 Crop Proceeds, executed by Seller, and, if applicable pursuant to Section 9.2, the Assignment of 2026 Crop Proceeds, executed by Seller.

(h)     The Intercreditor Agreement, executed by Seller.

(i)     Seller's executed and acknowledged counterparts of the Solar Contract Payment Assignments.

(j)     Seller's executed and acknowledged counterpart of the Memorandum.

(k)     The Closing Statement (as defined below) executed by Seller.

(l)     To the extent they are then in Seller's possession, comprise Receivership Property, and not posted at the Property, any licenses or permits issued for or with respect to the Property by governmental and quasi-governmental authorities having jurisdiction.

(m)     Seller's certification to the effect that it is not a "foreign person," as such term is defined in Section 1445 of the Internal Revenue Code of 1986, or evidence that any taxes due have been paid or otherwise provided for, using Escrow Holder's standard form.

(n)     Seller's California Form 593, if required.

(o)     Seller's IRS Form 1099-S if required by Escrow.

(p)     All keys, codes and combinations for locks, safes or security devices under Seller's control located on the Property, if any.

-30-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

(q)      A copy of the Sale Order entered by the Court.

(r)      A copy of Lance Miller's resignation as a Manager of Poso Creek.

(s)      Such other documents, resolutions, consents, and affidavits reasonably necessary or advisable to effect the valid consummation of the transaction evidenced by this Agreement, including without limitation any such affidavits and other documents reasonably required by the Title Company to issue the Buyer's Title Policy.

10.3     Buyer's Closing Obligations.     On or before the Closing, Buyer or its Authorized Assignee shall deposit or cause the following to be deposited into Escrow (duly executed as appropriate) for recordation or delivery to Seller, as appropriate:

(a)      The balance of the Purchase Price, the Cultural Cost Reimbursement, the Poso Note Adjustment, and Buyer's share of the Closing Costs and Prorations, and if known at the time of Closing, the 2025 Crop Adjustment (if a charge to Buyer).

(b)      The Note, executed by Buyer;

(c)      The Solar Consideration Security Agreement, executed by Buyer.

(d)      Evidence reasonably acceptable to Seller's counsel that the documents delivered to Seller by Buyer or its Authorized Assignee have been duly authorized by Buyer or its Authorized Assignee, duly executed on behalf of Buyer or its Authorized Assignee and when delivered constitute valid and binding obligations of Buyer or its Authorized Assignee.

(e)      A Preliminary Change of Ownership Report in the forms specified by Fresno and Kings County(ies) (the "**PCOR**").

(f)      The Pistachio Contract Assumption, executed by Buyer.

(g)      Duplicate counterparts of the Assignment Agreement, the Assignment of 2025 Crop Proceeds, and, if applicable pursuant to Section 9.2, the Assignment of 2026 Crop Proceeds.

(h)      Buyer's executed counterpart of the Poso Assignment.

(i)      Buyer's executed and acknowledged counterparts of all Solar Contract Payment Assignments obtained by Buyer as of the Closing Date pursuant to Sections 1.9 and 6.2(c), together with the Solar Contract counterparty signatures thereto, to the extent obtained.

(j)      Buyer's executed and acknowledged counterpart of the Memorandum.

(k)      Crop Lender's and Mortgage Lender's executed and acknowledged counterparts of the Intercreditor Agreement.

(l)      The Closing Statement (as defined below) executed by Buyer.

-31-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

(m)    Such other documents, resolutions, consents, and affidavits reasonably necessary or advisable to effect the valid consummation of the transaction evidenced by this Agreement.

10.4    **Escrow Holder Closing Obligations.**    The Escrow Holder shall close escrow on or before the Closing Date (i) if it has received all of the items to be deposited by Seller pursuant to Section 10.2, and all of the items to be deposited by Buyer pursuant to Section 10.3, and (ii) the Title Company is prepared to issue Buyer's Title Policy in the condition required in Section 10.1(c) above.  The Escrow Holder shall close escrow by:

(a)    Recording the Deed in the Official Records of Fresno and Kings County(ies), California, and return the recorded Deed to Buyer with a conformed copy to Seller, and file the PCOR in Fresno and Kings County(ies), California;

(b)    Recording the Memorandum in the Official Records of Fresno and Kings County(ies), California, as applicable and return the recorded Memorandum to Seller with a conformed copy to Buyer;

(c)    Issuing the Buyer's Title Policy (within fifteen (15) days after the Closing);

(d)    Delivering to Seller the proceeds due Seller from the Purchase Price, after deducting Seller's share of Closing Costs, and adjusting for Prorations;

(e)    Delivering to Buyer, Seller's certification that it is not a "foreign person;"

(f)    Delivering to Buyer the items deposited into Escrow by Seller for delivery to Buyer, including the Bill of Sale.

(g)    As applicable, delivering to each of Buyer and Seller, a fully executed counterpart of the Assignment Agreement, Assignment of 2025 Crop Proceeds, the Assignment of 2026 Crop Proceeds (if applicable), and each of the Solar Contract Payment Assignments; and

(h)    Delivering to Seller the items deposited into Escrow by Buyer for delivery to Seller, including the Note and the Solar Consideration Security Agreement.

(i)    Delivering to each of Crop Lender, Mortgage Lender, and Seller a fully executed counterpart of the Intercreditor Agreement.

11.    **Like-Kind Exchange**.    Each Party agrees to cooperate, in all reasonable respects, relating to any 1031 exchange requested by the other Party; provided that (i) such cooperation is at no cost, expense, or liability to the non-exchanging Party and (ii) that the Closing is not delayed as a result thereof.

12.    **Closing Costs**.    All closing costs incurred in connection with closing the Escrow (the "**Closing Costs**") shall be paid as follows:

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

(a)     Buyer and Seller shall pay their respective:  (i) legal fees and expenses, and (ii) share of Prorations as provided in the Closing Statement.

(b)     Seller shall pay (i) the documentary transfer taxes, sales taxes and transfer taxes applicable to the sale, (ii) one-half of the escrow fees, and (iii) the premium for a CLTA Standard Owner's Policy of Title Insurance for the Land.

(c)     Buyer shall pay (i) one-half of the escrow fees, (iii) 100% of the cost of recording and filing of any instrument to be recorded or filed as provided herein, (ii) premium for Buyer's Title Policy in excess of the premium for a CLTA Standard Owner's Policy of Title Insurance, if any, together with the costs of any endorsement Buyer shall request, and (iii) the costs of any new or updated ALTA site survey, if elected by Buyer.

(d)     Escrow Holder shall prepare a closing statement in form and content satisfactory to Buyer and Seller with respect to the transaction contemplated by this Agreement and deliver the same to Buyer and Seller within five (5) days prior to the Close of Escrow for their approval in writing (provided each will provide Escrow Holder with the information necessary to prepare such closing statement) ("**Closing Statement**").

**13.     Prorations**.  Except to the extent included in Cultural Cost Reimbursement, the following are to be paid by Buyer or Seller or prorated and apportioned on the Closing (the "**Prorations**"):

13.1     Utility Charges.  The Parties agree that utility and water charges (other than assessments collected with real property assessments by the county tax assessor) shall not be prorated in Escrow.  Seller shall be liable for all such charges incurred prior to the Closing (subject to reimbursement under Section 9, as applicable) and Buyer shall be liable for all such charges incurred after the Closing.

13.2     Water Loan Payment. The December Water Loan Payment shall not be a credit to the Seller as of Close of Escrow or otherwise prorated.

13.3     Other Apportionments.   Liability for real property taxes and assessments and water district or water company assessments if any, shall be prorated at and as of the Close of Escrow using the latest bills and assessments, with Seller being liable for all real estate taxes, assessments and water district or water company assessments for the Property attributable to a period before the Closing.  Rent or income under all residential, farm related, hunting and mineral, and other leases, if any, or any Contracts (except as provided in Section 13.2 above) shall be prorated as of the Close of Escrow.  Such prorations and apportionments shall be made such that Seller is allocated or liable for all such amounts attributable to the period before the Close of Escrow and Buyer shall be allocated or liable for all such amounts attributable to the period following the Close of Escrow. If any such taxes, assessments, or charges relate to periods prior to the Close of Escrow but are billed or become due after the Close of Escrow, such amounts shall be a credit against the Purchase Price at Closing unless such amounts are unknown in which case Seller shall remain liable for (and promptly reimburse Buyer for) the portion allocable to the period prior to the Close of Escrow. If any such taxes, assessments, or charges relate to periods following the Close of Escrow but are paid by Seller

20039.001/Westlands A&R PSA - Prudential (EX)

at or prior to the Close of Escrow, such amounts shall be a credit to Seller as an addition to the Purchase Price for the portion allocable to the period following the Close of Escrow.

       13.4    <u>Survival</u>.  The provisions of this <u>Section 13</u> shall survive the Closing; provided, however, that all claims for improper proration or adjustment under this <u>Section 13</u> must be made in writing to the other Party within six months after the Closing Date.

       **14.**    **Risk of Loss**.  Risk of physical loss, casualty or condemnation affecting the Property shall be borne by Buyer from and after the date that Buyer receives title and possession thereof.  In the event of the loss, destruction of a material part of the Property or condemnation prior to the Closing, from a cause other than the intentional act or omission or gross negligence of Buyer then, at Buyer's sole option, and upon Buyer's written notice to Seller within ten (10) business days of Buyer's receipt of notification of such loss, both Parties may be relieved of their obligations and this Agreement shall be deemed void and without further effect, and the Bid Deposit shall be returned to Buyer, unless Seller shall restore the lost or destroyed portion of the Property to its condition prior to the subject loss, casualty or condemnation, within thirty (30) days of receipt of notice and has fully paid all costs thereof and cleared any potential liens associated therewith (in which case, if applicable, the Closing Date shall be extended) or Buyer and Seller agree to reduce the Purchase Price by the value of the lost, destroyed or condemned portion of the Property.

       **15.**    **Assignment**.  Buyer may assign to any entity which is either (i) owned or controlled by, or under common control with, Buyer, or (ii) owned or controlled by George Bravante (each, an "**Authorized Assignee**"), any or all of its rights and obligations under this Agreement, including the right to purchase the Property, by giving Seller notice of such assignment at least three (3) days prior to the Close of Escrow, containing the name of the Authorized Assignee and the portion of the Property to be acquired by such Authorized Assignee, provided that Buyer shall not be released from any liability under this Agreement.  Any other proposed assignment shall require the written consent of Seller, which may be withheld at his sole discretion, but if consent is so granted shall then be an Authorized Assignee.  Each Authorized Assignee, along with Buyer, shall be obligated jointly and severally to fulfill all of Buyer's duties and obligations under this Agreement with respect to the portion of the property to be purchased by such Authorized Assignee and the warranties and representations of Buyer shall be the warranties and representations of the Authorized Assignee.

       Following the Closing, Seller shall have the right to assign any of its rights to performance of any obligations of Buyer which survive the Closing, including the Post-Closing Covenants, provided it shall provide written notice of such assignment to Buyer.

       **16.**    **Receivership Matters**. Seller and Buyer acknowledge that this Agreement and the sale of the Property are subject to Court approval and the consideration by Seller of alternative bids (if any). Seller and Buyer acknowledge that to obtain such approval, Seller must demonstrate that he has taken reasonable steps to obtain the highest or otherwise best offer possible for the Property, including giving notice of the transactions contemplated hereby to creditors and certain other interested parties as ordered by the Court, and conducting an auction in respect of the Property pursuant to the Marketing Procedures Order (the "**Auction**"). Seller and Buyer shall use commercially reasonable efforts to cooperate, assist, and consult with each other to secure the entry of the Marketing Procedures Order and Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement.

-34-

20039.001/Westlands A&R PSA - Prudential (EX)

17.    **Backup Bidder**. If an Auction is conducted, and Seller does not choose Buyer as the Successful Bidder, but instead chooses Buyer as the Back-up Bidder in accordance with the Marketing Procedures, Buyer will serve as the Back-up Bidder.  If Buyer is chosen as the Back-up Bidder, Buyer will be required to keep its bid to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer prior to or at the Auction) open and irrevocable until the earlier of (i) sixty (60) days following the date on which the Sale Order becomes final and non-appealable, or (ii) the closing of the sale to the Successful Bidder.  If an alternative transaction with the Successful Bidder is terminated prior to the termination of this Agreement, Buyer will be deemed to be the Successful Bidder and will forthwith consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer prior to or at the Auction).

18.    **Brokers**.  Buyer and Seller each represent and warrant to the other that, except for Capstone Capital Markets, LLC ("**Seller's Broker**") and Pearson Realty ("**Buyer's Broker**"), neither has engaged the services of any other real estate broker, salesperson, agent or finder, nor done any other act nor made any statement, promise or undertaking which would result in the imposition of liability for the payment of any other real estate brokerage commission, finder's fee or other fee or otherwise in connection with the transaction described herein.  Seller shall be responsible for (i) the payment of a commission or fee to Seller's Broker in accordance with its separate agreement therewith, and (ii) only in the event of the Closing to Buyer or its Authorized Assignee, the payment of a commission to Buyer's Broker in the amount of 0.5% of the final purchase price paid for the Property. Buyer shall be responsible for the payment of any commission or fee to Buyer's Broker in excess of the foregoing, if any, in accordance with its separate agreement therewith.  In the event that any person or entity perfects a claim for a brokerage commission, finder's fee or otherwise, based upon any such agreement, statement or act, the Party through whom such person or entity makes such claim shall be responsible therefor and shall defend, indemnify and hold the other Party and the Property harmless from and against such claim and all loss, cost and expense associated therewith, including attorney's fees.

19.    **Attorney's Fees; Pre-litigation Dispute Resolution**.  Each Party shall pay the fees and expenses of its own attorneys in connection with the preparation, negotiation, and execution of this Agreement.  In the event of any action between the Parties hereto for breach of or to enforce any provision or right hereunder, the unsuccessful Party in such action shall pay to the prevailing Party all costs and expenses expressly including, but not limited to, reasonable attorneys' fees and costs, including but not limited to expert fees, incurred by the prevailing Party in connection with such action. The Parties agree that before either institutes litigation against the other arising from this Agreement, it will make a good faith attempt to meet with the other Party first and attempt to resolve the dispute.

20.    **Notices**.  All notices and demands which either Party is required or desires to give to the other shall be given in writing (i) by certified mail, return receipt requested with appropriate postage paid, (ii) by personal delivery or by private overnight courier service to the address set forth below for the respective Party, or (iii) by e-mail with an electronic confirmation of delivery; provided that if any Party gives notice of a change of name or address, notices to that Party shall thereafter be given as demanded in that notice.  All notices and demands so given shall be effective upon receipt by the Party to whom notice or demand is being given, except that any notice given by certified mail

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

shall be deemed delivered three (3) business days after deposit in the United States Mails, and any notice given by overnight courier shall be deemed delivered one (1) business day after delivery to the overnight courier.

|  |  |
|---|---|
| If to Buyer: | Brightfield Investments LLC<br>c/o International Farming Corporation, LLC<br>1318 Dale St.<br>Raleigh, NC 27605<br>Attention: Ralph Isenrich<br>Email: risenrich@intlfarming.com |
| With a copy to: | George Bravante<br>1356 S. Buttonwillow Avenue<br>Reedley, CA 93654<br>Email:  george@bravantefarmcapital.com |
| With a copy to: | Wild, Carter & Tipton<br>246 W. Shaw Ave.<br>Fresno, CA 93704<br>Attn:  Bruce Brown<br>Telephone:      559-224-2131 (Ext 3763)<br>Email:  bbrown@wctlaw.com<br><br>Sheppard, Mullin, Richter & Hampton LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111-4109<br>Attention: Ori Katz, Robert Sahyan, Kirk Rider<br>Email: okatz@sheppard.com, rsahyan@sheppard.com, krider@sheppard.com |
| If to Seller: | Lance Miller, Receiver<br>c/o Pivot Group<br>1230 Rosecrans Avenue<br>Suite 300 – PMB928<br>Manhattan Beach, CA 90266<br>Attn:  Lance Miller or Matt Covington<br>Telephone:      424-363-0599<br>Email:  lance.miller@pivotgrp.com and matt.covington@pivotgrp.com |
| With a copy to: | Katten Muchin Rosenman LLP<br>2121 North Pearl Street, Suite 1100<br>Dallas, TX 75201-2591<br>Attn:  John Mitchell and Michaela Crocker<br>Telephone:      214-765-3600 |

20039.001/Westlands A&R PSA - Prudential (EX)

Email: john.mitchell@katten.com and
michaela.crocker@katten.com

and

Cutts Law, PC
5088 N. Fruit Ave, Ste 101
Fresno, CA 93711
Attn: Lisa A. Cutts
Telephone:    559-226-8177
Email: lac@cutts-law.com

21.    **Waivers**.  Any Party can waive a provision, condition or covenant contained in this Agreement, which is included herein for the benefit of the Party making such waiver.  Any such waiver shall be in writing and delivered to the other Party and the Escrow Holder.  No waiver by any Party of any covenant, condition or breach hereunder shall be deemed a waiver of any other subsequent covenant, condition, or breach.

22.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with California law without regard to conflict of laws principles.  The Court shall have exclusive jurisdiction over any legal action brought by any Party to interpret or enforce this Agreement. To the extent the Court declines jurisdiction, any legal action brought by any Party to interpret or enforce this Agreement shall be venued in the appropriate state or federal court sitting in the City and County of Fresno, California.

23.    **Business Days**.  In the event that this Agreement calls for an act to be performed, or a notice to be given, on or by a specific date, which date falls on a Saturday, Sunday, or holiday (as defined in Section 6700 and 6701 of the California Government Code), then such act may be performed upon or such notice given on the next business day with the same effect as if it had been performed on the day appointed.  Any reference to "business days" herein shall mean those days other than Saturdays, Sundays, or holidays (as defined in Section 6700 and 6701 of the California Government Code).

24.    **WAIVER OF JURY TRIAL**.  TO THE FULLEST EXTENT THAT IT MAY HEREAFTER BE PERMITTED BY LAW, THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES (EACH A "DISPUTE", AND COLLECTIVELY, ANY OR ALL, THE "DISPUTES") OF ANY KIND WHATSOEVER THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, ANTITRUST CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON-LAW OR STATUTORY CLAIMS.  THE PARTIES FURTHER WARRANT AND REPRESENT TO ONE ANOTHER THAT IT HAS REVIEWED THIS WAIVER WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, AND THAT IT KNOWINGLY

20039.001/Westlands A&R PSA - Prudential (EX)

AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL.

25. **Entire Agreement**. This Agreement and the Confidentiality and Nondisclosure Agreement (if any) entered into between Buyer and Seller prior to the date hereof (the "**NDA**") constitute the entire agreement between the Parties hereto with respect to the subject matter hereof and supersede all prior agreements between the Parties hereto with respect thereto. The NDA shall continue in accordance with its terms, and shall terminate upon any Closing under this Agreement. This Agreement may not be altered, amended, changed, terminated, or modified in any respect or particular, unless the same shall be in writing and signed by the Party to be charged.

26. **Pending Receivership**. Buyer, on behalf of itself and its successors and assigns, acknowledges, and expressly agrees that Seller is entering into this Agreement solely in his capacity as Court-appointed receiver in the Proceeding and, as such, shall have no personal liability for any claims arising under or related to this Agreement, the Property, or otherwise.

27. **Bidding Procedures**. The bidding procedures to be employed with respect to this Agreement shall be those reflected in the Marketing Procedures Order. Buyer agrees and acknowledges that Seller is and may continue soliciting inquiries, proposals, or offers from third parties for any and all of the Property in connection with any pursuant to the terms of the Marketing Procedures Order. **Buyer and each Buyer Party and Participant has agreed in writing to be bound by this Section 27 the Agreement also agree to be bound by and comply with the terms of the Marketing Procedures Order, the Sale Order, or any other orders entered by the Court with respect to the Property. Buyer and such Buyer Parties and Participants further agree that each hereby waives any right it may hold to appeal, seek vacatur of, reconsideration of, collaterally challenge, or otherwise challenge a Court-approved sale of the Property on any grounds other than the Seller, in his capacity as receiver, failed to materially comply with the terms of the Marketing Procedures Order and that such failure directly resulted in a materially lower purchase price than what could have been otherwise obtained. Buyer and each Buyer Party and Participant that has agreed in writing to be bound by this Section 27 further agree that neither Section 6.2(e) nor this Section 27 confer appellate or other rights upon such parties that do not otherwise exist under applicable law.**

**Buyer's Initials:** _____ Initial _____

28. **Validity**. Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law, but, if any provision of this Agreement shall be invalid or prohibited thereunder, such provision shall be effective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

29. **Facsimile Electronic Signatures**. For all documents to be executed by the Parties pursuant hereto, except documents to be recorded or where originals are otherwise required by either Party or Escrow Holder, Escrow Holder is instructed to accept, and the Parties agree to accept, (i) facsimile or electronic e-mail signatures of the signor if the signor or his representative has assured Escrow Holder and the other Party that the original has been placed in regular mail to the Escrow Holder, or (ii) DocuSign signatures of the signor.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

30.    **Time**.  Time is of the essence of this Agreement.

31.    **Counterparts**.  This Agreement may be signed by the Parties in different counterparts and the signature pages combined to create a document binding on all Parties.

32.    **Binding Offer**. Buyer agrees that, upon written notice to Buyer by Seller that this Agreement as executed by Buyer only (the "**Offer**") is the subject of a notice filed with the Court, this Agreement (as may be amended by written agreement of Seller and Buyer) shall be irrevocable for a period of 60 days from the date of such notice or such other period as agreed to by the Parties in writing (the "**Irrevocable Period**"). If the Court enters a Sale Order approving this Agreement (as may be amended by written agreement of the Seller and Buyer), then a binding agreement of purchase and sale (without any conditions whatsoever for the benefit of the Buyer, including any conditions for review or approval by third party advisors of the Buyer, financial, planning, banking, legal or otherwise) comes into existence immediately upon the Seller's acceptance.  Buyer acknowledges that this Section 32 obligates the Buyer to complete the purchase of the Property in accordance with the terms of this Agreement (as may be amended by written agreement of Seller and Buyer) upon Seller's acceptance.  Notwithstanding the foregoing, the provisions of Section 14**Error! Reference source not found.** of this Agreement shall apply during the Irrevocable Period in the event of a casualty or condemnation affecting the Property.

33.    **Amended and Restated Agreement**.  This Agreement amends and restates in its entirety that certain Purchase and Sale Agreement and Joint Escrow Instructions dated for reference purposes as of January 15, 2026, as amended by that certain First Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated February 13, 2026, as amended by that certain Second Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated March 27, 2026, as amended by that certain Third Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated March 31, 2026, as amended by that certain Fourth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated April 6, 2026, as amended by that certain Fifth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated April 13, 2026, as amended by that certain Sixth Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated April 15, 2026, as amended by that certain Seventh Amendment to Purchase and Sale Agreement and Joint Escrow Instructions dated April 22, 2026 (as so amended, the "**Original Agreement**"). Upon the Effective Date, the Original Agreement shall be of no further force or effect and shall be superseded in its entirety by this Agreement.

*SIGNATURES FOLLOW NEXT PAGE*

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement effective as of the date first above written.

SELLER

BUYER

DocuSigned by:

*Lance Miller*

F181C7A978754AD

Lance Miller, solely in his capacity as
Court-appointed Receiver

Date of Execution: _____6/22/2026_____

BRIGHTFIELD INVESTMENTS, LLC,
a Delaware limited liability company

Signed by:

By: _____
AA1BA310D3534B4...

GEORGE R. BRAVANTE
Managing Member

Date of Execution: ____6/17/2026____

Effective Date: ____6/22/2026____

-40-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

ACCEPTANCE BY ESCROW HOLDER


CHICAGO TITLE COMPANY, a California corporation, hereby acknowledges that it has received an executed counterpart of the foregoing Purchase and Sale Agreement and Joint Escrow Instructions and agrees to act as Escrow Holder thereunder, and to be bound by and perform the terms thereof as such terms apply to Escrow Holder.


CHICAGO TITLE COMPANY,
a California corporation

By: _____
Name: _____
Title: _____

Escrow Number: _____

Dated: _____

-41-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT A

LEGAL DESCRIPTION OF THE LAND

*TO BE VERIFIED BY PRELIMINARY REPORT*

(ATTACHED)

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF FRESNO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**PARCEL 1: APN: 038-210-47s:**

The West three-fourths (3/4ths) of the Northeast quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the coal and other minerals in the land so entered and patented, TOGETHER WITH, the right to prospect for, mine and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862), as reserved by the United States of America in the Patent recorded June 9, 1926, in Book 683, Page 359 of Official Records, as Document No. 16644.

**PARCEL 1A: (intentionally deleted)**

**PARCEL 1B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 1C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

**PARCEL 2: APN: 027-050-68s:**

All that portion of the South half of Section 11, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official

Plat thereof, lying South of the centerline of Panoche Road and South of the South line of Parcel 2 of that certain parcel of land granted to Chevron Land and Development Company, a Delaware corporation in Deed recorded November 16, 1970, in Book 5836, Page 358, Official Records, Document 79938.

EXCEPTING THEREFROM, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single man, in the Deed recorded September 27, 1950, in Book 2906, Page 292 & 293 of Official Records, as Document No. 52265.

ALSO EXCEPTING THEREFROM, any and all mineral, oil and gas interest, as said interest appears of record of the Grantors Ray Sagardia and Jennie Sagardia, husband and wife, Mike Sagardia and Jessie Sagardia husband and wife, and Victoria Bidegaray, a widow, as reserved in the Deed recorded December 21, 1983, as Document No. 83119468, and re-recorded January 6, 1984, as Document No. 84001779.

ALSO EXCEPTING THEREFROM, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Frank A. Logoluso Farms, in the Deed recorded November 7, 1985, as Document No. 85113884, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by David W. Holmes, Jr., in the Deed recorded August 5, 1987, as Document No. 87095530, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Lesa Weis Logoluso, in the Deed recorded August 5, 1987, as Document No. 87095531, of Official Records.

ALSO EXCEPTING THEREFROM, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Richard Andrews, in the Deed recorded August 5, 1987, as Document No. 87095532, of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas and minerals heretofore reserved or conveyed of record, as recited in the Deeds recorded November 7, 1985, as Document No. 85113811, of Official Records and December 23, 2003, in Instrument No. 20030302994, of Official Records.

ALSO EXCEPTING THEREFROM, one-half of all previously unreserved mineral, oil, gas and other hydrocarbon substances on and under said land, as reserved by Peoples Benefit Life Insurance Company, an Iowa corporation, in the Deed recorded December 23, 2003, in Instrument No. 20030302994, of Official Records.

**PARCEL 3: APN: 027-110-30s; AND APN: 027-200-04s:**

Parcel B of PLA 23-02 (b), according to the Certificate of Compliance PLA 23-02 (b), recorded May 20, 2024, as Document No. 2024-0044685, of Official Records, described as follows:

All that portion of the Southwest quarter of Section 12, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, lying Northeasterly of the Northeasterly boundary of that certain parcel of land

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

conveyed to the State of California in the Deed recorded January 14, 1966, in Book 5264, Page 78 of Official Records, Document No. 3740, In the County of Fresno, State of California.

EXCEPTING THEREFROM, that portion of said land lying within the boundaries of that certain parcel of land granted to the Westlands Water District, in the Deed recorded November 17, 1967, in Book 5502, Page 160 of Official Records, Document No. 79667, in the County of Fresno, State of California.

ALSO EXCEPTING THEREFROM, that portion of said land lying within the boundaries of Parcels 3 and 4 of that certain parcel of land granted to the Chevron Land and Development Corporation in the Deed recorded November 16, 1970, in Book 5836, Page 358 of Official Records, Document No. 79938, in the County of Fresno, State of California.

ALSO EXCEPTING THEREFROM, that portion of said land lying within the northerly and southerly boundaries of Panoche Roadas said lines are described in Parcels 3 and 4 of that certain parcel of land granted to the Chevron Land and Development Corporation in the Deed recorded November 16, 1970, in Book 5836, Page 358 of Official Records, Document No. 79938, in the County of Fresno, State of California

IN ADDITION all that portion of the West Half of Section 13, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, lying Northeasterly of the Northeasterly boundary of that certain parcel of land conveyed to the State of California in the Deed recorded January 14, 1966, in Book 5264, Page 78 of Official Records, Document No. 3740, in the County of Fresno, State of California.

EXCEPTING FROM, that portion lying within the Southwest quarter of said Section 12, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single man, in the Deed recorded September 27, 1950, in Book 2906, Page 292 & 293 of Official Records, as Document No. 52265.

EXCEPTING FROM, that portion lying within the West half of said Section 13, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single man, in the Deed recorded September 27, 1950, in Book 2906, Page 294 & 295 of Official Records, as Document No. 52266.

ALSO EXCEPTING FROM, all of said land, any and all mineral, oil and gas interest, as said interest appears of record of the Grantors Ray Sagardia and Jennie Sagardia, husband and wife, Mike Sagardia and Jessie Sagardia husband and wife, and Victoria Bidegaray, a widow, as reserved in the Deed recorded December 21, 1983, as Document No. 83119468, and re-recorded January 6, 1984, as Document No. 84001779.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Frank A. Logoluso Farms, in the Deed recorded November 7, 1985, as Document No. 85113884, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Richard Andrews, in the Deed recorded August 5, 1987, as Document No. 87095527, of Official

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Lesa Weis Logoluso, in the Deed recorded August 5, 1987, as Document No. 87095528, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by David W. Holmes, Jr., in the Deed recorded August 5, 1987, as Document No. 87095529, of Official Records.

ALSO EXCEPTING FROM, all of said land, all oil, gas and minerals heretofore reserved or conveyed of record, as recited in the Deeds recorded November 7, 1985, as Document No. 85113811, of Official Records and December 23, 2003, in Instrument No. 20030302994, of Official Records.

ALSO EXCEPTING FROM, all of said land, one-half of all previously unreserved mineral, oil, gas and other hydrocarbon substances on and under said land, as reserved by Peoples Benefit Life Insurance Company, an Iowa corporation, in the Deed recorded December 23, 2003, in Instrument No. 20030302994, of Official Records.

**PARCEL 4: APN: 027-110-41s; AND APN: 027-200-02s:**

Parcel A of PLA 23-02 (b), according to the Certificate of Compliance PLA 23-02 (b), recorded May 20, 2024, as Document No. 2024-0044684, of Official Records, described as follows:

All that portion of the West Half of Section 13, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, lying Southwesterly of the Southwesterly boundary of that certain parcel of land conveyed to the State of California in the Deed recorded January 14, 1966, in Book 5264, Page 78 of Official Records, Document No. 3740, in the County of Fresno, State of California.

IN ADDITION that portion of the Southwest Quarter of section 12, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, according to the Official Plat thereof and being more particularly described as follows:

That portion of said Southwest Quarter of Section 12, lying Southwesterly of the Southwesterly boundary of said certain parcel of land conveyed to the State of California in the Deed recorded January 14, 1966, in Book 5264, Page 78 of Official Records, Document No. 3740, in the County of Fresno, State of California.

EXCEPTING THEREFROM, that portion of Parcel 3 of Parcel Map No. 2077, recorded January 6, 1975, in Book 15 of Parcel Maps at Page 17, Fresno County Records, lying in the said Southwest Quarter of Section 12 and Southwesterly of said Southwesterly boundary of that certain parcel of land conveyed to the State of California in the Deed recorded January 14, 1966, in Book 5264, Page 78 of Official Records, Document No. 3740, in the County of Fresno, State of California.

EXCEPTING FROM, that portion lying within the Southwest quarter of said Section 12, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single man, in the Deed recorded September 27, 1950, in Book 2906, Page 292 & 293 of Official Records, as Document No. 52265.

20039.001/Capstone-Westlands Legal Description

EXCEPTING FROM, that portion lying within the West half of said Section 13, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single man, in the Deed recorded September 27, 1950, in Book 2906, Page 294 & 295 of Official Records, as Document No. 52266.

ALSO EXCEPTING FROM, all of said land, any and all mineral, oil and gas interest, as said interest appears of record of the Grantors Ray Sagardia and Jennie Sagardia, husband and wife, Mike Sagardia and Jessie Sagardia husband and wife, and Victoria Bidegaray, a widow, as reserved in the Deed recorded December 21, 1983, as Document No. 83119468, and re-recorded January 6, 1984, as Document No. 84001779.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Frank A. Logoluso Farms, in the Deed recorded November 7, 1985, as Document No. 85113884, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Richard Andrews, in the Deed recorded August 5, 1987, as Document No. 87095527, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Lesa Weis Logoluso, in the Deed recorded August 5, 1987, as Document No. 87095528, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by David W. Holmes, Jr., in the Deed recorded August 5, 1987, as Document No. 87095529, of Official Records.

ALSO EXCEPTING FROM, all of said land, all oil, gas and minerals heretofore reserved or conveyed of record, as recited in the Deeds recorded November 7, 1985, as Document No. 85113811, of Official Records and December 23, 2003, in Instrument No. 20030302994, of Official Records.

ALSO EXCEPTING FROM, all of said land, one-half of all previously unreserved mineral, oil, gas and other hydrocarbon substances on and under said land, as reserved by Peoples Benefit Life Insurance Company, an Iowa corporation, in the Deed recorded December 23, 2003, in Instrument No. 20030302994, of Official Records.

**PARCEL 5: APN: 027-110-37s:**

Government Lots 1 to 8, inclusive, and the Southeast quarter of Fractional Section 14, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING FROM, that portion lying within the West half of said Section 13, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

man, in the Deed recorded September 27, 1950, in Book 2906, Page 294 & 295 of Official Records, as Document No. 52266.

ALSO EXCEPTING FROM, all of said land, any and all mineral, oil and gas interest, as said interest appears of record of the Grantors Ray Sagardia and Jennie Sagardia, husband and wife, Mike Sagardia and Jessie Sagardia, husband and wife, and Victoria Bidegaray, a widow, as reserved in the Deed recorded December 21, 1983, as Document No. 83119468, and re-recorded January 6, 1984, as Document No. 84001779.

ALSO EXCEPTING THEREFROM, all oil, gas and minerals heretofore reserved or conveyed of record, as recited in the Deeds recorded November 7, 1985, as Document No. 85113811, of Official Records and December 23, 2003, in Instrument No. 20030302994, of Official Records.

ALSO EXCEPTING THEREFROM, one-half of all previously unreserved mineral, oil, gas and other hydrocarbon substances on and under said land, as reserved by Peoples Benefit Life Insurance Company, an Iowa corporation, in the Deed recorded December 23, 2003, in Instrument No. 20030302994, of Official Records.

**PARCEL 6: APN: 027-110-40s:**

The West half of Section 24, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING FROM, that portion lying within the West half of said Section 13, 70% of all oil, gas, minerals and other hydrocarbon substances in, on or underlying said real property, and reserving to the grantor the right to explore for, drill for, remove, store, refine and process the same, and the right of ingress and egress to and from said real property, and the further right to do all things on said real property necessary or convenient in the exercising of the rights herein expressly reserved, all as reserved by Lyle J. Christie, a single man, in the Deed recorded September 27, 1950, in Book 2906, Page 294 & 295 of Official Records, as Document No. 52266.

ALSO EXCEPTING FROM, all of said land, any and all mineral, oil and gas interest, as said interest appears of record of the Grantors Ray Sagardia and Jennie Sagardia, husband and wife, Mike Sagardia and Jessie Sagardia husband and wife, and Victoria Bidegaray, a widow, as reserved in the Deed recorded December 21, 1983, as Document No. 83119468, and re-recorded January 6, 1984, as Document No. 84001779.

ALSO EXCEPTING THEREFROM, all oil, gas and minerals heretofore reserved or conveyed of record, as recited in the Deeds recorded November 7, 1985, as Instrument No. 85113881, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by David W. Holmes, Jr., in the Deed recorded August 5, 1987, as Document No. 87095530, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Lesa Weis Logoluso, in the Deed recorded August 5, 1987, as Document No. 87095531, of Official Records.

ALSO EXCEPTING FROM, all of said land, an undivided 10% of 100% interest, being all of Grantor's right, title and interest, in and to all oil, gas, minerals and other hydrocarbons substances in and under said land, as reserved by Richard Andrews, in the Deed recorded August 5, 1987, as Document No. 87095532, of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas and minerals heretofore reserved or conveyed of record, as

20039.001/Capstone-Westlands Legal Description

recited in the Deeds recorded August 5, 1987, as Document Nos. 87095527, 87095528 & 87095529 and December 23, 2003, in Instrument Nos. 20030302992, 20030302993 & 20030302995, of Official Records.

ALSO EXCEPTING THEREFROM one-half of all previously unreserved mineral, oil, gas and other hydrocarbon substances on and under said land, as reserved by Peoples Benefit Life Insurance Company, an Iowa corporation, in the Deed recorded December 23, 2003, in Instrument No. 20030302995 of Official Records.

### PARCEL 7: APN: 038-061-06:

The Northeast quarter of Fractional Section 6, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California.

EXCEPTING THEREFROM, that portion conveyed to The United States of America, in the Deed to The United States of America, and its assigns, in the Deed recorded September 25, 1963, in Book 4910, Page 424 of Official Records, as Document No. 75745.

### PARCEL 7A:

Various easements, appurtenant to Parcel 1 above, as created and defined in that certain document entitled "Grant of Easement" and recorded November 26, 2014, as Instrument No. 2014-0134199 of Official Records.

### PARCEL 8: APN: 038-061-23s:

The Fractional Northwest quarter of Section 5, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to The United States of America, and its assigns, in the Deed recorded November 15, 1963, in Book 4929, Page 440 of Official Records, as Document No. 90952, as more particularly described therein.

ALSO EXCEPTING THEREFROM, that portion conveyed to Triple R Farms, a California general partnership, in the Deed recorded April 5, 1999, as Instrument No. 53120 of Official Records, being that portion of said Northwest quarter of said Section 5, lying Northeast of the Northeast line of the land conveyed to The United States of America, and its assigns, in the Deed recorded November 15, 1963, in Book 4929, Page 440 of Official Records, as Document No. 90952.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in all oil, gas, petroleum, petroleum productions, hydrocarbon substances and any other minerals in, upon or under said premises, or hereafter discovered in, upon or under the same, TOGETHER WITH, the right to enter upon said premises for the purpose of boring oil and gas wells and extracting from said premises oil, petroleum, gas, petroleum products and other hydrocarbon substances, and for the purpose of extracting any other minerals, therein, thereon or thereunder, TOGETHER WITH, the right of ingress and egress to and from said wells, and the right to construct necessary buildings, tanks, roads, power lines and other structures for the purpose of using and operating said wells and taking care of said oil, petroleum, gas, petroleum products and hydrocarbon substances, and any other minerals, and all other rights incidental and necessary to the exercise of the rights so reserved by the Grantors, ALL SUBJECT to the terms and conditions contained therein, as reserved by Elizabeth C. McCoy, a widow, in the Deed recorded November 21, 1949, in Book 2795, Page 254 of Official Records, as Document No. 54736.

### PARCEL 9: APN: 038-061-28s:

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

That certain piece or parcel of land described in the Certificate of Compliance No. 3349(b) recorded February 4, 2011, as Instrument No. 2011-0019412, being more particularly described as follows:

That portion of the North half of the Southeast quarter of Section 5, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof; lying South of that certain parcel of land granted to The United States of America as described in that certain deed executed by Rabb Bros., a co-partnership composed of Roy K. Rabb and John C. Rabb, partners, recorded November 15, 1963, in Book 4929 Page 440 of Official Records, Document No. 90952.

EXCEPTING THEREFROM, an undivided 1/3 interest in and to any oil, gas or other minerals, as reserved by Winfield S. Smith and Maxie R. Smith, husband and wife, in the Deed recorded June 22, 1912, in Book 504, Page 239 of Deeds, as Document No. 12173.

EXCEPTING THEREFROM, all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the right of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Martha U. Johnson, a widow, in the Deed recorded February 27, 1948, in Book 2628, Page 16 of Official Records, as Document No. 9952.

### PARCEL 10: APN: 038-061-31s:

The East half of the Southwest quarter of the Southeast quarter of Section 5, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

TOGETHER WITH, the West half of the Southwest quarter of the Southeast quarter of Section 5, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/3 interest in and to any oil, gas or other minerals, as reserved by Winfield S. Smith and Maxie R. Smith, husband and wife, in the Deed recorded June 22, 1912, in Book 504, Page 239 of Deeds, as Document No. 12173.

ALSO EXCEPTING THEREFROM, an undivided one-third interest in and to all of the oil, gas and other hydrocarbon substances and minerals in, on and under said land, TOGETHER WITH, the right to enter upon said premises for the purpose of boring oil and gas wells and extracting from said land oil, petroleum, gas, petroleum products and other hydrocarbon substances, and for the purpose of extracting any other minerals therein or thereunder, TOGETHER WITH all other rights incidental and necessary to the exercise of the rights so reserved by the seller, as reserved by Eva J. Dodd, an unmarried woman, who acquired title to a portion of the herein described property, as Eva J. Smyser, in the Deed recorded January 26, 1948, in Book 2610, Page 212 of Official Records, as Document No. 3882.

### PARCEL 11: APN: 038-061-32s:

The Southeast quarter of the Southeast quarter of Section 5, Township 15 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

EXCEPTING THEREFROM, that portion lying West of the East 384.8 feet thereof;

ALSO EXCEPTING THEREFROM, all that portion conveyed to The United States of America as described in that certain deed executed by Rabb Bros., a co-partnership composed of Roy K. Rabb and John C. Rabb, partners, recorded November 15, 1963, in Book 4929 Page 440 of Official Records, Document No. 90952.

ALSO EXCEPTING THEREFROM, an undivided 1/3 interest in and to any oil, gas or other minerals, as reserved by Winfield S. Smith and Maxie R. Smith, husband and wife, in the Deed recorded June 22, 1912, in Book 504, Page 239 of Deeds, as Document No. 12173.

ALSO EXCEPTING THEREFROM, an undivided two-thirds interest in and to all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Leonard Smyser and Paul Smyser, as Trustees, in trust for the uses and purposes set forth in the last will and testament of Matilda Smyser, deceased, as provided by the decree of distribution recorded April 15, 1948, as Document No. 18911, said reservation was included in the Deed recorded September 28, 1948, in Book 2672, Page 407, of Official Records, as Document No. 45293.

**PARCEL 12: APN: 038-061-33s:**

That portion of the Southeast quarter of the Southeast quarter of Section 5, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying West of the East 384.8 feet thereof.

EXCEPTING THEREFROM, all that portion conveyed to The United States of America as described in that certain deed executed by Rabb Bros., a co-partnership composed of Roy K. Rabb and John C. Rabb, partners, recorded November 15, 1963, in Book 4929 Page 440 of Official Records, Document No. 90952.

ALSO EXCEPTING THEREFROM, an undivided 1/3 interest in and to any oil, gas or other minerals, as reserved by Winfield S. Smith and Maxie R. Smith, husband and wife, in the Deed recorded June 22, 1912, in Book 504, Page 239 of Deeds, as Document No. 12173.

ALSO EXCEPTING THEREFROM, an undivided two-thirds interest in and to all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Leonard Smyser and Paul Smyser, as Trustees, in trust for the uses and purposes set forth in the last will and testament of Matilda Smyser, deceased, as provided by the decree of distribution recorded April 15, 1948, as Document No. 18911, said reservation was included in the Deed recorded September 28, 1948, in Book 2672, Page 407, of Official Records, as Document No. 45293.

**PARCEL 13: APN: 038-061-34s:**

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

The Southwest quarter of Section 5, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Martha M. Darling, a widow, in the Deed recorded December 30, 1947, in Book 2611, Page 71 of Official Records, as Document No. 64478.

**PARCEL 14: APN: 038-061-58s:**

The North half and the Southeast quarter of Fractional Section 4, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California.

EXCEPTING THEREFROM, all that portion conveyed to The United States of America as described in that certain deed executed by Rabb Bros., a co-partnership composed of Roy K. Rabb and John C. Rabb, partners, recorded November 15, 1963, in Book 4929 Page 440 of Official Records, Document No. 90952.

EXCEPTING THEREFROM, all that portion of the North half of said Section 4, located and situated North of a line parallel to the North line of said Section 4, which line is 50 feet South of the center line of the well located in the Northeast corner of the North half of said Section 4 (hereinafter referred to as Well 6-4-D) and is within an area of 50 foot East and West of a line running North and South and which right angles to the North line of said Section 4 from the center of Well 6-4-D, as excepted in the Deed recorded April 13, 1989, as Document No. 89039482, of Official Records.

ALSO EXCEPTING THEREFROM, all that portion of the North half of said Section 4, which lies within a circle described on said land which has a radius of 50 feet, and the center of which circle is the center of the well located in the Southeast corner of the North half of said Section 4 designated as Well 6-4-H, as excepted in the Deed recorded April 13, 1989, as Document No. 89039482, of Official Records.

EXCEPTING FROM, the North half of said Section 4, all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Elizabeth C. McCoy, a widow, in the Deed recorded April 26, 1950, in Book 2835, Page 143 of Official Records, as Document No. 23687.

EXCEPTING FROM, the South half of said Section 4, all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Elizabeth C. McCoy, a widow, in the Deed recorded September 20, 1950, in Book 2903, Pages 343 & 344 of Official Records, as Document No. 50801.

**PARCEL 14A:**

Non-exclusive easement for pipeline purposes, as set forth in and subject to the terms, provisions and conditions contained in that certain Document entitled "Grant of Easement" recorded March 30, 2011, as Instrument No. 2011-0044336 of Official Records.

**PARCEL 15: APN: 038-061-55s:**

Parcel 2 of that certain Certificate of Compliance No. PLA 03-03(B), recorded September 07, 2004, as Instrument No. 2004-0200356 of Official Records, described as follows:

The Southeast quarter of Section 9, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 75% interest of, in and to the oil, gas and other hydrocarbons and minerals in, under or that may be produced from said land, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof, and the exploration and testing of said land, including roads and power lines; and also the right to drill for, produce and use water from said land in connection with drilling, mining and production operations thereon, SUBJECT, to the terms and conditions contained therein, all as reserved by Bonne Poi Land Corporation, Ltd., in the Deed recorded October 24, 1958, in Book 4128, Page 237, of Official Records, as Document No. 69467.

ALSO EXCEPTING THEREFROM, one-half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 566 of Official Records, as Document No. 93858.

ALSO EXCEPTING THEREFROM one-half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by William J. Rivers, et al, in the Deed recorded June 30, 1978, in Book 7065, Page 555 of Official Records, as Document No. 71243.

**PARCEL 15A: APN: 038-130-05 (PORTION OF):**

A non-exclusive easement for well site and power poles and associated power lines, pipelines and other necessary fixtures as granted to Farid Assemi, et al, by instrument recorded June 29, 2005, as Document No. 2005-0144188, and amended by instrument recorded September 1, 2010, as Document No. 2010-0112982, both of Official Records over and across the following described property:

A 50-foot by 50-foot square around the existing irrigation well located in the Northeast corner of the North half of the Northeast quarter of Section 17, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 16: APN: 038-071-41s:**

That portion of the Southeast quarter of Section 11, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying Southwesterly of that portion of the San Luis Canal conveyed to the United States of America in the Deed recorded October 15, 1965, in Book 5228, Page 557 of Official Records, as Document No. 83856.

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

### PARCEL 17: APN: 038-071-42s:

That portion of the Southwest quarter of Section 11, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying Southerly of the Southerly boundary of that certain parcel of land conveyed to the United States of America by Deed recorded October 6, 1966, in Book 5364, Page 415 of Official Records, as Document No. 71994.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, 50% of all oil, gas, petroleum and other hydrocarbon substances and minerals including natural gas, methane, propane, isobutane, natural butane, casinghead gasoline and all by-products derived from same, located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, all the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Florence W. Free, in the Deed recorded November 2, 1962, in Book 4781, Page 890 of Official Records, as Document No. 86041.

ALSO EXCEPTING THEREFROM, an undivided 50% interest of all oil, gas and other hydrocarbons and minerals therein and thereunder, as reserved by Giffen, Inc., a California corporation, in the Deed recorded November 15, 1973, in Book 6234, Page 53 of Official Records, as Document No. 99465.

### PARCEL 18: APN: 038-071-43s:

All that portion of Lots 6, 7 and 8 in Section 10, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, according to the Map of California Land Investment Company's Tract No. 1, in the unincorporated area of the County of Fresno, State of California, recorded May 8, 1912, in Book 7, Page 49 of Record of Surveys, in the office of the County Recorder of said County, lying Southwesterly of the San Luis Canal, said canal being described in the Deed to the United States of America, recorded February 20, 1963, in Book 4825, Page 42 of Official Records, as Document No. 15294.

EXCEPTING FROM, said Lots 7 and 8, an undivided one-half of grantor's right, title and interest in and to all oil, gas and minerals in and under said property, as reserved by W. J. Deal & Co., Inc., in the Deed recorded December 8, 1975, in Book 6520, Page 678 of Official Records, as Document No. 93876.

### PARCEL 18A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain document entitled "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, of Official Records, and re-recorded February 22, 2006 as Instrument No. 2006-0037388, of Official Records.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

**PARCEL 19: APN: 038-071-44s & PORTION OF APN: 038-071-59:**

All that that portion of Lots 9, 10 and 11, inclusive, in Section 10, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, according to the Map of California Land Investment Company's Tract No. 1, in the unincorporated area of the County of Fresno, State of California, recorded May 8, 1912, in Book 7, Page 49 of Record of Surveys, in the office of the County Recorder of said County, lying Southwesterly of the San Luis Canal, said canal being described in the Deed to the United States of America, recorded February 20, 1963, in Book 4825, Page 42 of Official Records, as Document No. 15294.

TOGETHER WITH, that portion of Riverside Avenue public road, abandoned by Order of Summary Vacation, recorded September 13, 2019, as Document No. 2019-0104472, of Official Records, which would pass by operation of Law.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas, petroleum hydrocarbon substances and minerals located in, under and upon said land, TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from said property in connection with their drilling or mining operations thereof, SUBJECT, to the terms and conditions contained therein, all as reserved by F. A. Yearout and Anna V. Yearout, his wife, in the Deed recorded March 23, 1948, in Book 2597, Pages 499 and 599 of Official Records, as Document No. 14499.

EXCEPTING THEREFROM, an undivided one-sixteenth interest in and to all oil, gas, petroleum, hydrocarbon substances and minerals located in, under and upon said land, as reserved by Benjamin Kummerfeld, an unmarried man, in the Deed recorded March 1, 1950, in Book 2830, Page 388 of Official Records, as Document No. 12001.

EXCEPTING THEREFROM, an undivided three-sixteenth interest in and to all oil, gas, petroleum, hydrocarbon substances and minerals located in, under and upon said land, as reserved by Theodore Kummerfeld, an unmarried man, in the Deed recorded March 1, 1950, in Book 2797, Page 465 of Official Records, as Document No. 12002.

ALSO EXCEPTING THEREFROM, an undivided one-half of grantor's right, title and interest in and to all oil, gas and minerals in and under said property, as reserved by W. J. Deal & Co., Inc., in the Deed recorded December 8, 1975, in Book 6520, Page 678 of Official Records, as Document No. 93876.

**PARCEL 19A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain document entitled "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, of Official Records, and re-recorded February 22, 2006 as Instrument No. 2006-0037388, of Official Records.

**PARCEL 20: APN: 038-071-46s & A PORTION OF APN: 038-071-59:**

All that portion of Lots 21 to 29, inclusive, in Section 10, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, according to the Map of California Land Investment Company's Tract No. 1, in the unincorporated area of the County of Fresno, State of California, recorded May 8, 1912, in Book 7, Page 49 of Record of Surveys, in the office of the County Recorder of said County, lying Southwesterly of the San Luis Canal, said canal being described in the Deed to the United States of America, recorded February 20, 1963, in Book 4825, Page 42 of Official Records, as Document No. 15294.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

TOGETHER WITH, that portion of Riverside Avenue public road, abandoned by Order of Summary Vacation, recorded September 13, 2019, as Document No. 2019-0104472, of Official Records, which would pass by operation of Law.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas, petroleum hydrocarbon substances and minerals located in, under and upon said land, TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from said property in connection with their drilling or mining operations thereof, SUBJECT, to the terms and conditions contained therein, all as reserved by F. A. Yearout and Anna V. Yearout, his wife, in the Deed recorded March 23, 1948, in Book 2597, Pages 499 and 599 of Official Records, as Document No. 14499.

EXCEPTING THEREFROM, an undivided one-sixteenth interest in and to all oil, gas, petroleum, hydrocarbon substances and minerals located in, under and upon said land, as reserved by Benjamin Kummerfeld, an unmarried man, in the Deed recorded March 1, 1950, in Book 2830, Page 388 of Official Records, as Document No. 12001.

EXCEPTING THEREFROM, an undivided three-sixteenth interest in and to all oil, gas, petroleum, hydrocarbon substances and minerals located in, under and upon said land, as reserved by Theodore Kummerfeld, an unmarried man, in the Deed recorded March 1, 1950, in Book 2797, Page 465 of Official Records, as Document No. 12002.

ALSO EXCEPTING THEREFROM, an undivided one-half of grantor's right, title and interest in and to all oil, gas and minerals in and under said property, as reserved by W. J. Deal & Co., Inc., in the Deed recorded December 8, 1975, in Book 6520, Page 678 of Official Records, as Document No. 93876.

**PARCEL 20A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain document entitled "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, of Official Records, and re-recorded February 22, 2006 as Instrument No. 2006-0037388, of Official Records.

**PARCEL 21: APN: 038-130-02:**

The Northeast quarter of Section 18, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided forty-three and one-fourth per cent interest in the oil, gas and other hydrocarbon substances in or underlying said land, TOGETHER WITH, the full right to enter upon any or all of said lands and to use and occupy so much of the surface thereof as Grantee may find necessary or convenient to the enjoyment of the mineral estate hereby conveyed, all as conveyed by Seaboard Oil Company of Delaware, a Delaware corporation to Western Gulf Oil Company, a Delaware corporation, in the Deed recorded March 28, 1949, in Volume 2735, Page 73 of Official Records;

SUBSEQUENTLY, a Deed executed by Western Gulf Oil Company, a Delaware corporation to Seaboard Oil Company of Delaware, a Delaware corporation, conveying an undivided forty-three and one-fourth per cent interest in the oil, gas and other hydrocarbon substances in or underlying said land, TOGETHER WITH, the full right to enter upon any or all of said lands and to use and occupy so much of the surface thereof as Grantee may find necessary or convenient to the enjoyment of the mineral estate hereby conveyed, recorded March 23, 1950, in Volume 2845, Page 119 of Official Records, as Document No. 16966.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

**PARCEL 22: APN: 038-130-10s:**

The West half of the Northwest quarter of Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, Grantors undivided one-half interest in and to all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, as reserved by Elizabeth Tyler, formerly Elisabeth Hultherg, aka Elizabeth Hultherg, in the Deed recorded May 16, 1963, in Book 4861, Page 333 of Official Records, as Document No. 40177.

ALSO EXCEPTING THEREFROM all oil, gas, minerals and other hydrocarbon substances not presently owned by Grantors, TOGETHER WITH, such right of entry as may have been reserved in the conveyances wherein such oil, gas, minerals and other hydrocarbon substances were so reserved and further:

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances now owned by the Grantors (grantors conveyed an undivided one-quarter interest in said land) , TOGETHER WITH, the right of ingress and egress therefrom and to occupy the surface thereof as necessary or desirable for the exploitation of such reserved rights, all as recited in the Deed executed by P. B. Haber, aka Philip B. Haber, and Helen Mahan Habere, his wife, recorded June 27, 1969, in Book 5699, Page 202 of Official Records, as Document No. 44269.

**PARCEL 22A:**

A non-exclusive easement for road, ingress and egress purposes over and across the South 30 feet of the Northeast quarter Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, as created in that certain Grant of Easement recorded November 16, 2007, as Document No. 2007-0208075 of Official Records.

**PARCEL 22B:**

A non-exclusive easement over the Filter Station Parcel to (I) use, operate, control, manage, maintain, modify, repair or replace the filter station and the associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station and the associated equipment, together with (I) ingress and egress over and across existing access roads to the filter station easement area, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline of up to 18 inches in diameter or an individual pipeline connected to the Filter Station to transport water therefrom to the Owner's Parcels, and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the Filter Station and the associated equipment at locations to be approved, as set forth in that certain document entitled "Grant of Easements and Filter Station Sharing Agreement" recorded September 27, 2010 as Instrument No. 2010-0126979 of Official Records.

**PARCEL 23: APN: 038-130-11s:**

The East half of the Northwest quarter of Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided $1/12^{th}$ interest in all oil, gas, minerals and other hydrocarbon substances in and under said land as reserved by Grove M. Sellers and Frederica W. Sellers, husband and wife aka Frederica Sellers, in the Deed recorded December 27, 1960, in Book 4484, Page 440 of Official Records, as Document No. 90439.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

ALSO EXCEPTING THEREFROM, an undivided 1/4th interest in all oil, gas, minerals and other hydrocarbons in and under said land as reserved by Pearl E. Sellers, in the Deed recorded December 27, 1960, in Book 4484, Page 441 of Official Records, as Document No. 90440.

ALSO EXCEPTING THEREFROM, an undivided 1/6th interest in all oil, gas, minerals and other hydrocarbons in and under said land as reserved by Effie Johnson, in the Deed recorded December 27, 1960, in Book 4484, Page 442 of Official Records, as Document No. 90441.

ALSO EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances not presently owned by Grantors, TOGETHER WITH, such right of entry as may have been reserved in the conveyances wherein such oil, gas, minerals and other hydrocarbon substances were so reserved and further:

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances now owned by the Grantors (grantors conveyed an undivided one-half interest in said land) , TOGETHER WITH, the right of ingress and egress therefrom and to occupy the surface thereof as necessary or desirable for the exploitation of such reserved rights, all as recited in the Deed executed by P. B. Haber, aka Philip B. Haber, and Helen Mahan Habere, his wife, recorded June 27, 1969, in Book 5699, Page 202 of Official Records, as Document No. 44269.

### PARCEL 23A:

A non-exclusive easement for road, ingress and egress purposes over and across the South 30 feet of the Northeast quarter Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, as created in that certain Grant of Easement recorded November 16, 2007, as Document No. 2007-0208075 of Official Records.

### PARCEL 23B:

A non-exclusive easement over the Filter Station Parcel to (I) use, operate, control, manage, maintain, modify, repair or replace the filter station and the associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station and the associated equipment, together with (I) ingress and egress over and across existing access roads to the filter station easement area, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline of up to 18 inches in diameter or an individual pipeline connected to the Filter Station to transport water therefrom to the Owner's Parcels, and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the Filter Station and the associated equipment at locations to be approved, as set forth in that certain document entitled "Grant of Easements and Filter Station Sharing Agreement" recorded September 27, 2010 as Instrument No. 2010-0126979 of Official Records.

### PARCEL 24: APN: 038-130-19s:

The South half of Section 21, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 50% of an undivided ¾ interest of all oil, gas, minerals and other hydrocarbon substances in and under said land together with the right of ingress and egress for the development of the oil and gas interest;

ALSO EXCEPTING THEREFROM, the remaining 50% of an undivided ¾ interest of all oil, gas, minerals, and other hydrocarbon substances in and under said land, together with the right of ingress and egress for the development of the oil and gas interest for 5 years expiring April 30, 1973 at which time this 50% mineral rights shall ipso facto revert to the grantees therein as though they had originally been granted all as reserved

20039.001/Capstone-Westlands Legal Description

Westlands - Pru Legal Description

by Beryl E. Turnmire, June Healy, Norma Wallace, Duncan Wallace, and Hugh B. Wallace, in the Deed recorded May 29, 1968, in Book 5575, Page 353 of Official Records, Document No. 38278.

**PARCEL 24A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain document entitled, "Grant of Easement" recorded December 5, 2007, as Instrument No. 2007-0216338 of Official Records.

**PARCEL 25: APN: 038-130-56s:**

The West half of the Northeast quarter of Section 21, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion of said property as conveyed to the County of Fresno in the Deed recorded April 16, 1970, in Book 5778, Page 494 of Official Records, Document No. 26562, and in the Deed recorded June 23, 1970, in Book 5796, Page 800 of Official Records, as Document No. 43156, described as follows:

BEGINNING, at the North quarter corner of said Section 21; thence

(1) South 87° 34' 31" East, along the North boundary of said Section 21, a distance of 2695.73 feet, to the Northeast corner of said Section 21; thence

(2) Southerly, along the East boundary of said Section 21, a distance of 47.85 feet; thence

(3) Northwesterly along the arc of a non-tangent curve, concave to the Northeast (having a 38,050-foot radius, a radius point which bears North 01° 48' 57" East and a central angle of 00° 36' 32") a distance of 404.29 feet; thence

(4) North 87° 34' 31" West, parallel with said North boundary of said Section 21, a distance of 1881.74 feet; thence

(5) Northwesterly along the arc of a tangent curve, concave to the Southwest (having a 32,950 feet radius, a radius point which bears South 02° 25' 29" West and a central angle of 01° 25' 20") a distance of 817.90 feet; thence

(6) North 88° 59' 51" West, parallel with the said North boundary of said Section 21, a distance of 912.30 feet, to the Northwest corner of the said East half of the Northwest quarter of said Section 21; thence

(7) Northerly, along the West boundary of the said East half of the Northwest quarter, a distance of 50 feet; thence

(8) South, 88° 59' 51" East, along the said North boundary of said Section 21, a distance of 1321.27 feet to the said North quarter corner of said Section 21, said point also being the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion of said property as conveyed to the County of Fresno in the Deed recorded June 18, 1970, in Book 5795, Page 742 of Official Records, Document No. 42161, described as follows:

BEGINNING, at the Northwest corner of said Northeast quarter; thence

(1) Southerly, along the West boundary of the said Northeast quarter a distance of 52.54 feet; thence

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

(2)  Southeasterly along the arc of a non-tangent curve, concave to the Southwest (having a 32,950-foot radius, a radius point which bears South 01° 42' 49" West and a central angle of 00° 42' 40") a distance of 408.95 feet; thence

(3)  South 87° 34' 31" East, parallel with and 50 feet South of the North boundary of the said West half of the Northeast quarter, to a point on the East boundary of the said West half of the Northeast quarter; thence

(4)  Northerly, along said East boundary a distance of 50 feet, to the Northeast corner of the said West half of the Northeast quarter; thence

(5)  North 87° 34' 31" West, along said North boundary, to the POINT OF BEGINNING.

EXCEPTING THEREFROM, unto the Grantor herein, 32-1/2% of all oil, gas, minerals and hydrocarbons in and under said land, as recited in the Deed executed by W. R. Holmes and Beulah Holmes, husband and wife, recorded April 27, 1960, in Book 4380, Page 380 of Official Records, as Document No. 30901, said Deed conveyed an undivided 1/3 interest of the Northeast quarter of said Section 21.

EXCEPTING AND RESERVING THEREFROM, all oil, gas, minerals and other hydrocarbons substances not presently owned by Grantors, TOGETHER WITH, such right of entry as may have been reserved in the conveyances wherein such oil, gas, minerals and other hydrocarbon substances were so reserved, and further;

EXCEPTING AND RESERVING unto Grantors, all oil, gas, minerals and other hydrocarbon substances now owned by such Grantors in the above-described property, TOGETHER WITH, the right of ingress and egress therefrom and to occupy the surface thereof as necessary or desirable for the exploitation of such reserved rights, all as recited in the Deed executed by Richard Z. Lamberson and Jean H. Lamberson, his wife, recorded April 30, 1969, in Book 5683, Page 169 of Official Records, as Document No. 30049.

## PARCEL 25A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain document entitled, "Grant of Easement" recorded December 5, 2007, as Instrument No. 2007-0216338 of Official Records.

## PARCEL 26: APN: 038-130-58s:

The East half of the Northeast quarter of Section 21, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion of said property as conveyed to the County of Fresno in the Deed recorded April 16, 1970, in Book 5778, Page 494 of Official Records, Document No. 26562, and in the Deed recorded June 23, 1970, in Book 5796, Page 800 of Official Records, as Document No. 43156, described as follows:

BEGINNING, at the North quarter corner of said Section 21; thence

(1)  South 87° 34' 31" East, along the North boundary of said Section 21, a distance of 2695.73 feet, to the Northeast corner of said Section 21; thence

(2)  Southerly, along the East boundary of said Section 21, a distance of 47.85 feet; thence

(3)  Northwesterly along the arc of a non-tangent curve, concave to the Northeast (having a 38,050-foot radius, a radius point which bears North 01° 48' 57" East and a central angle of 00° 36' 32") a distance of

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

404.29 feet; thence

(4)  North 87° 34' 31" West, parallel with said North boundary of said Section 21, a distance of 1881.74 feet; thence

(5)  Northwesterly along the arc of a tangent curve, concave to the Southwest (having a 32,950 feet radius, a radius point which bears South 02° 25' 29" West and a central angle of 01° 25' 20") a distance of 817.90 feet; thence

(6)  North 88° 59' 51" West, parallel with the said North boundary of said Section 21, a distance of 912.30 feet, to the Northwest corner of the said East half of the Northwest quarter of said Section 21; thence

(7)  Northerly, along the West boundary of the said East half of the Northwest quarter, a distance of 50 feet; thence

(8)  South, 88° 59' 51" East, along the said North boundary of said Section 21, a distance of 1321.27 feet to the said North quarter corner of said Section 21, said point also being the POINT OF BEGINNING.

EXCEPTING THEREFROM, that portion of said property as conveyed to the County of Fresno by Deed dated March 4, 1970, recorded June 18, 1970, in Book 5795, Page 739 of Official Records, Document No. 42160, described as follows:

BEGINNING, at the Northeast corner of said Section 21; thence

(1) Southerly along the East boundary of said Section 21, a distance of 47.85 feet; thence

(2) Northwesterly along the arc of a non-tangent curve, concave to the Northeast (having a 38,050 foot radius, a radius point which bears North 01° 48' 57" East and a central angle of 00° 36' 32") a distance of 404.29 feet; thence

(3)  North 87° 34' 31" West, parallel with and 50 feet South of the North boundary of said Northeast quarter of Section 21, to a point on the West boundary of the East half of the said Northeast quarter; thence

(4)  Northerly along said West boundary, a distance of 50 feet to a point on the said North boundary; thence

(5)  South 87° 34' 31" East along the North boundary of said East half of the Northeast quarter to the POINT OF BEGINNING.

EXCEPTING THEREFROM, unto the Grantor herein, 32-1/2% of all oil, gas, minerals and hydrocarbons in and under said land, as recited in the Deed executed by W. R. Holmes and Beulah Holmes, husband and wife, recorded April 27, 1960, in Book 4380, Page 380 of Official Records, as Document No. 30901, said Deed conveyed an undivided 1/3 interest of the Northeast quarter of said Section 21.

ALSO EXCEPTING AND RESERVING, unto Grantor, his successors and assigns, an undivided one-half interest in the oil, gas, minerals and other hydrocarbon substances in and under said real property owned by him, TOGETHER WITH, the right by himself, his lessees, agents or licensees to explore, drill for and remove oil, gas, minerals or other hydrocarbon substances from said property and all rights necessary or convenient to the full accomplishment and enjoyment of such reserved rights, including, but not restricted to, the right to lease or make other arrangements for such exploration, development, production and other removal of such substances, all as recited in the Deed executed by Richard Z. Lamberson and Jean H. Lamberson, as joint tenants, recorded August 23, 1973, in Book 6205, Page 212 of Official Records, as Document No. 78276.

**PARCEL 26A: (intentionally deleted)**

**PARCEL 27: APN: 038-130-51s:**

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

The West half of the Southeast quarter of Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion lying within the land conveyed to the County of Fresno, in the Deed recorded May 5, 1970, in Book 5783, Page 480 of Official Records, as Document No. 31035, described as follows:

BEGINNING at the Southwest corner of the Southeast quarter of said Section 16; thence:

(1)  South 87° 34' 31" East, along the South boundary of said Southeast quarter, a distance of 2,695.73 feet to the Southeast corner of said Section 16; thence

(2)  Northerly ,along the East boundary of said Section 16, a distance of 52.15 feet; thence (3) Northwesterly along the arc of a non-tangent curve, concave to the Northeast (having a 37,950 foot radius, a radius point which bears North 01° 48' 44" East and a central angle of 00° 36' 45") a distance of 405.64 feet; thence

(4)  North 87° 34' 31" West, parallel with the said South boundary a distance of 1,881.71 feet; thence

(5)  Northwesterly along the arc of a tangent curve, concave to the Southwest (having a 33,050 foot radius, a radius point which bears South 02° 25' 29" West and a central angle of 00° 42' 29") a distance of 408.46 feet to a point on the West boundary of the said Southeast quarter; thence

(6)  Southerly, along the said West boundary, a distance of 47.40 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, those mineral rights reserved in that certain Deed of Executor, in the Matter of the Estate of P. B. Haber, also known as Phillip B. Haber, also known as Phillip B. Haber, recorded August 23, 1973, in Book 6205, Page 222 Official Records, as Document No. 78278, as follows:

"EXCEPTING AND RESERVING unto Grantor, his successors and assigns an undivided one-half interest in the oil, gas, minerals and other hydrocarbon substances in and under said real property owned by him, together with the right by himself, his lessees, agents or licensees to explore, drill for and remove oil, gas, minerals or other hydrocarbon substances from said property and all rights necessary or convenient to the full accomplishment and enjoyment of such reserved rights, including, but not restricted to, the right to lease or make other arrangements for such exploration, development, production and other removal of such substances."

**PARCEL 27A:**

A non-exclusive easement for road, ingress and egress purposes over and across the South 30 feet of the Northeast quarter Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, as created in that certain Grant of Easement recorded November 16, 2007, as Document No. 2007-0208075 of Official Records.

**PARCEL 28: APN: 038-130-86s:**

Parcel 1 of Notice of Merger ZM 1924, according to the instrument recorded Marh 20, 2008, as Document No. 2008-0040941, of Official Records, described as follows:

Lots 1 thru 18 of Honda Tract, Plat Book 11, Page 36, in Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California.

EXCEPTING THEREFROM, an undivided ½ interest in and to all oil, gas and minerals, as confirmed to Richard Z. Lamberson and Jean Haber Lamberson, as Trustees for the benefit of Helen Mahan Haber, according to the Order regarding P. B. Haber, aka Phillip B. Haber aka Phillip Brook Haber, deceased,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

recorded November 29, 1973, in Book 6239, Page 672 of Official Records, as Document No. 103914.

**PARCEL 29: APN: 038-130-87s:**

Parcel 2 of Notice of Merger ZM 1924, according to the instrument recorded Marh 20, 2008, as Document No. 2008-0040941, of Official Records, described as follows:

Lots 19 thru 36 of Honda Tract, Plat Book 11, Page 36, in Section 16, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California.

EXCEPTING THEREFROM, that portion lying within the land conveyed to the County of Fresno, in the Deeds recorded April 22, 1970, in Book 5780, Page 167 of Official Records, as Document No. 28017 and May 5, 1970, in Book 5783, Page 480 of Official Records, as Document No. 31035, described as follows:

BEGINNING at the Southwest corner of the Southeast quarter of said Section 16; thence:

(1)  South 87° 34' 31" East, along the South boundary of said Southeast quarter, a distance of 2,695.73 feet to the Southeast corner of said Section 16; thence

(2)  Northerly ,along the East boundary of said Section 16, a distance of 52.15 feet; thence (3) Northwesterly along the arc of a non-tangent curve, concave to the Northeast (having a 37,950 foot radius, a radius point which bears North 01° 48' 44" East and a central angle of 00° 36' 45") a distance of 405.64 feet; thence

(4)  North 87° 34' 31" West, parallel with the said South boundary a distance of 1,881.74 feet; thence

(5)  Northwesterly along the arc of a tangent curve, concave to the Southwest (having a 33,050 foot radius, a radius point which bears South 02° 25' 29" West and a central angle of 00° 42' 29") a distance of 408.46 feet to a point on the West boundary of the said Southeast quarter; thence

(6)  Southerly, along the said West boundary, a distance of 47.40 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, an undivided ½ interest in and to all oil, gas and minerals, as confirmed to Richard Z. Lamberson and Jean Haber Lamberson, as Trustees for the benefit of Helen Mahan Haber, according to the Order regarding P. B. Haber, aka Phillip B. Haber aka Phillip Brook Haber, deceased, recorded November 29, 1973, in Book 6239, Page 672 of Official Records, as Document No. 103914.

**PARCEL 30: APN: 038-141-01s:**

The Northwest quarter of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances, in and under said land, as reserved by Melanie Gould, a single person; Dennis Gould, a single person; Andrea L. Gould, as her sole and separate property; Emily J. Gould, as her sole and separate property; Daniel H. Gould, as his sole and separate property; and Lena Mae Ault, as Trustee of the Ault Trust dated March 26, 1970, in the Deed recorded August 17, 1999, as Document No. 1999-0120576, of Official Records.

**PARCEL 30A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

**PARCEL 31: APN: 038-141-02:**

That piece or parcel of land created in the Deed recorded August 16, 1950, in Book 2442, Page 92 of Official Records, as Document No. 44659, described as follows:

COMMENCING, at a point on the dividing line between the East half and the West half of said Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, distant thereon 30 feet Southerly from the Northerly line of said Section 15; running thence Southerly along the said dividing line between the East and West half of said Section 1264.69 feet; thence East to a point on the center line of the Northeast quarter of said Section 15 distant thereon 1307.90 feet Southerly from the Northerly line of said Section 15; running thence Northerly along said center line of said Northeast quarter 1277.90 feet to a point distant thereon 30 feet Southerly from the Northerly line of said Section 15; thence West 1322.38 feet to the POINT OF COMMENCEMENT.

**PARCEL 31A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 32: APN: 038-141-03 and 038-141-62s:**

That portion of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, pursuant to Certificate of Compliance PLA 05-13(C), recorded May 11, 2007, as Document No. 93877 of Official Records, being more particularly described as:

COMMENCING, at a point on the dividing line between the East half and the West half of said Section 15, distant thereon 1294.69 feet Southerly from the Northerly line of said Section 15; thence East to a point on the center line of the Northeast quarter of said Section 15, distant thereon 1307.90 feet Southerly from the Northerly line of said Section 15; running thence Southerly along said center line of said Northeast quarter 1277.90 feet to the Southerly line of the Northeast quarter of said Section 15; thence West along the said Southerly line of said quarter section 1325.88 feet to the dividing line between the East half and the West half of said Section 15; thence North along said dividing line 1264.69 feet to the point of commencement.

Also (TOGETHER WITH) the Southeast quarter of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, TOGETHER WITH the East 530.00 feet of the South 600.00 feet of the East half of the Southwest quarter of said Section 15.

EXCEPTING THEREFROM

ALSO EXCEPTING THEREFROM those portions conveyed to the County of Fresno, in the Deed recorded December 30, 1971, in Book 5973, Page 181 of Official Records, as Document No. 104555, described as follows:

(1)  The South 30 feet of the Southeast quarter of said Section 15.

(2)  That portion of Southwest quarter of said Section 15:

BEGINNING at the Southwest corner of said Section 15; thence

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

(1)  Northerly, along the West boundary of said Section 15, a distance of 50 feet; thence

(2)  South 87° 34' 31" East, a distance of 535.37 feet; thence

(3)  Southeasterly along the arc of a tangent curve, concave to the Northeast (having a 37,950 foot radius, a radius point which bears North 02° 25' 29" East and a central angle of 01° 13' 10") a distance of 807.70 feet; thence

(4)  South 88° 47' 41" East, parallel with and 30 feet North of the South boundary of the said Southwest quarter, to a point on the East boundary of the said Southwest quarter; thence

(5)  Southerly along said East boundary, a distance of 30 feet to the South quarter corner of said Section 15; thence

(6)  North 88° 47' 41" West, along said South boundary of the Southwest quarter, a distance of 2646.07 feet to the POINT OF BEGINNING.

EXCEPTING FROM the Southeast quarter of said Section 15, all oil, gas, asphaltum and other carbon substances and mineral rights of whatsoever kind and character in and to or under said real property herein described, TOGETHER WITH the right to enter upon said property and to use the same for the purposes of exploring and developing and removing therefrom all of said gas, oil, asphaltum, and other carbon substances and other minerals of every kind and character, as reserved by D. J. Canty Estate, a California corporation, in the Deed recorded January 15, 1948, in Volume 2601, Pages 379 & 380 of Official Records, as Document No. 2363.

ALSO EXCEPTING FROM the Southeast quarter of said Section 15, one-fourth of all oil, gas and mineral rights as excepted in the Deed executed by Firebaugh Farms, recorded May 25, 1954, in Book 3450, Page 241 of Official Records, as Document No. 31903.

EXCEPTING FROM the Southwest quarter of said Section 15, all of the grantors right, title and interest in and to all oil, gas and other hydrocarbon substances and minerals located therein and thereunder, TOGETHER WITH the right to enter on said land for the purpose of exploring, drilling for, or producing said oil, gas, hydrocarbon substances or minerals, and the right to do all things reasonably and usually necessary for such purposes, all as reserved by William Helm and Lee Wallace helm, his wife, and Frank M. Helm, in the Deed recorded November 10, 1958, in Book 4134, Page 413 of Official Records, as Document No. 72780.

ALSO EXCEPTING FROM the Southeast quarter and the Southwest quarter of said Section 15, one-half of grantor's right, title and interest in and to all oil, gas and minerals in and under said land, as reserved in the Deed from W. J. Deal & Co., Inc., a California corporation, to Peter E. Hirschfeld and Helga Hirschfeld, husband and wife, recorded December 8, 1975, in Book 6520, Page 716 of Official Records, as Document No. 93883.

**PARCEL 32A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 33: APN: 038-141-04:**

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

That piece or parcel of land created in the Deed recorded December 31, 1929, in Book 1053, Page 18 of Official Records, as Document No. 34425, described as follows:

The South one-third of the East half of the Northeast quarter of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the East 30 feet thereof, as conveyed by Resolution and Deed recorded December 9, 1929, in Book 1035, Pages 322 & 323 of Official Records, as Document No. 32656, to the County of Fresno, its successors and assigns forever, a right of way to be used as and for a public highway.

### PARCEL 33A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

### PARCEL 34: APN: 038-141-17:

The West half of the Southwest quarter of the Northeast quarter of Section 22, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all the coal and other minerals in the lands so patented, TOGETHER WITH, the right to prospect for, mine and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862), as reserved by the United State of America, in the Patent recorded March 10, 1925, in Book 541, Page 367 of Official Records, as Document No. 7588.

### PARCEL 34A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

### PARCEL 35: APN: 038-141-19:

The Southeast quarter of the Northeast quarter and the East half of the Southwest quarter of the Northeast quarter of Section 22, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all the coal and other minerals in the lands so patented, TOGETHER WITH, the right to prospect for, mine and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862), as reserved by the United State of America, in the Patent recorded March 10, 1925, in Book 541, Page 367 of Official Records, as Document No. 7588.

### PARCEL 36: APN: 038-141-52:

The North half of the North half of the Southeast quarter of Section 22, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California,

according to the Official Plat thereof.

EXCEPTING THEREFROM all the coal and other minerals in said land so entered and patented, TOGETHER WITH the right to prospect for, mine and remove the same pursuant to the provisions and limitation of the Act of December 29, 1916 (39 Stat. 862), This entry is made under Section 29 of the Act of February 25, 1920 (41 Stat. 437) and the patent is issued subject to the rights of prior permittees or lessees to use so much of the surface of said lands as is required for mining operations without compensation to the patentee for damages resulting from proper mining operations, all as reserved in the Patent from the United States of America, recorded August 7, 1933, in Book 1292, Pages 213 & 214 of Official Records, Document No. 14109.

**PARCEL 36A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 37: APN: 038-141-53:**

The South three-quarters of the Southeast quarter of Section 22, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all the coal and other minerals in said land so entered and patented, TOGETHER WITH the right to prospect for, mine and remove the same pursuant to the provisions and limitation of the Act of December 29, 1916 (39 Stat. 862), This entry is made under Section 29 of the Act of February 25, 1920 (41 Stat. 437) and the patent is issued subject to the rights of prior permittees or lessees to use so much of the surface of said lands as is required for mining operations without compensation to the patentee for damages resulting from proper mining operations, all as reserved in the Patent from the United States of America, recorded August 7, 1933, in Book 1292, Pages 213 & 214 of Official Records, Document No. 14109.

**PARCEL 37A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 38: APN: 038-141-26:**

The West half of the Northeast quarter of the Northwest quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

**PARCEL 39: APN: 038-141-27s:**

The East half of the Northeast quarter of the Northwest quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM one-half of all oil, gas and/or other hydrocarbon or mineral substances within or underlying said land as reserved by the heirs and devisees of Joseph Edward Weakley, aka Joseph E. Weakley, aka J. E. Weakley, deceased, SUBJECT to the administration of his estate, in the Deed recorded February 26, 1970, in Book 5765, Page 880 of Official Records, as Document No. 14299.

ALSO EXCEPTING THEREFROM, an undivided one-half interest into all oil, gas, and/or other hydrocarbon substances and minerals located in, under and upon said land, as reserved by Giffen, Inc., a California corporation, in the Deed recorded November 15, 1973, in Book 6234, Page 57 of Official Records, as Document No. 99467.

**PARCEL 40: APN: 038-141-28s:**

The South half of the East half of the East half of the Northwest quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

Said land, has also been described as the East half of the Southeast quarter of the Northwest quarter of said Section 14.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes; subject to the terms and conditions contained therein, all as reserved by V. D. Manville and Harriet S. Manville, his wife, and C. L. Caine and Eda L. Caine, his wife, in the Deed recorded July 30, 1948, in Volume 2647, Pages 155 & 156 of Official Records, as Document No. 36105.

**PARCEL 41: APN: 038-141-29:**

The Southwest quarter of the Northeast quarter; and The South half of the Southeast quarter of the Northeast quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM, all oil, gas, minerals, mineral rights and other hydrocarbon substances within or underlying the subject property, as reserved by Jerrid P. Shannon who also acquired title as Jerrid Shannon; Richard Michael Shannon and Sharon Shannon; Eric M. Shannon; Eric M. Shannon, Jr. and Dustin R. Shannon who also acquired title as Dustin Shannon; and Kelly A. Fox, their heirs, successors and/or assigns in the Deed recorded March 25, 2011, as Document No. 2011-0041623, of Official Records.

**PARCEL 42: APN: 038-141-30:**

The Northwest quarter of the Northeast quarter of Section 14 of Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

**PARCEL 43: APN: 038-141-31:**

The Northeast quarter of the Northeast quarter; and The North half of the Southeast quarter of the Northeast quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all that portion conveyed to the United States of America, in the Deed recorded July 5, 1963, in Book 4879, Page 822 of Official Records, as document No. 53417, described as follows:

BEGINNING, at the Northeast corner of said Section 14;

Thence, along the East boundary of said Section 14 the following courses and distances:

South 0° 53' West, 30.0 feet to a point in the South boundary of that certain 30-foot-wide strip of land now existing and being used as a public road right-of-way over the North 30 feet of Section 14;

Thence, continuing South 0° 58' West 425.5 feet;

Thence, leaving said East boundary North 59° 02' West 853.8 feet to a point in the South boundary of said 30-foot-wide strip of land now existing and being used as a public road right-of-way;

Thence, continuing North 59° 02' West, 60.2 feet to a point in the North boundary of said Section 14; Thence, along said North boundary South 88° 56' East 791.6 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

**PARCEL 44: APN: 038-141-38s:**

The Southeast quarter of the Northwest quarter of Section 13, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the United States of America, in the Deed recorded June 17, 1968, in Book 5326, Page 588 of Official Records, as Document No. 45945, being a portion of said land described as follows:

BEGINNING, at a point in the East boundary of the Northwest quarter of said Section 13, distant there along South 0° 57' West, 1324.7 feet from the North quarter corner of said Section 13, said point of

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

beginning being the Northeast corner of the Southeast quarter of the Northwest quarter of said Section 13;

Thence, along said East boundary South 0° 57' West, 655.1 feet;

Thence, leaving said East boundary North 59° 02' West, 1314.7 feet to a point in the North boundary of said Southeast quarter of the Northwest quarter of said Section 13;

Thence, along said North boundary South 88° 55' East, 1138.3 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, 12/25ths of all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate in and under or that may be produced and sold from said land, as conveyed to M. C. DeBrell, in the Deed recorded August 7, 1947, in Book 2549, Page 443 of Official Records, as Document No. 41474.

**PARCEL 45: APN: 038-141-41s:**

The Southwest quarter of Section 13, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South 30 feet thereof, as conveyed to the County of Fresno, in the Deed recorded January 21, 1971, in Book 5854, Page 75 of Official Records, as Document No. 4717.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all of the Grantors interest in and to all oil, gas and minerals within and underlying said property, as reserved by Charles E. Myers and Flora Myers, husband and wife, in the Deed conveying said Grantors undivided one-sixth interest in said land, recorded July 26, 1968, in Book 5595, Page 497 of Official Records, as Document No. 52317.

ALSO EXCEPTING THEREFROM, all of the Grantors interest in and to all oil, gas and minerals within and underlying said property, as reserved by Edwin L. Wilson and Dorris Wilson, husband and wife; Louis H. Wilson and Christine Wilson husband and wife and Ruth Camin, in the Deed conveying said Grantors undivided one-third interest in said land, recorded July 26, 1968, in Book 5595, Page 501 of Official Records, as Document No. 52321.

ALSO EXCEPTING THEREFROM, all of the Grantors interest in and to all oil, gas and minerals within and underlying said property, as reserved by Glen F. Myers and Bessie V. Myers, husband and wife, in the Deed conveying said Grantors undivided one-half interest in said land, recorded July 26, 1968, in Book 5595, Page 505 of Official Records, as Document No. 52323.

**PARCEL 46: APN: 038-141-44s:**

The Southeast quarter of Section 13, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all that portion conveyed to the United States of America, in the Deed recorded January 21, 1963, in Book 4811, Page 140 of Official Records, as Document No. 5851, described as follows:

BEGINNING, at the East quarter corner of said Section 13;

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

Thence, along the east boundary of said Section 13, South 0° 54' West, 879.8 feet;

Thence, leaving said East boundary North 59° 02' West 34.7 feet to a point in the West boundary of that certain 30-foot-wide strip of land now existing and being used for public road over the East 30 feet of said Section 13;

Thence, continuing North 59° 02' West 1730.3 feet to a point in the North boundary of the Southeast quarter of said Section 13, distant therealong North 88° 56' West 1527.6 feet from the East quarter corner of said Section 13;

Thence, along said North boundary South 88° 56' East 1497.6 feet to a point in the East boundary of aforesaid 30-foot-wide strip of land now existing and being used for public road;

Thence, continuing South 88° 56' East 30.0 feet to the POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM, that portion of the Southeast quarter of said Section 13, as conveyed to the County of Fresno, in the Deed recorded January 21, 1971, in Book 5854, Page 75 of Official Records, as Document No. 4717, described as follows:

BEGINNING, at the South quarter corner of said Section 13; thence

(1)  Northerly along the West boundary of said Southeast quarter, a distance of 30 feet; thence

(2)  South 88° 57 38" East, parallel with and 30 feet North of the South boundary of said Southeast quarter, a distance of 1402.27 feet; thence,

(3)  South 89° 22' 11" East, to a point on the East boundary of said Section 13, said point being 83.93 feet North of the Southeast corner of said Section 13; thence,

(4)  South 00° 52' 10" West, along said East boundary, a distance of 38.93 feet; thence

(5)  North 88° 57' 38" West, along said South boundary of the Southeast quarter, a distance of 2652.27 feet, to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion conveyed to the State of California, in the Deed recorded June 22, 1972, in Book 6038, Page 69 of Official Records, as Document No. 55727, described as follows:

COMMENCING, from reference at the Southeast corner of said Section;

thence (1) along the East line of said Section, North 0° 53' 39" East, 38.93 feet to the TRUE POINT OF BEGINNING;

thence (2) North 89° 22' 01" West, 100.00 feet;

thence (3) North 45° 53' 39" East, 70.71 feet;

thence (4) along the West line of the East 50 feet of said section, North 0° 53' 39" East, 974.82 feet; thence (5) North 1° 00' 54" West, 600.33 feet;

thence (6), along the West line of the East 70 feet of said section, North 0° 53' 39" East, 145.03 feet to the Southwesterly line of the land described as Parcel 1 in the Deed to the United States of America recorded January 21, 1963, in Book 4811, Page 140 of Official Records as Document No. 5851;

thence (7) along said Southwesterly line, South 59° 02' 21" East, 80.88 feet to said East line;

thence (8) along said East line South 0° 53' 39" West, 1728.87 feet to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No.

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas, and other hydrocarbons substances within or underlying said land, as reserved by Giffen, Inc., a California corporation, in the Deed recorded November 15, 1973, in Book 6234, Page 49 of Official Records, as Document No. 99463.

**PARCEL 47: APN: 038-141-49s:**

The Southeast quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, created in the Deed recorded November 15, 1973, in Book 6234, Page 65 of Official Records, as Document No. 99472.

 EXCEPTING THEREFROM the South 30 feet thereof, as conveyed to the County of Fresno, in the Deed recorded January 21, 1971, in Book 5854, Page 75 of Official Records, as Document No. 4717.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING, all oil, gas, minerals and other hydrocarbon substances in and under said land, as reserved by Giffen, Inc., a California corporation, in the Deed recorded November 15, 1973, in Book 6234, Page 65 of Official Records, as Document No. 99472.

**PARCEL 48: APN: 038-141-50s:**

The Southwest quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM the South 30 feet thereof, as conveyed to the County of Fresno, in the Deed recorded January 21, 1971, in Book 5854, Page 75 of Official Records, as Document No. 4717.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM all oil, gas, minerals and other hydrocarbon substances in and under said land as reserved by Giffen, Inc., a California corporation, in the Deed recorded November 15, 1973, in Book 6234, Page 75 of Official Records, as Document No 99480.

**PARCEL 49A: APN: 038-141-58s (PORTION OF):**

The Northwest quarter of the Northwest quarter; and The West half of the Southwest quarter of the Northwest quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, as heretofore reserved of record.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes; subject to the terms and conditions contained therein, all as reserved by V. D. Manville and Harriet S. Manville, his wife, and C. L. Caine and Eda L. Caine, his wife, in the Deed recorded July 30, 1948, in Volume 2647, Pages 155 & 156 of Official Records, as Document No. 36105.

### PARCEL 49B: APN: 038-141-58s (PORTION OF):

The East half of the Southwest quarter of the Northwest quarter; and The West half of the Southeast quarter of the Northwest quarter of Section 14, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas, petroleum or other hydrocarbon substances in, on, or underlying said property, TOGETHER WITH the right of ingress and egress to and from said property at any and all times for the purpose of mining, developing, and extracting therefrom oil, gas, minerals, and other hydrocarbon substances; TOGETHER WITH the right to construct and erect on said land any and all derrics, storage tanks, telephone lines, and any and all equipment incidental or necessary to the exploration or development of said land for mintereals, oil, gas, and other hydrocarbon substances; SUBJECT to the terms and conditions contained therein, all as reserved by Mohawk Petroleum Corporation, a California corporation, in the Deed recorded June 18, 1952, in Book 3178, Page 323 of Official Records, as Document No. 31940.

### PARCEL 50: APN: 038-141-63s:

A single parcel of land according to the Notice of Merger VM 2026, recorded January 16, 2014, as Document No. 2014-0005378, of Official Records and also on January 13, 2015, as Document No. 2015-0003665, of Official Records, described as follows:

The Southwest quarter of the Northwest quarter of Section 13, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO that portion of the North half of the Northwest quarter of Section 13, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the United States Government Township Plat approved by the Surveyor General on January 31, 1855, lying Southwesterly of the Southwesterly boundaries of those certain parcels of land conveyed to the United States of America by Deed recorded October 6, 1968, in Book 5364, Page 417 of Official Records, Document No. 71995.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, 12/25ths of all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate in and under or that may be produced and sold from said land, as conveyed to M.

C. DeBrell, in the Deed recorded August 7, 1947, in Book 2549, Page 443 of Official Records, as Document No. 41474.

**PARCEL 51: APN: 038-141-54s:**

The Northwest quarter of the Northwest quarter of Section 22, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM the portion thereof which is within the land described in the deed to the County of Fresno recorded October 5, 1971, in Book 5943, Page 449 of Official Records, as Document No. 80340, described as follows:

Beginning at the Northwest corner of said Section 22; thence,

(1) Southerly, along the West boundary of said Section 22, a distance of 50 feet; thence,

(2) South 87° 34' 31" East, a distance of 535.37 feet; thence,

(3) Southeasterly along the arc of a tangent curve, concave to the Northeast (having a 38,050 foot radius, a radius point which bears North 02° 25' 29" East and a central angle of 01° 13' 10") a distance of 809.83 feet; thence,

(4) South 88° 47 41" East, parallel with and 70 feet South of the North boundary of said Section 22, to a point on the East boundary of the said West half of Section 22; thence,

(5) Northerly, along said East boundary, a distance of 70 feet, to the North quarter corner of said Section 22; thence,

(6) North 88° 47' 41" West, along Said North boundary, a distance of 2,646.07 feet, to the point of beginning.

ALSO EXCEPTING THEREFROM all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, and ALSO TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation of all oil, gas and other hydrocarbons and minerals owned by Grantors and situate in and under land adjacent to the above described real property and for the exploration and testing of said adjacent real property, said rights excepted and reserved herein to be held by Grantors in the same percentage undivided interests as the above described real property is presently vested in said Grantors, as reserved by Babette Eaton, et al, recorded July 15, 1976, in Book 6626, Page 445 of Official Records, as Document No. 60783.

**PARCEL 51A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 52: APN: 038-141-55s AND 56s:**

The Southwest quarter and Southwest quarter of the Northwest quarter; and The East half of the Northwest quarter of Section 22, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the

unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM the portion thereof which is within the land described in the deed to the County of Fresno recorded October 5, 1971, in Book 5943, Page 449 of Official Records, as Document No. 80340, described as follows:

Beginning at the Northwest corner of said Section 22; thence,

(1) Southerly, along the West boundary of said Section 22, a distance of 50 feet; thence,

(2) South 87° 34' 31" East, a distance of 535.37 feet; thence,

(3) Southeasterly along the arc of a tangent curve, concave to the Northeast (having a 38,050 foot radius, a radius point which bears North 02° 25' 29" East and a central angle of 01° 13' 10") a distance of 809.83 feet; thence,

(4) South 88° 47 41" East, parallel with and 70 feet South of the North boundary of said Section 22, to a point on the East boundary of the said West half of Section 22; thence,

(5) Northerly, along said East boundary, a distance of 70 feet, to the North quarter corner of said Section 22; thence,

(6) North 88° 47' 41" West, along Said North boundary, a distance of 2,646.07 feet, to the point of beginning.

ALSO EXCEPTING THEREFROM all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, and ALSO TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation of all oil, gas and other hydrocarbons and minerals owned by Grantors and situate in and under land adjacent to the above described real property and for the exploration and testing of said adjacent real property, said rights excepted and reserved herein to be held by Grantors in the same percentage undivided interests as the above described real property is presently vested in said Grantors, as reserved by Babette Eaton, et al, recorded July 15, 1976, in Book 6626, Page 445 of Official Records, as Document No. 60783.

## PARCEL 52A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

## PARCEL 53: APN: 038-141-57:

That piece or parcel of land created in the Deed recorded August 16, 1950, in Book 2442, Page 92 of Official Records, as Document No. 44659, described as follows:

The North two-thirds of the East half of the Northeast quarter of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the North 30 feet and the East 30 feet thereof, as conveyed by Resolution and Deed recorded December 9, 1929, in Book 1035, Pages 322 & 323 of Official Records, as Document No.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

32656, to the County of Fresno, its successors and assigns forever, a right-of-way to be used as and for a public highway.

**PARCEL 53A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 54: APN: 038-141-60s:**

Parcel "B" of that certain Certificate of Compliance No. PLA 05-13(B), recorded May 11, 2007, as Instrument No. 2007-0093875, of Official Records, being more particularly described as follows:

The Southwest quarter of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM the West 1,344.4 feet of said Southwest quarter.

ALSO EXCEPTING THEREFROM the East 530.00 feet of the South 600.00 feet of the East half of said Southwest quarter.

ALSO EXCEPTING THEREFROM that portion conveyed to the County of Fresno, in the Deed recorded December 30, 1971, in Book 5973, Page 181 of Official Records, as Document No. 104555, described as follows:

BEGINNING at the Southwest corner of said Section 15; thence

(1)  Northerly, along the West boundary of said Section 15, a distance of 50 feet; thence

(2)  South 87° 34' 31" East, a distance of 535.37 feet; thence

(3)  Southeasterly along the arc of a tangent curve, concave to the Northeast (having a 37,950 foot radius, a radius point which bears North 02° 25' 29" East and a central angle of 01° 13' 10") a distance of 807.70 feet; thence

(4)  South 88° 47' 41" East, parallel with and 30 feet North of the South boundary of the said Southwest quarter, to a point on the East boundary of the said Southwest quarter; thence

(5)  Southerly along said East boundary, a distance of 30 feet to the South quarter corner of said Section 15; thence

(6)  North 88° 47' 41" West, along said South boundary of the Southwest quarter, a distance of 2646.07 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, all of the grantors right, title and interest in and to all oil, gas and other hydrocarbon substances and minerals located therein and thereunder, TOGETHER WITH the right to enter on said land for the purpose of exploring, drilling for, or producing said oil, gas, hydrocarbon substances or minerals, and the right to do all things reasonably and usually necessary for such purposes, all as reserved by William Helm and Lee Wallace helm, his wife, and Frank M. Helm, in the Deed recorded November 10, 1958, in Book 4134, Page 413 of Official Records, as Document No. 72780.

**PARCEL 54A:**

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

A non-exclusive easement over the Filter Station Parcel to (I) use, operate, control, manage, maintain, modify, repair or replace the Filter Station and the associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station and the associated equipment, together with (I) ingress and egress over and across existing access roads to the Filter Station easement area, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline of up to 18 inches in diameter or an individual pipeline connected to the Filter Station to transport water therefrom to the owner's parcels, and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the Filter Station and the associated equipment at locations to be approved, as set forth in that certain Document entitled, "Grant of Easements and Filter Station Sharing Agreement" recorded September 27, 2010 as Instrument No. 2010-0126980 of Official Records.

### PARCEL 54B:

A non-exclusive easement over the 915 Well Site Parcel to (I) use, operate, control, manage, maintain, modify, repair, redrill and replace the 915 Well and the associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the 915 Well and the associated equipment, together with (I) ingress and egress over and across existing access roads to the 915 Well Site and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline of up to 18 inches in diameter or an individual pipeline connected to the 915 Well to transport water therefrom to other real property within the water service area, and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the 915 Well and the associated equipment at locations to be approved, as set forth in that certain Document entitled, "Grant of Easements and Well Sharing Agreement" recorded September 27, 2010, as Instrument No. 2010-0126981 of Official Records.

### PARCEL 54C: APN: 038-130-05 (PORTION OF):

A non-exclusive easement for well site and power poles and associated power lines, pipelines and other necessary fixtures as granted to Farid Assemi, et al, by instrument recorded June 29, 2005, as Document No. 2005-0144188, and amended by instrument recorded September 1, 2010, as Document No. 2010-0112982, both of Official Records over and across the following described property:

A 50-foot by 50-foot square around the existing irrigation well located in the Northeast corner of the North half of the Northeast quarter of Section 17, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

### PARCEL 55: APN: 038-210-01:

The Northwest quarter of Section 27, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all the coal and other minerals in said land so entered and patented, TOGETHER WITH the right to prospect for, mine and remove the same, pursuant to the provisions and limitation of the Act of December 29, 1916 (39 Stat. 862), as excepted and reserved in the Patent from the United States of America to George F. Daice recorded February 2, 1936, in Book 1469, Page 380 of Official Records, Document No. 3575.

### PARCEL 55A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 56: APN: 038-210-02s:**

The Northeast quarter of Section 27, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 50% of all oil, gas and minerals and hydrocarbon substances in and under said land, as reserved by Radin Co., a limited partnership, in the Deed recorded January 6, 1966, in Book 5260, Page 429 of Official Records, as Document No. 1205.

ALSO EXCEPTING THEREFROM an undivided one-half of grantor's right, title and interest in and to all oil, gas and minerals in and under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed from recorded December 8, 1975, in Book 6520, Page 684 of Official Records, as Document No. 93877.

**PARCEL 56A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 57: APN: 038-210-03s:**

The Southeast quarter of Section 27, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas and minerals and other hydrocarbons in and to said land, as reserved by Pucheu Properties, a general partnership, in the Deed recorded September 22, 1981, in Book 7790, Page 74 of Official Records, as Document No. 85343.

**PARCEL 57A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 58: APN: 038-210-08:**

The North half of the Northeast quarter of Section 26, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 58A: (intentionally deleted)**

**PARCEL 58B:**

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement', recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

### PARCEL 59: APN: 038-210-06:

The Southeast quarter of the Northwest quarter, Section 26, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

### PARCEL 59A: (intentionally deleted)

### PARCEL 59B:

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (iii) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

### PARCEL 59C:

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the Filter Station Site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the filter station and all associated pipelines,

20039.001/Capstone-Westlands Legal Description

valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled, "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112989 of Official Records.

**PARCEL 60: APN: 038-210-09:**

The South half of the Northeast quarter of Section 26, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 60A: (intentionally deleted)**

**PARCEL 60B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 61: APN: 038-210-10s:**

The Southeast quarter of Section 26, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided four-fifths interest in and to all oil, gas, minerals and other hydrocarbon substances in and under said land, TOGETHER WITH the right to remove the same at any time hereafter, as reserved by McNee Company, in Deed recorded November 24, 1950, in Book 2929, Page 436 of Official Records, as Instrument No. 63320.

ALSO EXCEPTING THEREFROM, one half of all oil, gas, mineral, and other hydrocarbon substances which are presently owner by the grantors, as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847 Page 523, of Official Records, as Instrument No. 82-5480.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral and other hydrocarbon substances which are presently owned by the grantors appertaining to said lands, as reserved by William B. Rusconi and Marjorie C. Rusconi and Petroleum Services, Inc., a corporation, in the Deed recorded January 28, 1986, as Instrument No. 86-8769, of Official Records.

**PARCEL 61A:**

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (III) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (iii) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 61B: (intentionally deleted)**

**PARCEL 62: APN: 038-210-13s:**

The South one-third of the Northwest quarter of Section 25, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided three-quarters (¾) of all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under or upon said property, as reserved by Raymond Minnite and Bernadetta Minnite, husband and wife, in the Deed recorded March 22, 1965, in Book 5147, Page 280 of Official Records, as Document No. 24080.

ALSO EXCEPTING THEREFROM, one half of all oil, gas, mineral, and other hydrocarbon substances which are presently owner by the grantors, as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847 Page 523, of Official Records, as Instrument No. 82-5480.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral and other hydrocarbon substances which are presently owned by the grantors appertaining to said lands, as reserved by William B. Rusconi and Marjorie C. Rusconi and Petroleum Services, Inc., a corporation, in the Deed recorded January 28, 1986, as Document No. 86008769.

**PARCEL 63: APN: 038-210-14s:**

The North half of the Southwest quarter of Section 25, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas and minerals therein and thereunder, as reserved by Charles R. Horn and Helen D. Horn, husband and wife, in the Deed recorded February 7, 1966, in Book 5272 Page 682 of Official Records, as Documents No. 9979.

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM an undivided one-half interest in and to all oil, gas and other hydrocarbon substances in and under said land as conveyed by Giffen, Inc., a California corporation in liquidation, to Russell Giffen and Ruth P. Giffen, equally, as tenants in common, and each as their respective separate property, in the Quitclaim Deed recorded November 19, 1974, in Book 6370, Page 33 of Official Records, as Document No. 87061.

**PARCEL 63A: (intentionally deleted)**

**PARCEL 63B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary desirable for the production, storage and/or transportation of water from the wells, as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 63C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the filter station and associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the filter station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled, "Grant of Easements and Filter Station Sharing Agreement', recorded September 1, 2010, as Instrument No. 2010-0112988 of Official Records.

**PARCEL 64: APN: 038-210-15s:**

The South half of the Southwest quarter of Section 25, Township 16 South, Range 14 East, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH all rights of way and easements necessary or convenient for the exploration, testing, mining and drilling for, and extraction, production, storage, transportation and removal of said substances, as reserved by Constance M. Hardwicke and Kenneth C. Hardwicke, in the Deed recorded October 30, 1963, in Book 4923, Page 394 of Official Records, as

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

Document No. 86783.

**PARCEL 64A: (intentionally deleted)**

**PARCEL 64B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (iii) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 64C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the Filter Station Site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled, "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112988 of Official Records.

**PARCEL 65: APN: 038-210-26:**

The North 25 acres of the West half of the Southwest quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 65A: (intentionally deleted)**

**PARCEL 65B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled "Amended and Restated Grant of Easements and Well Sharing Agreement', recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 65C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the Filter Station Site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled, "Grant of Easements and Filter Station Sharing Agreement', recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

**PARCEL 66: APN: 038-210-27s:**

The South 25 acres of the North 50 acres of the West half of the Southwest quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, as created in the Deed recorded March 15, 1945, in Book 2256, Page 490 of Official Records, as Document No. 10716.

EXCEPTING THEREFROM, an undivided 50% of all oil, gas and minerals, as reserved by Julius W. Hammel and Doris Alma Hammel, husband and wife, in the Deed recorded May 23, 1967, in Book 5441, Page 319 of Official Records, as Document No. 34117.

**PARCEL 66A: (intentionally deleted)**

**PARCEL 66B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

be necessary or desirable for the production, storage and/or transportation of water from the wells as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement', recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 66C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled, "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

**PARCEL 67: APN: 038-210-28s:**

The South twenty-five acres of the North seventy-five acres of the West half of the Southwest quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, being created in the Deed recorded March 15, 1945, in Book 2256, Pages 490 & 491 of Official Records, as Document No. 10717.


EXCEPTING THEREFROM, an undivided one-quarter of all mineral rights in and to said land, as conveyed to Fred M. Snyder and Luella Snyder, in the Deed dated January 11, 1960 and recorded January 14, 1960, in Book 4327, Page 426 of Official Records, as Document No. 3109.

**PARCEL 68: APN: 038-210-30s:**

The Southeast quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM 75% of all oil, gas, other hydrocarbons, minerals and metals of all kinds, in, on or underlying said real property, TOGETHER WITH the right to enter upon said real property for the purpose of exploring for, drilling for, mining for, storing and removing any or all of said substances TOGETHER WITH such other rights as may be necessary or convenient in the full exercise and enjoyment of the rights herein expressly reserved, as reserved by Helen C. Lillis, a single woman, in the Deed recorded January 31, 1966, in Book 5270, Page 123 of Official Records, as Document No. 7913.

ALSO EXCEPTING THEREFROM one-half of grantors right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 644 of Official Records, as Document No. 93869.

**PARCEL 68A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 69: APN: 038-210-55s:**

The South half of the Southwest quarter in Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all that portion of said Southwest quarter, as conveyed to the State of California by Deed recorded April 1, 1968, in Book 5553, Page 709 of Official Records, Document No. 23282, more particularly described as follows:

BEGINNING, at the Southwest corner of said Section, said Southwest corner being at coordinates Y=423 595.87 feet and X=1 575 996.48 feet;

THENCE (1), along the West line of said Section, North 0 degrees 47" 06" East, 889.67 feet;

THENCE (2) along a line parallel with and 100 feet Northeasterly, measured at right angles from the centerline of the Department of Public Works survey for the Northbound lanes from the Kings County line to the Merced County line, road VI-Fre-238-B (now 06-Fre-5), South 33 degrees 55' 00" East, 1117.78 feet to the South line of said Section;

THENCE (3), along said South line, North 86 degrees 34' 49" West, 637.03 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of all grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Helen Hughson Bragg, also known as Helen H. Bragg, in the Deed recorded January 19, 1966, in Book 5265, Page 652 of Official Records, as Document No. 5064. Said Deed was conveying Grantors undivided 1/8th interest in and to said land.

ALSO EXCEPTING THEREFROM, one half of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by N. B. Swett, in the Deed recorded January 19, 1966, in Book 5265, Page 658 of Official Records, as Document No. 5070. Said Deed was conveying Grantors undivided 1/8th interest in and to said land.

ALSO EXCEPTING THEREFROM one half of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Ruth E. Pettey, in the Deed recorded January 19, 1966, in Book 5265, Page 660 of Official Records, as Document No. 5072.

Said Deed was conveying Grantors undivided 5/23 interest in and to said land.

ALSO EXCEPTING THEREFROM 75% of all grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Eda Caine, in the Deed recorded January 19, 1966, in Book 5265, Page 667 of Official Records, as Document No. 5078.

Said Deed was conveying Grantors undivided 1/4th interest in and to said land.

ALSO EXCEPTING THEREFROM, one half of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Bernice Jones, as Trustee under the Last Will and Testament of Hayden F. Jones, deceased, in the Deed recorded January 19, 1966, in Book 5265, Page 679 of Official Records, as Document No. 5089. Said Deed was conveying Grantors undivided 1/4th interest in and to said land.

ALSO EXCEPTING THEREFROM one half of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by James B. Marshall and Thomas A. Marshall, in the Deed recorded January 27,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

1966, in Book 5269, Page 17 of Official Records, as Document No. 7183. Said Deed was conveying Grantors undivided 1/32nd interest in and to said land.

ALSO EXCEPTING THEREFROM, one half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 644 of Official Records, as Document No. 93869. Said Deed was conveying Grantors undivided 1/8th interest in and to said land.

### PARCEL 69A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

### PARCEL 70: APN: 038-210-32s:

The South half of the Northwest quarter of the Southwest quarter in Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest of all grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Helen Hughson Bragg, also known as Helen H. Bragg, in the Deed recorded January 19, 1966, in Book 5265, Page 652 of Official Records, as Document No. 5064. Said Deed was conveying Grantors undivided 1/2 interest in and to said land.

ALSO EXCEPTING THEREFROM, one half of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by N. B. Swett, in the Deed recorded January 19, 1966, in Book 5265, Page 658 of Official Records, as Document No. 5070. Said Deed was conveying Grantors undivided 1/2 interest in and to said land.

ALSO EXCEPTING THEREFROM, one half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 644 of Official Records, as Document No. 93869. Said Deed was conveying Grantors undivided 1/8th interest in and to said land.

### PARCEL 70A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

### PARCEL 71: APN: 038-210-33s:

The South half of the Northeast quarter of the Southwest quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided ½ interest in and to all oil, gas, minerals and other hydrocarbon

substances in and under the above described property, as EXCEPTED in the Deed executed by Conway Shafer and Rose Shafer, husband and wife, recorded October 4, 1968, in Book 5623, Page 644 of Official Records, as Document No. 71383.

**PARCEL 71A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 72: APN: 038-210-34s:**

The North half of the Northeast quarter of the Southwest quarter in Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided one-half interest of Grantors interest, in and to all oil, gas and minerals therein and thereunder, as reserved by F. G. Everts, also known as Frank G. Everts, in the Deed recorded January 19, 1966, in Book 5265, Page 654 of Official Records, as Document No. 5066. Said Deed was conveying Grantors undivided 2/3rds interest in and to said land.

ALSO EXCEPTING THEREFROM an undivided one-half interest of Grantors interest, in and to all oil, gas and minerals therein and thereunder, as reserved by Doris L. Wild and Doris L. Wild, as Trustee under the Last Will and Testament of M. K. Wild, deceased, in the Deed recorded January 19, 1966, in Book 5265, Page 656 of Official Records, as Document No. 5068. Said Deed was conveying Grantors undivided 1/3rds interest in and to said land.

ALSO EXCEPTING THEREFROM, one half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 644, of Official Records, as Document No. 93869. Said Deed was conveying Grantors undivided 1/3rd interest AND ALSO Grantors undivided 2/3rds interest in and to said land.

**PARCEL 72A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 73: APN: 038-210-35s:**

The Northeast quarter of the Northwest quarter of the Southwest quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances situated therein and thereunder the above-described property, as reserved by Mayo Ryan, as Trustee of the Ryan Family Trust Six, Dated December 2, 1974, in the Deed recorded July 14, 1998, as Document No. 98096731, of Official

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

Records.

**PARCEL 73A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 74: APN: 038-210-36s:**

The West half of the North half of the Northwest quarter of the Southwest quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, one-half of Grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Ruth E. Pettey, in the Deed recorded January 19, 1966, in Book 5265, Page 660 of Official Records, as Document No. 5072. Said Deed was conveying Grantors undivided 1/3rd interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half of Grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Berta B. Wookfolk, in the Deed recorded January 19, 1966, in Book 5265, Page 665 of Official Records, as Document No. 5076. Said Deed was conveying Grantors undivided 1/3rd interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half of Grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Fred H. Fast, in the Deed recorded January 19, 1966, in Book 5265, Page 666 of Official Records, as Document No. 5077. Said Deed was conveying Grantors undivided 1/3rd interest in and to said land.

ALSO EXCEPTING THEREFROM one-half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 644 of Official Records, as Document No. 93869. Parcels 7, 8 & 9 of said Deed conveyed Grantors three separate undivided 1/3rds interest in and to said land.

**PARCEL 74A:**

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

**PARCEL 75: APN: 038-210-37s:**

The South half of the Northwest quarter in Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of Grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Helen Hughson Bragg, also known as Helen H. Bragg, in the Deed recorded

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

January 19, 1966, in Book 5265, Page 652 of Official Records, as Document No. 5064. Said Deed was conveying Grantors undivided 1/8th interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half of Grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by N. B. Swett, in the Deed recorded January 19, 1966, in Book 5265, Page 658 of Official Records, as Document No. 5070. Said Deed was conveying Grantors undivided 1/8th interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half interest in and to all of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Ruth E. Pettey, in the Deed recorded January 19, 1966, in Book 5265, Page 660 of Official Records, as Document No. 5072. Said Deed was conveying Grantors undivided 5/32 interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half interest in and to all of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Jayne C. Jones, in the Deed recorded January 19, 1966, in Book 5265, Page 663 of Official Records, as Document No. 5074. Said Deed was conveying Grantors undivided 1/4 interest in and to said land.

ALSO EXCEPTING THEREFROM, 75% of all grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Eda Caine, in the Deed recorded January 19, 1966, in Book 5265, Page 667 of Official Records, as Document No. 5078. Said Deed was conveying Grantors undivided 1/4 interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half interest in and to all of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by James B. Marshall and Thomas A. Marshall, in the Deed recorded January 27, 1966, in Book 5269, Page 17 of Official Records, as Document No. 7183. Said Deed was conveying Grantors undivided 1/32nd interest in and to said land.

ALSO EXCEPTING THEREFROM, one-half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 703 of Official Records, Document No. 93881. Parcels 1, 2, 3, 4, 5 & 6 of said Deed conveyed an undivided 1/8th interest, another undivided 1/8th interest, an undivided 5/32 interest, another undivided 1/32nd interest, an undivided ¼ interest and another undivided ¼ interest, in and to said land.

## PARCEL 75A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

## PARCEL 76: APN: 038-210-38s:

The Northeast quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, 52% of all oil, gas and other hydrocarbons and minerals, now or at any time hereafter, situate in and under said property, TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property in connection with drilling or mining operations thereon, as reserved by Lyle Christie, a single

man, in the Deed recorded September 14, 1948, in Book 2686, Page 124 of Official Records, as Document No. 42863.

ALSO EXCEPTING THEREFROM one half of grantor's interest in and to all oil, gas and minerals therein and thereunder, as reserved by Alice Bomprezzi, also known as Alvina Bomprezzi, in the Deed recorded January 19, 1966, in Book 5265, Page 650 of Official Records, as Document No. 5062. Said Deed was conveying Grantors undivided 1/4th interest in and to said land.

ALSO EXCEPTING THEREFROM one-half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 642 of Official Records, as Document No. 93868.

## PARCEL 76A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

## PARCEL 77: APN: 038-210-39s:

The North half of the Northwest quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the West half of the Northwest quarter of the Northwest quarter of said Section 34, as conveyed to Raymond Minnite and Bernadette M. Minnite, husband and wife as joint tenants, in the Deed recorded October 5, 1959, in Book 4281, Page 523 of Official Records, as Document No. 70580.

ALSO EXCEPTING THEREFROM, The East half of the Northwest quarter of the Northwest quarter of said Section 34, as conveyed to Westside Farming, LLC, in the Deed recorded October 4, 1965, in Book 5223, Page 663 of Official Records, as Document No. 73321.

ALSO EXCEPTING THEREFROM, an undivided one-fourth of all oil, gas and other hydrocarbons and minerals, now or at time, situate in and under said land, as reserved by Ruth E. Pettey, the Deed recorded April 1, 1966, in Book 5294, Page 660 of Official Records, as Document No. 24994.

ALSO EXCEPTING THEREFROM one-half of grantor's right, title and interest in and to all oil, gas and minerals in, upon or under said land, as reserved by W. J. Deal & Co., a California corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 703 of Official Records, as Document No. 93881.

## PARCEL 77A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

## PARCEL 78: APN: 038-210-42s:

The Southwest quarter of Section 27, Township 16 South, Range 14 East, Mount Diablo Base and Meridian,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided one-half interest in and to all oil, gas and minerals and other hydrocarbon substances therein and thereunder, as reserved by G. Walter Hunt, Effie C. Hunt, Constance Sandborn, who acquired title as Mrs. Ralph Sandborn, and Edith Norton, who acquired title as Mrs. Howard Norton, in the Deed recorded December 1, 1965, in Book 5246, Page 246 of Official Records, as Document No. 96435.

## PARCEL 78A:

A non-exclusive easement over the easement area to use, operate, control, run water through, manage, maintain, modify, repair and replace a new irrigation pipeline and the existing pipeline; together with a non-exclusive easement over the easement area for purposes of ingress and egress to the existing pipeline; and the exclusive right to use the existing pipeline; as set forth in that certain Document entitled, "Grant of Easement" recorded October 14, 2005, as Instrument No. 2005-0243899, Official Records, and re-recorded February 22, 2006, as Instrument No. 2006-0037388, Official Records.

## PARCEL 79: APN: 038-210-43:

The Northeast quarter of the Northwest quarter of Section 26, township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 50% interest in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, together with all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operating thereon; said reservation to be limited for a period of 10 years from the date of said Deed at which time said minerals and said rights shall revert to the grantee therein or their successors in interest, as reserved by Ruth M. Ryan, to William B. Rusconi and Marjorie C. Rusconi, husband and wife, in the Deed recorded May 24, 1968, in Book 5573, Page 407 of Official Records, as Document No. 36969.

## PARCEL 79A: (intentionally deleted)

## PARCEL 79B:

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

**PARCEL 79C: (intentionally deleted)**

**PARCEL 80: APN: 038-210-44s:**

The West half of the Northwest quarter; and The Northwest quarter of the Southwest quarter of Section 26, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas, mineral and Mineral rights and other hydrocarbon substances situate in and under said land, as reserved in the Referee's Deed, recorded April 30, 1976, in Book 6587, Page 161 of Official Records, as Document No. 36080.

**PARCEL 80A: (intentionally deleted)**

**PARCEL 80B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to (I) use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the non-exclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells, as set forth in that certain Document entitled, "Amended and Restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 80C: (intentionally deleted)**

**PARCEL 81: APN: 038-210-54s:**

The East half of the Southwest quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 50% of 100% in and to all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH all easements and rights necessary for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mine operations thereon, as reserved by Alfred Scharer and Emma Lahman in the Deed recorded March 18, 1966, in Book 5289, Page 104 of Official Records, as Document No. 20985.

**PARCEL 81A: (intentionally deleted)**

**PARCEL 81B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

## PARCEL 81C:

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

## PARCEL 82: APN: 038-210-63s:

The Northeast quarter of Section 25, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the State of California, in the Deed recorded December 20, 1971, in Book 5969, Page 650 of Official Records, as Document No. 101775, described as follows:

Beginning at the Northeast corner of said Section;

thence (1) along the East line of said Section, South 0° 55' 43" West, 2491.32 feet;

thence (2) North 5° 26' 10" West, 170.25 feet;

thence (3) Northerly, along a tangent curve concave Easterly, with a radius of 5050 feet, through an angle of 60° 21' 53" an arc distance of 560.98 feet;

thence (4) along the West line of the East 50 feet of said section, North 0° 55' 43" East, 1721.04 feet; thence (5) North 59° 03' 53" West, 82.73 feet to the North line of said section;

thence (6) along said North line, South 89° 00' 59" East, 121.64 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, all oil, gas, mineral and other hydrocarbon substances, excluding water, under said land, with the right of surface entry for extracting same, as reserved by Gwendolyn I. Ward, a widow, and Antoinette Wood, a married woman, who acquired title as Gwendolyn Ward and Antoinette

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

Wood, each as to an undivided one-half interest, in the Deed recorded June 9, 1980, in Book 7530, Page 853 of Official Records, as Document No. 54920.

**PARCEL 82A: (intentionally deleted)**

**PARCEL 82B: (intentionally deleted)**

**PARCEL 82C:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 82D:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112988 of Official Records.

**PARCEL 83: APN: 038-210-68s:**

The West half of the Southwest quarter of Section 36, Township 26 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South 400 feet of the West 1090 feet thereof, as conveyed to The Pacific Telephone and Telegraph Company, a corporation, in the Deed recorded March 1, 1973, in Book 6135, Page 318 of Official Records, as Document No. 20514.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral, and other hydrocarbon substances which are presently owned by the Grantors appertaining to said land, TOGETHER WITH, the right of ingress and egress thereto as necessary or desirable for the exploration, development and exploitation of all

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

such reserved rights, SUBJECT to the terms and conditions contained therein, all as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847, Page 529, of Official Records, as Document No. 5481.

**PARCEL 83A: (intentionally deleted)**

**PARCEL 83B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 83C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

**PARCEL 84: APN: 038-210-69s:**

The West half of the Southeast quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the coal and other minerals in the land so entered and patented, TOGETHER WITH, the right to prospect for, mine and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862), as reserved by the United States of America in the Patent recorded June 9, 1926, in Book 683, Page 359 of Official Records, as Document No. 16644.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral, and other hydrocarbon substances which are presently owned by the Grantors appertaining to said land, TOGETHER WITH, the right of

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

ingress and egress thereto as necessary or desirable for the exploration, development and exploitation of all such reserved rights, SUBJECT to the terms and conditions contained therein, all as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847, Page 529, of Official Records, as Document No. 5481.

**PARCEL 84A: (intentionally deleted)**

**PARCEL 84B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 84C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

**PARCEL 85: APN: 038-210-70s:**

The East half of the Southeast quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the coal and other minerals in the land so entered and patented, TOGETHER WITH, the right to prospect for, mine and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862), as reserved by the United States of America in the Patent recorded June 9, 1926, in Book 683, Page 359 of Official Records, as Document No. 16644.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral, and other hydrocarbon substances

which are presently owned by the Grantors appertaining to said land, TOGETHER WITH, the right of ingress and egress thereto as necessary or desirable for the exploration, development and exploitation of all such reserved rights, SUBJECT to the terms and conditions contained therein, all as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847, Page 523, of Official Records, as Document No. 5480.

**PARCEL 85A: (intentionally deleted)**

**PARCEL 85B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 85C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

**PARCEL 86: APN: 038-210-71s:**

The East half of the East half of the Northeast quarter of Section 35, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the coal and other minerals in the land so entered and patented, TOGETHER WITH, the right to prospect for, mine and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862), as reserved by the United States of America in the Patent recorded June 9, 1926, in Book 683, Page 359 of Official Records, as Document No. 16644.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM, one half of all oil, gas, mineral, and other hydrocarbon substances which are presently owner by the grantors, as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847 Page 523, of Official Records, as Instrument No. 82-5480.

**PARCEL 86A: (intentionally deleted)**

**PARCEL 86B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 86C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112991 of Official Records.

**PARCEL 87: APN: 038-210-74s:**

The Northwest quarter of Section 36, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, one half of all oil, gas, mineral, and other hydrocarbon substances which are presently owner by the grantors, as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847 Page 523, of Official Records, as Instrument No. 82-5480.

**PARCEL 87A: (intentionally deleted)**

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

### PARCEL 87B:

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

### PARCEL 87C:

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

### PARCEL 88: APN: 038-210-80s:

The Southeast quarter; The South half of the Northeast quarter; The South half of the Northeast quarter of the Northeast quarter; and The Southeast quarter of the Northwest quarter of the Northeast quarter, EXCEPTING THEREFROM the North 20 acres, all in Section 36, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the West 62.21 acres of the Southeast quarter of said Section 36.

EXCEPTING FROM the **East** half of the Southeast quarter of the Southeast quarter of said Section 36, all oil, gas and mineral rights, as reserved by Leta Stevens Bancroft, a widow, in the Deed recorded January 8, 1959, in Book 4159, Page 144 of Official Records, as Document No. 1455.

EXCEPTING FROM the North half of the Northeast quarter of the Southeast quarter of Section 36, all oil, gas and other hydrocarbon substances within or underlying said land, as reserved by L. D. Dahlgren, et ux, to P. B. Haber, in the Deed recorded November 30, 1962, in Book 4791, Page 703 of Official Records, as Document No. 92795.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM, one half of all oil, gas, mineral, and other hydrocarbon substances which are presently owner by the grantors, as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847 Page 523, of Official Records, as Instrument No. 82-5480.

**PARCEL 88A: (intentionally deleted)**

**PARCEL 88B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 88C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

**PARCEL 89: APN: 038-210-76s:**

The Southeast quarter of Section 25, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South half of the Southeast quarter of the Southeast quarter of said Section 25, as conveyed to American Friends Service Committee, a corporation, in the Deed recorded September 24, 1965, in Book 5220, Page 398 of Official Records, as Document No. 76714.

ALSO EXCEPTING THEREFROM, the East 400 feet of the North half of the Southeast quarter of the Southeast quarter of said Section 25, as conveyed to American Friends Service Committee, a corporation, in the Deed recorded June 3, 1968, in Book 5576, Page 121 of Official Records, as Document No. 38780.

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM, the South 240 feet of the East 400 feet of the Northeast quarter of the Southeast quarter of said Section 25, also conveyed to American Friends Service Committee, a corporation, in the Deed recorded June 3, 1968, in Book 5576, Page 121 of Official Records, as Document No. 38780.

ALSO EXCEPTING THEREFROM, that portion of said land granted to the State of California for purposes of a freeway by Deed recorded September 29, 1972, in Book 6075, Page 581 of Official Records, as Document No. 87925, described as follows:

BEGINNING, at the East quarter corner of said Section 25;

THENCE (1), along the east line of said section, South 0 degrees 55' 43" West, 1084.69 feet to the North line of the South 240 feet of the Northeast quarter of the Southeast quarter of said Section;

THENCE (2), along said North line, North 89 degrees 01' 00" West, 121.64 feet;

THENCE (3), North 60 degrees 55' 43" East, 82.72 feet;

THENCE (4), along the West line of the East 50 feet of said Section, North 0 degrees 55' 43" East, 1043.26 feet to the North line of the Southeast quarter of said Section;

THENCE (5), along last said North line, South 89 degrees 01' 00" East, 50.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas, mineral and other hydrocarbon substances in and under said land, as reserved by Dorothy Bristow Sheridan, as Administratrix with the Will annexed of the Estate of Nannie Bristow, deceased, pursuant to the order of the Superior Court of the State of California, for the County of Fresno, made in the matter of the Estate of Nannie Bristor, on July 16, 1974, confirming sale , in the Deed recorded July 31, 1974, in Book 6329, Page 599 of Official Records, as Document No. 57353.

**PARCEL 89A: (intentionally deleted)**

**PARCEL 89B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 89C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or

modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112988 of Official Records.

**PARCEL 90: APN: 038-210-77s:**

The West 10 acres of the East half of the Southwest quarter of Section 36, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, as created in the Deed executed by Crocker National Bank, a National Banking Association, recorded July 19, 1982, in Book 7940, Page 377 of Official Records, as Document No. 59679.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral, and other hydrocarbon substances which are presently owned by the Grantors appertaining to said land, TOGETHER WITH, the right of ingress and egress thereto as necessary or desirable for the exploration, development and exploitation of all such reserved rights, SUBJECT to the terms and conditions contained therein, all as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847, Page 529, of Official Records, as Document No. 5481.

**PARCEL 90A: (intentionally deleted)**

**PARCEL 90B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 90C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

**PARCEL 91: APN: 038-210-78s:**

The East half of the Southwest quarter of Section 36, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM the West 10 acres of the East half of the Southwest quarter of said Section 36, as conveyed in the Deed executed by Crocker National Bank, a National Banking Association, recorded July 19, 1982, in Book 7940, Page 377 of Official Records, as Document No. 59679.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral, and other hydrocarbon substances which are presently owned by the Grantors appertaining to said land, TOGETHER WITH, the right of ingress and egress thereto as necessary or desirable for the exploration, development and exploitation of all such reserved rights, SUBJECT to the terms and conditions contained therein, all as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847, Page 529, of Official Records, as Document No. 5481.

**PARCEL 91A: (intentionally deleted)**

**PARCEL 91B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 91C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

**PARCEL 92: APN: 038-210-79s:**

The West 62.21 acres of the Southeast quarter of Section 36, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING FROM the East half of the Southeast quarter of the Southeast quarter of said Section 36, all oil, gas and mineral rights, as reserved by Leta Stevens Bancroft, a widow, in the Deed recorded January 8, 1959, in Book 4159, Page 144 of Official Records, as Document No. 1455.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, mineral, and other hydrocarbon substances which are presently owned by the Grantors appertaining to said land, TOGETHER WITH, the right of ingress and egress thereto as necessary or desirable for the exploration, development and exploitation of all such reserved rights, SUBJECT to the terms and conditions contained therein, all as reserved by Richard Z. Lamberson and Jean H. Lamberson, also known as Jean Haber Lamberson, his wife, in the Deed recorded January 20, 1982, in Book 7847, Page 529, of Official Records, as Document No. 5481.

**PARCEL 92A: (intentionally deleted)**

**PARCEL 92B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 92C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive

easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

**PARCEL 93: APN: 038-210-82s (Portion):**

The North one-third of the Northwest quarter of Section 25, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, unto grantors in the proportions in which they own the real property above described at the time of making of this instrument, all oil, gas and other hydrocarbon substances and minerals in, under and upon and which may be produced from the said real property, TOGETHER WITH, the right to survey and test the same by geophysical, seismograph, and other means, and TOGETHER WITH, the right to explore for, develop, save, take, remove, sell and otherwise dispose of the same, and to erect, operate and maintain such rigs, derricks, pumps, pipelines, tanks, buildings, structures, equipment and other improvements upon the land above described with may be necessary or convenient for the aforesaid purposes, and such rights of way for roads, poles, lines of wire and pipe or other instrumentalities over an across the premises herein described reasonably or usually required in connection with the exercise of the reserved privileges and benefits herein set forth and TOGETHER WITH, the right to drill for, produce and use water, without cost, from said property in connection with the aforesaid drilling, mining, and other operations thereon, SUBJECT TO, all the terms and conditions contained therein, all as reserved by Gay R. Hilliker and Etta E. Hilliker, husband and wife, in the Deed recorded January 18, 1951, in Book 2956, Page 112 of Official Records, as Document No. 3677.

**PARCEL 94: APN: 038-210-82s (Portion):**

The South half of the North two-thirds of the Northwest quarter of Section 25, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM all oil, gas and other hydrocarbon substances in and under said land as conveyed by Giffen, Inc., a California corporation in liquidation, to Russell Giffen and Ruth P. Giffen, equally, as tenants in common, and each as their respective separate property, in the Quitclaim Deed recorded November 19, 1974, in Book 6370, Page 33 of Official Records, as Document No. 87061.

**PARCEL 95: APN: 038-270-01s: ("S" not shown on ASSESSORS MAP):**

The West half of the Northwest quarter of the Northeast quarter of Section 36, Township 16 South, Range

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided ½ interest of grantor's interest in and to all oil, gas minerals and hydrocarbon substances, in, on or under said land, as reserved by Kathryn D. Crossland, as Trustee of the Kathryn D. Crossland GTS Exempt Trust under Agreement dated November 25, 1989, in the Deed recorded December 2, 1999, as Document No. 1999-0171949, of Official Records.

**PARCEL 95A: (intentionally deleted)**

**PARCEL 95B:**

A non-exclusive easement over the well site to (I) use, operate, control, manage, maintain, repair or modify the well and associated equipment, (II) place power poles and associated power lines thereon and thereover for use in connection with the operation of the well; together with a non-exclusive easement over the well sites to use, operate control, manage, maintain, modify, repair, redrill and replace the wells and the associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the wells; also, together with a non-exclusive easement over the well site parcels (I) for purposes of ingress and egress to the well sites, (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace an underground pipeline and/or an individual pipeline connected to the wells to transport water therefrom to other real property and (III) to place power poles and associated power lines thereon or thereover for use in connection with the operation of the wells; also, together with the nonexclusive right to use the wells and all associated pipelines, casings, valves, pumps, filters, foundations, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water from the wells; as set forth in that certain Document entitled, "Amended and restated Grant of Easements and Well Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112987 of Official Records.

**PARCEL 95C:**

A non-exclusive easement over the Filter Station Site to (I) use, operate, control, manage, maintain, repair or modify the Filter Station and associated equipment, and place power poles and associated power lines thereon and thereover for use in connection with the operation of the Filter Station; together with a non-exclusive easement over the well site (I) for purposes of ingress and egress to the filter station site, and (II) to install, use, operate, control, run water through, manage, maintain, modify, repair and replace a single underground pipeline and/or an individual pipeline connected to the Filter Station to transport water therefrom to an owners parcels; also, together with the non-exclusive right to use the Filter Station and all associated pipelines, valves, pumps, booster pumps, filters, foundations, electrical panels, buildings, motors, fixtures and other property hereafter installed by the parties which may be necessary or desirable for the production, storage and/or transportation of water to and from the Filter Station, as set forth in that certain Document entitled "Grant of Easements and Filter Station Sharing Agreement", recorded September 1, 2010, as Instrument No. 2010-0112992 of Official Records.

**PARCEL 96: APN: 038-300-02 and 038-300-05:**

The North three-quarters of the South half of the North half of the Southeast quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the State of California, in the Deed recorded March 14, 1972, in Book 6000, Page 918 of Official Records, as Document No. 23577, described as follows:

BEGINNING, at the southeast corner of the N. 3/4 of the S. 1/2 of the N. 1/2 of the S.E. 1/4 of said

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

section, said southeast corner bears N.0°56'31"E., 1489.50 feet from the southeast corner of said section;

THENCE (1), along the east line of said section, N.0°56'31"E 496.50 feet to the north line of the S. 1/2 of the N. 1/2 of the S.E. 1/4 of said section;

THENCE (2), along said north line, N.88°59'39"W., 50.00 feet;

THENCE (3), along the west line of the east 50 feet of said section S.0 56'31"W., 455.07 feet;

THENCE (4), S.60°56'31"W., 82.73 feet to the south line of the N. 3/4 of the S. 1/2 of the N. 1/2 of the S.E. 1/4 of said section;

THENCE (5), along said south line, S.88°59'59"E., 121.64 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

**PARCEL 97: APN: 038-300-03s and 038-300-04s:**

The North half of the North half of the Southeast quarter of Section 24, Township 16 South, Range 14 East, Diablo, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the State of California in the Deed recorded March 14, 1972, in Book 6000, Page 914 of Official Records, as Document No. 23576, described as follows:

BEGINNING, at the Southeast corner of the North half of the North half of the Southeast quarter of said section, said Southeast corner bears North 0° 56' 31" East, 1986.00 feet from the Southeast corner of said section;

Thence (1) along the East line of said Section, North 0° 56' 31" East, 662.00 feet to the North line of the Southeast quarter of said section;

Thence (2) along said North line North 88° 59' 13" West, 121.64 feet;

Thence (3) South 59° 03' 29" East, 82.72 feet;

Thence (4) along the West line of the East 50 feet of said section, South 0° 56' 31" West, 620.73 feet to the South line of the North half of the North half of the Southeast quarter of said section;

Thence (5) along said South line, South 88° 59' 39" East, 50.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all the oil, gas, minerals and other hydrocarbon substances therein and thereunder, as reserved by Sloan P. McCormick and Irene B. McCormick, husband and wife, in the Deed recorded July 29, 1981, in Book 7761, Page 194 of Official Records, as Document No. 67388.

**PARCEL 97A: (intentionally deleted)**

**PARCEL 98: APN: 038-300-10:**

The Northeast quarter of the Southwest quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

**PARCEL 99: APN: 038-300-11s:**

The Northwest quarter of the Southwest quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all the oil, gas, minerals and other hydrocarbon substances therein and thereunder, as reserved by Sloan P. McCormick and Irene B. McCormick, husband and wife, in the Deed recorded July 29, 1981, in Book 7761, Page 194 of Official Records, as Document No. 67388.

**PARCEL 100: APN: 038-300-14s:**

The West half of Section 23, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the North 50 feet thereof, as conveyed by Karl Frohlich and Elizabeth Frohlich, his wife, formerly known as Elizabeth Mullarkey to the County of Fresno in the Deed recorded June 5, 1970, in Book 5792, Page 278 of Official Records, as Document No. 38855.

ALSO EXCEPTING THEREFROM, the South 20 feet of the North 70 feet thereof, as conveyed by Karl Frohlich and Elizabeth Frohlich, his wife, formerly known as Elizabeth Mullarkey to the County of Fresno in the Deed recorded June 5, 1970, in Book 5792, Page 280 of Official Records, as Document No. 38856.

ALSO EXCEPTING THEREFROM, the North 70 feet thereof, as conveyed by Giffen, Inc., to the County of Fresno in the Quitclaim Deed recorded June 10, 1970, in Book 5793, Page 512 of Official Records, as Document No. 39938.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas, other hydrocarbons, minerals of metals in, on or underlying said real property, as reserved by Sarah Pelletier, Executrix of the Will of Elizabeth Frohlich, deceased, in the Deed recorded December 5, 1973, in Book 6241, Page 537 of Official Records, as Document No. 105388.

**PARCEL 101: APN: 038-300-27s:**

The East half of the Northwest quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the North 70 feet thereof, as conveyed to the County of Fresno in the Deed recorded January 21, 1971, in Book 5854, Page 75, of Official Records, as Document No. 4717.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by William Helm and Lee Wallace Helm, his wife, in the Deed recorded, September 15, 1948 in Volume 2688, Pages 33 & 34, of Official Records, as Document No. 43166.

### PARCEL 102: APN: 038-300-22:

The East half of the Southeast quarter of the Northeast quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM that portion conveyed to the State of California, in the Deed recorded May 22, 1972, in Book 6026, Page 51, of Official Records, as Document 45664, described as follows:

BEGINNING at the northeast corner of the S.E. 1/4 of the N.E. 1/4 of said section, said northeast corner bears S. 0°56'31"W., 1324.00 feet from the northeast corner of said Section;

THENCE (1), along the east line of said section, S. 0°56'31"W., 1324.00 feet to the south line of the N.E. 1/4 of said section;

THENCE (2), along said south line, N. 88°59'13"W., 121.64 feet;

THENCE (3), N. 60°56'31"E., 82.72 feet;

THENCE (4), along the west line of the east 50 feet of said section, N. 0°56'31" E, 1241.30 feet; THENCE (5), N. 59°03'29"W., 82.72 feet to the north line of the S.E. 1/4 of the N.E. 1/4 of said section; THENCE (6), along said north line, S. 88°58'20"E., 121.64 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

### PARCEL 103: APN: 038-300-28s:

The West half of the Northeast quarter; and The West half of the East half of the Northeast quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion of the Northeast quarter of said Section 24, conveyed to the County of Fresno in the Deed recorded January 21, 1971, in Book 5854, Page 75, of Official Records, as Document No. 4717, described as follows:

BEGINNING, at the North quarter corner of said Section 24; thence

(1)  Southerly along the West boundary of the said Northeast quarter, a distance of 70 feet; thence

(2)  South 88° 57' 38" East, parallel with and 70 feet South of the North boundary of the said Northeast quarter, a distance of 1402.27 feet; thence

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

(3)  South 89° 22' 11" East, to a point on the West boundary of the East half of the Northeast quarter of the said Northeast quarter, said point being 65.81 feet South of the said North boundary;thence

(4)  Northerly, along the said West boundary of the East half of the Northeast quarter of the Northeast quarter, a distance of 65.81 feet; thence

(5) North 88° 57' 38" West, along said North boundary, a distance of 1969.20 feet, to the POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by William Helm and Lee Wallace Helm, his wife, in the Deed recorded, September 15, 1948 in Volume 2688, Pages 33 & 34, of Official Records, as Document No. 43166.

**PARCEL 104A: APN: 038-300-29s (PORTION OF):**

The South half of the Southwest quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH, all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property and ALSO the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, all as reserved by John D. Dessel, an unmarried man, Agnes Mock, Marie Snider, Virginia Black, Lawrence Dessel and Barbara Dessel, husband and wife, in the Deed recorded January 13, 1969, in Book 5650, Page 786 of Official Records, as Document No. 2473.

**PARCEL 104B: APN: 038-300-29s (PORTION OF):**

The South half of the Southeast quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM that portion conveyed to the State of California, in the Deed recorded June 14, 1972, in Book 6035, Page 110 of Official Records, as Document No. 53055, described as follows:

BEGINNING at the Southeast corner of said section;

THENCE (1) along the East line of said section, North 0° 56' 31" East, 1324.090 feet to the North line of

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

the South half of the Southeast quarter of said section;

THENCE (2) along said North line North 89° 00' 06" West, 50.00 feet;

THENCE (3) along the West line of the East 50 feet of said section; South 0° 56' 31" West, 1282.59 feet; THENCE (4) South 60° 56' 07" West, 82.73 feet to the South line of said Section;

THENCE (5), along said South line, South 89° 00' 59" East, 121.64 feet to the POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, the Grantor's undivided three-eighths interest in and to all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Caine Investments Co., Inc., in the Deed to Giffen, Inc., a corporation, recorded July 30, 1948, in Volume 2665, Page 410 of Official Records, as Document No. 36130.

ALSO EXCEPTING THEREFROM, the Grantor's undivided one-eighths interest in and to all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by V. D. Manville and Harriet S. Manville, his wife, in the Deed to Giffen, Inc., a corporation, recorded July 30, 1948, in Volume 2661, Page 318 of Official Records, as Document No. 36224.

ALSO EXCEPTING THEREFROM, the Grantor's undivided one-fourth interest in and to all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by H. A. Barkelew and Edith Barkelew, his wife, in the Deed to Giffen, Inc., a corporation, recorded September 20, 1948, in Volume 2670, Pages 384 & 385 of Official Records, as Document No. 43972.

ALSO EXCEPTING THEREFROM, the Grantor's undivided one-fourth interest in and to all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, as reserved by Russell Giffen and Ruth P. Giffen, as tenants in common, Patricial Giffen Randall, who acquired title as Patricial Giffe, Michael Giffen, Terry Giffen, Carolyn Giffen Peck, who acquired title as Carolyn Giffen, in the Deed to Giffen, Inc., a corporation, recorded, May 25, 1956, in Book 3775, Page 32 of Official Records, as Document No. 38642.

## PARCEL 105: APN: 045-040-02s: (added the "S")

The West half of the West half of Lots 1 and 2 in the Northwest quarter of Fractional Section 2, Township 17 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

## PARCEL 106: APN: 045-040-04s:

The South 40 acres of the East half of the West half of the Northwest quarter of Fractional Section 2, Township 17 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, un undivided one-half interest in and to the Grantors undivided $9/16^{th}$ interest in and to all oil, gas and minerals, as reserved by Doris L. Wild; Doris L. Wild, Trustee under the terms and conditions of the Last Will and Testament of M. K. Wild, aka Mount K. Wild, deceased; F. G. Everts, as his separate property; and Frank G. Everts and Eda Everts, as Trustees under the Will of O. L. Everts, deceased, in the Deed recorded April 4, 1966, in Book 5295, Page 573 of Official Records, as Document No. 25553.

ALSO EXCEPTING THEREFROM, unto the grantors herein all of the oil, gas and mineral interests which the grantors held at the time of the grant and conveyance of this Deed, recorded June 29, 1967, in Book 5454, Page 315 of Official Records, as Document No. 43498. Said Deed conveyed an undivided 1/16ths interest in and to said land.

ALSO EXCEPTING THEREFROM, $1/32^{nd}$ interest of all of the oil, gas and mineral interests as excepted in the Quitclaim Deed executed by M. Gordon Wild, recorded February 13, 1970, in Book 5759, Page 407 of Official Records, as Document No. 10519.

## PARCEL 107: APN: 045-040-08:

The South 25 acres of the East half of the Northwest quarter of Fractional Section 2, Township 17 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas and minerals therein and thereunder, as reserved by Ronald Ray O'Brien, in the Deed recorded July 29, 1969, in Book 5707, Page 890 of Official Records, as Document No. 52121.

## PARCEL 108: APN: 045-040-07:

The North 25 acres of the South 50 acres of the East half of the Northwest quarter of Fractional Section 2, Township 17 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the U.S. Government Township Plats.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

EXCEPTING THEREFROM, one-half of all oil, gas and minerals therein and thereunder, as reserved by Ronald Ray O'Brien, in the Deed recorded July 29, 1969, in Book 5707, Page 890 of Official Records, as Document No. 52121.

**PARCEL 109: APN: 068-071-06s:**

The Northwest quarter of Section 14, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM one-half of all oil, gas and other hydrocarbon substances in and under said land, as reserved by Sadie C. Goodrich, as Administratrix of the Estate of Edward J. Goodrich, also known as E. J. Goodrich, deceased, in the Deed recorded August 22, 1944, in Book 2194, Page 205 of Official Records, as Document No. 32057.

ALSO EXCEPTING THEREFROM an undivided one-half interest in all mineral rights in said property, owned by the Grantor, as reserved by Poli Yparrea, a widow, in the Deed recorded November 21, 1961, in Book 4639, Page 215 of Official Records, as Document No. 85359.

ALSO EXCEPTING THEREFROM all of grantor's right, title and interest in and to all oil, gas and minerals, as reserved by Giffen, Inc., in the Deed recorded August 5, 1974, in Book 6331, Page 142 of Official Records, as Document No. 58512.

**PARCEL 110: APN: 068-071-36s:**

A single parcel of land according to the Certificated of Waiver of Parcel Map No. 04-16, recorded January 25, 2005, as Document No. 2005-0016662, of Official Records, and by Deed recorded June 15, 2005, as Document No. 2005-0132870, of Official Records, described as follows:

The Southwest quarter of Section 13, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

ALSO EXCEPTING THEREFROM all of grantor's right, title and interest in and to all oil, gas and minerals, as reserved by Giffen, Inc., in the Deed recorded August 5, 1974, in Book 6331, Page 142 of Official Records, as Document No. 58512.

**PARCEL 111: APN: 068-071-39s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 04-18 as recorded January 25, 2005, as Instrument No. 2005-0016663 of Official Records and Deed recorded June 15, 2005, as Document No. 2005-0132870, of Official Records, more particularly described as follows:

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

That portion of the Northwest quarter of Section 23, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying North and East of the San Luis Canal as described in the Deed recorded November 23, 1966 in Book 5380, Page 312, as Document No. 83880, Official Records.

TOGETHER WITH, that portion of the Southwest quarter of said Section 23, lying North and East of the San Luis Canal as described in the Deed recorded November 23, 1966 in Book 5380, Page 312, as Document No. 83880, Official Records.

EXCEPTING THEREFROM, the East boundary of said Section 22, distant there along North 0° 54' 26" East, 1143.67 feet from the East quarter corner of said Section 22;

Thence, along said East boundary South 0° 54' 26" West, 23.10 feet;

Thence, leaving said East boundary North 59° 10' 10" West, 34.61 feet;

Thence, continuing North 59° 10' 10" West, 47.39 feet;

Thence, North 2° 33' 58" East, 382.37 feet;

Thence, North 3° 22' 31" East, 580.54 feet;

Thence, South 89° 05' 34" East, 35.00 feet to a point in the East boundary of said Section 22, distant there along North 0° 54' 26" East, 2123.68 feet from the East quarter corner of said Section 22;

Thence, leaving said Section 22 and entering said Section 23 and continuing South 89° 05' 34" East, 35.00 feet;

Thence, South 1° 33' 39" West, 580.54 feet;

Thence, South 0° 51' 45" East, 442.62 feet;

Thence, North 59° 10' 10" West, 50.39 feet;

Thence, continuing North 59° 10' 10" East, 34.61 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 112: APN: 068-071-40s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 04-18 as recorded January 25, 2005, as Instrument No. 2005-0016663 of Official Records and Deed recorded June 15, 2005, as Document No. 2005-0132870, of Official Records, more particularly described as follows:

The Northeast quarter of Section 23, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 113: APN: 068-071-41s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 04-18 as recorded January 25, 2005, as Instrument No. 2005-0016663 of Official Records and Deed recorded June 15, 2005, as Document No. 2005-0132870, of Official Records, more particularly described as follows:

That portion of the Southeast quarter of Section 23, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying North and East of the San Luis Canal as described in the Deed recorded November 23, 1966 in Book 5380, Page 312, as Document No. 83880, Official Records.

EXCEPTING THEREFROM, the South 764.00 feet thereof.

EXCEPTING THEREFROM, the Southeasterly terminus of the course described South 57° 30' 30" East, 235.06 feet in the Northwesterly boundary of the 64.19 acre parcel of land described as Parcel 6 (Unit 160) in the Deed to the United States of America, recorded November 23, 1966, in Book 5380, Page 312, as Document No. 83880, Fresno County Official Records;

thence (1) along said Easterly boundary, North 57° 30' 30" West, 211.58 feet;

thence (2) leaving said Northeasterly boundary, North 35° 29' 53" east, 56.10 feet;

thence (3) South 54° 30' 07" East, 215.00 feet;

thence (4) South 35° 29' 53" West, 45.50 feet to a point in said Northeasterly boundary;

thence (5) along said Northeasterly boundary North 46° 53' 22" West, 3.75 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 114: APN: 068-071-42s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 04-18 as recorded January 25, 2005, as Instrument No. 2005-0016663 of Official Records and Deed recorded July 21, 2005, as Document No. 2005-0164162, of Official Records, more particularly described as follows:

The South 764.00 feet of the Southeast quarter of Section 23, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying North and East of the San Luis Canal as described in the Deed recorded November 23, 1966 in Book 5380, Page 312, as Document No. 83880, Official Records.

EXCEPTING THEREFROM, a point which bears North 26° 25' 21" West, 36.99 feet from a point in the South boundary of said Section 23, distant there along North 89° 34' 29" West, 1012.96 feet from the Southeast corner of said Section 23, said POINT OF BEGINNING being in the North boundary of that certain 66 foot wide strip of land for public highway described in Deed to Fresno County dated June 2, 1921, and recorded April 4, 1923, in Volume 319, Page 308, Official Records, Fresno County Records;

Thence, North 26° 25' 21" West, 35.00 feet;

Thence, South 87° 02' 31" East, 706.49 feet to a point in the North boundary of said 66 foot wide strip of land for public highway;

Thence, along said North boundary North 89° 34' 29" West, 690.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 115: APN: 068-071-37s:**

A single parcel of land according to the Certificated of Waiver of Parcel Map No. 04-16, recorded January 25, 2005, as Document No. 2005-0016662, of Official Records, and Deed recorded June 15, 2005, as Document No. 2005-0132870, of Official Records, more particularly described as follows:

The Southeast quarter of Section 13, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

TOGETHER WITH, the South 65.00 feet of the Northeast quarter of Section 13.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

### PARCEL 116: APN: 068-071-38s:

A single parcel of land according to the Certificated of Waiver of Parcel Map No. 04-16, recorded January 25, 2005, as Document No. 2005-0016662, of Official Records, and Deed recorded June 15, 2005, as Document No. 2005-0132870, of Official Records, more particularly described as follows:

The Northeast quarter of Section 13, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the South 65.00 feet.

ALSO EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

### PARCEL 117: APN: 075-050-08s:

The Southeast quarter of Section 24, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM one half of grantors right, title and interest in and to all oil, gas hydrocarbon substances and/or minerals therein or thereunder said land, as reserved by Lawrence M. Kirsch, an unmarried man, Ralph L. Kirsch, Jr. and Barbara Kirsch, husband and wife, Elizabeth M. Kirsch, Barbara S. Crane, and Therese M. Ricciardi, in the Deed recorded October 4, 1965, in Boo 5223, Page 609 of Official Records, as Document No. 78928.

ALSO EXCEPTING THEREFROM, an undivided 1/6th interest in ½ of any and right, title and interest which is presently owned by sellers in and to all oil, gas hydrocarbon substances and/or minerals therein or

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

thereunder, as reserved by the Estate of Kevin B. Kirsch aka Kevin Beaure Kirsch aka Kevin Michael Kirsch, deceased, in the Order Confirming Sale of Real Property, recorded October 4, 1965, in Book 5223, Page 612 of Official Records, as Document No. 78929.

ALSO EXCEPTING THEREFROM, an undivided 50% of 100% of all oil, gas and other hydrocarbons and minerals on, in or under said Southeast quarter of said land, as reserved by Olen C. Harris and Rachel F. Harris, husband and wife, in the Deed recorded July 3, 1973, in Book 6184, Page 706 of Official Records, as Document No. 31200.

**PARCEL 118: APN: 075-050-50s:**

The East half of Section 13, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM that portion described in fee in that certain "Final Order of Condemnation RE: State of California v. Ann Dawn, Trustee, et al.", Fresno Superior Court Case No. 05 CE CG 01619 AMS (consolidated with 05 C3 CG 02465 AMS), recorded September 24, 2008, as Instrument No. 2008-0137023 of Official Records, described as follows:

BEGINNING, at the found standard Fresno County Surveyor's brass cap monument marking the Southeast corner of said Section 13, which bears North 89° 56' 01" East 5304.04 feet from the found standard Fresno County Surveyor's brass cap monument marking the Southwest corner of said Section 13;

Thence, along the South line of said Section 13, South 89° 56' 01" West 1628.33 feet; Thence, leaving said South line North 77.65 feet;

Thence, North 89° 02' 44" East 1525.78 feet;

Thence, East 102.90 feet to the East line of said Section 13;

Thence, along said East line South 00° 04' 37" West 101.18 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, an undivided seventy-five percent of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying said land or that may be produced therefrom including, without limiting the generality of the foregoing, all petroleum, oil, natural gas and products derived therefrom, as reserved by Southern Pacific Land Company, a corporation, in the Deed recorded January 15, 1965, in Book 5120, Page 351 of Official Records, as Document No. 3763.

ALSO EXCEPTING THEREFROM, an undivided twelve and one-half percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation in the Corporation Grant Deed from recorded June 23, 1971, in Book 5907 Page 613 of Official Records, as Document No. 49627.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of an undivided one-third interest of an undivided twelve and one-half percent of one hundred percent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon, under or pertaining to said property, or that may be produced therefrom, as reserved to Richard Patrick McCarthy and K. Maureen McCarthy, in the Deed recorded June 30, 1982, in Book 7931, Page 622 of Official Records, as Document No. 54622.

**PARCEL 119: APN: 075-070-16s AND 17s:**

The Southeast quarter of Section 26, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and hydrocarbon substances on, in, or under said land, as reserved by Nalda Richart, also known as Nalda Richart Geisler, and Colleen Richart, also known as Colleen

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Richart Gopher, and Delna Weil to Patrick McCarthy, in the Deed recorded December 17, 1971, in Book 5969, Page 97 of Official Records, as Document No. 101367.

**PARCEL 120: APN: 075-070-22s:**

That portion of the North half of the Northeast quarter of Section 26, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, described as follows:

BEGINNING, at the North one-quarter corner of said Section 26;

Thence, North 90° 00' 00" East along the North line of said Section 26, a distance of 217.66 feet; Thence, South 0° 19' 30" West a distance of 1,201.38 feet to the TRUE POINT OF BEGINNING of this description;

Thence, continuing South 0° 19' 30" West a distance of 50.00 feet;

Thence, South 90° 00' 00" West parallel with the North line of said Section 26, a distance of 50.00 feet; Thence, North 0° 19' 30" East a distance of 50.00 feet;

Thence, North 90° 00' 00" East parallel with the North line of said Section 26, a distance of 50.00 feet to the TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM, all remaining interest in all minerals, gas and other hydrocarbon substances lying beneath said land, as reserved by James R. Sharer and Barbara A. Sharer, husband and wife, in the Deed recorded April 26, 1978, in Book 7018, Page 972 of Official Records, as Document No. 44231.

**PARCEL 121: APN: 075-070-28:**

The Southwest quarter of Section 36, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the County of Fresno by the Deeds, recorded August 31, 1977, in Book 6867, Pages 875 and 878, Official Records, as Document Nos. 93521 & 93522.

**PARCEL 122: APN: 075-070-29:**

The Southeast quarter of Section 36, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the County of Fresno by the Deeds, recorded August 31, 1977, in Book 6867, Pages 875 and 878, Official Records, as Document Nos. 93521 & 93522.

**PARCEL 123: APN: 075-070-30:**

The Northwest quarter of Section 36, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 124: APN: 075-070-31:**

The Northeast quarter of Section 36, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 125: APN: 075-070-36s:**

The South half of the Northeast quarter of Section 26, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

EXCEPTING THEREFROM, an undivided fifty percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware Corporation in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Page 613 of Official Records, as Document No. 49627.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of an undivided one-third interest of an undivided fifty per cent of one hundred per cent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon, under or pertaining to said property, or that may be produced therefrom, as reserved by Richard Patrick McCarthy and K. Maureen McCarthy, in the Deed recorded June 30, 1982, in Book 7931 Page 625 of Official Records, as Document No. 54623.

ALSO EXCEPTING THEREFROM, and reserving onto Donald C. McCarthy and Dorothy B. McCarthy Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971 for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977 for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by above, as reserved in Grant Deed recorded November 16, 1984, as Instrument No. 84-111479.

**PARCEL 126: APN: 075-070-50s:**

The North half of the Northeast quarter of Section 26, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, the following described land:

BEGINNING, at the North one-quarter corner of said Section 26;

Thence, North 90° 00' 00" East along the North line of said Section 26, a distance of 217.66 feet; Thence, South 0° 19' 30" West a distance of 1,201.38 feet to the TRUE POINT OF BEGINNING of this description;

Thence, continuing South 0° 19' 30" West a distance of 50.00 feet;

Thence, South 90° 00' 00" West parallel with the North line of said Section 26, a distance of 50.00 feet; Thence, North 0° 19' 30" East a distance of 50.00 feet;

Thence, North 90° 00' 00" East parallel with the North line of said Section 26, a distance of 50.00 feet to the TRUE POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, an undivided fifty percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware Corporation in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Page 613 of Official Records, as Document No. 49627.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of an undivided one-third interest of an undivided fifty per cent of one hundred per cent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon, under or pertaining to said property, or that may be produced therefrom, as reserved by Richard Patrick McCarthy and K. Maureen McCarthy, in the Deed recorded June 30, 1982, in Book 7931 Page 625 of Official Records, as Document No. 54623.

ALSO EXCEPTING THEREFROM, and reserving onto Donald C. McCarthy and Dorothy B. McCarthy Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971 for the benefit

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977 for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by above, as reserved in Grant Deed recorded November 16, 1984, as Instrument No. 84-111479.

**PARCEL 127: APN: 075-070-43s:**

The Northeast quarter of the Northeast quarter of Section 25, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 128: APN: 075-070-56s:**

A single parcel of land, according to the Certificate of Waiver of Parcel Map No. 09-06, recorded September 1, 2009, as Document No. 2009-0121438 of Official Records, described as follows:

All of Section 25, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the Northeast quarter of the Northeast quarter.

ALSO EXCEPTING therefrom, Beginning at a point along the South line of said Section 25, 2695.02 feet East of the Southwest corner of said Section 25;

Thence, West 2695.02 feet along the South line of said Section 25 to the Southwest corner of said Section 25; Thence, North 2660.93 feet along the West line of said Section 25;

thence East 2696.72 feet to a point which lies 2656.38 feet Northerly of the POINT OF BEGINNING; thence South 2656.38 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 129: APN: 075-070-55s:**

A single parcel of land, according to the Certificate of Waiver of Parcel Map No. 09-06, recorded September 1, 2009, as Document No. 2009-0121438 of Official Records, described as follows:

All of that portion of Section 25, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, according to the Official Plat thereof located in the unincorporated area of the County of Fresno, State of California, more particularly described as follows:

BEGINNING, at a point along the South line of said Section 25, 2695.02 feet East of the Southwest corner of said Section 25;

Thence, West 2695.02 feet along the South line of said Section 25 to the Southwest corner of said Section 25; Thence, North 2660.93 feet along the West line of said Section 25;

Thence, East 2696.72 feet to a point which lies 2656.38 feet Northerly of the POINT OF BEGINNING; Thence, South 2656.38 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 130: APN: 075-070-46s:**

A single parcel of land, according to the Certificate of Waiver of Parcel Map No. 89-59, recorded October 4, 1990, as Document No. 90120632 of Official Records, described as follows:

The West half of the Southeast quarter of Section 35, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion lying within the land conveyed to the County of Fresno, in the Deed recorded May 6, 1976, as Document No. 37420, described as follows:

BEGINNING, at a point on the South boundary of said Section 35, said point bears South 89° 57' 54" East, 140 feet from the Southwest corner of said Section 35;

thence, (1) North 00° 33' 00" West, parallel with the West boundary of said Section 35, 40 feet;

thence, (2) North 81° 53' 53" West, 54.23 feet;

thence, (3) North 87° 30' 06" East, 366.31;

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

thence, (4) Easterly along the arc of a curve concave to the South (having a 12,035 feet radius, a radius point which bears South 02° 29' 54" East and a central angle of 02° 38' 39"), a distance of 555.41 feet;

thence, (5) South 89° 51' 15" East, 192.12 feet;

thence, (6) North 00° 08' 45" East, 5.00 feet;

thence, (7) South 89° 51' 15" East, 600.14 feet;

thence, (8) North 89° 55' 47" East, 1090.11 feet to a point which bears North 00° 18' 30" East, 86.11 feet from the Northwest corner of Section 1, Township 21 South, Range 17 East, Mount Diablo Base and Meridian;

thence, (9) North 89° 51' 22" East, 2637.97 feet;

thence, (10) South 00° 17' 14" West, 99.59 feet to the North quarter corner of said Section 1;

thence, (11) North 89° 51' 04" West along the North boundary of the Northwest quarter of said Section 1, 2637.94 feet to the Northeast corner of Section 2, Township 21 South, Range 17 East, Mount Diablo Base and Meridian; thence, (12) North 89° 51' 15" West along the North boundary of the Northeast quarter of said Section 2, 2637.38 feet to the North quarter corner of said Section 2;

thence, (13) North 89° 57' 54" West along the South boundary of said Section 35, 111.68 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.


**PARCEL 131: APN: 075-070-47s:**

A single parcel of land, according to the Certificate of Waiver of Parcel Map No. 89-59, recorded October 4, 1990, as Document No. 90120632 of Official Records, described as follows:

The East half of the Southeast quarter of Section 35, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion lying within the land conveyed to the County of Fresno, in the Deed recorded May 6, 1976, as Document No. 37420, described as follows:

BEGINNING, at a point on the South boundary of said Section 35, said point bears South 89° 57' 54" East, 140 feet from the Southwest corner of said Section 35;

thence, (1) North 00° 33' 00" West, parallel with the West boundary of said Section 35, 40 feet;

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

thence, (2) North 81° 53' 53" West, 54.23 feet;

thence (3) North 87° 30' 06" East, 366.31;

thence (4) Easterly along the arc of a curve concave to the South (having a 12,035 feet radius, a radius point which bears South 02° 29' 54" East and a central angle of 02° 38' 39"), a distance of 555.41 feet;

thence, (5) South 89° 51' 15" East, 192.12 feet;

thence, (6) North 00° 08' 45" East, 5.00 feet;

thence, (7) South 89° 51' 15" East, 600.14 feet;

thence, (8) North 89° 55' 47" East, 1090.11 feet to a point which bears North 00° 18' 30" East, 86.11 feet from the Northwest corner of Section 1, Township 21 South, Range 17 East, Mount Diablo Base and Meridian;

thence, (9) North 89° 51' 22" East, 2637.97 feet;

thence, (10) South 00° 17' 14" West, 99.59 feet to the North quarter corner of said Section 1;

thence, (11) North 89° 51' 04" West along the North boundary of the Northwest quarter of said Section 1, 2637.94 feet to the Northeast corner of Section 2, Township 21 South, Range 17 East, Mount Diablo Base and Meridian; thence, (12) North 89° 51' 15" West along the North boundary of the Northeast quarter of said Section 2, 2637.38 feet to the North quarter corner of said Section 2;

thence, (13) North 89° 57' 54" West along the South boundary of said Section 35, 111.68 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 132: APN: 075-070-48s:**

A single parcel of land, according to the Certificate of Waiver of Parcel Map No. 89-59, recorded October 4, 1990, as Document No. 90120632 of Official Records, described as follows:

The Northeast quarter of Section 35, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 133: 075-070-53s:**

The Northwest one-quarter of Section 26, Township 20 south, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plats thereof.

EXCEPTING THEREFROM, the Westerly 30 feet and the Northerly 40 feet of said northwest one-quarter, as erroneously excepted in fee in various conveyances of record.

ALSO EXCEPTING THEREFROM, that portion conveyed to the State of California, in the Grant Deed recorded June 20, 2002, as Instrument No. 2002-0102526, of Official Records, described as follows:

PARCEL 84714

That portion of the northwest quarter of said Section 26, described as follows: BEGINNING at the northwest corner of said Section 26;

THENCE, (1) along the north line of said Section 26, South 89°18'57" East a distance of 29.604 meters; THENCE, (2) South 00°41'03" West a distance of 12.191 meters to the southerly line of Tractor Avenue; THENCE, (3) South 76°06'31" West a distance of 12.337 meters;

THENCE, (4) South 40°32'31" West a distance of 7.562 meters; THENCE, (5) South 04°43'20" West a distance of 43.669 meters to the easterly line of State Highway 269;

THENCE, (6) North 89°50'45" West a distance of 9.144 meters to the west line of said Section 26; THENCE, (7) along said west line, North 00°09'15" East a distance of 64.749 meters to the POINT OF BEGINNING.

EXCEPTING THEREFROM the west 9.144 meters and the north 12.192 meters thereof.

The bearings and distances used in this description are on the California Coordinate System of 1983, Zone 4. Multiply distances by 1.00004004 to convert to ground distances.

TOGETHER WITH:

The Westerly 30 feet and the Northerly 40 feet of the Northwest one-quarter of Section 26, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plats thereof.

EXCEPTING THEREFROM, that portion conveyed by Oleta Woolf, a widow, to the State of California, in the Grant Deed recorded June 20, 2002, as Instrument No. 2002-0102528, Official Records, described as follows:

The North 12.192 meters (40 feet); and the West 9.144 meters (30 feet) of the Northwest quarter of said Section 26, lying within the following described parcel:

PARCEL 84714A

That portion of the northwest quarter of said Section 26, described as follows:

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

BEGINNING at the northwest corner of said Section 26;

THENCE, (1) along the north line of said Section 26, South 89°18'57" East a distance of 29.604 meters; THENCE, (2) South 00°41'03" West a distance of 12.191 meters to the southerly line of Tractor Avenue; THENCE, (3) South 76°06'31" West a distance of 12.337 meters;

THENCE, (4) South 40°32'31" West a distance of 7.562 meters; THENCE, (5) South 04°43'20" West a distance of 43.669 meters to the easterly line of State Highway 269;

THENCE, (6) North 89°50'45" West a distance of 9.144 meters to the west line of said Section 26; THENCE, (7) along said west line, North 00°09'15" East a distance of 64.749 meters to the POINT OF BEGINNING.

EXCEPTING THEREFROM the west 9.144 meters and the north 12.192 meters thereof.

The bearings and distances used in this description are on the California Coordinate System of 1983, Zone 4. Multiply distances by 1.00004004 to convert to ground distances.

ALSO EXCEPTING THEREFROM an undivided fifty per cent of one hundred per cent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton and Co., a Delaware corporation, in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Page 613 of Official Records, as Document No. 49627.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of an undivided one-third interest of an undivided fifty per cent of one hundred per cent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon, under or pertaining to said property, or that may be produced therefrom, as reserved by Richard Patrick McCarthy and K. Maureen McCarthy, in the Deed recorded June 30, 1982, in Book 7931 Page 625 of Official Records, as Document No. 54623.

ALSO EXCEPTING THEREFROM, and reserving onto Donald C. McCarthy and Dorothy B. McCarthy Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971 for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977 for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by above, as reserved in Grant Deed recorded November 16, 1984, as Instrument No. 84-111479.

### PARCEL 134: APN: 078-020-47s:

Section 7, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, the portion conveyed to the United States of America, in the Deed recorded May 17, 1966, in Book 5314, Page 63 of Official Records, as Document No. 37724, described as follows:

BEGINNING, at the North quarter corner of said Section 7,

thence along the North boundary of said Section 7 South 88° 54' 11" East, 21.71 feet;

thence leaving said North boundary South 12° 28' 59" East, 169.63 feet;

thence South 15° 51' 44" East, 5364.60 feet to a point in the South boundary of said Section 7, distant there along North 88° 54' 52" West, 1036.84 feet from the Southeast corner of said Section 7;

thence along said South boundary North 88° 54' 52" West, 428.62 feet;

thence leaving said South boundary North 15° 51' 44" West, 5537.15 feet to a point in the North boundary of

said Section 7;

thence along said North boundary South 88° 53' 32" East, 417.41 feet to the POINT OF BEGINNING;

ALSO EXCEPTING THEREFROM, the portion conveyed to the Westlands Water District, a California public agency, in the Deed recorded March 26, 1969, in Book 5673, Page 354 of Official Records, as Document No. 21046, described as follows:

BEGINNING, at the Northeast corner of the 52.14 acre parcel of land described as Parcel One in the Deed to the United States of America recorded May 17, 1966, in Book 5314, Page 63 of Official Records, Document No. 37724, said Northeast corner being a point in the North line of said Section 7 that bears South 88° 54' 11" East, 21.71 feet from the North quarter corner of said Section 7;

thence (1) along said North line, South 88° 54' 11" East, 418.95 feet;

thence (2) South 1° 05' 49" West, 49.55 feet;

thence (3) South 74° 08' 16" West, 395.41 feet to a point in the East boundary of said 52.14-acre parcel of land; thence (4) along said East boundary North 12° 28' 59" West, 169.83 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, those two parcels of land conveyed to the United States of America, in the Deed recorded October 1, 1973, in Book 6219, Page 350 of Official Records, as Document Nos. 88608 & 88610, described as follows:

"PARCEL ONE": BEGINNING at a point in the South boundary of said Section 7, distant there along North 88° 54' 52" West 1465.46 feet from the Southeast corner of said Section 7;

thence along said South boundary North 88° 54' 52" West 104.54 feet;

thence leaving said South boundary North 15° 51' 44" West 5445.19 feet; thence continuing North 15° 51' 44" West 92.00 feet to a point in the North boundary of said Section 7, distant there along North 88° 53' 32" West 521.96 feet from the North quarter corner of said Section 7;

thence along said North boundary South 88° 53' 32" East 104.55 feet to the most Westerly point of Parcel 1 as described in the Deed to the United States recorded May 17, 1966 in Book 5314 Page 63 in the Official Records of Fresno County;

thence along the Southwesterly boundary of said Parcel 1 South 15° 51' 44" East 5537.15 feet to the POINT OF BEGINNING.

"PARCEL TWO": BEGINNING, at a point in the North boundary of said Section 7, distant there along North 88° 53' 32" West 646.96 feet from the North quarter corner of said Section 7;

thence along said North boundary South 88° 53' 32" East 125.00 feet to the most Westerly point of hereinbefore described Parcel One:

thence along the Southwesterly boundary of said Parcel One South 15° 51' 44" East 92.00 feet; thence leaving said Southwesterly boundary North 77° 21' 16" West 155.00 feet;

thence North 1° 06' 28" East 57.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM that portion thereof lying westerly of the most westerly lines of Parcels One and Two described in the deed to the United States of America recorded October 1, 1973 in Book 6219, Page 352 of Official Records as Document No. 88610.

ALSO EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 135: APN: 078-041-01s:**

The North 99 acres of the Fractional Northwest quarter of Section 18, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbon substances and any other materials in, upon or under said land or hereinafter discovered in, upon or under said property, as reserved by Carl L. Maudin and Fay C. Mauldin, his wife, in the Deed recorded November 3, 1944, in Book 2211, Pages 27 & 28 of Official Records, as Document No. 40950.

ALSO EXCEPTING THEREFROM an undivided twenty-five percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation, in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Pages 626, 627 & 628 of Official Records, as Document No. 49630.

**PARCEL 136: APN: 078-041-02s:**

The Fractional Northwest quarter of Section 18, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the North 99 acres of said Fractional Northwest quarter of Section 18.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in and to all oil, gas and other hydrocarbon substances and any other materials in, upon or under said land or hereinafter discovered in, upon or under said property, as reserved by Carl L. Maudin and Fay C. Mauldin, his wife, in the Deed recorded November 3, 1944, in Book 2211, Pages 27 & 28 of Official Records, as Document No. 40950.

ALSO EXCEPTING THEREFROM an undivided twenty-five percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation, in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Pages 629, 630 & 631 of Official Records, as Document No. 49631.

**PARCEL 137: APN: 078-041-17s:**

BEGINNING at a point in the South boundary of the Northeast quarter of Section 18, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, distant there along North 88° 55' 25" West, 662.57 feet from the East quarter corner of said Section 18, said POINT OF BEGINNING being the most Southwesterly point of Parcel One described in the Deed to the United States of America, recorded March

23, 1966, in Book 5291, Page 192 of Official Records;

thence along said South boundary North 88° 55' 25" West, 1974.15 feet to a point in the West boundary of the East half of said Section 18, distant therealong South 1° 03' 40" West, 2648.18 feet from the North quarter corner of said Section 18, said point being the Southwest corner of said Northeast quarter;

thence along said West boundary North 1° 03' 40" East, 1324.11 feet to the Northwest corner of the South half of said Northeast quarter;

thence leaving said West boundary along the North boundary of said South half of the Northeast quarter South 88° 55' 07" East, 1571.28 feet to the most Northwesterly point of hereinbefore described Parcel One;

thence leaving said North boundary along the Westerly boundary of said Parcel One, South 15° 51' 44" East, 1384.01 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, all that portion of said land lying within the land conveyed to the United States of America, in the Grant Deed recorded August 9, 1972, in Book 6054, Page 559 of Official Records, as Document No. 69976.

ALSO EXCEPTING THEREFROM, an undivided 50% of 100% interest in and to all oil, gas and minerals rights in or under said land for the term of her natural life, as reserved in Deed from Pearl Brittain to Robert Schoemaker and Eulalie H. Schoemaker, husband and wife, as joint tenants, dated June 10, 1963, recorded June 18, 1963, in Book 4873, Page 285 of Official Records, as Document No. 48604.

ALSO EXCEPTING THEREFROM, an undivided 50% of 100% of all oil, gas and minerals in and under the said land as reserved by Carl J. Lewan, Jr., Dorothy J. Paxman, and Margaret N. Linebaugh, in the Deed recorded March 23, 1966, in Book 5291, Page 187 of Official Records, as Document No. 22499.

### PARCEL 138: APN: 078-060-02s:

The Southwest quarter of the Northwest quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

AND EXCEPTING THEREFROM, an undivided fifty percent of the one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation, in the corporation Grant Deed recorded June 23, 1971, in Book 5907 Page 629 of Official Records, as Document No. 49631.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of an undivided fifty percent of one hundred percent of all oil, gas, minerals and other hydrocarbon substances in, upon or under said property, or that may be produced therefrom, as reserved by Robert Patrick McCarthy, in the Deed recorded June 30, 1982, in Book 7931 Page 635 of Official Records, as Document No. 54626.

### PARCEL 139A: APN: 078-060-65s (PORTION OF):

The North half of the Northwest quarter of the Northwest quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/16 interest in and to all oil, gas and mineral rights and all oil, gas and mineral hereafter developed and produced upon said lands and a one-half interest in all bonuses or sums paid in nature of a bonus for any oil leases hereafter executed covering said lands as conveyed to John K. Wright and Anna Mae Wright, husband and wife, in the Deed recorded November 2, 1929, in Book 1040, Pages 98 & 99 of Official Records, as Document No. 29202.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM, all of grantor's right, title and interest in and to all oil, gas and minerals as reserved by Marvin James Marke, in the Deed from recorded January 14, 1974, in Book 6254 Page 765 of Official Records, as Document No. 3298.

**PARCEL 139B: APN: 078-060-65s (PORTION OF):**

The South half of the Northwest quarter of the Northwest quarter of Fractional Section 30, township 20, South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/16 interest in and to all oil, gas and mineral rights and all oil, gas and mineral hereafter developed and produced upon said lands and a one-half interest in all bonuses or sums paid in nature of a bonus for any oil leases hereafter executed covering said lands as conveyed to John K. Wright and Anna Mae Wright, husband and wife, in the Deed recorded November 2, 1929, in Book 1040, Pages 98 & 99 of Official Records, as Document No. 29202.

ALSO EXCEPTING THEREFROM, all of grantor's right, title and interest in and to all oil, gas and minerals as reserved by Sidney Charles Marke and Nettie Olive Marke, husband and wife in the Deed recorded January 14, 1974, in Book 6254 Page 766 of Official Records, as Document No. 3299.

**PARCEL 139C: APN: 078-060-65s (PORTION OF):**

The North one-third of the East half of the Northwest quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/16 interest in and to all oil, gas and mineral rights and all oil, gas and mineral hereafter developed and produced upon said lands and one-half interest in all bonuses or sums paid in nature of a bonus for any oil leases hereafter executed covering said land as conveyed to John K. Wright and Anna Mae Wright, husband and wife, in the Deed recorded August 20, 1930, in Book 1100, Page 493 of Official Records, as Document No. 20623.

ALSO EXCEPTING THEREFROM, all of grantor's right, title and interest in and to all oil, gas and minerals as reserved by Lorena Jessie Lloyd in the Deed recorded January 14, 1974, in Book 6254, Page 767 of Official Records, as Document No. 3300.

**PARCEL 139D: APN: 078-060-65s (PORTION OF):**


The South half of the North two-thirds of the East half of the Northwest quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/16 interest in and to all oil, gas and mineral rights and all oil, gas and mineral hereafter developed and produced upon said lands and one-half interest in all bonuses or sums paid in nature of a bonus for any oil leases hereafter executed covering said land as conveyed to John K. Wright and Anna Mae Wright, husband and wife, in the Deed recorded August 20, 1930, in Book 1100, Page 493 of Official Records, as Document No. 20623.

ALSO EXCEPTING THEREFROM, all of grantor's right, title and interest in and to all oil, gas and minerals as reserved by Lorena Jessie Lloyd in the Deed recorded January 14, 1974, in Book 6254, Page 768 of Official Records, as Document No. 3301.

**PARCEL 139E: APN: 078-060-65s (PORTION OF):**

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

The South one-third of the East half of the Northwest quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/16 interest in and to all oil, gas and mineral rights and all oil, gas and mineral hereafter developed and produced upon said lands and one-half interest in all bonuses or sums paid in nature of a bonus for any oil leases hereafter executed covering said land as conveyed to John K. Wright and Anna Mae Wright, husband and wife, in the Deed recorded August 20, 1930, in Book 1100, Page 493 of Official Records, as Document No. 20623.

ALSO EXCEPTING THEREFROM all of grantor's right, title and interest in and to all oil, gas and minerals as reserved by Neva Doris Welborn who acquired title as Neva Doris Marke, in the Deed recorded January 14, 1974, in Book 6254, Page 769 of Official Records, as Document No. 3302.

**PARCEL 140: APN: 078-060-03s:**

The Southwest quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided one-half interest of an undivided 28.43 percent of one hundred percent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon and under or pertaining to said property, or that may be produced therefrom as reserved by Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Katherine Maureen McCarthy, in the Deed recorded June 30, 1982, in Book 7931, Page 667 of Official Records, as Document No. 54637.

ALSO EXCEPTING THEREFROM an undivided one-half interest of an undivided 28.43 percent of one hundred percent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon and under or pertaining to said property, or that may be produced therefrom as reserved by Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Richard Patrick McCarthy, a minor, in the Deed recorded June 30, 1982, in Book 7931, Page 671 of Official Records, as Document No. 54638.

**PARCEL 141: APN: 078-060-80s:**

The Southeast quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the United States of America, in the Deed recorded July 20, 1965, in Book 5194, Page 733 of Official Records, as Document No. 58594.

ALSO EXCEPTING THEREFROM that portion conveyed to the Westlands Water District, recorded January 18, 1977, in Book 6725, Page 405 of Official Records, as Document No. 5290.

**PARCEL 142: APN: 078-060-85s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 89-60, recorded May 21, 1991, as Document No. 91059935, of Official Records, described as follows:

That portion of the South half of Fractional Section 31, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, lying West of the Westerly boundary of the 67.52 acre parcel of land as Parcel 1 in the Deed to the United States of America recorded May 17, 1966, in Book 5314, Page 66, Document No. 37725, Official Records of Fresno County.

EXCEPTING THEREFROM, that portion conveyed to the County of Fresno, in the Deed recorded May 4,

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

1976, in Book 6589 Page 132 as Document No. 37420, Official Records of Fresno County.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 143: APN: 078-060-86s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 89-60, recorded May 21, 1991, as Document No. 91059935, of Official Records, described as follows:

That portion of the Northeast quarter of Fractional Section 31, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying West of the Westerly boundary of the 67.52 acre parcel of land described as Parcel 1 in the Deed to the United States of America recorded May 17, 1966, in Book 5314, Page 66, Document No. 37725, Official Records of Fresno County.

EXCEPTING THEREFROM that portion thereof described as Unit 25R-1A in the deed to Westlands Water District recorded February 18, 1977 in Book 6743, Page 213, as Document No. 16643 of Official Records, being a parcel of land in the northeast quarter of Section 31, Township 20 South, Range 18 East, M.D.B.&M., described as follows:

Beginning at the northwest corner of the 67.52-acre parcel of land described as PARCEL ONE (Unit 175) in the deed to the United States of America recorded May 17, 1966 in Book 5314 at Page 66 as Document No. 37725, Fresno County Official Records, said northwest corner being a point in the north line of said Section 31, distant therealong North 89°08'18" West, 480.71 feet from the northeast corner of said Section 31; thence (1) along said north line, North 89°08'18" West, 142.00 feet; thence (2) South 47°09'54" East, 147.96 feet to a point in the west boundary of said 67.52-acre parcel; thence (3) along said west boundary, North 18°46'45" East, 104.00 feet to the point of beginning.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

**PARCEL 144: APN: 078-060-87s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 89-60, recorded May 21, 1991, as Document No. 91059935, of Official Records, described as follows:

The West 1422.00 feet of the Northwest quarter of Fractional Section 31, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 145: APN: 078-060-88s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 89-60, recorded May 21, 1991, as Document No. 91059935, of Official Records, described as follows:

The Northwest quarter of Fractional Section 31, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the West 1422.00 feet thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 146: APN: 078-060-39s:**

The Northeast quarter of Fractional Section 30, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, a portion of said Northeast quarter of Section 30, conveyed to the United

States of America by Deed recorded March 10, 1966, in Book 5285, Page 174 of Official Records, as Document No. 18692, described as follows:

BEGINNING, at the Northeast corner of said Section 30, thence along the East boundary of said Section 30 South 0° 55' 15" West, 2647.67 feet to the East quarter corner of said Section 30;

thence leaving said East boundary along the South boundary of the Northeast quarter of said Section 30, North 89° 05' 12" West, 482.18 feet;

thence leaving said South boundary North 0° 53' 46" East, 2648.09 feet to a point in the North boundary of said Section 30;

thence along said North boundary South 89° 02' 13" East, 483.32 feet to the POINT OF BEGINNING.

ALSO EXCEPTING an undivided ½ interest in all oil, gas or minerals, in or under said land, without, however, the right to dig, drill or mine therefor through the surface or upper 100 feet of the subsurface of the lands herein conveyed, as reserved by Dallas C. Paul and Willa E. Paul, husband and wife, in the Deed recorded October 9, 1984, as Document No. 84097012, of Official Records.

ALSO EXCEPTING, all remaining oil, gas, minerals and hydrocarbon substances as reserved by Ray Dallas Paul and Melody Ann Paul, husband and wife, in the Deed recorded December 14, 1984, as Document No. 84120853, of Official Records.

**PARCEL 147: APN: 078-060-57s:**

All of Section 29, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed by Southern Pacific Transportation Company, a Delaware corporation and Bravo Oil Company, a Texas corporation to Westlands Water District, a public agency, in the Deed record June 23, 1970, in Book 5796, Page 701 of Official Records, as Document No. 43080, described as follows:

The South 50 feet of the West 220 feet of the Southwest quarter; also the North 120 feet of the South 170 feet of the West 50 feet of said Southwest quarter.

ALSO EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 148: APN: 078-080-55:**

The Northwest quarter of Fractional Section 6, Township 21 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

**PARCEL 149: APN: 078-130-06s:**

The Fractional West half of Section 19, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the United States of America, in the Deed recorded March 30, 1966, in Book 5293, Page 718 of Official Records, as Document No. 24348 of Official Records, described as follows:

BEGINNING at the North quarter corner of said Section 19;

Thence, along the East boundary of the West half of said Section 19, South 0° 37' 29" West, 65.00 feet; Thence, leaving said East boundary North 88° 21' 02" West, 2,466.43 feet;

Thence, North 1° 04' 07" East, 40.00 feet to a point in the North boundary of said Section 19;

Thence, along said North boundary South 88° 55' 53" East, 2,465.80 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, the South 219.99 acres of said Fractional West half of Section 19.

ALSO EXCEPTING THEREFROM, an undivided seventy-five percent of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying said land of that may be produced therefrom including, without limiting the generality of the foregoing, all petroleum, oil, natural gas and products derived therefrom, as reserved by Southern Pacific Land Company, a corporation, in the Deed recorded January 15, 1965, in Book 5120, Page 351 of Official Records, as Document No. 3763.

ALSO EXCEPTING THEREFROM, undivided twelve and one-half per cent of one hundred per cent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation in the corporation Grant Deed recorded June 23, 1971, in Book 5907, Page 623 of Official Records, as Document No. 49629.

ALSO EXCEPTING THEREFROM, an undivided one-half interest of an undivided twelve and one half percent of one hundred percent of all oil, gas, hydrocarbon substances and other minerals and mineral rights in, upon, under or pertaining to said property, or that may be produced therefrom, as reserved by Katherine Lynn McCarthy, also known as Kathryn Lynn McCarthy, in the Deed recorded June 30, 1982, in Book 7931 Page 656 Of Official Records, as Document No. 54633.

ALSO EXCEPTING THEREFROM, as reserved unto Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by said Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; this reservation applies to any and all of the Parcels described in this conveyance wherein Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, have a current interest in oil, gas, minerals and other hydrocarbons, as reserved in the Deed recorded November 16, 1984, as Document No. 84111479, Official Records.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

**PARCEL 150: APN: 078-130-07s:**

The South 219.99 acres of the Fractional West half of Section 19, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided seventy-five percent of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying said land of that may be produced therefrom including, without limiting the generality of the foregoing, all petroleum, oil, natural gas and products derived therefrom, as reserved by Southern Pacific Land Company, a corporation, in the Deed recorded January 15, 1965, in Book 5120, Page 351 of Official Records, as Document No. 3763.

ALSO EXCEPTING THEREFROM an undivided twelve and one-half percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation, in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Page 620 of Official Records, as Document No. 49628.

ALSO EXCEPTING THEREFROM, as reserved unto Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by said Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; this reservation applies to any and all of the Parcels described in this conveyance wherein Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, have a current interest in oil, gas, minerals and other hydrocarbons, as reserved in the Deed recorded November 16, 1984, as Document No. 84111479, Official Records.

**PARCEL 151: APN: 078-130-23s:**

The East half of Fractional Section 19, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the United States of America, in the Deed recorded May 17, 1966, in Book 5314, Page 60 of Official Records, as Document No. 37723, described as follows:

BEGINNING at the Northeast corner of said Section 19;

Thence, along the East boundary of said Section 19 the following courses and distances; South 0° 42' 11" West; 2647.87 feet to the East quarter corner of said Section 19;

Thence, South 0° 42' 13" West, 2648.06 feet to the Southeast corner of said Section 19;

Thence, along the South boundary of said Section 19 North 89° 02' 13" West, 483.32 feet;

Thence, leaving said South boundary North 0° 53' 46" East, 5221.69 feet;

Thence, North 88° 40' 25" West, 2173.94 feet to a point in the West boundary of the East half of said Section

19; Thence, along said West boundary North 0° 37' 29" East, 65.00 feet to the North quarter corner of said Section 19;

Thence, along the North boundary of said Section 19 South 88° 56' 14" East, 2639.70 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM that portion conveyed to Westlands Water District in the Deed recorded February 18, 1977, in Book 6743, Page 213 of Official Records, as Document No. 16643, described as follows:

COMMENCING, for reference at a point in the West boundary of the East half of said Section 19 distant there along South 0° 37 29" West, 65.00 feet from the North quarter corner of said Section 19;

thence (1) along the boundary of the 61.18-acre parcel of land described as Parcel One in the Deed to the United States of America recorded May 17, 1966, in Book 5314, Page 60 as Document No. 37723, Fresno County Records, South 88° 40' 25" East, 1933. 94 feet to the TRUE POINT OF BEGINNING;

thence continuing along said boundary the following two courses:

(2) South 88° 40' 25" East, 240.00 feet and (3) South 0° 53' 46" West, 188.00 feet;

thence (4) leaving said boundary, North 88° 44' 25" West, 240.00 feet;

thence (5) North 0° 53' 46" West, 188.00 feet to the TRUE POINT OF BEGINNING.

The interest of Westlands Water District has since passed to and is now held by the United States of America by Deed recorded January 9, 1979, in Book 7195, Page 392 of Official Records, as Document No. 2677.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 152: APN: 078-130-11s:**

The Southwest quarter of Section 20, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances on, in or under said land, as reserved by Naida Richart, also known as Naida Richart Geisler, and Colleen Richart, also known as Colleen Richart Copher and Delna Weil, in the Deed recorded December 17, 1971, in Book 5969, Page 97 of Official Records, as Document No. 101367.

ALSO EXCEPTING THEREFROM, as reserved unto Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by said Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; this reservation applies to any and all of the Parcels described in this conveyance wherein Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, have a current interest in oil, gas, minerals and other hydrocarbons, as reserved in the Deed recorded November 16, 1984, as Document No. 84111479, Official Records.

**PARCEL 153: APN: 078-140-02s:**

The Northwest quarter of the Northwest quarter of Section 20, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed to the United States of America, in the Deed recorded April 24, 1967, in Book 5431, Page 644 of Official Records, as Document No. 27583, described as follows:

BEGINNING, at the Northwest corner of said Section 20;

thence along the North boundary of said Section 20, South 89° 22' 04" East, 1195.00 feet;

thence leaving said North boundary South 0° 48' 56" West, 40.00 feet;

thence South 88° 53' 53" West, 1195.51 feet to a point in the West boundary of said Section 20; thence along said West boundary North 0° 42' 11" East, 80.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, that portion conveyed to Westlands Water District, in the Deed recorded October 27, 1970, in Book 5831, Page 557 of Official Records, as Document No. 75568, described as follows:

BEGINNING, at the Southwest corner of the 1.65-acre parcel of land described in the Deed to the United States of America recorded April 24, 1967, in Book 5431, Page 644 of Official Records, Document No. 27583, said corner being a point in the West line of said Section that bears South 0° 42' 11" West, 80.00 feet from the Northwest corner of said Section;

Thence, (1) along the South boundary of said 1.65-acre Parcel, North 88° 53' 53" East, 60.03 feet to a point in the East line of the West 60 feet of said Section;

Thence, (2) along said East line, South 0° 42' 11" West, 186.89 feet;

Thence, (3) North 89° 17' 49" West, 60.00 feet to a point in said West line of said Section;

Thence, (4) along said West line, North 0° 42' 11" East, 185.00 feet to the POINT OF BEGINNING.

The interest of Westlands Water District has since passed to and is now held by the United States of America by Deed recorded August 31, 1971, in Book 5932, Page 452 of Official Records, as Document No. 70706.

ALSO EXCEPTING THEREFROM, 50% of all crude oil, petroleum, gas brea, asphaltum and other kindred substances, without the right of surface entry, as reserved by Howard Lynn Hardman, Jr., in the Deed recorded January 10, 1977, in Book 6721 Page 98 of Official Records, AS Document No. 2539.

20039.001/Capstone-Westlands Legal Description

Westlands - Pru Legal Description

ALSO EXCEPTING THEREFROM, as reserved unto Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by said Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; this reservation applies to any and all of the Parcels described in this conveyance wherein Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, have a current interest in oil, gas, minerals and other hydrocarbons, as reserved in the Deed recorded November 16, 1984, as Document No. 84111479, Official Records.

## PARCEL 154: APN: 078-140-04s:

The Southwest quarter of the Northwest quarter of Section 20, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM one half of all oil, gas and mineral and other hydrocarbon substances, as reserved by Pauline Hart, in the Deed recorded August 13, 1974, in Book 6335, Page 24 of Official Records, as Document No. 61076.

ALSO EXCEPTING THEREFROM, as reserved unto Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by said Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; this reservation applies to any and all of the Parcels described in this conveyance wherein Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, have a current interest in oil, gas, minerals and other hydrocarbons, as reserved in the Deed recorded November 16, 1984, as Document No. 84111479, Official Records.

## PARCEL 155: APN: 078-140-05:

The Southeast quarter of the Northwest quarter of Section 20, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, as reserved unto Donald C. McCarthy and Dorothy B. McCarthy;

Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, an undivided 50% interest in and to any oil, gas, minerals and other hydrocarbon substances currently owned by said Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; this reservation applies to any and all of the Parcels described in this conveyance wherein Donald C. McCarthy and Dorothy B. McCarthy; Leland McCarthy and Curtis Darling, as Trustees under Trust Agreement dated June 9, 1971, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy; and Curtis Darling, as Trustee under Trust Agreement dated March 15, 1977, for the benefit of Timothy Francis McCarthy, Kelly McCarthy, Daniel McCarthy and Michael McCarthy, have a current interest in oil, gas, minerals and other hydrocarbons, as reserved in the Deed recorded November 16, 1984, as Document No. 84111479, Official Records.

**PARCEL 156: APN: 078-140-06s AND 07s:**

The Northeast quarter of the Northwest quarter of Section 20, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided fifty percent of one hundred percent of all oil, gas and other hydrocarbons and minerals on, in or under said land as reserved by Anderson, Clayton & Co., a Delaware corporation, in the Corporation Grant Deed recorded June 23, 1971, in Book 5907, Page 620 of Official Records, Document No. 49628.

**PARCEL 157: APN: 038-141-59s:**

A single parcel of land according to the Certificate of Compliance, PLA 05-13(a), recorded May 11, 2007, as Document No. 2007-0093874 of Official Records of Fresno County, described as follows:

The West 1,344.4 feet of the Southwest quarter of Section 15, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion described as follows:

BEGINNING at the Southwest corner of said Section 15;

Thence, (1) Northerly, along the West boundary of said Section 15, a distance of 50 feet; Thence, (2) South 87° 34' 31" East, a distance of 535.37 feet;

Thence, (3) Southeasterly along the arc of a tangent curve, concave to the Northeast (having a 37,950-foot radius, a radius point which bears North 02° 25' 29" East and a central angle of 01° 13' 10") a distance of 807.70 feet; Thence, (4) South 88° 47' 41" East, parallel with and 30 feet north of the South boundary of the said Southwest Quarter, to a point on the East boundary of the said Southwest Quarter;

Thence, (5) Southerly along said East boundary, a distance of 30 feet to the South quarter corner of said Section 15;

Thence, (6) North 88° 47' 41" West, along said South boundary of the Southwest Quarter, a distance of 2646.07 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM, all of the grantors right, title and interest in and to all oil, gas and other hydrocarbon substances and minerals located therein and thereunder, TOGETHER WITH the right to enter on said land for the purpose of exploring, drilling for, or producing said oil, gas, hydrocarbon substances or minerals, and the right to do all things reasonably and usually necessary for such purposes, all as reserved by William Helm and Lee Wallace helm, his wife, and Frank M. Helm, in the Deed recorded November 10, 1958, in Book 4134, Page 413 of Official Records, as Document No. 72780.

### PARCEL 157A: APN: 038-130-05 (PORTION OF):

A non-exclusive easement for well site and power poles and associated power lines, pipelines and other necessary fixtures as granted to Farid Assemi, et al, by instrument recorded June 29, 2005, as Document No. 2005-0144188, and amended by instrument recorded September 1, 2010, as Document No. 2010-0112982, both of Official Records over and across the following described property:

A 50-foot by 50-foot square around the existing irrigation well located in the Northeast corner of the North half of the Northeast quarter of Section 17, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

### PARCEL 158: APN: 068-071-07s:

A single parcel of land according to that certain Certificate Approving a Lot Line Adjustment, Certificate No. 04-21, recorded December 29, 2004, as Instrument No. 2004-0290225 of Official Records, and by Deed recorded February 7, 2014, as Document No. 2014-0016788-00, of Official Records, being described as follows:

The Southwest quarter of Section 14, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM said Southwest quarter to an undivided one-half interest in all minerals (including therein, oil, gas and other hydrocarbon substances) in or under said lands, or any of them, TOGETHER WITH, all rights necessary or incidental to reducing said minerals to possession for commercial purposes, including the right to enter on said lands, or any of them, explore for, extract, store, transport and/or remove said minerals by appropriate and usual methods, SUBJECT to the term and conditions contained therein, all as reserved by the Estate of Paul B. Hofer, deceased, for the use and benefit of the heirs and devisees of said decedent, and the successors and assigns of such heirs and devisees, in the Deed recorded August 25, 1959, in Book 4265, Page 18 of Official Records, as Document No. 59230.

ALSO EXCEPTING THEREFROM all of grantor's right, title and interest in and to all oil, gas and minerals, as reserved by Giffen, Inc., in the Deed recorded August 5, 1974, in Book 6331, Page 142 of Official Records, as Document No. 58512.

### PARCEL 159: APN: 050-030-22s:

All of Fractional Section 1, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for,

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 160: APN: 050-030-43s:**

The Southwest quarter of Section 11, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and minerals lying in and under said real property, TOGETHER WITH, all easements and right of ways necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property; and also the right to drill for, produce and use water from all the said real property in connection with its drilling or mining operations thereon, SUBJECT to the terms and conditions contained therein, all as reserved by Kings County Development Company, a California Corporation, in the Deed recorded July 25, 1947 in Book 2561, Page 220 of Official Records, as Document No. 39422.

ALSO EXCEPTING THEREFROM, 50% of all oil, gas and other hydrocarbons and minerals now owned by Grantors, TOGETHER WITH all easements and rights necessary or convenient for testing, exploration, production, storage and transportation thereof, as reserved by John S. Raso, et al, in the Deed recorded August 3, 1979, in Book 7342, Page 548 of Official Records, as Document No. 90068.

**PARCEL 161: APN: 050-060-29s:**

The Northwest quarter of Section 20, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, minerals and other hydrocarbon substances in and under said land TOGETHER WITH the right of ingress and egress for purpose of drilling for same, as excepted in the Deed executed by W. R. Farrell Company, to Wright Farms Company, a corporation, recorded October 31, 1956, in Book 3839, Page 333 of Official Records, as Document No. 76915.

**PARCEL 162: APN: 050-060-30s:**

The Northeast quarter of Section 20, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM 90/100th of all oil, gas, and other hydrocarbons and other hydrocarbons and minerals now and at any time hereinafter in and under that may be produced from said lands, as conveyed by W. R. Farrell Company, a California corporation to W.R. Farrell by Deed recorded June 7, 1949, in Book 2737, Page 291 of Official Records, as Document No. 27923.

ALSO EXCEPTING THEREFROM 10/100th of all oil, gas and other hydrocarbons and minerals now and at any time hereinafter in and under that may be produced from said lands, as conveyed by W. R. Farrell Company, a California corporation to Earl J. Fenston, by Deed recorded June 7, 1949, in Book 2762, Page 112 of Official Records, as Document No. 27925.

**PARCEL 163: APN: 050-060-43s:**

The Southeast quarter of Section 20, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXCEPTING THEREFROM the Southwest quarter of the Southwest quarter of the Southeast quarter of said Section 20, as conveyed by Five Points Ranch, Inc. to Five Points Ginning Co., a California corporation, in the Deed recorded April 7, 1960, in Book 4370, Page 396 of Official Records, as Document No. 25680.

ALSO EXCEPTING THEREFROM that portion conveyed by Five Points Ranch Inc. to Ranch El Dorado, a California corporation, in the Deed recorded February 3, 1988, as Document No. 88012586, of Official Records, described as follows:

BEGINNING at the Northwest corner of the Southwest quarter of the Southwest quarter of the Southeast quarter of said Section 20, which lies 660 feet, more or less, North of the South quarter corner of said Section;

Thence, North along the West line of the said Southeast quarter, 827 feet; Thence, East parallel to the South line of said Section, 1487 feet;

Thence, South, parallel to the West line of the said Southeast quarter of said Section, 1487 feet more or less to a point lying on the South line of said Section;

Thence, West along said South line 827 feet, more or less, to the Southeast corner of the Southwest quarter of the Southwest quarter of the Southeast quarter of said Section;

Thence, North along the East line of said Southwest quarter of the Southwest quarter of the Southeast quarter of said Section, 660 Feet, more or less, to the Northeast corner of said Southwest quarter of the Southwest quarter of the Southeast quarter of said Section;

Thence, West along the North line of said Southwest quarter of the Southwest quarter of the Southeast quarter of said Section, 660 feet, more or less, to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM all oil, gas, minerals and other hydrocarbon substances in and under said land TOGETHER WITH the right of ingress and egress for purpose of drilling for same, as excepted in the Deed executed by W. R. Farrell Company, to Wright Farms Company, a corporation, recorded October 31, 1956, in Book 3839, Page 333 of Official Records, as Document No. 76915.

**PARCEL 164: APN: 050-060-41s:**

That portion of the Southwest quarter of Section 20, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, as conveyed by Five Points Ranch, Inc., a California corporation to CMA, a California general partnership, in the Deed recorded September 19, 1988, as Document No. 88103835 of Official Records, more particularly described as follows:

BEGINNING, at the Southwest corner of the said Section 20;

Thence, Northerly along the West line of said Section 20, a distance of 1,090.00 feet to the TRUE POINT OF BEGINNING;

Thence, Northerly continuing along the said West Section line, 1,550 feet more or less to the Northwest corner of the said Southwest quarter;

Thence, Easterly along the North line of the said Southwest quarter, 2,640 feet more or less to the Northeast corner of the said Southwest quarter;

Thence, Southerly along the East line of the said Southwest quarter, 2,200 feet more or less to a point on a line lying 440.00 feet Northerly from the South line of the said Section 20;

Thence, Westerly along a line parallel to and 440.00 feet distant from the South line of said Section 20, a

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

distance of 1,740 feet more or less to a point lying on a line lying 900.00 feet Easterly from the West line of said Section 20;

Thence, Northerly along a line parallel to and 900.00 feet distant from the West line of said Section 20, a distance of 650 feet more or less to a point on a line lying 1,090.00 feet Northerly from the South line of said Section 20; Thence, Westerly along a line parallel to and 1,090.00 feet distant from the South line of said Section 20, a distance of 900 feet more or less to the TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM 90/100th of all oil, gas, and other hydrocarbons and other hydrocarbons and minerals now and at any time hereinafter in and under that may be produced from said lands, as conveyed by W. R. Farrell Company, a California corporation to W.R. Farrell by Deed recorded June 7, 1949, in Book 2737, Page 291 of Official Records, as Document No. 27923.

ALSO EXCEPTING THEREFROM 10/100th of all oil, gas and other hydrocarbons and minerals now and at any time hereinafter in and under that may be produced from said lands, as conveyed by W. R. Farrell Company, a California corporation to Earl J. Fenston, by Deed recorded June 7, 1949, in Book 2762, Page 112 of Official Records, as Document No. 27925.

EXCEPTING FROM the Northeast quarter of the Southwest quarter of said Section 20, an undivided 2/3 interest in and to all oil, gas, other hydrocarbons and other commercially valuable substances which may be produced through wells, and mineral rights at this date owned by us in, on or under said land, TOGETHER WITH, an undivided right in any right of ingress and egress thereto and rights incidental or necessary to remove the same owned by us, including, but not limited to said land, all as reserved by Walter R. Farrell and Lillian Farrell, husband and wife to Del Runyon, a married man, and Nancy J. Hayhurst, an unmarried woman, in equal shares, in the Quitclaim Deed recorded September 12, 1974, in Book 6346, Page 234 of Official Records, as Document No. 69642.

**PARCEL 165: APN: 050-070-24s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 91-46, recorded August 30, 1993, as Document No. 93131543, of Official Records, and by Deed recorded November 30, 1993, as Document No. 93184978, of Official Records, being described as follows:

The Northwest quarter of Section 23, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and minerals lying in and under said real property, TOGETHER WITH, all easements and right of ways necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property; and also the right to drill for, produce and use water from all the said real property in connection with its drilling or mining operations thereon, SUBJECT to the terms and conditions contained therein, all as reserved by Kings County Development Company, a California Corporation, in the Deed recorded July 25, 1947 in Book 2561, Page 220 of Official Records, as Document No. 39422.

**PARCEL 166: APN: 050-070-33s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 91-46, recorded August 30, 1993, as Document No. 93131543, of Official Records, and by Deed recorded December 31, 1997, as Document No. 97172040, of Official Records, being described as follows:

The Southeast quarter of Section 23, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXCEPTING THEREFROM, the East half of the Southeast quarter of the Southeast quarter of said Section 23, as conveyed to Producers Cotton Oil Company, in the Deed recorded June 18, 1973, in Book 6177, Page 953 of Official Records, as Document No. 55840.

ALSO EXCEPTING THEREFROM, the West half of the Southeast quarter of the Southeast quarter of said Section 23, as conveyed to Producers Cotton Oil Company, in the Deed recorded October 1, 1980, in Book 7595, Page 71 of Official Records, as Document No. 94210.

ALSO EXCEPTING THEREFROM, all oil, gas and minerals lying in and under said real property, TOGETHER WITH, all easements and right of ways necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property; and also the right to drill for, produce and use water from all the said real property in connection with its drilling or mining operations thereon, SUBJECT to the terms and conditions contained therein, all as reserved by Kings County Development Company, a California Corporation, in the Deed recorded July 25, 1947 in Book 2561, Page 220 of Official Records, as Document No. 39422, and as modified by the Deed recorded March 20, 1951, in Book 2988, Page 183 of Official Records, as Document No. 16660.

**PARCEL 167: APN: 050-070-36s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 91-46, and the Deed recorded November 30, 1993, as Document No. 93184978, of Official Records, described as follows:

The Northwest quarter of Section 14, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM fifty percent (50%) interest to any oil, gas, minerals, hydrocarbons, or geothermal resources located on or underneath the surface of such real property together with fifty percent (59%) of Grantor's rights to explore for and extract such materials or resources, as reserved in the Deed recorded May 22, 1992, as Document No. 92-071000 of Official Records.

**PARCEL 167A: APN: 050-070-24s, 38st & 39s (PORTIONS OF):**

A non-exclusive easement for access, ingress and egress affecting the following:

The Westerly 30 feet of Section 23, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, as conveyed by Paul E. Diener, an unmarried man in the Grant of Easement recorded May 22, 1992, as Document No 92071001, to be appurtenant to Section 14, Township 17 South, Range 16 East, Mount Diablo Base and Meridian.

**PARCEL 168: APN: 050-070-35s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 91-46, and the Deed recorded November 30, 1993, as Document No. 93184977, of Official Records, described as follows:

The Southwest quarter of Section 14, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM fifty percent (50%) interest to any oil, gas, minerals, hydrocarbons, or geothermal resources located on or underneath the surface of such real property together with fifty percent (59%) of Grantor's rights to explore for and extract such materials or resources, as reserved in the Deed recorded May 22, 1992, as Document No. 92-071000 of Official Records.

**PARCEL 168A: APN: 050-070-24s, 38st & 39s (PORTIONS OF):**

A non-exclusive easement for access, ingress and egress affecting the following:

The Westerly 30 feet of Section 23, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, as conveyed by Paul E. Diener, an unmarried man in the Grant of Easement recorded May 22, 1992, as Document No 92071001, to be appurtenant to Section 14, Township 17 South, Range 16 East, Mount Diablo Base and Meridian.

**PARCEL 169: APN 050-100-03s:**

The Southeast quarter of Fractional Section 30, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, all oil, gas, other hydrocarbons, minerals and metals, in, on or underlying said real property TOGETHER WITH the right of ingress and egress to and from said real property for the purposes of exploring for, drilling for, producing, storing and removing, and all of said substances, TOGETHER WITH all other rights which may be necessary or convenient in the exercise of the rights specifically reserved, all as reserved by Bess E. Schaefer, in the Deed recorded June 5, 1967, in Book 5445, Page 237 of Official Records, as Document No. 36886.

**PARCEL 170: APN 050-100-28s:**

The Southwest quarter of Fractional Section 30, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 8/100ths of all oil, gas, and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to Earl J. Fenston, in the Deed recorded June 7, 1949, in Volume 2751, Pages 323 & 324 of Official Records, as Document No. 7927 and in the Deed recorded September 1, 1949, in Volume 2799, Pages 15 & 16 of Official Records, as Document No. 41510.

ALSO EXCEPTING FROM, the Northeast quarter of said Section 30, an undivided 82/100ths of all oil, gas and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to W. R. Farrell, in the Deed recorded June 7, 1949, in Volume 2760, Page 443 of Official Records, as Document No. 27929 and in the Deed recorded September 1, 1949, in Volume 2774, Pages 225 & 226 of Official Records, as Document No. 41506.

ALSO EXCEPTING FROM, the Northeast quarter of said Section 30, an undivided 10/100ths of all oil, gas and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to Earl J. Fenston, in the Deed recorded June 7, 1949, in Volume 2773, Pages 105 & 106 of Official Records, as Document No. 27930 and in the Deed recorded September 1, 1949, in Volume 2799, Pages 13 & 14 of Official Records, as Document No. 41512.

ALSO EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances in and under said land TOGETHER WITH the right of ingress and egress for the purpose of drilling for same, as reserved by W. R. Farrell Company, in the Deed recorded October 31, 1956, in Book 3839, Page 333 of Official Records, as Document No. 76915.

**PARCEL 171: APN: 050-100-26s:**

The North-half of Fractional Section 30, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM that portion described as follows:s:

BEGINNING at the Northeast corner of said Section 30; Thence, due West along Mt. Whitney Avenue, a distance of 530 feet; Thence, due South, a distance of 500 feet; Thence, due East, a distance of 500 feet; Thence, due South, a distance of 950 feet; Thence, due East, a distance of 30 feet; Thence, due North, a distance of 1450 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM that portion described as follows:

BEGINNING, at a point 1450 feet South of the Northeast corner of said Section 30; Thence, from that point due West, a distance of 180 feet; Thence, due South, a distance of 220 feet; thence due East, a distance of 180 feet; Thence, due North, to the POINT OF BEGINNING a distance of 220 feet.

ALSO EXCEPTING FROM, the Northwest quarter of said Section 30, all oil, gas petroleum, and other hydrocarbon substances and minerals located in, under and upon said land, TOGETHER WITH the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas, and other hydrocarbon substances and minerals, TOGETHER WITH the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT to the terms and conditions contained therein, all as reserved by G. W. McNear, Inc., a corporation, in the Deed recorded December 28, 1948, in Book 2692, Pages 437 & 438 of Official Records, as Document No. 59462.

ALSO EXCEPTING FROM, the Northeast quarter of said Section 30, an undivided 8/100ths of all oil, gas and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to Earl J. Fenston, in the Deed recorded June 7, 1949, in Volume 2728, Pages 159 & 160 of Official Records, as Document No. 27928 and in the Deed recorded September 1, 1949, in Volume 2799, Pages 14 & 15 of Official Records, as Document No. 41511.

ALSO EXCEPTING FROM, the Northeast quarter of said Section 30, an undivided 82/100ths of all oil, gas and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to W. R. Farrell, in the Deed recorded June 7, 1949, in Volume 2760, Page 443 of Official Records, as Document No. 27929 and in the Deed recorded September 1, 1949, in Volume 2774, Pages 225 & 226 of Official Records, as Document No. 41506.

ALSO EXCEPTING FROM, the Northeast quarter of said Section 30, an undivided 10/100ths of all oil, gas and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to Earl J. Fenston, in the Deed recorded June 7, 1949, in Volume 2760, Pages 105 & 106 of Official Records, as Document No. 27930.

ALSO EXCEPTING FROM, the Northeast quarter of said Section 30, an undivided 10/100ths of all oil, gas and other hydrocarbons and minerals now and at any time hereafter in and under and that may be produced from said land, as conveyed by W. R. Farrell Company, to Earl J. Fenston, in the Deed recorded June 7, 1949, in Volume 2760, Pages 105 & 106 of Official Records, as Document No. 27930 and in the Deed recorded September 1, 1949, in Volume 2799, Pages 13 & 14 of Official Records, as Document No. 41512.

ALSO EXCEPTING THEREFROM, all oil, gas, minerals and other hydrocarbon substances in and under said land TOGETHER WITH the right of ingress and egress for the purpose of drilling for same, as reserved by W. R. Farrell Company, in the Deed recorded October 31, 1956, in Book 3839, Page 333 of Official Records, as Document No. 76915.

**PARCEL 172: APN: 058-050-45s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 06-50, recorded October 12,

2007, as Document No. 2007-0189171, of Official Records, described as follows:

The North-half of Section 12, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in an unincorporated area of Fresno County, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the Northwest quarter of said Section 12, as conveyed in Deed recorded December 21, 2007 as Instrument No. 2007-225182 of Official Records.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, and other hydrocarbons and minerals in and under said land, as reserved by Adolph M. Domengine and Mary Edna Domengine, in the Deed recorded October 4, 1961, in Book 4618, Page 204, of Official Records, as Document No. 74020.

**PARCEL 173: APN: 060-020-25s:**

All that portion of Fractional Section 6, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plats thereof, lying East of the Canal conveyed to the United State of America in the Quitclaim Deeds recorded August 11, 1965, in Book 5203, Pages 558 and 560 of Official Records, as Document Nos. 64724 & 64725.

EXCEPTING THEREFROM, the Southeast quarter of the Southeast quarter of said Section, as described in the Deed recorded January 23, 1911, in volume 462, Page 297 of Deeds, as Document No. 1585.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, and other hydrocarbons and minerals in and under said land, as reserved by Adolph M. Domengine and Mary Edna Domengine, in the Deed recorded October 4, 1961, in Book 4618, Page 204 of Official Records, as Document No. 74020.

ALSO EXCEPTING THEREFROM, any and all remaining oil, gas and other hydrocarbon substances and minerals now known to exist or hereafter discovered upon, within or underlying said land not previously reserved, as reserved by CMA, a California general partnership, in the Deed recorded November 18, 2021, as Document No. 2021-0191297.

**PARCEL 174: APN: 050-030-45s:**

The Northwest quarter of Section 11, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 175: APN: 050-030-48s:**

The Southeast quarter of Section 11, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas and minerals lying in and under said real property, TOGETHER

WITH, all easements and right of ways necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property; and also the right to drill for, produce and use water from all the said real property in connection with its drilling or mining operations thereon, SUBJECT to the terms and conditions contained therein, all as reserved by Kings County Development Company, a California Corporation, in the Deed recorded July 25, 1947 in Book 2561, Page 220 of Official Records, as Document No. 39422.

ALSO EXCEPTING THEREFROM, 50% of all oil, gas and other hydrocarbons and minerals now owned by Grantors, TOGETHER WITH all easements and rights necessary or convenient for testing, exploration, production, storage and transportation thereof, as reserved by John S. Raso, et al, in the Deed recorded August 3, 1979, in Book 7342, Page 548 of Official Records, as Document No. 90068.

### PARCEL 176: APNs: 050-030-46s AND 47s:

The Northeast quarter of Section 11, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

ALSO EXCEPTING FROM the Southeast quarter of the Northeast quarter and the South half of the Southwest quarter of the Northeast quarter of said Section 11, all oil, gas and minerals lying in and under said real property, TOGETHER WITH, all easements and right of ways necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property; and also the right to drill for, produce and use water from all the said real property in connection with its drilling or mining operations thereon, SUBJECT to the terms and conditions contained therein, all as reserved by Kings County Development Company, a California Corporation, in the Deed recorded July 25, 1947 in Book 2561, Page 220 of Official Records, as Document No. 39422.

ALSO EXCEPTING FROM the Southeast quarter of the Northeast quarter and the South half of the Southwest quarter of the Northeast quarter of said Section 11, 50% of all oil, gas and other hydrocarbons and minerals now owned by Grantors, TOGETHER WITH all easements and rights necessary or convenient for testing, exploration, production, storage and transportation thereof, as reserved by John S. Raso, et al, in the Deed recorded August 3, 1979, in Book 7342, Page 548 of Official Records, as Document No. 90068.

### PARCEL 177: APN: 060-020-34s AND 49s:

That certain piece or parcel of land as described in the Deed recorded February 28, 1991, as Document No. 91024319 of Official Records, as follows:

The South 160 acres of the Fractional West-half of Section 7, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

to the Official Plat thereof.

ALSO EXCEPTING THEREFROM, all iron, coal, lignite, asphaltum, petroleum and other mineral oils, gypsum, gold, silver, cinnabar, lead, time, copper, limestone, marble, and all other deposits and substances subject of location or entry as mineral or mineral land under the laws of Congress, TOGETHER WITH, the exclusive right to prospect upon and in the said land for any or all of the said minerals or substances existing or supposed to exist thereon or therein, and to mine for and remove any or all of said minerals or substances found or to be found by any person or persons upon or within the said land, TOGETHER WITH, the right, at all times, to enter upon the said land for the purpose of prospecting for, mining for, or removing any or all of the said minerals or substances therein or thereon, and to use so much of the said land as may be necessary for the convenient and proper operation of such prospecting, mining, or removal or minerals and other substances, all as reserved by Southern Pacific Railroad Company, in the Deed recorded January 16, 1904, in Volume 308, Pages 453, 454, 455 & 456 of Deeds, as Document No. 826, SAID INTEREST WAS SUBSEQUENTLY conveyed by Southern Pacific Land Company, a California corporation to Southern Pacific Company, a Kentucky corporation, in the Deed recorded February 5, 1943, in Volume 2055, Page 474 of Official Records, as Document No. 4232.

**PARCEL 178: APN: 060-020-51s:**

That certain piece or parcel of land as described in the Deed recorded February 18, 1997, as Document No. 97022827 of Official Records, as follows:

The West half of Fractional Section 7, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, as.

EXCEPTING THEREFROM the North 160 acres thereof and the South 160 acres thereof.

ALSO EXCEPTING THEREFROM, all iron, coal, lignite, asphaltum, petroleum and other mineral oils, gypsum, gold, silver, cinnabar, lead, time, copper, limestone, marble, and all other deposits and substances subject of location or entry as mineral or mineral land under the laws of Congress, TOGETHER WITH, the exclusive right to prospect upon and in the said land for any or all of the said minerals or substances existing or supposed to exist thereon or therein, and to mine for and remove any or all of said minerals or substances found or to be found by any person or persons upon or within the said land, TOGETHER WITH, the right, at all times, to enter upon the said land for the purpose of prospecting for, mining for, or removing any or all of the said minerals or substances therein or thereon, and to use so much of the said land as may be necessary for the convenient and proper operation of such prospecting, mining, or removal or minerals and other substances, all as reserved by Southern Pacific Railroad Company, in the Deed recorded January 16, 1904, in Volume 308, Pages 453, 454, 455 & 456 of Deeds, as Document No. 826, SAID INTEREST WAS SUBSEQUENTLY conveyed by Southern Pacific Land Company, a California corporation to Southern Pacific Company, a Kentucky corporation, in the Deed recorded February 5, 1943, in Volume 2055, Page 474 of Official Records, as Document No. 4232.

**PARCEL 179: APN: 058-050-35s:**

All of Fractional Section 2, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, the South 275 feet of the West 350 feet of the Southeast Quarter, as conveyed to Westlands Water District, in the Deed recorded December 6, 1978, in Book 7173, Page 854 of Official Records, as Document No. 135538.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, and other hydrocarbons and minerals in and

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

under said land, as reserved by Adolph M. Domengine and Mary Edna Domengine, in the Deed recorded October 4, 1961 in Book 4618, Page 204, of Official Records, as Document No. 74020.

**PARCEL 180: APN: 058-050-44s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 06-50, recorded October 12, 2007, as Document No. 2007-0189171, of Official Records, and the Deed recorded December 21, 2007, as Document No. 2007-0225182, of Official Records, described as follows:

The Northwest quarter of Section 12, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, one-half of all oil, gas, and other hydrocarbons and minerals in and under said land, as reserved by Adolph M. Domengine and Mary Edna Domengine, in the Deed recorded October 4, 1961 in Book 4618, Page 204, of Official Records, as Document No. 74020.

**PARCEL 181: APN: 058-050-26s:**

The Southeast quarter of Section 12, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, 70% of all crude oil, petroleum, gas, brea, asphaltum, and all kindred substances and other minerals under an in said land, as reserved in the Deed from Mary J. Kraus, formerly Mary J. Ladd to Five Points Ranch, Inc., a California corporation, recorded October 10, 1962, in Book 4773, Page 3 of Official Records, as Document No. 77932 .

**PARCEL 182: APN: 060-020-43s:**

That portion of Section 6, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, lying Westerly of tract of land conveyed to the United States of America, by Deed recorded August 11, 1965, in Book 5203 of Official Records, Page 560, as Document No. 64725.

EXCEPTING THEREFROM, that certain tract of land conveyed to Westlands Water District in the Deed recorded June 18, 1979, in Book 7308, Page 24 of Official Records, as Document No. 69499.

ALSO EXCEPTING THEREFROM, one-half of all oil, gas, and other hydrocarbons and minerals in and under said land, as reserved by Adolph M. Domengine and Mary Edna Domengine, in the Deed recorded October 4, 1961, in Book 4618, Page 204 of Official Records, as Document No. 74020.

ALSO EXCEPTING THEREFROM, any and all remaining oil, gas and other hydrocarbon substances and minerals now known to exist or hereafter discovered upon, within or underlying said land not previously reserved, as reserved by Christian P. Diener and Matthew E. Diener, Co-Trustees of the Three D Trust dated 10/20/1997, in the Deed recorded November 18, 2021, as Document No. 2021-0191289 of Official Records.

**PARCEL 183: APN: 017-080-84s:**

That portion of said Section 36, Township 14 South, Range 12 East of Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, lying South and Southeast of the South bank of Panoche Creek, shown as the 248.17 acre parcel on the Certificate of Waiver of Parcel Map No. 15-04, recorded November 2, 2016 as Instrument No. 2016-0151916 of Official Records.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or

Westlands - Pru Legal Description

conveyed of record.

**PARCEL 184: APN: 027-210-20s:**

The Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, the North 30 Acres of the Northwest quarter of the Southwest quarter and the South 30 acres of the Southeast quarter of the Southwest quarter.

ALSO EXCEPTING THEREFROM, all that portion thereof described as follows:

BEGINNING, at the Northeast corner of the Southwest quarter of said Section, said Northeast corner bears South 88° 10' 54" East 2648.29 feet from the West quarter corner of said Section, said West quarter corner being at coordinates Y equals 469 443.87 feet and X equals 1 529 376.99 feet;

thence (1) along the East line of the Southwest quarter of said Section, South 1° 27' 52" West 233.28 feet;

thence (2) along a line parallel with and 204 feet Southwesterly measured at right angles from the centerline of the Department of Public Works Survey from Kings County line to the Merced County line, Road Vi-Fre-238-B (now Vi-Fre-5) North 45° 58' 00" West 347.17 feet to the North line of the Southwest quarter of said Section;

thence (3) along said North line South 88° 10' 54" East 255.68 feet to the POINT OF BEGINNING; as conveyed to the State of California by Deed recorded November 17, 1964 in Book 5094, Page 125 of Official Records, as Document No. 89575.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

**PARCEL 185: APN: 027-210-29s:**

All that portion of the hereinafter described property which lies South and West of the Southwesterly line of that certain Parcel conveyed to the State of California in the Deed recorded January 17, 1966, in Book 5264, Page 433 of Official Records, as Document No. 4021.

Lots A, B, C, D and Lots 1 to 128, inclusive of Panoche Acres, in the unincorporated area of the County of Fresno, State of California according to the map thereof recorded March 17, 1930, in Book 11, Page 3 of Plats, in the office of the County Recorder of said County.

TOGETHER WITH, all that portion of the Northwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, which lies South and West of the Southwesterly line of that certain Parcel conveyed to the State of California in the Deed recorded January 17, 1966, in Book 5264, Page 433 of Official Records, as Document No. 4021, which does not lie within the boundaries of Lots A, B, C, D and Lots 1 to 128, inclusive of Panoche Acres, in the unincorporated area of the County of Fresno, State of California according to the map thereof recorded March 17, 1930, in Book 11, Page 3 of Plats, in the office of the County Recorder of said County.

EXCEPTING THEREFROM, unto Evalyn R. Donihue, who acquired title as E. R. Donihue, one of the Grantors, all of her undivided one-half interest in and to all oil, gas, minerals, mineral deposits and natural gases and other hydrocarbon substances of every Rind or nature, together with full liberty at all times, for said Grantor, her heirs and assigns and their agents and workmen, to enter upon all or any part of said land, to

20039.001/Capstone-Westlands Legal Description

search for, tare, carry or pipe away from said land, any oil and gas found thereon, providing said Grantor, assigns, heirs and agents, fully compensate Grantee for any damages to said land by any and all oil operations. Said reservation of Grantor to vest in her during her natural life, and upon her death, to be granted to her husband Victor H. Donihue, and upon his death, to be granted to David Lee Askins and Karen Sue Askins. In the event Victor H. Donihue, husband of Grantor, should predecease her, or die in a simultaneous event, or within thirty (30) days of each other, then all interest of Grantor will be granted to David Lee Askins and Karen Sue Askins, all as excepted and reserved in the Deed recorded June 18, 1982, in Book 7925, Page 947 of Official Records, as Document No. 51166.

**PARCEL 186: APN: 027-210-32s (Portion):**

The East 220 feet of the South 660 feet of the South 30 acres of the Southeast quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

**PARCEL 187: APN: 027-210-33s (Portion):**

The East 110 feet of the West 550 feet of the North 660 feet of the North 25 Acres of the Northwest quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

**PARCEL 188: APN: 027-210-33s (Portion):**

The East 15 acres of the North 25 Acres of the Northwest quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, the East 10 acres thereof, as described in the Deed recorded April 25, 1980, in Book 7509, Page 793 of Official Records, as Document No. 42039.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

**PARCEL 189: APN's: 027-210-32s and 33s (Portion):**

The West 220 feet of the North 660 feet of the North 25 acres of the Northwest quarter of the Southwest quarter; and The West 440 feet of the East 1100 feet of the South 660 feet of the South 30 acres of the Southeast quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, as described in the Deed executed by Bertrand Survera, dealing with his sole and separate property, to David L. Askins, a single man, as to an undivided one-half interest and Larry T. Gage, a

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

married man as to an undivided one-half interest, recorded April 25, 1980, in Book 7509, Page 790 of Official Records, as Document No. 42037.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

### PARCEL 190: APN's: 027-210-32s and 33s (Portion):

The East 220 feet of the West 440 of the North 660 feet of the Northwest quarter of the Southwest quarter; and the West 440 feet of the East 660 feet of the South 660 feet of the South 30 acres of the Southeast quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, as described in the Deed executed by Josephine Delerio Raven, dealing with her sole and separate property, to David L. Askins, a single man, as to an undivided one-half interest and Larry T. Gage, a married man as to an undivided one-half interest, recorded April 25, 1980, in Book 7509, Page 792 of Official Records, as Document No. 42038.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

### PARCEL 191: APN: 027-210-33s (Portion):

The East 10 acres of the East 15 acres of the North 25 acres of the Northwest quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, as described in the Deed executed by ?Dora E. Carlson, to David L. Askins, a single man, as to an undivided one-half interest and Larry T. Gage, a married man as to an undivided one-half interest, recorded April 25, 1980, in Book 7509, Page 793 of Official Records, as Document No. 42039.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

### PARCEL 192: APN: 027-210-33s (Portion):

The North 30 acres of the Northwest quarter of the Southwest quarter, EXCEPTING the East 15 acres of the North 25 acres thereof, AND EXCEPTING the West 550 feet of the North 660 feet thereof, of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

### PARCEL 193: APN 027-210-32s (Portion):

The South 30 acres of the Southeast quarter of the Southwest quarter of Section 19, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

California according to the Official Plat thereof.

EXCEPTING THEREFROM, the East 1100 feet of the South 660 feet thereof.

EXCEPTING THEREFROM, all minerals, oils, gas, petroleum or other hydrocarbon substances within or underlying or which may be produced from said land, together with the perpetual right of ingress and egress for the purpose of drilling for, producing, mining, storing and removing the same, as previously reserved or conveyed of record.

**PARCEL 194: APN: 038-090-37s:**

The West half of Fractional Section 2, Township 16 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all that portion thereof conveyed to the County of Fresno, in the Deed recorded January 16, 1969, in Volume 5652, Page 76 of Official Records, as Document No. 3681, described as follows:

BEGINNING at the Northwest corner of said Section 2; thence

(1)    North 90° 00' 00" East, along the North boundary of said Section 2, a distance of 704.77 feet; thence

(2)    South 00° 00' 00" East, 40 feet; thence

(3)    Southwesterly along the arc of a tangent curve, concave to the Southeast (having a 660-foot radius, a radius point which bears South 00° 00' 00" East, and a central angle of 90° 23' 20") a distance of 1041.21 feet; thence

(4)    South 89° 36' 40" West, 40 feet to a point on the West boundary of said Section 2; thence

(5)    North 00° 23' 20" West, along said West boundary, a distance of 704.77 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM an undivided one-fourth of all minerals, oil, gas and other hydrocarbon substances lying in, upon, under or which may be produced, saved and sold from said real property, as reserved by John Latham, Bernice Latham and E. M. Prescott, as executors of the estate of Blanche B. Sample, aka Mrs. T. N. Sample, deceased, in the Deed recorded May 24, 1963, in Book 4864, Page 823 of Official Records, as Document No. 42548.

ALSO EXCEPTING THEREFROM an undivided one-fourth of all minerals, oil, gas and other hydrocarbon substances lying in, upon, under or which may be produced, saved and sold from said real property, as reserved by Sullivan & Gragnani, Inc. a California corporation, in the Deed recorded February 17, 1969, in Book 5661, Page 925 of Official Records, as Document No. 10998.

**PARCEL 195: APN: 038-090-36s:**

The East half of Fractional Section 2, Township 16 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

ALSO EXCEPTING THEREFROM an undivided one-fourth of all minerals, oil, gas and other hydrocarbon substances lying in, upon, under or which may be produced, saved and sold from said real property, as reserved by John Latham, Bernice Latham and E. M. Prescott, as executors of the estate of Blanche B. Sample, aka Mrs. T. N. Sample, deceased, in the Deed recorded May 24, 1963, in Book 4864, Page 823 of Official Records, as Document No. 42548.

ALSO EXCEPTING THEREFROM, any and all improvements and fixtures located on said land, which

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

said improvements and fixtures are and shall remain real property, according to that certain Grant Deed (Improvements Only), recorded December 31, 2018, as Document No. 2018-0154556, of Official Records.

**PARCEL 196: APN: 040-030-34s AND 41s:**

The South one-half of Section 10, Township 16 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the East 100 feet of said land, as conveyed to the United States of America in the Deed recorded April 26, 1972, in Book 6016, Page 474, Document No. 37493, Official Records.

ALSO EXCEPTING THEREFROM the South 645 feet of the West 580 feet of said Section; and The North 682 feet of the South 1327 feet of the West 390 feet of said Section, as conveyed in the Deed recorded August 20, 1984, as Document No. 84079341, of Official Records.

ALSO EXCEPTING THEREFROM one-half of all oil, gas and other hydrocarbon substances and one-half of all minerals, whether metallic or non-metallic, in, under or on said real property or any parts or part thereof or which may be produced, extracted or removed therefrom, together with the perpetual right of exploring or drilling or mining said real property and each and every part thereof and of producing, extracting or removing therefrom one-half of all such oil, gas and other hydrocarbon substances and one-half of all such minerals and of using, marketing or otherwise disposing of the same and of extracting and using water from said real property in connection with said operations, or any of them; the right to drill, construct, use, remove and dispose of wells, ditches, sumps, pipe lines, roads, buildings and other structures necessary, useful or convenient in connection with the exploration, drilling or mining of said real property, or any part of parts thereof and the production, extraction, treatment, storage and removal therefrom of one-half of all such oil, gas and other hydrocarbon substances and one-half of all such minerals and the use, marketing or disposition of the same; the right of ingress, egress, regress in over and across said real property and each every part thereof, as reserved by the San Francisco Bank, a corporation, in Deed recorded June 10, 1948 in Book 2644, Page 420, Document No. 28130, Official Records.

ALSO EXCEPTING THEREFROM, 5% of all oil, gas and other hydrocarbon substances and 5% of all minerals, whether metallic or non-metallic in and under said Land, as reserved by R. T. Hughes and Bess L. Hughes, husband and wife, in the Deed recorded December 27, 1950, in Book 2944, Page 550, of Official Records, as Document No. 69757.,

ALSO EXCEPTING THEREFROM, 25% of all oil, gas and other hydrocarbon substances and 25% of all minerals, whether metallic or non-metallic in and under said Land, as reserved by Miles 0. Humphreys, Jr. and Zona Humphreys, his wife and T. M. Robinson and Myrtle E. Robinson, his wife, in the Deed recorded May 4, 1962, in Book 4715, Page 81 of Official Records, as Document No. 36478.

ALSO EXCEPTING THEREFROM, 10% of all oil, gas and other hydrocarbon substances and 10% of all minerals, whether metallic or non-metallic in and under said Land, together with the right to explore and develop oil, gas and other hydrocarbon substances on, in and under said Land above described and in the event of the exercise of said right so reserved, the grantee shall be compensated for any and all damages done to the surface of said Land or crops growing thereon, as reserved by Ernest E. Sullivan and Gracie Sullivan, husband and wife, in the Deed recorded May 4, 1962, in Book 4715, Page 83 of Official Records, as Document No. 36479.

**PARCEL 197: APN: 038-300-18s:**

The West half of the Northwest quarter of Section 24, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the North 70 feet thereof, as conveyed to the County of Fresno in the Deed recorded January 21, 1971, in Book 5854, Page 75, of Official Records, as Document No. 4717.

ALSO EXCEPTING THEREFROM, any of the three existing irrigation wells and all irrigation fixtures which may be located on said land, as set forth in the Deed recorded March 25, 2011, as Instrument No. 2011-0041623 of Official Records.

ALSO EXCEPTING THEREFROM, the Grantor's undivided three-eighths interest in and to all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Caine Investments Co., Inc., in the Deed to Giffen, Inc., a corporation, recorded July 30, 1948, in Volume 2665, Page 410 of Official Records, as Document No. 36130.

ALSO EXCEPTING THEREFROM, the Grantor's undivided one-fourth interest in and to all oil, gas, petroleum and other hydrocarbon substances an minerals located in, under and upon said property, TOGETHER WITH, the right to go upon sad property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all things necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by H. A. Barkelew and Edith Barkelew, his wife, in the Deed to Giffen, Inc., a corporation, recorded September 20, 1948, in Volume 2670, Pages 384 & 385 of Official Records, as Document No. 43972.

ALSO EXCEPTING THEREFROM, all oil, gas, petroleum and other hydrocarbon substances and minerals located in, under and upon said property, as recited in the Deed executed by Salarac Land Co., a corporation, recorded September 7, 1951, in Book 3064, Page 236 of Official Records, as Document No. 48327, said Deed conveyed an undivided one-fourth interest in said land.

**PARCEL 198: APN: 038-160-10s:**

The Southwest quarter of the Southwest quarter of Section 13, Township 16 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing,

maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 199: APN: 038-160-13:**

The West half of the West half of the Southeast quarter; and The East half of the Southwest quarter of Section 13, Township 16 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 200: APN: 040-060-20s:**

The Southwest quarter of Section 18, Township 16 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, as created in the Deed recorded January 16, 1979, in Book 7200, Page 425 of Official Records, as Document No. 5851.

EXCEPTING THEREFROM, rights or interest in said land as mentioned in the Corporation Grant Deed recorded September 28, 1971, in Book 5941, Page 200 of Official Records, as Document No. 78378, which Deed recites in part, EXCEPTING THEREFROM, the South 20.0 feet for road purposes.

ALSO EXCEPTING THEREFROM an undivided 50% of 100% of all oil, gas and other hydrocarbons and minerals on, in or under said land, as reserved by Anderson, Clayton & Co., in Deed recorded September 28, 1971, in Book 5941, Page 200 of Official Records, as Document No. 78378; and in Deed recorded April 2, 1976, in Book 6573, Page 644, Official Records, as Document No. 27303.

**PARCEL 201: APN: 040-060-22s:**

The Southeast quarter of Section 18, Township 16 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, as created in the Deed recorded January 16, 1979, in Book 7200, Page 480 of Official Records, as Document No. 5885.

EXCEPTING THEREFROM, rights or interest in said land as mentioned in the Corporation Grant Deed recorded September 28, 1971, in Book 5941, Page 200 of Official Records, as Document No. 78378, which Deed recites in part, EXCEPTING THEREFROM, the South 20.0 feet for road purposes.

ALSO EXCEPTING THEREFROM an undivided 50% of 100% of all oil, gas and other hydrocarbons and minerals on, in or under said land, as reserved by Anderson, Clayton & Co., in Deed recorded September 28, 1971, in Book 5941, Page 200 of Official Records, as Document No. 78378; and in Deed recorded April 2, 1976, in Book 6573, Page 644, Official Records, as Document No. 27303.

**PARCEL 202: APN: 040-060-25s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 88-48, recorded October 5, 1989, as Document No. 89109177, of Official Records, described as follows:

The South half of Section 17, Township 16 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 203A: APN: 058-090-48s, 49s, 51s, 52s, 53s, AND 54s:**

Section 13, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the improvements owned by grantor, Donald Devine and Elvia Devine, as Trustees of the Donald and Elvia Devine Community Property Trust, dated June 12, 2008, as amended, located on Section 13, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, according to the Official Plat thereof, as described in the Deed (Improvements Only) recorded March 22, 2018, as Document No. 2018-0034027, of Official Records.

ALSO EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 203B: APN: 058-090-48s, 49s, 51s, 52s, 53s, AND 54s:**

All of the improvements owned by grantor, Donald Devine and Elvia Devine, as Trustees of the Donald and Elvia Devine Community Property Trust, dated June 12, 2008, as amended, located on Section 13, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof, as described in the Deed (Improvements Only) recorded March 22, 2018, as Document No. 2018-0034027, of Official Records.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 204: APN: 058-090-38s:**

The Northeast quarter of Section 24, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, minerals and other hydrocarbon substances in and under said land, as reserved by Harris Farms, Inc., a California corporation, formerly Jack Harris, Inc., a California corporation in the Deed recorded December 31, 1986, as Document No. 86153479, of Official Records.

**PARCEL 205: APN: 058-090-39s:**

The Northwest quarter of Section 24, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, trees located thereon as of the date of June 30, 1995, which are and shall remain real property, as stated in the Deed executed by Harris Farms, Inc., a California corporation, recorded June 30, 1995, as Document No. 95078959 of Official Records.

ALSO EXCEPTING THEREFROM, all of grantor's right, title and interest in and to all oil, gas, minerals, hydrocarbons or geothermal resources located on or under the surface of said property TOGETHER WITH all rights to explore for and extract such materials or resources as reserved by Harris Farms, Inc., a California corporation, in the Deed recorded June 30, 1995, as Document No. 95078959 of Official Records.

**PARCEL 206: APN: 038-210-41s:**

The West half of the Northwest quarter of the Northwest quarter of Section 34, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas, minerals and hydrocarbon substances in or under said land, as reserved by Mercantile Acceptance Corporation of California, in the Deed recorded October 5, 1959, in Book 4281, Page 523 of Official Records, as Document No. 70580.

ALSO EXCEPTING THEREFROM an undivided one-half of Grantor's right, title and interest in and to all oil, gas and minerals in and under said land, as reserved by W. J. Deal & Co., Inc., a California Corporation, in the Deed recorded December 8, 1975, in Book 6520, Page 703 of Official Records, as Document No. 93881.

**PARCEL 207: APN: 075-050-07:**

The Northeast quarter of Section 24, Township 20 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all those mineral rights in said land INCLUDING the right to use or right of any ingress to or egress from the surface of said land for exploration or producing purposes, all as set forth in the instrument entitled "AGREEMENT FOR RESERVATION OF MINERAL RIGHTS AND INDEMNITY, executed by The Miller Family Trust and Bruce W. Miller, Trustee of The Miller Family Trust, and Stephen Carl Miller, Jr., individually, recorded January 23, 2008, as Document No. 2008-0008428, of Official Records, and as modified by the instruments recorded November 21, 2013, as Document Nos. 2013-0159813 & 2013-0159814; April 22, 2014, as Document Nos. 2014-0045295 & 2014-0045296; all of Official Records.

**PARCEL 208: APN: 078-020-54s:**

20039.001/Capstone-Westlands Legal Description

Westlands - Pru Legal Description

Section 7, Township 20 South, Range 18 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California according to the Official Plat thereof.

EXCEPTING THEREFROM, all that portion conveyed to the United States of America, in the Deed recorded May 17, 1966, in Book 5314, Page 63 of Official Records, as Document No. 37724, described as follows:

BEGINNING, at the North quarter corner of said Section 7;

Thence, along the North boundary of said Section 7 South 88° 54' 11" East 21.71 feet;

Thence, leaving said North boundary South 12° 28' 59" East 169.63 feet;

Thence, South 15° 51' 44" East, 5364.60 feet to a point in the South boundary of said Section 7, distant there along North 88° 54' 52" West 1036.84 feet from the Southeast corner of said Section 7;

Thence, along said South boundary North 88° 54' 52" West 428.62 feet;

Thence, leaving said South boundary North 15° 51' 44" West 5537.15 feet to a point in the North boundary of said Section 7;

Thence, along said North boundary South 88° 53' 32" East 417.41 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, a parcel of land in the Northeast quarter of said Section 7, conveyed to Westlands Water District, a California public agency, in the Deed recorded March 26, 1969, in Book 5673, Page 354 of Official Records, as Document No. 21046, and subsequently conveyed to the United States of America, in the Deed recorded September 26, 1969, in Book 5724, Page 998 of Official Records, as Document No. 67839, described as follows:

BEGINNING, at the Northeast corner of the 52.14 acre parcel of land described as Parcel One in the deed to the United States of America recorded May 17, 1966 in Book 5314 Page 63 of Official Records, Document No. 37724, said Northeast corner being a point in the North line of said Section 7 that bears South 88° 54' 11" East, 21.71 feet from the North quarter corner of said Section 7;

Thence, (1) along said North line, South 88° 54' 11" East, 418.95 feet;

Thence, (2) South 1° 05' 49" West, 49.55 feet;

Thence, (3) South 74° 08' 16" West, 395.41 feet to a point in the East boundary of said 52.14 acre parcel of land;

Thence, (4) along said East boundary North 12° 28' 59" West, 169.83 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, a parcel of land described as PARCEL ONE, conveyed to the United States of America, in the Deed recorded October 1, 1973, in Book 6219, Page 352 of Official Records, as Document No. 88610, described as follows:

BEGINNING, at a point in the South boundary of said Section 7, distant there along North 88° 54' 52" West 1465.46 feet from the Southeast corner of said Section 7;

Thence, along said South boundary North 88° 54' 52" West 104.54 feet;

Thence, leaving said South boundary North 15° 51' 44" West 5445.19 feet;

Thence, continuing North 15° 51' 44" West 92.00 feet to a point in the North boundary of said Section 7, distant there along North 88° 53' 32" West 521.96 feet from the North quarter corner of said Section 7;

Thence, along said North boundary South 88° 53' 32" East 104.55 feet to the most Westerly point of Parcel 1

as described in the Deed to the United States recorded May 17, 1966, in Book 5314 Page 63 in the Official Records of Fresno County;

Thence, along the Southwesterly boundary of said Parcel 1 South 15° 51' 44" East 5537.15 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM, a parcel of land described as PARCEL TWO, conveyed to the United States of America, in the Deed recorded October 1, 1973, in Book 6219, Page 352 of Official Records, as Document No. 88610, described as follows:

BEGINNING, at a point in the North boundary of said Section 7, distant there along North 88° 53' 32" West 646.96 feet from the North quarter corner of said Section 7;

Thence, along said North boundary South 88° 53' 32" East 125.00 feet to the most Westerly point of hereinbefore described Parcel One:

Thence, along the Southwesterly boundary of said Parcel One South 15° 51' 44" East 92.00 feet; Thence, leaving said Southwesterly boundary North 77° 21' 16" West 155.00 feet;

Thence, North 1° 06' 28" East 57.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM that portion thereof lying easterly and southeasterly of the easterly and southeasterly lines of the land described as Parcel One in the deed to the United States of America recorded May 17, 1966 in Book 5314, Page 63 of Official Records, Document No. 37724, and the land described in the deed to Westlands Water District recorded March 26, 1969 in Book 5673, Page 354 of Official Records as Document No. 21046.

ALSO EXCEPTING THEREFROM all of the minerals and minerals ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinabove described property or that may be produced therefrom, including without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution and sand, gravel and aggregates and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee, its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structure and facilities, all as conveyed by Southern Pacific Land Company to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 19, of Official Records, as Document No. 104215.

**PARCEL 209: APN: 027-110-11s:**

The Southwest quarter of the Northeast quarter of Section 24, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 50% interest in and to all oil, gas, casinghead gasoline and other hydrocarbon and mineral substances below a point of 500 feet below the surface of said land together with the right to take, remove, mine and dispose of all of said oil, gas, casinghead gasoline and other hydrocarbon and mineral substances, but without any right whatsoever to enter upon the surface of said land or upon any part of said land within 500 feet thereof, as reserved by Alan Collins and Thomas Collins, in the Deed recorded March 14, 1979, In Book 7238, Page 886 of Official Records, as Document No. 29807.

ALSO EXCEPTING THEREFROM, an undivided 1/2 of grantor's interest in and to all oil, gas, minerals,

20039.001/Capstone-Westlands Legal Description

and other hydrocarbon substances in and under said land, as reserved by Lloyd L. Lopes and Gertrude Lopes, husband and wife and Antone L. Mello Jr. and Elizabeth Mello, husband and wife, in the Deed recorded February 5, 1999, as Document No. 1999-0018147, of Official Records.

**PARCEL 210: APN: 027-110-13s:**

The North half of the Southeast quarter of Section 24, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 2/3 interest in and to the mineral rights as reserved by Joseph G. Elgorriaga and Alice C. Duffy, in the Deed recorded March 7, 1979 in Book 7233, Page 772 of Official Records, as Document No. 26743.

ALSO EXCEPTING THEREFROM, an undivided 1/2 of grantor's interest in and to all oil, gas, minerals, and other hydrocarbon substances in and under said land, as reserved by Lloyd L. Lopes and Gertrude Lopes, husband and wife and Antone L. Mello Jr. and Elizabeth Mello, husband and wife, in the Deed recorded February 5, 1999, as Document No. 1999-0018147, of Official Records.

**PARCEL 211: APN: 027-040-13 (NO "s" ON MAP):**

The Southeast quarter of Fractional Section 9, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided 1/2 interest in all oil, gas and minerals located in and under said land, as reserved in the Deed recorded July 21, 1998, as Document No. 98101045, of Official Records.

**PARCEL 212: APN: 027-050-17s:**

The South half of Section 10, Township 15 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided three-fourths of all the oil, gas, casinghead gas, other hydrocarbons, and all other minerals and mineral rights, whether metallic or non-metallic, in and under the said lands or at any time produced therefrom, with the perpetual right of ingress and egress to and from said lands for the purpose of drilling, exploring, and mining and in every way operating for and removing the same, as reserved by Griffith Henshaw and Irene Henshaw, husband and wife, in the Deed recorded August 23, 1945, in Book 2296, Page 176 of Official Records, as Document No. 33002.

**PARCEL 213: APN: 060-020-48s:**

The West half of Section 9, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing,

maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 214: APN: 058-050-42s:**

The West half of Section 11, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 215: APN: 058-050-43s:**

The East half of Section 11, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 216: APN: 060-020-60s:**

Parcel A as shown on Certificate of Waiver of Parcel Map No. 20-25, recorded March 11, 2021, as Document No. 2021-0041412 of Official Records, described as follows:

The East half of the Northeast quarter of Section 9, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM a "40.00 Acre Parcel" being more particularly described as follows:

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

COMMENCING, at the Northwest corner of said East half of the Northeast quarter of Section 9;

Thence, East along the North line of said Northeast quarter of Section 9, a distance of 165.00 feet to the TRUE POINT OF BEGINNING;

Thence, South along a line being parallel with the East line of said Northeast quarter of Section 9, a distance of 644.07 feet;

Thence, East along a line being parallel with said North line of the Northeast quarter of Section 9, a distance of 655.83 feet;

Thence, South along a line being parallel with the said East line of the Northeast quarter of Section 9, a distance of 1995.93 feet more or less to a point on the South line of said Northeast quarter of Section 9;

Thence, East along said South line of the Northeast quarter of Section 9, a distance of 500.00 feet to the Southeast corner of said Northeast quarter of Section 9;

Thence, North along the said East line of the Northeast quarter of Section 9, a distance of 2640.00 feet more or less to the Northeast corner of said Section 9;

Thence, West along said North line of the Northeast quarter of Section 9, a distance of 1155.83 feet to the TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 217: APN: 060-020-55s:**

The East half of Section 9, Township 18 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, the East half of the Northeast quarter of said Section 9.

ALSO EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 218: APN: 017-080-46s:**

All that portion of the Southwest quarter of Section 27, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof, lying Southwesterly of the Southwesterly line of the land conveyed to the State of California and described as Parcel 1 in the Grant Deed recorded September 30, 1965, in Book 5222, Page 706 of Official Records, as Document No. 78394.

EXCEPTING THEREFROM, that portion of said land described as Parcel 2 conveyed to the State of California, in the Grant Deed recorded September 30, 1965, in Book 5222, Page 706 of Official Records, as Document No. 78394.

ALSO EXCEPTING THEREFROM, any oil, gas, other hydrocarbon substances and minerals of any kind or character in, on, or thereunder, TOGETHER WITH, any rights incidental to the ownership and development, previously conveyed or reserved in Deeds of record.

**PARCEL 219: APN: 017-080-72s:**

The South half of Section 27, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion lying Southwesterly of the Southwesterly line of the land conveyed to the State of California, described as Parcel 1 in the Grant Deed recorded September 30, 1965, in Book 5222, Page 706 of Official Records, as Document No. 78394.

ALSO EXCEPTING THEREFROM, that portion conveyed to Westlands Water District, a Public Agency, by Contract and Grant Deed recorded July 22, 1976, in Book 6629, at Page 963 of Official Records, as Document No. 62938, described as follows:

The South 270 feet of the East 365 feet of the Southeast quarter of said Section 27, ALSO the South 95 feet of the West 35 feet of the East 400 feet of said Southeast quarter.

ALSO EXCEPTING THEREFROM, any oil, gas, other hydrocarbon substances and minerals of any kind or character in, on, or thereunder, TOGETHER WITH, any rights incidental to the ownership and development, previously conveyed or reserved in Deeds of record.

**PARCEL 220: APN: 017-060-06s:**

The East half of the Northeast quarter of Section 15, Township 14 South, Range 12 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, mineral, gas and other hydrocarbon substances below a depth of 500 feet under the real property described in the deed, without the right of surface entry, as reserved by Dorothy J. Helm, in the Deed recorded December 31, 1998, as Document No. 98189899 of Official Records.

**PARCEL 221: APN: 027-180-45s AND 46s:**

Section 34, Township 15 South, Range 13 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, that portion conveyed the State of California in the Deed recorded February

20039.001/Capstone-Westlands Legal Description

Westlands - Pru Legal Description

11, 1966, in Book 5274, Page 749 of Official Records, as Document No. 11487, described as follows:

BEGINNING at a point in the West line of said Section, said point bears North 0°32'56" East 10.63 feet from the Southwest corner of said Section, said Southwesterly corner being at coordinates Y=455 761.76 feet and X=1 544 892.87 feet;

THENCE (1), along said West line North 01°32'56" East 2109.98 feet; THENCE (2), at right angles South 88°27'04" East 60.02 feet; THENCE (3), South 00°41'40" East 755.79 feet;

THENCE (4), along a line parallel with and 204 feet Northeasterly, measured at right angles from the centerline of the Department of Public Works survey from Kings County line to Merced County line, Road VI-FRE-238-B (now 06-FRE-5) South 45°58'00" East 1997.60 feet to the South line of said Section;

THENCE (5), along said line North 89°02'00" West 597.34 feet;

THENCE (6), along a line parallel with and 204 feet Southwesterly, measured at right angles from said centerline North 45°58'00" West 1266.78 feet;

THENCE (7), South 00°52'26" East 680.38 feet;

THENCE (8), along the East line of the West 60 feet of said Section South 01°32'56" West 175.23 feet; THENCE (9), at right angles North 88°27'04" West 60.00 feet to the POINT OF BEGINNING.

ALSO EXCEPTING THEREFROM all oil, gas and other hydrocarbons and minerals now or at any time hereafter situate therein and thereunder, TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of the said real property, and also the right to drill for, produce and use water from the said real property in connection with drilling or mining operations thereon, and ALSO TOGETHER WITH all easements and rights necessary or convenient for the production, storage and transportation of all oil, gas and other hydrocarbons and minerals owned by Grantors and situate in and under land adjacent to the above described real property and for the exploration and testing of said adjacent real property, said rights excepted and reserved herein to be held by Grantors in the same percentage undivided interests as the above described real property is presently vested in said Grantors, as reserved by Babette Eaton, et al, recorded July 15, 1976, in Book 6626, Page 445 of Official Records, as Document No. 60783.

ALSO EXCEPTING THEREFROM, all rights to oil, gas and other hydrocarbon substances and geothermal rights lying in and under said land, as reserved by P & R Almond Orchards, Inc., a California corporation and Coldwater Farms, Inc., a California corporation and Thomas-Cattani Incorporated, a California corporation, in the Deed recorded August 24, 2006 as Document No. 2006-0177135, of Official Records.

**PARCEL 222: APN: 058-050-41s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 88/45, and the Deed recorded September 29, 1989, as Document No. 89107174, of Official Records, described as follows:

The West half of Section 3, Township 18 South, Range 15 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.


EXCEPTING THEREFROM, all of the minerals and mineral ores of every kind and character now known to exist or hereafter discovered upon, within or underlying the hereinafter described property or that may be produced therefrom, including, without limiting the generality of the foregoing, all oil, natural gas and hydrocarbon substances, geothermal steam, brines and minerals in solution, and sand, gravel and aggregates, and products derived therefrom, TOGETHER WITH, the exclusive and perpetual right of said Grantee its

20039.001/Capstone-Westlands Legal Description

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

successors and assigns, of ingress and egress in, upon or over said property to explore and prospect for, extract, develop, save, convey, store, refine, process and remove the same and to make such use of said property and the surface thereof as is necessary or useful in connection therewith, which use may include the sinking, boring, digging or drilling of wells, shafts or tunnels, excavating, open pit mining and constructing, maintaining and removing roads, ways, pipe lines, pole lines, tanks, buildings, structures and facilities, all as conveyed by Southern Pacific Company, a Delaware corporation to Bravo Oil Company, a Texas corporation, in the Deed recorded December 29, 1965, in Book 5257, Page 25 of Official Records, as Document No. 104217.

**PARCEL 223: APN: 050-070-37s:**

A single parcel of land according to the Certificate of Waiver of Parcel Map No. 91-46, and the Deed recorded November 30, 1993, as Document No. 93184979, of Official Records, described as follows:

The East half of Section 14, Township 17 South, Range 16 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM fifty percent (50%) interest to any oil, gas, minerals, hydrocarbons, or geothermal resources located on or underneath the surface of such real property together with 50% of grantor's rights to explore for and extract such materials or resources, as reserved by Charles V. Hoover, Jr., a married man as his sole and separate property in the Deed recorded May 22, 1992 as Document No. 92071000, of Official Records.

EXCEPTING THEREFROM, all remaining oil, gas, minerals and hydrocarbons, or geothermal resources on or underneath the surface of the land, as reserved by Saviez Farms, L.P., a California limited partnership which acquired title as Saviez Farms, LLC, a California limited liability company in the Deed recorded November 10, 2021, as Document No. 2021-0186918, of Official Records.

**PARCEL 224: APN: 038-061-04:**

Lots 18, 19, 20, 29, 30 & 31 of California Land Investment Co. Tract No. 1, in Section 6, Township 16 South, Range 14 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the map of said tract recorded May 8, 1912, in Book 7, Page 49 of Record of Survey, in the office of the County Recorder of said County.

**PARCEL 225: APN: 068-071-09s:**

The Northwest quarter of Section 13, Township 19 South, Range 17 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Fresno, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, all oil, gas petroleum and other hydrocarbon substances and minerals located in, under and upon said property, TOGETHER WITH, the right to go upon said property at any time hereafter for the purpose of developing and extracting oil, gas, minerals and other hydrocarbon substances from said land, and to erect and construct upon said land any and all equipment, derricks, telephone and telegraph lines, storage tanks, and any and all other thing necessary or incidental to the exploration and development of said land for oil, gas and other hydrocarbon substances and minerals, TOGETHER WITH, the rights of way for passage over, upon and across, and egress and ingress to and from said land for any or all of the above purposes, SUBJECT, to the terms and conditions contained therein, all as reserved by Glenn R. Knowles and Lillian M. Knowles, husband and wife as joint tenants, and Fred B. Knowles and Geneva D. Knowles, husband and wife as joint tenants, in the Deed recorded August 13, 1948, in Book 2663, Page 260, of Official Records, as Document No. 38159.

Westlands - Pru Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF KINGS, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**PARCEL 245A: APN: 026-300-034 (PORTION OF):**

The Northwest quarter of the Southwest quarter of Section 20, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided one-half interest now owned by the Grantor, in and to all mineral rights in the real property particularly described above, and in and to all minerals and mineral deposits, and all oil, gas, and other hydrocarbon substances, whatever their source, which are or may be found or developed upon, within, or beneath the surface of said real property, or ay part thereof, or which may at any time be produced, extracted, or severed from said real property, or any part thereof, TOGETHER WITH, all rights that may be reasonably necessary to the full realization, exercise, and enjoyment of the interest so excepted and reserved, including (without being confined thereto) rights of ingress and egress to and from, entry upon, and use of said real property, the right to prospect and explore thereon for minerals, mineral deposits, oil, gas, or other hydrocarbon substances, and the right to mine, drill for, extract, recover, and remove such minerals, mineral deposits, oil, gas, or other hydrocarbon substances, by any and all usual, convenient, and necessary means, all as reserved by Wilhelmina Nunes Bossana, a married woman, in the Deed recorded February 29, 1952, in Book 516, Page 205 of Official Records, as Document No. 1823.

ALSO EXCEPTING THEREFROM, an undivided one-half interest in the remaining one-half interest in and to all minerals and mineral deposits, and all oil, gas, and other hydrocarbon substances, whatever their source, which are or may be found or developed upon, within, or beneath the surface of said real property, or any part thereof, or which may at any time be produced, extracted, or severed from said real property, or any part thereof, TOGETHER WITH, all rights that may be reasonably necessary to the full realization, exercise, and enjoyment of the interest so excepted and reserved, including (without being confined thereto) rights of ingress and egress to and from, entry upon, and use of said real property, the right to prospect and explore thereon for minerals, mineral deposits, oil, gas, or other hydrocarbon substances, and the right to mine, drill for, extract, recover, and remove such minerals, mineral deposits, oil, gas, or other hydrocarbon substances, by any and all usual, convenient, and necessary means., as reserved in the Deed recorded March 13, 1962, in Book 803, Page 714 of Official Records, as Document No. 4132. The intention of this exception is to reserve unto Roger W. Souza, trustee, an undivided one-fourth interest of the whole of said mineral and mineral deposits, and all oil, gas, and other hydrocarbon substances.

**PARCEL 245B: APN: 026-300-034 (PORTION OF):**

The East half of the South half of the Southeast quarter of Section 20, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

**PARCEL 245C: APN: 026-300-034 (PORTION OF):**

The West half of the South half of the Southeast quarter of Section 20, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM, an undivided two-fifths interest in and to all of the minerals, oils, gas and other hydrocarbon substances contained therein and/or produced therefrom, in favor of Francis Brunner and Elsa G. Schroff, share and share alike, as provided in that certain Order Settling the Final and Supplemental Final Account and for the Distribution of the Estate of Clara Brunner, deceased, dated December 21, 1943 a

certified copy of which was recorded December 27, 1943 in Book 297, at Page 252 of Official Records, as Document No. 2783.

ALSO EXCEPTING THEREFROM, an undivided three-fifths interest in and to all of the minerals, oil, gas and other hydrocarbon substances contained and/or produced in the undivided one-third interest conveyed in this Deed, as reserved by Marjorie Moffit, in the Deed recorded December 21, 1966, in Book 899, Page 61 of Official Records, as Document No. 17266.

**PARCEL 245D: APN: 026-300-034 (PORTION OF):**

The Northeast quarter of the Southwest quarter; and the Northwest quarter of the Southeast quarter of Section 20, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided 11/27ths interest in and to all oil, gas and mineral rights in and under the Northeast quarter of the Southwest quarter of said Section 20, and the Southeast quarter of the Northwest quarter of said Section 20, TOGETHER WITH, the right of ingress and egress thereto for the exploration and development of same, as reserved by John F. Willcox, in the Deed recorded December 18, 1967, in Book 914, Page 508 of Official Records, as Document No. 15102.

ALSO EXCEPTING THEREFROM an undivided 11/27ths interest in and to all oil, gas and mineral rights in and under the Northeast quarter of the Southwest quarter of said Section 20, and the Southeast quarter of the Northwest quarter of said Section 20, TOGETHER WITH, the right of ingress and egress for the exploration and development of same, as reserved by Marie Willcox in the Deed recorded December 18, 1967, in Book 914, Page 508 of Official Records, as Document No. 15102.

ALSO EXCEPTING THEREFROM an undivided 5/27ths interest in and to all oil, gas and mineral rights in and under the Northeast quarter of the Southwest quarter of said Section 20, and the Southeast quarter of the Northwest quarter of said Section 20, TOGETHER WITH, the right of ingress and egress thereto for the exploration and development of same, as reserved by Marita Rossie Clarke in the Deed recorded December 18, 1967, in Book 914, Page 508 of Official Records, as Document No. 15102.

**PARCEL 245E: APN: 026-300-034 (PORTION OF):**

The South half of the Southwest quarter of Section 20, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas, minerals and hydrocarbon substances in, on or under the Southeast quarter of the Southwest quarter of said Section 20, TOGETHER WITH, the right of ingress and egress thereto for the exploration and development of same, as reserved by Harold A. Butcher in the Deed recorded January 15, 1968, in Book 915, Page 687 of Official Records, as Document No. 692.

**PARCEL 245F: APN: 026-300-034 (PORTION OF):**

The Northeast quarter of the Southeast quarter of Section 20, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all mineral rights in the real property particularly described above, and in and to all minerals and mineral deposits, and all of the oil, gas and other hydrocarbon substances, whatever their source, which are or may be found or developed upon, within, or beneath the surface of said real property, or

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

any part thereof, or which may at any time be produced, extracted, or severed from said real property, or any part thereof, TOGETHER WITH, all rights that may be reasonably necessary to the full realization, exercise, and enjoyment of the interest so excepted and reserved, including (without being confined thereto) rights of ingress and egress to and from, entry upon, and use of said real property, the right to prospect and explore thereon for minerals, mineral deposits, oil, gas or other hydrocarbon substances, and the right to mine, drill for, extract, recover, and remove said minerals, mineral deposits, oil, gas, or other hydrocarbon substances, by any and all use, convenient, , and necessary means SUBJECT to the terms and conditions contained therein, as reserved by Leonard A. Bossana and Wilhelmina Nunes Bossana in the Deed recorded October 9, 1952, in Book 537, Page 324 of Official Records, as Document No. 9072.

**PARCEL 246: APN: 026-320-006:**

All of Section 29, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING FROM the Northwest quarter and the Southeast quarter of said Section 29, all of the oil, gas and other hydrocarbon substances and minerals in and under or which may be produced or saved in, on or from said land, TOGETHER WITH, the right to enter upon and occupy the real property as hereinabove reserved for the purpose of prospecting, exploring and drilling for, producing, storing, transporting, treating and removing such oil, gas or other hydrocarbon substances and minerals; and the right to establish, maintain, operate and repair on said land, and to remove therefrom, tanks, boilers, buildings, structures, plants (but not a refinery or tank farm) for the extraction, manufacture and recovery of natural gasoline and other hydrocarbons produced from said property, machinery and other apparatus and equipment, pipelines, power, telephone and telegraph lines, roads, and other appurtenances used in connection with its operations on said lands; and the right to drill for and develop such water as it may need in such operations, Said Grantor also reserves and retains rights of way 50 feet wide for the construction, maintenance, operation and use of roads, telephone, telegraph, power and pipe lines to be used in connection with said activities and operations and the handling, storing, moving, treating and delivering to refineries or market of all commodities and substances produced by any such operations, in, on, along, over and under the West 50 feet and the South 50 feet of each and every Section in which any land conveyed by this Deed to Grantee is located, ALL SUBJECT to the terms and conditions contained therein, all as reserved by Boston Land Company in the Deed recorded April 4, 1955, in Book 614, Page 22 as Document No. 3759 of Official Records.

ALSO EXCEPTING THEREFROM, an undivided 42.7% interest in and to all surface water rights appurtenant to said land, as conveyed by Kenneth E. Newbury, an unmarried man to Westlands Water District, a public agency, in the Water Rights Grant Deed recorded April 29, 2005, as Document No. 0513515, of Official Records.

**PARCEL 246A: APN: 026-320-020 (PORTION OF):**

An easement for ingress and egress over the Easterly 30 feet of Section 32, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area, County of Kings, State of California, as created in the Deed recorded March 12, 2007, as Document No. 0706676, of Official Records.

**PARCEL 247: APN: 026-320-017:**

The North half; and The Southeast quarter of Section 31, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Westlands - Pru Legal Description

EXCEPTING FROM the Northwest quarter and the Southeast quarter of Section 31, all of the oil, gas and other hydrocarbon substances and minerals in and under or which may be produced or saved in, on or from as reserved by Boston Land Company in the Deed recorded April 4, 1955, in Book 614, Page 22 of Official Records, as Document No. 3759.

EXCEPTING FROM the Northeast quarter of Section 31, an undivided one-half interest in and to all oil, gas and other hydrocarbon substances and minerals in, under of which may be produced or saved, in, on said land, TOGETHER WITH the right to prospect for and remove the same, as reserved by Boston Ranch Company in the Deed recorded June 30, 1961, in Book 785, Page 32 Official Records, as Document No. 9222.

**PARCEL 248A: APN: 026-320-020 (PORTION OF):**

The Northwest quarter of Section 32, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas and other hydrocarbon substances in or under the North Half of the Northwest quarter of said Section 32, as reserved by G.C. Croce in the Deed recorded October 7, 1954, in Book 598, Page 202 of Official Records, as Document No. 9115.

**PARCEL 248B: APN: 026-320-020 (PORTION OF):**

The East half of Section 32, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM all oil, gas and mineral rights in and under the Northeast quarter of said Section 32, TOGETHER WITH the right of ingress and egress thereto for the exploration and development of same as reserved by Elrena Lagomarsino, Trustee under Declaration of Trust dated March 12, 1940, known as Giannini Trust, in the Deed recorded September 7, 1967, in Book 909, Page 872 of Official Records, as Document No. 10743.

**PARCEL 248C: APN: 026-320-020 (PORTION OF):**

The Southwest quarter of Section 32, Township 20 South, Range 19 East, Mount Diablo Base and Meridian, in the unincorporated area of the County of Kings, State of California, according to the Official Plat thereof.

EXCEPTING THEREFROM an undivided 5/6ths of 4% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Louise Scally in the Deed recorded February 1, 1967, in Book 900, Page 648 of Official Records, as Document No. 1253.

ALSO EXCEPTING THEREFROM an undivided 5/8ths of 1% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Mabel B. Preston in the Deed recorded February 1, 1967, in Book 900, Page 649 of Official Records, as Document No. 1254.

ALSO EXCEPTING THEREFROM an undivided 2-1/2% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Adele Rossi in the Deed recorded February 1, 1967, in Book 900 at Page 650, of Official Records, as Document No. 1255.

ALSO EXCEPTING THEREFROM an undivided 5/6ths of 1% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Angiolina Randazzo in the Deed recorded February 1, 1967, in Book 900, Page 656 of Official

Records, as Document No. 1258.

ALSO EXCEPTING THEREFROM an undivided 1-2/3% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by John T. Boynton in the Deed recorded February 1, 1967, in Book 900, Page 658 of Official Records, as Document No. 1259.

ALSO EXCEPTING THEREFROM an undivided 1-7/8% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Elliott H. Pentz in the Deed recorded February 1, 1967, in Book 900, Page 659 of Official Records, as Document No. 1260.

ALSO EXCEPTING THEREFROM an undivided 18% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Jack Fausone, in the Deed recorded February 1, 1967, in Book 900, Page 660 of Official Records, as Document No. 1261.

ALSO EXCEPTING THEREFROM an undivided 1-1/4% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Leroy Giannini, in the Deed recorded February 1, 1967, in Book 900, Page 661 of Official Records, as Document No. 1262.

ALSO EXCEPTING THEREFROM an undivided 29% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Laura Mary Bellocchi, in the Deed recorded February 1, 1967, in Book 900, Page 662 of Official Records, as Document No. 1263.

ALSO EXCEPTING THEREFROM an undivided 10% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Frank Gerald Bellocchi, in the Deed recorded February 1, 1967, in Book 900, Page 663 of Official Records, as Document No. 1264.

ALSO EXCEPTING THEREFROM an undivided 5/6ths of 1% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by M.E. Fantozzi, in the Deed recorded February 1, 1967, in Book 900, Page 664 of Official Records, as Document No. 1265.

ALSO EXCEPTING THEREFROM an undivided 5/6ths of 1% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Julia Barbieri, in the Deed recorded February 1, 1967, in Book 900, Page 665 of Official Records, as Document No. 1266.

ALSO EXCEPTING THEREFROM an undivided 1-1/4% interest in and to all oil, gas and other hydrocarbon substances in and under said land, TOGETHER WITH the right to explore and develop same, as reserved by Peter Giannini, in the Deed recorded February 1, 1967, in Book 900, Page 666 of Official Records, as Document No. 1267.

**END OF DESCRIPTION**

20039.001/Capstone-Westlands Legal Description

EXHIBIT B

FORM OF MARKETING PROCEDURES ORDER

(ATTACHED)

-43-

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, ET AL.,<br><br>     Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; AND RACHEL MARIE WHITE,<br><br>     Defendants. | No. 1:24-cv-01102-KES-SAB<br><br>**[PROPOSED] AMENDED ORDER (I) APPROVING BID PROCEDURES FOR THE SALE OF REAL PROPERTY; (II) APPROVING BID PROTECTIONS FOR STALKING HORSE BIDDER; AND (III) SCHEDULING THE AUCTION AND SALE HEARING (WESTLANDS)**<br><br>Related to Dkt. No. [ ]<br><br>Judge:     Hon. Kirk E. Sherriff<br><br>Action Filed:    September 16, 2024 |

Before the Honorable Kirk E. Sherriff, United States District Judge, is a motion (the "**Motion to Amend**") filed by Lance Miller (the "**Receiver**"), solely in his capacity as Court-appointed receiver in the above-captioned case, seeking to amend the dates and deadlines contained in the bidding procedures entered by this Court on December 1, 2025, at Dkt. No. 370 (the "**Original Bidding Procedures Order**" approving the "**Original Bidding Procedures**").[1]

The Court hereby finds that:[2] (a) it has jurisdiction over the Property and the parties in this case, including exclusive jurisdiction over the administration, control, and possession of the

---

[1] Capitalized terms used but not defined in this Order shall have the meanings ascribed in the Bidding Procedures attached to this Order as **Exhibit A**.

[2] The findings and conclusion set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, or a conclusion of law a finding of fact, they are adopted as such.

304628526v4

Property; (b) it has the statutory authority to enter this Order; and (c) due and proper notice of the relief requested in the Motion to Amend and the entry of this Order was given and no other or further notice is necessary other than as set forth in the Bidding Procedures. The Court further finds that:

A.      As demonstrated by (i) the testimony and other evidence submitted by declaration, including the declarations submitted by Lance Miller and Skye Root in support of the Original Bidding Procedures and the Motion to Amend and (ii) the representations of counsel in the record, the Receiver has demonstrated good, sufficient, and sound business purpose and justifications for entry of this Order, and that the bidding procedures attached hereto (the "**Bidding Procedures**") are an appropriate exercise of the Receiver's business judgment, are in the best interest of the receivership estate, and are the best available method for maximizing the value of the Property.

B.      To maximize the value of the Property, it is necessary for the Receiver to have the means to induce a third-party bidder to serve as the Stalking Horse Bidder and provide Bid Protections pursuant to the terms of this Order, and the Bid Protections are reasonable and represent a sound exercise of the Receiver's business judgment.

C.      The dates, deadlines, and notice provisions set forth in the Bidding Procedures are reasonably calculated to provide parties with notice of, and opportunity to participate in, the Auction for the Property.

D.      The Motion to Amend and the Bidding Procedures comply with all applicable statutes and the local rules of this Court.

E.      Due, sufficient, and adequate notice of the relief granted herein has been given to all parties in interest.

F.      No objections to the relief requested in the Motion to Amend were filed, and the deadline to file an objection has passed.

Accordingly, it is hereby:

**ORDERED** that all objections to the Motion to Amend, and entry of the Bidding Procedures, if any, are hereby overruled and the Motion to Amend is granted.

---

The Court's finding and conclusions set forth at on the record at the Hearing (if held) are incorporated herein by reference.

2

304628526v4

**IT IS FURTHER ORDERED** the Bidding Procedures, which are fully incorporated herein by reference, are hereby approved in all respects, supersede the bidding procedures previously approved by this Court by the order at Docket No. 370, and shall govern all Potential Bidders and Bids, including those that may be submitted by Qualified Bidders at the Auction.

**IT IS FURTHER ORDERED** that Potential Bidders seeking to submit Bids for the Property must do so in accordance with the terms of the Bidding Procedures and this Order.

**IT IS FURTHER ORDERED** that all dates and deadlines set forth in the Bidding Procedures are hereby approved. The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline may be deemed a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Receiver or the consummation and performance of the sale of the Property to the Successful Bidder, including the transfer of the Property free and clear of Interests to the fullest extent permitted by law (with such Interests attaching to the cash proceeds of the sale to the same extent and with the same priority as existed immediately prior to the sale).

**IT IS FURTHER ORDERED** that all notice and service provisions set forth in the Bidding Procedures are hereby approved as adequate and reasonable.

**IT IS FURTHER ORDERED** that the failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

**IT IS FURTHER ORDERED** that the Receiver is authorized and empowered to take such steps, expend such sums, and do such other things as may be necessary to implement and effectuate the terms and requirements established and relief granted in this Order.

**IT IS FURTHER ORDERED** that the Receiver is authorized to modify the Bidding Procedures before service to parties to conform to the terms of this Order, including updating dates and deadlines.

**No. 1:24-cv-01102-KES-SAB**
**AMENDED ORDER**

304628526v4

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**IT IS FURTHER ORDERED** that this Court shall retain exclusive jurisdiction over any disputes arising from or related to the Property, the Bidding Procedures, or the implementation or interpretation of this Order.

Dated: _____

_____
Hon. Kirk E. Sherriff
United States District Court

4

No. 1:24-cv-01102-KES-SAB
AMENDED ORDER

304628526v4

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

# Exhibit A

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:    (312) 902-5200
Facsimile:    (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:    (214) 765-3600
Facsimile:    (214) 765-3602

Arlen P. Moradi (SBN 353956)
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067-5010
Telephone: (310) 778-4449
*Attorneys for the Receiver Lance Miller*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., | No. 1:24-cv-01102-KES-SAB |
| Plaintiffs, | ***AMENDED* BIDDING PROCEDURES FOR THE SALE OF RECEIVERSHIP PROPERTY MARKETED BY CAPSTONE CAPITAL MARKETS LLC (WESTLANDS)** |
| v. | |
| ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE, | Judge:        Hon. Kirk E. Sherriff  Action Filed:   September 16, 2024 |
| Defendants. | |

-1-

304630313

The United States District Court for the Eastern District of California (the "**Court**") has entered an amended Order (the "**Bidding Procedures Order**"), by which the Court approved the amended bidding procedures set forth herein (the "**Bidding Procedures**"). These Bidding Procedures establish the process by which the Receiver is authorized to conduct a public auction (the "**Auction**") for the sale of the land and associated rights (the "**Property**") as more fully set forth in the Purchase and Sale Agreement to be submitted by the Stalking Horse Bidder (defined below).[2] A list of APNs that comprise the land is attached hereto as **Exhibit 1**.

The Court has also approved substantially identical bidding procedures for certain property that is related to farming operations on the Property and being administered by the Receiver in the related case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC, et al.,* Case No. 24-cv-1455-KES-SAB (the "**Related Property**").  With the exception of credit bids, a bid for the Property must also include a bid for the Related Property.

**1.    Key Dates**

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Receiver and to submit Bids (as defined below) for the Property (to include the Related Property). The Receiver with the assistance of Capstone Capital Markets LLC ("**Capstone**") and Pivot Management Group, LLC ("**Pivot**") will assist interested parties in conducting their respective due diligence investigations.

The key dates for the sale process are as follows:

| Event | Timing of Amended Date/Deadline | Est. Amended Date/Deadline[3] |
|---|---|---|
| Deadline to Serve Court-Approved Bidding Procedures[4] | Within two (2) business days of entry of the | Wednesday, |

---

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

[3] All dates/deadlines are subject to extension or adjournment as provided for in the Bidding Procedures Order.

[4] A copy of the Court-approved Bidding Procedures will be served via (i) first class mail on: (a) the potential holders of Interests, (b) the Consultation Parties, (c) all parties who have expressed a bona fide interest in purchasing the Property, and (d) the service list established in this case; and (ii) via the Court's ECF filing system. **Parties wishing to receive expedited service of sale-related**

-2-

304630313

| Event | Timing of Amended Date/Deadline | Est. Amended Date/Deadline[3] |
|---|---|---|
| | Bidding Procedures Order | July 8, 2026 |
| Deadline to File Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder | Within two (2) business days of entry of the Bidding Procedures Order | Wednesday, July 8, 2026 |
| Deadline to Submit Qualified Bids (the "**Bid Deadline**") | Twenty-one (21) days after filing of the Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder | Wednesday, July 29, 2026 |
| Deadline to Either (1) Notify Qualified Bidders of Auction or (2) Cancel Auction | Within five (5) days of the Bid Deadline | Monday, August 3, 2026 |
| Auction, if held (the "**Auction Date**") | Within five (5) days of the Deadline to Notify Qualified Bidders of Auction | Friday, August 7, 2026 |
| Deadline to File Notice of Successful Bidder, if Auction Held (the "**Deadline to Designate Successful Bidder**") | Within three (3) days of conclusion of the Auction | Monday, August 10, 2026 |
| Deadline to Object to Sale | No less than seven (7) days after either the (i) Deadline to File Notice of Successful Bidder or (ii) the filing of the Notice of Cancellation of Auction, as applicable | (i) Monday, August 17, 2026 if Auction is held or (ii) Monday, August 10, 2026 if no Auction held |
| Reply Deadline | No less than seven (7) days of the Deadline to Object to Sale | (i) Monday, August 24, 2026 if Auction is held or (ii) Monday, August 17, 2026 if no Auction held |
| Sale Hearing | | September 8, 2026 |

**pleadings or other documents should contact Janice Brooks-Patton at janice.brooks-patton@katten.com and request to receive e-mail service.**

-3-

304630313

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**2.    Consultation Parties.**

(a)    Except as set forth in Section 2(b) below, the "**Consultation Parties**" referred to herein consist of the following entities, solely with respect to parcels subject to their respective liens or owner interests:

      i.      Plaintiffs;

      ii.      Farming Defendants (as defined in the Receivership Order); and

      iii.      Any other person or entity that is participating in the sale process with respect to the Property in accordance with ¶ 2(d) of the Capstone Engagement Letter [Docket No. 157-2] and as agreed to by Receiver.

(b)    If any of the persons or entities listed in paragraph 2(a), above, submits a Bid (other than a credit bid), such person shall no longer be a Consultation Party for purposes of these Bidding Procedures. The Receiver shall not consult with Plaintiffs if determining whether a bid submitted by Plaintiffs is a higher or better bid.

**3.    Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a sale (a "**Potential Bidder**") must deliver or have previously delivered to the Receiver the following documents:

(a)    an executed non-disclosure agreement (an "**NDA**") on terms acceptable to the Receiver;

(b)    identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction; and

(c)    proof of an ability to close the proposed transaction in form and substance acceptable to the Receiver in his business judgment and in consultation with the Consultation Parties.

**4.    Provisions Governing Joint Bid Discussions.**

If a Potential Bidder is interested in engaging in discussions with a third party concerning a potential joint Bid ("**Joint Bid**") for the purchase of the Property and Related Property, such Potential Bidder shall, prior to engaging in such discussions, (a) identify the third party(ies) to the

-4-

304630313

Receiver and (b) receive the Receiver's written consent to engage in such discussions (the "**Joint Bid Discussion Protocol**").

**5.    No Collusion**

All bidders, including Potential Bidders and Qualified Bidders (defined below), are expressly prohibited from directly or indirectly colluding or taking any other action in restraint of free competitive bidding in connection with the sale process.

**6.    Qualified Bidders**

(a)    A "**Qualified Bidder**" is a Potential Bidder who satisfies these Bidding Procedures and whose financial information, the financial information of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate the sale, whose Bid is a Qualified Bid, and that the Receiver determines should be considered a Qualified Bidder, in consultation with the Consultation Parties. No later than the Deadline to Designate Successful Bidder, the Receiver will notify each Potential Bidder in writing (email being sufficient) whether such Potential Bidder is a Qualified Bidder and shall provide counsel to the Consultation Parties copies of each Qualified Bid.

(b)    If the Receiver in his discretion determines any Potential Bidder not to be a Qualified Bidder, the Receiver will refund such Qualified Bidder's Deposit (defined below) on or within five (5) business days after the Bid Deadline.

(c)    Without the written consent of the Receiver, a Qualified Bidder may not modify or amend its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

(d)    Creditors who have a valid and perfected lien on the Property ("**Secured Creditor(s)**") shall be deemed Potential Bidders and Qualified Bidders under and in connection with these Bidding Procedures and may credit bid all or any portion of the applicable Defendant(s)' obligations to such Secured Creditor. Any credit bid made by a Secured Creditor (or any designee)

-5-

304630313

by the Bid Deadline is, and will be deemed to be, a Qualified Bid in each instance for all purposes under and in connection with the Bidding Procedures; provided, however, that nothing herein constitutes a waiver of the Receiver's rights to challenge the liens and claims of Secured Creditors. Any credit bid made by a Successful Bidder must include a cash component sufficient to pay the Bid Protections and any fees and expenses that will be payable by the Receiver to Capstone or other professionals at closing.[5]

**7.    Due Diligence**

Only Potential Bidders (whether submitting cash or credit Bids) whose financial information, the financial information of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate the sale shall be eligible to receive due diligence information and access to the Receiver's electronic data room and additional non-public information regarding the Property and Related Property. No Potential Bidder will be permitted to conduct due diligence without signing an NDA in a form acceptable to the Receiver. The Receiver will provide to each Potential Bidder that satisfies the foregoing reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request. For all Potential Bidders, the due diligence period will end on the Bid Deadline. The Receiver shall have no obligation to furnish any due diligence information after the Bid Deadline. Neither the Receiver nor his professionals make any representations as to the completeness or accuracy of information provided to Potential Bidders in relation to the sale of the Property and Related Property.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Receiver or his advisors regarding the ability of the Potential Bidder to consummate a sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Receiver to determine that such bidder is not a Qualified Bidder or that a Bid made by such bidder is not a Qualified Bid.

---

[5] Designation of a Secured Creditor as Qualified Bidder shall not limit such Secured Creditor's rights and remedies under its loan documents, including, with the Receiver's consent, the ability to commence a foreclosure proceeding in respect of the Property.

-6-

304630313

All due diligence requests should be directed to Capstone Capital Markets, LLC, Attn: Arnav Virmani (avirmani@capstonepartners.com) and Hunter Costello (hcostello@capstonepartners.com).

**8.     Bid Requirements.**

A proposal, solicitation, or offer for a purchase and sale of the Property and the Related Property (each, a "**Bid**") by a bidder that is submitted in writing and satisfies each of the following requirements (the "**Bid Requirements**") as determined by the Receiver, in his discretion and in consultation with the Consultation Parties, shall constitute a "**Qualified Bid**":

(a)     Identity: Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation. Each Bid must also include contact information for the specific persons, including financial advisors and counsel, if any, that the Receiver's advisors should contact regarding such Bid.

(b)     Purchase Price. Each Bid must clearly set forth the purchase price in U.S. dollars to be paid for the Property and the Related Property (the "**Purchase Price**").

(c)     Deposit. On or before the Bid Deadline, each Bid must be accompanied by a deposit in the amount equal to two percent (2%) of the aggregate cash Purchase Price of the Bid, to be held together with other bidders' cash deposits in a non-interest-bearing account to be established by the Receiver or Pivot (the "**Deposit**"). For the avoidance of doubt, the Deposit requirement only applies to the cash Purchase Price of a Bid and does not apply to the credit bid portion of a Bid.

(d)     Assumption of Obligations. Each Bid must clearly state which liabilities the Bidder agrees to assume, if any.

(e)     Qualified Bid Documents. Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid, as well as all other material documents integral to such Bid (the "**Qualified Bid Documents**"). Such documents may be based on and marked against the Stalking Horse PSA or an alternative form of Purchase and Sale Agreement provided or agreed to by the Receiver (including a summary of each Bid as may be reasonably requested by the Receiver). Any modifications to the form of documents

-7-

304630313

provided by the Receiver must be in form and substance acceptable to the Receiver, in consultation with the Consultation Parties, to be considered Qualified Bid Documents.

(f)   No Material Modifications. After either the Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder is filed with the Court, unless otherwise agreed by the Receiver in writing, all further Bids must be submitted on the Stalking Horse PSA or an alternative form of Purchase and Sale Agreement provided or agreed to by the Receiver, and include all material terms in the applicable Purchase and Sale Agreement, including the following:

1.   Property: With the exception of credit bids, the Bid must be for all Property and Related Property, unless otherwise agreed to in writing by the Receiver in his sole discretion, in consultation with the Consultation Parties.

2.   No Representations and Warranties by the Receiver: The sale will be "as is" and "with all faults," without representations or warranties, and without recourse. Each Bidder will represent that it has relied solely on its independent diligence, and not on any representations of the Receiver or his agents, in formulating and submitting its Bid.

3.   Free and Clear: The sale will be free and clear of liens, claims and encumbrances, other than easements, rights of way and other encumbrances running with the land, (the "**Interests**") to the fullest extent permitted by applicable law.

If a Notice of No Stalking Horse Bidder is filed and Plaintiff determines not to execute a Credit Bid PSA, the Receiver reserves the right to withdraw the Bidding Procedures with respect to the Property subject to Plaintiff's liens and cancel the Auction.

(g)   Committed Financing. To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution documented to the satisfaction of the Receiver that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Receiver.

-8-

304630313

(h)    Contingencies. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

(i)    Time Frame for Closing. Closing must occur within seven (7) days of the order approving the sale of the Property (the "**Sale Order**") becoming a final, non-appealable order, unless otherwise agreed in writing by the Receiver in consultation with the Consultation Parties.

(j)    Binding and Irrevocable. A Qualified Bidder's Bid shall be binding and irrevocable unless and until the Receiver accepts a higher Bid and such Qualified Bidder is not selected as the Backup Bidder.

(k)    Expenses and Disclaimer of Fees. Apart from the Qualified Bid submitted by the Stalking Horse Bidder, if any, each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, with the exception of the Stalking Horse Bidder, no Qualified Bidder will be permitted to request, nor be granted by the Receiver, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis.

(l)    Authorization. Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Receiver) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(m)    Completed Diligence. Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Property and Related Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property or the Related Property in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Property or Related Property or the

-9-

304630313

completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Bid.

(n)     Adherence to Bidding Procedures. By submitting its Bid, each Bidder shall be deemed to have agreed to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid not in conformity with these Bidding Procedures or seek to reopen the Auction after conclusion of the Auction.

(o)     Regulatory Approvals and Covenants. A Bid must set forth each regulatory approval required for the Bidder to consummate the sale, if any, and the time period within which the Bidder expects to receive such regulatory approvals.

(p)     Consent to Jurisdiction. Each Qualified Bidder shall be deemed to have submitted to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Receiver's qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the sale documents, and the Closing, as applicable.

(q)     Joint Bids. Joint Bids are permitted, provided that the Qualified Bidders have complied with the Joint Bid Discussion Protocol.

(r)     Bid Deadline. Each Bid must be transmitted via email (in .pdf or similar format) so as to be actually received on or before the Bid Deadline by: (a) Counsel to the Receiver: Katten Muchin Rosenman LLP, Attn: John Mitchell (john.mitchell@katten.com) and Michaela Crocker (michaela.crocker@katten.com); (b) the Receiver's investment banker, Capstone Capital Markets, LLC, Attn: Skye Root (sroot@capstonepartners.com), Arnav Virmani (avirmani@capstonepartners.com), and Hunter Costello (hcostello@capstonepartners.com); and (c) Counsel for Plaintiffs: Seyfarth Shaw LLP, Attn: Jason DeJonker (JDeJonker@seyfarth.com) and Nicholas Marcus (nmarcus@seyfarth.com).

9.    **Designation of Stalking Horse; Election to Move Forward with Credit Bid**

Pursuant to the Bidding Procedures Order, the Receiver is authorized, but not obligated, in his discretion and in consultation with the Consultation Parties, to designate a "**Stalking Horse Bidder**" for the Property and Related Property by filing a Notice of Stalking Horse Bidder with the Court, which will entitle such Stalking Horse Bidder to bid protections not to exceed two percent

-10-

304630313

(2%) in the aggregate of the initial cash Purchase Price set forth in the Stalking Horse PSA (the "**Bid Protections**"). If the Receiver designates a Stalking Horse Bidder, he will file a Notice of Stalking Horse Bidder with the Court that will include a purchase and sale agreement with the Stalking Horse (the "**Stalking Horse PSA**") and the proposed form of order approving a sale to the Stalking Horse Bidder. Unless otherwise agreed by the Receiver in writing, Bidders wishing to submit Qualified Bids must submit their Bid in the form of the Stalking Horse PSA or an alternative form of Purchase and Sale Agreement provided or agreed to by the Receiver.

Alternatively, the Receiver, in consultation with the Consultation Parties, may chose not to designate a Stalking Horse Bidder. If the Receiver does not designate a Stalking Horse Bidder, he may file a Notice of No Stalking Horse Bidder with the Court that will include a purchase and sale agreement with one or more Plaintiffs, or their assignees (the "**Credit Bid PSA**"). In that instance, Bidders wishing to submit Qualified Bids must submit their Bid on the form of Credit Bid PSA attached to the Notice of No Stalking Horse Bidder. Parties submitting credit bids will not be eligible to receive Bid Protections.

**10.    Auction**

If the Receiver receives more than one Qualified Bid for the Property and Related Property, he will conduct the Auction to determine the Successful Bidder.

No later than the commencement of the Auction, the Receiver shall notify each Qualified Bidder of the highest or otherwise best Qualified Bid for the Property and Related Property, as determined in the Receiver's reasonable business judgment, in consultation with the Consultation Parties, as applicable (the "**Baseline Bid**"). The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Receiver reasonably deems, in consultation with the Consultation Parties, relevant to the value of the Qualified Bid, including, but not limited to: (a) the amount and nature of the total consideration payable to the Receiver; (b) the likelihood of the Qualified Bidder's ability to close the sale and the timing thereof; and (c) the net economic effect of the value to be received by the Receiver from the transaction contemplated by the Qualified Bid Documents, including in light of the effect of any Bid Protections (collectively, the "**Bid Assessment Criteria**").

-11-

304630313

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

The Auction shall take place on the Auction Date or such later date and time, and by such other means, as selected by the Receiver in consultation with the Consultation Parties. The Auction shall be conducted in a timely fashion according to these Bidding Procedures, and the Receiver shall maintain a written or recorded transcript of the Auction. Remote participation by Qualified Bidders at the Auction will be permitted in the Receiver's discretion.

(a)   **The Receiver Shall Conduct the Auction.**

The Receiver or his designee shall direct and preside over the Auction. At the start of the Auction, the Receiver or his designee shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids. The Receiver shall maintain a written or recorded transcript of the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only (i) Qualified Bidders and their legal and financial advisors and (ii) the members of, and advisors to, the Consultation Parties shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person or via Zoom and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to Bid at the Auction. The Receiver may allow other parties to attend the Auction in his discretion.

(b)   **Terms of Overbid.**

"**Overbid**" means any Bid made at the Auction by a Qualified Bidder after the Receiver's announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

i.   *Minimum Initial Overbid.* The first overbid at the Auction (the "**Minimum Initial Overbid**") shall be in an amount not less than the purchase price set for in either the Stalking Horse PSA or Credit Bid PSA, as applicable, plus an amount equal to the Bid Protections, if any, plus an additional $1 million (the "**Initial Overbid Amount**"). The amount of the Initial Overbid shall be included in the Notice of Stalking Horse Bidder or Notice of No Stalking Horse Bidder, as applicable, filed with the Court.

-12-

304630313

ii.     *Minimum Overbid Increment*. Any Overbid following the Minimum Initial Overbid or following any subsequent Prevailing Highest Bid (as defined below) for the Property and Related Property shall be in increments of $1 million. The Receiver may establish different overbid increments at the Auction, as determined by the Receiver in the exercise of his business judgment, in consultation with the Consultation Parties.

iii.     *Conclusion of Each Overbid Round*. Upon the solicitation of each round of Overbids, the Receiver may announce a deadline (as he may, in his business judgment, extend from time to time, the "**Overbid Round Deadline**") by which time any Overbids must be submitted to the Receiver.

Subsequent to each Overbid Round Deadline, the Receiver shall announce whether he has identified, after consultation with the Consultation Parties, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Receiver as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**"). The Receiver shall describe to all Qualified Bidders the material terms of any new Overbid designated by him as the Prevailing Highest Bid as well as the value attributable by the Receiver (after consultation with the Consultation Parties) to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

iv.     *Overbid Alterations*. An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable than any prior Bid or Overbid, as determined in the Receiver's reasonable business judgment, in consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

(c)     **Consideration of Overbids.**

The Receiver reserves the right, in his reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Receiver and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide

-13-

304630313

the Receiver with such additional evidence as the Receiver, in his reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

(d)    **Closing the Auction.**

i.    The Auction shall continue until there is only one Qualified Bid that the Receiver determines, in his reasonable business judgment, and in consultation with the Consultation Parties, to be the highest or otherwise best Bid. Such Qualified Bid shall be declared the "**Successful Bid**," and such Qualified Bidder, the "**Successful Bidder**" and at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-Prevailing Highest Bid. The Receiver's acceptance of the Successful Bid is conditioned upon Court approval at the Sale Hearing.

ii.    The Receiver shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

iii.    No later than either the filing of the Notice of Cancellation of Auction or the Deadline to Designate Successful Bidder, as applicable, the Receiver shall cause the Qualified Bid Documents for the Successful Bid and Backup Bid (defined below) to be filed with the Court.

(e)    **No Collusion; Good Faith *Bona Fide* Offer**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good-faith bona fide offer, and it intends to consummate the proposed transaction if selected as the Successful Bidder.

-14-

304630313

(f)    **Cancellation of Auction.**

If the Receiver does not receive a competing Qualified Bid by the Bid Deadline, then the Receiver may file a notice cancelling the Auction and designating the sole Qualified Bidder as the Successful Bidder.

**11.    Backup Bidder**

The Qualified Bidder with the next highest or otherwise second-best Qualified Bid (the "**Backup Bid**") at the Auction, as determined by the Receiver in the exercise of his business judgment and in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "**Backup Bidder**"). The Receiver shall announce the identity of any Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder at the conclusion of the Auction at the same time the Receiver announces the identity of the Successful Bidder. Unless otherwise agreed in writing by the Receiver in consultation with the Consultation Parties, the Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the Successful Bidder. The Backup Bidder's Deposit shall be held by the Receiver until the closing of the transaction with the Successful Bidder. If the Successful Bidder fails to consummate its Successful Bid, the Receiver may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed the Successful Bidder for all purposes. The Receiver will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Receiver, and the Receiver specifically reserves the right to seek all available remedies against the defaulting Successful Bidder, including specific performance.

**12.    Reservation of Rights.**

The Receiver reserves the right to modify these Bidding Procedures in his reasonable business judgment, and in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale

-15-

304630313

Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids.

**13.   Sale Hearing.**

The hearing to approve the sale (the "**Sale Hearing**") shall take place in the courtroom of the Honorable Kirk E. Sherriff in the United States District Court for the Eastern District of California, Robert E. Coyle U.S. Courthouse, 2500 Tulare Street, Courtroom 6, 7th Floor, Fresno, California on **September 8, 2026, at 1:30 p.m. (PT)**. With the consent of the Successful Bidder (in consultation with the Consultation Parties), or as otherwise directed by the Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket in the above-captioned case. At the Sale Hearing, the Receiver shall present the Successful Bid to the Court for approval.

**14.   Return of Deposit.**

The Deposit of the Successful Bidder shall be applied to the Purchase Price at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Receiver in his sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) on or within five (5) business days after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Receiver will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Receiver as damages, in addition to any and all rights, remedies, or causes of action that may be available to the Receiver, and the Receiver shall be free to consummate the proposed transaction with the Backup Bidder without the need for an additional hearing or order of the Court.

**15.   Additional Provisions**

(a)     **Plaintiffs' Rights**

In the event the Sale Order has not become a final, non-appealable order within thirty-one (31) days of its entry and Closing has not occurred, then: (a) the Receiver, with the Plaintiffs' prior written consent, shall have the right to terminate the Successful Bidder's purchase and sale

-16-

304630313

agreement (the "**Successful Bidder's PSA**") pursuant to the terms thereof; (b) Plaintiffs shall be entitled to take all steps necessary to hold a foreclosure auction for the Property under applicable state law, including placing credit bids for the Property and taking ownership thereof; and (c) after such foreclosure, if Plaintiffs and/or their affiliates hold legal title to the Property and provided that no events of default existed under the Successful Bidder's PSA prior to the Receiver's termination thereof, Plaintiffs and/or their affiliates shall sell, and Successful Bidder shall purchase, the Property on the same terms set forth in the Successful Bidder's PSA (save and except for provisions applicable solely to the Receiver in his capacity as a Court-appointed receiver).  In the event the Successful Bidder fails to close, this provision shall apply to the Back-Up Bidder as Successful Bidder. In the event that the sale described in subsection (c) above does not close by the later of thirty (30) days after the Plaintiffs and/or their affiliates take legal title to the Property or thirty (30) days after a Back-Up Bidder is selected as and deemed to be the Successful Bidder, as applicable, then Plaintiffs shall have no obligation to consummate such sale; *provided, however*, that the foregoing thirty (30) day period may be extended by Plaintiffs in their sole and absolute discretion. In the event that the foreclosure described in subsection (b) above or the sale described in subsection (c) above are enjoined for any reason, whether by court order or otherwise, and such injunction has not been terminated, dismissed, or otherwise removed within thirty (30) days of its commencement, then Plaintiffs may terminate the sale in their sole and absolute discretion. For the avoidance of doubt, nothing in this paragraph is intended to, and shall not be interpreted to, limit or restrict the rights or remedies available to Plaintiffs under the applicable loan documents, at law, or in equity.

      (b)    **Rights of First Refusal and Similar Rights**

     Holders of rights of first refusal to purchase the Property or similar rights, if any, must comply with all terms of these Bidding Procedures, including the requirements for designation of Qualified Bidders and Qualified Bids, the purchase of the Property in its entirety, and the timelines set forth herein.

-17-

304630313

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

## EXHIBIT 1 TO BIDDING PROCEDURES

### List of APNs

| Map Location | APN Number | Assessor Acres |
|---|---|---|
| Bluhm Garcia | 026-300-034 | 320.00 |
| Bluhm Garcia | 026-320-006 | 640.00 |
| Bluhm Garcia | 026-320-017 | 479.10 |
| Bluhm Garcia | 026-320-020 | 640.00 |
| Brannan Ranch | 017-080-84s | 245.64 |
| Calaveras Ranch | 038-090-37S | 310.63 |
| Calaveras Ranch | 038-160-10S | 40.00 |
| Calaveras Ranch | 038-160-13 | 120.00 |
| Calaveras Ranch | 038-090-36S | 322.98 |
| Calaveras Ranch | 040-030-34S | 273.34 |
| Calaveras Ranch | 040-030-41S | 25.31 |
| Calaveras Ranch | 040-060-20S | 161.46 |
| Calaveras Ranch | 040-060-22S | 158.79 |
| Calaveras Ranch | 040-060-25S | 315.15 |
| Huron | 075-050-07 | 160.00 |
| Huron | 075-070-16S | 24.63 |
| Huron | 075-070-17S | 130.56 |
| Huron | 075-070-22S | 0.06 |
| Huron | 075-070-36S | 78.78 |
| Huron | 075-070-50S | 76.60 |
| Huron | 075-070-53S | 155.50 |
| Huron | 075-070-55S | 162.10 |
| Huron | 075-050-08S | 160.00 |
| Huron | 075-050-50S | 319.49 |
| Huron | 075-070-28 | 152.80 |
| Huron | 075-070-29 | 155.15 |
| Huron | 075-070-30 | 157.58 |
| Huron | 075-070-31 | 160.00 |
| Huron | 075-070-43S | 40.00 |
| Huron | 075-070-46S | 79.08 |
| Huron | 075-070-47S | 77.22 |
| Huron | 075-070-48S | 156.30 |
| Huron | 075-070-56S | 436.06 |
| Huron | 078-020-47S | 220.47 |
| Huron | 078-020-54S | 403.30 |
| Huron | 078-041-01S | 99.00 |

-18-

304630313

| Map Location | APN Number | Assessor Acres |
|---|---|---|
| Huron | 078-041-02S | 82.56 |
| Huron | 078-041-17S | 50.70 |
| Huron | 078-060-02S | 47.62 |
| Huron | 078-060-03S | 173.68 |
| Huron | 078-060-39S | 130.65 |
| Huron | 078-060-57S | 634.77 |
| Huron | 078-060-65S | 127.60 |
| Huron | 078-060-80S | 129.62 |
| Huron | 078-060-85S | 164.63 |
| Huron | 078-060-86S | 90.44 |
| Huron | 078-060-87S | 86.59 |
| Huron | 078-060-88S | 85.53 |
| Huron | 078-080-55 | 159.36 |
| Huron | 078-130-06S | 130.00 |
| Huron | 078-130-07S | 219.99 |
| Huron | 078-130-11S | 160.00 |
| Huron | 078-130-23S | 257.80 |
| Huron | 078-140-02S | 37.98 |
| Huron | 078-140-04S | 40.00 |
| Huron | 078-140-05 | 40.00 |
| Huron | 078-140-06S | 19.40 |
| Huron | 078-140-07S | 19.40 |
| I-5 Ranch | 027-210-20S | 100.59 |
| I-5 Ranch | 027-210-29S | 60.29 |
| I-5 Ranch | 027-210-32S | 30.00 |
| I-5 Ranch | 027-210-33S | 30.00 |
| Kamm Avenue | 038-061-04 | 120.00 |
| Kamm Avenue | 038-061-55s | 160.62 |
| Kamm Avenue | 038-130-51s | 78.46 |
| Kamm Avenue | 038-130-86s | 19.91 |
| Kamm Avenue | 038-130-87s | 18.54 |
| Kamm Avenue | 038-141-60s | 73.49 |
| Kamm Avenue | 045-040-02 | 44.78 |
| Kamm Avenue | 045-040-04S | 40.00 |
| Kamm Avenue | 045-040-08 | 25.00 |
| Kamm Avenue | 038-061-06 | 158.83 |
| Kamm Avenue | 038-061-23S | 82.29 |
| Kamm Avenue | 038-061-28S | 37.61 |
| Kamm Avenue | 038-061-31S | 40.00 |
| Kamm Avenue | 038-061-32S | 10.37 |

304630313

| Map Location | APN Number | Assessor Acres |
|---|---|---|
| Kamm Avenue | 038-061-33S | 28.96 |
| Kamm Avenue | 038-061-34S | 160.00 |
| Kamm Avenue | 038-061-58S | 487.83 |
| Kamm Avenue | 038-071-41S | 15.64 |
| Kamm Avenue | 038-071-42S | 57.00 |
| Kamm Avenue | 038-130-10s | 80.00 |
| Kamm Avenue | 038-130-11s | 80.00 |
| Kamm Avenue | 038-141-26 | 20.00 |
| Kamm Avenue | 038-141-27S | 20.00 |
| Kamm Avenue | 038-141-28S | 20.00 |
| Kamm Avenue | 038-141-29 | 60.00 |
| Kamm Avenue | 038-141-30 | 40.00 |
| Kamm Avenue | 038-141-31 | 55.86 |
| Kamm Avenue | 038-141-38S | 31.44 |
| Kamm Avenue | 038-141-41S | 158.18 |
| Kamm Avenue | 038-141-44S | 140.29 |
| Kamm Avenue | 038-141-49S | 158.18 |
| Kamm Avenue | 038-141-50S | 158.18 |
| Kamm Avenue | 038-141-58S | 100.00 |
| Kamm Avenue | 038-141-63S | 53.55 |
| Kamm Avenue | 038-210-13S | 53.33 |
| Kamm Avenue | 038-210-28S | 25.00 |
| Kamm Avenue | 038-210-82S | 106.66 |
| Kamm Avenue | 038-300-02 | 6.90 |
| Kamm Avenue | 038-300-03S | 9.21 |
| Kamm Avenue | 038-300-04S | 30.00 |
| Kamm Avenue | 038-300-05 | 22.50 |
| Kamm Avenue | 038-300-10 | 40.00 |
| Kamm Avenue | 038-300-11S | 40.00 |
| Kamm Avenue | 038-300-14S | 315.76 |
| Kamm Avenue | 038-300-18S | 77.88 |
| Kamm Avenue | 038-300-22 | 18.41 |
| Kamm Avenue | 038-300-27S | 77.88 |
| Kamm Avenue | 038-300-28S | 116.83 |
| Kamm Avenue | 038-300-29S | 158.46 |
| Kamm Avenue | 045-040-07 | 25.00 |
| Kamm Avenue | 038-071-43S | 35.23 |
| Kamm Avenue | 038-071-44S | 41.05 |
| Kamm Avenue | 038-071-46S | 135.78 |
| Kamm Avenue | 038-071-59 | 2.19 |

304630313

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

| Map Location | APN Number | Assessor Acres |
|---|---|---|
| Kamm Avenue | 038-130-19S | 320.00 |
| Kamm Avenue | 038-130-56S | 78.45 |
| Kamm Avenue | 038-130-58S | 78.46 |
| Kamm Avenue | 038-141-01S | 160.00 |
| Kamm Avenue | 038-141-02 | 38.62 |
| Kamm Avenue | 038-141-03 | 38.67 |
| Kamm Avenue | 038-141-04 | 26.07 |
| Kamm Avenue | 038-141-17 | 20.00 |
| Kamm Avenue | 038-141-19 | 60.00 |
| Kamm Avenue | 038-141-52 | 40.00 |
| Kamm Avenue | 038-141-53 | 120.00 |
| Kamm Avenue | 038-141-54S | 38.10 |
| Kamm Avenue | 038-141-55S | 200.00 |
| Kamm Avenue | 038-141-56S | 77.88 |
| Kamm Avenue | 038-141-57 | 51.23 |
| Kamm Avenue | 038-141-62S | 164.87 |
| Kamm Avenue | 038-210-01 | 160.00 |
| Kamm Avenue | 038-210-02S | 160.00 |
| Kamm Avenue | 038-210-03S | 160.00 |
| Kamm Avenue | 038-210-30S | 160.00 |
| Kamm Avenue | 038-210-32S | 20.00 |
| Kamm Avenue | 038-210-33S | 20.00 |
| Kamm Avenue | 038-210-34S | 20.00 |
| Kamm Avenue | 038-210-35S | 10.00 |
| Kamm Avenue | 038-210-36S | 10.00 |
| Kamm Avenue | 038-210-37S | 80.00 |
| Kamm Avenue | 038-210-38S | 160.00 |
| Kamm Avenue | 038-210-39S | 40.00 |
| Kamm Avenue | 038-210-42S | 160.00 |
| Kamm Avenue | 038-210-55S | 73.51 |
| Kamm Avenue | 038-130-02 | 160.00 |
| Kamm Avenue | 038-210-06 | 40.00 |
| Kamm Avenue | 038-210-08 | 80.00 |
| Kamm Avenue | 038-210-09 | 80.00 |
| Kamm Avenue | 038-210-10S | 160.00 |
| Kamm Avenue | 038-210-14S | 80.00 |
| Kamm Avenue | 038-210-15S | 80.00 |
| Kamm Avenue | 038-210-26 | 25.00 |
| Kamm Avenue | 038-210-27S | 25.00 |
| Kamm Avenue | 038-210-41S | 20.00 |

304630313

| Map Location | APN Number | Assessor Acres |
|---|---|---|
| Kamm Avenue | 038-210-43 | 40.00 |
| Kamm Avenue | 038-210-44S | 120.00 |
| Kamm Avenue | 038-210-47S | 120.00 |
| Kamm Avenue | 038-210-54S | 80.00 |
| Kamm Avenue | 038-210-63S | 157.29 |
| Kamm Avenue | 038-210-68S | 69.99 |
| Kamm Avenue | 038-210-69S | 80.00 |
| Kamm Avenue | 038-210-70S | 80.00 |
| Kamm Avenue | 038-210-71S | 40.00 |
| Kamm Avenue | 038-210-74S | 160.00 |
| Kamm Avenue | 038-210-76S | 130.99 |
| Kamm Avenue | 038-210-77S | 10.00 |
| Kamm Avenue | 038-210-78S | 70.00 |
| Kamm Avenue | 038-210-79S | 62.21 |
| Kamm Avenue | 038-210-80S | 184.61 |
| Kamm Avenue | 038-270-01 | 20.00 |
| Lassen Ranch | 068-071-06S | 152.22 |
| Lassen Ranch | 068-071-07S | 162.15 |
| Lassen Ranch | 068-071-09S | 160.00 |
| Lassen Ranch | 068-071-36S | 161.00 |
| Lassen Ranch | 068-071-37S | 165.00 |
| Lassen Ranch | 068-071-38S | 157.00 |
| Lassen Ranch | 068-071-39S | 130.56 |
| Lassen Ranch | 068-071-40S | 161.56 |
| Lassen Ranch | 068-071-41S | 85.56 |
| Lassen Ranch | 068-071-42S | 22.56 |
| Logoluso | 027-040-13 | 160.00 |
| Logoluso | 027-050-17S | 320.00 |
| Logoluso | 027-110-11S | 40.00 |
| Logoluso | 027-110-13S | 80.00 |
| Mt. Whitney Ranch | 058-050-42S | 320.00 |
| Mt. Whitney Ranch | 058-050-43S | 320.00 |
| Mt. Whitney Ranch | 050-030-22S | 523.57 |
| Mt. Whitney Ranch | 050-030-43S | 160.00 |
| Mt. Whitney Ranch | 050-060-29S | 160.00 |
| Mt. Whitney Ranch | 050-060-30S | 157.58 |
| Mt. Whitney Ranch | 050-060-41S | 119.90 |
| Mt. Whitney Ranch | 050-060-43S | 105.79 |
| Mt. Whitney Ranch | 050-070-24S | 160.00 |
| Mt. Whitney Ranch | 050-070-33S | 118.96 |

304630313

| Map Location | APN Number | Assessor Acres |
| --- | --- | --- |
| Mt. Whitney Ranch | 050-070-35S | 160.00 |
| Mt. Whitney Ranch | 050-070-36S | 160.00 |
| Mt. Whitney Ranch | 050-070-37S | 320.00 |
| Mt. Whitney Ranch | 050-100-03S | 160.00 |
| Mt. Whitney Ranch | 050-100-26S | 319.75 |
| Mt. Whitney Ranch | 050-100-28S | 173.00 |
| Mt. Whitney Ranch | 058-050-41S | 320.57 |
| Mt. Whitney Ranch | 058-050-45S | 160.00 |
| Mt. Whitney Ranch | 058-090-38S | 160.00 |
| Mt. Whitney Ranch | 058-090-39S | 160.00 |
| Mt. Whitney Ranch | 058-090-48S | 40.00 |
| Mt. Whitney Ranch | 058-090-49S | 60.00 |
| Mt. Whitney Ranch | 058-090-51S | 120.00 |
| Mt. Whitney Ranch | 058-090-52S | 67.24 |
| Mt. Whitney Ranch | 058-090-53S | 160.00 |
| Mt. Whitney Ranch | 058-090-54S | 192.73 |
| Mt. Whitney Ranch | 060-020-25S | 335.29 |
| Mt. Whitney Ranch | 060-020-48S | 320.00 |
| Mt. Whitney Ranch | 050-030-45S | 160.00 |
| Mt. Whitney Ranch | 050-030-46S | 100.00 |
| Mt. Whitney Ranch | 050-030-47S | 60.00 |
| Mt. Whitney Ranch | 050-030-48S | 160.00 |
| Mt. Whitney Ranch | 058-050-26S | 160.00 |
| Mt. Whitney Ranch | 058-050-35S | 639.27 |
| Mt. Whitney Ranch | 058-050-44S | 160.00 |
| Mt. Whitney Ranch | 060-020-34S | 48.80 |
| Mt. Whitney Ranch | 060-020-43S | 223.94 |
| Mt. Whitney Ranch | 060-020-49S | 111.20 |
| Mt. Whitney Ranch | 060-020-51S | 35.12 |
| Mt. Whitney Ranch | 060-020-55S | 241.70 |
| Mt. Whitney Ranch | 060-020-60S | 40.05 |
| Panoche Road | 027-050-68S | 66.79 |
| Panoche Road | 027-110-30S | 25.07 |
| Panoche Road | 027-110-37S | 496.00 |
| Panoche Road | 027-110-40S | 320.00 |
| Panoche Road | 027-110-41S | 266.59 |
| Panoche Road | 027-200-02S | 16.80 |
| Panoche Road | 027-200-04S | 80.01 |
| Primestar | 017-080-46s | 41.45 |
| Primestar | 017-080-72s | 249.87 |

-23-

304630313

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

| Map Location | APN Number | Assessor Acres |
|---|---|---|
| Windfall | 017-060-06s | 80.00 |
| Windfall | 027-180-45s | 8.45 |
| Windfall | 027-180-46s | 613.32 |

304630313

EXHIBIT C

FORM OF SALE ORDER

(ATTACHED)

20039.001/Westlands A&R PSA - Prudential (EX)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE,<br><br>Defendants. | No. 1:24-cv-01102-KES-SAB<br><br>**[PROPOSED] ORDER (I) AUTHORIZING SALE OF REAL ESTATE FREE AND CLEAR OF INTERESTS; (II) AUTHORIZING THE PAYMENT OF SALE-RELATED COSTS; AND (III) GRANTING RELATED RELIEF (WESTLANDS)**<br><br>Related to Dkt. No. _____<br><br>Action Filed: September 16,2024 |

Before the Honorable Kirk E. Sherriff, United States District Judge, is the *Notice of Proposed Auction and Sale of Real Property (Westlands)* [Dkt. No. ___] (the "**Sale Notice**") filed by Lance Miller, solely in his capacity as Court-appointed receiver in the above-captioned case (the "**Receiver**") for entry of an order (a) authorizing the Receiver to sell the Property[1] free and clear of

---

[1] Capitalized terms used herein shall have the meanings ascribed in the Purchase and Sale Agreement attached hereto as **Exhibit A** (the "**PSA**")

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

liens, claims, and encumbrances, other than easements, rights of way, and other encumbrances running with the land, to the fullest extent permitted by law (collectively, the "**Interests**") with such Interests attaching to the proceeds of the sale ("**Sale Proceeds**") with the same force and in the same priority as existed immediately prior to the Closing Date; (b) authorizing the Receiver to pay, without further order of the Court, all sale-related costs and expenses, including break-up fees (if applicable), commissions, and transaction fees (but excluding the Receiver's attorneys' fees); and (c) granting related relief. The Court hereby finds that:[2] (a) the marketing and sale of the Property was held in accordance with the order establishing auction and bid procedures [Dkt. No. ___] (the "**Bidding Procedures Order**"); (b) it has jurisdiction over the Property and the parties in this case, including exclusive jurisdiction over the administration, control, and possession of the Property; (c) it has the statutory authority to enter this Order, including pursuant to 28 U.S.C. § 2001 and Rule 55 of the Federal Rules of Civil Procedure; and (d) due and proper notice of the Sale Notice was given  and no other or further notice is necessary. The Court further finds that:

A.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rule 54(b) of the Federal Rules of Civil Procedures, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

B.      The Court entered the Bidding Procedures Order on _____, 2026, that, among other things, established the procedures in connection with the marketing, auction, and sale of the Property (the "**Bidding Procedures**") and granted related relief.

C.      As demonstrated by (i) the testimony and other evidence submitted by declaration and adduced at the Sale Hearing, including the declarations submitted by Lance Miller and Sky Roote and (ii) the representations of counsel made on the record at the Sale Hearing (if held), all aspects of the sale process, including notice thereof, have been conducted in compliance with the Bidding Procedures and Bidding Procedures Order.

---

[2] The findings and conclusion set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, or a conclusion of law a finding of fact, they are adopted as such. The Court's finding and conclusions set forth at on the record at the Sale Hearing are incorporated herein by reference.

304507377v3

D.      In compliance with the Bidding Procedure Order, the Receiver published notice of the Auction and proposed sale in (a) *The Bakersfield Californian*, (b) *The Business Journal* and (c) *The Hanford Sentinel* newspapers on September 19, 2025, September 26, 2025, October 3, 2025, and October 10, 2025. *See Proof of Service by Publication* [Dkt. No. 372]

E.      The Receiver has demonstrated good, sufficient, and sound business purpose and justifications for the sale and other transactions contemplated in the PSA, and such actions are an appropriate exercise of the Receiver's business judgment and in the best interest of the receivership estate.

F.      The Receiver conducted the marketing and auction process in accordance with the order appointing the Receiver in this case (as amended, the "**Receivership Order**"), the Bidding Procedures, and the Bidding Procedures Order.  The marketing and auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Property, and Receiver afforded potential purchasers a full and fair opportunity to make higher and better offers for the Property.

G.      The Receiver conducted the sale process for the Property without engaging in any collusion and in accordance with the Bidding Procedure and the Bidding Procedures Order. Following the Bid Deadline and at the conclusion of the Auction, the Receiver determined in the sound exercise of his business judgment, in consultation with Plaintiffs, that _____ ("**Buyer**") submitted the highest or otherwise best offer for the Property.

H.      The Receiver and Buyer have acted at arm's length and in good faith with respect to the proposed sale, and the Purchase Price represents the highest or otherwise best offer for the Property. The Receiver's determination that the PSA executed by Buyer constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Receiver's business judgment.

I.      The purchase price for the Property constitutes (i) reasonably equivalent value under the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any

304507377v3

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

other applicable laws of the United States, any state, territory or possession of the United States or the District of Columbia.

J.    Except as expressly set forth in the PSA, the Buyer shall have no liability, responsibility, or obligations of any kind or nature whatsoever for any Interest of or against the Defendants, or otherwise related to the Property, by reason of the transfer of the Property to the Buyer.  The Buyer is not acquiring or assuming any Interest, except as expressly set forth in the PSA.

K.    Pursuant to this Order and the Receivership Order, the Receiver has full power and authority to execute, deliver, and perform the obligations under the PSA and all other documents and transactions contemplated thereby and no consents or approvals, other than those expressly provided for herein or in the PSA, are required for the Receiver to consummate the sale transaction. As of the Closing Date, the transfer of the Property to the Buyer will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Defendants and the Receiver in and to the Property free and clear of all Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the PSA.

L.    The Buyer would not have entered into the PSA and would not consummate the sale if the transfer of the Property were not free and clear of all Interests (other than those contained in the PSA, as applicable), if the Buyer would, or in the future could, be liable for any such Interests, or if any such Interests would or could be asserted against the Buyer after the closing of the sale.  Sale of the Property other than free and clear of Interests, and without the protections of this Order, would impact materially and adversely the value the Receiver would be able to obtain for the Property. In addition, Plaintiffs have consented to the sale of the Property free and clear of their respective Interests. Other holders of Interests, if any, who did not object, or who withdrew their objections, to the Sale Notice are deemed to have consented. Therefore, approval of the PSA and the consummation of the sale of the Property free and clear of Interests is appropriate under 28 U.S.C. § 2001, the Receivership Order and the interests of equity, and is in the best interests of the Receivership estate, creditors, and other parties in interest.

304507377v3

M.    Buyer is the designated Successful Bidder and the Buyer's PSA is designated as the Successful Bid in accordance with the Bidding Procedures.

N.    **[_____, a _____ limited liability company  (the "Back-up Bidder") is designated as the Back-up Bidder and Back-up Bidder's purchase and sale agreement (the "Back-up PSA"), which is attached hereto as <u>Exhibit B</u>, is designated as the Back-up Bid. The Back-up Bidder has compiled in all respect with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Back-up PSA.]**

O.    The Receiver's (i) publication of notice of the opportunity to purchase the Property, the Bidding Procedures, and solicitation of bids for the Property as set forth above, (ii) solicitation of bids for the Property through the Receiver's and his professionals' efforts to market the Property, and (iii) conduct of the Auction in Fresno, California, establish the Receiver's satisfaction of the public sale requirements in 28 U.S.C. §§ 2001 and 2002. To the extent the Receiver has not fully satisfied the provisions of 28 U.S.C. §§ 2001 and 2002, he is excused from compliance for cause shown.

Accordingly, it is hereby:

**ORDERED** that the Receiver's request to sell the Property (including the assignment of any applicable contracts to the extent set forth in the PSA) is granted as set forth herein and all objections to the Sale Notice, to the extent not resolved or withdrawn on the record, are overruled on the merits. All persons and entities who received notice of the Sale Notice and/or the Sale Hearing that failed to timely object thereto as deemed to have consented to the relief sought in the Motion and set forth in this Order.

**IT IS FURTHER ORDERED** that the Receiver is authorized to enter into and consummate the transactions set forth in the PSA with Buyer or its assignee as the Successful Bidder in accordance with the Bidding Procedures Order **[or, to the extent Buyer is unwilling or unable to close under the PSA, to Back-up Bidder pursuant to the Back-up Bidder PSA]**. The Receiver is authorized to act on behalf of Defendants in connection with the sale and conveyance of title to the Property to Buyer and no other consents or approvals are necessary or required for the Receiver to carry out the sale and conveyance. All persons and entities are hereby prohibited and enjoined

304507377v3

from taking any action that would adversely affect or interfere with the ability of the Receiver to sell and transfer the Property in accordance with the terms of this Order or the PSA.

**IT IS FURTHER ORDERED** that the Receiver is authorized to sell the Property pursuant to the terms of the PSA.

**IT IS FURTHER ORDERED** that the Receiver is authorized to sell the Property to Buyer free and clear of Interests, with such Interests attaching to the Sale Proceeds with the same force and in the same priority as existed immediately prior to the Closing, and such sale shall be free and clear of any rights of redemption or repurchase of any Defendant in this Case.

**IT IS FURTHER ORDERED** that service of the Sale Notice and the PSA upon the holders of any contractual rights of first offer or rights of first refusal encumbering the Property constitutes written notice of the proposed sale sufficient to satisfy any notice obligation arising under such agreements. Any holder of a right of first offer or right of first refusal to purchase a portion of the Property who failed to timely object to the Sale Notice or to otherwise provide written notice of its intent to exercise such right to purchase prior to the deadline to object to the sale is deemed to have waived and released such right to purchase with respect to the sale of the Property to Buyer, and the Property shall be conveyed to Buyer free and clear of any claims arising from any such unexercised right of first offer or right of first refusal.

**IT IS FURTHER ORDERED** that Buyer shall not, by virtue of its acquisition of the Property in this sale, be held liable for any Interests or obligations that arose prior to the close of the sale of the Property, and Buyer shall not be deemed to be the successor-in-interest of Receiver or any other person or entity with respect to any Interests or obligations related to the Property that arose prior to such close of sale or be liable as a successor with respect to the same.

**IT IS FURTHER ORDERED** that the Receiver is authorized to pay, without further Court order, all sale-related costs and expenses, including break-up fees (if applicable), closing costs, real estate taxes, title insurance, prorations, recording fees, and commissions (but specifically excluding attorneys' fees), with the net proceeds payable to Plaintiffs in partial satisfaction of their liens.

**IT IS FURTHER ORDERED** that the Receiver is authorized to enter into any documents reasonably necessary or desirable to implement the terms of this Order and effectuate the sale of the

6

304507377v3

Property and to take all further actions as may reasonably be requested by Buyer for the purposes of assigning, transferring, granting and conveying to the Buyer, as may be necessary or appropriate to the performance of the Receiver's obligations hereunder. The Receiver is also authorized to execute any documents on behalf of the Defendants to the extent necessary to complete.

**IT IS FURTHER ORDERED** that Property shall be transferred on an "AS IS," "WHERE, IS," and "WITH ALL FAULTS" basis. All sale documents shall provide language substantially similar to the following:  "Buyer acknowledges and agrees that Buyer is purchasing the Property 'as-is', 'where-is', and 'with all faults' as of the Closing Date, and Buyer further acknowledges and agrees that Seller hereby expressly disclaims any and all implied warranties concerning the condition, value and quality of the Property and any portions thereof, including, but not limited to, the implied warranties of habitability, merchantability, or fitness for a particular purpose.  Buyer acknowledges that no warranty has arisen through trade, custom or course of dealing with Seller."

**IT IS FURTHER ORDERED** that the holders of any Interests in the Property shall be prohibited from pursuing or asserting such Interests against Buyer, any of its assets, property, successors or assigns, or the Property.   The sale and assignment contemplated by the PSA is a sale of assets, and Buyer, including by virtue of its acquisition of the Property and assignment of contracts pursuant thereto (or by virtue of any other reason), shall not have any successor or vicarious liabilities of any kind or nature with respect to any alleged liability of Defendants or Receiver.

**IT IS FURTHER ORDERED** that, except with prior leave of this Court, all persons or entities with notice of this Order are prohibited from (i) commencing, prosecuting, continuing or enforcing any action against the Receiver related to the Property or the Sale Proceeds (except that such actions may be filed, but not prosecuted, to toll any statute of limitations), (ii) taking any action to interfere with the Receiver's management, control or possession of the Property or the Sale Proceeds, or (c) interfering in any manner with the exclusive jurisdiction of this Court over the Property or the Sale Proceeds.

**IT IS FURTHER ORDERED** that, on and after the Closing Date, any persons holding an Interest shall execute such documents and take all other actions as may be reasonably necessary to

304507377v3

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

further demonstrate the release of their respective Interests in the Property, as such Interests may have been recorded or otherwise filed.  Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other territory or jurisdiction in which Property is located, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.  All persons and entities that are in possession or control of any portion of the Property on the Closing Date shall promptly surrender possession and control thereof to the Buyer on, or as soon as reasonably practicable after, the Closing Date.

**IT IS FURTHER ORDERED** that the Receiver shall serve a copy of this Order on all parties known to have asserted an Interest in the Property. The Receiver is authorized to file a copy of this Order in any court where an action is pending involving the Property.

**IT IS FURTHER ORDERED** that nothing contained herein shall prevent the Receiver from seeking additional relief from this Court related to the PSA, the Property, or the Sale Proceeds.

**[IT IS FURTHER ORDERED that, should Buyer fail to close on the sale pursuant to and in accordance with the terms of the PSA (as may be amended by written agreement of the Receiver and Buyer), and without further order from the Court, the Receiver is hereby authorized and empowered to sell the Property to Back-up Bidder, execute and deliver the Back-up Bidder PSA, and to implement and consummate all of the transactions and perform all obligations contemplated by the Back-up Bidder PSA and this Sale Order as if the Back-up Bidder were the Successful Bidder at Auction, and the Back-up Bidder shall be entitled to all the findings and protections of this Sale Order provided to the Buyer. In the event of a sale to Back-up Bidder, Back-up Bidder shall be substituted as "Buyer" as defined in this Order.]**

**IT IS FURTHER ORDERED** that this Order and the terms and provisions of the PSA shall be binding on Defendants, all of Defendants' creditors (whether known or unknown), **[Buyer, Back-up Bidder,]** and their respective affiliates, successors and assigns, and any affected third parties, including, but not limited to, all persons asserting any interest in the Property. The provisions of this Order and the terms and provisions of the PSA, and any actions taken pursuant

304507377v3

hereto or thereto, shall survive the entry of any order for relief under title 11 of the United States Code, and shall be binding on Defendants and their successors and assigns, including any debtor-in-possession or any trustee appointed under title 11 of the United States Code, or similar custodian or fiduciary appointed over Defendants or their assets. Any title company and its agents may rely upon the provisions of this Order when issuing any policies of title insurance.

**IT IS FURTHER ORDERED** that any party seeking to stay, challenge, or appeal this Order or the sale authorized herein shall first obtain a stay from this Court and post a bond in an amount determined by the Court sufficient to protect Receiver, the receivership estate, secured creditors, and Buyer from damages, delay, and carrying costs resulting from such challenge.

**IT IS FURTHER ORDERED** that this Order shall be effective immediately upon entry.

**IT IS FURTHER ORDERED** that this Court shall retain exclusive jurisdiction over any disputes arising from or related to the Property, the PSA, or the implementation or interpretation of this Order.

Dated: _____

_____
Hon. Kirk E. Sherriff
United States District Court

304507377v3

EXHIBIT D

FORM OF RELEASE

_____ ("**Buyer**"), [as successor by assignment to _____], and LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB pending in the U.S. District Court for the Eastern District of California (the "**Court**") have previously entered into that certain Purchase and Sale Agreement and Joint Escrow Instructions dated _____ (as such may have been amended, prior to the date hereof, the "**Agreement**"). Unless otherwise indicated, capitalized terms not otherwise defined herein shall have the meanings given to them in the Agreement.

As material consideration for Seller's obligations under the Agreement, effective as of the Closing Date, Buyer on behalf of itself and its members, managers, partners, officers, directors, and employees (collectively, including Buyer, "**Releasors**"), hereby releases Seller, The Prudential Insurance Company of America, PAR U Hartford Life & Annuity Comfort Trust, PGIM Real Estate Finance, LLC, and their respective partners, professionals, agents, employees, shareholders, members, affiliates, principals, beneficiaries, subsidiaries, successors, and assigns (collectively with Seller, "**Releasees**") from any and all complaints, claims, charges, claims for relief, demands, suits, actions and causes of action, whether in law or in equity, which Buyer asserts or could assert at common law or under any statute, rule, regulation, order or law, whether federal, state or local, on any ground whatsoever, whether or not known, suspected, liquidated, contingent or matured, with respect to any event, matter, claim, occurrence, damages or injury (collectively, "**Claims**"), to the extent arising out of a condition or state of the Property, including the value of the Property or its suitability for Buyer's use.

Buyer, on behalf of itself, its successors, assigns and successors-in-interest and such other persons and entities, hereby waives the protections and benefits afforded California Civil Code Section 1542, acknowledging that its waivers and releases herein are being made after obtaining the advice of counsel and with full knowledge and understanding of the consequences and effects of such waivers and releases, and that California Civil Code Section 1542 provides as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

_____
**Buyer's Initials**

Notwithstanding anything stated to the contrary in this Agreement, the foregoing release shall not extend to (and shall expressly exclude): (i) claims arising from Seller's intentional fraud or willful misconduct; or (ii) claims for breach of Seller's express representations, warranties, covenants, or indemnities under the Agreement or any document delivered at Closing, but solely to the extent so provided for under such Agreement or document delivered at Closing.

-45-

20039.001/Westlands A&R PSA - Prudential (EX)

This Release is made by Buyer for the benefit of Seller and the Releasees on _____.

[Buyer Signature Block]

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT E

Form of Deed

Recording Requested By And

**When Recorded Return To:**

**Mail Tax Statements To:**

_____

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)

**GRANT DEED**

THE UNDERSIGNED RECEIVER DECLARES:

DOCUMENTARY TRANSFER TAX IS $_____

    ____Unincorporated Area     _____City of _____
    ___Computed on full value of interest or property conveyed, or
    ___Computed on full value less value of liens or encumbrances remaining at time of sale

    Assessor's Parcel No. _____

    FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Grantor**") pursuant to the _____("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California, does hereby **grant, sell and convey** to _____ ("**Grantee**")**,** the following described real property and improvements thereon, in the County of _____, State of California, and more particularly described as follows:

    See Exhibit A, attached hereto and incorporated by reference.

Together with all of Grantor's right, title and interest in and to the improvements and structures thereon, and all privileges, easements, appurtenances, rights-of way, and hereditaments appertaining to the same, and subject to all matters of record and all matters that would be reflected on an accurate survey at the time of recordation of this deed.

THE PROPERTY IS CONVEYED TO GRANTEE WITHOUT ANY COVENANTS OR WARRANTIES, EXPRESS OR IMPLIED, EXCEPT AS SET FORTH IN THE SALE ORDER, AND SPECIFICALLY EXCLUDES THOSE IMPLIED COVENANTS DESCRIBED IN CALIFORNIA CIVIL CODE SECTION 1113.

MAIL TAX STATEMENTS AS SET FORTH ABOVE

Dated: _____, 202_

                                   _____
                                   LANCE MILLER, solely in his capacity as Court-appointed Receiver

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT F

Form of Bill of Sale

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") pursuant to the _____("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California, does hereby sell, bargain, assign, transfer, convey and deliver to _____ ("**Buyer**"), all of Seller's rights, title, interests in and to the Improvements, Crops (for the 2026 crop year and following), Oil Gas and Mineral Rights, and Water Rights (in so far as any of the foregoing are personal property) (the "**Personal Property**"), as such terms are defined in that certain Purchase and Sale Agreement and Joint Escrow Instructions dated _____ by and between Buyer and Seller (the "**Purchase Agreement**"), for the real property situated in _____ County[ies], California as more particularly described in **Exhibit A** attached hereto and incorporated herein by reference.  The Personal Property is conveyed free and clear of all liens and encumbrances, except for the Permitted Exceptions (as defined in the Agreement).

IT IS UNDERSTOOD AND AGREED THAT BUYER HAS EXAMINED THE PERSONAL PROPERTY HEREIN SOLD AND THAT THIS SALE IS MADE "AS IS, WHERE IS" AND SELLER DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTY OTHER THAN THE WARRANTY OF TITLE SET FORTH ABOVE, AS TO THE PERSONAL PROPERTY INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed and delivered as of _____, 202__

SELLER


_____
LANCE MILLER, solely in his capacity as
Court-appointed Receiver


[attach legal description exhibit]

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT G

Form of Assignment Agreement

**ASSIGNMENT AGREEMENT**

THIS ASSIGNMENT AGREEMENT ("Assignment") is entered into effective as of _____, 202__ ("**Effective Date**"), by and between LANCE MILLER, solely in his capacity as court-appointed receiver (the ("**Assignor**"), pursuant to the _____("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California, and _____("**Assignee**").

A.      Assignor and Assignee are parties to that certain Purchase and Sale Agreement and Joint Escrow Instructions, dated _____ (the "**Purchase Agreement**"), with respect to the purchase and sale of the property described in Exhibit A, attached hereto and incorporated by reference (the "**Property**").

B.      Assignor and Assignee closed the purchase and sale of the Property on the date hereof, and pursuant to the Purchase Agreement and Sale Order, Assignor has agreed to assign to Assignee all of its right, title and interest under those contracts affecting the Property as set forth on Exhibit B, attached hereto and incorporated by reference (the "**Assigned Contracts**").

NOW, THEREFORE, Assignor and Assignee, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and agreed, agree as follows.

1.      Assignor hereby assigns to Assignee all its right, title, obligation, and interest as in and to the Assigned Contracts, subject to the receipt of any consents of the counterparties required thereunder, from and after the Effective Date.  Assignee hereby assumes the right, title, obligation, and interest, and agrees to perform all obligations of Assignor under the Assigned Contracts to be performed after the date hereof.

2.      Assignee shall indemnify, defend, and hold Assignor harmless from all obligations on the part of Assignee arising under the Assigned Contracts from and after the Effective Date, and from all claims, judgments, injuries, losses, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection therewith.  This indemnity shall not apply to any claims arising from Assignor's willful misconduct or material breach of representations specifically authorized by the Sale Order.

3.      Assignor has not previously assigned the Assigned Contracts and has, subject to the required consent of any counterparty, authority to assign the Assigned Contracts (and to the extent counterparty consent is required under any Assigned Contract and has been obtained, the consent is attached hereto as Exhibit C).  Other than as expressly set forth herein or in the Purchase Agreement, Assignor has made no, and disclaims any and all, express or implied warranties concerning the condition, value and quality of the property and any portions the Assigned Contracts.

-49-

20039.001/Westlands A&R PSA - Prudential (EX)

4.      Each party will, at any time and from time to time upon written request therefor, execute and deliver to the other party such documents as such other party may reasonably request in order to fully assign and transfer the Assigned Contracts, and cooperate in the obtaining of any additional consents which are required and not obtained prior to the date hereof.  Assignor shall use commercially reasonable efforts, consistent with its authority as receiver, to assist in obtaining such Consents

5.      In the event of any litigation initiated to enforce the terms of this Assignment, the prevailing party shall be entitled to an award for its reasonable attorneys' fees and expenses from the non-prevailing party.  This Assignment shall be governed by, interpreted under, and construed and enforced in accordance with, the laws of the State of California.  This Assignment may be executed in one or more counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one agreement.  This Assignment shall bind and inure to Assignor and Assignee and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first written above.


ASSIGNOR                                    ASSIGNEE

                                            **[assignee sig blocks]**

_____
LANCE MILLER, solely in his capacity as
Court-appointed Receiver




[attach legal description exhibit, contract list exhibit, and counterparty consents (if any)]

EXHIBIT H

Form of Pistachio Assumption Agreement

## PISTACHIO CONTRACT
## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS PISTACHIO CONTRACT ASSIGNMENT AND ASSUMPTION AGREEMENT ("Assignment") is entered into effective as of _____, 202__ ("**Effective Date**"), by and between LANCE MILLER, solely in his capacity as court-appointed receiver (the ("**Assignor**"), pursuant to the _____("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California, and _____("**Assignee**").

A.      Assignor and Assignee are parties to that certain Purchase and Sale Agreement and Joint Escrow Instructions, dated _____ (the "**Purchase Agreement**"), with respect to the purchase and sale of the property described in Exhibit A, attached hereto and incorporated by reference (the "**Pistachio Property**"), and other real property.

B.      Assignor and Assignee closed the purchase and sale of the Property on the date hereof, and pursuant to the Purchase Agreement and Sale Order, Assignor has agreed to assign to Assignee all of its right, title and interest under those pistachio purchase and/or marketing contracts affecting the Pistachio Property as set forth on Exhibit B, attached hereto and incorporated by reference (the "**Pistachio Contracts**").

NOW, THEREFORE, Assignor and Assignee, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and agreed, agree as follows.

1.      Assignor hereby assigns to Assignee all its right, title, obligation, and interest as in and to the Pistachio Contracts, subject to the receipt of any consents of the counterparties required thereunder, from and after the Effective Date.  Assignee hereby assumes the right, title, obligation, and interest, and agrees to perform all obligations of Assignor under the Pistachio Contracts to be performed after the date hereof.

2.      Assignee shall indemnify, defend, and hold Assignor harmless from all obligations on the part of Assignee arising under the Pistachio Contracts from and after the Effective Date, and from all claims, judgments, injuries, losses, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection therewith.  This indemnity shall not apply to any claims arising from Assignor's willful misconduct or material breach of representations specifically authorized by the Sale Order.

3.      Assignor has not previously assigned the Pistachio Contracts and has, subject to the required consent of any counterparty, authority to assign the Pistachio Contracts (and to the extent counterparty consent is required under any Pistachio Contract and has been obtained, the consent is attached hereto as Exhibit C).  Other than as expressly set forth herein or in the Purchase Agreement,

-51-

Assignor has made no, and disclaims any and all, express or implied warranties concerning the condition, value and quality of the property and any portions the Pistachio Contracts.

4.      Each party will, at any time and from time to time upon written request therefor, execute and deliver to the other party such documents as such other party may reasonably request in order to fully assign and transfer the Pistachio Contracts, and cooperate in the obtaining of any additional consents which are required and not obtained prior to the date hereof.  Assignor shall use commercially reasonable efforts, consistent with its authority as receiver, to assist in obtaining such Consents

5.      Assignee acknowledges that the obligation under the Pistachio Contracts to deliver 100% of the pistachios produced from the Pistachio Property to the counterparties thereof (collectively, the "**Pistachio Purchaser**") is a covenant burdening the Pistachio Property which has been bargained for by Assignor with Pistachio Purchaser, but for which payment (the "**Covenant Compensation**") will not be made until delivery of 100% of the pistachios produced from the Pistachio Property in each of the 2026 and 2027 crop years.  In the event that Assignee shall not perform under the Pistachio Contracts, and the Covenant Compensation is not paid in full to Assignor by Pistachio Purchaser, then the Covenant Compensation (or any unpaid portion thereof) shall become an obligation of Assignee under this Assignment, and shall be due and payable within ten (10) business days following written demand from Assignor.

6.      In the event of any litigation initiated to enforce the terms of this Assignment, the prevailing party shall be entitled to an award for its reasonable attorneys' fees and expenses from the non-prevailing party.  This Assignment shall be governed by, interpreted under, and construed and enforced in accordance with, the laws of the State of California.  This Assignment may be executed in one or more counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one agreement.  This Assignment shall bind and inure to Assignor and Assignee and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first written above.

ASSIGNOR                                    ASSIGNEE

                                            **[assignee sig blocks]**

_____
LANCE MILLER, solely in his capacity as
Court-appointed Receiver

[attach legal description exhibit, contract list exhibit, and counterparty consents (if any)]

-52-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT I

Form of Note

$10,000,000.00                                                      _____, 2026
                                                                   Fresno, California

## **PROMISSORY NOTE**

THE UNDERSIGNED,  [insert name of end Buyer] ("**Maker**"), promises to pay to  LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") pursuant to the *Order Expanding Receivership and for Preliminary Injunction* (as supplemented or amended, the "**Receivership Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB (the "**Proceeding**") pending in the U.S. District Court for the Eastern District of California (the "**Court**") ("**Payee**") or order, at _____, or such other place as the holder hereof shall designate, the principal sum of Ten Million and 00/100ths Dollars ($10,000,000.00), without interest except as noted herein.

Maker represents to Payee that the proceeds of the loan evidenced by this Note will not be used for personal, family or household purposes.

A principal payment in the amount of $10,000,000.00, or, if less, the then-outstanding principal balance of this Note shall be made on or before September 30, 2027 (the "**Maturity Date**".  All principal and accrued and unpaid interest, if any shall be due and payable on the Maturity Date.

If any installment of principal or interest is not paid when due, Maker shall be obligated to pay a late charge of one percent (1%) of the amount of the delinquent installment.  Maker acknowledges that the late payment by Maker to the holder of this Note will cause the holder of this Note to incur costs not contemplated under this Note, including processing, administrative, accounting, and other charges and costs, the exact amount of which will be impractical or extremely difficult to ascertain. Accordingly, the parties hereto agree that the foregoing late charge represents a fair and reasonable estimate of the costs that the holder of this Note will incur by reason of any late payment of Maker and shall be paid to the holder of this Note as liquidated damages related to such processing and administrative costs.  The parties additionally acknowledge and agree that late charges are distinct and separate from the payment of interest on amounts in default as addressed above.

All payments under this Note shall be in lawful money of the United States, and when received by the holder of this Note, shall first be applied to accrued interest and then against the principal balance of this Note except in the event that there are unpaid collection costs and/or late charges, in which case said payment shall be applied first to said unpaid collection costs and/or late charges, then to interest, and then the remainder to principal.  Maker may pay all or any amount of the principal of this Note and accrued interest at any time without penalty.

-53-

All amounts of principal and interest or other amounts advanced or charged by the holder of this Note under the terms of this Note (including, but not limited to, any loan fees, collection costs and/or late charges) that are not paid when due under this Note, shall bear interest after the due date thereof at the rate of Eighteen Percent (18%) per annum (the **"Delinquency Rate"**) until paid.

If default be made in the payment of any installment of interest or principal or any other amount due hereunder, within five (5) days of when due, then all remaining unpaid principal and interest and all costs, fees, expenses or advances due and owing hereunder shall, at the option of the legal holder hereof, become at once due and payable without further notice, demand or presentment, the entire remaining unpaid principal and all accrued interest under this Note shall thereafter bear interest at the Delinquency Rate until paid in full, and the holder of this Note shall have such other remedies as are available at law or in equity. In such event, all subsequent payments shall be applied first to unpaid collection costs and/or late charges, if any, then to interest accrued at the Delinquency Rate, if any, and then to principal.

The occurrence of any of the following shall constitute an "**Event of Default**" under this Note:

(a)    Maker fails to pay when due any installment of interest or principal or other amounts payable under this Note or any other document executed pursuant to or as required by such instrument;

(b)    Maker fails to perform or breaches any obligation or fails to comply with or breaches any covenant or warranty made under this Note or any other document executed pursuant to, or as required by such instrument;

(c)    The commencement by or against Maker (or any individual fiduciary of Maker) of a voluntary or involuntary case under the federal bankruptcy laws, as now constituted or hereafter amended, or another applicable federal or state bankruptcy, insolvency or similar law which has not been dismissed within ninety (90) days; or the consent by Maker (or any individual fiduciary of Maker) to the appointment of or the taking possession with or without Maker's consent (or the consent of any individual fiduciary of Maker) of a receiver, liquidator, assignee, trustee, custodian, sequestrator, agent or other similar official for Maker (or any individual fiduciary of Maker) or for any substantial part of its property (or the property of any individual fiduciary of Maker); the dissolution, liquidation, or winding up of Maker's affairs; the making by Maker (or any individual fiduciary of Maker) of any assignment for the benefit of its creditors; the failure by Maker (or any individual fiduciary of Maker) generally to pay their debts as they become due; or the taking of any action by or on behalf of Maker (or any individual fiduciary of Maker) in furtherance of any of the foregoing; or

(d)    Maker (or any individual fiduciary of Maker) or any guarantor of this Note becomes insolvent.

Upon default hereunder, or any other agreement between Maker and Payee entered into in connection with the foregoing, the holder of this Note may sue Maker in full for the entire unpaid balance and interest due on this Note and all other liabilities and expenses incurred in connection

-54-

therewith without presentment or demand for payment, dishonor or notice of dishonor, protest or notice of protest, or other formality, all of which are hereby expressly waived. The holder of this Note may sue Maker as herein above provided without first resorting to, surrendering or applying any security for the obligations of Maker under this Note. The holder of this Note may at any time or times, either prior to or after default of this Note, accept, release or exchange any and all collateral or security of any nature which may be held by or be available hereunder with respect to this Note, and/or fail to resort to, realize upon or apply any of said collateral or security or any part thereof held by or available hereunder with respect to this Note, and may waive any agreement or any default with respect to any such collateral or security.

The holder of this Note shall not be liable for failure to collect or demand payment of, or protest or give notice of nonpayment of any installment or for failure to resort to any collateral or security or any part thereof or for any delay in so doing, nor shall the holder of this Note be under any obligation to take any action whatsoever with respect to any collateral or security for the payment of this Note or any part thereof. Presentment for payment, notice of dishonor, protest, notice of protest, and rights to set-offs and counter-claims are hereby waived by Maker to the full extent allowed by law, and Maker agrees that time for payment may be extended from time to time without notice at the option of the holder hereof. Maker hereby expressly waives all statutes of limitations affecting the enforceability of this Note. Maker consents to all renewals, indulgences, extensions and all releases of security granted or permitted by any holder hereof without notice.

Neither the failure to exercise nor any delay on the part of the holder of this Note in exercising any right, power or privilege shall constitute a waiver of any such right, power or privilege, nor shall any single or partial exercise of any such right, power or privilege preclude any further exercise thereof or the exercise of any other rights, powers, or privileges. Any consent by the holder or any waiver of a default under this Note shall not constitute a consent to or waiver of any right, remedy or power of the holder upon a subsequent event of default under this Note.

Maker agrees to pay all costs, charges and expenses, including reasonable attorneys' fees, incurred by the holder of this Note in any action or proceedings for collection of this Note, in the enforcement of any right or remedy hereunder, or in any proceedings to sell, foreclose upon or in any manner enforce any other rights to the collateral or security for the debt represented hereby regardless of whether suit shall be filed.

This Note shall be deemed to have been made in the State of California, and the validity of this Note, its construction, interpretation and enforcement shall be determined under, governed by, and construed in accordance with the laws of the State of California. In the event any one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, but this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Additionally, if any interest rate provision is held void for exceeding the maximum interest allowable by law, that provision shall be interpreted to require interest to be paid at the maximum rate allowable by law.

Maker is a limited liability company, duly organized and existing under Delaware law, and the individuals executing this Note and all agreements relating to the indebtedness evidenced by this Note

-55-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

are all the members of the Maker and are fully authorized to execute the same and no other signature is necessary in order to bind the Maker.  This Note, when executed and delivered, will constitute the legal, valid and binding obligation of Maker, enforceable against Maker in accordance with its terms.  This Note may not be changed, modified, amended or terminated orally but only by written agreement between the Maker and the holder hereof which by its express terms refers to this Note and which is duly executed by the party sought to be bound thereby.  Notwithstanding anything to the contrary contained herein or in any document which may be collateral security for this Note, this Note is negotiable and may be assigned in whole or in part.

This Note shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.

[insert maker's signature block]

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT J-1

Form of Solar Consideration Security Agreement

**SOLAR CONSIDERATION SECURITY AGREEMENT**

This SOLAR CONSIDERATION SECURITY AGREEMENT (this "**Security Agreement**"), is made as of _____, 2026 between _____ ("**Grantor**"), having a mailing address at _____ to and for the benefit of LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Secured Party**") in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB pending in the U.S. District Court for the Eastern District of California (the "**Court**"), having a mailing address at _____.

## ARTICLE 1
## COLLATERAL

**1.1     Grant.**   To secure the payment and performance of the Secured Obligations (as defined herein), Grantor hereby grants, assigns and conveys to Secured Party, absolutely and unconditionally, for the exclusive benefit and security of Secured Party and its assigns, all of Grantor's rights, title and interests in, to and under, whether now owned or hereafter acquired, the following (the "**Collateral**"):

(a)     The "**Solar Payments**", defined as (i) all Solar Option Payments, (ii) all Solar Purchase Consideration, and (iii) all Solar Lease Consideration, in each of (i) – (iii) above payable with respect to any extension, exercise of an option to extend a lease or option period, or on the lease or purchase of land or an easement thereon pursuant to any of the agreements set forth on Schedule 1.1 (collectively, the "**Solar Contracts**").   As used herein:

> (1)     "**Solar Option Payments**" means the total consideration, whether paid in lump sum or installments, for the right to purchase or lease land or an easement thereon, at a future time, under the Solar Contracts.

> (2)     "**Solar Purchase Consideration**" means the total consideration due and payable under a Solar Contract for the purchase of land or an easement thereon, whether paid at the closing thereof in lump sum or paid in installments.   For clarity, the exercise of any option to purchase land which option is only available after the establishment of a Solar Lease shall be a Capitalization Event for the purpose of determining Solar Lease Consideration, and shall not trigger payment of Solar Purchase Consideration.

> (3)     "**Solar Lease Consideratio**n" means (i) until the occurrence of a Capitalization Event with respect a lease made pursuant to a Solar Contract (a "**Solar Lease**"), the actual lease (rent) consideration for the leased land, and (ii) upon a Capitalization Event, the amount received or to be received by Buyer determined as follows:   In the event of a Capitalization Event under:

-57-

(a)    Section 1.1(a)(4)(i), the net consideration received by Buyer and attributed to the Solar Lease, after deducting Buyer's reasonable, documented, out-of-pocket transaction costs (including legal fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event;

(b)    Section 1.1(a)(4)(ii), the net loan proceeds received by Buyer for such sale, after deducting Buyer's reasonable, documented, out-of-pocket transaction costs (including legal fees, lender fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event; and

(c)    Section 1.1(a)(4)(iii), the amount by which the per-acre consideration received by Buyer for such land exceeds Six Thousand Dollars ($6,000.00) per acre, multiplied by the number of acres so transferred;

in each case provided that, in the event that a Capitalization Event occurs in connection with a transaction involving property other than Specified Solar Parcels (as defined below) pursuant to which the consideration received in respect of the Solar Lease or land subject thereto cannot be reasonably determined, the consideration shall be the amount mutually agreed by the Parties, or if they cannot so agree, as determined by an independent appraisal, the cost to be shared equally be the Parties. Upon the occurrence of a Capitalization Event with respect to any Solar Lease (or portion thereof, if not fully involved in said Capitalization Event), and subject to Seller's receipt of indefeasible payment of all Solar Consideration due in respect of said Solar Lease (or potion thereof), then Seller shall no longer be entitled to any further Solar Consideration with respect to such Solar Lease (or the portion thereof subject to the Capitalization Event).

(4)    "**Capitalization Event**" means, with respect to each Solar Lease the first to occur of one of the following (i) a sale of such Solar Lease, separate and apart from the Land, (ii) receipt of loan proceeds which are secured primarily by the Solar Lease, (iii) the sale or transfer of the land on which the Solar Lease is located to a Solar Counterparty.

(5)    "**Solar Counterparty**" means the counterparty under any Solar Contract or Solar Lease, as the context shall require, their affiliates, and their respective successors and assigns in and to a Solar Contract or Solar Lease.

(6)    "**Specified Solar Parcels**" means, collectively, those specific parcels of the Land affected by any of the Solar Contracts.

(b)    all investments, interest, income and other gain from the investment of the Solar Payments;

(c)    all of Grantor's rights to enforce the obligations of each Solar Counterparty to make payment to Grantor when due under the Solar Contracts;

-58-

(d)    all products and proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or other property, in any form whatsoever including, without limitation, general intangibles, chattel paper, accounts, instruments, documents, money, goods (whether equipment or inventory), and consumer goods; and

(e)    all books, correspondence, credit files, records, invoices, other papers and documents, computer records, runs, software, systems, procedures, disks, tapes and other data relating to any of the Collateral, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title and interest in and to all computer software required to utilize, create, maintain, and process any such records or date on electronic media, including any of the foregoing in the possession or control of any service, consultant, or outside vendor (collectively, "**Records**").

**1.2    Reinstatement**.  The obligations of Grantor under this <u>Article 1</u> and the security interest in, and the Lien on, the Collateral shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of Grantor in respect of the Secured Obligations is rescinded or must otherwise be restored by any holder of any of the Secured Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise.  Grantor agrees that it will indemnify Secured Party on demand for all costs and expenses (including reasonable fees of counsel) incurred by Secured Party in connection with any such rescission or restoration, including any such costs and expenses incurred in defending against any claim alleging that such payment constituted a preference, fraudulent transfer or similar payment under any bankruptcy, insolvency or similar law.

**1.3    Continuing Obligation**.  The obligations provided in this <u>Article 1</u> are continuing obligations and shall apply to all Secured Obligations (as defined herein) whenever arising

**1.4    Perfection**.

1.4.1    Grantor shall promptly from time to time give, execute, deliver, file, record, authorize or obtain, and hereby authorizes Secured Party to file, such financing statements and continuation statements and other notices, instruments, documents, agreements or consents in such offices as are or shall be necessary or as Secured Party may determine to be appropriate to create, perfect and establish the priority of the Liens granted by this Security Agreement in any and all of the Collateral, to preserve the validity perfection or priority of the Liens granted by this Security Agreement in any and all of the Collateral or to enable Secured Party to exercise its rights, remedies, powers and privileges under this Security Agreement.  Secured Party is hereby authorized, but shall have no obligation, to file financing or continuation statements, intellectual property security agreements and amendments to any of the foregoing, in any jurisdiction and with any filing offices as Secured Party may determine are necessary or advisable to perfect or otherwise protect the security interest granted to Secured Party herein.

1.4.2    Grantor shall not file or suffer to be filed, or authorize or permit to be filed or to be on file, in any jurisdiction, any financing statement or like instrument with respect to any of the Collateral in which Secured Party is not named as the sole secured party.

**ARTICLE 2**
**SECURED OBLIGATIONS**

2.1    **Secured Obligations**.  This Security Agreement is to secure, and the Collateral is security for, the prompt and complete payment and performance in full when due, of the following (the "**Secured Obligations**");

(a)    Grantor's obligations to pay, or to use commercially reasonable efforts to cause each Solar Counterparty to pay, to Secured Party fifty percent (50%) share of the Solar Payments (the "**Solar Consideration**") when due, as set forth in that certain Purchase and Sale Agreement and Joint Escrow Instructions dated _____, 2026 (the "**Purchase Agreement**"); provided, however, that Grantor shall not be obligated to pay any Solar Consideration to the extent the corresponding Solar Payment has not been received by Grantor or paid directly to Secured Party by the applicable Solar Counterparty;

(b)    Grantor's obligations under the Post-Closing Covenants, as set forth in the Purchase Agreement;

(c)    payment of all other sums (with interest as provided in this Security Agreement) becoming due and payable to Secured Party pursuant to the terms of this Security Agreement;

(d)    any of the foregoing that arises after the filing of a petition by or against Grantor under an Insolvency Proceeding;

(e)    all renewals, extensions, amendments, modifications and restatements of the foregoing; and

(f)    in the event of any proceeding for the collection or enforcement of any of the foregoing obligations, after an Event of Default shall have occurred and be continuing and unwaived, the expenses of retaking, holding, preparing for sale or lease, selling or otherwise disposing of or realizing on the Collateral, or of any exercise by the Secured Party of its rights under this Security Agreement, together with any necessary attorneys' fees and court costs.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

Grantor represents and warrants to Secured Party that as of the date of this Security Agreement:

**3.1    Organization and Authority.**

3.1.1    The full and correct legal name of Grantor is as appears in the first paragraph of this Security Agreement.

3.1.2    Grantor has not used any trade name, assumed name or other name except Grantor's name stated in the first paragraph of this Security Agreement.

3.1.3    Grantor is a limited liability company formed and in good standing under the laws of the State of Delaware, and its duly authorized managers and members have all necessary power and authority to enter into this Security Agreement and to perform their obligations hereunder; and no consent of any other person or entity is required to so empower or authorize the officers and directors thereof.

3.1.4    Grantor is qualified to do business in every jurisdiction in which the nature of its business or its properties makes qualification necessary, including the State of California.

-60-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

3.1.5   Grantor's place of business, or its chief executive office, if it has more than one place of business, is located at the address set forth in Section 8.2 of this Security Agreement.

3.1.6   Grantor has not changed its "location" (as defined in Section 9307 of the UCC) or changed its jurisdiction of incorporation or formation.

**3.2   Validity of Obligations**.

3.2.1   The execution, delivery and performance by the Grantor of this Security Agreement and the Purchase Agreement:

(a)   are within the power of the Grantor;

(b)   have been duly authorized by all requisite corporate, member or partnership action, as appropriate,

(c)   will not violate any provision of law, any order of any court or agency of government, the charter or trust documents of Grantor, or any indenture, agreement, or any other instrument to which Grantor is a party or by which Grantor or any of its property is bound, nor will they conflict with, result in a breach of, or constitute (with due notice and lapse of time) a default under any indenture, agreement, or other instrument, or result in the creation or imposition of any lien, charge, or encumbrance of any nature on any of the property or assets of any Grantor, except as contemplated herein.

3.2.2   This Agreement, when executed and delivered to Secured Party, will constitute a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable.

3.2.3   To Grantor's knowledge, this Security Agreement does not conflict with any applicable law.

3.2.4   This Security Agreement does not conflict with, nor is Grantor in default on any credit or loan agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated.

**3.3   The Collateral.**

3.3.1   Grantor is the sole record and beneficial owner of and has good and marketable title to the Collateral in which it purports to grant a security interest pursuant to Article 1.

3.3.2   Grantor has the right, power and authority to grant, convey and assign the Collateral as provided in this Security Agreement.

3.3.3   The Collateral does not represent the proceeds of unlawful activity under any state, federal or foreign law.

3.3.4    Grantor has not granted any security interest in any of the Collateral except to Secured Party.

3.3.5   There are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Collateral with respect to any violations of applicable law.

-61-

3.3.6    Secured Party has and will continue to have as security for the Secured Obligations, a valid and enforceable Lien on and security interest in and, upon proper filing of any UCC-1 Financing Statement in the office of the California Secretary of State, execution of any control agreement or delivery of Collateral to Secured Party's possession, a perfected Lien on and security interest in all the Collateral, free of all other Liens, claims and rights of third parties whatsoever except for any Permitted Liens.

3.3.7    To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, to the knowledge of Grantor Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.  There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made by Grantor under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Secured Party in writing.

**3.4    Litigation.**  There is not now pending against or affecting Grantor, nor to the knowledge of Grantor is there threatened, any action, suit, or proceeding at law or in equity or before any administrative agency that, if adversely determined, would materially impair or affect the financial condition or operations of Grantor, or the condition or operation of the Collateral.

**3.5    Taxes.**  Grantor has filed all federal, state, county, and municipal income tax returns required to have been filed and has paid all taxes that have become due pursuant to those returns or pursuant to any assessments received by Grantor, and Grantor does not know of any basis for any additional assessment against Grantor in respect of those taxes.

# ARTICLE 4
# COVENANTS

**4.1    Affirmative Covenants.**  Until the Secured Obligations have been paid in full, Grantor covenants to and agrees with Secured Party as follows:

4.1.1    Grantor will promptly pay and perform each Secured Obligation in accordance with its terms, as required of Grantor under this Security Agreement and the Purchase Agreement.

4.1.2    Grantor will promptly pay and perform each covenant, agreement, term or condition under all other agreements between Grantor and Secured Party in accordance with the respective terms of the agreement.

4.1.3    Grantor will promptly pay and perform or otherwise comply in all material respects with each covenant, agreement, term or condition as required of Grantor under all other agreements to which Grantor is a party with respect to the Collateral, including but not limited to the Solar Contracts.

4.1.4    Grantor will not cancel, surrender, modify, amend, or permit the cancellation, surrender, modification, or amendment of any of the Solar Contracts or any of the covenants, agreements, terms, or conditions contained in any of them without the prior written consent, in each case, of Secured Party.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

4.1.5    Grantor will promptly notify Secured Party in writing at Secured Party's address for notice provided in this Security Agreement (or such other addresses as Secured Party may designate from time to time) prior to any  (1)  change in Grantor's name;  (2)  change in Grantor's assumed business name(s);  (3) the change of any officers, directors or shareholders of any of Grantor;  (4)  change in the authorized signer(s);  (5)  change in the location(s) of (A) Grantor's place of business or Grantor's chief executive office if Grantor has more than one place of business, (B) Grantor's state of organization, or (C) Grantor's Records concerning any Collateral;  (6) dissolution of Grantor, or conversion of any of Grantor to a new or different type of business entity; (7) change in Grantor's federal employer identification number; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Secured Party.  No change in Grantor's name, state or organization, or principal office address will take effect until after Secured Party has received notice.

4.1.6    Until Secured Party exercises its rights to make collection, Grantor will diligently protect and collect all  accounts and keep complete, current, and accurate Records with respect to the Collateral and any proceeds or collections.

4.1.7    Grantor shall promptly notify Secured Party in writing of  (1) any event which adversely affects the value of the Collateral or the Solar Contracts, the ability of Grantor or Secured Party to dispose of the Collateral, or the rights and remedies of Secured Party in relation thereto, including, but not limited to, the levy of any legal process against any Collateral or the Solar Contracts and the adoption of any marketing order, arrangement or procedure affecting the Collateral or the Solar Contracts, whether governmental or otherwise and (2) any litigation commenced or threatened affecting Grantor, the Collateral or the Solar Contracts.

4.1.8    Grantor will maintain complete books of account and other Records reflecting the results of Grantor's operations related to the Solar Contracts, in a form satisfactory to Secured Party, and furnish to Secured Party any information about Solar Contracts and the Collateral as Secured Party reasonably requests.  Secured Party will have the right, at all reasonable times and on reasonable notice, to audit, Grantor's books of account and Records, all of which will be made available to Secured Party and Secured Party's representatives for that purpose; provided that (i) absent the occurrence and continuance of an Event of Default, such audits shall be conducted no more than once per calendar year and shall be at Secured Party's sole cost and expense, and (ii) upon the occurrence and during the continuance of an Event of Default, such audits may be conducted at such frequency as Secured Party deems reasonably necessary and shall be at Grantor's sole cost and expense.

**4.2    Negative Covenants.**    Until the Secured Obligations have been paid in full, Grantor covenants to and agrees with Secured Party as follows:

4.2.1    Grantor shall not file any amendments, correction statements or termination statements concerning the Collateral.

4.2.2    Except as otherwise provided for in this Security Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral.  Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any Lien, security interest, encumbrance, or charge, other than the security interest provided for in this Security Agreement, without the prior written consent of Secured Party.  This includes security interests even if junior in right to the security interests

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

granted in this Security Agreement.  Unless waived by Secured Party, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Secured Party and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Secured Party to any sale or other disposition.  Upon receipt, Grantor shall immediately deliver any such proceeds to Secured Party.

4.2.3    Except for the lien securing the Secured Obligations, Grantor will not create or permit to continue in existence any pledge, encumbrance, lien, or charge of any kind on any of the Collateral except as specifically approved in writing by Secured Party.

**4.3      Compliance with Law.**  Grantor will preserve and keep in full force its existence, rights, and powers.  Grantor will promptly and faithfully comply with all present and future laws, ordinances, rules, regulations, and requirements of every governmental authority or agency and of every board of fire underwriters (or similar body exercising similar functions) having jurisdiction that may be applicable to it or to the Collateral.

**4.4      Further Assurances.**  Grantor, at Grantor's expense and at any time on the reasonable request of Secured Party, will execute, acknowledge, and deliver any additional papers and instruments (including, but not limited to, a declaration of no setoff) and any further assurances of title and will do or cause to be done all further acts and things that may be proper or reasonably necessary to carry out the purpose of this Security Agreement and to subject to the Liens any property intended by the terms to be covered and any renewals, additions, substitutions, replacements, or betterments.

**4.5      Indemnity**.

4.5.1    If any action or proceeding (whether judicial, regulatory, or administrative) is threatened or commenced, except an action to foreclose this Security Agreement or to collect the Secured Obligations, (i) that affects the Collateral or any portion of it, (ii) in which Secured Party is or could be made a party, or (iii) in which it becomes necessary to defend or uphold the Lien of this Security Agreement, then all costs, fees, and expenses incurred by Secured Party with respect to the action or proceeding (including, but not limited to, attorney fees and expenses) will, within ten (10) days after the submission of bills for the costs to Grantor, be paid directly to the billing party by Grantor.

4.5.2    In addition to Section 4.5.1 above, Grantor agrees to pay all costs, including, but not limited to, attorney fees and expenses, incurred by Secured Party in enforcing the terms of this Security Agreement or the terms of the Purchase Agreement whether or not a lawsuit is filed.  Grantor agrees to indemnify and hold Secured Party harmless from all liability, loss, damage, or expense (including, but not limited to, attorney fees) that it may incur under this Security Agreement, or in connection with the making of any of the loans or financial arrangements secured by this Security Agreement, the enforcement of any of Secured Party's rights or remedies, any action taken by Secured Party under this Security Agreement, or by reason or in defense of any claims and demands that may be asserted against Secured Party arising out of the Collateral.

4.5.3    On the failure of Grantor to make timely payment pursuant to the terms of Section 4.5.1 of this Security Agreement, the payment may be paid by Secured Party.  Sums of money paid by Secured Party, and sums owed to Secured Party pursuant to Section 4.5.2 of this Security Agreement, together with interest at the Default Rate from the date Secured Party makes the payment or incurs the loss,

20039.001/Westlands A&R PSA - Prudential (EX)

will be secured by this Security Agreement, prior to any right, title, or interest in or claim on the Collateral attaching or accruing subsequent to the Lien of this Security Agreement, and will be payable by Grantor to Secured Party on demand.

4.5.4     The provisions of this Section 4.5 will survive the termination of this Security Agreement and the repayment of the Secured Obligations.

**4.6     Reimbursement.**  Secured Party will have the right to declare immediately due any amount paid by it for any tax, stamp tax, assessment, water rate, sewer rate, insurance premium, repair, rent charge, debt, claim, inspection, or Lien having priority over this Security Agreement, or over any other agreement given to secure the Secured Obligations.

**4.7     Tax Receipts.**  Grantor will provide to Secured Party, within seven (7) days after demand, bills (that will be receipted from and after the date receipted bills are obtainable) showing the payment to the extent then due of all taxes or assessments (including those payable in periodic installments) that may have become a lien on the Collateral prior to the lien of this Security Agreement.

**4.8     Additional Information.**  Grantor will furnish to Secured Party, within seven (7) days after written request, all information that Secured Party may request concerning the performance by Grantor of the covenants of the Purchase Agreement and the Solar Contracts and Grantor will permit Secured Party or its representatives at all reasonable times to make investigation or examination concerning that performance.

**4.9     Right of Entry; Inspection.**  Grantor grants to Secured Party and its agents, employees, consultants, and contractors the right to enter onto the owned or leased property of Grantor, at any reasonable time for the purpose of making any inspections, reports, tests, inquiries, and reviews that Secured Party, in its sole and absolute discretion, deems necessary to assess the then current condition of the Collateral.  Secured Party will provide Grantor with one (1) Business Days' notice of the entry whenever feasible, however, Grantor's consent will not be required for entry.

**4.10     Liens, Charges and Encumbrances**.  Grantor shall immediately discharge any Lien on the Collateral, which Secured Party has not consented to in writing.  Grantor must pay when due each obligation secured by or reducible to a Lien, charge or encumbrance which now does or later may encumber or appear to encumber all or part of the Collateral or any interest in it, whether the Lien, charge or encumbrance is or would be senior or subordinate to this Security Agreement.

**ARTICLE 5**
**SECURED PARTY'S RIGHTS AND DUTIES**

**5.1.     Secured Party's Rights**.  Secured Party may at its option at any time, whether or not Grantor is in default:

(a)     require Grantor to deliver to Secured Party (i) copies of or extracts from the Records, (ii) records and schedules which show the status and condition of the Collateral and where it is located, and (iii) information on any contracts or other matters affecting the Collateral;

(b)     require Grantor to permit Secured Party and its agents and consultants to inspect the Collateral, the Solar Contracts, or the real property affected thereby;

-65-

(c)     require Grantor to deliver to Secured Party any instruments or chattel paper affecting the Collateral;

(d)     notify or require Grantor to notify any account debtors, any buyers of the Collateral, or any other persons of Secured Party's interest in the Collateral;

(e)     notify or require Grantor to notify any account debtor to forward all payments and proceeds of the Collateral to Secured Party; and

(h)     extend the time for or release any Person now or hereafter liable for the payment of any Secured Obligation, or accept or release additional security, or subordinate the Lien or charge of this Security Agreement.

**5.2     No Liability on Collateral; Indemnity.**  The rights and powers of Secured Party hereunder are conferred solely to protect its interest in the Collateral and shall not impose upon Secured Party any duty upon it to exercise any such rights or powers.  Secured Party does not in any way assume any of Grantor's liabilities, obligations or duties under, or with respect to the Collateral.  Grantor shall remain liable with respect to the Collateral to the same extent as if this Security Agreement had not been executed.  Grantor agrees to indemnify, protect and hold Secured Party harmless from and against any and all liabilities, claims, demands, damages, actions, proceedings, losses, costs and expenses (including attorneys' fees and court costs) arising in connection with or on account of any of the Collateral.

## ARTICLE 6
## EVENTS OF DEFAULT AND REMEDIES OF SECURED PARTY

**6.1     Events of Default.**  The following events are each an "**Event of Default**":

6.1.1    Default in the payment of any Solar Payment, when due; provided that no Event of Default shall occur under this Section 6.1.1 solely by reason of a Solar Counterparty's failure to make a Solar Payment under a Solar Contract, so long as Grantor has remitted to Secured Party fifty percent (50%) of all Solar Payments actually received by Grantor within the time period required under the Purchase Agreement.

6.1.2    The occurrence of an Event of Default on the part of Grantor under the Solar Contracts; provided that a Solar Counterparty's failure to make a Solar Payment under a Solar Contract shall not, in and of itself, constitute an Event of Default on the part of Grantor under this Section 6.1.2, so long as Grantor is otherwise in compliance with its obligations under the Solar Contracts and this Security Agreement.

6.1.3    Grantor breaches any term, provision, warranty, representation, covenant or agreement under this Security Agreement; provided that, with respect to any  breach that is susceptible of cure (other than a failure to pay any monetary obligation, which shall be governed by Section 6.1.1), no Event of Default shall occur unless Grantor fails to cure such breach within thirty (30) days after written notice thereof from Secured Party to Grantor (or, if such breach is not reasonably susceptible of cure within such thirty (30) day period, Grantor has not commenced such cure within such period and thereafter diligently pursued such cure to completion, but in no event more than sixty (60) days after such notice).

6.1.4    Any case, proceeding, or other action against Grantor is commenced seeking to have an order for relief entered against Grantor as a debtor or seeking any reorganization, arrangement, composition, adjustment, liquidation, dissolution, or similar relief under any present or future statute, law, or regulation relating to bankruptcy, insolvency, reorganization, or other relief for debtors, or seeking appointment of (or which involves Grantor's  consent or acquiescence to) any Receiver for Grantor or for all or any substantial part of its property or for the Collateral, and that case, proceeding, or other action:

(a)    results in the entry of an order for relief under federal bankruptcy laws as to Grantor it that is not fully stayed within seven (7) Business Days after the entry of the order;

(b)    results in the adjudication of Grantor as insolvent or bankrupt pursuant to the provisions of any state insolvency or bankruptcy act;

(c)    remains undismissed for an aggregate of thirty (30) days (whether or not consecutive); or

(d)    the possibility that any portion of the Collateral would, by operation of law or otherwise, devolve on or pass to any Person other than Grantor and that situation continues and is not remedied by Grantor within thirty (30) days after the happening of the event.

6.1.5    Grantor generally not paying its debts as they become due or admitting in writing its inability to pay its debts or making a general assignment for the benefit of creditors; or Grantor taking any action to authorize any of the acts set forth in Section 6.1.4.

6.1.6    The occurrence of any of the following events:

(a)    The filing of any claim or lien against the Collateral or any part of it, whether or not the lien is prior to this Security Agreement, and the claim, lien or notice continues for a period of thirty (30) days without it being discharged, satisfied, or having been adequately bonded in accordance with the terms of this Security Agreement; or

(b)    the existence of any interest in the Collateral other than those of Grantor and Secured Party that has not been approved in writing by Secured Party; provided that no Event of Default shall exist under this Section 6.1.6(b) with respect to any involuntary lien or encumbrance on the Collateral so long as Grantor is contesting such lien or encumbrance in good faith by appropriate proceedings diligently pursued and has provided a bond to Secured Party in the amount of 125% of the lien amount.

6.1.7    Any representation or warranty made by Grantor under this Security Agreement is false or misleading in any material respect as of the date on which the representation or warranty was made.

6.1.8    At any time the provisions of the Purchase Agreement relating to the Solar Payments, cease to be in full force (other than by expiration pursuant its terms) or are declared null and void, or the validity or enforceability is contested by Grantor or any other Person, or Grantor denies that it has any or further liability or obligation with respect to the Secured Obligations.

**6.2    Remedies.**  Secured Party has all of the rights and remedies of a secured party under the UCC as well as all other rights and remedies available set forth in this Security Agreement or the Purchase Agreement, at law or in equity, or by statute that are available to secured creditors.  On the occurrence

-67-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

of any Event of Default (taking into account any applicable period of grace or cure), then Secured Party may declare all the Secured Obligations to be due and the Secured Obligations will become due and payable without any further presentment, demand, protest, or notice of any kind, and Secured Party may do any one or more of the following:

6.2.1    Sell at any public or private sales as permitted by applicable law any or all of the Collateral. Any disposition may be conducted by an employee or agent of Secured Party.  Any Person, including both Grantor and Secured Party, will be eligible to purchase any part or all of the Collateral at any disposition.

6.2.2    Enforce the security interest given hereunder or any other instrument or agreement pursuant to the UCC and any other Applicable Law.

6.2.3    Enforce the security interest of Secured Party in any deposit account of Grantor maintained with any Secured Party by applying such account to the Secured Obligations

6.2.4    Require Grantor to obtain Secured Party's prior written consent to any sale, lease, agreement to sell or lease, or other disposition of any Collateral or the Solar Contracts.

6.2.5    Require Grantor to segregate all collections and proceeds of the Collateral so that they are capable of identification and deliver daily such collections and proceeds to Secured Party in kind;

6.2.6    Require Grantor to assemble the Collateral, including all Records related thereto, and make them available to Secured Party at a place designated by Secured Party;

6.2.7    Enter upon the property where any Collateral, including any Records related thereto, is located and take possession of such Collateral and such Records, and use such property (including any buildings and facilities) and any of Grantor's equipment, if Secured Party deems such use necessary or appropriate in order to take possession of, hold, preserve, process, assemble, prepare for sale or lease, market for sale or lease, sell or lease, or otherwise remove and/or dispose of, any Collateral;

6.2.8    Secured Party, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral.  Secured Party may at any time in Secured Party's discretion transfer any Collateral into Secured Party's own name or that of Secured Party's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Secured Obligations or apply it to payment of the Secured Obligations in such order of preference as Secured Party may determine.  Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, chases in action, or similar property, Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Secured Party may determine, whether or not Secured Obligations or Collateral is then due.  For these purposes, Secured Party may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral.  To facilitate collection, Secured Party may notify account debtors and obligors on any Collateral to make payments directly to Secured Party.

6.2.9    Grant extensions and compromise or settle claims with respect to the Collateral for less than face value, upon reasonable prior notice to Grantor as may be required under the UCC;

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

6.2.10   Have a receiver appointed by any court of competent jurisdiction to take possession of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Secured Obligations.  The receiver may serve without bond if permitted by law.  Secured Party's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Secured Obligations by a substantial amount. Employment by Secured Party shall not disqualify a person from serving as a receiver.  Grantor hereby consents to the appointment of such a receiver and agrees not to oppose any such appointment; and

6.2.11   Take such measures as Secured Party may deem necessary or advisable to take possession of, hold, preserve, process, assemble, insure, prepare for sale or lease, market for sale or lease, sell or lease, or otherwise dispose of, any Collateral, and Grantor hereby irrevocably constitutes and appoints Secured Party as Grantor's attorney-in-fact to perform all acts and execute all documents in connection therewith.

**6.3      Exercise of Remedies**.  Secured Party may in its sole discretion enforce one or more remedies hereunder, successively or concurrently, and such action shall not operate to estop or prevent Secured Party from pursuing any other or further remedy which it may have hereunder or by law, and any repossession or retaking or sale of the Collateral pursuant to the terms hereof shall not operate to release Grantor until the Secured Obligations are paid in full in cash.  Grantor shall reimburse Secured Party upon demand for all costs and expenses (including reasonable attorney's fees) incurred by Secured Party in connection with any sale, disposition, repair, replacement, alteration, addition, improvement or retention of any Collateral hereunder

**6.4      Notice of Disposition of Collateral and Disclaimer of Warranties**.  It is mutually agreed that (a) commercial reasonableness and good faith require Secured Party to give Grantor no more than 10 days' prior written notice of the time and place of any public disposition of Collateral or of the time after which any private disposition or any other intended disposition is to be made, and (b) it is commercially reasonable for Secured Party to disclaim all warranties which arise with respect to the disposition of the Collateral.  Notwithstanding the forgoing, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale.

**6.5      Waiver of Notice and Hearing**.  GRANTOR HEREBY WAIVES ALL RIGHTS TO A JUDICIAL HEARING OF ANY KIND PRIOR TO THE EXERCISE BY SECURED PARTY OF ITS RIGHTS TO POSSESSION OF THE COLLATERAL WITHOUT JUDICIAL PROCESS OR OF ITS RIGHTS TO REPLEVY, ATTACH OR LEVY UPON THE COLLATERAL WITHOUT PRIOR NOTICE OR HEARING.

**6.6      Power of Attorney**.  Grantor hereby designates and appoints Secured Party and its designees as attorney-in-fact of Grantor, irrevocably and with power of substitution, with authority, upon the occurrence of an Event of Default, to endorse Grantor's name on any notes, acceptances, checks, drafts, money orders, instruments or other evidences of payment or proceeds of the Collateral that may come into Secured Party's possession; to execute proofs of claim and loss; to adjust and compromise any claims under insurance policies; and to perform all other acts necessary and advisable, in Secured Party's sole discretion, to carry out and enforce this Security Agreement.  All acts of Secured

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Party and its designees in such capacity shall not be liable for any acts of commission or omission nor for any error of judgment or mistake of fact or law.  This power of attorney is coupled with an interest and is irrevocable so long as any of the Secured Obligations remain unpaid or unperformed or there exists any commitment by Secured Party that could give rise to any Secured Obligations.

**6.7    Deficiency**.  If the proceeds of, or other realization upon, the Collateral by virtue of the exercise of remedies available to Secured Party under <u>Section 6.2</u> are insufficient to cover the costs and expenses of such exercise and the payment in full of the Secured Obligations, Grantor shall remain liable for any deficiency to the extent provided under applicable law.

**6.8    Expenses.**  The expenses of retaking, holding, and preparing for sale, selling, or the like will be borne by Grantor and will include Secured Party's attorney fees and legal expenses.  Grantor, on the demand of Secured Party, will assemble the Collateral and make it available to Secured Party at a place deemed to be reasonably convenient to Secured Party and Grantor.

**ARTICLE 7**
**DEFINITIONS**

**7.1    Certain Defined Terms**.  As used in this Security Agreement the following terms will have the following meanings:

7.1.1    "**Business Day**" means any day other than Saturday, Sunday, or public holiday or the equivalent for banks generally under the laws of California.  Whenever any payment to be made under this Security Agreement is stated to be due on a day other than a Business Day, that payment may be made on the next succeeding Business Day, and that extension of time will, in that case, be included in the computation of payment of interest.  However, if the extension would cause the payment to be made in a new calendar month, that payment will be due on the next preceding Business Day, and interest will be payable for the shorter period.

7.1.2    "**Collateral**" shall mean the property described in <u>Section 1.1</u> of this Security Agreement.

7.1.3    **"Collateral Documents"** means this Security Agreement, together with all other documents or instruments entered into between Grantor and Secured Party or by Grantor in favor of, or for the benefit of, Secured Party that recite that they are to secure the Secured Obligations.

7.1.4    **"Governmental Authority"** means the United States of America, the State of California, or other political subdivision, agency, department, commission, board, bureau, or instrumentality of any of them.

7.1.5    **"Governmental Requirement"** means any law, ordinance, order, rule, regulation, or requirement of a Governmental Authority.

7.1.6    "**Lien**" means any mortgage, pledge, assignment, deposit arrangement, privilege, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement in the nature of a security interest of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to real property, and any financing lease having substantially the same economic effect as any of the foregoing.

-70-

7.1.7    **"Person"** means any natural person, corporation, firm, partnership, association, trust, government, governmental agency, or any other entity, whether acting in an individual, fiduciary, or other capacity.

7.1.8    "**Receiver**" means any trustee, receiver, custodian, fiscal agent, liquidator, or similar officer.

7.1.9    "**UCC**" means the California Uniform Commercial Code.

## ARTICLE 8
## MISCELLANEOUS

**8.1    No Waiver.**  No waiver by Secured Party of any default or breach by Grantor will be implied from any omission by Secured Party to take action on account of that default if the default persists or is repeated.  Also, no express waiver will affect any default other than the default in the waiver and the waiver will be operative only for the time and to the extent stated.  Waivers of any covenant, term, or condition in this Security Agreement will not be construed as a waiver of any subsequent breach of the same covenant, term, or condition.  The consent or approval by Secured Party of any act by Grantor requiring further consent or approval will not be deemed to waive or render unnecessary the consent or approval for any subsequent similar act.

**8.2    Notices.**  All notices, demands, and other communications required or permitted to be given under this Security Agreement shall be in writing and shall be conclusively deemed to have been duly given: (a) when hand delivered to the recipient at the address set forth below; (b) three (3) business days after the same has been deposited with the United States Post Office for delivery by registered or certified mail (return receipt requested) with postage prepaid (including registration or certification charges) and addressed to the recipient at the address set forth below; or (c) the next business day after deposit with a national overnight delivery service reasonably approved by Secured Party and Grantor (Federal Express, UPS, On-Trac, and DHL WorldWide Express being deemed approved).

        To Grantor:                                To Secured Party:

        [name and address to be inserted]          [name and address to be inserted]

**8.3    Survival.**  The covenants and agreements in this Security Agreement will bind and inure to the benefit of Secured Party and Grantor and their successors and assigns.  It is agreed that Secured Party may assign, free from any right of counterclaim, recoupment, or setoff by Grantor, Secured Party's rights and obligations in whole or in part related to the Solar Payments or this Security Agreement.  Nothing in this Section 8.3 is intended to limit other provisions in the Purchase Agreement that by their terms survive the repayment of the Secured Obligations or the termination of this Security Agreement.

**8.4    Severability.**  If any term, provision, covenant, or condition of this Security Agreement or any application of it is held by a court of competent jurisdiction to be invalid, void, or unenforceable, in whole or in part, all terms, provisions, covenants, and conditions of this Security Agreement and all applications of it not held invalid, void, or unenforceable will continue in full force and will not be affected, impaired, or invalidated; except that if such provision relates to the payment of any monetary

-71-

sum, then Secured Party may, at its option, declare all Secured Obligations immediately due and payable.

**8.5    References to Foreclosure.**  References in this Security Agreement to foreclosure and related phrases are references to the appropriate procedure in connection with the UCC or any judicial foreclosure proceeding.

**8.6    Joinder of Foreclosure**.    If Secured Party holds any other or additional security for the payment of any of the Secured Obligations or the performance of any Secured Obligation, its sale or foreclosure, on any default in the payment or performance, in Secured Party's sole discretion, may be prior to, subsequent to, or joined or otherwise contemporaneous with any sale or foreclosure.  In addition to the rights in this Security Agreement specifically conferred, Secured Party, at any time and from time to time, may exercise any right or remedy now or later given by law to beneficiaries under deeds of trust generally, or to the holders of any obligations of the kind secured by this Security Agreement.

**8.7    Copies.**  Grantor will promptly give to Secured Party copies of all (a) notices of violation that Grantor receives from any Governmental Authority, and (b) notices of default that Grantor receives under any agreement relating to the borrowing of money by Grantor from any Person.

**8.8    Subordination**.  At the option of Secured Party, this Security Agreement will become subject and subordinate, in whole or in part (but not with respect to priority of entitlement to any insurance proceeds, damages, awards, or compensation resulting from damage to the Collateral or condemnation or the exercise of power of eminent domain), but only on the execution of a written agreement to subordinate by Secured Party.  Secured Party may require paydown of the Obligations in connection with any subordination that Secured Party, in its judgment, determines are appropriate, and Grantor will be obligated to pay any cost or expense incurred in connection with the issuance.

**8.9    Performance by Grantor.**  Grantor will faithfully perform every covenant to be performed by Grantor under any Lien or encumbrance, including, without limiting the generality of this Security Agreement, mortgages, deeds of trust, leases, declarations or covenants, conditions and restrictions, and other agreements that affect the Collateral, in law or in equity, that Secured Party reasonably believes may be prior and superior to or on a parity with the Lien or charge of this Security Agreement. A breach of or a default under any Lien or encumbrance that exists after any applicable grace period in the pertinent instrument has expired without that breach or default having been cured, will constitute an Event of Default under this Security Agreement.  If Grantor fails to do so, Secured Party, without demand or notice and in its sole judgment, may do any things required by Grantor by any of the provisions in this Security Agreement and incur and pay expenses in connection with that. Nothing in this Section affects Grantor's obligations pursuant to this Security Agreement or limits Secured Party's rights.

**8.10    Suits to Protect Property.**  Grantor agrees to appear in and defend any action or proceeding purporting to affect the security of this Security Agreement or any additional or other security for the obligations secured, the interest, rights, powers or duties of Secured Party, and to pay all costs and expenses, including, but not limited to, cost of evidence of title and attorney fees, in any action or proceeding in which Secured Party may appear or be made a party, including, but not limited to, foreclosure or other proceedings commenced by those claiming a right to all or any part of the

Collateral under subordinate Liens, in any action to partition or condemn all or any part of the Collateral, whether pursued to final judgment, and in any exercise of the power of sale in this Security Agreement, whether the sale is actually consummated.

**8.11    No Offset.**  Grantor will pay to Secured Party all amounts owing under the Note, this Security Agreement, or any of the other Secured Obligations without deduction, offset, or counterclaim of any kind.

**8.12    Waiver of Statute of Limitations.**  The pleading of any statute of limitations as a defense to any obligations secured by this Security Agreement is waived, to the fullest extent permitted by law.

**8.13    Charges for Statements.**  Grantor agrees to pay Secured Party's reasonable charge, to the maximum amount permitted by law, for any statement regarding the obligations secured by this Security Agreement requested by Grantor or on its behalf.

**8.14    Entire Agreement.**  This Security Agreement and Purchase Agreement set forth the entire understanding between Grantor and Secured Party with respect to the Collateral and Secured Obligations and they may not be amended except by a written instrument duly executed by both Grantor and Secured Party.

**8.15    Waiver of Marshaling Rights.**  Grantor, for itself and for all parties claiming through or under Grantor, and for all parties who may acquire a Lien on or interest in the Collateral, waives all of its rights to have the Collateral or any other property that now or later may be security for any Obligation ("**Other Property**") marshaled on any foreclosure of this Security Agreement or upon a foreclosure of any other security for any of the Obligations, including any rights provided by California Civil Code Sections 2899 and 3433, as those sections may be amended from time to time.  Secured Party will have the right to sell, and any court in which foreclosure proceedings may be brought will have the right to order a sale of, the Collateral as a whole or in separate lots, in any order that Secured Party may designate.

**8.16    Waiver of Certain Other Laws.**  To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all other persons ever claiming any interest in the Collateral to the fullest extent permitted by law, hereby waives and releases all of its rights of redemption, valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the Lien created by this Security Agreement.

**8.17    Exculpation of Secured Party.**  Secured Party will not be directly or indirectly liable to Grantor or any other person as a consequence of any of the following:  (a) the exercise of or failure to exercise any rights, remedies or powers granted to it in this Security Agreement; (b) any failure or refusal to perform or discharge any obligation or liability of Grantor under any agreement related to the Collateral or under this Security Agreement; or (c) any loss sustained by Grantor or any third party resulting from any other act or omission in managing the Collateral after an Event of Default, unless the loss is caused by the willful misconduct and bad faith of Secured Party, respectively.  GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ALL LIABILITY OF THE TYPES

20039.001/Westlands A&R PSA - Prudential (EX)

DESCRIBED IN THIS PROVISION, AND AGREES THAT NO SUCH LIABILITY WILL BE ASSERTED AGAINST OR IMPOSED UPON SECURED PARTY.

**8.18    Releases, Extensions, Modifications, and Additional Security.**  Without notice to or the consent, approval, or agreement of any persons or entities having any interest at any time in the Collateral or in any manner obligated under the Secured Obligations ("**Interested Parties**"), Secured Party may, from time to time, release any person or entity from liability for the payment or performance of any of the Secured Obligations; take any action or make any agreement extending the maturity or otherwise altering the terms or increasing the amount of any of the Secured Obligations; or accept additional security or release the Collateral or other security for any of the Secured Obligations.  None of these actions will release or reduce the personal liability of any of the Interested Parties, or release or impair the Lien of this Security Agreement, or the priority of it on the Collateral.  However, no action taken or agreement made by Secured Party to extend the maturity or otherwise alter the terms or increase the amount of any of the Secured Obligations will be binding on Grantor without Grantor's consent.

**8.19    Subrogation.**  Secured Party will be subrogated to the Lien of all encumbrances, whether released of record, paid in whole or in part by Secured Party pursuant to this Security Agreement or by the proceeds of any loan secured by this Security Agreement.

**8.20    Obligations of Grantor, Joint and Several.**  If more than one person has executed this Security Agreement as Grantor, or accedes to ownership of the Collateral subject to this Security Agreement, the obligations of all those persons will be joint and several.

**8.21    Rules of Construction.**  When the identity of the parties or other circumstances makes it appropriate, the singular number includes the plural.

**8.22    No Construction Against Drafter.**  Each Party has participated in negotiating and drafting this Security Agreement, so if an ambiguity or a question of intent or interpretation arises, this Security Agreement is to be construed as if the parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this Security Agreement.

**8.23    Successors in Interest.**  The terms, covenants, and conditions in this Security Agreement will be binding on and inure to the benefit of the heirs, successors, and assigns of the Parties.

**8.24    Governing Law.**  This Security Agreement shall be governed by and construed in accordance with California law without regard to conflict of laws principles.  The Court shall have exclusive jurisdiction over any legal action brought by any Party to interpret or enforce this Agreement.  To the extent the Court declines jurisdiction, any legal action brought by any Party to interpret or enforce this Agreement shall be venued in the appropriate state or federal court sitting in the City and County of Fresno, California.

**8.25    Counterpart Execution.**  This Security Agreement may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument.

**8.26    Notice to Grantor on Assignment of Secured Party's Interest.**  Secured Party shall promptly notify Grantor of any assignment of Secured Party's interest in this Agreement or any financing statement filed in connection herewith, including contact information for the assignee.

-74-

**8.27    Termination; Release.** Upon the indefeasible payment and performance in full of all Secured Obligations (other than contingent indemnification obligations for which no claim has been asserted), the security interest and Lien granted hereunder shall automatically terminate and be of no further force or effect. Upon such termination, Secured Party shall, at Grantor's reasonable request and sole cost and expense, (a) execute and deliver to Grantor such documents and instruments as may be reasonably necessary to evidence the termination of the security interest and Lien granted hereunder, including UCC-3 termination statements with respect to any financing statements filed in connection herewith, and (b) deliver to Grantor any Collateral in Secured Party's possession. Any execution and delivery of termination statements or documents pursuant to this Section 8.26 shall be without representation, warranty, or recourse on the part of Secured Party.

[SIGNATURE PAGE FOLLOWS]

**In Witness Whereof, Grantor has executed this Security Agreement as of the day and year first above written.**

"Grantor"

[enter signature block]


[attach listing of Solar Contracts]

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT J-2

Form of UCC-1

(attached)

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT J-3

Form of UCC-3

(attached)

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT K

Form of Assignment of Crop Proceeds

## ASSIGNMENT OF CROP PROCEEDS

THIS ASSIGNMENT OF CROP PROCEEDS ("**Assignment of Crop Proceeds**"), dated _____, 2026 (the "**Effective Date**"), is given by LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Assignor**") pursuant to the _____ ("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California, to _____ ("**Assignee**").

WHEREAS, Assignor and Assignee (or its predecessor by assignment) are parties to that certain Purchase and Sale Agreement and Joint Escrow Instructions, dated _____ (the "**Purchase Agreement**"), with respect to the purchase and sale of the property described in Exhibit A, attached hereto and incorporated by reference (the "**Property**"); and

WHEREAS, the transaction set forth in the Purchase Agreement includes, among other things, the conveyance of all revenue from the sale of crops from the Property for the [year] crop year (the "**[year] Crops**") paid after the Closing (as defined in the Purchase Agreement) to Assignee; and

WHEREAS, Assignor has completed the harvest from the Property and delivered the [year] Crops to the Crop Purchasers (defined below) for hulling, shelling, processing and marketing; and

WHEREAS Assignor and Assignee closed the purchase and sale of the Property on the date hereof, and pursuant to the Purchase Agreement and Sale Order, Assignor has agreed to assign to Assignee all of its right, title and interest in and to all revenue from the sale of the [year] Crops paid after the Closing, as set forth herein;

THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Assignor hereby assigns and transfers to Assignee all of Seller's right, title and interest, to the extent assignable and/or transferrable, in and to the following, to the extent paid after the Closing  (collectively, the "**Crop Proceeds**"): (i) the net proceeds arising out of or generated from the sale or other disposition of the [year] Crops, after deducting Crop Purchaser's standard processing and handling charges, (ii) any rights of Assignor in and to the[year] Crops held by Crop Purchaser; (iii) all money or other forms of payment payable to Assignor from Crop Purchaser that is related to or arises out of the sale or other disposition of the [year] Crops, including, but not limited to all rights to the payment of money or payment in kind, whether due or to become due and whether or not earned by performance, including crop insurance payments, contract rights, revolving funds, credits, cash (including any money or proceeds on deposit with or held by Crop Purchaser on behalf of Assignor), patronage dividends, and any non-cash proceeds from the sale or other disposition of the [year] Crops, and (iv) all statutory lien rights of a grower of agricultural products delivered to Crop Purchaser under applicable law with respect to the [year] Crops.

As used in this Assignment the following terms will have the following meanings and all capitalized terms not otherwise defined herein shall have the meanings as set forth in the Purchase Agreement:

20039.001/Westlands A&R PSA - Prudential (EX)

"**Crop Contract**" means any agreement for the purchase, marketing, processing or cooperative arrangement for the purchase, marketing, processing, or other disposition of the [year] Crops.

"**Crop Purchaser**" means any purchaser, cooperative, marketing organization, agricultural processor, or other Person, whether or not such person takes title to or possession of the [year] Crops, who either purchases the [year] Crops from Assignor or agrees to sell, market, or otherwise dispose of the [year] Crops.

Assignee shall have the right, with respect to the [year] Crops (but not other crops delivered by Assignor under the Crop Contracts): (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Crop Proceeds, whether under the Crop Contracts, or otherwise;  (b)  to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Crop Proceeds;  (c)  to settle or compromise any and all claims arising under the Crop Contracts or with respect to the Crop Proceeds, and in the place and stead of Assignor, to execute and deliver its release and settlement for the claim; and  (d)  to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Assignor, or otherwise, which in the discretion of Assignee may seem to be necessary or advisable.

**Assignor irrevocably directs each Crop Purchaser to remit directly to Assignee all Crop Proceeds due to Assignor under the Crop Contract with such Crop Purchaser solely with respect to the [year] Crops.**

Assignor agrees to warrant and defend title in Assignee, its successors and assigns, against the lawful claims of all persons claiming by, through or under Assignor, but not otherwise, in and to the Crop Proceeds.  Each party will, at any time and from time to time upon written request therefor, execute and deliver to the other party such documents as such other party may reasonably request in order to fully assign and transfer the Crop Proceeds.  In the event of any litigation initiated to enforce the terms of this Assignment, the prevailing party shall be entitled to an award for its reasonable attorneys' fees and expenses from the non-prevailing party.  This Assignment shall be governed by, interpreted under, and construed and enforced in accordance with, the laws of the State of California.  This Assignment may be executed in one or more counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one agreement.  This Assignment shall bind and inure to Assignor and Assignee and their respective successors and assigns.

Assignee, on behalf of itself and its successors and assigns, acknowledges, and expressly agrees that Assignor is entering into this Assignment of Crop Proceeds solely in his capacity as Court-appointed receiver and, as such, shall have no personal liability for any claims arising under or related to this agreement, the [year] Crops, or otherwise.

SIGNATURE PAGE FOLLOWS

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

IN WITNESS WHEREOF, the parties have executed this Assignment of Crop Proceeds as of the date first written above.


ASSIGNOR                                             ASSIGNEE

By: _____           **[insert assignee sig block]**
Lance Miller, solely in his capacity as
Court-appointed Receiver




[attach legal description exhibit]

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT L

Form of Solar Contract Payment Assignment

## SOLAR CONTRACT PAYMENT ASSIGNMENT

THIS SOLAR CONTRACT PAYMENT ASSIGNMENT (the "**Assignment**"), dated _____, 2026 (the "**Effective Date**"), is given by _____ ("**Assignor**") to LANCE MILLER, solely in his capacity as court-appointed receiver (the "Assignee") pursuant to the _____ ("**Sale Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB, pending in the U.S. District Court for the Eastern District of California[, and consented to and agreed to by _____ ("**Solar Counterparty**")].

WHEREAS, Assignor and Assignee (or their respective predecessors by assignment) are parties to that certain Purchase and Sale Agreement and Joint Escrow Instructions, dated _____ (the "**Purchase Agreement**"), with respect to the purchase and sale of, among other things, that certain property described in Exhibit A, attached hereto and incorporated by reference (the "**Property**"); and

WHEREAS, the Property is subject to that certain _____ dated _____ by and between _____ and Solar Counterparty (the "**Solar Contract**").

WHEREAS, the transaction set forth in the Purchase Agreement includes, among other things, the payment by Assignor to Assignee of fifty percent (50%) of all Solar Payments (defined below) arising from the Solar Contract (including from a Solar Lease, as defined below); and

WHEREAS Assignor and Assignee closed the purchase and sale of the Property on the date hereof, and pursuant to the Purchase Agreement and Sale Order, Assignor has agreed to assign to Assignee 50% of all Solar Payments arising from the Solar Contract paid after the Closing, as set forth herein;

THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Assignor hereby assigns and transfers to Assignee all of Seller's right, title and interest, to in and to fifty percent (50%) of all Solar Payments arising from the Solar Contract; where:

> (1)    "**Solar Payments**" means (i) all Solar Option Payments, (ii) all Solar Purchase Consideration, and (iii) all Solar Lease Consideration, in each of (i) – (iii) above payable with respect to any extension, exercise of an option to extend a lease or option period, or on the lease or purchase of land or an easement thereon pursuant to the Solar Contract.

> (2)    "**Solar Option Payments**" means the total consideration, whether paid in lump sum or installments, for the right to purchase or lease land or an easement thereon, at a future time, under the Solar Contracts.

> (3)    "**Solar Purchase Consideration**" means the total consideration due and payable under a Solar Contract for the purchase of land or an easement thereon, whether paid at the closing thereof in lump sum or paid in installments.  For clarity, the exercise of any option to purchase land which option is only available after the establishment of a Solar Lease shall be a Capitalization Event for the purpose of

20039.001/Westlands A&R PSA - Prudential (EX)

determining Solar Lease Consideration, and shall not trigger payment of Solar Purchase Consideration.

(4)    "**Solar Lease Consideratio**n" means (i) until the occurrence of a Capitalization Event with respect a lease made pursuant to a Solar Contract (a "**Solar Lease**"), the actual lease (rent) consideration for the leased land, and (ii) upon a Capitalization Event, the amount received or to be received by Buyer determined as follows:  In the event of a Capitalization Event under:

(a)    clause 5(i) below, the net consideration received by Buyer for such sale, after deducting Buyer's reasonable, documented, out-of-pocket transaction costs (including legal fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event;

(b)    clause 5(ii) below, the net loan proceeds received by Buyer and attributed to the Solar Lease, after deducting Buyer's reasonable, documented, out-of-pocket transaction costs (including legal fees, lender fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event; and

(c)    clause 5(iii) below, the amount by which the per-acre consideration received by Buyer for such land exceeds Six Thousand Dollars ($6,000.00) per acre, multiplied by the number of acres so transferred;

in each case provided that, in the event that a Capitalization Event occurs in connection with a transaction involving property other than Specified Solar Parcels (as defined below) pursuant to which the consideration received in respect of the Solar Lease or land subject thereto cannot be reasonably determined, the consideration shall be the amount mutually agreed by the Parties, or if they cannot so agree, as determined by an independent appraisal, the cost to be shared equally by the Parties. Upon the occurrence of a Capitalization Event with respect to any Solar Lease (or portion thereof, if not fully involved in said Capitalization Event), and subject to Seller's receipt of indefeasible payment of all Solar Consideration due in respect of said Solar Lease (or potion thereof), then Seller shall no longer be entitled to any further Solar Consideration with respect to such Solar Lease (or the portion thereof subject to the Capitalization Event).

(5)    "**Capitalization Event**" means, with respect to each Solar Lease the first to occur of one of the following (i) a sale of such Solar Lease, separate and apart from the Land, (ii) receipt of loan proceeds which are secured primarily by the Solar Lease, (iii) the sale or transfer of the land on which the Solar Lease is located to a Solar Counterparty.

(6)    "**Specified Solar Parcels**" means, collectively, those specific parcels of the Land affected by any of the Solar Contracts.

-83-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

On prior written notice to the other of Assignor or Assignee, and subject to the terms of this Assignment, either of Assignor or Assignee shall have the right to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable by Solar Counterparty to Assignor under the Solar Contract, or any Solar Lease made pursuant thereto; provided that any amounts actually collected, less the reasonable costs of collection, shall be promptly allocated fifty percent (50%) to Assignee and fifty percent (50%) to Assignor.

**Assignor irrevocably directs Solar Counterparty, and Solar Counterparty agrees to remit directly to Assignee, or Successor Assignee, fifty percent (50%) of all Solar Payments due to Assignor under the Solar Contract, or any Solar Lease made pursuant thereto; provided, however, that upon written notification from Assignee that it has been paid in full with respect to the Solar Contract following a Capitalization Event, Solar Counterparty shall no longer be required to remit any portion of the Solar Payments to Assignee.   Assignee agrees to promptly notify Solar Counterparty when it has been paid in full with respect to the Solar Contract following a Capitalization Event.**

**Assignor and Solar Counterparty agree that the Solar Contract, or any Solar Lease made pursuant thereto, shall not be amended or terminated (except pursuant to such termination rights that may exist in favor of Solar Counterparty in such Solar Contract as of the date hereof), without the prior written consent of Assignee, or any Successor Assignee.  Any consent required under this paragraph shall not be unreasonably withheld, conditioned, or delayed, and shall be deemed granted if Assignee (or Successor Assignee, if applicable) fails to respond within twenty-one (21) days following written request therefor.**

Assignee shall have the right to assign its rights in and to the Solar Payments and under this Assignment to one of more persons (collectively, "**Successor Assignee**") without the consent of Assignor, provided that Assignee shall promptly notify Assignor (and if a signatory hereto, Solar Counterparty) of any assignment of Assignee's interest in the Solar Payments or this Assignment, including contact information for the Successor Assignee.  Assignor agrees that it shall not assign its interests in and to the Solar Payments or the Solar Contracts (or any Solar Lease made pursuant thereto), without the prior written consent of Assignee, which shall not be unreasonably withheld so long as each assignee thereof acknowledges Assignee's rights hereunder, and under any security agreement related thereto.

Assignor agrees to warrant and defend title in Assignee, its successors and assigns, against the lawful claims of all persons claiming by, through or under Assignor in and to the Solar Payments and the Solar Contract (or any Solar Lease made pursuant thereto).  Each party will, at any time and from time to time upon written request therefor, execute and deliver to the other party such documents as such other party may reasonably request in order to fully assign and transfer the fifty percent (50%) interest in and to the Solar Payments.  In the event of any litigation initiated to enforce the terms of this Assignment, the prevailing party shall be entitled to an award for its reasonable attorneys' fees and expenses from the non-prevailing party.  The Court shall have exclusive jurisdiction over any legal action brought by any Party to interpret or enforce this Agreement.  To the extent the Court declines jurisdiction, any legal action brought by any Party to interpret or enforce this Agreement shall be venued in the appropriate state or federal court sitting in the City and County of Fresno, California.

20039.001/Westlands A&R PSA - Prudential (EX)

This Assignment may be executed in one or more counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one agreement.  This Assignment shall bind and inure to Assignor and Assignee and their respective successors and assigns.

Assignee, on behalf of itself and its successors and assigns, acknowledges, and expressly agrees that Assignor is entering into this Assignment solely in his capacity as Court-appointed receiver and, as such, shall have no personal liability for any claims arising under or related to this Assignment, the Solar Contract (or any Solar Lease made pursuant thereto), or otherwise.

This Assignment shall be effective as between Assignor and Assignee notwithstanding the lack of signature of the Solar Counterparty.

SIGNATURE PAGE FOLLOWS

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first written above.


ASSIGNEE                                    ASSIGNOR

By: _____          **[insert assignor sig block]**
Lance Miller, solely in his capacity as
Court-appointed Receiver


Address for notice:                         Address for notice:
[insert address]                            [insert address]




                                            SOLAR COUNTERPARTY

                                            **[insert solar counterparty sig block]**



                                            Address for notice:
                                            [insert address]




[attach legal description exhibit]

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT M

Form of Memorandum

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

Brightfield Investments LLC
c/o International Farming Corporation, LLC
1318 Dale St.
Raleigh, NC 27605
Attention: Ralph Isenrich
Email: risenrich@intlfarming.com

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**MEMORANDUM OF COVENANTS**

THIS MEMORANDUM OF COVENANTS ("**Memorandum**"), dated as of _____, 2026, is executed by and between Lance Miller, solely in his capacity as Court-appointed receiver in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB pending in the U.S. District Court for the Eastern District of California, ("**Seller**") and _____ ("**Buyer**").

A.      Buyer and Seller (or their respective predecessors by assignment) are parties to that certain unrecorded Purchase and Sale Agreement and Joint Escrow Instructions, dated _____ (the "**Purchase Agreement**"), with respect to the purchase and sale of, among other property, that certain property described in Exhibit A, attached hereto and incorporated by reference (the "**Property**").

B.      The Property is subject to those certain contracts listed on Exhibit B, attached hereto and incorporated by reference (the "**Solar Contracts**").

C.      The transaction set forth in the Purchase Agreement includes, among other things, certain post-closing obligations and agreements related to the property and the Solar Contracts.

D.      Buyer and Seller have closed the purchase and sale of the Property on the date hereof, and pursuant to the Purchase Agreement, desire to record this Memorandum to provide notice of certain post-closing covenants and related agreements affecting the Property and the Solar Contracts as set forth herein.

NOW, THEREFORE, Assignor and Assignee, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and agreed, agree as follows.

1.      **Post-Closing Covenants**. Pursuant to the terms of the Purchase Agreement, and for the time set forth therein:

-87-

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

a.     Buyer, and any successor in and to the Solar Contracts, shall have an obligation to pay to Seller the Solar Consideration (as defined in the Purchase Agreement) solely with respect to parcels affected by the Solar Contracts;

b.     Buyer shall not, for a period of five (5) years following the expiration or termination of any Solar Contract (the "**Restricted Period**"), or option contained therein, enter into a new option or agreement with the same counterparty, or an affiliate thereof, for substantially the same purpose; with respect to the specific parcel affected by the expiring or terminating Solar Contract;

c.     Buyer shall not take any action, whether independently or in conjunction with a counterparty under any Solar Contract, which is intended to, or which results in, the avoidance of Buyer's obligations Section 1.9 of the Purchase Agreement;

d.     Buyer shall use best efforts to cause a Capitalization Event to occur with respect to each Solar Lease not later than six (6) months following the commencement date of such Solar Lease (the "**Capitalization Deadline**"), provided that

i.     Seller shall grant one six (6) month extension to the Capitalization Deadline if an agreement to provide for a Capitalization Event within such extended period has been executed by a party reasonably capable of performing thereunder; and

ii.     In the event that Buyer fails to cause a Capitalization Event to occur prior to the Capitalization Deadline, as may be extended as provided above, then Seller shall have the right to cause a Capitalization Event to occur and pay to Buyer 50% of the net proceeds thereof, after deducting Seller's reasonable, documented, out-of-pocket transaction costs (including legal fees, lender fees, brokerage commissions, and transfer taxes) directly attributable to such Capitalization Event, and Buyer shall reasonably cooperate with such actions; and

e.     In the event Buyer should transfer any land encumbered by a Solar Contract, including without limitation a Solar Lease created pursuant to a Solar Contract, Buyer shall assign the affected Solar Contract or Solar Lease to such transferee subject to Seller's rights to the Solar Consideration and subject to the Solar Consideration Security Agreement and Solar Contract Payment Assignments, and all obligations of Buyer therein.

Reference to the Purchase Agreement is made for the particular terms thereof.

**2.     Related Agreements.**   In connection with the foregoing, Buyer and Seller have entered into (i) a Solar Consideration Security Agreement, and (ii) a Solar Contract Payment Assignment with respect to each Solar Contract.   Reference is made to the foregoing agreements for the particular terms thereof

**3.     Binding on Successive Owners**.  The obligations set forth in the Solar Consideration Security Agreement, and each  Solar Contract Payment Assignment shall be binding on successive owners of the Property and assignee in and to the Solar Contract.

**4.     Release**.  Upon (i) the expiration or termination of the Restricted Period with respect to any Solar Contract, or (ii) on the payment in full to Seller of all Solar Consideration required to be

20039.001/Westlands A&R PSA - Prudential (EX)

paid to Seller under any Solar Contract, Seller shall, within ten (10) business days following written request from Buyer, execute and deliver to Buyer a recordable confirmation of the release of the parcel or parcels of land affected by such Solar Contract, in form reasonably acceptable for recording in the applicable county.  Buyer shall bear all costs of recording any such confirmation.

**5.** **Incorporation of Agreement**.  This Memorandum is for informational purposes only and nothing contained herein shall be deemed to in any way modify or otherwise affect any of the provisions of the Purchase Agreement, Solar Consideration Security Agreement, or any Solar Contract Payment Assignment (collectively, the "**Transaction Agreements**" which are hereby incorporated herein.  This Memorandum is subject to all of the provisions of the Transaction Agreements and in the event of any inconsistency between the provisions of the Transaction Agreements on the one hand and this Memorandum on the other hand, the provisions of the Transaction Agreements shall prevail.  The Transaction Agreements should be referenced to review the specific provisions contained therein.

**6.** **Counterparts**.  This Memorandum may be executed in any number of counterparts, each of which shall constitute an original and all of which shall constitute but one and the same document.

[Remainder of Page Intentionally Left Blank – Signature Page Follows]

20039.001/Westlands A&R PSA - Prudential (EX)

SELLER                                          BUYER

   By: _____          **[insert assignor sig block]**
   Lance Miller, solely in his capacity as
   Court-appointed Receiver

[attach notary acknowledgement]

[attach legal description of affected property; and solar contract list]

-90-

EXHIBIT N

Form of Joinder by Buyer Parties

JOINDER BY BUYER PARTY(IES)

The below listed Buyer Party(ies) hereby join(s) in the making of the foregoing Amended and Restated Purchase and Sale Agreement and Joint Escrow Instructions dated [___], 2026 for the purpose of evidencing their agreement to the provisions of <u>Section 27</u> thereof.


DATE: _____

[SIG BLOCKS TO BE DETERMINED]

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.1(g)

Contract Schedule

1. Pistachio Contract as defined in Section 1.6, and included in Schedule 1.6.

2. Option and Purchase Agreement, dated March 23, 2018, as amended by that certain First Amendment to Option and Purchase Agreement, dated November 30, 2018, and that certain Second Amendment to Option and Purchase Agreement, dated March 30, 2022, each by and between Sageberry III, LLC, a California limited liability company ("**Sageberry III**") and Sageberry IV, LLC, a California limited liability company ("**Sageberry IV**"), and **SAN LUIS WEST SOLAR, LLC**, a California limited liability company ("**SLWS**"); as further amended by that certain Third Amendment to Option and Purchase Agreement, dated September 20, 2023, and that certain Fourth Amendment to Option and Purchase Agreement, dated October 21, 2024, each by and between **SAGEBERRY FARMS, LLC**, a California limited liability company, and SLWS; as further amended by that certain Fifth Amendment to Option and Purchase Agreement, dated March 21, 2025, as further amended by that certain Sixth Amendment to Option and Purchase Agreement, dated August 21, 2025, each by and between Seller and SLWS, as further amended by that certain Seventh Amendment to Option and Purchase Agreement, dated February 27, 2026, each by and between Seller and SLWS. (2018-0039681, et al)

3. Option Agreement dated May 30, 2024, by and between Cantua Orchards, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company. (2024-0114658)

4. Option Agreement dated May 30, 2024, by and between ACDF, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company. (2024-0114802)

5. Option Agreement dated May 30, 2024, by and between Sageberry Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company. (APNs 068-071-39, et al)(2024-0114656)

6. Option Agreement dated May 30, 2024, by and between Sageberry Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company (APNs 078-020-54s, et al) (2024-0099910)

7. Capacity Option Agreement, dated December 16, 2019, by and between Sageberry I, LLC, a California limited liability company, and Westlands Transmission, LLC, a Delaware limited liability company. (2019-0151297)

8. Option Agreement for Easement dated April 2, 2024, by and between C & A Farms, LLC, a California limited liability company, and IP Land Holdings, LLC, a Delaware limited liability company. (2024-0045807) *[in the process of verifying if terminated by option holder]*

9. Option and Land Lease Agreement dated _____, by and between Windfall Farms I, a general partnership, and Fresno MSA Limited Partnership d/b/a Verizon Wireless. (2019-0055262)

-92-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

10. Option and Lease Agreement dated October 26, 2023, by and between ACDF, LLC, a California limited liability company, ands T-Mobile West LLC, a Delaware limited liability company. (2024-0024975) (may be expired)

11. Solar Lease Option Agreement dated March 10, 2023, by and between ACDF, LLC, a California limited liability company, and Boulevard Associates, LLC, a Delaware limited liability company. (2023-0035321)

12. Solar Lease Option Agreement dated March 10, 2023, by and between Bear Flag Farms LLC, a California limited liability company, and Boulevard Associates, LLC, a Delaware limited liability company. (2023-0035337)

13. [Intentionally deleted]

14. Farming Lease dated May 9, 2023, by and between Bear Flag Farms, LLC, a California limited liability company (as Landlord) and EGC Investments, Inc, a California corporation (as Tenant") with respect to 36.61 acres of cherries on Fresno County APN 027-040-13.

15. Farming Lease dated May 9, 2023, by and between Bear Flag Farms, LLC, a California limited liability company (as Landlord) and EGC Investments, Inc, a California corporation (as Tenant") with respect to 36.41 acres of apricots on Fresno County APN 027-040-13.

16. Lease Agreement dated January 1, 2019, made by and between Sageberry Farms, LLC, a California limited liability company, and Arroyo Pasajero Mutual Water Company, a California nonprofit mutual benefit corporation, as amended by that certain First Amendment to Lease Agreement dated March 31, 2021, and as further amended by that certain Second Amendment to Lease Agreement dated September 19, 2024.

17. Residential Leases

   a. Lease Agreement dated effective March 16, 2025,  by and between Granville Farms, LLC, a California limited liability company (who entered the lease as Granville Farms) as Landlord,  and Jesus Rivera and Estefani Vazquez, as Tenant, with respect to 35540 W. Kamm Ave, Cantua Creek, CA 93608.

   b. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Rafael Vazquez and Laura Morales, as Tenant,  with respect to 35542 W. Kamm Ave, Cantua Creek, CA 93608.

   c. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Jose Angel Barajas and Maria Irma Lainez, as Tenant,  with respect to 35544 W. Kamm Ave, Cantua Creek, CA 93608.

   d. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Jose Carmen Arteaga Barajas and Eva Angelina Llamas, as Tenant,  with respect to 35546 W. Kamm Ave, Cantua Creek, CA 93608.

-93-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**e.** Residential Lease dated April 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Jose Amodor and Flor Amador, as Tenant, with respect to 35548 W. Kamm Ave, Cantua Creek, CA 93608.

f. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Alan Elijas and Angelica Vivanco, as Tenant, with respect to 35550 W. Kamm Ave, Cantua Creek, CA 93608

g. Residential Lease dated February 1, 2019, by and between Gradon Farms, LLC, a California limited liability company, as Landlord, and Brigido Enriquez Cano and Amparo Aguirre, as Tenant, with respect to 16801 W. Tractor Ave, Huron, CA 93234.

h. Residential lease dated January 1, 2018, by and between T.J.S. Corporation, as Landlord, and Isidro Pacheco, as Tenant, with respect to 16803 W. Tractor Ave, Huron, CA 93234.

i. Lease Agreement dated effective June 7, 2022, by and between Gradon Farms, LLC, a California limited liability company (who entered the lease as Gradon Farms) as Landlord, and Hector Lainez, as Tenant, with respect to 44594 W. Manning Ave, Firebaugh, CA 93622.

18. [Intentionally deleted].

19. Option Agreement dated September 30, 2023, by and between ACDF, LLC, a California limited liability company (as successor by merger to Bishop Farms 15, LLC, a California limited liability company), and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated October 10, 2024, as amended by that Second Amendment to Option Agreement, dated October 18, 2024.

20. Option Agreement dated September 30, 2023, by and between Gradon Farms, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated May 30, 2024, as amended by that certain Second Amendment to Option Agreement, dated October 18, 2024.

21. [Intentionally deleted].

22. Option Agreement dated September 30, 2023, by and between Sageberry Farms (erroneously originally entered into by Maricopa Orchards, LLC, a California limited liability company), and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated October 10, 2024.

23. Option Agreement dated September 30, 2023, by and between ACDF, LLC, a California limited liability company, Cantua Orchards, LLC, a California limited liability company, and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated October 10, 2024.

-94-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

24. Option Agreement dated May 30, 2024, by and between Granville Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company.

25. Option Agreement dated May 30, 2024, by and between Gradon Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company.

26. [Intentionally deleted].

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.1(h)

Poso Creek Interests/Water

| Vested Owner (subject to Receivership) | Membership Interest (%) | Stored Water (AF) |
|---|---|---|
| Maricopa Orchards, LLC | 25.398 | 28,164* |
| ACDF, LLC | 25.398 | 17,700 |
| **TOTAL** | **50.796** | **45,864** |

*An additional 1500 AF is owned subject to lien in favor of MetLife.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.1(j)

Solar Contracts

1.  Option and Purchase Agreement, dated March 23, 2018, as amended by that certain First Amendment to Option and Purchase Agreement, dated November 30, 2018, and that certain Second Amendment to Option and Purchase Agreement, dated March 30, 2022, each by and between Sageberry III, LLC, a California limited liability company ("**Sageberry III**") and Sageberry IV, LLC, a California limited liability company ("**Sageberry IV**"), and **SAN LUIS WEST SOLAR, LLC**, a California limited liability company ("**SLWS**"); as further amended by that certain Third Amendment to Option and Purchase Agreement, dated September 20, 2023, and that certain Fourth Amendment to Option and Purchase Agreement, dated October 21, 2024, each by and between **SAGEBERRY FARMS, LLC**, a California limited liability company, and SLWS; as further amended by that certain Fifth Amendment to Option and Purchase Agreement, dated March 21, 2025, as further amended by that certain Sixth Amendment to Option and Purchase Agreement, dated August 21, 2025, each by and between Seller and SLWS, as further amended by that certain Seventh Amendment to Option and Purchase Agreement, dated February 27, 2026, each by and between Seller and SLWS. (2018-0039681, et al).

2.  [Intentionally deleted]

3.  Solar Lease Option Agreement dated March 10, 2023, by and between ACDF, LLC, a California limited liability company, and Boulevard Associates, LLC, a Delaware limited liability company. (2023-0035321)

4.  Solar Lease Option Agreement dated March 10, 2023, by and between Bear Flag Farms LLC, a California limited liability company, and Boulevard Associates, LLC, a Delaware limited liability company. (2023-0035337)

5.  Option Agreement dated May 30, 2024, by and between Cantua Orchards, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company. (2024-0114658)

6.  Option Agreement dated May 30, 2024, by and between ACDF, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company. (2024-0114802)

7.  Option Agreement dated May 30, 2024, by and between Sageberry Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company. (APNs 068-071-39, et al)(2024-0114656)

8.  Option Agreement dated May 30, 2024, by and between Sageberry Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company (APNs 078-020-54s, et al) (2024-0099910)

9.  Capacity Option Agreement, dated December 16, 2019, by and between Sageberry I, LLC, a California limited liability company, and Westlands Transmission, LLC, a Delaware limited liability company. (2019-0151297)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

10. Option Agreement for Easement dated April 2, 2024, by and between C & A Farms, LLC, a California limited liability company, and IP Land Holdings, LLC, a Delaware limited liability company. (2024-0045807) *[in the process of verifying if terminated by option holder]*

11. [Intentionally deleted]

12. [Intentionally deleted]

13. Option Agreement dated September 30, 2023, by and between ACDF, LLC, a California limited liability company (as successor by merger to Bishop Farms 15, LLC, a California limited liability company), and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated October 10, 2024, as amended by that Second Amendment to Option Agreement, dated October 18, 2024.

14. Option Agreement dated September 30, 2023, by and between Gradon Farms, LLC, a California limited liability company, ACDF, LLC, a California limited liability company, and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated May 30, 2024, as amended by that certain Second Amendment to Option Agreement, dated October 18, 2024.

15. [Intentionally deleted].

16. Option Agreement dated September 30, 2023, by and between Sageberry Farms (erroneously originally entered into by Maricopa Orchards, LLC, a California limited liability company), and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated October 10, 2024.

17. Option Agreement dated September 30, 2023, by and between ACDF, LLC, a California limited liability company, Cantua Orchards, LLC, a California limited liability company, and GSCE Valley Solar Development, LLC, a Delaware limited liability company, as amended by that First Amendment to Option Agreement, dated October 10, 2024.

18. Option Agreement dated May 30, 2024, by and between Granville Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company.

19. Option Agreement dated May 30, 2024, by and between Gradon Farms, LLC, a California limited liability company, and SJV Transmission LandCo, LLC, a Delaware limited liability company.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.6

Pistachio Contract and Memorandum

1.  Pistachio Contract (attached)

2.  Pistachio Memorandum (attached)

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

# WP PISTACHIOS LLC
# PISTACHIO PURCHASE AGREEMENT
# (BONUS INCENTIVE PROGRAM)

Lance Miller, solely in his capacity as Court-appointed receiver ("Grower") in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB ("Action") pending in the U.S. District Court for the Eastern District of California (the "Court") and WP Pistachios LLC, a Delaware limited liability company ("Buyer"), hereby agree as follows:

1.      Each year during the Term of this Agreement, Grower shall sell to Buyer at least 100% (the "Required Percentage") of the 10,011.79 acres of pistachios to be produced on Grower's pistachio orchards indicated in Exhibit A, located in Fresno County, California (the "Property").

Legal Description or A.P.N. Numbers:  See Exhibit A

2.      This Agreement shall be for a term of two (2) crop years consisting of the crops to be harvested in the Fall of 2026 and 2027 (the "Term").

3.      Buyer agrees to pay to Grower an amount equal to Buyer's final minimum price per pound for marketable, edible, dry weight, split inshell pistachios ("Split Inshell") and edible kernels from closed shell pistachios and shelling stock, plus the bonuses set forth in Section 5, Section 6, Section 7, Section 8, and Section 9 below, if applicable. Following delivery of the crop, in any year, all payments will be made pursuant to the schedule set forth below; provided the schedule may be adjusted by mutual agreement with interest being paid at prime minus ¾% for deferred payment requests or charged at prime per year for advanced payment requests:

October 31    30%;        January 31st  30%;        April 30    30%;            August 31    10%

4.      MINIMUM PRICE: The minimum prices per pound to be paid by Buyer to Grower for each of (i) Split Inshell (the "Split Inshell Minimum Price") and (ii) edible kernels from closed shell pistachios and shelling stock, for each crop delivered by Grower to Buyer during the Term shall be announced by Buyer on or before July 31 of each crop year. The Split Inshell Minimum Price shall be adjusted by the bonuses set forth herein.

5.      COMMITMENT BONUS: In any crop year during the Term hereof, if Grower actually delivers to Buyer (a) 80% or more of the pistachios grown on the Property, the Split Inshell Minimum Price for that crop year shall be increased by $0.02 per pound; or (b) 50% to 79% of the pistachios grown on the Property, the Split Inshell Minimum Price for that year shall be increased by $0.01 per pound.  There will be no adjustment under this Section 5 to the Split Inshell Minimum Price in any crop year during the Term hereof that Grower delivers to Buyer 49% or less of the pistachios grown on the Property.

6.      CONTRACT BONUS: In consideration of Grower entering into this Pistachio Purchase Agreement, in addition to the commitment bonus described in Section 5, in any crop year during the Term hereof that Grower actually delivers to Buyer 50% or more of the pistachios grown on the Property, the Split Inshell Minimum Price for that year shall be increased by $0.01 per pound.

7.      QUANTITY BONUS: Each crop year during the Term hereof, Buyer shall pay to Grower from the Property as follows:  $0.04 per Split Inshell pound.

8.      HANDLING BONUS: In consideration of Grower entering into this Agreement, for each year of the Term of this Agreement, Buyer shall add $0.03 to the Split Inshell Minimum Price for the applicable year.

9.      INTENTIONALLY DELETED..

10.     The "Additional Terms and Conditions" attached hereto as paragraphs 11 through 20 inclusive are expressly made a part of this Agreement.

1

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

**ACCEPTED AND AGREED:**

**"GROWER":** Lance Miller, solely in his capacity as Court-appointed receiver

By: _____

Date: _____January 14, 2026_____

Lance Miller, Receiver
c/o Pivot Group
1230 Rosecrans Avenue
Suite 300 – PMB928
Manhattan Beach, CA 90266
Attn: Lance Miller or Matt Covington
Telephone:     424-363-0599
Email: lance.miller@pivotgrp.com and matt.covington@pivotgrp.com

**"BUYER":** WP PISTACHIOS LLC, a Delaware limited liability company

By:_____

Andrew Anzaldo, Senior Vice President of Grower Relations
13646 Highway 33, Lost Hills, CA  93249-9719
PH: (661) 797-6740, FAX: (661) 797-6744

Date:_____

This document is executed in counterparts, each of which is deemed to be an original, but such parts constitute one and the same instrument.

2

{3544865.2}

**ACCEPTED AND AGREED:**

"GROWER": Lance Miller, solely in his capacity as Court-appointed receiver

"BUYER": WP PISTACHIOS LLC, a Delaware limited liability company

By: _____

By: _____
79DA74F61238468...

Andrew Anzaldo, Senior Vice President of Grower Relations
13646 Highway 33, Lost Hills, CA 93249-9719
PH: (661) 797-6740, FAX: (661) 797-6744

Date: _____

Date: _Janurry 14, 2026_

Lance Miller, Receiver
c/o Pivot Group
1230 Rosecrans Avenue
Suite 300 – PMB928
Manhattan Beach, CA 90266
Attn: Lance Miller or Matt Covington
Telephone:      424-363-0599
Email:  lance.miller@pivotgrp.com and matt.covington@pivotgrp.com

This document is executed in counterparts.
each of which is deemed to be an original,
but such parts constitute one and the
same instrument.

2

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4
Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

## ADDITIONAL
## TERMS AND CONDITIONS

11.     Unless Grower arranges for transportation of the pistachios from Grower's orchards to the Buyer's affiliated processing facility ("Processing Facility"), Buyer shall arrange for such transportation.  In the event Buyer arranges for transportation of the pistachios from Grower's orchards to Processing Facility, Buyer will deduct from Grower's second payment (as set forth in Section 3), the actual and incidental charges, as specified on the transportation charge sheet, for transportation of pistachios to Processing Facility.  In the event Buyer provides bins to Grower, Buyer will deduct the actual charges for transportation of bins to and from Processing Facility/and or a third party facility, as applicable, in addition to any third party charges incurred by Buyer that are associated with bin rentals.

12.     Title and risk of loss or damage to the pistachios will pass from Grower to Buyer when the pistachios have either been (a) loaded onto trucks arranged for by Buyer for transportation to the Processing Facility, or (b) delivered to the Processing Facility by Grower's trucks.

13.     Buyer reserves the right to not accept pistachios that exceed the Required Percentage listed in Section 1 on either a daily delivery or overall commitment basis.

14.     Promptly upon arrival at the Processing Facility, Buyer shall have each delivery weighed at a certified scale by a Licensed weigh master.  Grower or his representative may observe the arrival, unloading, sampling and testing of his pistachios. A representative sample will be taken from each load.  This sample will be hulled, dried and weighed.  A portion of the sample will be fumigated, sealed in a container, and properly stored to prevent deterioration.  The remaining portion of the sample will be analyzed under the supervision of a USDA or Dried Fruit Association (DFA) inspector to determine the percentage of pistachios in various categories as reported on the standard pistachio industry sample analysis form.  These percentages will be applied to the total weight in the load sampled after deducting for foreign material, culls, insect damage, excess moisture, and other defects, to determine the pay-out weight.  Final results will be certified by USDA or DFA.  Buyer shall notify Grower of the results of such sample analyses within five (5) days of delivery.  Within fourteen (14) days of Buyer's receipt of Grower's delivery date, Grower shall have the right to request a retest.  The retest results will be used to determine the payout weight and grades. Buyer will deduct $250 per retest for those requests that exceed 3% of total weight delivered.

15.     Grower, solely in his capacity as Court-appointed receiver, represents and warrants that (a) Grower is authorized to enter into this Agreement; (b) Grower is the sole owner of the pistachios to be delivered to Buyer, or otherwise has full legal and equitable right to deliver the pistachios to Buyer, pursuant to the terms of this Agreement; (c) Grower will deliver to Buyer good and merchantable title to all pistachios delivered pursuant to the terms of this Agreement, free and clear of any and all liens and encumbrances, except for Grower's statutory liens; (d) Grower's performance of its obligations to Buyer will not violate any agreement between Grower and any third party or to which Grower is bound; (e) the pistachios: (i) were grown by Grower, (ii) were grown and harvested in compliance with, and the delivery thereof to Buyer shall comply with, all federal, state, and local laws and regulations including, but not limited to, laws governing terrorism, bioterrorism, homeland security, or the application of pesticides, herbicides, and other chemicals, all as adopted or amended from time-to-time; (iii) are and will not be adulterated, contaminated or misbranded within the meaning of the Federal Food, Drug, and Cosmetic Act, as adopted or amended from time-to-time, and are not and will not constitute an article which may not, under the provision of Section 404 or 505 of the Federal Food, Drug, and Cosmetic Act, be introduced into interstate commerce; (iv) are otherwise of good marketable quality; and (v) are and will be free and clear of any and all security interests, liens, encumbrances, and charges of any person, other than Grower's statutory liens. If any pistachios delivered to Buyer fail to meet the standards set forth above in this Section 15, (x) Processing Facility, upon its discovery thereof, shall promptly notify Grower, (y) title to such pistachios shall not pass to Buyer or will automatically revert back to Grower if title has already passed to Buyer, and (z) Processing Facility shall hold such pistachios on Grower's behalf, subject to Grower's orders; and (f) Grower has the sole right to receive any and all proceeds due under this Agreement If requested by Buyer, Grower shall provide Buyer with: (i) access to all documents and other information relating to the growing, production, and harvesting of all pistachios to be delivered by Grower to Buyer pursuant to the terms of this Agreement, including, but not limited to, all documents and other information relating to the application of pesticides, herbicides, and other chemicals to such pistachios, and (ii) access to all real property where such pistachios are or were produced for purposes of inspecting and testing any unharvested pistachios, trees, vines, soil, water, or other items, or to observe the Grower's, and its agents' and employees', practices and procedures.

16.     Notwithstanding anything to the contrary in this Agreement or any ancillary documents, Buyer acknowledges and expressly agrees that Grower is entering into this agreement solely in his capacity as Court-appointed receiver and shall have no personal liability for any claims arising under or related to this Agreement.

3

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4
Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

17.    Buyer acknowledges that Grower holds a valid producer's lien pursuant to California Food and Agricultural Code Sections 55631, et seq., and that nothing in this Agreement or any ancillary agreement waives or subordinates such lien.

18.    GROWER EXPRESSLY WAIVES ANY RIGHTS THAT IT MAY HAVE UNDER SECTIONS 62801 AND 62802 OF THE FOOD AND AGRICULTURE CODE OF THE STATE OF CALIFORNIA TO HAVE THIS CONTRACT STATE THE FULL PURCHASE PRICE AND A DEFINITE SUM OR TO DESCRIBE THE UNIT AND STATE THE FULL UNIT PRICE IS TO BE PAID UPON THE BASIS OF UNITS OR MEASURES.  GROWER EXPRESSLY WAIVES THE PENALTY PROVISIONS OF SECTION 62802 OF THE FOOD AND AGRICULTURAL CODE OF THE STATE OF CALIFORNIA FOR ANY FAILURE ON THE PART OF BUYER TO COMPLY WITH THE PROVISIONS OF SECTION 62801 OF SAID CODE.    GROWER UNDERSTANDS AND ACKNOWLEDGES THE SIGNIFICANCE AND CONSEQUENCES OF THE SPECIFIC WAIVER OF SECTION 62801 AND 62802 OF THE CALIFORNIA FOOD AND AGRICULTURAL CODE.

19.    Buyer and Grower shall not be obligated to perform under this Agreement, nor shall Buyer or Grower be liable for damages, in the event of interference with Buyer's or Grower's duties which is the result of labor disturbances, fire, acts of God, war, embargo, unusual weather conditions, unusual market disruptions, or any cause beyond the control of Buyer or Grower.

20.    This Agreement supersedes all oral and written agreements and understandings between the parties hereto relating to the subject matter of this Agreement, other than with respect to those Post-Closing Payments described in that certain Purchase and Sale Agreement and Joint Escrow Instructions dated November 3, 2025, by and between Grower, Buyer and WONDERFUL ORCHARDS LLC, a Delaware limited liability company.. Any modification or amendment to this Agreement shall be of no force or effect unless made in writing and signed by Buyer. Any exhibits to this Agreement are attached hereto and incorporated herein by reference. This Agreement shall be governed and interpreted by the laws of the State of California, and so long as the Action is pending, the Court shall have exclusive jurisdiction over any legal action brought by any party to interpret or enforce this Agreement . To the extent the Court declines jurisdiction, any legal action brought by any Party to interpret or enforce this Agreement shall be venued in an appropriate state or federal court of competent jurisdiction.   Should a court of competent jurisdiction declare any portion of this Agreement invalid, the remaining portions shall be enforceable, unless the invalid portion goes to the essence of the bargained for consideration hereunder. This Agreement may be executed in one or more counterparts, each of which shall be an original and all of which together shall constitute one and the same agreement. No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of or another breach of the same or another term or provision of this Agreement. This Agreement and all rights and duties hereunder may not be transferred, assigned or delegated without the express consent of the other party, except that (i) Buyer may do so to any affiliate, and (ii) Grower may assign, or partially assign, this Agreement to any successor owner(s) of the Property so long as any such successor owner(s) assumes, in writing, all of the rights and obligations of the Grower under this Agreement in any such assignment or partial assignment. This Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the parties hereto, including, in the case of Grower, any successors in interest to the Property. All communications, notices and demands of any kind which either party may be required or desire to give to or serve upon the other party shall be made in writing and sent by facsimile transmission, overnight delivery, first-class mail or certified mail, postage prepaid, to the addresses set forth in the signature block of this Agreement..

4

{3544865.2}

**EXHIBIT A**

| Westlands Pistachio Ranches | | | |
|---|---|---|---|
| Ranch Name | APN Number | Year Planted | Assessor Acres |
| Primestar | 017-080-46s | 2012 | 41.45 |
| Primestar | 017-080-72s | 2012 | 249.87 |
| Windfall | 027-180-46s | 2013 | 160.00 |
| Kamm Avenue | 038-071-41S | 2011 | 15.64 |
| Kamm Avenue | 038-071-42S | 2011 | 57.00 |
| Kamm Avenue | 038-071-43S | 2009 | 35.23 |
| Kamm Avenue | 038-071-44S | 2009 | 41.05 |
| Kamm Avenue | 038-071-46S | 2009 | 135.78 |
| Kamm Avenue | 038-071-59 | 2009 | 2.19 |
| Kamm Avenue | 038-130-02 | 1996 | 160.00 |
| Kamm Avenue | 038-130-19S | 2009 | 160.00 |
| Kamm Avenue | 038-130-19S | 2009 | 160.00 |
| Kamm Avenue | 038-130-51s | 2009 | 78.46 |
| Kamm Avenue | 038-130-56S | 2009 | 78.45 |
| Kamm Avenue | 038-130-58S | 2009 | 78.46 |
| Kamm Avenue | 038-130-86s | 2009 | 19.91 |
| Kamm Avenue | 038-130-87s | 2009 | 18.54 |
| Kamm Avenue | 038-141-26 | 2011 | 20.00 |
| Kamm Avenue | 038-141-27S | 2011 | 20.00 |
| Kamm Avenue | 038-141-28S | 2011 | 20.00 |
| Kamm Avenue | 038-141-29 | 2011 | 60.00 |
| Kamm Avenue | 038-141-30 | 2011 | 40.00 |
| Kamm Avenue | 038-141-31 | 2011 | 55.86 |
| Kamm Avenue | 038-141-38S | 2012 | 31.44 |
| Kamm Avenue | 038-141-41S | 2012 | 158.18 |
| Kamm Avenue | 038-141-44S | 2012 | 140.29 |
| Kamm Avenue | 038-141-49S | 2012 | 158.18 |
| Kamm Avenue | 038-141-50S | 2011 | 158.18 |
| Kamm Avenue | 038-141-52 | 2009 | 40.00 |
| Kamm Avenue | 038-141-53 | 2009 | 120.00 |
| Kamm Avenue | 038-141-54S | 2009 | 38.10 |
| Kamm Avenue | 038-141-55S | 2009 | 155.00 |
| Kamm Avenue | 038-141-55S | 2009 | 45.00 |
| Kamm Avenue | 038-141-56S | 2009 | 77.88 |
| Kamm Avenue | 038-141-58S | 2011 | 100.00 |
| Kamm Avenue | 038-141-60s | 1999 | 73.49 |
| Kamm Avenue | 038-141-63S | 2012 | 53.55 |
| Kamm Avenue | 038-210-01 | 2010 | 160.00 |
| Kamm Avenue | 038-210-02S | 2010 | 160.00 |
| Kamm Avenue | 038-210-03S | 2008 | 160.00 |

{3544865.2}

Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

| Westlands Pistachio Ranches | | | |
|---|---|---|---|
| Ranch Name | APN Number | Year Planted | Assessor Acres |
| Kamm Avenue | 038-210-06 | 2000 | 40.00 |
| Kamm Avenue | 038-210-08 | 2005 | 80.00 |
| Kamm Avenue | 038-210-09 | 2005 | 80.00 |
| Kamm Avenue | 038-210-10S | 2000 | 160.00 |
| Kamm Avenue | 038-210-14S | 2001 | 80.00 |
| Kamm Avenue | 038-210-15S | 2001 | 80.00 |
| Kamm Avenue | 038-210-26 | 2000 | 25.00 |
| Kamm Avenue | 038-210-27S | 2000 | 25.00 |
| Kamm Avenue | 038-210-30S | 2010 | 160.00 |
| Kamm Avenue | 038-210-37S | 2008 | 80.00 |
| Kamm Avenue | 038-210-38S | 2008 | 160.00 |
| Kamm Avenue | 038-210-39S | 2008 | 40.00 |
| Kamm Avenue | 038-210-41S | 2008 | 20.00 |
| Kamm Avenue | 038-210-42S | 2010 | 160.00 |
| Kamm Avenue | 038-210-43 | 2000 | 40.00 |
| Kamm Avenue | 038-210-44S | 2000 | 40.00 |
| Kamm Avenue | 038-210-44S | 2000 | 80.00 |
| Kamm Avenue | 038-210-47S | 2000 | 120.00 |
| Kamm Avenue | 038-210-54S | 2000 | 80.00 |
| Kamm Avenue | 038-210-63S | 2001 | 157.29 |
| Kamm Avenue | 038-210-68S | 1999 | 69.99 |
| Kamm Avenue | 038-210-69S | 1999 | 80.00 |
| Kamm Avenue | 038-210-70S | 1999 | 80.00 |
| Kamm Avenue | 038-210-71S | 2000 | 40.00 |
| Kamm Avenue | 038-210-74S | 2000 | 160.00 |
| Kamm Avenue | 038-210-76S | 2001 | 130.99 |
| Kamm Avenue | 038-210-77S | 1999 | 10.00 |
| Kamm Avenue | 038-210-78S | 1999 | 70.00 |
| Kamm Avenue | 038-210-79S | 1999 | 62.21 |
| Kamm Avenue | 038-210-80S | 1999 | 96.00 |
| Kamm Avenue | 038-210-80S | 1999 | 88.61 |
| Kamm Avenue | 038-270-01 | 1999 | 20.00 |
| Kamm Avenue | 038-300-18S | 2021 | 77.88 |
| Kamm Avenue | 038-300-27S | 2021 | 77.88 |
| Lassen Ranch | 068-071-06S | 2017 | 152.22 |
| Lassen Ranch | 068-071-07S | 2017 | 162.15 |
| Lassen Ranch | 068-071-09S | 2021 | 160.00 |
| Lassen Ranch | 068-071-36S | 2021 | 158.50 |
| Lassen Ranch | 068-071-38S | 2021 | 157.00 |
| Lassen Ranch | 068-071-39S | 2017 | 130.56 |
| Lassen Ranch | 068-071-41S | 2019 | 85.56 |
| Lassen Ranch | 068-071-42S | 2019 | 13.55 |

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-83B2D72F55B4

| Westlands Pistachio Ranches | | | |
|---|---|---|---|
| Ranch Name | APN Number | Year Planted | Assessor Acres |
| Huron | 075-050-07 | 2019 | 159.60 |
| Huron | 075-050-08S | 2015 | 160.00 |
| Huron | 075-070-43S | 2017 | 40.00 |
| Huron | 075-070-56S | 2017 | 154.18 |
| Huron | 075-070-56S | 2017 | 118.69 |
| Huron | 075-070-56S | 2017 | 158.69 |
| Huron | 078-060-02S | 2015 | 47.62 |
| Huron | 078-060-03S | 2017 | 173.68 |
| Huron | 078-060-57S | 2018 | 158.69 |
| Huron | 078-060-57S | 2018 | 158.69 |
| Huron | 078-060-57S | 2018 | 158.69 |
| Huron | 078-060-57S | 2018 | 153.70 |
| Huron | 078-060-65S | 2015 | 127.60 |
| Huron | 078-060-87S | 2017 | 86.59 |
| Huron | 078-060-88S | 2017 | 85.53 |
| Huron | 078-130-06S | 2015 | 130.00 |
| Huron | 078-130-07S | 2015 | 178.49 |
| Huron | 078-130-07S | 2015 | 37.00 |
| Huron | 078-130-11S | 2019 | 160.00 |
| Huron | 078-130-23S | 2015 | 80.00 |
| Huron | 078-140-02S | 2019 | 37.98 |
| Huron | 078-140-04S | 2019 | 40.00 |
| Huron | 078-140-05 | 2019 | 40.00 |
| Huron | 078-140-06S | 2019 | 19.40 |
| Huron | 078-140-07S | 2019 | 19.40 |
| | | | |
| | Total | | 10,011.79 |

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

## EXHIBIT A (Cont'd)

## Legal Description or A.P.N. Numbers

| Ranch | Field | Acres | County | Variety | Rootstock | Bearing | Year Planted | APN |
|-------|-------|-------|--------|---------|-----------|---------|--------------|-----|
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |
|  |  |  |  |  |  | Yes/No |  |  |

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4
Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

## Harvest Information Sheet

Farm Manager (Name):

FM Company Name:

Address:

Phone:

Email:

Please include a map of the orchard/s related to this contract.

For office purposes only:

Affiliation :                    _____

Region :                        _____

Est. Yield Per Acre:           _____

Harvester:                     _____

Harvester Type:        BIN / BULK

Delivery Type:         BIN / BULK

Preferred Carrier:     DEL / EXT / JPT / MAZ / SJS / VFT / MGM / MR / PREM / ZFT / OWN

Mileage:                       _____

9

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4
Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

Field Representative:    _____

{3544865.2}

**Form W-9**
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

**Give Form to the
requester. Do not
send to the IRS.**

Print or type
See Specific Instructions on page 2.

Name (as shown on your income tax return)

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☐ Individual/sole proprietor   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

☐ Other (see instructions) ▶

**Exemptions (see instructions):**

Exempt payee code (if any) _____

Exemption from FATCA reporting
code (if any) _____

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

| **Part I** | **Taxpayer Identification Number (TIN)** |

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

**Employer identification number**

| **Part II** | **Certification** |

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶                    Date ▶

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at www.irs.gov/w9. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X                    Form **W-9** (Rev. 8-2013)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4
Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

# Wonderful®
# PISTACHIOS

## Grower ACH Payment Form

Request Date: _____

Vendor #: _____

Payee Name: _____

Beneficiary Name on Account: _____

Bank Name: _____

Routing Number: _____

Account Number: _____

Remittance e-mail: _____

**Grower Authorization**

Signature: _____

Print Name: _____

Fax to (661) 797 - 6744 or Email to GRacct.wpa@wonderful.com

12

{3544865.2}

Docusign Envelope ID: EE2B7C57-458D-4488-A0EA-16CBE2C96D31

{3544865.2}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Recording Requested by
Chicago Title Company

Fresno County Recorder
Paul Dictos, CPA

**2026-0003110**

Recorded at the request of:
SIMPLIFILE, PROVO

01/14/2026 02:28 06
Titles: 1     Pages: 9
Fees: $43.00
CA SB2 Fees:$7275.00
Taxes:  $0.00
Total:  $7318.00

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

WP Pistachios LLC
11444 W. Olympic Blvd., 10ᵗʰ Floor
Los Angeles, California 90064
Attention:  General Counsel

45006151-sm

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## MEMORANDUM OF PISTACHIO PURCHASE AGREEMENT – FRESNO COUNTY
### (Westlands Pistachio Crop)

THIS MEMORANDUM OF PISTACHIO PURCHASE AGREEMENT – FRESNO COUNTY (Westlands Pistachio Crop) ("Memorandum"), dated as of January 14, 2026, is executed by and between Lance Miller, solely in his capacity as Court-appointed receiver in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB pending in the U.S. District Court for the Eastern District of California, a ("Grower") and WP Pistachios LLC, a Delaware limited liability company ("Buyer").

1.      Pistachio Purchase Agreement.  Grower and Buyer have entered into that certain Pistachio Purchase Agreement (Bonus Incentive Program) (the "Pistachio Purchase Agreement") with respect to that certain real property located in Fresno County, State of California, as more particularly described on Exhibit A attached hereto (the "Property").  Pursuant to the Pistachio Purchase Agreement, Grower granted to Buyer the exclusive rights to purchase 100% of the pistachios harvested from the Property for a term of two (2) crop years consisting of the crops to be harvested in the Fall of 2026 and 2027, on the terms and conditions of the Pistachio Purchase Agreement unless earlier terminated pursuant to the terms of the Pistachio Purchase Agreement.

2.      Covenant Running with the Land.  The Pistachio Purchase Agreement, and the covenants and agreements contained therein, expressly "run with the land" while the Pistachio Purchase Agreement is in force and effect.  On the termination or expiration of the Pistachio Purchase Agreement, Buyer shall immediately execute, acknowledge and record a termination instrument sufficient to terminate and remove this Memorandum as a matter of record affecting the Property, in form and content designated by Grower (or the then owner of the Property).

3.      Binding on Successive Owners.  The obligations set forth in the Pistachio Purchase Agreement shall be binding on successive owners of the Property and on the successors and assigns of Buyer.

4.      Incorporation of Agreement.  This Memorandum is for informational purposes only and nothing contained herein shall be deemed to in any way modify or otherwise affect any of the provisions of the Pistachio Purchase Agreement which are hereby incorporated herein.  This

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

Memorandum is subject to all of the provisions of the Pistachio Purchase Agreement and in the event of any inconsistency between the provisions of the Pistachio Purchase Agreement on the one hand and this Memorandum on the other hand, the provisions of the Pistachio Purchase Agreement shall prevail. The Pistachio Purchase Agreement should be referenced to review the specific provisions contained therein.

5. <u>Counterparts</u>. This Memorandum may be executed in any number of counterparts, each of which shall constitute an original and all of which shall constitute but one and the same document.

[Remainder of Page Intentionally Left Blank – Signature Page Follows]

2

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the date first set forth above.

**GROWER:**

LANCE MILLER, solely in his capacity as Court-appointed receiver

**BUYER:**

**WP PISTACHIOS LLC,**
a Delaware limited liability company

By:_____
ANDREW ANZALDO, Senior Vice President, Grower Relations

This document is executed in counterparts, each of which is deemed to be an original, but such parts constitute one and the same instrument.

{3545963.1}

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

IN WITNESS WHEREOF, the parties have executed this Memorandum as of the date first set forth above.

**GROWER:**

_____

LANCE MILLER, solely in his capacity as Court-appointed receiver

**BUYER:**

**WP PISTACHIOS LLC,**
a Delaware limited liability company

By:_____

ANDREW ANZALDO, Senior Vice President, Grower Relations

This document is executed in counterparts, each of which is deemed to be an original, but such parts constitute one and the same instrument.

{3545963.1}

> *A Notary Public or other officer completing this certificate verifies only the*
> *identity of the individual who signed the document to which this certificate is*
> *attached, and not the truthfulness, accuracy, or validity of that document.*

STATE OF CALIFORNIA      )
                        ) ss.
COUNTY OF _Los Angeles_   )

On ___01/05___, 2022*6* before me, _Nicole R. Smith_, Notary Public, personally appeared _Lance Miller_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

 

NICOLE R. SMITH
Notary Public - California
Los Angeles County
Commission # 2522173
My Comm. Expires Jun 30, 2029

(Seal)

-2-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

> *A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

STATE OF CALIFORNIA       )
                          ) ss.
COUNTY OF _Kern_____      )

On _January 9___, 202_6_, before me, _Barbara J. Rosette_, Notary Public, personally appeared ___Andrew Anzaldo___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Barbara J. Rosette_
Notary Public

BARBARA J. ROSETTE
Notary Public - California
Kern County
Commission # 2442630
My Comm. Expires Mar 28, 2027

(Seal)

-2-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

EXHIBIT A
Legal Description of the Property

(Fresno County)

| Map Location | APN Number | Crop | Assessor Acres |
|---|---|---|---|
| Huron | 075-050-07 | Pistachios | 159.60 |
| Huron | 075-050-08S | Pistachios | 160.00 |
| Huron | 075-070-43S | Pistachios | 40.00 |
| Huron | 075-070-56S | Pistachios | 431.56 |
| Huron | 078-060-02S | Pistachios | 47.62 |
| Huron | 078-060-03S | Pistachios | 173.68 |
| Huron | 078-060-57S | Pistachios | 629.77 |
| Huron | 078-060-65S | Pistachios | 127.60 |
| Huron | 078-060-87S | Pistachios | 86.59 |
| Huron | 078-060-88S | Pistachios | 85.53 |
| Huron | 078-130-06S | Pistachios | 130.00 |
| Huron | 078-130-07S | Pistachios | 215.49 |
| Huron | 078-130-11S | Pistachios | 160.00 |
| Huron | 078-130-23S | Pistachios | 80.00 |
| Huron | 078-140-02S | Pistachios | 37.98 |
| Huron | 078-140-04S | Pistachios | 40.00 |
| Huron | 078-140-05 | Pistachios | 40.00 |
| Huron | 078-140-06S | Pistachios | 19.40 |
| Huron | 078-140-07S | Pistachios | 19.40 |
| Kamm Avenue | 038-071-41S | Pistachios | 15.64 |
| Kamm Avenue | 038-071-42S | Pistachios | 57.00 |
| Kamm Avenue | 038-071-43S | Pistachios | 35.23 |
| Kamm Avenue | 038-071-44S | Pistachios | 41.05 |
| Kamm Avenue | 038-071-46S | Pistachios | 135.78 |
| Kamm Avenue | 038-071-59 | Pistachios | 2.19 |
| Kamm Avenue | 038-130-02 | Pistachios | 160.00 |
| Kamm Avenue | 038-130-19S | Pistachios | 320.00 |
| Kamm Avenue | 038-130-51s | Pistachios | 78.46 |
| Kamm Avenue | 038-130-56S | Pistachios | 78.45 |
| Kamm Avenue | 038-130-58S | Pistachios | 78.46 |
| Kamm Avenue | 038-130-86s | Pistachios | 19.91 |
| Kamm Avenue | 038-130-87s | Pistachios | 18.54 |
| Kamm Avenue | 038-141-26 | Pistachios | 20.00 |
| Kamm Avenue | 038-141-27S | Pistachios | 20.00 |
| Kamm Avenue | 038-141-28S | Pistachios | 20.00 |
| Kamm Avenue | 038-141-29 | Pistachios | 60.00 |

| Map Location | APN Number | Crop | Assessor Acres |
|---|---|---|---|
| Kamm Avenue | 038-141-30 | Pistachios | 40.00 |
| Kamm Avenue | 038-141-31 | Pistachios | 55.86 |
| Kamm Avenue | 038-141-38S | Pistachios | 31.44 |
| Kamm Avenue | 038-141-41S | Pistachios | 158.18 |
| Kamm Avenue | 038-141-44S | Pistachios | 140.29 |
| Kamm Avenue | 038-141-49S | Pistachios | 158.18 |
| Kamm Avenue | 038-141-50S | Pistachios | 158.18 |
| Kamm Avenue | 038-141-52 | Pistachios | 40.00 |
| Kamm Avenue | 038-141-53 | Pistachios | 120.00 |
| Kamm Avenue | 038-141-54S | Pistachios | 38.10 |
| Kamm Avenue | 038-141-55S | Pistachios | 200.00 |
| Kamm Avenue | 038-141-56S | Pistachios | 77.88 |
| Kamm Avenue | 038-141-58S | Pistachios | 100.00 |
| Kamm Avenue | 038-141-60s | Pistachios | 73.49 |
| Kamm Avenue | 038-141-63S | Pistachios | 53.55 |
| Kamm Avenue | 038-210-01 | Pistachios | 160.00 |
| Kamm Avenue | 038-210-02S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-03S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-06 | Pistachios | 40.00 |
| Kamm Avenue | 038-210-08 | Pistachios | 80.00 |
| Kamm Avenue | 038-210-09 | Pistachios | 80.00 |
| Kamm Avenue | 038-210-10S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-14S | Pistachios | 80.00 |
| Kamm Avenue | 038-210-15S | Pistachios | 80.00 |
| Kamm Avenue | 038-210-26 | Pistachios | 25.00 |
| Kamm Avenue | 038-210-27S | Pistachios | 25.00 |
| Kamm Avenue | 038-210-30S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-37S | Pistachios | 80.00 |
| Kamm Avenue | 038-210-38S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-39S | Pistachios | 40.00 |
| Kamm Avenue | 038-210-41S | Pistachios | 20.00 |
| Kamm Avenue | 038-210-42S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-43 | Pistachios | 40.00 |
| Kamm Avenue | 038-210-44S | Pistachios | 120.00 |
| Kamm Avenue | 038-210-47S | Pistachios | 120.00 |
| Kamm Avenue | 038-210-54S | Pistachios | 80.00 |
| Kamm Avenue | 038-210-63S | Pistachios | 157.29 |
| Kamm Avenue | 038-210-68S | Pistachios | 69.99 |
| Kamm Avenue | 038-210-69S | Pistachios | 80.00 |
| Kamm Avenue | 038-210-70S | Pistachios | 80.00 |

-5-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

| Map Location | APN Number | Crop | Assessor Acres |
|---|---|---|---|
| Kamm Avenue | 038-210-71S | Pistachios | 40.00 |
| Kamm Avenue | 038-210-74S | Pistachios | 160.00 |
| Kamm Avenue | 038-210-76S | Pistachios | 130.99 |
| Kamm Avenue | 038-210-77S | Pistachios | 10.00 |
| Kamm Avenue | 038-210-78S | Pistachios | 70.00 |
| Kamm Avenue | 038-210-79S | Pistachios | 62.21 |
| Kamm Avenue | 038-210-80S | Pistachios | 184.61 |
| Kamm Avenue | 038-270-01 | Pistachios | 20.00 |
| Kamm Avenue | 038-300-18S | Pistachios | 77.88 |
| Kamm Avenue | 038-300-27S | Pistachios | 77.88 |
| Lassen Ranch | 068-071-06S | Pistachios | 152.22 |
| Lassen Ranch | 068-071-07S | Pistachios | 162.15 |
| Lassen Ranch | 068-071-09S | Pistachios | 160.00 |
| Lassen Ranch | 068-071-36S | Pistachios | 158.50 |
| Lassen Ranch | 068-071-38S | Pistachios | 157.00 |
| Lassen Ranch | 068-071-39S | Pistachios | 130.56 |
| Lassen Ranch | 068-071-41S | Pistachios | 85.56 |
| Lassen Ranch | 068-071-42S | Pistachios | 13.55 |
| Primestar | 017-080-46s | Pistachios | 41.45 |
| Primestar | 017-080-72s | Pistachios | 249.87 |
| Windfall | 027-180-46s | Pistachios | 160.00 |
| Total | | | 10,011.79 |

-6-

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.9

Specified Solar Parcels

1.  Tract 1 – Fresno County APNs 078-060-85s, 078-080-55, 075-070-46s, 075-070-47s, 075-070-29s, 075-070-28, 075-070-30, 075-070-48s and 075-070-31

2.  Tract 2 – NOT USED

3.  Tract 3 – Fresno County APNs 027-050-68s, 027-200-02s, 027-110-37s, 027-110-40s, 027-110-41s, 027-210-20s, 027-210-29s, 027-210-32s, and 027-210-33s.

4.  Tract 4 – Fresno County APNs 027-040-13, 027-050-17s, 027-110-11s and 027-110-13s.

5.  Tract 5 – Fresno County APNs 038-071-41s, 038-071-42s, 038-061-32s, 038-061-31s, 038-061-28s, 038-061-34s, 038-061-23s, 038-061-06 and 038-061-33s

6.  Tract 6 – Fresno County APNs 038-061-55s and 027-180-46s

7.  Tract 7 – Fresno County APNs 068-071-06s, 068-071-07s and 068-071-39s

8.  Tract 8 – Fresno County APNs 078-020-54s, 078-041-01s, 078-041-02s, 078-060-39s, 078-130-06s, 078-130-23s, 078-060-80s, and 078-060-86s.

9.  Tract 9 – Fresno County APNs 075-070-28s, 075-070-29, 075-070-46s and 075-070-47s

10. Tract 10 – Fresno County APNs 050-070-37s and 050-070-35s

11. Tract 11– Not Used

12. Tract 12 – Not Used

13. Tract 13 – Fresno County APNs 038-090-37s, 038-160-10s and 038-160-13s

14. Tract 14 – Fresno County APNs 040-020-18s, 040-030-34s, 040-030-41s and 038-090-36s

15. Tract 15 – Not Used

16. Tract 16 – Fresno County APNs 040-060-20s, 040-060-22s, 040-060-25s, and 017-080-84s

17. Tract 17 – Fresno County APNs 045-040-08, 045-040-04s, 045-040-02 and 045-040-07

18. Tract 18 – Fresno County APNs 038-07-43s, 038-071-44s, 038-071-46s

19. Tract 19 - Fresno County APN 040-030-34s

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.11(a)

Concurrent Sale Transaction

Real property:  Fresno County APNs 038-141-59s, 038-130-35s, 038-130-71s, 038-130-62s, 038-200-04s, 038-200-09s, and 038-210-25s.

Other Property:  a 3.569% interest in POSO CREEK WATER COMPANY, LLC (standing in the name of Kamm South, LLC), together with 1,084 AF of stored water.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 1.11(b)

Ancillary Sales Transactions

1.  "**FMAC Receivership**"

Real property:  Fresno County APNs 040-020-18s and 038-141-21s.

Purchase Price:  $2,346,147.00

2.  "**Doctors**"

Real property:  Fresno County APN 038-210-40s.

Purchase Price:  $437,341.00

3.  "**Assemi**"

Real property:  Fresno County APNs 038-300-17s, 038-300-30s, 038-130-03 and 038-130-04s

Other Property:

(i)      a 9.178% interest in POSO CREEK WATER COMPANY, LLC (standing in the name of Farid Assemi, as Trustee of the Amended  and Restated Farid Assemi Revocable Trust dated January 24, 2007, as amended), together with 0 AF of stored water;

(ii)      a 9.178% interest in POSO CREEK WATER COMPANY, LLC (standing in the name of Farshid Assemi and Sonia Rosemary Assemi, as Co-Trustees of the Amended and Restated Farshid Assemi and Sonia Rosemary Assemi  Revocable Trust dated January 31, 2007, as amended), together with 0 AF of stored water; and

(iii)      a 9.178% interest in POSO CREEK WATER COMPANY, LLC (standing in the name of Darius Assemi, as  Trustee of the Amended and Restated Darius Assemi Revocable Trust  dated January 30, 2007, as amended), together with 0 AF of stored water;

Purchase Price:  $6,585,898.00

4.  "**Met Receivership PSA**"

Other Property:  (i)1500 AF of stored water held by POSO CREEK WATER COMPANY, LLC, for the benefit of MARICOPA ORCHARDS, LLC, and (ii) release of liens in and to the membership interests of MARICOPA ORCHARDS, LLC in and to POSO CREEK WATER COMPANY, LLC.

Purchase Price:  $1,077,188.00

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

5.  "**Manning Ave**"

Other Property:  a 2.746% interest in POSO CREEK WATER COMPANY, LLC (standing in the name of MANNING AVENUE PISTACHIOS, LLC), together with 290 AF of stored water.

Purchase Price:  $208,256.00

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 5.2(h)

Leases and Specific Title Encumbrances

1. Pistachio Memorandum as defined in Section 1.6 and attached to Schedule 1.6

2. Farming Lease dated May 9, 2023, by and between Bear Flag Farms, LLC, a California limited liability company (as Landlord) and EGC Investments, Inc, a California corporation (as Tenant") with respect to 36.61 acres of cherries on Fresno County APN 027-04-13.

3. Farming Lease dated May 9, 2023, by and between Bear Flag Farms, LLC, a California limited liability company (as Landlord) and EGC Investments, Inc, a California corporation (as Tenant") with respect to 36.41 acres of apricots on Fresno County APN 027-04-13.

4. Lease Agreement dated January 1, 2019, made by and between Sageberry Farms, LLC, a California limited liability company, and Arroyo Pasajero Mutual Water Company, a California nonprofit mutual benefit corporation, as amended by that certain First Amendment to Lease Agreement dated March 31, 2021, and as further amended by that certain Second Amendment to Lease Agreement dated September 19, 2024.

5. Residential Leases

   a. Lease Agreement dated effective March 16, 2025,  by and between Granville Farms, LLC, a California limited liability company (who entered the lease as Granville Farms) as Landlord,  and Jesus Rivera and Estefani Vazquez, as Tenant, with respect to 35540 W. Kamm Ave, Cantua Creek, CA 93608.

   b. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Rafael Vazquez and Laura Morales, as Tenant,  with respect to 35542 W. Kamm Ave, Cantua Creek, CA 93608.

   c. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Jose Angel Barajas and Maria Irma Lainez, as Tenant,  with respect to 35544 W. Kamm Ave, Cantua Creek, CA 93608.

   d. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Jose Carmen Arteaga Barajas and Eva Angelina Llamas, as Tenant,  with respect to 35546 W. Kamm Ave, Cantua Creek, CA 93608.

   e. Residential Lease dated April 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Jose Amodor and Flor Amador, as Tenant,  with respect to 35548 W. Kamm Ave, Cantua Creek, CA 93608.

   f. Residential Lease dated February 1, 2019, by and between Granville Farms, LLC, a California limited liability company, as Landlord, and Alan Elijas and Angelica Vivanco, as Tenant,  with respect to 35550 W. Kamm Ave, Cantua Creek, CA 93608

-104-

g.  Residential Lease dated February 1, 2019, by and between Gradon Farms, LLC, a California limited liability company, as Landlord, and Brigido Enriquez Cano and Amparo Aguirre, as Tenant, with respect to 16801 W. Tractor Ave, Huron, CA 93234.

h.  Residential lease dated January 1, 2018, by and between T.J.S. Corporation, as Landlord, and Isidro Pacheco, as Tenant, with respect to 16803 W. Tractor Ave, Huron, CA 93234.

i.  Lease Agreement dated effective June 7, 2022, by and between Gradon Farms, LLC, a California limited liability company (who entered the lease as Gradon Farms) as Landlord, and Hector Lainez, as Tenant, with respect to 44594 W. Manning Ave, Firebaugh, CA 93622.

20039.001/Westlands A&R PSA - Prudential (EX)

SCHEDULE 7.1

Exceptions to Seller's Representations

None.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 9

Budget

(attached)

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

2003.001/Westlands A&R PSA - Prudential (EX)

-108-

**New Clay Budget**

| Expenses | Nov 25 | Dec 25 | Jan | Feb | Mar | Apr | May | June | July | Aug | Sep | Oct | Nov | Dec | 2026 Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Frost Protection | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Plants & Replants | - | - | - | - | 122,096 | - | - | - | - | - | - | - | - | - | 122,096 | 122,096 |
| Pruning | 180,610 | 717,136 | 1,440,969 | - | - | - | - | - | - | - | - | - | 180,610 | 177,236 | 1,796,855 | 2,696,961 |
| Topping & Hedging | 99,035 | 177,236 | 196,156 | 177,236 | - | - | - | - | - | - | - | - | 99,035 | 177,236 | 609,663 | 845,934 |
| Brush Disposal | - | 74,300 | 5,285 | 327,460 | - | - | - | - | - | - | - | - | - | 74,300 | 407,045 | 481,345 |
| Winter Sanitation | - | 640,470 | 891,564 | 256,070 | - | - | - | - | - | - | - | - | - | 533,248 | 1,680,871 | 2,321,341 |
| Tying, Training, Suckering, Thinning | - | - | 16,637 | - | - | 84,859 | 30,490 | 77,359 | 63,366 | 77,774 | - | 12,835 | - | - | 363,320 | 363,320 |
| Fertility | - | 198,985 | - | 106,865 | 634,275 | 798,661 | 1,324,599 | 590,611 | 401,617 | - | 180,065 | 61,660 | - | - | 3,996,243 | 4,397,178 |
| Soil Amendments | - | - | - | 708,944 | - | - | - | - | - | - | - | - | - | 460,814 | 1,169,758 | 1,169,758 |
| Consulting/Laboratory | 113,503 | - | 113,372 | - | 28,376 | 113,372 | 13,256 | - | 113,372 | 56,751 | - | 113,372 | 113,503 | - | 666,375 | 778,878 |
| Water Treatment | 99,209 | 105,093 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 99,209 | 105,093 | 1,196,383 | 1,400,696 |
| Herbicides | - | 243,090 | 296,141 | 1,020,752 | 6,060 | 562,674 | 6,060 | 663,320 | - | - | 105,929 | 7,399 | - | - | 2,668,315 | 2,911,405 |
| Insecticides | - | - | - | - | 1,280,348 | 47,307 | 1,225,530 | 985,317 | 531,222 | 1,051,800 | 508,623 | - | - | - | 5,630,237 | 5,630,237 |
| Fungicides | - | - | - | - | - | 244,240 | 514,325 | 25,318 | 91,059 | 260,171 | - | - | - | - | 1,135,074 | 1,135,074 |
| Irrigation Labor | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 390,166 | 4,681,991 | 5,462,322 |
| Irrigation Water | 1,457,223 | - | 670,508 | 670,508 | 611,677 | 487,642 | 1,097,195 | 2,316,301 | 3,047,765 | 2,316,301 | 1,796,146 | 487,642 | 1,457,223 | - | 14,867,950 | 16,315,133 |
| Vertebrate Control | 20,807 | 392 | 22,776 | 10,173 | 196,504 | 68,639 | 24,915 | 392 | 2,916 | 392 | 392 | 151,473 | 20,807 | 392 | 499,768 | 520,967 |
| Ground Maintenance | - | - | 2,970 | 7,852 | - | 46,195 | 411,801 | 43,225 | - | 274,816 | 2,970 | 74,296 | - | - | 864,126 | 864,126 |
| Repairs & Maintenance | 140,369 | 140,369 | 3,710 | 49,657 | 49,657 | 49,657 | 49,657 | 49,657 | 49,657 | 49,657 | 49,657 | - | - | - | 400,970 | 681,707 |
| Subscription Services | - | - | 283,757 | - | - | - | - | - | - | - | - | - | - | - | 283,757 | 283,757 |
| Farm Management | 497,824 | 497,824 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 339,405 | 4,072,863 | 5,068,511 |
| Crop Insurance | - | - | - | - | - | - | - | - | - | - | 224,334 | 1,658,841 | - | - | 1,883,175 | 1,883,175 |
| Harvest | - | - | - | - | - | - | - | - | - | - | 5,645,869 | 15,100 | - | - | 5,660,969 | 5,660,969 |
| Open | 37,562 | 37,562 | - | - | 619,773 | - | - | 619,773 | - | - | - | - | - | - | 1,239,546 | 1,354,670 |
| Pollination | - | - | - | 1,056,634 | - | - | - | - | - | - | - | - | - | - | 1,056,634 | 1,056,634 |
| Land Based Charges | 1,241,136 | - | - | 108,111 | 453,996 | - | - | - | - | - | 678,578 | 8,652 | 1,341,136 | - | 2,590,472 | 3,831,608 |
| Total | 4,337,443 | 3,222,672 | 4,772,615 | 5,329,033 | 4,875,772 | 3,602,113 | 5,037,592 | 6,266,756 | 5,298,768 | 4,880,696 | 11,464,851 | 1,761,209 | 4,001,094 | 2,257,890 | 68,537,386 | 67,097,401 |

Docusign Envelope ID: 3714D528-0DEB-8A40-82DE-8382D72F55B4

SCHEDULE 10.1(c)

Permitted Exceptions

(note: green highlighted items are subject to final title insurer confirmations, and Receiver will use commercially reasonable efforts to secure such changes.)

1.      ALL Schedule B exceptions listed on that certain Preliminary Report issued by Chicago Title Company with a Title Number of 45006152-MW, dated effective December 11, 2025, except the following: 2, 18 – 27, 64 – 66, 76, 81 – 89, 104, 113, 114,  118, 119, 129, 142 – 144, 155 – 159, 176, 177, 194, 199, 202 – 208, 229 – 232, 260 – 269, 278, 295, 309 – 316, 333 – 346, 387 – 391, 421 – 427, 463, 467 – 473, 505, 510 – 517, 544, 550 – 561, 630 – 637, 659, 656 – 678, 708 – 712, 744 – 746, 765 – 769, 784 – 788, 814 – 817, 841 – 847, 870 – 874, 893 – 896, 910 – 913, 930 – 932, 943,  946, 947, 951 – 954, 974 – 983, 1026, 1027, 1038, 1039, 1049, 1054 – 1058, 1084 – 1089, 1117 – 1122,  1138, 1141 – 1145,  1174 – 1179, 1215 – 1218, 1247, 1250 – 1257, 1308 - 1316, 1370 – 1373, 1395 – 1399, 1415 – 1417, 1443 – 1435, 1443, 1448- - 1450, 1463 – 1466, 1491 – 1499, 1530, 1531, 1547, 1548, 1565, 1566, 1571, 1572, 1582 – 1584, 1597 – 1833, 1835 – 1837, 1918, 1923 – 1925, 1996, 1997 – 1999, 2020, 2021 – 2033, 2037 – 2047, 2053 – 2104, 2111-2120; provided that:

     a.      Schedule B exception 948 to be limited to Parcel 134.

     b.      Schedule B exception 2008 to be limited to Arroyo Pasajero and EGC Investments, Inc.

     d.      Schedule B exceptions 888, 925, 1022, 1050, and 1079 shall include a Memorandum of Seventh Amendment to Option and Purchase Agreement, recorded April 13, 2026, as Document Number 2026-0036628, and Second Amendment of Purchase Right Subordination and Non-Disturbance Agreement recorded May 6, 2026, as Document Number 2026-0044636.

20039.001/Westlands A&R PSA - Prudential (EX)

Docusign Envelope ID: CC2B8A64-9770-84A9-8133-2DCA238A18F2

**FIRST AMENDMENT TO
AMENDED AND RESTATED
PURCHASE AND SALE AGREEMENT
AND
JOINT ESCROW INSTRUCTIONS**

THIS FIRST AMENDMENT TO AMENDED AND RESTATED PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (the "**Amendment**") is made and entered into as of July 7, 2026, (the "**Effective Date**") by and between LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") pursuant to the *Order Expanding Receivership and for Preliminary Injunction* (as supplemented or amended, the "**Receivership Order**") entered in the case styled *The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC v. ACDF, LLC et. al.*, Case No. 1:24-cv-01102-KES-SAB (the "**Proceeding**") pending in the U.S. District Court for the Eastern District of California (the "**Court**"), and (ii) BRIGHTFIELD INVESTMENTS, LLC, a Delaware limited liability company ("**Buyer**"). For convenience, Buyer and Seller are sometimes referred to herein collectively as the "**Parties**" and individually as a "**Party**."

This Amendment is made with respect to the following facts and circumstances.

A.      The Parties entered into an Amended and Restated Purchase and Sale Agreement and Joint Escrow Instructions dated for reference purposes as of June 17, 2026 (the "**Agreement**"). Unless otherwise indicated, capitalized terms not otherwise defined herein shall have the meanings given to them in the Agreement.

B.      The Parties desire to amend the Agreement as set forth herein.

NOW, THEREFORE, the Parties hereby agree as follows:

1.      **Bid Deposit.**  Section 1.5 of the Agreement is amended and restated in its entirety to read as follows:

> 1.5    Bid Deposit.  The Parties acknowledge that, pursuant to the Original Agreement (as defined below), Buyer previously deposited with Escrow Holder an amount equal to $8,196,655.88 (the "**Bid Deposit**"), which Bid Deposit has been transferred to Seller to be held subject to the terms hereof.. If Buyer is the Successful Bidder, the Bid Deposit plus any interest thereon shall be credited and applied toward payment of the cash consideration due at the Closing. Seller shall remit the Bid Deposit to Buyer if Buyer provides written notice of termination of this Agreement if Buyer is entitled to the Bid Deposit per the terms hereof within five (5) business days following receipt of such notice.

2.      **Break-up Fee.**  Section 6.5(b) of the Agreement is amended to provide that the Break up Fee is equal to $8,196,655.88.

3.      **Reaffirmation**.  Except as expressly modified by this Amendment, the terms and conditions of the Agreement shall remain in full force and effect.

20039.001/Westlands/ First Amend A&R Westlands PSA (2)

Docusign Envelope ID: CC2B8A64-9770-84A9-8133-2DCA238A18F2

4. **Counterparts**.  This Amendment may be executed in one or more counterparts and such counterparts taken together shall constitute one and the same document.

SIGNATURE PAGE FOLLOWS

20039.001/Westlands/ First Amend A&R Westlands PSA (2)

Docusign Envelope ID: CC2B8A64-9770-84A9-8133-2DCA238A18F2

IN WITNESS WHEREOF, the Parties have executed this Amendment to be effective for all purposes as of the Effective Date.

SELLER

By: ___Lance Miller___
Lance Miller, solely in his capacity as
Court-appointed Receiver

BUYER

BRIGHTFIELD INVESTMENTS, LLC,
a Delaware limited liability company

By:_____
GEORGE R. BRAVANTE
Managing Member

3

20039.001/Westlands/ First Amend A&R Westlands PSA (2)

Docusign Envelope ID: CC2B8A64-9770-84A9-8133-2DCA238A18F2

ACCEPTANCE BY ESCROW HOLDER


CHICAGO TITLE COMPANY, a California corporation, hereby acknowledges that it has received an executed counterpart of the foregoing First Amendment to Amended and Restated Purchase and Sale Agreement and Escrow Instructions and agrees to act as Escrow Holder thereunder, and to be bound by and perform the terms thereof as such terms apply to Escrow Holder.


CHICAGO TITLE COMPANY,

By: _____

Name: _____

Title: _____


Escrow Number: _____


Dated: _____

20039.001/Westlands/ First Amend A&R Westlands PSA (2)