# EXHIBIT A

Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone: (214) 765-3600

Arlen P. Moradi (SBN 353956)
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067-5010
Telephone: (310) 778-4449

*Attorneys for the Receiver* Lance Miller

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC; ASSEMI AND SONS, INC.; AVILA RANCH EA, LLC; BEAR FLAG FARMS, LLC; C & A FARMS, LLC; CANTUA ORCHARDS, LLC; DA REAL ESTATE HOLDINGS, LLC; FAVIER RANCH, LLC; FG2 HOLDINGS LLC; GRADON FARMS, LLC; GRANVILLE FARMS, LLC; GRANTLAND HOLDINGS NO. 1, LLC; GRANTLAND HOLDINGS NO. 2, LLC; GRANTOR REAL ESTATE INVESTMENTS, LLC; GVM INVESTMENTS, LLC; GV AG, LLC; LINCOLN GRANTOR FARMS, LLC; MARICOPA ORCHARDS, LLC; PANOCHE PISTACHIOS, LLC; SAGEBERRY FARMS, LLC; DEREK BELL; and RACHEL MARIE WHITE,<br><br>Defendants. | No. 1:24-cv-01102-KES-SAB<br><br>**DECLARATION OF LANCE MILLER IN SUPPORT OF WESTLANDS SALE**<br><br>Hearing Date: September 8, 2026<br>Hearing Time: 1:30 p.m. PT<br>Location: Courtroom 6, 7th Floor<br>2500 Tulare Street<br>Fresno, CA 93721<br><br>Related to Dkt. No. 493<br><br>Judge: Hon. Kirk E. Sherriff<br><br>Action Filed: September 16, 2024 |

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

I, Lance E. Miller, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am over the age of eighteen, am under no disability, and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration in support of the *Notice of (I) Cancellation of Auction and (II) Successful Bidder (Westlands)* [Dkt. No. 493] (the "**Sale Notice**"). Capitalized terms used but not defined in my Declaration have the meanings ascribed in the *Amended Order (I) Approving Bid Procedures for the Sale of Real Property; (II) Approving Bid Protections for Stalking Horse Bidder; and (III) Scheduling Sale Hearing (Westlands)* [Dkt. No. 485] (the "**Amended Bidding Procedures Order**" approving the "**Amended Bidding Procedures**").

3. I am the Founder and a Managing Director of Pivot Management Group, LLC, a financial advisory and turnaround management firm with an office located at 1230 Rosecrans Avenue, Suite 530, Manhattan Beach, California 90266. I have more than 19 years of experience in complex receiverships, workouts, restructurings, corporate and shareholder disputes, and distressed M&A processes. As an attorney and later as a partner in distressed advisory firms (including Pivot Group), I have provided services over a multitude of industries and markets to companies, creditors, equity holders, asset purchasers, receiverships, and creditors' trusts.

4. On September 16, 2024, The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC (together, the "**Plaintiffs**") filed a *Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents and Profits Clause; and Injunctive Relief* [Dkt. No. 1] initiating the above-captioned case, and on September 18, 2024, an *Ex Parte Application Regarding Motion for Order Appointing Receiver and for Preliminary Injunction* [Dkt. No. 12].

5. On September 25, 2024, after notice and hearing, the Court entered the *Agreed Order Appointing Receiver with Limited Authority* [Dkt. No. 51, as amended by Dkt. No. 107] and on November 7, 2024, entered the *Order Expanding Receivership and for Preliminary Injunction* [Dkt. No. 120, as further amended and supplemented] (the "**Receivership Order**"), appointing me as receiver over the Receivership Property (as defined in the Receivership Order). The scope of my duties under the Receivership Order include: "to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale process of the Receivership Property, whether in whole or part, with any sale of Receivership Property outside of the ordinary court of business subject to the Court's approval." Receivership Order ¶ 23.

6. In consultation with Capstone Capital Markets LLC ("**Capstone**"), my other professional advisors, and Plaintiffs, I evaluated the Receivership Property and various potential marketing strategies, including marketing all Receivership Property together, attempting to market Receivership Property with non-receivership property, or splitting the property into separate groups. Ultimately, in order to maximize value, I decided in the exercise of my business judgment to place the Receivership Property into two categories in relation to the marketing and sale process: (i) parcels of real estate that should be sold together in order to maximize value, which includes the "Westlands" property that is the subject of the Sale Notice (the "**Property**"), and (ii) parcels of real estate to be sold on a stand-alone basis and were marketed by a real estate broker. In the exercise of my business judgment, I thereafter determined that conducting an organized sale process, via a competitive public auction, would enable me to obtain the highest and best offer for the Property and would be in the best interest of stakeholders.

7. On December 1, 2025, the Court entered an order [Dkt. No. 170] (the "**Original Bidding Procedures Order**") approving the bidding and sale procedures for the Property. On July 7, 2026, the Court entered the Amended Bidding Procedures Order approving the Amended Bidding Procedures.

8. As reflected in the *Declaration of Skye Root* filed concurrently herewith, Capstone has undertaken an extensive marketing process for the Property that began in April 2025.

9. As a result of Capstone's marketing efforts, and in consultation with Plaintiffs, on January 15, 2026, I signed a *Purchase and Sale Agreement and Joint Escrow Instructions* with Brightfield Investments, LLC ("**Buyer**) for the sale of the Property, along with associated interests, for a purchase price of **$404,832,794.00** plus/minus certain adjustments as set forth in the Purchase and Sale Agreement.

10. After additional negotiation, on June 17, 2026, I signed an *Amended and Restated Purchase and Sale Agreement and Joint Escrow Instructions* (the "**Purchase and Sale Agreement**") with Buyer for the sale of the Property, along with associated interests, as more particularly described in the Purchase and Sale Agreement attached to the Sale Notice, for a purchase price of **$409,832,794.00** plus/minus certain adjustments as set forth in the Purchase and Sale Agreement. Capstone continued to market the Property during the period between execution of the two Purchase and Sale Agreements.

11. The Bidding Procedures were served to, among others: (i) Plaintiffs and their counsel; (ii) Defendants and their respective counsel; (iii) Buyer and all parties known to have a bona fide interest in purchasing the Property; (iv) various governmental entities, including taxing and water management authorities; (v) all parties known to have asserted an Interest in the Property; and (vi) the various entities that have participated in this case, including the lenders and receivers in associated receivership cases and their respective counsel. *See Proof of Service* [Dkt. No. 490].

12. I also published notice of the proposed sale of the Property in (a) The Bakersfield Californian, (b) The Business Journal, and (c) The Hanford Sentinel newspapers on September 19, 2025, September 26, 2025, October 3, 2025, and October 10, 2025. *See Proof of Service by Publication* [Dkt. No. 372].

13. The deadline to submit competing, Qualified Bids passed on July 31, 2026. The Prudential Insurance Company of America submitted a back-up credit bid in the amount of the required minimum overbid, but no additional bids were received. Since the Prudential bid was expressly made as a back-up bid and no competing bids were received, no Auction was be held. Buyer or its designee ("**Buyer**") was named the Successful Bidder for the Property and The Prudential Insurance Company of America or its designee was named the Back-Up Bidder for the

Property.

14. I filed the Sale Notice with the Court on August 6, 2026, informing parties of the identities of the Successful Bidder and Backup Bidder and attaching copies of the Successful Bidder's Purchase and Sale Agreement, the Backup Bidder's Purchase and Sale Agreement, and the proposed from of order approving the sale. Pursuant to the Bidding Procedures, objections to the proposed sale were due on or before August 12, 2026, which was extended to August 19, 2026, for the Farming Defendants.

15. The Farming Defendants filed the sole objection to the Sale Notice, seeking primarily to push closing of the sale from October 2026 to January 2027. After thoughtful considerations of the Farming Defendants' request for a January 2027 sale closing, including numerous conversations between my counsel and counsel for the Farming Defendants, Buyer, and Plaintiffs, I have determined, in the exercise of my sound business judgment, that a 2027 sale closing adds unacceptable risk to the sale, unnecessarily delays payment to Plaintiffs and final administration of the receivership estate, and is not in the best interests of the receivership estate.

16. Based upon these facts, and in the exercise of my business judgment, I believe that the Buyer's Purchase and Sale Agreement represents the highest and best offer for the Property and the sale of the Property to Buyer pursuant to such agreement is in the best interests of the receivership estate and should be approved. I do not believe that additional marketing of the Property would give rise to a higher or better offer to purchase the Property. If the sale to Buyer does not close, the only alternatives I am currently aware of are a back-up credit bid or a non-judicial foreclosure by Plaintiffs, neither of which will yield the purchase price set forth in the PSA. Accordingly, I believe it is in the best interests of the estate to minimize closing risk and promptly close under the PSA.

17. Based on my counsel's review of public records, it appears that, as of closing, sale proceeds will be sufficient to satisfy all closing costs and liens, other than those of Plaintiffs. Plaintiffs consent to the sale.

18. To the best of my knowledge and belief, the marketing and proposed sale of the Property was done in compliance with the Bidding Procedures Order.

19. I respectfully request that the Court enter an order approving the sale to Buyer free and clear of interests pursuant to the terms set forth in the Purchase and Sale Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 206
In Manhattan Beach, California

DocuSigned by:
Lance Miller
F181C7A978754AD...

By: ______________________
Lance E. Miller