WANGER JONES HELSLEY
Riley C. Walter #91839
Ian J. Quinn #342754
265 E. River Park Circle, Suite 310
Fresno, California 93720
Telephone: (559) 490-0949
E-Mail: rwalter@wjhattorneys.com
iquinn@wjhattorneys.com

Attorneys for Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, and Sageberry Farms, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ACDF, LLC, et al.,<br><br>Defendants. | Case No. 1:24-cv-01102-KES-SAB<br><br>**ANSWER OF DEFENDANTS ACDF, LLC, ASSEMI AND SONS, INC., BEAR FLAG FARMS, LLC, C & A FARMS, LLC, CANTUA ORCHARDS, LLC, FAVIER RANCH, LLC, GRADON FARMS, LLC, GRANVILLE FARMS, LLC, LINCOLN GRANTOR FARMS, LLC, MARICOPA ORCHARDS, LLC, PANOCHE PISTACHIOS, LLC, AND SAGEBERRY FARMS, LLC, TO PLAINTIFFS' COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Defendants ACDF, LLC; Assemi and Sons, Inc.; Bear Flag Farms, LLC; C & A Farms, LLC; Cantua Orchards, LLC; Favier Ranch, LLC; Gradon Farms, LLC; Granville Farms, LLC; Lincoln Grantor Farms, LLC; Maricopa Orchards, LLC; Panoche Pistachios, LLC; and Sageberry Farms, LLC (the "Defendants") hereby answer the *Complaint for (1) Breach of Contract, Appointment of Receiver, Accounting and Specific Performance, and Rents-And-Profits Clause;*

*and (2) Injunctive Relief* (the "Complaint") filed by Plaintiffs The Prudential Insurance Company of America; and PGIM Real Estate Finance, LLC (the "Plaintiffs") [Dkt. No 1] in the above-captioned case, as follows:

**RESPONSE TO COMPLAINT**

Defendants deny each and every allegation in the Complaint unless specifically admitted. Below, Defendants address each numbered paragraph.

**INTRODUCTION**

1. Borrower breached its various Loan Documents (defined below) with Plaintiff. As a result, Plaintiff seeks the appointment of a receiver, an accounting, and specific performance of the right to possession and rents and profits clauses in the Instruments (defined below), in addition to injunctive relief in connection with the enforcement of over $700 million in certain Loans (defined below) provided by Lender to Borrower. One of the Loans has been in default since February 2024, and the other Loans have been in default since June 2024. These defaults stem from, among other things, Borrower's failure to pay one of the Notes (defined below) in full upon its maturity, failing to pay the semi-annual payments due on July 1, 2024 for all but one Note, and defaults on loans with third-parties, causing approximately $150,000,000 to be accelerated under those third-party loans.

***Response:*** As to the first sentence, the statement is vague and compound, and, Defendants lack sufficient information to admit or deny the allegations of this sentence and therefore deny them. As to the second sentence, this calls for a legal conclusion, and, therefore, Defendants assert no admission is required; but, to the extent an admission or denial is required, Defendants deny same. As to the third sentence, the statement is vague and compound, and, Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them. As to the fourth sentence, the statement is vague and compound, and, calls for a legal conclusion; and, Defendants lack sufficient information to admit or deny the allegations of this sentence and therefore deny them.

///

///

2. Unless a receiver is appointed to, among other things, protect and manage the Property (defined below), there is a real danger that the Property will suffer waste and/or other harm, resulting in irreparable injury to Plaintiff's rights thereto.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this sentence and therefore deny them.

3. Specifically, the Property consists of, among other things, over 50,000 acres of farmland and a significant number of pistachio and almond trees. The trees represent a significant portion of the value of the Property and, as a result, a significant portion of Lender's collateral. This farmland requires regular care, without which the trees thereon may be damaged or may die. Borrower has informed Lender that, due to operational cash flow issues, it may cease all such care immediately and terminate, in whole or in part, its numerous employees onsite.

***Response:*** Defendants admit the allegations in the first and second sentences. Defendants admit the allegations in the third sentence. Defendants lack sufficient information to admit or deny the last sentence and therefore, deny same.

4. Plaintiff is entitled to the relief requested. The Loans are in default and, due to the acceleration of the Loans, the total outstanding principal and interest due on the Loans (exclusive of fees, costs, and other amounts due and owing thereunder) is no less than $705,144,545.49, which is due, owing, and unpaid as of July 1, 2024.

***Response:*** The allegations are vague and compound, and, call for a legal conclusion; and, insofar as they call for a legal conclusion Defendants assert same not be denied or admitted; but, insofar as an admission ore denial is required, Defendants lack sufficient information to admit or deny the allegations of this sentence and therefore deny them.

## PARTIES

5. Prudential is, and at all times mentioned herein was, a New Jersey corporation organized and existing under and by virtue of the laws of the State of New Jersey and authorized to do business in the state of California, with its principal place of business located in Newark, New Jersey.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

6. PGIM REF is, and at all times mentioned herein was, a Delaware limited liability company organized and existing under and by virtue of the laws of the State of Delaware and authorized to do business in the state of California. PGIM REF is wholly owned by PGIM Real Estate Finance Holding Company, a New Jersey corporation organized and existing under and by virtue of the laws of the State of New Jersey, with its principal place of business located in Newark, New Jersey.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

7. Each Lender has had, and continues to have, a valid lien on the Property at all times mentioned herein.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments and the validity of Lenders' liens, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

8. Plaintiff is informed and believes that Defendants ACDF is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that ACDF is owned by: (i) the FARID ASSEMI REVOCABLE TRUST DATED JANUARY 24, 2007, now known as the FIFTH AMENDED AND RESTATED FARID ASSEMI REVOCABLE TRUST DATED APRIL 28, 2021 (the "**Farid Assemi Revocable Trust**"), the Trustee of which is FARID ASSEMI, a citizen of California; (ii) the DARIUS ASSEMI REVOCABLE TRUST DATED JANUARY 30, 2007, now known as the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST DATED MARCH 2, 2010, AS AMENDED (the "**Darius Assemi Revocable Trust**"), the Trustee of which is DARIUS ASSEMI, a citizen of California; and (iii) the FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI REVOCABLE TRUST DATED JANUARY 31, 2007, now known as the AMENDED

AND RESTATED FARSHID ASSEMI AND SONIA ROSEMARY ASSEMI REVOCABLE TRUST DATED MARCH 2, 2010, AS AMENDED (the "**Farshid and Sonia Assemi Revocable Trust**"), the Co-Trustees of which are FARSHID ASSEMI and SONIA ROSEMARY ASSEMI, citizens of California. As the Trustees of each trust that owns ACDF are California citizens, ACDF is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

9. Plaintiff is informed and believes that Defendants Assemi is, and at all times mentioned herein was, a California corporation licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Assemi is wholly owned by West Fern Investments, Inc., a California corporation with its principal place of business in Fresno, California.

***Response:*** Defendants admit the allegations.

10. Plaintiff is informed and believes that Defendants Avila is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Avila is owned by: (i) the Farshid and Sonia Assemi Revocable Trust; and (ii) the FARID ASSEMI 2010 GRANTOR TRUST DATED DECEMBER 30, 2010 (the "**Farid Assemi Grantor Trust**"), the Trustee of which is NEEMA ASSEMI, a citizen of California. As the Trustees of each trust that owns Avila are California citizens, Avila is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern Avila Ranch EA, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

11. Plaintiff is informed and believes that Defendants Bear Flag is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Bear Flag is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farshid and Sonia Assemi Revocable Trust; and (iii) the Farid Assemi Grantor Trust. As the

Trustees of each trust that owns Bear Flag are California citizens, Bear Flag is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit that Bear Flag is, and at all relevant times was, a California limited liability company licensed to do business in California with its principal place of business in California. Defendants deny the allegations regarding Bear Flag's ownership and aver that Bear Flag is owned 16.67% by the Darius Assemi Revocable Trust, 33.33% by the Farshid and Sonia Assemi Grantor Trust, and 50% by the Farid Assemi 2010 Grantor Trust. Defendants admit that the trustees of each trust that owns Bear Flag are citizens of California and that Bear Flag is a citizen of California for purposes of diversity jurisdiction. Except as expressly admitted, Defendants deny the allegations of this paragraph.

12. Plaintiff is informed and believes that Defendants C & A is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that C & A is owned by: (i) the Darius Assemi Revocable Trust; (ii) the FARID ASSEMI 1997 RANCH TRUST DATED JUNE 30, 1997 (the "**Farid Assemi 1997 Ranch Trust**"), the Co-Trustees of which are FARSHID ASSEMI and NEEMA ELIOT ASSEMI, citizens of California; (iii) the Farid Assemi Revocable Trust; (iv) the FARSHID ASSEMI 1997 RANCH TRUST DATED JUNE 30, 1997 (the "**Farshid Assemi 1997 Ranch Trust**"), the Trustee of which is FARID ASSEMI, a California citizen; and (v) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of each trust that owns C & A are California citizens, C & A is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

13. Plaintiff is informed and believes that Defendants Cantua is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Cantua is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farid Assemi Revocable Trust; (iii) the Farshid Assemi 1997 Ranch Trust; (iv) the Farid Assemi 1997 Ranch Trust; and (v) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of

each trust that owns Cantua are California citizens, Cantua is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

14. Plaintiff is informed and believes that Defendants DA Real Estate is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that DA Real Estate is owned by the Darius Assemi Revocable Trust. As the Trustee of the trust that owns DA Real Estate is a California citizen, DA Real Estate is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern DA Real Estate Holdings, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

15. Plaintiff is informed and believes that Defendants Favier is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Favier is owned by: (i) the Darius Assemi Revocable Trust; (ii) the FARSHID AND SONIA ASSEMI 2010 GRANTOR TRUST DATED DECEMBER 30, 2010 (the "**Farshid and Sonia Assemi Grantor Trust**"), the Trustee of which is MELISSA LAYNE, a California citizen; and (iii) the Farid Assemi 2010 Grantor Trust. As the Trustees of each trust that owns Favier are California citizens, Favier is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

16. Plaintiff is informed and believes that Defendants FG2 is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that FG2 is owned by: (i) the Farshid and Sonia Assemi Grantor Trust; and (ii) the Farid Assemi 2010 Grantor Trust. As the Trustees of each trust that owns FG2 are California citizens, FG2 is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern FG2 Holdings LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

17. Plaintiff is informed and believes that Defendants Gradon is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Gradon is owned by: (i) the DARIUS ASSEMI REVOCABLE TRUST DATED JANUARY 30, 2007, now known as the AMENDED AND RESTATED DARIUS ASSEMI REVOCABLE TRUST DATED MARCH 2, 2010, AS AMENDED (the "**Darius Assemi Revocable Trust**"), the Trustee of which is DARIUS ASSEMI; (ii) the Farshid and Sonia Assemi Grantor Trust; and (iii) the Farid Assemi 2010 Grantor Trust. As the Trustees of each trust that owns Gradon are California citizens, Gradon is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

18. Plaintiff is informed and believes that Defendants Granville is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Granville is owned by: (i) the Farid Assemi Revocable Trust; (ii) the Farshid Assemi 1997 Ranch Trust; (iii) the Farid Assemi 1997 Ranch Trust; and (iv) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of each trust that owns Granville are California citizens, Granville is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

19. Plaintiff is informed and believes that Defendants Grantland 1 is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Grantland 1 is owned by the Farid Assemi 1997 Ranch Trust. As the Trustee of the trust that owns Grantland 1 is a California citizen, Grantland 1 is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern Grantland Holdings No. 1, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

20. Plaintiff is informed and believes that Defendants Grantland 2 is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Grantland 2 is owned by the Farshid Assemi 1997 Ranch Trust. As the Trustee of the trust that owns Grantland 2 is a California citizen, Grantland 2 is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern Grantland Holdings No. 2, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

21. Plaintiff is informed and believes that Defendants Grantor Investments is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Grantor Investments is owned by: (i) the Farshid and Sonia Assemi Grantor Trust; and (ii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Grantor Investments are California citizens, Grantor Investments is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern Grantor Real Estate Investments, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

22. Plaintiff is informed and believes that Defendants GVM is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that GVM is owned by: (i) the Darius Assemi Revocable Trust; and (ii) Grass Valley Bluffs, Inc., a California corporation with its principal place of business in Fresno,

California ("**Grass Valley**"). As the corporation and the Trustee of the trust that owns GVM is a California citizen, GVM is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern GVM Investments, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Plaintiff is informed and believes that Defendants GV AG is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that GV AG is owned by: (i) the Darius Assemi Revocable Trust; and (ii) Grass Valley. As the corporation and the Trustee of the trust that owns GV AG is a California citizen, GV AG is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern GV AG, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

23. Plaintiff is informed and believes that Defendant GV AG is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that GV AG is owned by: (i) the Darius Assemi Revocable Trust; and (ii) Grass Valley. As the corporation and the Trustee of the trust that owns GV AG is a California citizen, GV AG is a citizen of California for purposes of diversity jurisdiction.

***Response:*** The allegations of this paragraph concern GV AG, LLC, which is not an answering Defendant. Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

24. Plaintiff is informed and believes that Defendants Lincoln is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Lincoln is owned by: (i) the Farshid and Sonia Assemi Grantor Trust;

and (ii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Lincoln are California citizens, Lincoln is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

25. Plaintiff is informed and believes that Defendants Maricopa is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Maricopa is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farid Assemi Revocable Trust; (iii) the Farshid Assemi 1997 Ranch Trust; (iv) the Farid Assemi 1997 Ranch Trust; and (v) the Farshid and Sonia Assemi Revocable Trust. As the Trustees of each trust that owns Maricopa are California citizens, Maricopa is a citizen of California for purposes of diversity jurisdiction.

**Response:** Defendants admit the allegations.

26. Plaintiff is informed and believes that Defendants Panoche is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Panoche is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farshid and Sonia Assemi Grantor Trust; and (iii) the Farid Assemi Grantor Trust. As the Trustees of each trust that owns Panoche are California citizens, Panoche is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

27. Plaintiff is informed and believes that Defendants Sageberry is, and at all times mentioned herein was, a California limited liability company licensed to do business in the State of California and with its principal place of business in the State of California. Plaintiff is informed and believes that Sageberry is owned by: (i) the Darius Assemi Revocable Trust; (ii) the Farid Assemi Revocable Trust; (iii) the Farshid Assemi 1997 Ranch Trust; (iv) the Farshid and Sonia Assemi Grantor Trust; (v) the Farid Assemi 1997 Ranch Trust; (vi) the Farshid and Sonia Assemi Revocable Trust; and (vii) the Farid Assemi Grantor Trust. As the Trustees of

each trust that owns Sageberry are California citizens, Sageberry is a citizen of California for purposes of diversity jurisdiction.

***Response:*** Defendants admit the allegations.

28. Plaintiff is informed and believes that Defendants Derek Bell is, and at all times mentioned herein was, a resident and citizen of the State of California, residing in Fresno, California.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

29. Plaintiff is informed and believes that Defendants Rachel Marie White is, and at all times mentioned herein was, a resident and citizen of the State of California, residing in Fresno, California.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

## JURISDICTION AND VENUE

30. The United States District Court for the Eastern District of California (the "**Court**") has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action is civil in nature, diversity of citizenship exists, and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of 28 U.S.C. § 1332 and the existence of diversity jurisdiction, a response is not required; if a response is required, Defendants admit the allegations.

31. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial portion of the property that is subject of the action is situated in this district.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of 28 U.S.C. § 1391 and the propriety of venue, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

///

**FACUAL BACKGROUND**

32. This action arises out of Borrower's numerous defaults under Loans that Lender has made to Borrower and Borrower's indication, supported by financial models, that it will be unable to maintain the Property as a result of cash flow issues.

***Response:*** Defendants assert the allegations are vague and ambiguous and call for a legal conclusion about the effect of the alleged defaults under the Loans; and, therefore, response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

**I. The Loans, the Loan Documents, and the Property Collateral Provided by Borrower to Lender.**

33. Lender has made multiple loans to Borrower, as summarized below. Each Loan is in default by its terms, and Lender has accelerated each Loan.

***Response:*** Defendants admit that Lender made the Loans summarized in the Complaint. To the extent that the remaining allegations call for a legal conclusion about defaults, the effect of the alleged defaults and acceleration, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

**A. The Westlands/Fresno Loan.**

34. Prudential previously made those certain loans to Borrower Maricopa, ACDF, Assemi, C & A, Cantua, Gradon, Granville, Lincoln, Panoche, Sageberry, and GV AG (collectively, "**Westlands/Fresno Borrower**") in the aggregate original principal amount of Five-Hundred Fifty Million Dollars ($550,000,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Westlands/Fresno Loan**") pursuant to that certain Loan Agreement dated as of March 11, 2022 (the "**Westlands/Fresno Closing Date**") by and among Westlands/Fresno Borrower and Prudential (as the same has been or may be modified from time to time, including by that certain Loan Modification Agreement, dated April 25, 2022, that certain Second Loan Modification Agreement, dated March 28, 2023, that certain Third Loan Modification Agreement, dated March 29, 2023, and that certain Fourth Loan Modification Agreement, dated May 4, 2023, the "**Westlands/Fresno Loan Agreement**"; and

together with all other documents evidencing, relating to, and/or securing the Westlands/Fresno Loan, including without limitation, any and all documents amending and modifying the terms of the Westlands/Fresno Loan, collectively, the "**Westlands/Fresno Loan Documents**"). A true and correct copy of the Westlands/Fresno Loan Agreement is attached hereto as Exhibit 1.

***Response:*** Defendants aver that the Westlands/Fresno Loan Agreement and Westlands/Fresno Loan are written instruments that speak for themselves. To the extent that the allegations call for a legal conclusion about the effect of the Westlands/Fresno Loan Agreement and Westlands/Fresno Loan documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

35. The Westlands/Fresno Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of the Westlands/Fresno Closing Date, made by Westlands/Fresno Borrower and payable to Prudential, in the principal amount of $500,000,000.00 (Loan No. 717612168) ("**Westlands/Fresno Note 1**"); and (ii) that certain Promissory Note, dated as of May 4, 2023, made by Westlands/Fresno Borrower and payable to Prudential, in the principal amount of $50,000,000.00 (Loan No. 717612340) ("**Westlands/Fresno Note 3**", and collectively with Westlands/Fresno Note 1, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**Westlands/Fresno Notes**"). As of July 1, 2024, the outstanding principal balance of the Westlands/Fresno Loan is $550,000,000.00, the outstanding interest accrued on Westlands/Fresno Note 1 is $9,883,333.33 and the outstanding interest accrued on Westlands/Fresno Note 3 is $0.00. True and correct copies of the Westlands/Fresno Notes are attached hereto as Exhibit 2.

***Response:*** Defendants aver that the Westland's/Fresno Notes are written instruments that speak for themselves. Defendants lack sufficient information to admit or deny the allegations regarding the outstanding balances and therefore deny them. To the extent that the allegations call for a legal conclusion about the effect of the Westlands/Fresno Loan Agreement and Westlands/Fresno Loan documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

36. The Westlands/Fresno Loan and the Westlands/Fresno Notes are secured by, among other things: (i) that certain Fresno Deed of Trust recorded March 21, 2022, as Fresno County Recorder's No. 2022-0036711, as amended by that certain Modification to Deed of Trust (Fresno County) recorded March 30, 2023, as Fresno County Recorder's No. 2023-0030804, by that certain Second Modification to Deed of Trust (Fresno County) recorded May 9, 2023 as Fresno County Recorder's No. 2023-0043221, and by that certain Third Modification to Deed of Trust (Fresno County) executed by ACDF, C & A, Cantua, Gradon, Granville, Maricopa, Panoche, and Sageberry to Prudential, recorded June 29, 2023 as Fresno County Recorder's No. 2023-0060288; (ii) that certain Kern Deed of Trust, recorded March 21, 2022, as Kern County Recorder's No. 222043952, as amended by that certain Modification to Deed of Trust (Kern County) recorded March 30, 2023 as Kern County Recorder's No. 223036184, by that certain Second Modification to Deed of Trust (Kern County) recorded May 9, 2023 as Kern County Recorder's No. 223054287, and by that certain Third Modification to Deed of Trust (Kern County) executed by ACDF, C & A, Maricopa, and GV AG to Prudential, recorded June 29, 2023 as Kern County Recorder's No. 223075826; (iii) that certain Kings Deed of Trust, recorded March 21, 2022, as Kings County Recorder's No. 2205342, as amended by that certain Modification to Deed of Trust (Kings County) recorded on March 30, 2023 as Kings County Recorder's No. 2304689, by that certain Second Modification to Deed of Trust (Kings County) recorded May 9, 2023, as Kings County Recorder's No. 2306898, and by that certain Third Modification to Deed of Trust (Kings County) executed by Lincoln and Cantua to Prudential recorded June 29, 2023, as Kings County Recorder's No. 2309463; (iv) that certain Madera Deed of Trust, recorded March 21, 2022, as Madera County Recorder's No. 2022008052, as amended by that certain Modification to Deed of Trust (Madera County) recorded on March 30, 2023 as Madera County Recorder's No. 2023006134, by that certain Second Modification to Deed of Trust (Madera County) recorded May 9, 2023 as Madera County Recorder's No. 2023008790, and by that certain Third Modification to Deed of Trust (Madera County) executed by ACDF and Assemi to Prudential recorded June 29, 2023 as Madera County Recorder's No. 2023012199; and (v) that certain 2023 Deed of Trust, recorded March 30, 2023 as Fresno County

Recorder's No. 2023-0030812, as amended by that certain Modification to Deed of Trust (2023 Deed of Trust) recorded May 9, 2023 as Fresno County Recorder's No. 2023-0043220 and by that certain Second Modification to Deed of Trust (2023 Deed of Trust) executed by Granville, Panoche, Gradon, and Sageberry to Prudential, recorded June 29, 2023 as Fresno County Recorder's No. 2023-0060287 (collectively, the "**Westlands/Fresno Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Westlands/Fresno Instrument (collectively, the "**Westlands/Fresno Property**"), certain assignment(s) of leases and rents, and certain other security instruments. True and correct copies of the Westlands/Fresno Instrument are attached hereto as Exhibit 3.

***Response:*** Defendants aver that the Westlands/Fresno Instruments are written instruments that speak for themselves. To the extent that the allegations call for a legal conclusion about the effect of the Westlands/Fresno Instruments, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Westlands/Fresno Instruments are written instruments that speak for themselves.

**B. The Kern/Tulare Loan.**

37. Prudential previously made those certain three loans to Borrower ACDF, Bear Flag, and Maricopa (collectively, "**Kern/Tulare Borrower**") in the aggregate original principal amount of Ninety-One Million One-Hundred Twenty-Four Thousand Dollars ($91,124,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Kern/Tulare Loan**") pursuant to that certain Loan Agreement dated as of January 23, 2020 (the " **Kern/Tulare Closing Date**") by and among Kern/Tulare Borrower and Prudential (as the same has been or may be modified from time to time, including by that certain Loan Modification Agreement dated February 14, 2020, that certain Second Loan Modification Agreement dated December 24, 2020, that certain Third Loan Modification Agreement dated September 9, 2021, that certain Fourth Loan Modification Agreement dated March 1, 2023, and that certain Fifth Loan Modification Agreement dated October 25, 2023, the "**Kern/Tulare Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the Kern/Tulare

Loan, including without limitation, any and all documents amending and modifying the terms of the Kern/Tulare Loan, collectively, the "**Kern/Tulare Loan Documents**"). A true and correct copy of the Kern/Tulare Loan Agreement is attached hereto as Exhibit 4.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Kern/Tulare Loan Agreement and Kern/Tulare Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Kern/Tulare Loan Documents are written instruments that speak for themselves.

38. The Kern/Tulare Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of the Kern/Tulare Closing Date in the original principal amount of $70,000,000.00 (Loan No. 717611848) ("**Kern/Tulare Note 1**"); (ii) that certain Promissory Note, dated February 14, 2020 in the original principal amount of $14,700,000.00 (Loan No. 717611852) ("**Kern/Tulare Note 2**"); and (iii) that certain Promissory Note, dated March 1, 2023 in the original principal amount of $6,424,000.00 (Loan No. 717612317) ("**Kern/Tulare Note 5**", and collectively with Kern/Tulare Note 1 and Kern/Tulare Note 2, as the same may be amended, supplemented, restated, replaced, or otherwise modified from time to time, the "**Kern/Tulare Notes**"). As of July 1, 2024, the outstanding principal balance of the Kern/Tulare Loan is $72,910,160.00, the outstanding interest accrued on Kern/Tulare Note 1 is$1,143,800.00, the outstanding interest accrued on Kern/Tulare Note 2 is $124,319.28, and the outstanding interest accrued on Kern/Tulare Note 5 is $201,970.56. True and correct copies of the Kern/Tulare Notes are attached hereto as Exhibit 5.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Kern/Tulare Notes, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Kern/Tulare Notes are written instruments that speak for themselves. Defendants lack sufficient information to admit or deny the allegations regarding the outstanding balances and therefore deny them.

39. The Kern/Tulare Loan and the Kern/Tulare Notes are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Kern/Tulare Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated as of the Kern/Tulare Closing Date and recorded as of the Kern/Tulare Closing Date, as Kern County Recorder's No. 220009640 and as Tulare County Recorder's No. 2020-0004578, as amended by that certain Modification of Deed of Trust dated February 14, 2020, and recorded on February 20, 2020, as Kern County Recorder's No. 220022789 and as Tulare County Recorder's No. 2020-0010542, by that certain Second Modification of Deed of Trust dated December 24, 2020, and recorded on December 31, 2020, as Kern County Recorder's No. 220204171 and as Tulare County Recorder's No. 2020-0085322, by that certain Third Modification of Deed of Trust dated September 9, 2021, and recorded on September 15, 2021, as Kern County Recorder's No. 221174792 and as Tulare County Recorder's No. 2021-0067792, and by that certain Fourth Modification of Deed of Trust dated March 1, 2023, and recorded on March 8, 2023, as Kern County Recorder's No. 223026702 and as Tulare County Recorder's No. 2023-0010907 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Kern/Tulare Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Kern/Tulare Instrument (collectively, the "**Kern/Tulare Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Kern/Tulare Instrument is attached hereto as Exhibit 6.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Kern/Tulare Instrument, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Kern/Tulare Instrument comprises written instruments that speak for themselves.

///

///

**C. The Devine Loan**

40. Prudential previously made that certain loan to Borrower C & A ("**Devine Borrower**") in the aggregate original principal amount of Six Million One-Hundred Seventy-Six Thousand Dollars ($6,176,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Devine Loan**") pursuant to that certain Loan Agreement dated as of May 19, 2021 (the "**Devine Closing Date**") by and among Devine Borrower and Prudential (as the same has been or may be modified from time to time, the "**Devine Loan Agreement**"; and the Devine Loan Agreement together with all other documents evidencing, relating to, and/or securing the Devine Loan, including without limitation, any and all documents amending and modifying the terms of the Devine Loan, collectively, the "**Devine Loan Documents**"). A true and correct copy of the Devine Loan Agreement is attached hereto as Exhibit 7.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Devine Loan Agreement and Devine Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Devine Loan Agreement and Devine Loan Documents are written instruments that speak for themselves.

41. The Devine Loan is evidenced by, among other things, that certain Promissory Note, dated as of the Devine Closing Date in the original principal amount of $6,176,000.00 (Loan No. 717612116) (the "**Devine Note**"). As of July 1, 2024, the outstanding principal balance of the Devine Loan is $5,558,400.00 and the outstanding interest accrued on Devine Note is $101,440.80. A true and correct copy of the Devine Note is attached hereto as Exhibit 8.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Devine Note, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Devine Note is a written instrument that speaks for itself. Defendants lack sufficient information to admit or deny the allegations regarding the outstanding balances and therefore deny them.

42. The Devine Loan and the Devine Note are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Devine Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated May 19, 2021 and recorded May 27, 2021, as Fresno County Recorder's No. 2021-0087704 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "Devine Instrument"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Devine Instrument (collectively, the "Devine Property"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Devine Instrument is attached hereto as Exhibit 9.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Devine Instrument, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Devine Instrument is written instrument that speaks for itself.

**D. (The Saviez Loan)**

43. Prudential previously made that certain loan to Borrower C & A and Maricopa (collectively, "**Saviez Borrower**"), in the aggregate original principal amount of Three Million Six-Hundred Forty-Two Thousand Dollars ($3,642,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**Saviez Loan**") pursuant to that certain Loan Agreement dated as of November 8, 2021 (the "**Saviez Closing Date**") by and among Borrower and Prudential (as the same has been or may be modified from time to time, the "**Saviez Loan Agreement**", and together with the Westlands/Fresno Loan Agreement, the Kern/Tulare Loan Agreement, and the Devine Loan Agreement, collectively the "**Westlands Et Al. Loan Agreements**"; and together with all other documents evidencing, relating to, and/or securing the Saviez Loan, including without limitation, any and all documents amending and modifying the terms of the Saviez Loan, collectively, the "**Saviez Loan Documents**"; and the Saviez Loan Documents together with the Westlands/Fresno Loan Documents, the Kern/Tulare

Loan Documents, and the Devine Loan Documents, collectively the "**Westlands Et Al. Loan Documents**"). A true and correct copy of the Saviez Loan Agreement is attached hereto as Exhibit 10.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Saviez Loan Agreement and Saviez Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Saviez Loan Agreement and Saviez Loan Documents are written instruments that speak for themselves.

44. The Saviez Loan is evidenced by, among other things, that certain Promissory Note, dated as of the Saviez Closing Date in the original principal amount of $3,642,000.00 (Loan No. 717612122) (the "**Saviez Note**", and together with the Westlands/Fresno Notes, the Kern/Tulare Notes, and the Devine Note, the "**Westlands Et Al. Notes**" and each a "**Westlands Et Al. Note**"). As of July 1, 2024, the outstanding principal balance of the Saviez Loan is $3,277,800.00 and the outstanding interest accrued on Saviez Note is $51,133.68. A true and correct copy of the Saviez Note is attached hereto as Exhibit 11.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Saviez Note, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Saviez Note is a written instrument that speaks for itself. Defendants lack sufficient information to admit or deny the allegations regarding the outstanding balances and therefore deny them.

45. The Saviez Loan and the Saviez Note are secured by, among other things, that certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Saviez Borrower to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of Prudential, dated November 8, 2021 and recorded November 10, 2021, as Fresno County Recorder's No. 2021-0187129 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**Saviez Instrument**", and together with the Westlands/Fresno Instrument, the

Kern/Tulare Instrument, and the Devine Instrument, collectively the "**Westlands Et Al. Instrument**"), granting to Prudential, among other things, a lien on and/or security interest in the real property and personal property described in said Saviez Instrument (the "**Saviez Property**", and together with the Westlands/Fresno Property, the Kern/Tulare Property, and the Devine Property, the "**Westlands Et Al. Property**"), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Saviez Instrument is attached hereto as Exhibit 12.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Saviez Instrument, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments is a written instrument that speaks for itself..

46. On or about May 16, 2024, Prudential executed that certain Assignment of Deed of Trust, Security Agreement, Cop Filing and Fixture Filing with Assignment of Rents And Proceeds, Leases and Agreement, recorded on May 21, 2024, as Fresno County Recorder's No. 2024-0044852, thereby assigning the Saviez Instrument, along with, among other things, all notes, obligations, and liens described therein, to Hartford Trust (the "**Saviez Assignment**"). A true and correct copy of the Saviez Assignment is attached hereto as Exhibit 13. Thereafter, PGIM REF was appointed to act as special servicer for and on behalf of Hartford Trust, including filing actions for and on behalf of Hartford Trust.

***Response***: To the extent that the allegations call for a legal conclusion about the effect of the Saviez Assignment, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Saviez Assignment is a written instrument that speaks for itself.. Defendants lack sufficient information to admit or deny the remaining allegations of this paragraph and therefore deny them.

**E. The PGIM REF Loan.**

47. PGIM REF previously made those certain loans to Borrower ACDF, Avila, Bear Flag, C & A, DA Real Estate, Favier, FG2, Gradon, Grantland 1, Grantland 2, Grantor

Investments, GVM, Lincoln, Maricopa, and Sageberry (collectively, "**PGIM REF Borrower**") in the aggregate original principal amount of Eighty-Four Million Two-Hundred Fifty-Five Thousand Dollars ($84,255,000.00) (as amended, supplemented, restated, and/or otherwise modified from time to time, the "**PGIM REF Loan**" and together with the Westlands/Fresno Loan, the Kern/Tulare Loan, the Devine Loan, and the Saviez Loan, the "Loans") pursuant to that certain Amended and Restated Loan Agreement dated as of August 26, 2020 (the "**PGIM REF Closing Date**") by and among PGIM REF Borrower and PGIM REF (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time including by that certain Loan Modification Agreement dated April 15, 2021, by that certain Second Loan Modification Agreement dated April 16, 2021, by that certain Third Loan Modification Agreement dated July 22, 2021, by that certain Fourth Loan Modification Agreement dated April 11, 2022 (the "**Fourth Modification**"), and by that certain Fifth Loan Modification Agreement dated October 25, 2023, the "**PGIM REF Loan Agreement**"; and together with all other documents evidencing, relating to, and/or securing the PGIM REF Loan, including without limitation, any and all documents amending and modifying the terms of the Loan, collectively, the "**PGIM REF Loan Documents**" and together with the Westlands Et Al. Loan Documents, the "**Loan Documents**"). A true and correct copy of the PGIM REF Loan Agreement is attached hereto as Exhibit 14.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the PGIM REF Loan Agreement, the Fourth Modification, and the PGIM REF Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the PGIM REF Loan Agreement, the Fourth Modification, and the PGIM REF Loan Documents are written instruments that speak for themselves.

48. As set forth in more detail in the PGIM REF Loan Agreement, Derek Bell and Rachel Marie White are non-borrower trustors in connection with certain of the Property pledged to secure the PGIM REF Loan and executed a rider to the PGIM REF Loan Agreement.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

49. As set forth in more detail in the Fourth Modification, initial borrowers 104 PARTNERS, LLC, a California limited liability company ("**104 Partners**") and BISHOP FARMS 22, LLC, a California limited liability company ("**Bishop Farms**") were merged into ACDF.

***Response:*** Defendants admit that 104 Partners, LLC and Bishop Farms 22, LLC merged into ACDF effective May 31, 2022. Defendants aver that the Fourth Modification, dated April 11, 2022, is a written instrument that speaks for itself. Except as expressly admitted, Defendants deny the allegations of this paragraph.

50. The PGIM REF Loan is evidenced by, among other things: (i) that certain Promissory Note, dated as of August 1, 2017, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $13,000,000.00 (Loan No. 717611236) (as amended by that certain Modification Agreement – Benchmark Index Transition, dated July 1, 2023, "**PGIM REF Note 2**"); (ii) that certain Promissory Note, dated as of October 12, 2018, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $16,000,000.00 (Loan No. 717611624) ("**PGIM REF Note 3**"); (iii) that certain Promissory Note, dated as of October 8, 2019, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $11,150,000.00 (Loan No. 717611763) ("**PGIM REF Note 4**"); (iv) that certain Promissory Note, dated as of November 7, 2019, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $32,050,000.00 (Loan No. 717611810)("**PGIM REF Note 5**"); (v) that certain Promissory Note, dated as of April 15, 2021, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of $5,600,000.00 (Loan No. 717612029) ("**PGIM REF Note 6**"); and (vi) that certain Promissory Note, dated as of April 16, 2021, made by PGIM REF Borrower and payable to PGIM REF, in the original principal amount of$6,455,000.00 (Loan No. 717612063) ("**PGIM REF Note 7**", and collectively with PGIM REF Note 2, PGIM REF Note 3, PGIM REF Note 4, PGIM REF Note 5, and PGIM REF Note 6, as the same may be amended, supplemented,

restated, replaced, or otherwise modified from time to time, the "**PGIM REF Notes**" and each a "**PGIM REF Note**" and together with the Westlands Et Al. Notes, the "**Notes**" and each a "**Note**"). As of July 1, 2024, the outstanding principal balance of the PGIM REF Loan is$60,728,900.00, the outstanding interest accrued on PGIM REF Note 2 is $4,232.44, the outstanding interest accrued on PGIM REF Note 3 is $293,280.00, the outstanding interest accrued on PGIM REF Note 4 is $183,417.50, the outstanding interest accrued on PGIM REF Note 5 is $496,710.90, the outstanding interest accrued on PGIM REF Note 6 is $86,240.00, and the outstanding interest accrued on PGIM REF Note 7 is $99,407.00. True and correct copies of the PGIM REF Notes are attached hereto as Exhibit 15.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the PGIM REF Notes a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves. Defendants lack sufficient information to admit or deny the allegations regarding the outstanding balances and therefore deny them.

51. The PGIM REF Loan and the PGIM REF Notes are secured by, among other things:

a. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Favier to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated August 1, 2017 and recorded on August 21, 2017, as Merced County No. 2017026836, as amended by that certain Modification of Deed of Trust dated October 12, 2018, and recorded on October 22, 2018, as Merced County No. 2018032706, by that certain Second Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Merced County No. 2020029955, by that certain Third Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 202, as Merced County No. 2020036569, by that certain Fourth Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Merced County No. 2021017710, and by that certain Fifth Modification of Deed of Trust dated April 16, 2021 (as

the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "**2017 Deed of Trust**"). A true and correct copy of the 2017 Deed of Trust is attached hereto as Exhibit 16;

b. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by 104 Partners, Bishop, DA Real Estate, Grantland 1, Grantland 2, Grantor Investments, Lincoln, and Maricopa to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 12, 2018 and recorded October 22, 2018, as Fresno County No. 2018-0129050 and as Kern County Recorder's No. 218139395, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded August 28, 2020, as Fresno County No. 2020-0112978 and as Kern County Recorder's No. 220119047, by that certain Second Modification of Deed of Trust, dated September 24, 2020 and recorded October 8, 2020, as Fresno County No. 2020-0140536 and as Kern County Recorder's No. 220146496, by that certain Third Modification of Deed of Trust, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064511 and as Kern County Recorder's No. 221073050, and by that certain Fourth Modification of Deed of Trust, dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "2018 Deed of Trust"). A true and correct copy of the 2018 Deed of Trust is attached hereto as Exhibit 17;

c. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by C & A to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 8, 2019 and recorded on October 17, 2019, as Fresno County No. 2019-0124295, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Fresno County No. 2020-0112977, by that certain Second Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 2020, as Fresno County No. 2020-0140538, by that certain Third Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Fresno County No. 2021-0064513, and by that certain Fourth Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended,

consolidated, assigned, or otherwise modified from time to time, the "2019A Deed of Trust"). A true and correct copy of the 2019A Deed of Trust is attached hereto as Exhibit 18;

d. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Maricopa, 104 Partners, Grantor Investments, DEREK BELL, a married man as his sole and separate property, and RACHEL MARIE WHITE, an unmarried woman to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated November 7, 2019 and recorded November 13, 2019, as Fresno County No. 2019-0136752 and as Kern County Recorder's No. 219151263, as amended by that certain Modification of Deed of Trust dated August 25, 2020 and recorded August 28, 2020, as Fresno County No. 2020-0112979 and as Kern County Recorder's No. 220119048, by that certain Second Modification of Deed of Trust, dated September 24, 2020 and recorded October 8, 2020, as Fresno County No. 2020-0140539 and as Kern County Recorder's No. 220146497, by that certain Third Modification of Deed of Trust, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064514 and as Kern County Recorder's No. 221073051, and by that certain Fourth Modification of Deed of Trust, dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "2019B Deed of Trust"). A true and correct copy of the 2019B Deed of Trust is attached hereto as Exhibit 19;

e. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Bear Flag and Gradon to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated April 15, 2021 and recorded April 20, 2021, as Fresno County No. 2021-0064510, as amended by that certain Modification of Deed of Trust dated April 16, 2021 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the "2021A Deed of Trust"). A true and correct copy of the 2021A Deed of Trust is attached hereto as Exhibit 20;

f. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Avila, FG2,

and GVM to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated April 16, 2021 and recorded April 28, 2021, as Fresno County No. 2021-0070226 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the “2021B Deed of Trust”). A true and correct copy of the 2021B Deed of Trust is attached hereto as Exhibit 21; and

g. That certain Deed of Trust, Security Agreement, Crop Filing and Fixture Filing with Assignment of Rents and Proceeds, Leases and Agreements, executed by Sageberry to OLD REPUBLIC TITLE COMPANY as trustee for the benefit of PGIM REF, dated October 12, 2018 and recorded on October 23, 2018, as Fresno County No. 2018-0129051, as amended by that certain Modification of Deed of Trust dated August 26, 2020 and recorded on August 28, 2020, as Fresno County No. 2020-0112980, by that certain Second Modification of Deed of Trust dated September 24, 2020 and recorded on October 8, 2020, as Fresno County No. 2020-0140537, by that certain Third Modification of Deed of Trust dated April 15, 2021 and recorded on April 20, 2021, as Fresno County No. 2021-0064512, that certain Fourth Modification of Deed of Trust dated April 16, 2021, and by that certain Fifth Modification of Deed of Trust, dated July 22, 2021 and recorded on July 29, 2021, as Fresno County No. 2021-0123121 (as the same has been or may be amended, extended, consolidated, assigned, or otherwise modified from time to time, the “Miossi Deed of Trust”, and together with the 2017 Deed of Trust, the 2018 Deed of Trust, he 2019A Deed of Trust, the 2019B Deed of Trust, the 2021A Deed of Trust, and the 2021B Deed of Trust, collectively the “PGIM REF Instrument” and together with the Westlands Et Al. Instrument, the “Instruments” and each an “Instrument”), granting to PGIM REF, among other things, a lien on and/or security interest in the real property and personal property described in said PGIM REF Instrument (collectively, the “PGIM REF Property” and together with the Westlands Et Al. Property, the “Property”), certain assignment(s) of leases and rents, and certain other security instruments. A true and correct copy of the Miossi Deed of Trust is attached hereto as Exhibit 22.

***Response***: To the extent that the allegations call for a legal conclusion about the effect of the 2017, 2018, 2019A, 2019B, 2021A, 2021B, and Miossi Deeds of Trust a response is not

required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the 2017, 2018, 2019A, 2019B, 2021A, 2021B, and Miossi Deeds of Trust are written instruments that speak for themselves. To the extent subparagraphs (b) and (d) allege that 104 Partners or Bishop Farms 22 executed instruments, Defendants aver that those entities merged into ACDF effective May 31, 2022.

**II. Relevant Terms of Lender's Loan Documents.**

52. With respect to the Westland/Fresno Loan Documents, Borrower has the following payment obligations.

a. Westlands/Fresno Note 1 requires Westlands/Fresno Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 4.82%. Westlands/Fresno Note 1, §§ 2 and 3.1.

b. Westlands/Fresno Note 1 requires Westlands/Fresno Borrower to make payments of principal on every January 1 and July 1, in the amount of $10,000,000.00, beginning on July 1, 2024. Westlands/Fresno Note 1, § 3.2.

c. Westlands/Fresno Note 3 requires Westlands/Fresno Borrower to make payments of interest on every January 1, April 1, July 1, and October 1, at a floating rate. Westlands/Fresno Note 3, § 4.1.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Westlands/Fresno Notes a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Westlands/Fresno Notes are written instruments that speak for themselves.

53. With respect to the Kern/Tulare Loan Documents, Borrower has the following payment obligations:

a. Kern/Tulare Note 1 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.80%. Kern/Tulare Note 1, §§ 2 and 3.1.

b. Kern/Tulare Note 1 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $1,400,000.00, beginning on January 1, 2021. Kern/Tulare Note 1, § 3.2.

c. Kern/Tulare Note 2 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.80%. Kern/Tulare Note 2, §§ 2 and 3.1.

d. Kern/Tulare Note 2 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $294,000.00, beginning on January 1, 2021. Kern/Tulare Note 2, § 3.2.

e. Kern/Tulare Note 5 requires Kern/Tulare Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 6.55%. Kern/Tulare Note 5, §§ 2 and 3.1.

f. Kern/Tulare Note 5 requires Kern/Tulare Borrower to make payments of principal on every January 1 and July 1, in the amount of $128,480.00, beginning on January 1, 2023. Kern/Tulare Note 5, § 3.2.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Kern/Tulare Notes a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Kern/Tulare Notes are written instruments that speak for themselves.

54. With respect to the Devine Loan Documents and Saviez Loan Documents, Borrower has the following payment obligations:

a. The Devine Note requires Devine Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.65%. Devine Note, §§ 2 and 3.1.

b. The Devine Note requires Devine Borrower to make payments of principal on every January 1 and July 1, in the amount of $123,520.00, beginning on January 1, 2022. Devine Note, § 3.2.

c. The Saviez Note requires Saviez Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.12%. Saviez Note, §§ 2 and 3.1.

d. The Saviez Note requires Saviez Borrower to make payments of principal on every January 1 and July 1, in the amount of $72,840.00, beginning on January 1, 2022. Saviez Note, § 3.2.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Devine Loan Documents and Saviez Loan Documents a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

55. With respect to the PGIM REF Loan Documents, Borrower has the following payment obligations:

a. PGIM REF Note 2 requires PGIM REF Borrower to make payments of interest on every January 1, April 1, July 1, and October 1, at a floating rate. PGIM REF Note 2, § 3.1.

b. PGIM REF Note 2 requires PGIM REF Borrower to make payments of principal on every January 1, April 1, July 1, and October 1, in the amount of $162,500.00, beginning on April 1, 2018. PGIM REF Note 2, § 3.2.

c. PGIM REF Note 3 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 4.70%. PGIM REF Note 3, §§ 2 and 3.1.

d. PGIM REF Note 3 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $320,000.00, beginning on January 1, 2019. PGIM REF Note 3, § 3.2.

e. PGIM REF Note 4 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF Note 4, §§ 2 and 3.1.

f. PGIM REF Note 4 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $223,000.00, beginning on January 1, 2023. PGIM REF Note 4, § 3.2.

g. PGIM REF Note 5 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.69%. PGIM REF Note 5, §§ 2 and 3.1.

h. PGIM REF Note 5 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $641,000.00, beginning on January 1, 2020. PGIM REF Note 5, § 3.2.

i. PGIM REF Note 6 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF Note 6, §§ 2 and 3.1.

j. PGIM REF Note 6 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $112,000.00, beginning on July 1, 2021. PGIM REF Note 6, § 3.2.

k. PGIM REF Note 7 requires PGIM REF Borrower to make payments of interest on every January 1 and July 1, at a non-default interest rate of 3.50%. PGIM REF Note 7, §§ 2 and 3.1.

l. PGIM REF Note 7 requires PGIM REF Borrower to make payments of principal on every January 1 and July 1, in the amount of $129,100.00, beginning on July 1, 2021. PGIM REF Note 7, § 3.2.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the PGIM REF Notes, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the PGIM REF Loan Documents are written instruments that speak for themselves.

56. In addition to the real property described above and with respect to each of the Loans, Borrower has granted Lender a first lien and security interest in all Crops (which are generally included in the definition of Property under each Instrument) located on or resulting from the Property as set forth in each Instrument. Instruments, p. 1.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Loans on Crops, a response is not required, and if a response is required, Defendants lack

sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Loans are written instruments that speak for themselves.

57. Under the Loan Documents, "Crops" are defined to include "all annual and/or permanent crops and farm products, including without limitation, all pistachios, almonds and other vine or tree crops, all whether mature or immature and whether now or hereafter growing or to be grown on the Land, whether now or hereafter harvested and/or severed from the Land, and whether or not stored on the Land." Id. (definition of "Crops").

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Loan Documents are written instruments that speak for themselves.

58. Further to the security interest granted by Borrower in all Crops, each Instrument also provides that "[t]he security agreement set forth in this Deed of Trust covers all Crops now or hereafter growing on the Land, including, all Crops now or hereafter harvested and/or severed from the Land, whether or not then stored on the Land, and all the products and proceeds thereof." Id., § 5.3.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

59. In addition to a pledge of Crops, Borrower has also pledged to Lender a first lien and security interest in the proceeds of Crops, with include "[a]ll accounts and general intangibles (as such terms are defined in Article 9 of the Uniform Commercial Code) arising out of or incident to the ownership, development or operation of the Land and Improvements, all accounts and general intangibles arising out of Crops, and all other tangible and intangible property and rights relating to the Land and Improvements or the operation thereof, or to be used in connection with the Land and Improvements." Id. (definition of "Property"); see also Id. (definition of "Rents and Proceeds").

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

60. Further, under Article 4 of each Instrument, each applicable Borrower made an absolute and unconditional assignment of the Rents and other profits to Lender. The Loan Documents further state that Plaintiff shall be authorized to, among other things, collect the Rents and any profits upon an Event of Default under the Loan Documents. See, e.g. Id. § 6.1.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments and Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

61. As to the Loan Documents, the following terms govern events of default that may arise thereunder:

a. An immediate Event of Default occurs if a Borrower does not pay any indebtedness within ten (10) days of its due date. Loan Agreements, § 6.01(a).

b. An immediate Event of Default occurs upon the happening of any material adverse change to any applicable Borrower's or Guarantor's (as defined in the Loan Agreements) financial condition, which affects their ability to perform obligations or pay the indebtedness owed under such Loan Agreement. Id., § 6.01(g).

c. An immediate Event of Default occurs if any Borrower or Guarantor thereunder fails to pay its debts as they become due, with an unpaid balance in excess of $500,000. Id., §6.01(i).

d. Each Loan Agreement authorizes the applicable Borrower to obtain "Crop Loans" from "Crop Lenders". Saviez Loan Agreement, § 5.06(b); Kern/Tulare Loan Agreement, § 5.06(b); Devine Loan Agreement, § 5.06(b); PGIM REF Loan Agreement, § 5.06(b); Westlands/Fresno Loan Agreement, § 5.07(b).

e. “Crop Lenders” refer to nationally or regionally recognized financial institution that engages in agricultural lending and whose loan to the applicable Borrower is secured by crops. Saviez Loan Agreement, § 5.06(a); Kern/Tulare Loan Agreement, § 5.06(a); Devine Loan Agreement, § 5.06(a); PGIM REF Loan Agreement, § 5.06(a); Westlands/Fresno Loan Agreement, § 5.07(a).

f. “Crop Loans” refer to loans or lines of credit secured by crops. Saviez Loan Agreement, § 5.06(a); Kern/Tulare Loan Agreement, § 5.06(a); Devine Loan Agreement, §5.06(a); PGIM REF Loan Agreement, § 5.06(a); Westlands/Fresno Loan Agreement, § 5.07(a).

g. Any default under a Crop Loan, beyond the applicable grace periods, is, at Lender’s discretion, an automatic Event of Default. Saviez Loan Agreement, § 5.06(c); Kern/Tulare Loan Agreement, § 5.06(c); Devine Loan Agreement, § 5.06(c); PGIM REF Loan Agreement, § 5.06(c); Westlands/Fresno Loan Agreement, § 5.07(c).

h. The Loan Documents require the applicable Borrower to maintain and irrigate the relevant Property, and otherwise operate and maintain the trees and the relevant Property consistent with prevailing good agricultural and business practices. Loan Agreements, § 4.04(a) and (b); Instruments, § 3.2(a).

***Response:*** Defendants aver that the Loan Agreements and Instruments are written instruments that speak for themselves. To the extent that the allegations call for a legal conclusion about the effect of the Loan Agreements and Instruments on events of default, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

62. Under the Loan Documents, upon the occurrence of an Event of Default Plaintiff is entitled to the appointment of a receiver (with respect to each Loan) as follows:

a. Each Instrument provides that upon the occurrence of an Event of Default, as defined in the applicable Loan Agreement, each applicable Borrower agrees that the applicable Lender may seek the ex parte appointment of a receiver over the relevant Property, without bond, without notice, and without regarding to the value, adequacy, or condition of such Property or the danger of loss, removal, or material injury to such Property. Instruments, § 6.2.

b. Each Borrower-owner disclaimed any right to notice of an application to appoint a receiver, provided that a subsequent hearing to confirm the appointment of such receiver is held. Id.

c. Each Borrower-owner agreed that it shall not contest the appointment of a receiver and each consented such appointment. Id.

***Response:*** Defendants aver that the Instruments are written instruments that speak for themselves. To the extent that the allegations call for a legal conclusion about the effect of the Instruments on the appointment of a receiver, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants assert the allegations pertaining to the right to a receiver are moot because a receiver has been appointed in this case.

63. One or more Borrower also agreed to the appointment of a receiver in conjunction with the documentation and execution of a Forbearance Agreement (defined below).

***Response:*** Defendants aver that the Forbearance Agreement is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the Forbearance Agreement on the appointment of a receiver, a response is not required, and if a response is required, Defendants denies the allegations. Defendants assert the allegations pertaining to the right to a receiver are moot because a receiver has been appointed in this case.

64. Upon the occurrence of an Event of Default, Plaintiff is entitled to the payment of default interest, late charges, and fees and costs (with respect to each Loan), including as follows:

a. Upon the occurrence of an Event of Default under any Loan, at such Lender's discretion, interest thereon will accrue at the "Default Rate," which is the greater of 18% and four percentage points above the non-default rate, but in no event greater than the maximum rate permitted by applicable law. Loan Agreements, § 2.04.

b. If any Borrower fails to pay any amounts due under a Note or any other Loan Document within ten (10) days of its due date, then a late charge equal to 5% of the amount of such late payment shall be immediately due and payable. Id., § 2.03.

c. Each Borrower has agreed to pay all costs, fees, and expenses of the applicable Lender incurred in making, administering, or collecting on each Loan, including but not limited to all such amounts incurred in exercising its rights and remedies under the applicable Loan Documents, and such amounts shall incur interest at the Default Rate and be secured by the applicable Instrument. Westlands/Fresno Loan Agreement, § 8.09(f); Devine Loan Agreement, § 8.09(f); Saviez Loan Agreement, § 8.09(f); PGIM REF Loan Agreement, § 9.10(f); Kern/Tulare Loan Agreement, § 10.09(f).

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Loan Agreements on default interest, late charges, fees, and costs, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Loan Agreements are written instruments that speak for themselves.

**III. The U.S. Bank Loans and the Defaults Thereunder.**

65. Maricopa, C & A, and one or more other Borrower (collectively, "**Third-Party Loan Borrowers**"), are party to that certain Second Amended and Restated Loan and Security Agreement, dated as of March 25, 2019 (the "**U.S. Bank Credit Agreement**"), to which certain lenders and U.S. Bank National Association ("**U.S. Bank**") (as successor-in-interest to MUFG Union Bank, N.A.), in its capacity as administrative agent for the lenders party thereto, are also parties thereto.

***Response:*** Defendants admit that Maricopa and C & A are parties to the U.S. Bank Credit Agreement. Defendants aver that the U.S. Bank Credit Agreement is a written instrument that speaks for itself. Except as expressly admitted, defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

66. Upon information and belief, the proceeds of the U.S. Bank Credit Agreement were used for Third-Party Loan Borrowers' operations, including the growing of crops through 2023, and the U.S. Bank Credit Agreement is secured by crops.

***Response:*** The allegations are compound, vague, and ambiguous, and therefore, Defendants deny the allegations on that basis. Insofar as the allegation calls for a legal conclusion as to security interests, Defendants assert no admission or denial is required.

67. Upon information and belief, the proceeds of the U.S. Bank Credit Agreement were not used for the growing or harvesting of crops by Third-Party Loan Borrowers for the crop year ending in 2024.

***Response:*** Defendants deny the allegations.

68. Upon information and belief, U.S. Bank is a nationally recognized financial institution that regularly engages in agricultural lending.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

69. As such, the loan evidenced by the U.S. Bank Credit Agreement is a "Crop Loan", and U.S. Bank is a "Crop Lender".

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Loan Agreements' definitions of "Crop Loan" and "Crop Lender", a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

70. U.S. Bank, Prudential, and PGIM REF are parties to that certain Intercreditor Agreement, dated July 9, 2020 (as amended, supplemented, restated, and/or otherwise modified from time to time, the "ICA").

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

71. Pursuant to the ICA:

a. U.S. Bank agreed that Prudential and PGIM REF had a first priority interest in their real property collateral and certain related assets, and that U.S. Bank did not have an interest in such collateral. ICA, §§ 8 and 9;

b. Prudential and PGIM REF agreed to subordinate their interests in crop collateral, which includes, among other things, certain crops and equipment, to U.S. Bank's interest in such assets, in certain circumstances. Id., § 3;

c. Prudential and PGIM REF's subordination shall not apply to any crops for which U.S. Bank does not provide financing to grow and complete the harvesting of crops. Id., § 4(a);

d. In the event that Prudential or PGIM REF acquire or possess any of their real estate collateral, U.S. Bank shall have the opportunity to exercise a temporary license, allowing it to grow and harvest certain crop collateral thereon. Id., § 5; and

e. Any default under the U.S. Bank Credit Agreement constitutes, at Prudential's or PGIM REF's election, an immediate event of default under the Loan Agreements and the Instruments. Id., § 6.

***Response:*** Defendants aver that the ICA is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the ICA, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

72. The ICA does not provide any cure rights or similar rights to U.S. Bank in the event of any defaults or enforcement actions under or in connection with the Loan Agreements.

***Response:*** Defendants aver that the ICA is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the ICA, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

## IV. Initial Events of Default and Forbearance Agreement as to the Westlands/Fresno Loan.

73. The stated maturity date of Westlands/Fresno Note 3 was May 1, 2024. Westlands/Fresno Note 3, p. 3.

***Response:*** Defendants aver that Westlands/Fresno Note 3 is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of

the Westlands/Fresno Note 3, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

74. Upon maturity, Westlands/Fresno Borrower was required to pay all unpaid amounts under Westlands/Fresno Note 3. Id., § 4.4. Westlands/Fresno Borrower failed to do so and, as of the date hereof, still has not tendered such payment.

***Response:*** Defendants aver that Westlands/Fresno Note 3 is a written instrument that speaks for itself. Defendants admit that Westlands/Fresno Borrower failed to make certain payments under the Westlands/Fresno Note 3. Defendants lack sufficient information to admit or deny the assertion about "all unpaid amounts" and therefore deny same.

75. As a result of Westlands/Fresno Borrower's failure to pay all amounts owed under the Westlands/Fresno Note 3 upon its maturity – or any time thereafter – an Event of Default occurred under the Westlands/Fresno Loan Agreement (the "**Maturity Default**").

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the alleged non-payment of Westlands/Fresno Note 3 under the Westlands/Fresno Loan Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

76. Upon information and belief, U.S. Bank sent Third-Party Loan Borrowers notices of default on August 8, 2023, November 9, 2023, January 25, 2024, and February 6, 2024 (the "**Initial U.S. Bank Defaults**" and together with the Maturity Default, the "**Initial Defaults**").

***Response:*** Defendants admit that U.S. Bank sent notices of default dated August 8, 2023, November 9, 2023, January 25, 2024, and February 6, 2024. To the extent that the allegations call for a legal conclusion about the effect of those notices, including the defined terms "Initial U.S. Bank Defaults" and "Initial Defaults," a response is not required, and if a response is required, Defendants lack sufficient information and therefore deny them. Except as expressly admitted, Defendants deny the allegations of this paragraph.

77. Thereafter, Westlands/Fresno Borrower requested that Prudential forbear from exercising its rights and remedies in connection with the Initial Defaults.

***Response:*** Defendants admit the allegations.

78. As a result, on or about May 29, 2024, Westlands/Fresno Borrower and Prudential entered into that certain Loan Modification and Forbearance Agreement, effective May 1, 2024 (the **"Forbearance Agreement"**).

***Response:*** Defendants admit the allegations.

79. The Forbearance Agreement included customary terms between the parties, including an obligation by Prudential to forbear until the earlier of October 1, 2024 or the occurrence of a new default under the Westlands/Fresno Loan Documents or the Forbearance Agreement. Forbearance Agreement, Recital F. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit 23.

***Response:*** Defendants aver that the Forbearance Agreement is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the Forbearance Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

80. Pursuant to the Forbearance Agreement, among other thing:

a. Westlands/Fresno Borrower agreed that the Initial Defaults occurred and were continuing. Id., Recital E and § 1;

b. bCertain of the Westlands/Fresno Loan Documents were amended, including increasing the non-default interest rate on Westlands/Fresno Loan Note 1 from 3.52% to 4.82%. See, e.g., Id. § 3;

c. Westlands/Fresno Borrower covenanted and agreed that, among other things, no material adverse changes would occur with respect to its ability to pay the Westlands/Fresno Loan or otherwise affect its business, prospects, or financial condition. Id., § 7(y);

d. Westlands/Fresno Borrower covenanted and agreed that, among other things, no default in payment or acceleration of the maturity of any indebtedness it owes to any third party would occur. Id., § 7(dd);

e. Westlands/Fresno Borrower agreed that their failure to discharge their obligations under the Forbearance Agreement, including failure to uphold or discharge any covenants, constitutes an immediate default under the Forbearance Agreement. Id., § 8(a);

f. Westlands/Fresno Borrower agreed that any Event of Default under the Westlands/Fresno Loan Documents would constitute an immediate default under the Forbearance Agreement. Id., § 8(b);

g. Westlands/Fresno Borrower: (i) agreed that Prudential had the right to the appointment of a receiver; (ii) consented to (and agreed not to contest) the appointment of a receiver; and (iii) agreed to cooperate with such receiver in the event of a new default under the Westlands/Fresno Loan Documents or the Forbearance Agreement. Id., § 9.

***Response:*** Defendants aver that the Forbearance Agreement is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the Forbearance Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

## V. The Subsequent Events of Default After Execution of the Forbearance Agreement.

81. Upon information and belief, U.S. Bank sent Third-Party Loan Borrowers a notice of default on June 3, 2024, asserting that certain defaults or events of default under the U.S. Bank Credit Agreement occurred (the "**Subsequent U.S. Bank Default**").

***Response:*** Defendants admit the Subsequent U.S. Bank Default was sent. To the extent that the allegations call for a legal conclusion about the effect of the Subsequent U.S. Bank Default, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

82. Thereafter, on June 20, 2024, U.S. Bank sent Third-Party Loan Borrowers a notice of acceleration and demand for payment, accelerating the U.S. Bank Credit Agreement and demanding payment for all amounts outstanding under the U.S. Bank Credit Agreement, which amount purportedly equaled at least $149,000,000, plus fees, costs, and other charges. A copy of the notice is attached hereto as Exhibit 24.

***Response:*** Defendants admit that on June 20, 2024, U.S. Bank sent Third-Party Loan Borrowers a notice of acceleration and demand for payment under the U.S. Bank Credit Agreement. Defendants aver that Exhibit 24 is a written instrument that speaks for itself. Defendants lack sufficient information to admit or deny the remaining allegations and therefore deny them.

83. That same day, U.S. Bank sent a demand for payment to the guarantors under the U.S. Bank Credit Agreement, which include many of the guarantors of the Loans, demanding payment for all amounts outstanding under the U.S. Bank Credit Agreement, which amount purportedly equaled at least $149,000,000, plus fees, costs, and other charges. A copy of the demand is attached hereto as Exhibit 25.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of Exhibit 25, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

84. As set forth above, Maricopa and C & A, among others, are borrowers under the U.S. Bank Credit Agreement. One or both of Maricopa and C & A, among others, are also borrowers under each Loan.

***Response:*** The phrase "among others," as used in both sentences of this paragraph, is vague and ambiguous; and, to the extent that the allegations call for a legal conclusion about the effect of the U.S. Bank Credit Agreement and the Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the U.S. Bank Credit Agreement is a written instrument that speaks for itself.

85. The Initial U.S. Bank Defaults and the Subsequent U.S. Bank Defaults constitute defaults under a “Crop Loan”, thereby constituting immediate Events of Default under each Loan Agreement (collectively, the “**Crop Loan Defaults**”).

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the alleged U.S. Bank defaults under the Loan Agreements, a response is not required, and if a

response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

86. As set forth above, as a result of the U.S. Bank Defaults, U.S. Bank accelerated all amounts owed under the U.S. Bank Credit Agreement, causing at least $149,000,000.00 to be immediately due and owing to U.S. Bank by one or more Borrower and Guarantor.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

87. This acceleration, and the associated defaults under the U.S. Bank Credit Agreement, affect the ability of Borrower and Guarantor to perform the obligations or pay the indebtedness owed under each Loan Agreement, thereby causing an immediate Event of Default under each Loan Agreement (the "**Material Adverse Change Defaults**").

***Response:*** Defendants assert the allegations of this paragraph as vague and ambiguous. To the extent that the allegations call for a legal conclusion about the effect of the U.S. Bank acceleration under the Loan Agreements, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

88. In addition, the Third-Party Loan Borrowers, including one or more Borrower, such as Maricopa and C & A, have failed to pay the accelerated amounts under the U.S. Bank Credit Agreement, which amounts exceed $500,000.00, thereby causing an immediate Event of Default under each Loan Agreement (the "**Third-Party Indebtedness Defaults**").

***Response:*** Defendants lack sufficient information to admit or deny the allegations regarding the accelerated amounts under the U.S. Bank Credit Agreement, including whether such amounts exceed $500,000.00, and therefore deny them. Defendants aver that the Loan Agreements are written instruments that speak for themselves. Defendants lack sufficient information to admit or deny the remaining allegations of this paragraph and therefore deny them.

89. The applicable Borrower failed to pay principal and interest on July 1 on each of Westlands/Fresno Note 1, the Kern/Tulare Notes, the Devine Note, the Saviez Note, and the PGIM REF Notes. Such amounts remain outstanding. As such, an Event of Default occurred under each Loan Agreement (the "**Payment Defaults**").

***Response:*** Defendants assert the phrases "pay principal and interest," "July 1" (lacking a year) and "[s]uch amounts," as used in this paragraph, as vague and ambiguous. Therefore, Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

90. As set forth above, Westlands/Fresno Borrower covenanted and agreed in the Forbearance Agreement that no material adverse change would occur in their ability to pay the Westlands/Fresno Loan or in their business or financial condition, and that no default in payment or acceleration of the maturity of any indebtedness owed to any other party would occur.

***Response:*** Defendants aver that the Forbearance Agreement is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the covenants in the Forbearance Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

91. A breach of any covenants under the Forbearance Agreement constitutes an immediate default thereunder.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Forbearance Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Forbearance Agreement is a written instrument that speaks for itself.

92. As a result of the Subsequent U.S. Bank Default, over $149,000,000 became immediately due and owing, and has not been paid. This constitutes a failure of Westlands/Fresno Borrower to uphold their covenants that no material adverse change would occur in their business or financial condition and that they would not allow any payment default or acceleration under any third-party loan.

***Response:*** Defendants lack sufficient information to admit or deny the allegations that over $149,000,000 became immediately due and owing as a result of the Subsequent U.S. Bank Default and has not been paid, and therefore deny them. To the extent that the remaining allegations call for a legal conclusion about the effect of the Subsequent U.S. Bank Default on

the covenants in the Forbearance Agreement, a response is not required. To the extent a response is required, Defendants deny the remaining allegations of this paragraph.

93. Such failures constituted immediate defaults under the Forbearance Agreement (the "**Forbearance Covenant Defaults**").

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the alleged "failures" under the Forbearance Agreement, a response is not required, and the phrase "Such failures" is broad and ambiguous; but, if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

94. In addition, each of the Crop Loan Defaults, Material Adverse Change Defaults, Third-Party Indebtedness Defaults, and Payment Defaults under the Westlands/Fresno Loan Documents constitute immediate defaults under the Forbearance Agreement (the "Cross-Defaults" and together with the Initial Defaults, Subsequent U.S. Bank Default, Crop Loan Defaults, Material Adverse Change Defaults, Third-Party Indebtedness Defaults, Payment Defaults, and Forbearance Covenant Defaults, the "**Existing Defaults**").

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the alleged failures under the Forbearance Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

95. As a result of the Existing Defaults, on July 3, 2024, each applicable Lender sent each applicable Borrower a notice of default, termination of forbearance, and acceleration with respect to the Westlands/Fresno Loan (the "**Westlands/Fresno Notice**") and a notice of default and acceleration with respect to each of the Kern/Tulare Loan, the Devine Loan, the Saviez Loan, and the PGIM REF Loan collectively with the Westlands/Fresno Notice, the "**Default Notices**"). True and correct copies of the Default Notices are attached hereto as Exhibit 26.

***Response:*** Defendants lack sufficient information to admit or deny the allegations that the Default Notices were sent as a result of the Existing Defaults or on July 3, 2024, and therefore deny them. Defendants admit the remaining allegations of this paragraph, that the Default Notices were sent, but not as to any legal effect thereof (and, to that extend, it is denied).

96. The Westlands/Fresno Notice notified Westlands/Fresno Borrower that certain of the Existing Defaults had occurred, that the forbearance under the Forbearance Agreement had terminated, that interest had been accruing on the Westlands/Fresno Loan at the default rate since February 14, 2024, and that the Westlands/Fresno Loan had been accelerated.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Westlands/Fresno Notice, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

97. The other Default Notices notified the applicable Borrower that certain of the Existing Defaults had occurred, that interest had been accruing on the Westlands/Fresno Loan at the default rate since June 3, 2024, and that the applicable Loan had been accelerated.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Default Notices, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

## VI. Without the Appointment of a Receiver to Manage the Property and Allow Lender to Provide Additional Funding, There Is Imminent Danger to The Property.

98. On information and belief, Borrower has provided certain crops to Touchstone Pistachio Company LLC, a processor and producer of pistachio products ("**Touchstone**"). On information and belief, Touchstone has common ownership and management with Borrower.

***Response:*** Defendants admit the allegations in the first sentence. Defendants further aver that a receiver has already been appointed in this action and to the extent the allegations of this paragraph are offered in support of the appointment of a receiver, they are moot. Defendants deny the second sentence insofar as it implies identical ownership.

99. On information and belief, Touchstone has not paid Borrower for pistachios delivered by Borrower to Touchstone for at least the last several months.

***Response:*** Defendants admit that Touchstone had not paid Borrower for certain pistachios delivered by Borrower to Touchstone. Defendants lack sufficient information to admit or deny the remaining allegations of this paragraph, including the time period alleged, and therefore deny them.

100. Under the Loan Documents, the pistachios delivered by Borrower to Touchstone constitute "Crops" subject to the first lien security interests of Lender. Moreover, the amounts owed by Touchstone to Borrower for such Crops constitute the proceeds of Lender's collateral and are also subject the first lien security interests of Lender.

***Response:*** As to the first sentence, to the extent that the allegations call for a legal conclusion about the effect of the Loan Documents on the pistachios delivered by Borrower to Touchstone, a response is not required, and to the extent a response is required, Defendants admit the allegations of the first sentence. As to the second sentence, to the extent that the allegations call for a legal conclusion about the effect of the Loan Documents on amounts owed by Touchstone to Borrower, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

101. Subsequent to the Default Notices and during ongoing discussions with Borrower, Borrower has indicated that:

a. Trees on the Property need to be sprayed every six days until harvest, which will be occurring over the next several weeks. If one spray is missed then the trees may be unaffected, but missing two sprays will cause damage to the trees that will take several years to recover;

b. Without regular watering, the pistachio trees may survive (but be damaged) but the almond trees on the Property will die. These pistachio and almond trees are subject to the first lien security interests of Lender; and

c. Borrower has significant cash flow and liquidity issues that are likely to result in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Property and care for the trees and plants located on the Property and pay the other expenses associated with such case.

***Response:*** Defendants admit the allegations of a. and b. but deny the allegations in c.

102. Further exacerbating the need to maintain the Property, including the trees and the Crops, on information and belief, pistachio harvest "takes place anywhere from late–August to early–October when the fruit is mature and the shell has split."1 As a result, Borrower will need to harvest the pistachio Crops within the next several weeks, which will require Borrower to expend significant resources.

***Response:*** Defendants admit the allegations.

103. On information and belief, Borrower does not have the resources to harvest the pistachio Crops.

***Response:*** Defendants deny the allegation.

104. As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Property, which, along with the revenue generated by its operations, is the primary source for repayment of the Loans, and Plaintiff, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrower.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the alleged defaults on Plaintiffs' remedies, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

105. Under California law and as provided in the Loan Documents, Plaintiff has the right to the appointment of a receiver. Plaintiff is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Property, its revenue and all of the other collateral that Borrower pledged as security for the Loans.

***Response:*** A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent that the allegations call for a legal conclusion about the effect of California law and the Loan Documents on Plaintiffs' right to the appointment of a receiver, a response is not required, and if a response is required, Defendants lack sufficient

information to admit or deny the allegations and therefore deny them. Because a receiver was already appointed, the request for appointment of a receiver is moot.

106. Plaintiff intends to provide additional funding to the appointed receiver to allow it to maintain and manage the Property, including the trees and plants located thereon, and to complete the harvest of its Crop collateral.

***Response:*** A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent a response is required, Defendants lack sufficient information to admit or deny Plaintiffs' intentions regarding funding of the receiver and Plaintiffs' state of mind as of the Complaint and therefore deny the allegations of this paragraph.

**FIRST CAUSE OF ACTION**

(Breach of Contract, Appointment of Receiver, Accounting, and

Specific Performance of Right to Possession Clause

Under California Code of Civil Procedure Sections

564(a), 564(b)(2), 564(b)(9), and 564(b)(11)

Against All Defendants)

107. Plaintiff realleges paragraphs 1 through 106, inclusive, and by this reference incorporates the same as though fully set forth herein.

***Response:*** Defendants restate and incorporate their responses to paragraphs 1 through 106 as though fully set forth herein.

108. Plaintiff is the lawful holder of the Notes, the lawful beneficiary under the various Instruments, and the lawful owner of all of the other Loan Documents.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

109. Plaintiff has performed all of the terms and conditions required on their part to be performed pursuant to each of the Loan Documents and, in particular, pursuant to the Notes, the Loan Agreements, the Instruments, and the other Loan Documents.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of Plaintiffs' performance under the Loan Documents, a response is not required, and if a response

is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

110. As set forth above, the Loan Documents, among other things: (i) require Borrower to pay each Note upon maturity; (ii) prohibit Borrower from defaulting under any Crop Loans; (iii) prohibit any material adverse changes to Borrower's financial condition, which affect their ability to perform obligations or pay the indebtedness; (iv) prohibit Borrower from failing to pay its debts as they become due; and (v) require Borrower to pay certain periodic amounts under the Notes.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

111. Any defaults under any other Loan Documents constitute immediate defaults under the Forbearance Agreement.

***Response:*** Defendants aver that the Forbearance Agreement is a written instrument that speaks for itself. To the extent that the allegations call for a legal conclusion about the effect of the Forbearance Agreement, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

112. Borrower breached the Loan Documents by committing the Maturity Default, the Initial U.S. Bank Defaults, the Subsequent U.S. Bank Default, the Crop Loan Defaults, the Material Adverse Change Defaults, the Third-Party Indebtedness Defaults, the Payment Defaults, the Forbearance Covenant Defaults and the Cross-Defaults.

***Response:*** Defendants deny that they breached the Loan Documents as to the compound formulation set forth in the allegation. To the extent that the allegations call for a legal conclusion about the effect of the alleged defaults under the Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

113. Each of the foregoing caused a default under and breach of the Forbearance Agreement.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

114. Lender notified each applicable Borrower of the Existing Defaults, each applicable Borrower has failed to cure the Existing Defaults, and all applicable cure periods, if any, have expired.

***Response:*** Defendants admit that Lender notified each applicable Borrower of the Existing Defaults but as to the alleged Existing Defaults and cure periods, Defendants lack sufficient information to admit or deny same and therefore deny same.

115. As a direct and proximate result of Borrower's numerous breaches, Lender has suffered damages in an amount to be determined.

***Response:*** Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

116. Under Article 4 of each Instrument, the Defendants-owners made an absolute and unconditional assignment of the Rents and other profits to Plaintiff. The Loan Documents further state that Plaintiff shall be authorized to, among other things, collect the Rents and any profits upon an Event of Default under the Loan Documents.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments and Loan Documents, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

117. Further, in Section 6.2 of each Instrument, Defendants-owners expressly consented to, and agreed not to contest, the appointment of a receiver for the Property upon an Event of Default under the Loan Documents.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver

that the Instruments are written instruments that speak for themselves. A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot.

118. As detailed above, Borrower committed numerous defaults under the Loan Documents including by, among other things, failing to make its required monthly payments as and when due under the Loan Documents.

***Response:*** Defendants assert the phrase "numerous defaults" is vague and ambiguous; but, Defendants admit that Borrower failed, on at least one occasion, to make a required payment when due under the Loan Documents. Except as expressly admitted, Defendants deny the allegations of this paragraph.

119. Also, as detailed above, pursuant to the Default Notices, Plaintiff delivered written notice to Borrower of the various Existing Defaults and accelerated and demanded payment of all amounts due under the Loan Documents.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Default Notices, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

120. Borrower failed to pay the amounts due, and cure the numerous other Existing Defaults, following receipt of the Default Notices.

***Response:*** Defendants admit that, following receipt of the Default Notices, Borrower did not pay the amounts identified therein and did not cure the Existing Defaults. To the extent that the allegations call for a legal conclusion about the effect of the Default Notices or the Existing Defaults, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

121. Section 6.2 of each Instrument provides that, upon an Event of Default under the Loan, Plaintiff "may apply ex parte to any court having jurisdiction to appoint a Receiver without bond to enter upon and take possession of the Property to enter upon and take possession of the Property" and collect the Rents and any profits, as a matter of strict right and without regard to the adequacy of the security for the repayment of the Loans.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Instruments, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

122. Due to Borrower's defaults, there is a real danger that the Property will suffer waste resulting in irreparable harm to Plaintiff if a receiver is not appointed to manage and protect the Property.

***Response:*** Defendants aver that a receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. Insofar as the allegation of irreparable harm, Defendants lack sufficient information and therefore deny same.

123. It is impractical and impossible for Plaintiff to enjoy the rights granted to them or enforce the obligations of Borrower under the Loan Documents without the appointment of a receiver who has the power and authority to take possession of, manage, and operate the Property, and collect the Rents and any profits derived therefrom.

***Response:*** A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent a response is required, Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

124. Plaintiff has no plain, speedy, or adequate remedy at law to enforce the provisions of the Instruments as set forth herein, and will suffer irreparable harm unless equitable relief is granted and a receiver is appointed to manage, operate, and control the Property.

***Response:*** A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent that the allegations call for a legal conclusion about the adequacy of Plaintiffs' remedies at law and their entitlement to equitable relief under the Instruments, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

125. By appointing a receiver, funds that might otherwise be lost will be preserved to maintain and operate the Property.

***Response:*** A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent a response is required, Defendants lack sufficient information to admit or deny the allegations of this paragraph and therefore deny them.

126. A receiver should be appointed and granted the general powers and duties of a court-appointed receiver, including the power to bring and defend actions in his own name as receiver, to take and keep possession of the Property, to receive rents and any profits, collect debts, to make transfers, and generally to do such acts respecting the Property as the Court may authorize pending forthcoming foreclosure under the Instruments.

***Response:*** A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent that the allegations call for a legal conclusion about the powers and duties to be granted to a court-appointed receiver, a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

127. Plaintiff is entitled to have Borrower specifically perform the express and agreed upon terms, conditions, and provisions of the Loan Documents which would enable Plaintiff to enjoy the rights granted to them under the Loan Documents, and hereby seek an order requiring Borrower, and their agents, employees, officers, directors, affiliates, and representatives, to turn over to the receiver those items set forth in the prayer of this Complaint.

***Response:*** Defendants aver that the Loan Documents are written instruments that speak for themselves. A receiver has already been appointed in this action, and the allegations of this paragraph are therefore moot. To the extent that the allegations call for a legal conclusion about the adequacy of Plaintiffs' remedies at law, this is a legal conclusion and Defendants assert a response is not required; but, if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

128. Under the terms of the Loan Documents, Borrower agreed to pay the costs and expenses incurred by Plaintiff in connection with the exercise or enforcement of Plaintiff's rights and remedies under the Loan Documents.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the Loan Documents. a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them. Defendants aver that the Instruments are written instruments that speak for themselves.

**SECOND CAUSE OF ACTION**

**(For Injunctive Relief Against All Defendants)**

129. Plaintiff realleges paragraphs 1 through 128, inclusive, and by this reference incorporates the same as though fully set forth herein.

***Response:*** Defendants restate and incorporate their responses to paragraphs 1 through 128 as though fully set forth herein.

130. To enable the receiver to properly and effectively carry out his or her specific and general duties and powers, and to prevent Plaintiff from suffering irreparable injury, Plaintiff seeks a preliminary injunction and permanent injunction enjoining Defendants and their agents, partners, property managers, employees, officers, directors, affiliates, assigned successors, representatives, and all persons acting under, in concert with or for them, from performing the actions specified in the prayer of this Complaint.

***Response:*** To the extent that the allegations call for a legal conclusion about the effect of the receivership on Plaintiffs' entitlement to injunctive relief, same is a legal conclusion or a request for relief, and assert a response is not required, and if a response is required, Defendants lack sufficient information to admit or deny the allegations and therefore deny them.

**PRAYER FOR RELIEF**

ON THE FIRST CAUSE OF ACTION:

a. For damages as proven at trial and interest, including prejudgment and post-judgment interest;

b. That the Court enforce the provisions of California Code of Civil Procedure Sections 564(a), 564(b)(2), 564(b)(9), and 564(b)(11) by specifically enforcing the rents-and-profits clauses and the express consent to the appointment of a receiver clauses in the Loan Documents, and appoint a receiver to bring and defend actions in his or her own name as receiver,

to take and keep possession of the Property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the Property as the Court may authorize pending the forthcoming foreclosure under the Instruments;

c. For an order decreeing that Borrower and their officers, directors, agents, property managers, architects, contractors, subcontractors, and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, except Plaintiff:

1. Shall relinquish and turn over possession of the Property to the receiver upon his or her appointment becoming effective;

2. Shall turn over to the receiver and direct all property managers and other third parties in possession thereof to turn over all keys, leases, books, records, books of account, ledgers, operating statements, budgets, real estate tax bills, and all other business records relating to the Property, wherever located, and in whatever mode maintained, including information contained on computers and any and all software relating thereto as well as all banking records, statements, and canceled checks;

3. Shall turn over to the receiver all documents which pertain to all licenses, permits, or government approvals relating to the Property and shall immediately advise the receiver of their Federal Taxpayer Identification Numbers used in connection with the operation of the Property;

4. Shall immediately advise the receiver as to the nature and extent of insurance coverage on the Property. Borrower shall immediately name the receiver as an additional insured on the insurance policy(ies) for the period that the receiver shall be in possession of the Property. Borrower shall be prohibited from canceling, reducing, or modifying any and all insurance coverage currently in existence with respect to the Property; and

5. Shall immediately turn over to the receiver any monies (including, but not limited to, security deposits, prepaid rent, or funds in property management bank accounts for the Property) which represent net rental or lease payments with respect to the Property or any amounts due and owing to Borrower with respect to Crops or the Rents and Proceeds thereof. Any tenants occupying, using, or leasing the Property, or any portion thereof, and any parties owing funds to

Borrower resulting from Crops or the Rents and Proceeds thereof shall therefore make payments to the receiver.

d. For an accounting by Borrower of the Rents, any amounts owed with respect to Crops or the Rents and Proceeds thereof to Borrower, and any profits;

e. For costs of suit incurred herein to be added to the indebtedness owing by Borrower to Plaintiff;

f. For attorneys' fees incurred herein to be added to the indebtedness owing by Borrower to Plaintiff; and

g. For such other and further relief as the Court may deem just and proper.

ON THE SECOND CAUSE OF ACTION:

a. That the Court enter a preliminary injunction and permanent injunction enjoining Borrower and their agents, partners, property managers, employees, officers, directors, affiliates, assignees, successors, and representatives and all persons acting under, in concert with, or for them, from:

1. Committing or permitting any waste on the Property or any part thereof, or suffering or committing or permitting any act on the Property or any part thereof in violation of law, or removing or otherwise disposing of any of the Property or the fixtures presently on the Property or any part thereof;

2. Demanding, collecting, receiving, discounting, or in any other way diverting or using any of the Rents and any profits from the Property;

3. Directly or indirectly interfering in any manner with the discharge of the receiver's duties or the receiver's possession of and operation or management of the Property; and

4. Doing any act which will, or which will tend to impair, defeat, divert, prevent, or prejudice the preservation of the Property, including the Rents, or any amounts due and owing to Borrower with respect to Crops or Crop Collateral, and any profits, or the preservation of Plaintiff's interest in the Property, the Crops and/or Crop Collateral, and the Rents and any profits.

b. For cost of suit incurred herein to be added to the indebtedness owing by Borrower to Plaintiffs;

c. For attorneys' fees incurred herein to be added to the indebtedness owing by Borrower to Plaintiff; and

d. For such other and further relief as the Court may deem just and proper.

**DEFENDANTS RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF**

To the extent Defendants prayer for relief requires a response, Defendants deny that Plaintiffs are entitled to any relief as to Defendants and specifically deny all the allegations and prayers for relief contained under the heading "Prayer for Relief" in accordance with this Answer and Affirmative Defenses.

**DEFENDANTS' JURY DEMAND**

Under Fed. R. Civ. Proc. 38 and Local Rule 201, Defendants demand a trial by jury of all issues raised by this Complaint that are triable by jury, as is its right under the Seventh Amendment to the Constitution of the United States and as given by statute.

**AFFIRMATIVE DEFENSES**

1. Defendants raise the affirmative defense of bad faith, whereby the loss or damages, if any, sustained by Plaintiffs herein are barred by Plaintiffs' bad-faith conduct.

2. Defendants raise the affirmative defense of unclean hands whereby the loss or damages, if any, sustained by Plaintiffs herein are barred by the doctrine of unclean hands.

3. Defendants raise the affirmative defense of its good faith and lawful conduct. Any alleged act or omission by Defendants, concerning Plaintiffs, was taken for lawful reasons. At all times relevant to the claims and time period alleged in the Complaint, Defendants acted lawfully, with due care, in good faith, in lawful competition, and without malice.

4. Defendants raise the affirmative defense of laches because the loss or damages, if any, sustained by Plaintiffs herein is barred by laches.

5. Defendants raise the affirmative defense of waiver, whereby any recovery by Plaintiffs on the Complaint is barred by the doctrine of waiver.

6. Defendants raise the affirmative defense of mitigation of damages. Plaintiffs failed

to act reasonably to avoid and/or mitigate alleged damages, and such failure bars or diminishes any recovery on the Complaint, and any cause of action alleged herein.

7. Defendants raise the affirmative defense of unjust enrichment. Plaintiffs should not be permitted to obtain a favorable recovery on any of its claims against Defendants because to allow such recovery would result in an unjust enrichment to Plaintiffs.

8. Defendants raise the affirmative defense of justification. Plaintiffs are barred from recovery on the claims asserted in the Complaint, in whole, or in part, because the actions of Defendants were justified and/or excused under the totality of the circumstances.

9. Defendants raise the affirmative defense of privilege. Plaintiffs are barred from recovery on the claims asserted in the Complaint, in whole, or in part, because, at all times relevant to the time period alleged in the Complaint, Defendants acted in good faith to protect their own financial interests.

10. Defendants raise the affirmative defense of estoppel whereby Plaintiffs are estopped by its own conduct from recovering any relief under the Complaint.

11. Defendants raise the affirmative defense of Plaintiffs' material alteration of the underlying debts and loans.

12. Defendants raise the affirmative defense of Plaintiffs' negligent loan administration of the underlying debts and loans.

13. Defendants raise the affirmative defense of Plaintiffs' material impairment of the value of the collateral securing the underlying debts and loans, in light of Plaintiffs' specific actions regarding that collateral, including but not limited to any or all of the following: seeking appointment of a receiver, neglecting to maintain collateral property, and/or releasing valuable assets without Defendant's consent.

14. Defendants raise the affirmative defense of Plaintiffs' misconduct such as fraud, misrepresentation, or duress toward the borrowers on the underlying debts/Loans.

15. Defendants raise the affirmative defense of all defenses or claims belonging to the guarantors on the underlying debts/Loans based on the conduct of Plaintiffs, as lender, and/or the underlying debts and loans.

16. Defendants raise as affirmative defenses all rights and defenses given to borrowers at law or in equity, including but not limited to those rights and defenses that are or may become available to Defendants under California law.

17. Defendants raise the affirmative defense of the statute of limitations, including but not limited to Civil Code section 337, because Plaintiffs waited too long to sue Defendants.

18. Defendants reserve any affirmative defenses that may be raised based on later discovered evidence. Defendants has not knowingly or intentionally waived any applicable defenses.

Dated: October 30, 2026

WANGER JONES HELSLEY PC

By: ______________________________
Ian J. Quinn
Attorneys for Defendants ACDF, LLC, Assemi and Sons, Inc., Bear Flag Farms, LLC, C & A Farms, LLC, Cantua Orchards, LLC, Favier Ranch, LLC, Gradon Farms, LLC, Granville Farms, LLC, Lincoln Grantor Farms, LLC, Maricopa Orchards, LLC, Panoche Pistachios, LLC, and Sageberry Farms, LLC

# PROOF OF SERVICE

**The Prudential Insurance Company of America, et al v. ACDF, et al**
**Case No. 1:24-cv-01102-KES-SAB**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

## PROOF OF SERVICE

My business address is 265 East River Park Circle, Suite 310, Post Office Box 28340, Fresno, California 93729. I am employed in Fresno County, California. I am over the age of 18 years and am not a party to this case.

On the date indicated below, I served the foregoing document(s) described as **ANSWER OF DEFENDANTS ACDF, LLC, ASSEMI AND SONS, INC., BEAR FLAG FARMS, LLC, C & A FARMS, LLC, CANTUA ORCHARDS, LLC, FAVIER RANCH, LLC, GRADON FARMS, LLC, GRANVILLE FARMS, LLC, LINCOLN GRANTOR FARMS, LLC, MARICOPA ORCHARDS, LLC, PANOCHE PISTACHIOS, LLC, AND SAGEBERRY FARMS, LLC, TO PLAINTIFFS' COMPLAINT** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

______ (BY MAIL) I am readily familiar with the business' practice for collection and processing of correspondence for mailing, and that correspondence, with postage thereon fully prepaid, will be deposited with the United States Postal Service on the date noted below in the ordinary course of business, at Fresno, California designated in the **"U.S. MAIL LIST"**.

XXX (BY ELECTRONIC MAIL) I caused such documents to be scanned into PDF format and sent via electronic mail to the electronic mail addressee(s) of the addressee(s) designated in the **"ELECTRONIC SERVICE LIST"**.

______ (BY PERSONAL SERVICE) I caused delivery of such envelope(s), by hand, to the office(s) of the addressee(s).

______ (BY OVERNIGHT COURIER) I caused the above-referenced envelope(s) to be delivered to an overnight courier service for delivery to the addressee(s).

XXX E-FILING: I caused the document(s) to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

EXECUTED ON **October 30, 2026**, at Fresno, California.

XXX (FEDERAL) I declare that I am employed in this office of a member of the bar of this court at whose direction this service was made

Danielle Durham

**ELECTRONIC SERVICE LIST**

ali.mojdehi@mgr-legal.com
Jsmcnutt@kerncounty.com
jon@cavalrei.com
degan@wilkefleury.com
storigiani@youngwooldridge.com
HGrossman@cozen.com
pswain@cozen.com
RStewart@pearsonrealty.com
kstewart@pearsonrealty.com
aferdinandi@pearsonrealty.com
DKevorkian@pearsonrealty.com
sgrosz@pearsonrealty.com
jreisz@kleinlaw.com
ckay@caagproperties.com
mindynili@gmail.com
OKatz@sheppardmullin.com
RSahyan@sheppardmullin.com
Robert.D.Lewis@t-mobile.com
Bernard.gudorf@usbank.com
legal@goldenstatecleanenergy.com
Kristina.Heller@procopio.com
michael.kiesling@procopio.com
rpinkston@seyfarth.com
jdejonker@seyfarth.com
nmarkus@seyfarth.com
terence.banich@katten.com

# Mailing Information for a Case 1:24-cv-01102-KES-SAB The Prudential Insurance Company of America et al v. ACDF, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **American Equity Investment Life Insurance Company**
  adeleest@marshackhays.com
- **Yelena E. Archiyan , PHV**
  yelena.archiyan@katten.com
- **Terence G. Banich**
  terence.banich@katten.com,courtalertlax@katten.com
- **Robert Cullen Barton**
  rbarton@mcdermottlaw.com,acorona@mcdermottlaw.com,adavalos@mcdermottlaw.com,los-angeles-docketing-2-3974@ecf.pacerpro.com,losangelesdocketing@mcdermottlaw.com
- **Daryl Stuart Bartow**
  DSBartow@duanemorris.com,PARyan@duanemorris.com,SLei@duanemorris.com,Ajhanna@duanemorris.com,CMWinter@duanemorris.com
- **David Berger**
  dberger@sheppard.com,ehwalters@sheppardmullin.com
- **Michael Barrett Brown**
  michael.brown@stoel.com,ha.nguyen@stoel.com,docketclerk@stoel.com,rebecca.lerma@stoel.com,jill.keehnen@stoel.com
- **Michaela C. Crocker , PHV**
  michaela.crocker@katten.com
- **Aaron E. De Leest**
  adeleest@marshackhays.com,alinares@ecf.courtdrive.com,adeleest@ecf.courtdrive.com
- **Jason J DeJonker , PHV**
  jdejonker@seyfarth.com,CHIDocketMail@seyfarth.com,lcreasap@seyfarth.com
- **Jason Gregory Eldred**
  jeldred@wilkefleury.com,sdouglas@wilkefleury.com
- **Polly Jessica Estes**
  polly@appellateattorney.com,pollyestes@yahoo.com
- **David Peter Fuad**
  dfuad@orrick.com
- **Gabriel P. Herrera**
  gherrera@kmtg.com,tcorbett@kmtg.com,bxiong@kmtg.com
- **Michael Robert Johnson , PHV**
  mjohnson@rqn.com,ecasaday@rqn.com,docket@rqn.com
- **Michael Lauter**
  mlauter@sheppardmullin.com,lsegura@sheppardmullin.com
- **Aaron J Malo**
  amalo@sheppardmullin.com,mlinker@sheppardmullin.com
- **Nicholas R. Marcus , PHV**
  nmarcus@seyfarth.com,ChiDocketMail@seyfarth.com
- **Maricopa Orchards, LLC**
  degan@wilkefleury.com
- **John E. Mitchell , PHV**
  john.mitchell@katten.com
- **Arlen Moradi**
  arlen.moradi@katten.com
- **Michael S. Nadel , PHV**
  mnadel@mcdermottlaw.com
- **Michael Ryan Pinkston**
  rpinkston@seyfarth.com,sfocalendar@seyfarth.com,jmcdermott@seyfarth.com,shobrien@seyfarth.com
- **Ian J. Quinn**
  RIBTecf@wjhattorneys.com
- **Jonathan Reiter**
  degan@wilkefleury.com

- **Michelle Rosales**
  michelle.rosales@stoel.com
- **Brodie Austin Surfus**
  bsurfus@wtjlaw.com,borozco@wtjlaw.com
- **Ethan D Trotz , PHV**
  ethan.trotz@katten.com
- **Riley C. Walter**
  RIBTecf@wjhattorneys.com,cbrown@wjhattorneys.com
- **Marshall Craig Whitney**
  mwhitney@wtjlaw.com,sgomez@wtjlaw.com,abroome@wtjlaw.com,hlopez@wtjlaw.com
- **Thomas Andrew Woods**
  thomas.woods@stoel.com,rebecca.lerma@stoel.com,1261239420@filings.docketbird.com,7052139420@filings.docketbird.com,docketclerk@stoel.com,dalila.tobin@

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)